HEARING DATE AND TIME: September 20 2012 at 10:00 a.m. (Eastern Time)
OBJECTION DEADLINE: September 13, 2012 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
**In re**                                        :    **Chapter 11 Case No.**
:
**AMR CORPORATION,** *et al.*,                   :    **11-15463 (SHL)**
:
Debtors.                                         :    **(Jointly Administered)**
:
------------------------------------------------------------x

# NOTICE OF HEARING ON
# DEBTORS' MOTION FOR APPROVAL OF "FEE LETTER" TO
# PAY CERTAIN WORK FEES AND EXPENSES OF PROFESSIONALS
# EMPLOYED BY THE AD HOC GROUP OF AMR CORPORATION CREDITORS

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated August 29, 2012 (the "**Motion**"), of AMR Corporation and its related debtors, as debtors and debtors in possession (collectively, the "**Debtors**"), will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, in Room 701 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004, on **September 20, 2012 at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion (the "**Objections**") must be in writing, shall conform to the Federal Rules of Bankruptcy

Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov) and (b) by all other parties in interest, on a 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq.), (ii) the Debtors, c/o AMR Corporation, 4333 Amon Carter Boulevard, MD 5675, Fort Worth, Texas 76155 (Attn: Kathryn Koorenny, Esq.), (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Brian Masumoto, Esq.), (iv) the attorneys for the Official Committee of Unsecured Creditors, Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Drive, Chicago, Illinois 60606 (Attn: John Wm. Butler, Jr., Esq.) and Four Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq.), (v) the attorneys for the Section 1114 Committee of Retired Employees, Jenner & Block LLP, 353 North Clark Street, Chicago, Illinois 60654 (Attn: Catherine L. Steege, Esq. and Charles B. Sklarsky, Esq.) and 919 Third Avenue, 37th Floor, New York, New York 10022 (Attn: Marc B. Hankin, Esq.), (vi) the attorneys for the Ad Hoc Group of AMR Corporation Creditors, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Gerard Uzzi, Esq. and Eric Stodola, Esq.), and (vii) all entities that requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002 so as to be received no later than **September 13, 2012 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

Dated: New York, New York
August 29, 2012

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

HEARING DATE AND TIME: September 20, 2012 at 10:00 a.m. (Eastern Time)
OBJECTION DEADLINE: September 13, 2012 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                              :    **Chapter 11 Case No.**
                                       :
**AMR CORPORATION**, *et al.*,         :    **11-15463 (SHL)**
                                       :
                        Debtors.       :    **(Jointly Administered)**
                                       :
------------------------------------------------------------x

**DEBTORS' MOTION FOR APPROVAL OF "FEE LETTER" TO PAY CERTAIN
WORK FEES AND EXPENSES OF PROFESSIONALS EMPLOYED BY THE AD HOC
GROUP OF AMR CORPORATION CREDITORS**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

AMR Corporation and its related debtors, as debtors and debtors in possession

(collectively, the "**Debtors**" or "**American**"), respectfully represent:

**Background**

1.    On November 29, 2011 (the "**Commencement Date**"), each of the

Debtors commenced a voluntary case under chapter 11 of title 11, United States Code (the

"**Bankruptcy Code**"). The Debtors have continued to operate their business and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

2. On December 5, 2011, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**UCC**").

3. Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Affidavit of Isabella D. Goren Pursuant to Rule 1007-2 of the Local Bankruptcy Rules of the Southern District of New York, sworn to on November 29, 2011. (ECF No. 4)

4. In April, 2012, a group of substantial creditors of the Debtors formed the Ad Hoc Group of AMR Corporation Creditors (the "**Group**"). The Group intends to promptly file a verified statement pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure. The Group has expressed an interest in participating in the formulation of a plan of reorganization and, in connection therewith, potentially providing for equity and other financings, if any, that may be required to support American's business plan and the consummation of a chapter 11 plan or plans (collectively, the "**Commitments**"). The Group is prepared to engage in negotiations with the Debtors concerning a plan or plans and such Commitments, subject to appropriate due diligence. In connection with such negotiations, the Debtors will collaborate with the UCC.

## Jurisdiction

5. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Relief Requested**

6.  The Debtors request the approval of the "Fee Letter" dated August 28, 2012, attached hereto as **Exhibit "A"** and to pay certain Work Fees (as hereinafter defined) of the Group's (i) attorneys, Milbank Tweed, Hadley & McCloy LLP ("**Milbank**"), (ii) financial advisors, Houlihan Lokey Howard & Zukin ("**Houlihan**," and together with Milbank, the "**Professionals**") pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, in connection with the Group's due diligence, analyses, negotiation, preparation, and potential obtaining of the Commitments, all as described in the Fee Letter.

7.  The relief requested has been reviewed with the UCC and the UCC has indicated that it supports the granting of the relief requested in this motion.

**The Commitments**

8.  American's primary objective in these chapter 11 cases is to formulate, confirm, and consummate a consensual chapter 11 plan or plans. In furtherance of American's efforts to secure both broad creditor support and the financing necessary to ensure successful confirmation and consummation, American has engaged with the UCC and certain other constituencies in the plan development process, including the Group. Upon information and belief, the Group and members thereof represent a substantial and diverse group of creditors of American. The Group and certain of its members have expressed interest in participating in and/or providing Commitments in support of a plan proposal and the confirmation process.

9.  In connection with the Commitments, the Group's Professionals will incur expenses in conducting the due diligence, analyses, negotiation, and preparation necessarily involved in pursuing the Commitments, including the exploration of various plan alternatives. Due to the complex nature of American's chapter 11 cases, such diligence will entail highly

3

sophisticated legal and financial analysis.  Thus, to address the associated costs and risks the Group is undertaking, and as a condition to the Group's agreement to explore potential Commitments, American and the Group have entered into the Fee Letter.  Pursuant to the Fee Letter and subject to the approval of the Bankruptcy Court, American has agreed to pay the fees for work performed by the Group's Professionals in connection with the obtaining of Commitments as may be determined by American.  In accordance with the Fee Letter, American has agreed, commencing as of August 1, 2012, to pay (i) Milbank at its standard hourly rates, as reflected in the hourly fee schedule attached to the Fee Letter as Schedule A, (ii) Houlihan (a) a monthly fee of $150,000 earned as of the first day of the month and (b) a reasonable success fee, first negotiated among American, the Group and the UCC, and, further, subject to Bankruptcy Court approval, if binding Commitments result from the Group's efforts that are closed and funded, and (iii) the reasonable out of pocket expenses incurred by the Professionals for the services performed in connection with the exploration of and efforts to obtain the Commitments (collectively, the "**Work Fees**").

        10.    The reservation of rights of the Professionals under the Fee Letter to seek additional fees is not to be construed as limiting, but includes, without limitation, the right to seek a success fee in circumstances where a Commitment is not obtained or closed and funded.  For example, if the services performed result in the successful negotiation of the terms of a plan of reorganization that is confirmed and becomes effective, but did not include a Commitment, the Professionals may request additional compensation and expenses, subject to approval of the Bankruptcy Court and the rights of all parties in interest to object thereto.

**Basis For Relief**

11. "Section 363 [of the Bankruptcy Code] . . . governs the use of funds by the debtor in possession while it operates its business after the bankruptcy petition is filed." *In re Enron Corp.*, 335 B.R. 22, 27 (S.D.N.Y. 2005). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b); *In re Lionel Corp.*, 772 F.2d 1063, 1066 (2d. Cir. 1983). Section 105(a) of the Bankruptcy Code provides that, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," including the provisions of section 363(b). *See* 11 U.S.C. § 105 (a); *In re Enron Corp.*, 335 B.R. at 27.

*Good Business Reasons Exist to Reimburse the Work Fees*

12. Generally, courts will approve a request for relief under section 363 of the Bankruptcy Code where the debtor demonstrates a sound business justification for seeking such relief. *In re Lionel Corp.*, 722 F.2d at 1071 ("The rule we adopt requires that a judge determining a section 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."). To determine if a "good business reason" exists courts apply the business judgment rule. *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992). The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *Id.* Additionally, courts generally will not interfere with corporate decisions as to what is in their best interest absent a showing of bad faith, self-interest, or gross negligence. *Id.* Furthermore,

5

parties opposing an exercise of a debtor's business judgment have the burden of rebutting the presumption of validity. *Id.*

13. In the instant case, American and all of its economic stakeholders have an interest in reaching a consensual resolution of these chapter 11 cases in the most cost effective and efficient manner possible. The engagement of the Group presents a reasonable prospect of obtaining Commitments that may facilitate the reorganization efforts and, thus, is in American's best interests and is consistent with achieving American's primary objective of confirmation and consummation of a consensual chapter 11 plan or plans.

14. Courts in this district have approved the payment of such due diligence work fees incurred by professionals for potential investors when the "reimbursement arrangement was 'in the best interests of the Debtors and all parties in interest.'" *In re Bethlehem Steel Corp.*, 2003 WL 21738964, at *12 (S.D.N.Y. July 28, 2003) (court approved, pursuant to section 363(b) of the Bankruptcy Code, the reimbursement of professional fees of a union engaged in early plan negotiations with a debtor). A motion to authorize such payments is further bolstered when it is shown, as is the case with the Work Fees, that the use not only has a "'proper business justification'" but "has potential to lead toward confirmation of a plan and is not [designed] to evade the plan confirmation process." *In re Chrysler LLC,* 405 B.R. 84, 96 (Bankr. S.D.N.Y. 2009) (approving an expedited proposal to sell assets).

15. Accordingly, absent evidence of "self-dealing or manipulation among the parties who negotiated the reimbursement procedures" reimbursement motions should be approved. *In re ASARCO, L.L.C.*, 650 F.3d 593, 603 (5th Cir. 2011) (Fifth Circuit (i) upheld bankruptcy court decision to prospectively approve payment of due diligence fees of bidders in an auction for debtor properties pursuant to section 363(b), and (ii) explicitly rejected arguments

6

that such authority could only be granted pursuant to section 503(b)(3)(D)). As discussed above, courts are especially inclined to approve reimbursement agreements, when they will facilitate processes that "maximize the value of [a debtor's] estate." *Id.*

16.     The negotiations with the Group are an integral part of American's efforts to move forward to achieve the objectives of chapter 11. The Commitments, if obtained, will facilitate the proposal and confirmation of a chapter 11 plan. A chapter 11 plan with support and financing from key creditors, such as the Group, will have a greater probability of successful confirmation. Accordingly, the relief requested is in the best interests of American and its economic stakeholders.

### *Section 363(b) is the Proper Standard to Apply to the Relief Requested*

17.     Section 363(b) of the Bankruptcy Code and the business judgment rule is the proper standard of review for the relief requested. Although parties objecting to reimbursement motions occasionally assert that such motions should be brought pursuant to either section 327(e) (employment of professional persons) or 503(b)(3) of the Bankruptcy Code (allowance of administrative expense for reimbursement), section 363(b) of the Bankruptcy Code is the proper source of authority for authorizing reimbursement motions. *In re Enron Corp.,* 335 B.R. at 29 (upholding bankruptcy courts approval of an application to retain a law firm (and pay its fees) to represent employees of the debtors in a pending investigation pursuant to section 363(b) as opposed to section 327(e)). The fact that similar relief may be sought under different circumstances pursuant to a different section of the code is irrelevant. As the *ASARCO* court noted, "[t]he authorization of certain types of payments under section 363(b) is not prohibited simply because there is another section of the Bankruptcy Code related to the same type of payment." *Id.* (*quoting In re Bethlehem Steel Corp.*, 2003 WL 2173864, at *11). Courts have

held "that the business judgment standard is the better fit for assessing [a debtor's] reimbursement motion" because "[s]ection 363 addresses the debtor's use of the estate property." *In re ASARCO, L.L.C.*, 650 F.3d at 602.  In denying an argument that section 503 is required for reimbursement of fees as administrative expenses, the *ASARCO* court held that section 503 "generally applies to third parties that have already incurred expenses in connection to the debtor's estate," but that in the context of prospective reimbursement orders, "application of the [363(b)] business judgment standard is appropriate." *Id.* at 602-603.  The court in *Bethlehem Steel* reached a similar conclusion stating that in situations "where a creditor incurs expenses in attempting to collect on pre-petition claims . . . that situation is covered by § 503," but where the "[debtor] determined that paying the [creditor's] expenses was a good business decision and would help develop a reorganization plan . . . it was appropriate for the debtors to reimburse the [creditor's professionals] for the reasonable cost of [their] advice and counsel." *In re Bethlehem Steel Corp.*, 2003 WL 2173864, at *11.

18.     American is requesting authority for the Work Fees in furtherance of American's ultimate goal of confirmation and consummation of a chapter 11 plan.  Therefore, section 363(b) is the proper standard under which the relief requested should be considered.

## Conclusion

19.     The relief requested in based upon the exercise of sound business judgment by American.  The payment of the Work Fees of the Group's Professionals has the support of the UCC and is in the best interests of American and all parties in interest.  The Motion should be granted and American authorized to perform in accordance with the Fee Letter.

**Notice**

20.  Notice of this Motion has been provided to the Group, Milbank, Houlihan, and parties in interest in accordance with the Amended Order Pursuant to 11 U.S.C. §§ 105(a) and (d) and Bankruptcy Rules 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures, dated August 8, 2012 (ECF No. 3952).  In view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

21.  No previous request for the relief sought in this Motion has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request that the Motion be granted and that they be granted such other and further relief as is just.

Dated: New York, New York
       August 29, 2012

                                  /s/ Stephen Karotkin
                                  Harvey R. Miller
                                  Stephen Karotkin
                                  Alfredo R. Pérez

                                  WEIL, GOTSHAL & MANGES LLP
                                  767 Fifth Avenue
                                  New York, New York 10153
                                  Telephone: (212) 310-8000
                                  Facsimile: (212) 310-8007

                                  Attorneys for Debtors
                                  and Debtors in Possession

**EXHIBIT "A"**

US_ACTIVE:\44069416\9\14013.0139

**AD HOC GROUP OF AMR CORPORATION CREDITORS**
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005

August 28, 2012

AMR Corporation
4333 Amon Carter Boulevard
Fort Worth, Texas 75261
Attention: Gary F. Kennedy, Esq.


Fee Letter

Ladies and Gentlemen:

      On November 29, 2011, AMR Corporation and certain of its direct and indirect domestic subsidiaries (collectively, "you" or the "Debtors") commenced cases under chapter 11 of title 11 of the United States Code, 11, U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), which are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

      You have informed that certain Ad Hoc Group of AMR Corporation Creditors, the constituency of which may be modified from time to time (such group, the "Group"), represented by Milbank, Tweed, Hadley & McCloy LLP ("Milbank") as counsel and its financial advisors, Houlihan Lokey Howard & Zukin ("Houlihan"), that the Debtors will be seeking to negotiate, propose and file a chapter 11 plan or plans of reorganization and, in connection therewith, may seek commitments for equity and other financings. You have also advised the Group that you are exploring strategic alternatives involving a potential public combination transaction in collaboration with the UCC. One or more members of the Group, as substantial creditors of the Debtors, have expressed an interest in participating and/or providing for equity and other financings for the Debtors and are prepared to engage in negotiations with the Debtors and the UCC concerning such equity and other financings, subject to analysis of the terms of a plan or plans of reorganization (collectively, the "Commitments") and subject to appropriate due diligence and analyses of the Debtors' reorganization proposals.

      The Debtors agree to reimburse the Group, to the extent provided in this Fee Letter and whether or not a Commitment is obtained, closed upon and funded, as allowed administrative expenses of the Debtors' chapter 11 cases the reasonable professional fees and reasonable and documented out of pocket costs and expenses (to the extent that such costs and expenses comply with the Debtors' guidelines for the Debtors' retained professionals and may also include any

reasonable fees, charges and disbursements for specialists retained by Milbank in connection with the proposed financing) incurred by Milbank and Houlihan incurred on and after August 1, 2012 solely in connection with the Group's due diligence, analyses, negotiation, preparation and execution of any Commitment and related transaction documents and any ancillary efforts related thereto. The Group expressly agrees and acknowledges that no professional fees and/or expenses shall be reimbursable hereunder for any other scope of engagement activity for which the Group has retained Milbank and Houlihan, including, but not limited to, the monitoring of or participation in the Debtors' chapter 11 cases on account of any existing or future claims held by members of the Group and any incidental matters relating to the formulation and maintenance of the Group such as the preparation, filing and updating of the Group's statement(s) pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure.

Milbank's hourly fee schedule is set forth on **Schedule A**. The Debtors agree also to pay Houlihan a monthly fee for services performed at the rate of $150,000 per month earned as of the first day of the month for which Houlihan is being compensated and all reasonable and documented out of pocket expenses incurred beginning as of August 1, 2012. This Agreement is without prejudice to the Group, Houlihan or Milbank with respect to any further request for reimbursement of fees and expenses incurred prior or in addition to the fees and expenses contemplated hereby, including a reasonable success fee to be paid to Houlihan if a binding Commitment is received from one or more members of the Group or otherwise resulting primarily from the efforts of the Group and the Commitment is closed and funded, provided, however, that any such request shall first be negotiated among the Debtors, the UCC and the Group and shall be subject to further approval by the Bankruptcy Court having jurisdiction over the Debtors' chapter 11 cases with the rights of all interested persons, including the Debtors and the UCC, to object thereto.

The current members of the Group consist, as of the date hereof, of the entities identified in **Schedule B** annexed hereto. The Group shall at all times comply with Rule 2019 of the Federal Rules of Bankruptcy Procedure. The Group will promptly inform counsel to the Debtors and the UCC, in writing, of any deletions or additions to the Group.

Either the Debtors or the UCC may terminate this Fee Letter at any time upon thirty (30) days' written notice to Milbank; provided that the Debtors shall remain liable for all amounts owed under this Fee Letter through the effective date of such termination.

All fees and expenses payable pursuant to this Fee Letter, shall be paid promptly upon delivery of an invoice, copied to counsel to the UCC and the United States Trustee, but in no event later than 10 business days, and are, once paid, not refundable under any circumstances and will not be subject to counterclaim or set-off for, or be otherwise affected by, any claim or dispute relating to any other matter; provided, however, no portion of any statement objected to by the Debtors, the UCC or the United States Trustee shall be paid unless such objection is otherwise consensually resolved or withdrawn or the dispute is determined as provided in the next sentence of this paragraph. Unless otherwise ordered by the Bankruptcy Court, no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Bankruptcy Court, provided, however, the Bankruptcy Court shall have jurisdiction to determine any dispute concerning such invoices.

It is understood that this Fee Letter shall not constitute or give rise to any obligation on the part of the Group to provide or arrange any financing or support any plan of reorganization; such an obligation will arise only pursuant to a Commitment if delivered in accordance with its terms. This Fee Letter may not be amended or any provision hereof waived or modified except by an instrument in writing signed by each of the parties hereto. **THIS FEE LETTER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF, TO THE EXTENT THAT THE SAME ARE NOT MANDATORILY APPLICABLE BY STATUTE AND WOULD REQUIRE OR PERMIT THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION).** This Fee Letter may be executed in any number of counterparts, each of which shall be an original and all of which, when taken together, shall constitute one agreement. Delivery of an executed counterpart of a signature page of this Fee Letter by facsimile (or other electronic) transmission shall be effective as delivery of a manually executed counterpart of this Fee Letter.

The Debtors' obligations hereunder shall be subject to the approval of the Bankruptcy Court. The Debtors agree to promptly seek concurrence of the UCC to this Fee Letter and to file a motion seeking Bankruptcy Court approval of this Fee Letter.

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by returning to us an executed counterpart hereof, whereupon this Fee Letter shall become a binding agreement between us.

Very truly yours,

Milbank, Tweed, Hadley & McCloy LLP, as counsel to and on behalf of the Ad Hoc Group of AMR Corporation Creditors

By: _____
Name: Gerard Uzzi
Title: Partner

Accepted and agreed to as of
the date first above written:

**AMR Corporation, for itself
and its Debtor subsidiaries**

By: _____
Name: Gary F. Kennedy
Title: Senior Vice President and General Counsel

#4850-3558-1200
US_ACTIVE:\44079840\1\14013.0139

US_ACTIVE:\44083630\1\14013.0139

## SCHEDULE A

The standard hourly rates for Milbank professionals are based on each professional's level of experience. At present, the standard hourly rates charged by Milbank are in the following ranges:

| | |
|---|---|
| Partners: | $825 - $1,140 |
| Of Counsel: | $795 - $995 |
| Associates and Senior Attorneys: | $295 - $795 |
| Legal Assistants: | $130 - $290 |

5

## **SCHEDULE B**

1. Carlson Capital, L.P.
2. Claren Road Asset Management, LLC
3. CSS, LLC
4. Cyrus Capital Partners, L.P.
5. J.P. Morgan Securities LLC
6. King Street Capital Management, L.P.
7. Litespeed Management, L.L.C.
8. Pentwater Capital Management LP
9. Tricadia Capital Management
10. York Capital Management Global Advisors LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                                                 :
In re                                                            :    Chapter 11 Case No.
                                                                 :
AMR CORPORATION, et al.,                                         :    11-15463 (SHL)
                                                                 :
                        Debtors.                                 :    (Jointly Administered)
                                                                 :
-----------------------------------------------------------------x
```

**ORDER AUTHORIZING PAYMENT OF CERTAIN WORK FEES AND
EXPENSES OF PROFESSIONALS EMPLOYED BY THE AD HOC GROUP OF
<u>AMR CORPORATION CREDITORS</u>**

Upon the Motion, dated August 29, 2012 (the "**Motion**"),[1] of AMR Corporation and its related debtors, as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105 and 363 of title 11, United States Code (the "**Bankruptcy Code**"), for authority to reimburse certain work fees of professionals engaged by the Ad Hoc Group of AMR Corporation Creditors (the "**Group**"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested is supported by the Official Committee of General Unsecured Creditors, (the "**UCC**"); and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

"**Hearing**"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due consideration and deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted and American is authorized to act in accordance with the Fee Letter and pay the Group's Professionals for their Work Fees subject to the terms and conditions of the Fee Letter attached to the Motion as **Exhibit "A;"** and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
   September __, 2012

_____

United States Bankruptcy Judge
