BERNSTEIN SHUR SAWYER & NELSON, P.A.
100 Middle Street
P.O. Box 9729
Portland, ME 04104
Telephone: (207) 774-1200
Robert J. Keach, Esq. *(Admitted Pro Hac Vice)*

Fee Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
                                              :

**In re**                                 :

                                 :      **Chapter 11 Case No.**

**AMR CORPORATION, *et al.*,**        :

                                 :      **11-15463 (SHL)**

                    **Debtors.**      :

                                 :      **(Jointly Administered)**

-----------------------------------------------------------------------x

### FEE EXAMINER'S CONSOLIDATED FINAL REPORT PERTAINING TO THE INTERIM FEE APPLICATIONS OF CERTAIN RETAINED PROFESSIONALS FOR THE PERIOD FROM APRIL 1, 2012 THROUGH JULY 31, 2012

       Robert J. Keach (the "Fee Examiner") submits this Consolidated Final Report (the "Second Period Final Report") pursuant to the Stipulation and Order With Respect to Appointment of a Fee Examiner [Docket No. 3184] (the "Fee Examiner Order") in connection with the applications for allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses (the "Fee Applications") of certain professionals retained in the above-captioned, jointly administered cases (the "Retained Professionals"). Except as discussed below, the Fee Applications are interim applications and relate to the compensation and reimbursement of expenses requested for the period April 1, 2012 through July 31, 2012 (the "Second Fee Period").[1]

---

[1] This report covers both the First Interim and Second Interim Fee Applications of Kelly Hart & Hallman.

# I.  INTRODUCTION

1.      The Second Period Final Report covers the Fee Applications of eighteen (18) of the twenty-nine (29) Retained Professionals listed in the Notice of Hearing Regarding Interim Applications for Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses [Docket No. 6030], attached hereto as Exhibit A (the "Notice").  Of those twenty-nine Retained Professionals, eleven (11) Retained Professionals have asked to adjourn the hearing on their respective Fee Applications to April 23, 2013, and the Fee Examiner consents to the adjournment as to those Fee Applications.[2]  This Second Period Final Report addresses the Fee Applications of the remaining eighteen (18) Retained Professionals.[3]  As a consequence of the process described below, the Fee Examiner has reached an agreement with each of the eighteen Retained Professionals, and the Fee Examiner's recommendations as to fees to be allowed and expenses to be reimbursed for the Second Fee Period are detailed below and also set forth, for the convenience of the Court, on

---

[2] The Retained Professionals seeking adjournments are (1) Cooley, LLP ("Cooley"); (2) Felsberg, Pedretti; (3) Harris Finley & Boyle, P.C. ("Harris"); (4) Morgan Lewis & Bockius LLP; (5) Weil Gotshal & Manges LLC ("Weil"); (6) Yetter Coleman LLP ("Yetter"); (7) Dewey & LeBoeuf LLP ("Dewey"); (8) Debevoise & Plimpton; (9) Deloitte FAS; (10) Paul Hastings, LLP ("Paul Hastings"); and (11) Rothschild, Inc.  These applications will be adjourned to the hearing set for April 23, 2012.  In addition, Ryan, LLC, which filed its Third Interim Fee Application during the Second Fee Period, will have that fee application heard on or before April 23, 2013, but not on February 14, 2013. Additional detail regarding the adjournments for Cooley, Harris, Weil, Yetter, Dewey and Paul Hastings (collectively the "GDS Litigation Firms") is set forth below.

[3] The Retained Professionals covered by the Second Period Final Report are: (1) Brinks Hofer Gilson & Lione; (2) Ford & Harrison, LLP; (3) GCG, Inc.; (4) Groom Law Group; (5) Jenner & Block; (6) Kelly Hart & Hallman; (7) KPMG, LLP; (8) McKinsey Recovery & Transformation Services/McKinsey & Co.; (9) Mesirow Financial Consulting, LLC; (10) Skadden Arps Slate, Meagher & Flom LLP; (11) Togut Segal & Segal, LLP; (12) Epiq Bankruptcy Solutions, LLC; (13) Ernst & Young LLP; (14) Haynes & Boone, LLP; (15) Moelis & Company, LLC; (16) Skyworks Capital, LLC; (17) Winstead PC; and (18) Sheppard Mullin Richter & Hampton LLP.  This report covers both the First and Second Interim Fee Applications of Kelly Hart & Hallman.  The fee applications of the Fee Examiner and Bernstein Shur are also scheduled for February 14, 2013, and were listed in the Notice; those applications were reviewed and approved by the Office of the United States Trustee (and are, of course, not covered by this report).  The final application of the Boston Consulting Group ("BCG") was resolved by an earlier order of this Court, upon a stipulation among the Debtors, the Fee Examiner and BCG.  Finally, the Second Period Final Report does not address the First and Final Fee Application of Stuart Maue Mitchell & James, Ltd. [Docket No. 5081].  The Fee Examiner will address Stuart Maue's fee application by the filing of a separate pleading.

Exhibit B to this Second Period Final Report. A cumulative report with respect to the First and Second Fee Periods is attached hereto as Exhibit C.[4]

2. As the Fee Applications are interim applications under section 331 of the Bankruptcy Code, the Fee Examiner reserves all rights to challenge fees and expenses sought in connection with subsequent interim applications and any final applications. The Fee Examiner also takes this opportunity to once again commend the Retained Professionals for their professionalism in cooperating with the Fee Examiner throughout this process, and for the prompt, thorough, and detailed responses to the Fee Examiner's Preliminary Reports, and their responses to the Fee Examiner's requests for additional information.

## II.    THE APPOINTMENT OF THE FEE EXAMINER AND THE FEE EXAMINATION PROCESS

3. In light of the size and complexity of these chapter 11 cases, this Court appointed the Fee Examiner to "review and assess all Applications filed by Retained Professionals, and the fees and reimbursement of expenses for which allowance is sought pursuant to the Applications" for compliance with various applicable orders, rules and guidelines, and, to the extent such Applications are found to not be in compliance, "to object to the allowance of fees or expenses sought by [any] Retained Professional on any grounds, including, without limitation, the reasonableness of the fees and expenses sought." Fee Examiner Order, ¶¶ 1, 2.[5] After reviewing each Application filed by a Retained Professional, "the Fee Examiner shall prepare periodic reports on each Application (each, a "Preliminary Report") setting forth any issue or objection relating to the Retained Professional's Application . . . ." Id. at ¶ 4. The Fee Examiner shall transmit the Preliminary Report to the Debtors, the Debtors' lead counsel, counsel to the official

---

[4] Allowance of reimbursement of the expenses of Deloitte FAS, LLP for the First Fee Period is being adjourned to April 23, 2013 as well.

[5] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Fee Examiner Order.

committee of unsecured creditors (the "Committee"), the United States Trustee (the "UST"), and

the Retained Professional that is the subject of the Preliminary Report; the contents of the

Preliminary Report shall be confidential until such time as the Fee Examiner incorporates any or

all of the content of the Preliminary Report into a Final Report.  Id. at ¶ 4.a.  The Fee Examiner

and the Retained Professional "shall endeavor to reach a mutually acceptable resolution of any

issues identified by the Fee Examiner in the Preliminary Report," and the Fee Examiner shall

provide the Retained Professional "with a reasonable opportunity to resolve any issues identified

in the Preliminary Report or to amend the Application."  Id. at ¶ 4.b.  "After a reasonable

opportunity to respond to the Preliminary Report and resolve any issues set forth therein, the Fee

Examiner shall file a final report . . . with the Court setting forth any unresolved objections to the

Application."  Id. at ¶ 4.c.

      4.       Additionally, pursuant to the Fee Examiner Order,

> [T]o the extent that any order approving the retention of any Retained
> Professional in whole or in part under section 328 of the Bankruptcy Code
> authorizes any party, including, without limitation, the United States
> Trustee, to object to the allowance of fees or expenses sought by such
> Retained Professional on any grounds, including, without limitation, the
> reasonableness of the fees and expenses sought, the Fee Examiner shall also
> be authorized (and shall have standing) to object to the allowance of such
> fees and expenses, consistent with this Stipulation and Order and subject to
> existing applicable legal principles and precedent.

Fee Examiner Order, ¶ 1.  All of the orders approving the retention of Retained Professionals in

whole or in part under section 328 of the Bankruptcy Code ("Section 328 Professionals") entered

as of the date of this Second Period Final Report also authorize the UST (and in some cases other

parties) to object to the allowance of the Retained Professional's fees or expenses on

reasonableness grounds.   Accordingly, the Fee Examiner reviewed each Fee Application,

including each Fee Application of a Section 328 Professional, under the reasonableness standard set forth in section 330 of the Bankruptcy Code.[6]

5.     The Fee Examiner reviewed the Fee Applications for compliance with applicable provisions of the Bankruptcy Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "UST Guidelines"), as supplemented by this Court's Order regarding Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases ("M-389").  The Fee Examiner also reviewed the Fee Applications for general compliance with legal precedent established by the District Courts and Bankruptcy Courts for the Southern District of New York, the Second Circuit Court of Appeals, and other applicable precedent.

6.     Following that review, the Fee Examiner issued a detailed Preliminary Report as to each Retained Professional.  Each Preliminary Report set forth the legal and other standards governing the review, and raised questions as to certain designated time entries or expenses. Each Retained Professional was invited to respond to the Preliminary Report, and all of the Retained Professionals covered by this Second Period Final Report produced responses addressing the questions, in some cases more detailed and extensive than the original Fee Application.  E-mail exchanges were conducted and telephone conferences were held.  In the case of some of the Retained Professionals, personal, face-to-face meetings were conducted with

---

[6] The precise scope of, and methodology for, this review may be the subject of some uncertainty.  The resolutions reached with the Section 328 Professionals and set forth in this Second Period Final Report do not imply any agreement by the Section 328 Professionals as to the scope of the review or the methodologies used by the Fee Examiner, and the Fee Examiner and the Section 328 Professionals reserve all rights with respect to such issues.

the Retained Professionals in New York. Through this process, substantial additional information was provided to the Fee Examiner.

7.     Following receipt of the additional information, which information often clarified or resolved many of the questions raised by the Fee Examiner, the Fee Examiner sent revised proposals to the Retained Professionals as to his recommendations for allowance of fees and reimbursement of expenses. As a consequence of exchanges with the Retained Professionals following the delivery of these revised proposals, resolutions were reached with each of the Retained Professionals whose Fee Applications are covered by this Second Period Final Report.

### III.     STANDARDS APPLIED BY THE FEE EXAMINER

8.     The standards applied by the Fee Examiner are set forth in the Consolidated Final Report previously filed with the Court [Docket No. 4453], and those standards are incorporated herein by reference, and except to the extent necessary to describe particular results below, will not be repeated in this Second Period Final Report.

### IV.     ISSUES REGARDING REDACTION BY THE GDS LITIGATION FIRMS; MOTION FOR PROTECTIVE ORDER; ADJOURNMENT

9.     In the Preliminary Reports with respect to the Fee Applications for the Second Fee Period filed by Cooley, Dewey, Harris, Paul Hastings, Weil and Yetter (collectively, the "GDS Litigation Firms"), the Fee Examiner raised questions as to a considerable percentage of the time entries related to the so-called "GDS Litigation". Without limitation, the Fee Examiner designated many of those time entries as so vague that he was unable to determine whether the fees incurred in connection with the GDS Litigation are or are not reasonable, and also unable to determine whether or not there is impermissible duplication of effort among the various GDS Litigation Firms. The Fee Examiner was informed that the reason for the condition of the challenged time entries is that the entries were either redacted or modified to protect against the

disclosure of information allegedly protected by the attorney-client privilege, disclosure of work product (including trial and/or litigation strategy), and disclosure of otherwise confidential information.[7] This issue is not an insignificant matter; fees sought by the GDS Litigation Firms for time spent on the GDS Litigation for the first two fee periods alone exceed $23 million, and that litigation, while now partially settled as to one party, continues as to other defendants.

10.     The Fee Examiner has reserved his rights as to whether such redaction was required or required to the extent that it was done. The preferred approach to this problem is for the professionals to keep time that is sufficiently detailed to allow the Fee Examiner and the Court to make judgments about reasonableness and duplication but without revealing privileged or confidential information or work product. Judge Gerber has stated his belief that this is usually possible; accordingly, he generally does not allow compensation for reviewing and editing time records to redact or modify such records for this purpose. In the GM case, Judge Gerber noted that properly kept time entries, in the first instance, should not reveal either privileged or confidential information or communications; accordingly, review for this purpose is unnecessary and therefore noncompensable. In re Motors Liquidation Co., Second Interim Fee H'rg Tr. at 6-16, No. 09-50026 (Bankr. S.D.N.Y., July 6, 2010, 2:33 p.m.). While not applicable to this case, the proposed new Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases (25 CFR Part 58, Appendix B)(the "New UST Large Case Guidelines") take a similar approach. The New UST Large Case Guidelines provide, at section B.2.f., that:

> Activities that the United States Trustee may object to as non-compensable include but are not limited to:
>
> …

---

[7] Some of the GDS Litigation Firms noted the redaction in the Fee Applications. See, e.g., Weil's Fee Application [Docket No. 4520] at ¶ 36 (detailing the need for reduction in connection with the GDS Litigation).

> Excessive redaction of bills or invoices for privileged or confidential information. Professionals and paraprofessionals whose compensation will be paid by the bankruptcy estate know at the inception that their billing records must be publicly filed and should draft time entries and prepare invoices to both minimize redactions and avoid vague descriptions. The time spent for redactions should be reasonably proportional to the overall fees sought.

11.     The fee guidelines for the Southern District of New York, M-389, provide for this circumstance. M-389 allows for the removal of privileged or confidential information from fee applications while maintaining the ability of the court to request production of undirected time entries for an *in camera* review:

> If there is a need to omit any information or description of services as privileged or confidential, the applicant may make such a request of the court; provided, however, that if such a request is granted, the court may request that it be furnished with a set of unredacted time records for *in camera* inspection.

M-389, ¶ B.

12.     As M-389 acknowledges, occasions arise where redaction is necessary. Courts have indeed held that there are situations where redaction is appropriate; however, the applicant must explain the reason or specifically invoke attorney-client privilege to justify the redactions. *See* In re Las Vegas Monorail Co., 485 B.R. at 553, 559 n.10 (Bankr. D. Nev. 2011) ("An explanation from the law firms is necessary because it seems highly likely that the time entries in question could have been written in such a way as to safeguard the privilege and still allow the court to perform the required fee review."); *see also* Toussie v. Cnty. of Suffolk, 2012 WL 3860760, at *8 n.10 (E.D.N.Y., Sept. 6, 2012) ("The Court notes that counsel may be redacting entries that they believe are protected by attorney-client privilege. However, the Court is speculating, as [plaintiff] has not invoked the privilege."); *see also* B&F Sys., Inc. v. LeBlanc, 2010 WL 2529191, at *11 (M.D. Ga., June 29, 2012) (reducing fees awarded where there was no explanation for the redaction of time entries).

8

13.     Courts considering the issue have held that filing of redacted time records along with submission of unredacted billing records for *in camera* review is sufficient to allow a reasonableness review of time entries and protect confidential or privileged information.  The Bankruptcy Court for the Northern District of New York suggested this practice, now embodied in M-389.  <u>In re Bennett Funding Grp., Inc.</u>, 213 B.R. 234 (Bankr. N.D.N.Y. 1997).  Entries that are "made vague intentionally to protect privileged or confidential material should be noted appropriately, such as by the word 'Redacted,' and such information should be available to the court for *in camera* review if the need should arise."  <u>Id.</u> at 245; *see also* <u>2002 Irrevocable Trust for Richard C. Hvizdak v. Shenzhen Dev. Bank, Co., Ltd</u>, 2011 WL 4112776, at *7 (M.D. Fla. Sept. 15, 2011) (suggesting that if the defendant wanted to maintain confidentiality of the information, the defendant should have filed a motion to submit unredacted billing records under seal); <u>In re Rheuban</u>, 121 B.R. 368, 385 (Bankr. C.D. Cal. 1990) ("[A]ny potential violation of [attorney-client] privileges can be avoided by an *in camera* review of fee statements.").  <u>B&F Sys., Inc. v. LeBlanc</u>, 2010 WL 2529191, at *11 ("If the Plaintiff believed it necessary to maintain confidentiality of this information, it could have moved to file unredacted versions of the billing statements under seal, but it did not.").  Where a bankruptcy court could not determine "what [creditors'] counsel spent its time doing" because of redactions in the fee application, the bankruptcy court reduced the fees from $141,000 to $50,000.  <u>In re Cain</u>, 2007 WL 128780, at *7 .  On appeal, the B.A.P., remanded the matter to the bankruptcy court to review unredacted time statements provided by counsel rather than reducing the fees.  <u>Id.</u> at *7. ("While we fully understand the court's frustration with the submissions it received on the very day of the hearing, we believe the bankruptcy court should have reviewed the unredacted time statements that were

offered by [the applicant] under seal in order to make the appropriate findings and apply the factors set out in [case law] and § 330(a).").

14.     Even if M-389 did not suggest an approach to this issue, under both the Bankruptcy Code and Bankruptcy Rules, a court can enter an appropriate protective order.  In <u>Las Vegas Monorail Co.</u>, Judge Markell suggested 11 U.S.C. § 107 and Federal Rule of Bankruptcy Procedure 9018 as alternative methods of protecting confidential information in fee applications or time entries.  <u>Las Vegas Monorail Co.</u>, 485 B.R. at 558–559 (if the applicant had utilized 11 U.S.C. § 107 and Fed. R. Bankr. P. 9018, the applicant "would have at least given the court the opportunity to consider whether, accompanied by a privilege log, the interim fee applications were suitable for filing under seal or in a redacted form.").  Rule 9018 provides that the court may enter any order to protect trade secrets or other confidential research, development or commercial information.  *See also* <u>In re CF&I Fabricators</u>, 131 B.R. 474, 487 (Bankr. D. Utah 1991) ("If the full description of legal services performed must be protected, a much better practice would be to obtain a protective order, as opposed to redacting descriptive entries.");  *but see* <u>In re Fibermark, Inc.</u>, 330 B.R. 480, 507 (Bankr. D. Vt. 2005) (finding that neither "communications protected by the attorney-client privilege [nor] materials subject to the work-product doctrine fall within the ambit of the 'confidential research, development or commercial information.'").  Moreover, Rule 502(d) of the Federal Rules of Evidence, which applies to contested matters in bankruptcy cases, also provides a basis for a protective order.  Fed. R. Evid. 502(d).

15.     Most important, regardless of issues of privilege, work product or confidentiality, the applicant bears the burden of proving that the fees requested are reasonable and necessary under 11 U.S.C. § 330(a)(4).  <u>Las Vegas Monorail Co.</u>, 458 B.R. at 557.  "[A]ttorneys must

adequately disclose and describe the work for which they seek payment in an interim fee application." Id. at 558. Where descriptions in time entries are so redacted the court cannot determine the nature of the legal service performed, the court cannot evaluate the reasonableness of those services. In re RNI Wind Down Corp., 2007 WL 949647 at *6 (Bankr. D. Del. 2007). "Professionals may not properly avoid scrutiny of their fee application by redacting the description of the billing entry." In re Tri-State Plant Food, 273 B.R. 250, 267 (Bankr. M.D. Alabama 2002). "It is impossible to determine whether a billing entry is reasonable and necessary if the description is redacted." Id. The review of time records to determine if the fees requested are reasonable and necessary "becomes problematic when the supporting time records redact information essential to the task." Okla. Natural Gas Co. v. Apache Corp., 355 F. Supp. 2d 1246, 1258 (N.D. Okla. 2004). As articulated by the Court of Appeals for the 11th Circuit, "where a significant number of entries are severely redacted …, it may be an abuse of discretion to award fees based on the redacted entries." Oxford Asset Management, Ltd. v. Jaharis, 297 F.3d 1182, 1197 (11th Cir. 2002).

16.     However, courts have acknowledged that there is a tension between the need to prevent disclosure of confidential or privileged information and the requirement that applicants provide detailed supporting time entries in fee applications, and the Fee Examiner recognizes the dilemma that is created for the Retained Professionals. However, as Judge Markell stated in Las Vegas Monorail, "the existence of either confidential or privileged information, and the attorney's duty to protect both, does not excuse or alter the burden that an attorney must satisfy before a court may award fees under Section 330(a)(4)(A)." 485 B.R. at 559; see also In re 114 Tenth Ave Assocs., Inc., 2010 WL 3304294, at *1 (Bankr. S.D.N.Y. 2010) ("[L]awyers are entitled in appropriate circumstances to extract from billing records and redact certain

information. On the other hand, billing records must provide sufficient detail and support for the fees claimed.")  As Judge Markell elaborated:

> The duty of an attorney to protect the attorney-client privilege or to prevent dissemination of other confidential information, does not override the court's duty to review fees.

Las Vegas Monorail Co., 485 B.R. at 558.  In Lehman Brothers Holdings, Inc. v. Loan Network, LLC, the court acknowledged that certain information "must be redacted to preserve privilege (such as a time entry describing the contents of a letter or telephone call with a client)," however, the applicant "must provide a sufficient description of the specific tasks performed in connection with the case for the Court to determine whether the amount of time spent on the case is reasonable."   2010 WL 4553674, at *4 (W.D. Wash., Nov. 3, 2010).   In making redactions, "[t]he professional should weigh the necessity for confidentially against the mandate to fully disclose to all parties the basis for the fees requested."   In re CF&I Fabricators, 131 B.R. 474, 487 (Bankr. D. Utah 1991).

17.     Accordingly, as noted above, courts have allowed redacted entries to be cured through the provision of additional information or unredacted entries, filed under seal with the benefit of a protective order. Where interim fee applications of two firms failed to explain or mention redactions in 6% and 13% of their respective time entries, the court denied without prejudice, the portions of the fee applications that related to the redacted entries.  Las Vegas Monorail, 485 B.R. at 556-559.   Where "numerous entries describing the nature of the services provided were redacted," the court denied without prejudice the fee application and would consider the application when full compliance with fee guidelines was feasible. Tri-State Plant Food, 273 B.R. at 267. Where the plaintiff's time entries were "so heavily redacted that the Court could not possibly determine whether the time billed . . . [was] reasonably related to the cases" the court denied without prejudice the award of attorneys' fees. Lehman Bros. Holdings, Inc.,

2010 WL 4553674, at *3-4.  *See also*, BASF Agro B.V., 2012 WL 3070941 at *2 (M.D. Ga. July 25, 2012) (ordering the applicant to provide unredacted versions of the fee invoices sufficient to provide a description of the task worked on for each attorney).

18.     The Motion for Protective Order.  In light of these issues, and the Fee Examiner's concern that the Retained Professionals not be punished to the extent that redaction was necessary or appropriate in light of the clients' demands or instructions, the Fee Examiner and the Debtors agreed to file the Joint Motion of Debtors and Robert J. Keach, Esq., Fee Examiner, Pursuant to Administrative Order M-389, 11 U.S.C. § 107(b), Fed. R. Bankr. P. 9018, and Fed. R. Evid. 502 (d), for Entry of a Protective Order [Dkt. 6400] (the "Motion for Protective Order").[8]  The Motion for Protective Order, if granted, will allow the GDS Litigation Firms (as well as other Retained Professionals) to provide the Fee Examiner and the Court with unredacted time entries and other information without waiver of the attorney-client privilege, work product immunity, or other claims of confidentiality.  If such entries and information are provided, the Fee Examiner (and the Court) will also be provided with the information necessary to assess the reasonableness of the fees sought, and to determine issues of potential duplication.  Accordingly, pending consideration of the Motion for Protective Order and, if that motion is granted, provision to the Fee Examiner of unredacted time entries and other information, the hearings on the Second Period Fee Applications of the GDS Litigation Firms were continued by agreement to April 23, 2013.

---

[8] Prior to the filing of the Motion for Protective Order, the Fee Examiner signed a confidentiality agreement, and the Debtors supplied additional documents to the Fee Examiner thereunder.  In addition, the Fee Examiner met with the Debtors' representatives in New York and Dallas to gain additional information on the staffing and prosecution of the GDS Litigation and the role of each GDS Litigation Firm.

## V. THE FEE EXAMINER'S RECOMMENDATIONS AS TO THE FEE APPLICATIONS

19.     The Fee Examiner makes the following specific recommendations as to the Fee Applications:

**Brinks Hofer Gilson & Lione**

20.     Brinks Hofer Gilson & Lione ("Brinks Hofer") serves as intellectual property counsel to the Debtors.  For its services, Brinks Hofer is compensated on both a fixed fee and hourly fee basis.  *See* Brinks Hofer Retention Application [Docket No. 2189], ¶ 22-24.  On September 11, 2012, Brinks Hofer filed its Second Interim Fee Application for Compensation for Services Rendered and Reimbursement of Expenses of Brinks Hofer Gilson & Lione as Intellectual Property Counsel for the Debtors for the Period of April 1, 2012 Through July 31, 2012 [Docket No. 4400] (the "Brinks Hofer Second Fee Application").  The Brinks Hofer Second Fee Application seeks approval of fees in the amount of $272,778.00 and reimbursement of expenses in the amount of $165,220.02.

21.     The Fee Examiner reviewed the Brinks Hofer Second Fee Application to ensure compliance with the applicable rules, orders, and guidelines.  Based on that review, the Fee Examiner generated a Preliminary Report that identified the following issues with the Brinks Hofer Second Fee Application:

    (a)    Technical compliance with the UST Guidelines and M-389;

    (b)    Lumped time entries;

    (c)    Transitory timekeepers;

    (d)    Duplicative tasks;

    (e)    Clerical/administrative tasks;

    (f)    Paralegal tasks performed by attorneys;

    (g)    Unsupported charges relating to foreign associates; and

(h)     Itemization of expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

22.     In response to the Preliminary Report, Brinks Hofer provided the Fee Examiner with a nine page response addressing, on a paragraph-by-paragraph basis, the issues identified in the Preliminary Report (the "Brinks Hofer Response").  The Brinks Hofer Response contained revised time entries addressing the entirety of the lumped entries, extensive explanations of issues raised in the Preliminary Report relating to transitory timekeepers, entries questioned as duplicative, clerical or administrative tasks and paralegal tasks performed by attorneys.  The Brinks Hofer Response also included additional backup documentation relating to the questioned expenses.  After receipt of the Brinks Hofer Response, Brinks Hofer and the Fee Examiner engaged in substantial dialogue to address and resolve the issues raised by the Preliminary Report.

23.     As a result, Brinks Hofer and the Fee Examiner have agreed to a recommended reduction in fees in the amount of **$4,144.75**.  After consideration of the agreed-upon reductions, Brinks Hofer is requesting allowance of fees in the amount of **$268,633.25** and expenses in the amount of **$165,220.02** in relation to the Brinks Hofer Second Fee Application.  The Fee Examiner supports Brinks Hofer's modified request.

**Epiq Bankruptcy Solutions, LLC**

24.     Epiq Bankruptcy Solutions, LLC ("Epiq") serves as information agent to the Committee.  For its services, Epiq is compensated on an hourly fee basis as well as a fixed fee basis.  *See* Epiq Retention Application [Docket No. 1173], ¶ 13.  On September 17, 2012, Epiq filed the Second Interim Application of Epiq Bankruptcy Solutions, LLC as Information Agent

for the Official Committee of Unsecured Creditors, for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred from April 1, 2012 Through July 31, 2012 [Docket No. 4513] ("Epiq's Second Fee Application").  Epiq's Second Fee Application seeks approval of fees in the amount of $12,436.10 and reimbursement of expenses in the amount of $36,850.19 (after a voluntary reduction in expenses in the amount of $646.79).

25.     The Fee Examiner reviewed Epiq's Second Fee Application to ensure compliance with the applicable rules, orders, and guidelines.  Based on that review, the Fee Examiner generated a Preliminary Report that raised questions and requested additional information as to the following categories with respect to Epiq's Second Fee Application:

(a)     Technical compliance with the UST Guidelines and M-389;

(b)     Duplicative tasks;

(c)     Itemization of expenses;

(d)     Meal expenses;

(e)     Photocopies;

(f)     Facsimiles;

(g)     Overhead expenses; and

(h)     A lack of expense backup documentation, generally.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

26.     As a result of written communications regarding the Preliminary Report, Epiq and the Fee Examiner have agreed to a final recommended reduction in expenses in the amount of **$29.77** and no recommended reductions with respect to fees.  The final recommendations result in an allowance of fees in the amount of **$12,436.10** and reimbursement for expenses in the

amount of **$36,820.42** in relation to Epiq's Second Fee Application. The Fee Examiner supports Epiq's modified request.

**Ernst & Young LLP**

27.     Ernst & Young LLP ("E&Y") serves as auditor to the Debtors. For its services, E&Y is compensated on a fixed fee basis and an hourly fee basis. *See* E&Y Retention Application [Docket No. 582], ¶ 13; E&Y Supplemental Retention Application [Docket No. 3236], ¶ 13. On September 17, 2012, E&Y filed the Second Interim Application of Ernst & Young LLP, Auditor for the Debtors and Debtors in Possession, for Allowance and Payment of Compensation for Professional Services and Reimbursement of Actual and Necessary Expenses [Docket No. 4525] (the "E&Y Second Fee Application"). The E&Y Second Fee Application seeks approval of fees in the amount of $1,663,796.14 and reimbursement of expenses in the amount of $22,159.32.

28.     The Fee Examiner reviewed the E&Y Second Fee Application to ensure compliance with the applicable rules, orders and guidelines. Based on this review, the Fee Examiner generated a Preliminary Report that identified the following issues with the E&Y Second Fee Application:

(a)     Technical compliance with the UST Guidelines;

(b)     Hourly rate increases/application of appropriate hourly rates;

(c)     Discrepancies in calculation of fees and expenses;

(d)     Lumped time entries;

(e)     Block billing/questioned time increments;

(f)     Transitory timekeepers;

(g)     Vague time entries;

(h)     Tasks potentially outside the scope of E&Y's retention;

(i)     Repetitive time entries;

(j)     Extended Days;

(k)     Multiple attendees at external meetings, conferences, or other events;

(l)     Intra-office conferences;

(m)     Clerical/administrative tasks;

(n)     Time spent reviewing/editing time records;

(o)     Reasonableness of compensation requested for fixed fee services;

(p)     Travel expenses;

(q)     Overtime expenses;

(r)     Meal expenses;

(s)     Overhead expenses; and

(t)     Local travel expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

29.     In response to the Preliminary Report and telephone conferences and email communication with the Fee Examiner regarding the Preliminary Report, E&Y provided the Fee Examiner with additional information and explanation addressing the issues raised in the Preliminary Report ("E&Y's Response").   E&Y's Response provided explanation of issues raised in the Preliminary Report relating to transitory timekeepers, block billing/questioned time increments, extended days, tasks potentially outside the scope of retention, clerical or administrative tasks, and reasonableness of fixed fees.  To address issues with multiple attendees at meetings, conferences, intra-office conferences and other events, E&Y's Response contained revised time entries with additional information for each questioned entry.  Additionally, E&Y's Response provided explanation of questioned expenses relating to meals, overhead expenses and

travel. After receipt of E&Y's Response, E&Y and the Fee Examiner engaged in substantial dialogue to address and resolve the issues raised by the Preliminary Report.

30. As a result, E&Y and the Fee Examiner have agreed to a final recommended reduction in fees in the amount of **$22,363.85** and expenses in the amount of **$1,110.92**. After consideration of the agreed-upon reductions, E&Y is requesting allowance of fees in the amount of **$1,641,432.29** and expenses in the amount of **$21,048.40** in relation to the E&Y Second Fee Application. The Fee Examiner supports E&Y's modified request.

**Ford & Harrison LLP**

31. Ford & Harrison LLP ("Ford Harrison") serves as special labor and employment counsel to the Debtors. For its services, Ford Harrison is paid on an hourly basis. *See* Order Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bank. P. 2014(a) Authorizing the Employment and Retention of Ford & Harrison LLP as Special Counsel Nunc Pro Tunc to the Commencement Date [Docket No. 3949]. On September 17, 2012, Ford Harrison filed its First Interim Application of Ford & Harrison LLP, Special Labor and Employment Counsel to the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses for the Period from November 29, 2011 through July 31, 2012 [Docket No. 4503] (the "Ford Harrison First Fee Application"). The Ford Harrison First Fee Application seeks approval of fees in the amount of $787,564.50 and reimbursement of expenses in the amount of $127,352.70.

32. The Fee Examiner reviewed the Ford Harrison First Fee Application to ensure compliance with the applicable rules, orders, and guidelines. Based on that review, the Fee Examiner generated a Preliminary Report that identified the following issues and questions with respect to the Ford Harrison First Fee Application:

(a)    Compliance with Bankruptcy Rule 2016, the UST Guidelines, and M-389;

(b)    Topy-heavy billing practices;

(c)     Discrepancies in billing rates;

(d)     Discrepancies between the fees requested and the fees actually documented in the electronic and/or hard copy data received from Ford Harrison;

(e)     Lumped time entries;

(f)     Block billing/time increments;

(g)     Transitory timekeepers;

(h)     Vague time entries;

(i)     Performance of services that may be outside the scope of Ford Harrison's retention;

(j)     Repetitive time entries;

(k)     Performance of services that may be duplicative;

(l)     Administrative or clerical activities;

(m)     Travel expenses;

(n)     Meal expenses; and

(o)     Personal expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

33.     In response to the Preliminary Report, email communication, and in-person meetings with the Fee Examiner regarding the Preliminary Report, Ford Harrison provided the Fee Examiner with satisfactory explanations of certain issues raised in the Preliminary Report. As a result, Ford Harrison and the Fee Examiner have agreed to a recommended reduction in fees in the amount of **$3,048.01** and a reduction in expenses in the amount of **$13,692.41**. After consideration of the agreed-upon reductions, Ford Harrison is requesting allowance of fees in the amount of **$784,516.49** and expenses in the amount of **$113,660.29** in relation to the Ford Harrison First Fee Application. The Fee Examiner supports Ford Harrison's modified request.

**GCG, Inc.**

34.     GCG, Inc. ("GCG") serves as administrative agent for the Debtors.   For its services, GCG is compensated primarily on an hourly fee basis with some services on a fixed fees basis.  *See* GCG Retention Application [Docket No. 584], ¶ 11.  On September 17, 2012, GCG filed its Second Interim Fee Application of GCG Inc., as Administrative Agent for the Debtors, for Allowance of Compensation and for Reimbursement of Expenses Incurred for the Period of April 1, 2012 through July 31, 2012 [Docket No. 4524] ("GCG's Second Fee Application").  GCG's Second Fee Application sought approval of fees in the amount of $28,153.76 (after voluntary reductions totaling $12,167.44) and reimbursement of expenses in the amount of $37.77.

35.     The Fee Examiner reviewed GCG's Second Fee Application to ensure compliance with the applicable rules, orders and guidelines.   Based on that review, the Fee Examiner generated a Preliminary Report that raised questions and asked for additional information with respect to GCG's Second Fee Application in the following areas:

(a)     Compliance with the UST Guidelines and M-389;

(b)     An inconsistency between approved rates and the actual billing rate of one individual;

(c)     Lumped time entries;

(d)     Block billing/questioned time increments;

(e)     Vague time entries;

(f)     Scope;

(g)     Repetitive time entries;

(h)     Duplicative entries;

(i)     Clerical/administrative tasks;

(j)     Responses to inquiries by the Fee Examiner with respect to GCG's first interim fee application;

(k)     Time spent reviewing/editing time records; and

(l)     Meals.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

36.     As a result of telephone conferences and email communication regarding the Preliminary Report, GCG and the Fee Examiner have agreed to a final recommended reduction in fees in the amount of **$1,200.85** and expenses in the amount of **$17.67**.  The Fee Examiner also agreed that GCG had complied with M-389.  The final reductions result in an allowance of fees in the amount of **$26,952.91** and reimbursement for expenses in the amount of **$20.10** in relation to GCG's Second Fee Application.   The Fee Examiner supports GCG's modified request.

**Groom Law Group, Chartered**

37.     Groom Law Group, Chartered ("Groom") serves as special employee benefits counsel to the Debtors.  For its services, Groom is compensated on an hourly basis.  *See* Final Order Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Groom Law Group, Chartered as Special Employee Benefits Counsel Nunc Pro Tunc to the Commencement Date [Docket No. 1558].  On September 17, 2012, Groom filed the Second Interim Fee Application of Groom Law Group, Chartered as Special Employee Benefits Counsel to the Debtors and Debtors in Possession for Interim Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred from April 1, 2012 Through July 31, 2012 [Docket No.  4507] (the "Groom Second Fee Application").   The Groom Second Fee Application seeks approval of fees in the amount of $1,933,140.15 and reimbursement of expenses in the amount of $60,763.63.

38.     The Fee Examiner reviewed the Groom Second Fee Application to ensure compliance with the applicable rules, orders, and guidelines.  Based on that review, the Fee Examiner generated the Fee Examiner's Preliminary Report Regarding Second Interim Fee Application of Groom Law Group, Chartered (the "Groom Second Preliminary Report"), which raised questions in the following areas with respect to the Groom Second Fee Application:

(a)  Compliance with the UST Guidelines and M-389;

(b)  Discrepancy in calculation of hours and fees;

(c)  Block billing/questioned time increments;

(d)  Transitory timekeepers;

(e)  Vague time entries;

(f)  Services outside the scope of retention;

(g)  Repetitive time entries;

(h)  Services provided by summer clerks;

(i)  Multiple attendees;

(j)  Excessive time;

(k)  Clerical/administrative tasks;

(l)  Non-working travel billed at full rate;

(m)Time spent reviewing/editing time records;

(n)  Itemization of expenses;

(o)  Non-supported expenses;

(p)  Travel expenses;

(q)  Photocopy expenses;

(r)  Overhead type expenses;

(s)  Computer-assisted legal research expenses;

(t)  Meal expenses; and

(u) Local travel expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

39.    In response to the Groom Second Preliminary Report, and through extensive telephone conferences and email communication with the Fee Examiner regarding the Groom Second Preliminary Report, Groom explained the nature and necessity of much of its fees and expenses.  As a result, Groom and the Fee Examiner have agreed to a recommended reduction of fees in the amount of **$100,661.36** and a recommended reduction of expenses in the amount of **$363.30**.    The  Fee  Examiner  recommends  that  the  Court  allow  fees  in  the  amount  of **$1,832,478.79** and reimbursement for expenses in the amount of **$60,400.33** in relation to the Groom Second Fee Application.

**Haynes and Boone, LLP**

40.    Haynes and Boone, LLP ("Haynes and Boone") serves as special counsel to the Debtors with respect to certain conflicts matters and certain ordinary course matters.  For its services, Haynes and Boone is compensated on an hourly fee basis.  *See* Order Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 Authorizing the Employment and Retention of Haynes  and  Boone,  LLP  as  Special  Counsel  for  the  Debtors  Nunc  Pro  Tunc  to  the Commencement Date [Docket No. 1654].  On September 17, 2012, Haynes and Boone filed the Second Interim Application of Haynes and Boone, LLP as Special Counsel for the Debtors, for Allowance  of  Compensation  for  Professional  Services  Rendered  and  for  Reimbursement  of

Actual and Necessary Expenses Incurred from April 1, 2012 Through July 31, 2012 [Docket No. 4483] (the "Haynes and Boone Second Fee Application").  The Haynes and Boone Second Fee Application seeks approval of fees in the amount of $453,908.87 and reimbursement of expenses in the amount of $12,766.00.

41.     The Fee Examiner reviewed the Haynes and Boone Second Fee Application to ensure compliance with the applicable rules, orders and guidelines.  Based on that review, the Fee Examiner generated the Fee Examiner's Preliminary Report Regarding Second Interim Fee Application of Haynes and Boone, LLP (the "Haynes and Boone Second Preliminary Report"), which raised questions in the following areas with respect to the Haynes and Boone Second Fee Application:

(a) Compliance with the UST Guidelines;

(b) Discrepancy in calculation of hours and fees;

(c) Lumped time entries;

(d) Block billing/questioned time increments;

(e) Transitory timekeepers;

(f) Vague time entries;

(g) Services outside the scope of retention;

(h) Repetitive time entries;

(i) Multiple attendees;

(j) Clerical/administrative tasks;

(k) Non-working travel billed at full rate;

(l) Time spent reviewing/editing time records;

(m) Itemization of expenses;

(n) Non-supported expenses;

(o) Meal expenses;

(p) Overhead-type expenses; and

(q) Local travel expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

42.     In response to the Haynes and Boone Second Preliminary Report and telephone conferences and email communication with the Fee Examiner regarding the Haynes and Boone Second Preliminary Report, Haynes and Boone provided the Fee Examiner with a thorough written response addressing the issues identified in the Haynes and Boone Second Preliminary Report (the "Haynes and Boone Response").  The Haynes and Boone Response contained revised time entries with extensive additional information addressing the issues with technical compliance with the UST Guidelines, lumped time entries, transitory billing, vague time entries, services outside the scope of retention, repetitive entries, clerical tasks, non-working travel billed at full rate, and time spent reviewing/editing time records.  For disputed or questioned expenses, Haynes and Boone provided an itemization of expenses, and explanations of the questioned non-supported and local travel expenses.

43.     As a result, Haynes and Boone and the Fee Examiner have agreed to a final recommended reduction in fees in the amount of **$29,890.34** and expenses in the amount of **$176.18**.  The Fee Examiner recommends that the Court allow fees in the amount of **$424,018.53** and reimbursement for expenses in the amount of **$12,589.82** in relation to the Haynes and Boone Second Fee Application.

**Jenner & Block LLP**

44.     Jenner & Block LLP ("Jenner") serves as counsel to the Section 1114 Committee of Retired Employees.  For its services, Jenner is paid on an hourly basis.  *See* Order Authorizing the Employment and Retention of Jenner & Block LLP as Attorneys for the Retiree Committee Pursuant to 11 U.S.C. §§ 1103(a) and 1114(b)(2) Nunc Pro Tunc to June 8, 2012 [Docket No. 3637].  On September 17, 2012, Jenner filed its First Application of Jenner & Block LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Counsel for the Retiree Committee for the period from June 8, 2012 through July 31, 2012 [Docket No. 4491] (the "Jenner First Fee Application").  The Jenner First Fee Application seeks approval of fees in the amount of $278,020.50 and reimbursement of expenses in the amount of $6,414.50.

45.     The Fee Examiner reviewed the Jenner First Fee Application to ensure compliance with the applicable rules, orders and guidelines.  Based on that review, the Fee Examiner generated a Preliminary Report that identified the following issues and questions with respect to the Jenner First Fee Application:

   (a)     Compliance with Bankruptcy Rule 2016, the UST Guidelines, and M-389;

   (b)     Discrepancies between the fees requested and the fees actually documented in the electronic and/or hard copy data received from Jenner;

   (c)     Lumped time entries;

   (d)     Transitory timekeepers;

   (e)     Vague time entries;

   (f)     Administrative or clerical activities;

   (g)     Professional retention activities;

   (h)     Reviewing/editing time records;

   (i)     Itemization of expenses;

      (j)     Overhead expenses; and

      (k)     Local travel expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

46. In response to the Preliminary Report and email communication with the Fee Examiner regarding the Preliminary Report, Jenner provided the Fee Examiner with acceptable explanations of the issues raised in the Preliminary Report relating to transitory timekeepers, entries identified as lumped or vague, and an explanation of expenses relating to overheard, local travel, and non-supported expenses. As a result, Jenner and the Fee Examiner have agreed to a recommended reduction in fees in the amount of **$9,575.75** and a reduction in expenses in the amount of **$195.32**. After consideration of the agreed-upon reductions, Jenner is requesting allowance of fees in the amount of **$268,444.75** and expenses in the amount of **$6,219.18** in relation to the Jenner First Fee Application. The Fee Examiner supports Jenner's modified request.

**KPMG, LLP**

47. KPMG, LLP ("KPMG") serves as tax compliance and tax consultants for the Debtors. For its services, KPMG is compensated on a flat fee basis and an hourly fee basis. *See* KPMG Retention Application [Docket No. 588], ¶14. On September 17, 2012, KPMG filed the Second Fee Application of KPMG LLP, as Tax Compliance and Tax Consultants for the Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from April 1, 2012 Through July 31, 2012 [Docket No. 4480] (the "KPMG Second Fee Application"). The KPMG Second Fee

Application seeks approval of fees in the amount of $1,188,571.83 and reimbursement of expenses in the amount of $121,098.00.

48.     The Fee Examiner reviewed the KPMG Second Fee Application to ensure compliance with the applicable rules, orders and guidelines.  Based on that review, the Fee Examiner generated a Preliminary Report that identified the following issues with the KPMG Second Fee Application:

    (a)      Compliance with the UST Guidelines and M-389;

    (b)      Time billed from prior fee periods;

    (c)      Hourly rate increases;

    (d)      Discrepancies in calculation of fees and expenses;

    (e)      Lumped time entries;

    (f)      Block billing/questioned time increments;

    (g)      Transitory timekeepers;

    (h)      Vague time entries;

    (i)      Tasks potentially outside the scope of retention;

    (j)      Repetitive time entries;

    (k)      Multiple attendees at external meetings, conferences or other such events;

    (l)      Intra-office conferences;

    (m)      Clerical/administrative tasks;

    (n)      Time spent reviewing/editing time records;

    (o)      Itemization of expenses;

    (p)      Prorated expenses;

    (q)      Travel expenses;

    (r)      Overtime expenses;

    (s)      Meal expenses;

    (t)      Overhead expenses;

(u)     Local travel expenses; and

(v)     Personal expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

49.     In response to the Preliminary Report and email communication with the Fee Examiner regarding the Preliminary Report, KPMG provided the Fee Examiner with a 10 page response addressing fee issues raised in the Preliminary Report and a 55 page schedule of revised time entries addressing, on a line-by-line basis, the issues identified in the Preliminary Report ("KPMG's Response").  To address questioned expenses, KPMG provided explanation and additional supporting documentation relating to questioned travel and meal expenses and agreed to a reduction for certain other expenses.  After receipt of KPMG's Response, KPMG and the Fee Examiner engaged in substantial dialogue to address and resolve the issues raised by the Preliminary Report.

50.     As a result, KPMG and the Fee Examiner have agreed to a final recommended reduction in fees in the amount of **$103,108.68** and expenses in the amount of **$1,920.64**.  The reduction in fees is comprised in part of a reduction in the amount of $47,597.00 relating to reviewing and editing time records.  KPMG and the Fee Examiner have agreed that the fees attributable to reviewing and editing time records shall be disallowed at this time, but without prejudice to KPMG seeking reinstatement of these fees in a final fee application or upon motion. After consideration of the agreed-upon reductions, KPMG is requesting allowance of fees in the amount of **$1,085,463.15** and reimbursement for expenses in the amount of **$119,177.36** in relation to the KPMG Second Fee Application.  The Fee Examiner supports KPMG's modified request.

**Kelly Hart & Hallman LLP (First Fee Period)**

51.     Kelly Hart & Hallman LLP ("Kelly Hart") serves as special counsel on certain litigation and transactional matters for the Debtors.  For its services, Kelly Hart is compensated on an hourly fee basis.  See Kelly Hart Retention Order [Docket No. 3946], at 3.  On August 23, 2012, Kelly Hart filed the First Interim Fee Application of Kelly Hart & Hallman LLP, as Special Litigation Counsel For the Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from November 29, 2011 through March 31, 2012 [Docket No. 4140] ("Kelly Hart's First Fee Application").  Kelly Hart's First Fee Application seeks approval of fees in the amount of $661,118.50 and reimbursement of expenses in the amount of $3,307.39.

52.     The Fee Examiner reviewed Kelly Hart's First Fee Application to ensure compliance with the applicable rules, orders and guidelines.  Based on that review, the Fee Examiner prepared a Preliminary Report that identified the following issues with Kelly Hart's First Fee Application:

   (a)     Compliance with the UST Guidelines and M-389;

   (b)     Fees incurred prior to the Petition Date;

   (c)     Fees incurred pursuant to a fee arrangement that was not disclosed or approved by the Court;

   (d)     Lumped time entries;

   (e)     Transitory timekeepers;

   (f)     Vague time entries;

   (g)     Repetitive time entries;

   (h)     Fees incurred for legal research performed by senior attorneys; and

   (i)     Expenses not supported by receipts or other documentation.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

53.     In response to the Preliminary Report, Kelly Hart provided the Fee Examiner a written response plus supplemental expense documentation addressing the issues identified in the Preliminary Report ("<u>Kelly Hart's Response</u>").   Kelly Hart's Response contained extensive explanations for issues raised in the Preliminary Report relating to the technical timekeeping categories, repetitive time entries, transitory timekeepers, fees relating to research performed by senior professionals, and pre- and post- petition fees incurred pursuant to a fee arrangement that was not disclosed in advance or specifically approved by the Court.   To address the reimbursability of certain expenses, Kelly Hart's Response contained certain supplemental documentation that is acceptable to the Fee Examiner.   Though Kelly Hart's Response did not contain revised time entries addressing the entirety of the lumped and vague entries, it did contain an explanation as to certain time entries that the Fee Examiner identified as lumped or vague.

54.     Further, after receipt of Kelly Hart's Response, Kelly Hart and the Fee Examiner engaged in dialogue to address and resolve the issues raised by the Preliminary Report.   As a result of these negotiations, Kelly Hart and the Fee Examiner have agreed to a final recommended reduction in fees in relation to Kelly Hart's First Fee Application in the amount of $105,061.78.   The Fee Examiner does not recommend any reduction to Kelly Hart's expenses. The final reductions result in a recommended allowance of fees in the amount of $556,056.72 and reimbursement for expenses in the amount of $3,307.39 in relation to Kelly Hart's First Fee Application.   The Fee Examiner supports the request as modified.

**Kelly Hart & Hallman LLP (Second Fee Period)**

55.     On September 17, 2012, Kelly Hart filed the Second Interim Fee Application of Kelly Hart & Hallman LLP, as Special Litigation Counsel For the Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from April 1, 2012 Through July 31, 2012 [Docket No. 4485] "Kelly Hart's Second Fee Application"). Kelly Hart's Second Fee Application seeks approval of fees in the amount of $927,357.50 and reimbursement of expenses in the amount of $10,001.35.

56.     The Fee Examiner reviewed Kelly Hart's Second Fee Application to ensure compliance with the applicable rules, orders and guidelines.  Based on that review, the Fee Examiner prepared a Preliminary Report that identified the following issues with Kelly Hart's Second Fee Application:

    (a)     Compliance with the UST Guidelines and M-389;

    (b)     Fees incurred pursuant to a fee arrangement that was not disclosed or approved by the Court;

    (c)     Transitory timekeepers;

    (d)     Vague time entries;

    (e)     Repetitive time entries; and

    (f)     Expenses not supported by receipts or other documentation.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

57.     In response to the Preliminary Report, Kelly Hart provided the Fee Examiner a written response plus supplemental expense documentation addressing the issues identified in the Preliminary Report ("Kelly Hart's Response").  Kelly Hart's Response contained extensive explanations for issues raised in the Preliminary Report relating to vague entries, repetitive time

33

entries, transitory timekeepers, and fees incurred pursuant to a fee arrangement that was not disclosed in advance or specifically approved by the Court. To address the reimbursability of certain expenses, Kelly Hart's Response contained certain supplemental documentation that is acceptable to the Fee Examiner. Though Kelly Hart's Response did not contain revised time entries addressing the entirety of the vague entries, it did contain an explanation as to certain time entries that the Fee Examiner identified as vague.

58. Further, after receipt of Kelly Hart's Response, Kelly Hart and the Fee Examiner engaged in substantial dialogue to address and resolve the issues raised by the Preliminary Report. As a result of these negotiations, Kelly Hart and the Fee Examiner have agreed to a final recommended reduction in fees in relation to Kelly Hart's Second Fee Application in the amount of $17,596.50. The Fee Examiner does not recommend any reduction to Kelly Hart's expenses. The final reductions result in a recommended allowance of fees in the amount of $909,761.00 and reimbursement for expenses in the amount of $10,001.35 in relation to Kelly Hart's Second Fee Application. The Fee Examiner supports the request as modified.

**McKinsey Recovery & Transformation Services U.S., LLC, McKinsey & Company, Inc. United States, and McKinsey & Company, Inc. Japan**

59. McKinsey Recovery & Transformation Services U.S., LLC, McKinsey & Company, Inc. United States, and McKinsey & Company, Inc. Japan (collectively, "McKinsey") serves as management consultant to the Debtors. For its services, McKinsey is compensated on an hourly basis, and reimbursed for related expenses, in accordance with the terms of the engagement letter between McKinsey and the Debtors. *See* Final Order Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 Authorizing the Employment and Retention of McKinsey Recovery & Transformation Services U.S., LLC, McKinsey & Company, Inc. United States, and

McKinsey & Company, Inc. Japan as the Debtors' Management Consultants *Nunc Pro Tunc* to December 12, 2011 [Docket No. 1553] at 3.

60.     On September 17, 2012, McKinsey filed the Second Application of McKinsey Recovery & Transformation Services U.S., LLC, McKinsey & Company, Inc. United States, and McKinsey & Company, Inc. Japan for Compensation for Services Rendered, Reimbursement of Expenses Incurred and Payment of Holdback as Management Consultants for Debtors for the Period April 1, 2012 through July 31, 2012 [Docket No. 4511] (the "McKinsey Second Fee Application"). The McKinsey Second Fee Application seeks approval of fees in the amount of $1,458,005.33 and reimbursement of expenses in the amount of $55,468.12.

61.     The Fee Examiner reviewed the McKinsey Second Fee Application to ensure compliance with the applicable rules, orders, and guidelines. Based on that review, the Fee Examiner generated a Preliminary Report that identified the following issues and questions with respect to the McKinsey Second Fee Application:

(a)     Compliance with the UST Guidelines and M-389;

(b)     Discrepancy in calculation of hours and fees;

(c)     Lumped time entries;

(d)     Block billing/questioned time increments;

(e)     Transitory timekeepers;

(f)     Vague time entries;

(g)     Work potentially beyond McKinsey's scope of retention;

(h)     Repetitive time entries;

(i)     Extended days;

(j)     Multiple attendees and intra-office conferences;

(k)     Clerical/administrative tasks;

(l)     Non-working travel billed at full rate;

(m)  Billing for time performing conflicts checks;

(n)  Time spent reviewing/editing time records;

(o)  Non-supported expenses;

(p)  Duplicative expenses;

(q)  Proration of expenses;

(r)  Travel expenses;

(s)  Meal expenses; and

(t)  Car service and cab expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

62.     In response to the McKinsey Second Preliminary Report, McKinsey provided the Fee Examiner with additional backup and explanation of the issues identified in the McKinsey Second Preliminary Report.   As a result, McKinsey and Fee Examiner have agreed to a recommended fee reduction in the amount of **$61,847.98** and a recommended expense reduction in the amount of $5,938.80.   In addition, McKinsey identified additional duplicate expenses in the amount of $1,459.44, which resulted in a total recommended expense reduction in the amount of **7,398.24**.   The Fee Examiner recommends that the Court allow fees in the amount of **$1,396,157.35** and reimbursement for expenses in the amount of **$48,069.88** in relation to the McKinsey Second Fee Application.

**Mesirow Financial Consulting, LLC**

63.     Mesirow Financial Consulting, LLC ("Mesirow") serves as financial advisor to the Committee.   For its services, Mesirow is compensated on an hourly fee basis.  *See* Mesirow Retention Application [Docket No. 1169], at 7–8.   On September 17, 2012, Mesirow filed the Second Interim Fee Application of Mesirow Financial Consulting, LLC for Interim Allowance of

Compensation for Services Rendered and Reimbursement of Expenses Incurred as Financial Advisors to the Official Committee of Unsecured Creditors for the Period from April 1, 2012 Through July 31, 2012 [Docket No. 4514] ("Mesirow's Second Fee Application"). Mesirow's Second Fee Application seeks approval of fees in the amount of $2,769,919.20 and reimbursement of expenses in the amount of $63,501.91.

64.     The Fee Examiner reviewed Mesirow's Second Fee Application to ensure compliance with the applicable rules, orders and guidelines. Based on this review, the Fee Examiner generated a Preliminary Report that identified the following issues with Mesirow's Second Fee Application:

(a)     Technical Compliance with the UST Guidelines and M-389;

(b)     Lumped time entries;

(c)     Block billing/time increments;

(d)     Vague time entries;

(e)     Repetitive entries;

(f)     Multiple attendees at external meetings, hearings, and conferences;

(g)     Multiple attendees at intra-office conferences;

(h)     Time spent on preparation of monthly fee statements and the fee application;

(i)     Travel expenses;

(j)     Meal expenses;

(k)     Photocopying expenses;

(l)     Overhead expenses; and

(m)     Local travel expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

65.     In response to the Preliminary Report, Mesirow provided the Fee Examiner with a written response addressing the issues identified in the Preliminary Report (the "Mesirow Response").  The Mesirow Response contained, among other things, an explanation of efforts taken to avoid duplication of services among retained professionals and an explanation of multiple attendees at some external meetings and conferences, intra-office conferences and other events.  For disputed or questioned expenses, Mesirow provided the Fee Examiner with clarification on questioned flights, meal expenses, and miscellaneous expenses.  After receipt of the Mesirow Response, Mesirow and the Fee Examiner engaged in substantial dialogue to address and resolve the issues raised by the Preliminary Report.

66.     As a result, Mesirow and the Fee Examiner have agreed to a final recommended reduction in fees in the amount of **$49,705.30** and a reduction in expenses in the amount of **$7,945.78** for a total reduction in the amount of **$57,651.08**.  The final reductions result in an allowance of fees in the amount of **$2,720,213.90** and reimbursement for expenses in the amount of **$55,556.13** in relation to Mesirow's Second Fee Application.

**Moelis & Company LLC**

67.     Moelis & Company LLC ("Moelis") serves as investment banker to the Committee.  For its services, Moelis is compensated on a monthly flat fee basis with possible additional transaction fees paid in the event that certain types of restructurings occur.  *See* Order Authorizing the Employment and Retention of Moelis & Company LLC as Investment Banker to the Committee, *Nunc Pro Tunc* to December 6, 2011 [Docket No. 1651].  On September 17, 2012, Moelis filed its Second Interim Fee Application of Moelis & Company LLC for Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred as Investment Banker for The Official Committee Of Unsecured Creditors for

the Period from April 1, 2012 Through July 31, 2012 [Docket No. 4515] (the "Second Fee Application"). The Second Fee Application seeks approval of fees in the amount of $700,000.00 and reimbursement of expenses in the amount of $24,139.97.

68.     The Fee Examiner reviewed the Second Fee Application to ensure compliance with the applicable rules, orders and guidelines. Based on that review, the Fee Examiner generated a Preliminary Report that identified the following issues with the Second Fee Application:

    (a)    Compliance with the UST Guidelines and M-389;

    (b)    Vague time entries;

    (c)    Expenses not supported by receipts or other documentation;

    (d)    Meal expenses;

    (e)    Car service/cab expenses; and

    (f)    Cellular telephone expenses

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

69.     Notwithstanding the identification of certain issues with the Second Fee Application, the Fee Examiner determined that the monthly fees charged by Moelis during the period covered by the Second Fee Application are reasonable. The Preliminary Report disputed certain expenses.

70.     In response to the reimbursability of certain expenses addressed in the Preliminary Report, Moelis provided the Fee Examiner with a written response containing additional expense documentation (the "Moelis Response"). Upon receipt of the Moelis

Response, Moelis and the Fee Examiner engaged in substantial discussions in an attempt to reach a resolution of the issues raised in the Preliminary Report.

71.     As a result of these negotiations, Moelis and the Fee Examiner have agreed to reserve their respective rights in relation to methodologies for calculating monthly fees.  The parties, however, reached agreement in terms of the expenses requested in the Second Fee Application and Moelis agreed to reduce its expenses by **$2,921.01**.  After consideration of the agreed upon reductions, Moelis is requesting allowance of fees in the amount of **$700,000.00** and reimbursement for expenses in the amount of **$21,218.96** in relation to the Second Fee Application.  The Fee Examiner supports the request as modified.

**Sheppard Mullin Richter and Hampton LLP**

72.     Sheppard Mullin Richter and Hampton LLP ("Sheppard Mullin") serves as special counsel to the Debtors on certain discrete labor law matters.  For its services, Sheppard Mullin is compensated on an hourly basis.  *See* Application of Debtors Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014(a) for Authority to Employ and Retain Sheppard, Mullin, Richter & Hampton LLP as Special Counsel to the Debtors Nunc Pro Tunc to the Commencement Date [Docket No. 2452] at ¶¶ 11-12.  On September 17, 2012, Sheppard Mullin filed the Second Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses to Sheppard Mullin Richter and Hampton LLP as Special Counsel to the Debtors [Docket No. 4519] (the "Sheppard Mullin Second Fee Application").  The Sheppard Mullin Second Fee Application seeks approval of fees in the amount of $734,910.50 and reimbursement of expenses in the amount of $24,211.51.

73.     The Fee Examiner reviewed the Sheppard Mullin Second Fee Application to ensure compliance with the applicable rules, orders and guidelines.  Based on that review, the

Fee Examiner generated the Fee Examiner's Preliminary Report Regarding Second Interim Fee Application of Sheppard Mullin Richter and Hampton LLP (the "<u>Sheppard Mullin Second Preliminary Report</u>"), which raised questions in the following areas with respect to the Sheppard Mullin Second Fee Application:

     (a)  Compliance with the UST Guidelines and M-389;

     (b)  Discrepancy in calculation of fees and expenses;

     (c)  Firm staffing;

     (d)  Hourly rate increase;

     (e)  Lumped time entries;

     (f)  Block billing/questioned time increments;

     (g)  Vague time entries;

     (h)  Repetitive time entries;

     (i)  Multiple attendees and intra-office conferences;

     (j)  Clerical/administrative tasks;

     (k)  Conflicts checking;

     (l)  Time spent reviewing/editing time records;

     (m) Redaction of time entries;

     (n)  Non-supported expenses;

     (o)  Travel expenses;

     (p)  Meal expenses; and

     (q)  Personal expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

74.     Through telephone conferences and email communication with the Fee Examiner regarding the Sheppard Mullin Second Preliminary Report, Sheppard Mullin provided the Fee Examiner with a thorough response addressing the issues identified in the Sheppard Mullin Second Preliminary Report.  As a result, Sheppard Mullin and the Fee Examiner have agreed to a recommended fee reduction in the amount of **$48,965.15** and a recommended expense reduction in the amount of **$2,061.52**.  The Fee Examiner recommends that the Court allow fees in the amount of **$685,945.35** and reimbursement for expenses in the amount of **$22,149.99** in relation to the Sheppard Mullin Second Fee Application.

**Skadden, Arps, Slate, Meagher & Flom LLP**

75.     Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") serves as lead counsel to the Committee.  For its services, Skadden is compensated on an hourly fee basis.  *See* Skadden's Retention Application [Docket No. 1168], ¶ 11.  On September 17, 2012, Skadden filed the Second Interim Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP, Counsel to the Official Committee of Unsecured Creditors, Seeking Allowance and Payment of Interim Compensation and Reimbursement of Expenses Under 11 U.S.C. §§ 330 and 331 [Docket No. 4510] ("Skadden's Second Fee Application").  Skadden's Second Fee Application seeks approval of fees in the amount of $5,586,167.00 and reimbursement of expenses in the amount of $267,335.00.  These fee and expense numbers reflect a voluntary fee reduction in the amount of $721,368.00 and a voluntary expense reduction in the amount of $42,244.00, resulting in total voluntary reductions of $763,612.00.

76.     The Fee Examiner reviewed Skadden's Second Fee Application to ensure compliance with the applicable rules, orders and guidelines.  Based on this review, the Fee Examiner generated a Preliminary Report that raised questions and requested additional information with respect to Skadden's Second Fee Application in the following areas:

   (a)     Lumped and vague time entries;

   (b)     Legal research performed by senior attorneys;

   (c)     Multiple attendees at external meetings;

   (d)     Excessive time spent on preparation of the monthly fee statements and fee applications;

   (e)     Expenses not supported by receipts or other documentation;

   (f)     Hotel and meal expenses; and

   (g)     Computer-assisted research charges.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

77.     In response to the Preliminary Report, Skadden provided the Fee Examiner with a comprehensive, two-volume written response addressing all of the issues raised in the Preliminary Report (the "Skadden Response").  After receipt of the Skadden Response, Skadden and the Fee Examiner engaged in substantial dialogue, including a face to face meeting, to address and resolve the issues raised by the Preliminary Report.  As a result of these negotiations, the parties agreed that Skadden should receive a credit for part of the voluntary reduction in fees in that amount of $454,447.00 premised on the Fee Examiner's determination that this amount of the voluntary reduction would not have been otherwise requested by the Fee Examiner and constituted a genuine savings to the Debtor's estates.  Skadden and the Fee

Examiner then agreed to use this $454,447.00 (the "Credit Amount") as a credit in relation to other possible reductions in fees based on issues raised in the Preliminary Report.

78.     Premised on the fact that the Credit Amount exceeds the total amount of the possible reductions raised in the Preliminary Report, the Fee Examiner determined that no further reduction to Skadden's fees or expenses is warranted.  The voluntary reductions result in a recommended allowance of fees in the amount of **$5,586,167.00** and reimbursement for expenses in the amount of **$267,335.00** in relation to Skadden's Second Fee Application, as sought by Skadden.  The Fee Examiner supports Skadden's Second Fee Application.

**SkyWorks Capital, LLC**

79.     SkyWorks Capital, LLC ("SkyWorks") serves as aircraft restructuring advisor to the Debtors.  For its services, SkyWorks is compensated on a monthly fixed fee basis as well as various transaction and success fees.  *See* SkyWorks Retention Order [Docket No. 1549], at Exhibit 1.  On September 17, 2012, SkyWorks filed the Second Interim Fee Application of SkyWorks Capital, LLC, Aircraft Restructuring Advisor, for Allowance of Compensation and Reimbursement of Expenses for the Period April 1, 2012 Through July 31, 2012 [Docket No. 4479] (the "SkyWorks Second Fee Application").  The SkyWorks Second Fee Application seeks approval of fixed fees in the amount of $1,780,000.00 and reimbursement of expenses in the amount of $62,558.24.  No transaction or success fees are sought at this time.

80.     The Fee Examiner reviewed the SkyWorks Second Fee Application to ensure compliance with the applicable rules, orders, and guidelines.  Based on this review, the Fee Examiner generated a Preliminary Report that identified the following issues with the SkyWorks Second Fee Application:

(a)     Technical Compliance with the UST Guidelines and M-389;

(b)     "Top-heavy" staffing;

(c)     Lumped time entries;

(d)     Transitory timekeepers;

(e)     Vague time entries;

(f)     Repetitive time entries;

(g)     Duplicative tasks;

(h)     Extended days;

(i)     Clerical/administrative tasks;

(j)     Non-working travel billed at full rate;

(k)     Time spent reviewing and editing time entries;

(l)     Reasonableness of fixed fees;

(m)     Unsupported legal fees;

(n)     Itemization of expenses;

(o)     Travel expenses;

(p)     Meal expenses;

(q)     Overhead type expenses; and

(r)     Local travel expenses.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

81.     In response to the Preliminary Report and telephone conferences and email communication with the Fee Examiner regarding the Preliminary Report, SkyWorks provided the Fee Examiner with explanations for many of the issues raised in the Preliminary Report ("SkyWorks' Response").  For questioned expenses, SkyWorks' Response contained additional backup documentation and explanation of questioned legal fees, travel expenses, and overhead expenses.  After receipt of SkyWorks' Response, SkyWorks and the Fee Examiner engaged in substantial dialogue to address and resolve the issues raised by the Preliminary Report.

82.     As a result, SkyWorks and the Fee Examiner have agreed to a final recommended reduction in fees in the amount of **$65,144.00** and a reduction for expenses in the amount of **$14,856.00**.     After consideration of the agreed-upon reductions, SkyWorks is requesting allowance of fees in the amount of **$1,714,856.00** and reimbursement for expenses in the amount of **$47,702.24** in relation to the SkyWorks Second Fee Application.  The Fee Examiner supports SkyWorks' modified request.

**Togut Segal & Segal LLP**

83.     Togut, Segal & Segal LLP ("Togut") serves as co-counsel to the Committee.  For its services, Togut is compensated on an hourly fee basis.  *See* Togut's Retention Application [Docket No. 1171], ¶ 20.   On September 17, 2012, Togut filed the Second Interim Fee Application of Togut, Segal & Segal LLP, as Co-Counsel to the Official Committee of Unsecured Creditors, for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred for the Period April 1, 2012 through July 31, 2012 [Docket No. 4518] ("Togut's Second Fee Application").  Togut's Second Fee Application seeks approval of fees in the amount of $465,747.50 and reimbursement of expenses in the amount of $2,582.38.

84.     The Fee Examiner reviewed Togut's Second Fee Application to ensure compliance with the applicable rules, orders and guidelines.   Based on this review, the Fee Examiner generated a Preliminary Report that identified the following issues with Togut's Second Fee Application:

(a)     Compliance with the UST Guidelines and Order M-389;

(b)     Transitory timekeepers;

(c)     Vague time entries;

(d)     Repetitive time entries;

(e)     Multiple attendees at intra-office meetings;

(f)     Excessive time spent on preparation of monthly statements and the fee application; and

(g)     Car services/Cab expenses

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

85.     In response to the Preliminary Report, Togut provided the Fee Examiner with a written response plus supplemental expense documentation addressing the issues identified in the Preliminary Report ("Togut's Response").  Togut's Response contained extensive explanations for issues raised in the Preliminary Report relating to vague and repetitive time entries, intra-office conferencing and fees relating to the preparation of fee statements and applications.  To address the reimbursability of certain expenses, Togut's Response contained certain supplemental documentation in support of expenses.

86.     After receipt of Togut's Response, Togut and the Fee Examiner engaged in substantial dialogue to address and resolve the issues raised by the Preliminary Report, including a face-to-face meeting.  As a result of these negotiations, Togut and the Fee Examiner have agreed to a final recommended reduction in fees in the amount of **$11,220.21**.  The final reductions result in a recommended allowance of fees in the amount of **$454,527.29** and reimbursement for expenses in the amount of **$2,582.38** in relation to Togut's Second Fee Application.  The Fee Examiner supports the requests as modified.

**Winstead P.C.**

87.     Winstead P.C. ("Winstead") serves as corporate counsel to the Debtors.  For its services, Winstead is paid on an hourly basis.  *See* Order Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bank. P. 2014(a) Authorizing the Employment and Retention of Winstead P.C. as Corporate

Counsel for the Debtors Nunc Pro Tunc to the Commencement Date [Docket No. 2230].  On September 17, 2012, Winstead filed its Second Application of Winstead P.C. for Interim Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred from April 1, 2012 through July 31, 2012 [Docket No. 4499] (the "Winstead Second Fee Application").  The Winstead Second Fee Application seeks approval of fees in the amount of $696,507.00 and reimbursement of expenses in the amount of $23,987.41.

88.     The Fee Examiner reviewed the Winstead Second Fee Application to ensure compliance with the applicable rules, orders and guidelines.  Based on this review, the Fee Examiner generated a Preliminary Report that identified the following issues and questions with respect to the Winstead Second Fee Application:

(a)     Compliance with Bankruptcy Rule 2016, the UST Guidelines, and M-389;

(b)     Lumped time entries;

(c)     Vague time entries;

(d)     Performance of services that may be outside the scope of Winstead's retention;

(e)     Repetitive time entries;

(f)     Extended days;

(g)     Administrative or clerical activities;

(h)     Reviewing/editing time records;

(i)     Redaction of privileged information;

(j)     Lack of back-up documentation in relation to expenses requested;

(k)     Travel expenses;

(l)     Meal expenses; and

(m)     Cellular telephone charges.

Although the Preliminary Report raised issues relating to all of the above, the Fee Examiner simply requested additional information and additional supporting documentation in relation to many of the above categories.

89.     In response to the Preliminary Report and telephone conferences and email communication with the Fee Examiner regarding the Preliminary Report, Winstead provided the Fee Examiner with additional information and explanation addressing the issues raised in the Preliminary Report ("Winstead's Response").  Winstead's Response provided explanation of issues raised in the Preliminary Report relating to, among other things, vague and lumped time entries, extended days, reviewing and editing time and repetitive time entries.  Winstead also provided additional information in relation to the expense issues raised by the Preliminary Report.  After receipt of Winstead's Response, Winstead and the Fee Examiner engaged in substantial dialogue to address and resolve the issues raised by the Preliminary Report.

90.     As a result, Winstead and the Fee Examiner have agreed to a final recommended reduction in fees in the amount of **$43,078.85** and expenses in the amount of **$232.63**.  After consideration of the agreed-upon reductions, Winstead is requesting allowance of fees in the amount of **$653,428.15** and expenses in the amount of **$23,754.78** in relation to the Winstead Second Fee Application.  The Fee Examiner supports Winstead's modified request.

### VI.     FEE EXAMINER'S RECOMMENDATION AS TO THE HOLDBACK

91.     As the United States Bankruptcy Court for the Southern District of New York has noted, there are difficulties in "assessing the reasonableness of compensation when the results of the bankruptcy are not yet known and uncertain."  In re Value City Holdings, Inc., 436 B.R. 300, 303(Bankr. S.D.N.Y. 2010) (footnote omitted).  As that court noted, the position of the United States Trustee has usually been that "it is not prudent to award payment in full of requested fees

on an interim basis until events in the case have unfolded and more is revealed about the outcome of the reorganizations process." Id.  Accordingly, maintaining a holdback through at least the early fee periods, if not the entire case (in some, perhaps declining amount as time progresses) has become a fairly standard procedure in many chapter 11 cases in this district:

> With this salutary objection in mind, it has become standard practice for interim fee orders to include a holdback in a percentage (often in the range of ten to twenty percent) that is acceptable to the applicant and to the UST with the understanding that the amount held back will be available for distribution at a later date depending on developments in the case and the results achieved.  Indeed, in the present chapter 11 cases, the interim fee order provides for a twenty percent holdback on interim monthly compensation.

Id.; *see also* In re Acme Cake Co., Inc., 2010 WL 4103761(Bankr. E.D.N.Y., Oct. 18, 2010)(court notes awards of interim fees were subject to a 20% holdback).  Indeed, Judge Gerber has noted that holdbacks serve at least two purposes:  as a hedge against uncertainty in the future of the case, and also "as a carrot to incentivize professionals to get the case wrapped up and to get the plan consideration into the pockets of creditors."  In re Motors Liquidation Co., First Interim Fee H'rg Tr. At 43:8-17, No. 09-50026 (Bankr. S.D.N.Y. April 29, 2010 at 5:24 p.m.). Judge Gerber also notes that it may be appropriate to reduce the holdback percentage as the case progresses.  Id. at 44:1-11.  The Fee Examiner believes it is appropriate to release a portion of the holdback in this case, but not all of such amount.

92.    The Interim Compensation Order in these cases also provides for a twenty percent (20%) holdback on payment of fees requested in the monthly statement submitted by any Retained Professional.  Given the status of the case, and for the reasons detailed below, the Fee Examiner recommends that the holdback amounts applicable to the First Fee Period be released to the subject Retained Professionals. However, the Fee Examiner further recommends that the

full 20% holdback, for all subsequent fee periods, remain in place for all of the Retained Professionals, pending additional developments.[9]

93.     As noted in prior reports, these cases have resulted in the retention of over thirty professionals, not counting ordinary course professionals.  Many of the professionals are working regularly within common or closely-related topic areas.  For example, there are multiple firms retained to advise and represent the Debtors on labor, pension and benefits issues, and multiple firms working on the so-called "GDS Litigation."  In addition, for the Debtors and the two committees, there are multiple counsel and financial advisors whose defined roles nonetheless have the potential to overlap.  The Fee Examiner has identified up to thirteen potential combinations of professionals where there is at least the potential for duplication of effort or overlapping of scope of services.  The Fee Examiner reviewed the Fee Applications for these issues, and the Retained Professionals are apparently working diligently to avoid any duplication or overlapping scope of services.  However, it is still too early to conclude with certainty that they will all be ultimately successful in avoiding unnecessary duplication.  In addition, as noted above, significant amounts of fees sought by the GDS Litigation Firms must be reviewed anew when unredacted or reconstructed time records are provided to the Fee Examiner, and therefore such fees remain subject to questions.  For those reasons, and the more typical reasons noted above, the Fee Examiner believes that, notwithstanding the amounts allowed under the Fee Applications, the twenty percent (20%) holdback on payment of fees for the First Fee Period may be released, but that the holdback should otherwise remain in place.

## VI.     CONCLUSION

94.     Accordingly, the Fee Examiner recommends that (i) fees be allowed and expenses be reimbursed as set forth above and on Exhibit B hereto; (ii) that the holdback amounts

---

[9] As previously requested, and ordered, the holdback for GCG and Epiq would be ten percent (10%).

applicable to the First Fee Period be released to the subject Retained Professionals; and (iii) that the holdback otherwise remain in place at 20% for all Retained Professionals for all other fee periods.

Dated:  February 7, 2013                                  **FEE EXAMINER**

Portland, Maine                                           */s/ Robert J. Keach, Esq.*
                                                         Robert J. Keach, Esq.
                                                         BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
                                                         100 Middle Street, P.O. Box 9729
                                                         Portland, ME 04104-5029
                                                         E-mail address:  rkeach@bernsteinshur.com
                                                         Telephone number:  (207) 774-1200

**HEARING DATE AND TIME: February 14, 2013 at 11:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE:  January 31, 2013 at 4:00 p.m. (Eastern Time)**



Harvey R. Miller
Stephen Karotkin
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                        :
In re                                                   :          **Chapter 11 Case No.**
                                                        :
**AMR CORPORATION**, *et al.*,                          :          **11-15463 (SHL)**
                                                        :
                        Debtors.                        :          **(Jointly Administered)**
                                                        :
------------------------------------------------------------x

**NOTICE OF HEARING REGARDING INTERIM APPLICATIONS FOR ALLOWANCE**
**OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

PLEASE TAKE NOTICE that a hearing (the "**Hearing**") will be held before the

Honorable Sean H. Lane, United States Bankruptcy Judge, in Room 701 of the United States

Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One

Bowling Green, New York, New York 10004, on **February 14, 2013 at 11:00 a.m. (Eastern**

**Time)**, or as soon thereafter as counsel may be heard, to consider (i) the applications for interim

allowance of compensation and reimbursement of expenses filed by Deloitte Financial Advisory

Services LLP (solely with respect to reimbursement of expenses) (ECF No. 3379), Harris, Finley

& Bogle, P.C. (ECF No. 3501), Kelly Hart & Hallman LLP (ECF No. 4140), and Yetter

Coleman LLP (ECF No. 3646) (together, the "**Adjourned Applications**") and (ii) the

applications for interim allowance of compensation and reimbursement of expenses filed by

Bernstein, Shur, Sawyer & Nelson, P.A. (ECF No. 4502), Brinks Hofer Gilson & Lione (ECF

No. 4400), Cooley LLP (ECF No. 4482), Debevoise & Plimpton LLP (ECF No. 4506), Deloitte

Financial Advisory Services LLP (ECF No. 4467), Dewey & LeBoeuf LLP (ECF No. 4211),

Epiq Bankruptcy Solutions, LLC (ECF No. 4513), Felsberg, Pedretti e Mannrich Abogados e

Consultores Legais (ECF No. 4505), Ford Harrison LLP (ECF No. 4503), GCG, Inc. (ECF No.

4524), Groom Law Group, Chartered (ECF No. 4507), Harris, Finley & Bogle, P.C. (ECF No.

4486), Haynes & Boone, LLP (ECF No. 4483), Jenner & Block LLP (ECF No. 4491), Kelly Hart

& Hallman LLP (ECF No. 4485), KPMG LLP (ECF No. 4480), McKinsey Recovery &

Transformation Services U.S., LLC et al. (ECF No. 4508), Mesirow Financial Consulting, LLC

(ECF No. 4514), Moelis & Company, LLC (ECF No. 4515), Morgan, Lewis & Bockius LLP

(ECF No. 4604), Paul Hastings LLP (ECF No. 4504), Robert J. Keach (ECF No. 4501),

Rothschild Inc. (ECF No. 4494), Sheppard, Mullin, Richter & Hampton LLP (ECF No. 4519),

Skadden, Arps, Slate, Meagher & Flom LLP (ECF No. 4510), SkyWorks Capital, LLC (ECF No.

4479), The Boston Consulting Group, Inc.  (ECF Nos. 4466 & 5031), Togut, Segal & Segal LLP

(ECF No. 4518), Weil, Gotshal & Manges LLP (ECF No. 5105), Winstead PC (ECF No. 4499),

and Yetter Coleman LLP (ECF No. 4509) (together, the "**Scheduled Applications**," and

together with the Adjourned Applications, "**Applications**"), all as set forth on **Exhibit "A"**

annexed hereto.

PLEASE TAKE FURTHER NOTICE that the Applications have been filed

electronically with the Bankruptcy Court and, as such, may be examined and inspected by

interested parties on (i) the Bankruptcy Court's website (http://www.nysb.uscourts.gov) or (ii)

the website of the Court-approved claims and noticing agent for AMR Corporation and its

related debtors, as debtors and debtors in possession (collectively, the "**Debtors**"),

(http://www.amrcaseinfo.com).

PLEASE TAKE FURTHER NOTICE that, except as set forth below, any responses or objections to the Scheduled Applications (the "**Objections**") must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Alfredo R. Pérez, Esq.); (ii) the Debtors, c/o AMR Corporation, 4333 Amon Carter Boulevard, MD 5675, Fort Worth, Texas 76155 (Attn: Kathryn Koorenny, Esq.); (iii) the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Brian Masumoto, Esq.), (iv) the attorneys for the Official Committee of Unsecured Creditors (the "**Committee**"), Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Drive, Chicago, Illinois 60606 (Attn: John Wm. Butler, Jr., Esq.) and Four Times Square, New York, New York 10036 (Attn: Jay M. Goffman, Esq.), (v) the attorneys for the Section 1114 Committee of Retired Employees, Jenner & Block LLP, 353 North Clark Street, Chicago, Illinois 60654 (Attn: Catherine L. Steege, Esq. and Charles B. Sklarsky, Esq.) and 919 Third Avenue, 37th Floor, New York, New York 10022 (Attn: Marc B. Hankin, Esq.), (vi) the Fee Examiner, Bernstein, Shur, Sawyer & Nelsen, P.A., 100 Middle Street, P.O. Box 9729, Portland, Maine 04104 (Attn: Michael A. Fagone, Esq.); and (vii) a professional (each, a "**Retained Professional**") whose

3

Application is the subject of an Objection so as to be received no later than **January 31, 2013 at 4:00 p.m. (Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that, notwithstanding the foregoing, the Debtors, the U.S. Trustee, and the Committee shall have until **February 7, 2013 at 4:00 p.m. (Eastern Time)** to file and serve an Objection as described above.

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served, the Debtors may submit to the Bankruptcy Court an order approving the fees and expenses requested, which may be entered with no further notice or opportunity to be heard offered to any party.

PLEASE TAKE FURTHER NOTICE that the deadline to object to the Adjourned Applications has expired.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing and failure to appear may result in relief being granted or denied upon default.

PLEASE TAKE FUTHER NOTICE that on May 24, 2012, the Debtors, the U.S. Trustee, and the Committee filed a stipulation with respect to the appointment of the Fee Examiner (ECF No. 2897), which was "so ordered" by the Bankruptcy Court on June 12, 2012 (ECF No. 3184) (the "**Fee Examiner Order**").

PLEASE TAKE FUTHER NOTICE that pursuant to the terms of the Fee Examiner Order, the Fee Examiner shall, among other things, review and prepare periodic reports on each Application (each, a "**Preliminary Report**") setting forth any issue or objection relating to an Application and transmit a copy of the Preliminary Report to the U.S. Trustee, the Debtors, the attorneys for the Debtors (Weil, Gotshal & Manges LLP), the attorneys for the Committee, and the Retained Professional that is the subject of a Preliminary Report (each, a

4

"**Subject Retained Professional**").  The contents of the Preliminary Report shall remain

confidential by such parties (except for the U.S. Trustee) until the Fee Examiner incorporates any

or all contents of the Preliminary Report into a final report (a "**Final Report**"), all in accordance

with the Fee Examiner Order.  The Fee Examiner and a Subject Retained Professional shall

endeavor to reach a mutually acceptable resolution of any issues identified by the Fee Examiner

in the Preliminary Report.

PLEASE TAKE FURTHER NOTICE that the Fee Examiner shall file a Final

Report on any Application (except with respect to Applications filed by the Fee Examiner and

Bernstein, Shur, Sawyer & Nelson, P.A.) with the Bankruptcy Court on or before **February 7,**

**2013** and shall serve a copy on the U.S. Trustee, the Debtors, the attorneys for the Debtors (Weil,

Gotshal & Manges LLP), and the attorneys for the Committee.

Dated: New York, New York
      January 3, 2013

                            /s/ Alfredo R. Pérez
                            Harvey R. Miller
                            Stephen Karotkin
                            Alfredo R. Pérez
                            WEIL, GOTSHAL & MANGES LLP
                            767 Fifth Avenue
                            New York, New York 10153
                            Telephone:  (212) 310-8000
                            Facsimile:  (212) 310-8007

                            Attorneys for Debtors
                            and Debtors in Possession

**Exhibit A**

### Adjourned Applications

| Applicant | ECF No(s). | Period | Fees Requested | Expenses Requested |
|---|---|---|---|---|
| Deloitte Financial Advisory Services LLP (expenses only) | 3379 | November 29, 2011 through March 31, 2012 | $6,944,230.35 | $1,283,258.20 |
| Harris, Finley & Bogle, P.C. | 3501 | November 29, 2011 through March 31, 2012 | $260,123.50 | $6,560.43 |
| Kelly Hart & Hallman LLP | 4140 | November 29, 2011 through March 31, 2012 | $661,118.50 | $3,307.39 |
| Yetter Coleman LLP | 3646 | November 29, 2011 through March 31, 2012 | $963,769.17 | $216,145.77 |

### Scheduled Applications

| Applicant | ECF No(s). | Period | Fees Requested | Expenses Requested |
|---|---|---|---|---|
| Bernstein, Shur, Sawyer & Nelson, P.A. | 4502 | May 1, 2012 through July 31, 2012 | $271,926.40 | $1,418.18 |
| Brinks Hofer Gilson & Lione LLP | 4400 | April 1, 2012 through July 31, 2012 | $272,778.00 | $165,220.02 |
| Cooley LLP | 4482 | May 21, 2012 through July 31, 2012 | $709,748.70 | $8,959.59 |
| Debevoise & Plimpton LLP | 4506 | April 1, 2012 through July 31, 2012 | $8,398,758.50 | $59,212.48 |
| Deloitte Financial Advisory Services LLP | 4467 | April 1, 2012 through July 31, 2012 | $3,665,963.80 | $686,363.50 |
| Dewey & LeBoeuf LLP | 4211 | November 29, 2011 through May 19, 2012 | $4,569,107.40 | $42,023.42 |
| Epiq Bankruptcy Solutions, LLC | 4513 | April 1, 2012 through July 31, 2012 | $12,436.10 | $36,850.19 |
| Felsberg, Pedretti e Mannrich Abogados e Consultores Legais | 4505 | April 1, 2012 through July 31, 2012 | $351,612.26 | $45,660.86 |
| Ford Harrison LLP | 4503 | November 29, 2011 through July 31, 2012 | $787,564.50 | $127,352.70 |
| GCG, Inc. | 4524 | April 1, 2012 through July 31, 2012 | $28,153.76 | $37.77 |
| Groom Law Group, Chartered | 4507 | April 1, 2012 through August 31, 2012 | $1,933,140.15 | $60,763.63 |
| Harris, Finley & Bogle, P.C | 4486 | April 1, 2012 through July 31, 2012 | $266,741.00 | $4,502.70 |
| Haynes & Boone, LLP | 4483 | April 1, 2012 through July 31, 2012 | $453,908.87 | $12,766.00 |
| Jenner & Block LLP | 4491 | June 8, 2012 through July 31, 2012 | $278,020.50 | $6,414.50 |
| Kelly Hart & Hallman LLP | 4485 | April 1, 2012 through July 31, 2012 | $927,357.50 | $10,001.35 |
| KPMG LLP | 4480 | April 1, 2012 through July 31, 2012 | $1,188,571.83 | $121,098.00 |
| McKinsey Recovery & Transformation Services U.S., LLC et al. | 4508 | April 1, 2012 through July 31, 2012 | $1,458,005.33 | $55,468.12 |
| Mesirow Financial Consulting, LLC | 4514 | April 1, 2012 through July 31, 2012 | $2,769,919.20 | $63,501.91 |
| Moelis & Company, LLC | 4515 | April 1, 2012 through July 31, 2012 | $700,000.00 | $24,139.97 |
| Morgan, Lewis & Bockius LLP | 4604 | April 1, 2012 through July 31, 2012 | $939,007.03 | $72,104.09 |
| Paul Hastings LLP | 4504 | April 1, 2012 through July 31, 2012 | $8,341,497.62 | $518,461.91 |
| Robert J. Keach | 4501 | May 1, 2012 through July 31, 2012 | $60,123.00 | $671.40 |

| | | | | |
|---|---|---|---|---|
| Rothschild Inc. | 4494 | April 1, 2012 through July 31, 2012 | $800,000.00 | $407,622.71 |
| Sheppard, Mullin, Richter & Hampton LLP | 4519 | April 1, 2012 through July 31, 2012 | $734,910.50 | $24,211.51 |
| Skadden, Arps, Slate, Meagher & Flom LLP | 4510 | April 1, 2012 through July 31, 2012 | $5,586,167.00 | $267,335.00 |
| SkyWorks Capital, LLC | 4479 | April 1, 2012 through July 31, 2012 | $1,780,000.00 | $62,558.24 |
| The Boston Consulting Group, Inc. | 4466, 5031 | January 9, 2012 through August 31, 2012 | $11,700,655.73 | $0.00 |
| Togut, Segal & Segal LLP | 4518 | April 1, 2012 through July 31, 2012 | $465,747.50 | $2,582.38 |
| Weil, Gotshal & Manges LLP | 5105 | April 1, 2012 through July 31, 2012 | $17,118,196.25 | $859,416.72 |
| Winstead PC | 4499 | April 1, 2012 through July 31, 2012 | $696,507.00 | $23,987.41 |
| Yetter Coleman LLP | 4509 | April 1, 2012 through July 31, 2012 | $1,419,758.10 | $79,945.56 |

## Interim Applications Heard on February 14, 2012

| | RETAINED PROFESSIONAL | FEES REQUESTED | FEES AGREED REDUCTION | FEES RECOMMENDED | EXPENSES REQUESTED | EXPENSES AGREED REDUCTION | EXPENSES RECOMMENDED |
|---|---|---|---|---|---|---|---|
| 1 | Brinks Hofer Gilson & Lione | $272,778.00 | $4,144.75 | $268,633.25 | $165,220.02 | $0.00 | $165,220.02 |
| 2 | Epiq Bankruptcy Solutions, LLC | $12,436.10 | $0.00 | $12,436.10 | $36,850.19 | $29.77 | $36,820.42 |
| 3 | Ernst & Young LLP | $1,663,796.14 | $22,363.85 | $1,641,432.29 | $22,159.32 | $1,110.92 | $21,048.40 |
| 4 | Ford Harrison LLP | $787,564.50 | $3,048.01 | $784,516.49 | $127,352.70 | $13,692.41 | $113,660.29 |
| 5 | GCG, Inc. | $28,153.76 | $1,200.85 | $26,952.91 | $37.77 | $17.67 | $20.10 |
| 6 | Groom Law Group, Chartered | $1,933,140.15 | $100,661.36 | $1,832,478.79 | $60,763.63 | $363.30 | $60,400.33 |
| 7 | Haynes & Boone, LLP | $453,908.87 | $29,890.34 | $424,018.53 | $12,766.00 | $176.18 | $12,589.82 |
| 8 | Jenner & Block LLP | $278,020.50 | $9,575.75 | $268,444.75 | $6,414.50 | $195.32 | $6,219.18 |
| 9 | Kelly Hart & Hallman LLP (First Fee Application) | $661,118.50 | $105,061.78 | $556,056.72 | $3,307.39 | $0.00 | $3,307.39 |
| 10 | Kelly Hart & Hallman LLP (Second Fee Application) | $927,357.50 | $17,596.50 | $909,761.00 | $10,001.35 | $0.00 | $10,001.35 |
| 11 | KPMG LLP | $1,188,571.83 | $103,108.68 | $1,085,463.15 | $121,098.00 | $1,920.64 | $119,177.36 |
| 12 | McKinsey Recovery & Transformation Services U.S., LLC et al | $1,458,005.33 | $61,847.98 | $1,396,157.35 | $55,468.12 | $7,398.24 | $48,069.88 |
| 13 | Mesirow Financial Consulting, LLC | $2,769,919.20 | $49,705.30 | $2,720,213.90 | $63,501.91 | $7,945.78 | $55,556.13 |
| 14 | Moelis & Company, LLC | $700,000.00 | $0.00 | $700,000.00 | $24,139.97 | $2,921.01 | $21,218.96 |
| 15 | Sheppard, Mullin, Richter & Hampton LLP | $734,910.50 | $48,965.15 | $685,945.35 | $24,211.51 | $2,061.52 | $22,149.99 |
| 16 | Skadden, Arps, Slate, Meagher & Flom LLP | $5,586,167.00[1] | $721,368.00[2] | $5,586,167.00 | $267,335.00 | $42,244.00 | $267,335.00 |
| 17 | SkyWorks Capital, LLC | $1,780,000.00 | $65,144.00 | $1,714,856.00 | $62,558.24 | $14,856.00 | $47,702.24 |
| 18 | Togut, Segal & Segal LLP | $465,747.50 | $11,220.21 | $454,527.29 | $2,582.38 | $0.00 | $2,582.38 |
| 19 | Winstead PC | $696,507.00 | $43,078.85 | $653,428.15 | $23,987.41 | $232.63 | $23,754.78 |
| | **TOTAL** | **$22,398,102.38** | **$1,397,981.36** | **$21,721,489.02** | **$1,089,755.41** | **$95,165.39** | **$1,036,834.02** |

[1] This amount is net of the voluntary reduction taken by Skadden in its Second Interim Fee Application.
[2] This amount includes the voluntary reduction of $721,368.00 in fees and $42,244.00 in expenses.



# AMR CORPORATION, et al.

## Case No. 11-15463 (SHL)

### Summary of Fees and Expenses Challenged by Fee Examiner for First Interim Fee Period

#### Interim Applications Heard on September 20, 2012

| | RETAINED PROFESSIONAL | FEES REQUESTED | FEES AGREED REDUCTION | FEES RECOMMENDED | EXPENSES REQUESTED | EXPENSES AGREED REDUCTION | EXPENSES RECOMMENDED |
|---|---|---|---|---|---|---|---|
| 1 | Bain & Company, Inc. | $1,312,500.00 | $0.00 | $1,312,500.00 | $81,316.62 | $ 29,632.38 | $51,684.24 |
| 2 | The Boston Consulting Group, Inc. | $3,882,000.00 | $31,334.27 | $3,850,665.73 | $0.00 | $0.00 | $0.00 |
| 3 | Brinks Hofer Gilson & Lione | $ 93,932.50 | $5,257.50 | $ 88,675.00 | $43,164.91 | $0.00 | $43,164.91 |
| 4 | Deloitte Consulting LLP | $ 413,117.50 | $20,000.00 | $393,117.50 | $2,754.94 | $72.52 | $2,682.42 |
| 5 | Epiq Bankruptcy Solutions, LLC | $ 12,212.90 | $1,750.82 | $10,462.08 | $30,932.48 | $199.69 | $30,732.79 |
| 6 | Ernst & Young LLP | $1,020,995.60 | $44,641.10 | $976,354.50 | $14,099.00 | $113.34 | $13,985.66 |
| 7 | GCG, Inc. | $ 220,597.60 | $12,334.31 | $208,263.29 | $589.73 | $589.73 | $0.00 |
| 8 | Groom Law Group, Chartered | $ 1,534,371.75 | $69,415.16 | $1,464,956.59 | $34,575.02 | $131.85 | $34,443.17 |
| 9 | Haynes and Boone, LLP | $ 317,485.62 | $23,400.70 | $294,084.92 | $20,482.95 | $89.13 | $20,393.82 |
| 10 | McKinsey Recovery & Transformation Services U.S., LLC | $ 2,461,738.50 | $52,956.85 | $2,408,781.65 | $189,703.16 | $15,804.93 | $ 173,898.23 |
| 11 | Mesirow Financial Consulting, LLC | $ 4,732,175.00 | $73,909.89 | $4,658,265.11 | $156,368.10 | $33,976.27 | $122,391.83 |
| 12 | Moelis & Company LLC | $ 671,774.20 | $0.00 | $671,774.20 | $ 146,006.47 | $8,439.71 | $137,566.76 |
| 13 | Paul Hastings LLP | $7,530,144.89 | $47,534.72 | $7,482,610.17 | $305,475.09 | $4,046.40 | $301,428.69 |

| | RETAINED PROFESSIONAL | FEES REQUESTED | FEES AGREED REDUCTION | FEES RECOMMENDED | EXPENSES REQUESTED | EXPENSES AGREED REDUCTION | EXPENSES RECOMMENDED |
|---|---|---|---|---|---|---|---|
| 14 | Perella Weinberg Partners LP | $ 675,000.00 | $175,000.00 | $500,000.00 | $ 20,088.00 | $12,675.00 | $7,413.00 |
| 15 | Rothschild Inc. | $ 813,333.33 | $0.00 | $813,333.33 | $ 281,199.33 | $24,432.38 | $256,766.95 |
| 16 | Sheppard, Mullin, Richter and Hampton LLP | $ 604,354.50 | $48,151.92 | $556,202.58 | $25.35 | $0.00 | $25.35 |
| 17 | Skadden, Arps, Slate, Meagher & Flom LLP | $5,739,023.00[1] | $341,547.91[2] | $5,709,846.83 | $176,212.00 | $2,116.09 | $174,095.91 |
| 18 | Togut, Segal & Segal LLP | $ 852,154.00 | $21,087.10 | $831,066.90 | $5,769.40 | $45.52 | $5,723.88 |
| 19 | Weil, Gotshal & Manges LLP | $15,282,445.25[3] | $498,470.00[4] | $14,783,975.95 | $410,893.12 | $3,779.20 | $407,113.92 |
| | **TOTAL** | **$48,169,356.14** | **$1,466,792.25** | **$47,014,936.33** | **$1,919,655.67** | **$136,144.14** | **$1,783,511.53** |

## Interim Applications Heard on November 29, 2012

| | RETAINED PROFESSIONAL | FEES REQUESTED | FEES AGREED REDUCTION | FEES RECOMMENDED | EXPENSES REQUESTED | EXPENSES AGREED REDUCTION | EXPENSES RECOMMENDED |
|---|---|---|---|---|---|---|---|
| 20 | AvAirPros (First Fee Application) | $277,855.80 | $17,254.48 | $260,601.32 | $22,456.90 | $450.61 | $22,006.29 |
| 21 | AvAirPros (Second Fee Application) | $292,389.12 | $9,943.78 | $282,445.34 | $21,023.88 | $2,850.25 | $18,173.63 |
| 22 | Debevoise & Plimpton LLP | $13,391,884.00 | $454,872.25 | $12,937,011.75 | $250,664.39 | $129,840.13 | $120,824.26 |
| 23 | Deloitte Financial Advisory Services LLP | $6,944,230.35 | $447,862.18 | $6,496,368.17 | $1,283,258.20 | $0.00 (Adjourned) | $0.00 (Adjourned) |
| 24 | KPMG LLP | $1,333,785.20 | $75,311.06 | $1,258,474.14 | $129,195.55 | $731.89 | $128,463.66 |

---

[1] This amount includes a voluntary reduction of $601,506.00 in fees and $25,891.00 in expenses.
[2] Amount absorbed by voluntary reduction in excess of mandatory components thereof.
[3] This amount includes a voluntary reduction of approximately $300,000.00 in fees and $100,000.00 in expenses.
[4] A component of the request in the amount of $144,425 of fees resulting from time billed at rates in excess of $1,000/hour is being withdrawn by Weil Gotshal subject to requesting same at a future date; another component for reviewing time records for privileged or confidential information is disallowed at this time, but without prejudice to Weil Gotshal seeking reinstatement of that amount in a final fee application or upon motion.

| | RETAINED PROFESSIONAL | FEES REQUESTED | FEES AGREED REDUCTION | FEES RECOMMENDED | EXPENSES REQUESTED | EXPENSES AGREED REDUCTION | EXPENSES RECOMMENDED |
|---|---|---|---|---|---|---|---|
| 25 | Morgan, Lewis & Bockius LLP | $877,738.80 | $69,358.82 | $808,379.98 | $75,090.05 | $3,577.79 | $71,512.26 |
| 26 | Ryan, LLC *(First Fee Application)* | $1,216,707.08 | $0.00 | $1,216,707.08 | $0.00 | $0.00 | $0.00 |
| 27 | Ryan, LLC *(Second Fee Application)* | $675,525.13 | $0.00 | $675,525.13 | $0.00 | $0.00 | $0.00 |
| 28 | SkyWorks Capital, LLC | $1,809,666.00 | $80,000.00 | $1,729,666.00 | $22,325.69 | $0.00 | $22,325.69 |
| 29 | Winstead, PC | $371,361.47 | $23,182.25 | $348,179.22 | $0.00 | $0.00 | $0.00 |
| | **TOTAL** | **$27,191,142.95** | **$1,177,784.82** | **$26,013,358.13** | **$1,804,014.66** | **$137,450.67** | **$383,305.79** |

## Interim Application Heard on January 23, 2012

| | RETAINED PROFESSIONAL | FEES REQUESTED | FEES AGREED REDUCTION | FEES RECOMMENDED | EXPENSES REQUESTED | EXPENSES AGREED REDUCTION | EXPENSES RECOMMENDED |
|---|---|---|---|---|---|---|---|
| 30 | The Boston Consulting Group, Inc. (Second and Final Fee Application) | $11,700,655.73 | $0.00 | $11,700,655.73 | $0.00 | $0.00 | $0.00 |
| | **TOTAL** | **$11,700,655.73** | **$0.00** | **$11,700,655.73** | **$0.00** | **$0.00** | **$0.00** |

# Interim Applications Heard on February 14, 2012

| | RETAINED PROFESSIONAL | FEES REQUESTED | FEES AGREED REDUCTION | FEES RECOMMENDED | EXPENSES REQUESTED | EXPENSES AGREED REDUCTION | EXPENSES RECOMMENDED |
|---|---|---|---|---|---|---|---|
| 31 | Brinks Hofer Gilson & Lione | $272,778.00 | $4,144.75 | $268,633.25 | $165,220.02 | $0.00 | $165,220.02 |
| 32 | Epiq Bankruptcy Solutions, LLC | $12,436.10 | $0.00 | $12,436.10 | $36,850.19 | $29.77 | $36,820.42 |
| 33 | Ernst & Young LLP | $1,663,796.14 | $22,363.85 | $1,641,432.29 | $22,159.32 | $1,110.92 | $21,048.40 |
| 34 | Ford Harrison LLP | $787,564.50 | $3,048.01 | $784,516.49 | $127,352.70 | $13,692.41 | $113,660.29 |
| 35 | GCG, Inc. | $28,153.76 | $1,200.85 | $26,952.91 | $37.77 | $17.67 | $20.10 |
| 36 | Groom Law Group, Chartered | $1,933,140.15 | $100,661.36 | $1,832,478.79 | $60,763.63 | $363.30 | $60,400.33 |
| 37 | Haynes & Boone, LLP | $453,908.87 | $29,890.34 | $424,018.53 | $12,766.00 | $176.18 | $12,589.82 |
| 38 | Jenner & Block LLP | $278,020.50 | $9,575.75 | $268,444.75 | $6,414.50 | $195.32 | $6,219.18 |
| 39 | Kelly Hart & Hallman LLP (First Fee Application) | $661,118.50 | $105,061.78 | $556,056.72 | $3,307.39 | $0.00 | $3,307.39 |
| 40 | Kelly Hart & Hallman LLP (Second Fee Application) | $927,357.50 | $17,596.50 | $909,761.00 | $10,001.35 | $0.00 | $10,001.35 |
| 41 | KPMG LLP | $1,188,571.83 | $103,108.68 | $1,085,463.15 | $121,098.00 | $1,920.64 | $119,177.36 |
| 42 | McKinsey Recovery & Transformation Services U.S., LLC et al | $1,458,005.33 | $61,847.98 | $1,396,157.35 | $55,468.12 | $7,398.24 | $48,069.88 |
| 43 | Mesirow Financial Consulting, LLC | $2,769,919.20 | $49,705.30 | $2,720,213.90 | $63,501.91 | $7,945.78 | $55,556.13 |
| 44 | Moelis & Company, LLC | $700,000.00 | $0.00 | $700,000.00 | $24,139.97 | $2,921.01 | $21,218.96 |
| 45 | Sheppard, Mullin, Richter & Hampton LLP | $734,910.50 | $48,965.15 | $685,945.35 | $24,211.51 | $2,061.52 | $22,149.99 |
| 46 | Skadden, Arps, Slate, Meagher & Flom LLP | $5,586,167.00[5] | $721,368.00[6] | $5,586,167.00 | $267,335.00 | $42,244.00 | $267,335.00 |
| 47 | SkyWorks Capital, LLC | $1,780,000.00 | $65,144.00 | $1,714,856.00 | $62,558.24 | $14,856.00 | $47,702.24 |
| 48 | Togut, Segal & Segal LLP | $465,747.50 | $11,220.21 | $454,527.29 | $2,582.38 | $0.00 | $2,582.38 |
| 49 | Winstead PC | $696,507.00 | $43,078.85 | $653,428.15 | $23,987.41 | $232.63 | $23,754.78 |
| | **TOTAL** | **$22,398,102.38** | **$1,397,981.36** | **$21,721,489.02** | **$1,089,755.41** | **$95,165.39** | **$1,036,834.02** |

| | GRAND TOTAL | $109,459,257.20 | $4,042,558.43 | $106,450,439.21 | $4,813,425.74 | $368,760.20 | $3,203,651.34 |
|---|---|---|---|---|---|---|---|

[5] This amount is net of the voluntary reduction taken by Skadden in its Second Interim Fee Application.
[6] This amount includes the voluntary reduction of $721,368.00 in fees and $42,244.00 in expenses.

## Interim Applications Adjourned to Later Date

| | RETAINED PROFESSIONAL | FEES REQUESTED | FEES AGREED REDUCTION | FEES RECOMMENDED | EXPENSES REQUESTED | EXPENSES AGREED REDUCTION | EXPENSES RECOMMENDED |
|---|---|---|---|---|---|---|---|
| 1 | Cooley LLP | $709,748.70 | | | $8,959.59 | | |
| 2 | Debevoise & Plimpton LLP | $8,398,758.50 | | | $59,212.48 | | |
| 3 | Deloitte Financial Advisory Services LLP[7] (First Interim Fee Application) | | | | $1,283,258.20 | | |
| 4 | Deloitte Financial Advisory Services LLP (Second Interim Fee Application) | $3,665,963.80 | | | $686,363.50 | | |
| 5 | Dewey & LeBoeuf LLP | $4,569,107.40 | | | $42,023.42 | | |
| 6 | Felsberg, Pedretti e Mannrich Abogados e Consultores Legais | $351,612.26 | | | $45,660.86 | | |
| 7 | Harris, Finley & Bogle, P.C. (First Interim Fee Application) | $260,123.50 | | | $6,560.43 | | |
| 8 | Harris, Finley & Bogle, P.C. (Second Fee Application) | $266,741.00 | | | $4,502.70 | | |
| 9 | Morgan, Lewis & Bockius LLP | $939,007.03 | | | $72,104.09 | | |
| 10 | Paul Hastings LLP | $8,341,497.62 | | | $518,461.91 | | |
| 11 | Rothschild Inc. | $800,000.00 | | | $407,622.71 | | |
| 12 | Ryan, LLC | $675,525.13 | | | $0.00 | | |
| 13 | Weil, Gotshal & Manges LLP | $17,118,196.25 | | | $859,416.72 | | |
| 14 | Yetter Coleman LLP (First Fee Application) | $963,769.17 | | | $216,145.77 | | |
| 15 | Yetter Coleman LLP (Second Fee Application) | $1,419,758.10 | | | $79,945.56 | | |
| | **TOTAL** | | | | | | |

---

[7] Adjourned solely with respect to reimbursement of expenses.