UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x    FOR PUBLICATION

In re:                                                                                    Chapter 11

AMR CORPORATION, *et al.*,                                       Case No. 11-15463 (SHL)

                                Debtors.                           (Jointly Administered)

----------------------------------------------------------------x

## MEMORANDUM DECISION

Before the Court is the *Motion of Ronald A. Katz Technology Licensing, L.P. for an Order Deeming its Proof of Claim Timely Filed Pursuant to Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code* (ECF No. 5215) (the "Motion"). Movant asserts that it did not receive actual notice of the bar date setting the deadline for filing claims in the above-captioned Chapter 11 cases, and therefore the Court should deem its proof of claim as timely, even thought it was filed more than three months after the bar date. In the alternative, Katz maintains that it meets the excusable neglect standard to permit a late filed claim. For the reasons stated below, the Motion is denied.

## BACKGROUND

Debtors filed voluntary petitions seeking relief under Chapter 11 on November 29, 2011. On March 30, 2012, Debtors filed a motion to establish a deadline for filing proofs of claim (ECF No. 2086). On May 4, 2012, the Court entered an order establishing July 16, 2012 as the bar date in the Debtors' cases (ECF No. 2609) (the "Bar Date"). On May 23, 2012, the Debtors filed the *Affidavit of Service of Isabel I. Baumgarten* setting forth details of service of the Bar Date on the Debtors' creditors (ECF No. 2888) ("Bar Date Affidavit"). The Bar Date notice and proof of claim form were served upon Frank Pietrantonio, Esq., a partner of Cooley LLP

("Cooley"), at the following address: "Ronald A. Katz Technology Licensing L.P. C/O Ronald A. Katz Technology Licensing LP Frank Pietrantonio Esq. Cooley, LLP One Freedom Square 11951 Freedom Drive, Reston VA 20190." (Bar Date Affidavit, Ex. D).

Katz and its attorneys maintain that they never received the Bar Date notice. (Affidavit of Frank Pietrantonio, Ex. C. to Motion ¶¶ 3-8 ("Pietrantonio Affidavit"); Affidavit of Jonathan G. Graves, Ex. D to Motion ¶ 5 ("Graves Affidavit"); Affidavit of James Tramontana, Ex. E to Motion ¶ 3 ("Tramontana Affidavit")). Jonathan G. Graves, an attorney for Katz, asserts that he first became aware of the Bar Date on October 11, 2012. (Graves Affidavit ¶ 4). Katz asserts that it learned the Bar Date had passed on October 17, 2012, without it having filed a proof of claim. (Tramontana Affidavit ¶ 4). Almost one week later, on October 26, 2012, Katz sent a proof of claim to The Garden City Group ("GCG"), the Debtors' claims agent, via overnight mail. (Motion ¶ 15). GCG received Katz's claim on October 27, 2012, and assigned it claim number 13293. (*Id.*; Ex. C to Motion).

In claim number 13293, Katz seeks not less than $36,449,123 based on patent infringement litigation against American Airlines, Inc. currently pending in the United States District Court for the Central District of California. The case has been stayed as to the Debtors because of the filing of the Debtors' Chapter 11 cases. (Motion ¶ 4).

## DISCUSSION

A bar date order is "an integral step in the reorganization process." *In re Best Prods. Co., Inc.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992). It enables "the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." *Id.* "If individual creditors were permitted to postpone indefinitely the effect of a bar order . . . the

2

institutional means of ensuring the sound administration of the bankruptcy estate would be undermined." *Fidelity Bank, N.A. v. Hooker Investments, Inc. (In re Hooker Investments, Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991).

    **A. Alleged Lack of Notice of the Bar Date**

The constitutional standard for due process requires that known creditors in a bankruptcy case receive actual notice of the bar date. *City of New York v. N.Y., N.H. & H.R. Co.,* 344 U.S. 293, 296-97 (1953). "Known creditors . . . must be afforded notice 'reasonably calculated, under all the circumstances, to apprise' them of the pendency of the bar date." *In re R.H. Macy & Co., Inc.,* 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). "[I]f a creditor is not given reasonable notice of the bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally discharged." *Grant v. U.S. Home Corp. (In re U.S. Home Corp.)*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998) (citation omitted). In Chapter 11, therefore, a known creditor must receive proper, adequate notice before its claim is barred forever. *See Best Prods. Co., Inc.*, 140 B.R. at 357. The bar date is strictly enforced except when a known creditor is not listed on the schedules and fails to receive notice of the bar date. *Id.* at 358-59 (citing *Wright v. Placid Oil Co.*, 107 B.R. 104, 106 (N.D. Tex. 1989)).

It is well settled that proof that a letter was properly addressed and placed in the mail system creates a presumption that the letter was received in the usual time by the addressee. *See Hagner v. U.S.*, 285 U.S. 417, 419 (1932). Thus, upon proof of mailing a properly addressed letter, a rebuttable presumption of receipt arises. *See R.H. Macy & Co., Inc.,* 161 B.R. at 359 (citing *Hagner*, 285 U.S. at 430).

3

Federal courts in New York have held "quite uniformly" that an affidavit of non-receipt is insufficient to rebut the presumption of receipt created by proof of mailing. *See Cablevision Sys. Corp. v. Malandra* (*In re Malandra*), 206 B.R. 667, 673 (Bankr. E.D.N.Y. 1997); *R.H. Macy*, 161 B.R. at 360 ("Movants' respective self-serving submissions asserting non-receipt . . . [are] insufficient to rebut the . . . presumption of receipt."); *In re Horton*, 149 B.R. 49, 58 (Bankr. S.D.N.Y. 1992) (noting that "affidavits of [creditor's] employees stand merely as general denials that [creditor] received the [n]otice and are therefore insufficient to rebut the presumption").

This is not to say that it is impossible to rebut the presumption of mailing. Rather, testimony denying receipt must be accompanied by more detailed evidence to confirm receipt such as evidence of tracking procedures to catalogue the receipt of mail. *See Hogarth v. N.Y. City Health and Hosps. Corp.*, 2000 WL 375242 (S.D.N.Y. Apr. 12, 2000) (defendants successfully rebutted presumption that letter was delivered by clearly establishing use of detailed logs of incoming and outgoing mail that contained no record of letter); *see also In re Robinson*, 228 B.R. 75, 82 (Bankr. E.D.N.Y. 1998) ("Although the mere denial of receipt does not rebut the presumption, testimony denying receipt in combination with evidence of standardized procedures for processing mail can be sufficient [to] rebut the presumption."). Courts in this Circuit do not take this issue lightly given the important function served by a bar date in bankruptcy cases. Indeed, "[i]f a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled." *R.H. Macy*, 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993) (quoting *Trump Taj Mahal Assocs. v. Alibraham*, 156 B.R. 928, 939 (Bankr. D.N.J. 1993)).

The movant offers four affidavits to support its contention that it did not receive notice of the Bar Date. The affiants set forth the "standardized procedures" by which mail is handled in Mr. Pietrantonio's office. (*See* Pietrantonio Affidavit ¶¶ 9-28). In essence, Ms. Boose, a legal secretary for Mr. Pietrantonio, receives all mail addressed to Pietrantanio and sorts it. *Id*. She then files the mail in various folders on Pietrantonio's desk, according to the nature of the mail. *Id*. Movant asserts that all legal-related mail is placed in one folder. *Id*. Pietrantonio reviews all mail in these folders and responds in an appropriate fashion. *Id*. Pietrantonio asserts that if he received the notice, he would have seen it and acted on it. *Id*. Because he did not act on or see it in his mail folders, he therefore concludes that the Bar Date notice did not arrive at Cooley.

Although the movant describes the procedures used in the law offices as standardized, the procedures are merely an informal distribution system to handle incoming mail that lacks a formal tracking system. Essentially, the movant has presented nothing more than evidence of non-receipt. *See Malandra*, 206 B.R. at 673 (affidavit of non-receipt is insufficient); *R.H. Macy*, 161 B.R. at 360 (same); *Horton*, 149 B.R. at 58 (general denials of receipt insufficient). The movant's evidence falls far short of the more exacting systems for tracking mail that are described in the cases upon which the movant relies.

Movant cites *Hogarth*, for example, to argue that it needs only to supply an affidavit attesting to the normal mail procedures at the place where notice was delivered to rebut the presumption of receipt. Specifically, movant relies on the statement in *Hogarth* that "the presumption of delivery can be successfully rebutted with a sworn affidavit giving a detailed description of the mail procedures followed at a company for all incoming mail supporting the conclusion that the mail was never received." *Hogarth*, 2000 U.S. Dist. LEXIS 4590 at *13. But the facts of *Hogarth* are different than this case. The plaintiff in *Hogarth* was required to

5

file a charge with the United States Equal Employment Opportunity Commission ("EEOC") before bringing a suit under the Americans with Disabilities Act. *Id.* at *9. As evidence that plaintiff mailed his charge to the EEOC, plaintiff produced a copy of his certified mail receipt, part of which the court found illegible. *Id.* at *13. The defendants successfully rebutted the presumption of mailing by showing that only one United States Postal Service office handles all mail delivered to and from the EEOC office in New York City, and that Post Office had no record of plaintiffs letter despite the fact that the Post Office logged all incoming certified mail, including the article number, sender name, and addressee. *Id.* at *14. Moreover, the defendant demonstrated that the EEOC office also kept records of all incoming certified mail in the same fashion as the Post Office but lacked any record of plaintiff's letter. *Id.* at *15. Based on this detailed tracking information, the court in *Hogarth* found that the plaintiff's letter had not been sent.

Here, movant's description of Cooley's mail procedures falls far short of the level of detail seen in *Hogarth*. There is no evidence or assertion that anyone in Cooley's office logs incoming mail. Instead, the affidavits here merely describe an informal system of placing mail in various folders on the movant's attorney's desk. Accordingly, movant's reliance on *Hogarth* is misplaced.

Movant also heavily relies on *American Casualty Company v. Nordic Leasing, Inc.*, 42 F. 3d 725 (2d Cir. 1994) to argue that the Second Circuit has recognized that testimony of non-receipt, on its own, is sufficient to rebut the presumption of receipt or to create a material issue of fact in certain circumstances. In that case, the court found that a material issue of fact existed as to whether an insurance company had provided notice to the DMV as required under Vermont law. *American Casualty*, 42 F. 3d at 734. In that situation, however, the affiant who swore that

6

mailing of the notice had occurred did not have actual firsthand knowledge of the mailing. *Id.* Moreover, the records custodian for the DMV, who tracked all incoming mail, swore based on her firsthand knowledge that the document at issue was never received by the DMV. *Id.* Based on these competing sworn statements, the court in *American Casualty* found that a material issue of fact existed, precluding summary judgment.

The facts in this case do not parallel those in *American Casualty*.[1] Like *Hogarth*, the court in *American Casualty* was provided with evidence of detailed logging of individual mail, evidence that is lacking here. And, unlike *American Casualty*, the Debtors' claims agent here provided a sworn statement based on firsthand knowledge that it mailed the notice to the movant. For these reasons, the Court rejects movant's reliance on *American Casualty*.

## B.  Excusable Neglect

As an alternative to its argument on actual notice, Katz argues that its failure to timely file was due to excusable neglect under Bankruptcy Rule 9006(b)(1). Bankruptcy Rule 9006(b)(1) provides that "the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

The Supreme Court has held that the term "neglect" in its ordinary sense means "to give little attention or respect to a matter, or . . . to leave undone or unattended to *esp[ecially] through carelessness*." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 388 (1993) (alterations in original). Neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* Whether a claimant's neglect of a deadline is excusable, however, is an equitable determination. *Id.* at 395. A court should consider all

---

[1]    As the Debtors note, the decision in *American Casualty* applies Vermont law and thus, it is not the controlling standard for the Second Circuit.

7

relevant circumstances surrounding the claimant's omission, including "the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it is within reasonable control of the movant, and whether the movant acted in good faith." *Id.*

The Second Circuit has adopted a strict standard on excusable neglect. *See Asbestos Pers. Injury Plaintiffs v. Travelers Indem. Co.* (*In re Johns-Manville Corp.*), 476 F.3d 118, 120, 124 (2d Cir. 2007); *Midland Cogeneration Venture L.P. v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 122 (2d Cir. 2005) ("[This Circuit has] 'taken a hard line' in applying the *Pioneer* test."). "[T]he equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule, and . . . where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test." *Enron Corp.,* 419 F.3d at 123. The hard line approach focuses primarily on the reason for the claimant's delay, including whether it was within reasonable control of the claimant, because the other three *Pioneer* factors usually weigh in favor of the party seeking the extension. *Id.* at 122.

Under the *Pioneer* analysis, the Court must consider movant's reason for delay in filing its proof of claim and whether that reason was reasonably within movant's control. Here, the movant's only excuse for delay is that it did not receive notice, and it offers no other explanation or cause for the delay. As discussed above, however, this Court finds that movant did receive notice. Because movant received notice, the Court finds that it was within movant's control to file the claim before the Bar Date. Consequently, this factor weighs against the movant.

Even accepting, *arguendo*, movant's assertion that it did not receive the notice of the Bar Date, movant was aware of Debtors' Chapter 11 cases by virtue of the stay put in place in movant's prepetition litigation. Given that movant was represented by highly sophisticated

8

counsel, it was certainly within movant's control to monitor the bankruptcy case. But it is undisputed that movant failed to check the bankruptcy case docket for at least five months to see if a bar date had been established in the cases; the movant failed to check the docket from May 2012, when the Bar Date Order was entered, to mid-October 2012, when movant realized the Bar Date had passed. As a sophisticated party holding a substantial claim against Debtors and that is represented by counsel, the failure to monitor the docket weighs heavily against a finding of excusable under the applicable standards in this Circuit. *See In re Dana Corp.*, No. 06-10354 (BRL), 2007 Bankr. Lexis 1934, at *5 (Bankr. S.D.N.Y. May 30, 2007) (noting that "[c]learly Goodyear is a highly sophisticated creditor . . . it failed to check the docket for such instructions for more than six months after the Bar Date and eight months after the Bar Date Order was entered") (citing *Wechsler v. Equitable Life Assurance Society,* 246 B.R. 490, 495 (S.D.N.Y. 2000) (reason for delay weighs against party where he failed to check the docket for weeks)); *see also U.K. Northridge, Inc. v. Au Coton, Inc. (In re Au Coton, Inc.)*, 171 B.R. 16, 18 (S.D.N.Y. 1994) (affirming bankruptcy court's denial of leave to file late proof of claim where three of *Pioneer* factors favored appellant, but appellant's reason for delay was "simple carelessness").

Next, the Court considers the length of movant's delay and its potential impact on the judicial proceedings. There is no bright-line rule governing when the lateness of a claim is "substantial." *Enron*, 419 F.3d at 128. Instead, courts consider the degree to which the delay might disrupt the judicial administration of that particular case. *Id.* Thus, the length of the delay, the complexity of the case, and the progress made in a case are all relevant considerations, but none is dispositive on its own. *Id.* at 128-129 (citing *Linder v. Trump's Castle Assocs.*, 155 B.R. 102, 108 .10 (D. N.J. 1993)).

9

Here, the length of delay by the movant is significant. Movant filed the Motion more than five months after the Court entered the Bar Date Order and more than three months after the Bar Date had passed. Movant argues that the judicial administration of the cases would not be impacted because the Debtors had not yet filed a plan and disclosure statement at the time movant filed the Motion. This fact alone is not enough for movant to prevail. Indeed, if a late claim was permitted so long as it was filed before the plan, the bar date would serve little purpose. As the Committee of Unsecured Creditors noted in its objection, the Debtors have made "great strides" in the claims reconciliation process since the passing of the Bar Date and are "well advanced" in their plan to emerge from Chapter 11. (Committee Objection ¶ 25). At the time the Motion was heard, Debtors had filed at least 44 omnibus objections to claims in their cases, objecting to a great number of claims. *See Order granting Debtors' Forty Fourth Objection* (ECF No. 5542). Movant has failed to show that asserting its claim three months late would not disrupt the administration of this case.

The last factor, prejudice to the Debtors, also weighs against the movant. Courts have often recognized the danger of opening the floodgates to potential claimants. *See, e.g., Enron*, 419 F.3d at 132 n.2 ("[C]ourts in this and other Circuits regularly cite the potential 'flood' of similar claims as a basis for rejecting late-filed claims."); *Dana Corp.*, 2007 Bankr. Lexis 1934 at *19 (denying motion to file late claim because, among other reasons, "the floodgates argument is a viable one"). The movant here argues that its late claim will not result in prejudice because it represents only 0.01% of the total claims filed against the Debtors' estate.[2] (Motion at ¶ 38). However, movant overlooks the real issue, which is concern that permitting this late claim could open the floodgates to other similarly situated creditors. This concern is not merely hypothetical

---

[2] Katz's claim totals approximately $36 million. Over 13,000 claims have been filed in these cases totaling over $290 billion.

10

in large cases like this one.  According to Debtors' claim agent, Debtors have received more than 470 late proofs of claim totaling over $13.5 billion as of the hearing date of the Motion. (Declaration of Isabel I. Baumgarten in Support of Debtors' Objection to Motion of Ronald A. Katz Technology Licensing L.P. (ECF No. 5466) ¶ 12).  Permitting movant's late claim will no doubt lead other claimants to seek similar relief and slow down Debtor's progress with the claims reconciliation process that is already well underway.

In sum, the *Pioneer* factors do not weigh in favor of movant and movant has failed to satisfy the strict standard for demonstrating excusable neglect.

## CONCLUSION

Based on the foregoing, the Court finds that movant has received actual notice of the Bar Date, and has failed to demonstrate that its late-filed claim was the product of excusable neglect. For these reasons, the Court denies the Motion.  The Debtors are directed to settle an order on three days' notice.


Dated: New York, New York
       April 22, 2013


                                        */s/ Sean H. Lane*
                                        UNITED STATES BANKRUPTCY JUDGE