UNITED STATES BANKRUPTCY COURT     **Hearing Date:  May 9, 2013**
SOUTHERN DISTRICT OF NEW YORK     **Hearing Time: 10:00 a.m.**

-------------------------------------------------------x
                        :
In re                               :     Chapter 11
                        :
AMR CORPORATION, *et al.*,        :     Case No.  11-15463 (SHL)
                        :
                        :     (Jointly Administered)
                Debtors.     :
                        :
-------------------------------------------------------x

 

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE
APPLICATIONS OF THE DEBTORS AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF ORDERS
PURSUANT TO 11 U.S.C. § 328 AUTHORIZING AND APPROVING
AMENDMENTS TO THE RETENTION AND EMPLOYMENT OF
<u>ROTHSCHILD INC. AND MOELIS & COMPANY LLC, RESPECTIVELY</u>**

 

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

*Of Counsel:*

Brian S. Masumoto
Michael Driscoll
Trial Attorneys
33 Whitehall Street, 21st Floor
New York, New York 10004
Tel. No. (212) 510-0500
Fax No. (212) 668-2255

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   BACKGROUND ..........................................................................................................2
      A.    General Background ..........................................................................................2
      B.    Rothschild's Employment Application and Amendment ..................................2
      C.    The Moelis Employment Application and Amendment .....................................5
      D.    Slots, Gates and Routes Financing....................................................................8

III.  ARGUMENT.................................................................................................................8
      A.    The Governing Law ...........................................................................................8
            1.    Section 327(a) .........................................................................................8
            2.    Section 328 .............................................................................................9
      B.    Rothschild and Moelis Fail to Satisfy the Improvidence Standard Pursuant
            to Section 328 that Would Justify an Award of Compensation Different
            from the Amount Fixed in Their Original Fee Arrangements .............................10

IV.   CONCLUSION.............................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

Houlihan Lokey v. High River Ltd. P'ship, 369 B.R. 111 (S.D.N.Y. 2007) ...............................10

In re Asarco, LLC, 702 F.3d 250 (5th Cir. 2012) ...................................................9, 12

In re Engel, 124 F.3d 567 (3d Cir. 1997)........................................................................9

In re Johns-Manville Corp., 32 B.R. 728 (S.D.N.Y. 1983) .............................................9

In re High Voltage Eng'g Corp., 311 B.R. 320 (Bankr. D. Mass. 2004).....................................10,

In re Smart World Techs., LLC, 552 F.3d 228 (2d Cir. 2009). ......................................................9

In re Yablon, 136 B.R. 88 (Bankr. S.D.N.Y. 1992)..................................................10, 11

In re XO Commcn's Inc., 398 B.R. 106 (Bankr. S.D.N.Y. 2008) ...........................................9, 10

**Statutes, Rules, & Other Authorities**

11 U.S.C. § 327.....................................................................................................8, 9
11 U.S.C. § 328........................................................................................................ *passim*

TO:    THE HONORABLE SEAN H. LANE,
       UNITED STATES BANKRUPTCY JUDGE

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"),

respectfully submits this Objection (the "Objection") of the United States Trustee to the

Applications of the Debtors and the Official Committee Of Unsecured Creditors for Entry of

Orders Pursuant to 11 U.S.C. § 328 Authorizing and Approving Amendments to the Retention

and Employment of Rothschild Inc. and Moelis & Company LLC, Respectively (the,

respectively, "Rothschild Application Amendment" and the "Moelis Application Amendment,"

and together, the "Application Amendments").  ECF Doc. No. 7827 and 7832.  In support

thereof, the United States Trustee respectfully states:

## I.  PRELIMINARY STATEMENT

The United States files this Objection to the Application Amendments because the

generous fee arrangements that were previously approved by this Court for Rothschild and

Moelis, pursuant to Section 328(a), contemplated the raising of debtor-in-possession financing

by these firms.    Despite these pre-approved fee arrangements, Rothschild and Moelis now

seek additional compensation in the amounts of $10 million and $5 million, respectively, for

the raising of debtor-in-possession financing.  The Court should not approve the Application

Amendments because the additional compensation sought is not warranted.   Moreover, even

if Rothschild and Moelis were to establish that the raising of new debtor-in-possession

financing was outside the scope of their Engagement Letters, they nevertheless fail to sustain

their burden of proving that the terms and conditions of their pre-approved fee arrangements

were improvident in light of developments that they were incapable of anticipating.  Based on

their failure to establish that the terms and conditions of their pre-approved fee arrangements

were improvident, the Court should deny the Amendments they seek.

1

## II.  BACKGROUND

**A.      General Background**

1.        On November 29, 2011 (the "Petition Date"), AMR Corporation ("AMR") and certain of its direct and indirect subsidiaries (each a "Debtor" and collectively, the "Debtors") each filed petitions for relief under chapter 11, title 11, United States Code (the "Bankruptcy Code").  ECF Doc. No. 1.

2.        On December 5, 2011, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").  ECF Doc. No. 128.

3.        No trustee or examiner has been appointed in these cases.

4.        The Debtors continue to operate their respective businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

**B.      Rothschild's Employment Application and Amendment**

5.        On December 18, 2011, the Debtors moved to retain Rothschild Inc. ("Rothschild") as their financial advisor and investment banker.  ECF Docket No. 473.  The Rothschild Application was accompanied by a copy of the Engagement Letter dated October 17, 2011 between Rothschild and the Debtors (the "Rothschild Engagement Letter"), the Declaration of David L. Resnick in support of the application (the "Resnick Declaration"), and a proposed order approving the Rothschild Application (the "Rothschild Proposed Order").

6.        Pursuant to the Rothschild Application, and as set forth in the Rothschild Engagement Letter, Rothschild will receive, among other things, (i) a $200,000 monthly fee, (ii) a completion fee of $15 million, and (iii) a New Capital Fee equal to a percentage of the debt raised (50% of which would be credited toward the completion fee).  See Rothschild Application at ¶ 14, Resnick Declaration at ¶ 11.

7.      The Rothschild Engagement Letter provided in Section 4(d), the following

provision with respect to a New Capital Fee:

>       (d)      A new capital fee (the "New Capital Fee") equal to (i) 1.0%
> of any senior secured debt raised; (ii) 3.0% of the face amount of any
> junior secured or senior or subordinated unsecured debt (including any
> convertible debt) raised and (iii) 5.0% of any equity or hybrid capital
> raised (each, a "New Capital Raise"), in each case, in which Rothschild is
> asked to become substantively involved as an advisor.  The New Capital
> Fee shall be due and payable in cash at the closing of any New Capital
> Raise; provided, that no New Capital Fee shall become payable in respect
> of any new capital raised (x) with respect to any debtor-in-possession
> financing arrangements; (y) from an Acquirer or an entity having
> expressed an interest in becoming an Acquirer in connection with the
> consummation of a Restructuring Transaction which is intended to occur
> simultaneously with or within a reasonable period after the closing of such
> New Capital Raise.   For the avoidance of doubt, term "raised" shall
> include the amount committed or otherwise made available to the
> Company whether or not such amount (or any portion thereof) is drawn
> down at closing or is ever drawn down and whether or not such amount
> (or any portion thereof) is used to refinance existing obligations of the
> Company.

Rothschild Engagement Letter, pp. 5-6.

8.      The Rothschild Engagement Letter provided in Section 5, the following provision

with respect to a credit against the Completion Fee:

>       Section 5   Credit.  Rothschild shall credit against the Completion
> fee: (a) 50% of any New Capital Fees paid and (b) to the extent not
> otherwise applied against the fees and expenses of Rothschild under the
> terms of this Agreement, the Retainer; provided that the sum of such
> credits shall not exceed the Completion Fee.

Rothschild Engagement Letter, p. 6.

9.      On March 2, 2012, the Court entered a Final Order Authorizing the Employment

and Retention of Rothschild Inc. as Financial Advisor and Investment Banker to the Debtors

Nunc Pro Tunc to the Commencement Date ("Rothschild Retention Order").  ECF Docket No.

1557.

10. The Rothschild Retention Order provided that the fees payable to Rothschild would be subject to review only pursuant the standards set forth in section 328(a) of the Bankruptcy Code and not pursuant to section 330 of the Bankruptcy Code, except for a reservation of rights on behalf of the United States Trustee to respond or object to Rothschild's fees and expenses on all grounds, including, but not limited to, reasonableness pursuant to section 330. Id.

11. The Rothschild Retention Order includes various other provisions, including, but not limited to, indemnification provisions. See id.

12. On April 25, 2013, the Debtors filed an application seeking an amendment to the Rothschild Application (the "Rothschild Application Amendment"), accompanied by an amendment dated April 15, 2013 (the "Rothschild Engagement Letter Amendment") to the Rothschild Engagement Letter . ECF Docket No. 7827.

13. The Rothschild Engagement Letter Amendment provides for the following amendment:

> 1. Section 4(d) of the Engagement Letter is hereby amended and restated in its entirety as follows:
>
> "(d)  A new capital fee (the "New Capital Fee") equal to 1.0% of any senior secured debt raised (other than aircraft or equipment financing) (a "New Capital Raise"); provided, that the New Capital Fee shall not exceed an aggregate of $10 million. The New Capital Fee shall be due and payable in cash at the closing of any New Capital Raise; provided, that no New Capital Fee shall become payable in respect of any new capital raised from an Acquirer or an entity having expressed an interest in becoming an Acquirer in connection with the consummation of a Restructuring Transaction which is intended to occur simultaneously with or within a reasonable period after the closing of such New Capital Raise. For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company."

4

2.    Section 5 of the Engagement Letter is hereby amended and restated in its entirety as follows

"Section 5    Credit.    Rothschild shall credit against the Completion Fee, to the extent not otherwise applied against the fees and expenses of Rothschild under the terms of this Agreement, the Retainer."

Rothschild Engagement Letter Amendment, p. 1.

14.    The proposed order accompanying the Rothschild Retention Application Amendment (the "Rothschild Retention Order Amendment") fails to incorporate most of the provisions of the Rothschild Retention Order, including, but not limited to, the reservation of rights by the United States Trustee to respond or object to Rothschild's fees and expenses on all grounds, including but not limited to reasonableness pursuant to section 330.

**C.    The Moelis Employment Application and Amendment**

15.    On February 15, 2012, the Committee moved to retain Moelis & Company LLC ("Moelis") as their investment banker.  ECF Docket No. 1170.  The Moelis Application was accompanied by a copy of the Engagement Letter dated December 6, 20112011 between Moelis and the Committee (the "Moelis Engagement Letter"), the Declaration of William Derrough in support of the application (the "Derrough Declaration"), and a proposed order approving the Moelis Application (the "Moelis Proposed Order").

16.    Pursuant to the Moelis Application, and as set forth in the Moelis Engagement Letter, Moelis will receive, among other things, (i) a $175,000 monthly fee, (ii) a restructuring fee of $7.5 million offset by 50% of the aggregate monthly fee, commencing with the seventh full monthly fee.  See Moelis Application at ¶ 18, Derrough Declaration at ¶ 9.

17.    The Moelis Engagement Letter states that the Committee engaged Moelis "to act as its exclusive investment banker in connection with a potential Restructuring" and defined

"Restructuring" as follows:

> "Restructuring"    means any restructuring, reorganization, rescheduling, recapitalization or repayment of all or any material portion of the Company's liabilities however such result is achieved, including, without limitation, through a plan or plans of reorganization or liquidation (a "Plan") confirmed in the Bankruptcy Cases, an exchange offer or consent solicitation, covenant relief, rescheduling of debt maturities, change in interest rates, settlement or forgiveness of debt, conversion of debt into equity, other amendments to the Company's debt instruments, repayment of the Company's debt instruments, issuance of new securities, raising of new debt or equity capital, or the sale or other transfer of equity, assets or other interests of the Company (for avoidance of doubt a sale of all or substantially all of the Company shall be a Restructuring).

Moelis Engagement Letter, p. 1.

18.    On March 7, 2012, the Court entered an Order Authorizing the Employment and Retention of Moelis & Company LLC as Investment Banker to the Committee Nunc Pro Tunc to the December 6, 2011 ("Moelis Retention Order").  ECF Docket No. 1651.

19.    The Moelis Retention Order provided that the fees payable to Moelis would be subject to review only pursuant the standards set forth in section 328(a) of the Bankruptcy Code and not pursuant to section 330 of the Bankruptcy Code, except for a reservation of right on behalf of the United States Trustee.  Id.

20.    The Moelis Retention Order includes various other provisions, including, but not limited to, indemnification provisions.  See id.

21.    On April 25, 2013, the Committee filed an application seeking an amendment to the Moelis Application (the "Moelis Application Amendment") accompanied by an amendment dated April 16, 2013 (the "Moelis Engagement Letter Amendment") to the Moelis Engagement Letter.  ECF Docket No. 7832.

22.    The proposed order accompanying the Moelis Retention Application Amendment (the "Moelis Retention Order Amendment") fails to incorporate most of the provisions of the

Moelis Retention Order, including, but not limited to, the reservation of rights by the United

States Trustee to respond or object to Moelis' fees and expenses on the grounds of

reasonableness pursuant to section 330.

23.     The Moelis Engagement Letter Amendment provides for the following

amendment:

1.      The following new section 2(a)(iii) of the Engagement
Letter is hereby added:

"New Capital Fee

(iii)    A new capital fee (the "New Capital Fee") equal to 0.5% of
any senior secured debt raised (other than aircraft or equipment financing)
(a "New Capital Raise"); provided, that the New Capital Fee shall not
exceed an aggregate of $5 million. The New Capital Fee shall be due and
payable in cash at the closing of any New Capital Raise; provided, that no
New Capital Fee shall become payable in respect of any new capital raised
from any person, group of persons, partnership, corporation or other entity
(an "Acquirer") in connection with the sale or other transfer of equity,
assets or other interests in the Company or an entity having expressed an
interest in becoming an Acquirer in connection with the consummation of
a Restructuring which is intended to occur simultaneously with or within a
reasonable period after the closing of such New Capital Raise. For the
avoidance of doubt, the term "raised" shall include the amount committed
or otherwise made available to the Company whether or not such amount
(or any portion thereof) is drawn down at closing or is ever drawn down
and whether or not such amount (or any portion thereof) is used to
refinance existing obligations of the Company."

2.      The first sentence of section 2(b) of the Engagement Letter
is hereby amended and restated as follows: "Whether or not the Company
consummates a Restructuring or a New Capital Raise, the Company and
its bankruptcy estates will reimburse us for all of our reasonable out-of-
pocket expenses as they are incurred in entering into this agreement,
becoming retained in the Bankruptcy Cases and receiving payment of its
fees and expenses, and in connection with the performance of services
pursuant to this agreement, including the costs of our legal counsel
(without the need for such legal counsel to be retained as a professional in
the Bankruptcy Cases).

3.      The second sentence in section 5 of the Engagement Letter
is  hereby  amended  and  restated  as  follows:  "The  Committee

> acknowledges that we may, at our option and expense after announcement of any Restructuring or New Capital Raise, place announcements and advertisements or otherwise publicize such transaction and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our website and in such financial and other newspapers and journals as we may choose, stating that we have acted as exclusive investment banker to the Committee in connection with any Restructuring or New Capital Raise."

Moelis Engagement Letter Amendment, p. 1.

### D.    Slots, Gates and Routes Financing

24.    Simultaneous with the Application Amendments, the Debtors has filed a Motion for Orders Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503 and 507 and Fed. R. Bankr. P. 3001 and 6004 Authorizing the Debtors (I) to Obtain Financing Secured by Slots, Gates and Route Authorities, (II) to Repay Certain Prepetition Debt and (III) Granting Related Relief (the "DIP Motion").  ECF Docket No. 7828.

25.    The financing portion of the DIP Motion seeks authorization to obtain postpetition term financing in an aggregate amount up to $2.25 billion and revolving financing in an aggregate amount up to $1 billion secured on a first priority basis by slots, gates and route authorities of American Airlines, Inc.  DIP Motion, at 2.

### III.  ARGUMENT

### A.    The Governing Law

### 1.    Section 327(a)

Pursuant to Section 327(a) of the Bankruptcy Code:

> the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

"[A]pproval under Section 327 [of the Bankruptcy Code] establishes only that [a professional] may be employed by the debtor-in-possession, *and not that his employment will therefore or thereafter be compensated from estate funds.*"  In re Engel, 124 F.3d 567, 572 (3d Cir. 1997)(emphasis added); see also In re Johns-Manville Corp., 32 B.R. 728, 731 (S.D.N.Y. 1983)("section 327 approvals are merely preliminary 'go aheads' rather than conclusive determinations [of fees and expenses]").  Therefore, Section 327 establishes no guaranteed right to payment of fees.  Rather, this provision simply sets the guideposts for retention, such as requiring that the professional is disinterested and lacks any materially adverse interest.  See 11 U.S.C. § 327(a).

### 2. Section 328

Likewise, Section 328 of the Bankruptcy Code creates no automatic right of payment. This provision authorizes:

> employment of a professional person under section 327 or 1103 of this title, as the case may be, *on any reasonable terms and conditions of employment*, including on a retainer, on an hourly basis, or on a contingency fee basis.  Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, *if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions*.

11 U.S.C. § 328(a)(emphasis added).

Under Section 328(a) of the Bankruptcy Code, the Court "may not award a fee different from one that it has approved in a retention order unless it finds that the terms in the retention order were 'improvident in light of developments not capable of being anticipated at the time.'" In re Smart World Techs., LLC, 552 F.3d 228, 234-5 (2d Cir. 2009); In re Asarco, LLC, 702 F.3d 250, 263-4 (5th Cir. 2012); see also In re XO Commc'n Inc., 398 B.R. 106, 111 (Bankr.

S.D.N.Y. 2008); Houlihan Lokey v. High River Ltd. P'ship, 369 B.R. 111, 117 n.8 (S.D.N.Y.

2007) (affirming reduction of $18.0 million transaction fee sought by Houlihan to $4.0 million);

In re High Voltage Eng'g Corp., 311 B.R. 320, 332 (Bankr. D. Mass. 2004) (once a fee

arrangement is approved under section 328, the ability of the bankruptcy court to review the

amount of compensation payable to the professional is circumscribed).

Thus, in approving a fee arrangement under section 328(a), it has been held that "a court

may not revisit the reasonableness" of the arrangement when approval of the fees eventually is

sought. In re XO Commcn's, Inc., 323 B.R. 330, 339 (Bankr. S.D.N.Y. 2005). Because a

finding of improvidence is a high and subjective standard, courts rarely disturb the original terms

of a professional's employment. In re Yablon, 136 B.R. 88, 92 (Bankr. S.D.N.Y. 1992). Under

section 328, an intervening circumstance in order to render improvident a court's decision to

grant a fee application must be one that would have affected the court's decision in the first

place. High Voltage, 311 B.R. at 331. It must have been relevant to that decision in some way,

rendering it untenable or unwise in hindsight. Id.

A professional, retained pursuant to a pre-approved fee arrangement, who seeks payment

pursuant to different terms and conditions than those it is subject to under its retention order has

the burden of proof under section 328(a). Yablon, 136 B.R. at 91.

**B.      Rothschild and Moelis Fail to Satisfy the Improvidence Standard Pursuant
         to Section 328 that Would Justify an Award of Compensation Different from
         the Amount Fixed in Their Original Fee Arrangements**

The Rothschild and Moelis Retention Applications both provided that services rendered

in connection with the acquisition of new debt were included in the original fee arrangements.

See Rothschild Engagement Letter, Sect. 4(d); Moelis Engagement Letter, p. 1. Both Rothschild

and Moelis sought to be retained pursuant to section 328(a), seeking to insulate their

compensation from a reasonableness review pursuant to section 330 (except by the United States Trustee).   Now, both Rothschild and Moelis seek to modify the terms and conditions of their fee arrangements in order to increase the compensation allowed under the original fee arrangements without satisfying the improvident standard under which they originally sought to be compensated.

The Rothschild Engagement Letter provided in Section 4(d) that Rothschild would not be entitled to any New Capital Fee "with respect to any debtor-in-possession financing arrangements."  The Rothschild Engagement Letter Amendment now seeks to eliminate that self-imposed restriction and allow Rothschild to receive an additional $10 million that would not be offset as a credit against its $15 million Completion Fee.  Furthermore, the Rothschild Retention Order Amendment seeks to insulate the additional $10 million fee from a reasonableness review even by the United States Trustee.

Similarly, the Moelis Engagement Letter provided that Moelis had been engaged by the Committee as its exclusive investment banker in connection with a potential "Restructuring," which was defined to include the "raising of new debt or equity capital."  The Moelis Engagement Letter Amendment now seeks to allow Moelis to receive an additional fee of 0.5 percent of any senior secured debt, up to a maximum of $5 million.  Furthermore, the Moelis Retention Order Amendment seeks to insulate the additional $5 million fee from a reasonableness review even by the United States Trustee.

Although they bear the burden of proof, neither Rothschild nor Moelis make any attempt to address the improvident standard or explain why the standard does not apply to the Amendments being sought.  Yablon, 136 B.R. at 91.  While many cases involving the improvident standard protects the professional by preventing a reduction in the pre-approved fee,

11

that protection is balanced by the flip-side risk that holds the professional's compensation to the pre-approved fee even if the professional is required to perform services that the professional did not anticipate at the time the fee arrangement was agreed upon.  See Asarco, 702 F.3d at 266 (noting that even if the professional undertook tasks that either went beyond the scope of the Engagement Letter or constituted services not typically performed by investment banks, the bankruptcy court must explain with specificity why the professional was incapable of anticipating that it would be asked to perform such services).   Here, the pre-approved fee arrangements for both Rothschild and Moelis explicitly contemplated services in connection with the raising of new debt.  But, as Asarco demonstrates, even if Rothschild and/or Moelis contend that raising new debt is outside the scope of their Engagement Letters, they must explain with specificity why they were incapable of anticipating that they would be asked to perform such services.  Without a showing that the terms and conditions of their pre-approved fee arrangements were improvident, the Amendments sought by Rothschild and Moelis should be denied.

Alternatively, even if the Court were to determine that Rothschild and Moelis have satisfied their burden of proof that their pre-approved fee arrangements were improvident, thereby justifying the additional compensation in the amounts of $10 million and $5 million, respectively, the United States Trustee requests that the Court direct the professionals to incorporate the provisions contained in the Rothschild and Moelis Retention Orders, including, but not limited to, (i) the reservation of right of the United States Trustee to respond to or object to the fees of Rothschild and Moelis on the basis of reasonableness pursuant to section 330 and (ii) the indemnification provisions set forth therein.

## IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court sustain the

Objection of the United States Trustee and grant such other relief as is just.

Dated: New York, New York
       May 2, 2013

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:      /s/ Brian S. Masumoto
         Brian S. Masumoto
         Michael T. Driscoll
         Trial Attorneys
         33 Whitehall Street, 21st Floor
         New York, New York 10004
         Tel. No. (212) 510-0500
         Fax No. (212) 668-2255

13