| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br>-----------------------------------------------------------------x<br>In re:<br><br>AMR CORPORATION, *et al.*,<br><br>                       Debtors.<br>-----------------------------------------------------------------x | **FOR PUBLICATION**<br><br><br>Chapter 11<br><br>Case No. 11-15463 (SHL)<br><br>(Jointly Administered) |

## MEMORANDUM OF DECISION

**A P P E A R A N C E S :**

**WEIL, GOTSHAL & MANGES LLP**
*Counsel for the Debtors*
767 Fifth Avenue
New York, New York 10153
By:   Harvey R. Miller, Esq.
        Stephen Karotkin, Esq.
        Alfredo R. Pérez, Esq.

**TRACY HOPE DAVIS**
**UNITED STATES TRUSTEE**
33 Whitehall Street, 21st Floor
New York, New York 10004
By:   Susan Golden, Esq.
        Brian S. Masumoto, Esq.
        Michael T. Driscoll, Esq.

**SKADDEN ARPS SLATE MEAGHER & FLOM LLP**
*Counsel for the Official Committee of Unsecured Creditors*
Four Times Square
New York, New York 10036
By:   Jay M. Goffman, Esq.

-and-

155 North Wacker Drive
Chicago, Illinois 60606
By:   John Wm. Butler, Jr., Esq.
        Albert L. Hogan III, Esq.
        John K. Lyons, Esq.
        Felicia Gerber Perlman, Esq.

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
*Counsel for the Ad Hoc Committee of AMR Corporation Creditors*
1 Chase Manhattan Plaza
New York, New York 10005
By:   Gerard Uzzi, Esq.
      Eric K. Stodola, Esq.

**LATHAM & WATKINS LLP**
*Counsel for US Airways*
885 Third Avenue
New York, New York 10022
By:   D.J. (Jan) Baker, Esq.

**STEPTOE & JOHNSON LLP**
*Counsel for the Allied Pilots Association*
1330 Connecticut Ave., NW
Washington, DC 20036
By:   Filiberto Agusti, Esq.
      Joshua R. Taylor, Esq.

**JAMES & HOFFMAN, P.C.**
*Counsel for the Allied Pilots Association*
1130 Connecticut Ave., NW, Suite 950
Washington, DC 20036
By:   Edgar N. James, Esq.
      Kathy Krieger, Esq.
      David P. Dean, Esq.
      Darin M. Dalmat, Esq.
      Daniel M. Rosenthal, Esq.

**CAPLIN & DRYSDALE, CHARTERED**
*Counsel for the US Airline Pilots Association*
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
By:   James P. Wehner, Esq.
      Kevin C. Maclay, Esq.
      Todd E. Phillips, Esq.

**DAVIS POLK & WARDWELL LLP**
*Counsel for Citibank, N.A.*
450 Lexington Avenue
New York, New York 10017
By:   Marshall S. Huebner, Esq.
      Timothy E. Graulich, Esq.
      Natasha Tsiouris, Esq.

**MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, P.C.**
*Counsel for U.S. Bank National Association*
One Financial Center
Boston, Massachusetts 02111
By:   William W. Kannel, Esq.
      Ian A. Hammel, Esq.

**CHAPMAN AND CUTLER LLP**
*Counsel for U.S. Bank National Association and U.S. Bank Trust National Association*
111 West Monroe Street
Chicago, Illinois 60603
By:   James E. Spiotto, Esq.
      Franklin H. Top III, Esq.

-and-

330 Madison Avenue, 34th Floor
New York, New York 10017-5010
By:   Craig M. Price, Esq.
      Laura E. Appleby, Esq.

**SHIPMAN AND GOODWIN LLP**
*Counsel for U.S. Bank National Association and U.S. Bank Trust National Association*
One Constitution Plaza
Hartford, Connecticut 06103
By:   Ira H. Goldman, Esq.
      Kathleen M. LaManna, Esq.
      Corrine L. Burnick, Esq.

**FOLEY & LARDNER LLP**
*Counsel for U.S. Bank National Association and U.S. Bank Trust National Association*
90 Park Avenue
New York, New York 10016
By:   Mark L. Prager, Esq.
      Douglas E. Spelfogel, Esq.

**SIDLEY AUSTIN LLP**
*Counsel for U.S. Bank Trust National Association*
787 Seventh Avenue
New York, New York 10019
By:   Michael G. Burke, Esq.
      Andrew P. Propps, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the objection (ECF No. 9427) of the United States Trustee (the "Trustee") to confirmation of the Debtors' Second Amended Joint Chapter 11 Plan (the "Plan") (ECF No. 8590). The Trustee raises two objections.[1] First, the Trustee argues that the Plan violates Section 503(b) of the Bankruptcy Code by paying the professional fees of individual members on the Committee of Unsecured Creditors (the "Committee"). Second, the Trustee contends that the Plan violates Section 503(c) by paying a severance of $19,875,000 to the Debtors' outgoing Chief Executive Officer Thomas Horton (the "Horton Severance Payment"). The Debtors and the Committee contend that all the proposed payments are permitted under Section 1129(a)(4) pursuant to a plan of reorganization and do not implicate the restrictions on the payment of administrative expenses set forth in Section 503. For the reasons stated below, the Court approves the payment of professional fees for Committee members over the Trustee's objection, but concludes that the Horton Severance Payment is not permissible.

## BACKGROUND

Article 6.23 of the Plan proposes to pay the reasonable professional fees of certain individual members of the Committee. The Committee has played a key role in the negotiation of the Plan and developments in the case leading up to the Plan's formation. *See Committee Confirmation Br.* at 1-3 (ECF No. 9508); Hr'g Tr. 113:12-15, 125:1-14 (Aug. 15, 2013) (ECF No. 9033). Article 6.24 of the Plan contemplates approval of a

---

[1] The Trustee, along with several other parties, raised a number of objections to the Plan. This opinion addresses only two specific objections raised by the Trustee. The remaining objections ─ those of the Trustee and other parties ─ were addressed by the Court on the record at hearings held on August 15, 2013, August 29, 2013 and September 12, 2013 (collectively, the "Confirmation Hearing"). As explained at the Confirmation Hearing, the Plan is confirmed except to the extent provided herein.

4

letter agreement with Mr. Horton (the "Chairman Letter Agreement") that provides, among other things, for severance of $19,875,000 in cash and stock to Mr. Horton. Under this agreement, the employment of Mr. Horton as Chief Executive Officer will terminate and he will be appointed as the Chairman of the Board of Directors for the new merged entity. The proposed severance is "in recognition of Mr. Horton's effort in leading the Debtors' restructuring and his role in enhancing the value of the Debtors and overseeing the evaluation and assessment of the potential strategic alternatives that culminated in the [m]erger, at the [c]losing, [and] subject to the execution of a standard release by Mr. Horton against AMR and its [s]ubsidiaries." *See Motion of Debtors' for Entry of Order Authorizing and Approving Merger Agreement* at ¶ 89 (ECF No. 6800).

While the payment of the Committee members' professional fees has not previously come before the Court, the Horton Severance Payment has. Six months ago, the Debtors sought approval of the Horton Severance Payment as part of a motion to approve the merger agreement that forms the basis of the Plan. At that time, the Trustee objected to the approval of the Horton Severance Payment on substantially the same grounds that she objects now, namely that it does not satisfy the requirements for payment of a severance under Section 503(c). After a hearing on the matter, the Court granted the merger motion but denied the Horton Severance Payment as impermissible under Section 503(c)(2). *In re AMR Corp.*, 490 B.R. 158 (Bankr. S.D.N.Y. 2013) (the "Merger Opinion").[2] In rejecting the Horton Severance Payment, the Merger Opinion contemplated the possibility that the Debtors might seek approval of the Horton Severance Payment under Section 1129(a)(4) as part of the confirmation of a plan of reorganization.

---

[2]    Familiarity with the Merger Opinion is assumed for purposes of this decision.

5

But the Court's prior decision declined to address that possibility, deciding instead to wait to see if that issue would come before the Court. *Id.*, at 170 n.16.

## DISCUSSION

*Payment of Fees to Members of the Committee*

Section 503(b) of the Bankruptcy Code sets forth the requirements for payment of an administrative expense claim in a Chapter 11 case. Section 503(b)(3)(F) provides for payment of "actual, necessary expenses" for individual members of a committee appointed under Section 1102 of the Bankruptcy Code, which includes an official committee of unsecured creditors. Section 503(b)(4) permits reimbursement of "reasonable compensation for professional fees rendered by an attorney" for certain specified parties listed in Section 503(b). *See* 11 U.S.C. § 503(b)(4) (allowable only for entities "whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection"). Section 503(b)(3)(F) is not one of the subsections listed in Section 503(b)(4). So while expenses incurred by a member of an official committee are eligible for reimbursement under Section 503(b)(3)(F), the professional fees of an attorney of such committee members are not covered by Section 503(b)(4). As the Trustee notes in her objection, prior to the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") amendments of 2005, individual members of a committee could seek payment for such professional fees under Section 503(b)(4). *See Trustee Objection* at 18-22; 11 U.S.C. § 503(b)(4) (2000) (amended 2005); *see In re Lehman Bros. Inc.*, 487 B.R. 181, 190 n.7 (Bankr. S.D.N.Y. 2013), *appeal docketed*, 13-cv-02211-RJS (S.D.N.Y. Apr. 3, 2013). In 2005, Congress rewrote Section 503(b)(4) to

6

omit committee members as a party permitted to seek fees for professional compensation as an administrative expense, despite retaining other parties as eligible for such a payment.

Given this statutory backdrop, the Trustee contends that any professional fees not explicitly authorized as an administrative expense under Section 503(b) cannot be paid. More specifically, the Trustee argues that members of the Committee are prohibited from having their professional fees paid. The Debtors, on the other hand, rely on the language of Sections 1123(b)(6) and 1129(a)(4) to argue that the payments are permissible. These sections allow for payments to be made through a plan of reorganization if, respectively, the payment is not inconsistent with applicable provisions of Chapter 11 and is reasonable.

The permissibility of fees of this kind has been thoughtfully addressed by two other judges of this Court in *Lehman Brothers,* 487 B.R. 181 and *In re Adelphia Commc'ns Corp.*, 441 B.R. 6 (Bankr. S.D.N.Y. 2010). Both opinions conclude that such fees are permissible under the Bankruptcy Code when proposed and approved through a consensual plan. This Court reaches the same conclusion.

In *Lehman Brothers*, the court held that the broad language of Sections 1123(b)(6) and 1129(a)(4) allowed members of a creditors' committee to bargain to have their fees paid through a plan of reorganization without meeting the requirements of Section 503(b). *See* 487 B.R. at 193. Similarly, in *Adelphia*, the court held that creditors could be paid reasonable fees as part of a Chapter 11 plan pursuant to Section 1129(a)(4) without a showing of substantial contribution under Section 503(b).[3] *See* 441 B.R. at 19. As discussed at length in *Lehman Brothers*, Section 1123(b)(6) governs the contents of a plan and allows for any provision in a plan so long as such provision is not inconsistent with

---

[3] The court in *Adelphia* grappled with whether a request for fees and expenses must satisfy the substantial contribution requirement embodied in Sections 503(b)(3)(D) and 503(b)(4). *See* 441 B.R. at 12.

7

other provisions of the Bankruptcy Code. *Lehman Bros.*, 487 B.R. at 186. As the *Lehman Brothers* court noted, this section "is a broadly worded, open-ended invitation to the creativity of those who are engaged in drafting plan language." *Lehman Bros.*, 487 B.R. at 190. Similarly, the broad language of Section 1129(a)(4), which set forth confirmation requirements for the Plan, allows for payments not otherwise contemplated in the Bankruptcy Code so long as a court finds them reasonable. This provision endorses the notion that a debtor will sometimes need to negotiate certain payments to stakeholders in order to come to a consensual resolution and get a plan approved. Taken together, these two provisions contemplate payments as part of a plan of reorganization to be put before creditors for approval.

Nonetheless, the Trustee argues that Section 503(b) provides the exclusive vehicle for these creditors to receive fees. The Court disagrees. As the court in *Lehman Brothers* noted, "Section 503(b) is not a straitjacket, and the provisions of that [S]ection that directly govern the allowance of administrative claims do not control the plan process." *Lehman Bros.*, 487 B.R. at 186. The phrasing and structure of the statute is particularly important to the Court's analysis. As noted by the court in *Adelphia*, Section 503(b) is not consensual in nature. *See Adelphia*, 441 B.R. at 12. Rather, it provides a creditor with an affirmative right to a claim whether or not a debtor agrees to such a payment, provided that the creditor meets the standards set forth therein. *See id.* "But importantly, [S]ection 503(b) does not provide in words or substance, that it is the *only* way in which fees of this character may be absorbed by an estate." *Id.* "That is so even though, from time to time, the Code does exactly that." *Id.*, at 13 n.18 (citing 11 U.S.C. § 503(c) and noting that "payments of the character [covered under Section 503(c)] can be made only if its rigid

8

requirements are satisfied."). Despite outright prohibitions of certain types of payments in other places in the Bankruptcy Code, Section 503(b) does not contain any such prohibitive or restrictive language. It merely sets forth the instances in which a creditor is definitively entitled to a claim.[4]

Following the reasoning of the *Adelphia* and *Lehman Brothers* decisions, therefore, the Court concludes that the professional fees contemplated by Article 6.23 of the Plan are permitted under Sections 1129(a)(4) and 1123(b)(6) and approved given the overwhelming support of the Plan by creditors.[5] *See Certification of Ballots of Craig E. Johnson* (ECF No. 9504).[6]

### *Horton Severance Payment*

Section 503(c)(2) restricts severance payments made to insiders by setting conditions on the coverage of such severance programs and limits on the amounts paid. It provides in relevant part that:

> there shall neither be allowed, nor paid —
>
> (2) a severance payment to an insider of the debtor, unless —
>   (A) the payment is part of a program that that is generally applicable to all full-time employees; and

---

[4]   The lack of such restrictive language is a presumptively intentional decision by Congress. *See Kucana v. Holder*, 558 U.S. 233, 249 (2010) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *cf TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." )

[5]   Measured by dollar amount, each of the nine voting classes accepted the Plan by a margin of at least 97% to 3%; measured by number of votes, each class accepted by a margin of at least 88% to 12%. *See Certification of Ballots of Craig E. Johnson* at 21-22. With over 100,000 ballots mailed to creditors and equity interest holders, only 61 voted to reject the Plan. *See id.*

[6]   As the parties seek the Court's approval only for "reasonable" fees, the Court anticipates that the parties will seek approval by motion for the precise amount of fees.

9

> (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made . . . .

11 U.S.C. § 503(c)(2). The Debtors do not contend that the Horton Severance Payment meets the requirements set forth in Section 503(c)(2). Rather, they argue that the payment can be approved as part of the Plan under Section 1129(a)(4), just like the professional fees discussed above. But in contrast to the professional fees, severance payments are the subject of a specific prohibition in the Bankruptcy Code. As noted in the Merger Opinion, Section 503(c) was added to the Bankruptcy Code in 2005 as part of the BAPCPA amendments to "eradicate the notion that executives were entitled to bonuses simply for staying with the [c]ompany through the bankruptcy process." *In re Velo Holdings*, *Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012) (citing *In re Global Home Prods., LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007)). The effect of adding the section was to put in place "a set of challenging standards" and "high hurdles" for debtors to overcome before such payments could be paid. *Global Home Prods.*, 369 B.R. at 784-85.

Importantly, the language contained in Section 503(c) stands in stark contrast to the language of Section 503(b), the section of the Code pertaining to the professional fees discussed above. On the one hand, Section 503(b) provides a vehicle for the payment of such fees. *See* 11 U.S.C. § 503(b) ("there shall be allowed, administrative expenses . . . ."). On the other hand, the language of Section 503(c) is prohibitive, providing that a severance payment that does not comply with the applicable provisions therein "shall neither be allowed, nor paid." 11 U.S.C. § 503(c). If Section 1129(a)(1)'s instruction that a plan must comply with all applicable provisions of the Bankruptcy Code means anything, the Court cannot approve a payment that is clearly prohibited by another, more

10

specific part of the Bankruptcy Code. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (noting that "[t]he general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one."); *see Adelphia*, 441 B.R. at 13 n.18 (noting that meeting the requirements of Section 503(c) was the only method of approving a severance payment to a debtors' insider in the context of a Chapter 11 case). It is not surprising then that courts disfavor attempts to bypass the requirements of section 503(c) given the history and intent of the section. *See Velo Holdings*, 472 B.R. at 209; *RadLAX*, 132 S. Ct. at 2071 (the general/ specific canon holds true particularly where Congress "has deliberately targeted specific problems with specific solutions.").[7]

Relying heavily on *In re Journal Register*, 407 B.R. 520 (Bankr. S.D.N.Y. 2009), the Debtors argue that the Horton Severance Payment is outside the scope of Section 503(c) and within the authority of Section 1129(a)(4). *Debtors' Confirmation Br.* at 15 (ECF No. 9516) (asserting that the Horton Severance Payment "is indistinguishable from *Journal Register*. . . ."). But *Journal Register* is, in fact, distinguishable. In that case, the court approved a key employee "[p]ost–[e]mergence [i]ncentive [p]lan" pursuant to Section 1129(a)(4) through a plan of reorganization. The decision overruled the Trustee's objection that the payments were subject to the limitations of Section 503(c)(1), which prohibits payments to a debtor's insiders for the "purpose of inducing such person to remain with the debtor's business" unless certain other criteria are met. 11 U.S.C. §

---

[7] It should be noted that "[S]ection 503(c) was not intended to foreclose a Chapter 11 debtor from *reasonably* compensating employees, including 'insiders,' for their contribution to the debtors' reorganization." *In re Dana Corp.*, 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2006) (emphasis in original) (citations omitted). "Accordingly, [S]ection 503(c)(3) gives the court discretion as to bonus and incentive plans, which are not primarily motivated by retention or in the nature of severance." *Id.* at 576.

11

503(c)(1); *Journal Register*, 407 B.R. at 536. The court in *Journal Register* found that the insider payments in that case were *not* retentive in nature and therefore were not subject to the prohibitions set forth in Section 503(c)(1). *Journal Register*, 407 B.R. at 536 (noting that employees were entitled to receive incentive payments even if they left the company before the payment date and therefore "the principal purpose of the [i]ncentive [p]lan is not to induce participating employees to remain with the Debtors, and 503(c)(1) does not apply"). By contrast, the Horton Severance Payment is precisely the type of compensation implicated by Section 503(c)(2). Indeed, despite some suggestions at the Confirmation Hearing to the contrary, there can be no credible dispute that the Horton Severance Payment is a severance payment. *See* Ex. G to *Merger Motion* (ECF No. 6800) (Chairman Letter Agreement referring to payment as "severance"); *AMR*, 490 B.R. at 166-67.

The Debtors raise a few other arguments that were rejected in the Merger Opinion and that fare no better here. The Debtors argue that the Horton Severance Payment is being paid post-emergence by non-estate assets and therefore is not subject to the requirements of Section 503. Hr'g Tr. 100: 5-10 (Aug. 15, 2013) (asserting that the obligations under the Chairman Letter Agreement "are obligations payable by . . . the new merged company, and . . . only take effect . . . if the plan goes effective."). But the Horton Severance Payment is a condition *precedent* to the plan going effective, and therefore must be paid in order for the Debtors to emerge from bankruptcy. *See Plan* at Art. 6.24; *Disclosure Statement* at 68 (ECF No. 8591) ("It is a condition precedent to the effectiveness of the Plan and the Merger Agreement that the Chairman Letter Agreement and the proposed payments and benefits to Mr. Horton provided therein be approved by

the Bankruptcy Court and be in effect."). As the Court noted in its Merger Opinion, the argument that the Horton Severance Payment will not be paid by estate assets is a legal fiction. *See AMR Corp.*, 490 B.R. at 168 ("As a practical matter . . . the proposed severance would be paid without any action from [the merged entity], an entity that will consist of 72% of the property of the reorganized Debtors." ).

The Debtors further contend that because the Chairman Letter Agreement contains provisions that will remain in effect after the effective date (such as the provision providing for Mr. Horton to serve as chairman of the board of the merged company), it is a post-effective date obligation and is not subject to Section 503(c)(2). Hr'g Tr. 112:20-113:19 (Aug. 15, 2013). That argument fails as well. The Chairman Letter Agreement provides for independent compensation above and beyond the Horton Severance Payment for Mr. Horton's service as chairman of the merged entity. *See Chairman Letter Agreement* at 2. That compensation has not been objected to by any party. The only objection has been to the Horton Severance Payment, which is an obligation that must be satisfied under the Plan before the Debtors can emerge from bankruptcy.

The Debtors also once again argue that approval of the Horton Severance Agreement is crucial to ensuring Mr. Horton's continued involvement with the merged entity and maximizing value for the new company. Hr'g Tr. 119:15-120:1 (Aug. 15, 2013); *Debtors' Confirmation Br.* at 2, 5-7. The Court does not question the value of Mr. Horton's assistance in orchestrating a smooth transition after the Debtors' emerge from bankruptcy. But if the merged entity wants to ensure Mr. Horton's presence, it is free to pay him without the oversight of the Bankruptcy Court or the confines of the Bankruptcy Code. *AMR*, 490 B.R. at 169. In order to obtain approval from this Court, however, the

13

Debtors must comply with applicable law, and the Chairman Agreement Letter fails to do so.

Finally, even assuming that the severance here is not covered by Section 503(c), the Chairman Letter Agreement would need to be reasonable to satisfy Section 1129(a)(4). And the Court concludes that it is not. The reasonableness standard of 1129(a)(4) is vague, and the case law provides little guidance on its meaning. The court in *Journal Register*, however, examined the standard in evaluating a post-emergence incentive package. *Journal Register*, 407 B.R. at 537. It noted that the reasonableness standard "will clearly vary from case to case and, among other things, will hinge to some degree upon who makes the payments at issue, who receives those payments, and whether the payments are made from assets of the estate." *Id.* (quoting *Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.),* 150 F.3d 503, 517 (5th Cir.1998), *cert. denied*, 526 U.S. 1144 (1999)).

In evaluating reasonableness here, the Debtors point to the market-level pay of CEOs of merged airlines to justify the amount of the Horton Severance Payment. But as noted in this Court's prior decision, those mergers did not occur in a Chapter 11 bankruptcy. *See AMR Corp.*, 490 B.R. at 169-170. For a merger in bankruptcy, the standards of Section 503(c) would certainly inform the analysis, even if they might not be dispositive. Moreover, it would seem sensible to evaluate the reasonableness of the Horton Severance Payment in light of other compensation agreements between these same parties. And in fact, the Debtors entered into a pre-petition agreement with Mr. Horton whereby he was to receive a maximum of $15.3 million dollars if the company was involved in a merger. *See Trustee Objection* at 14-15. It is unclear why Mr. Horton

14

should receive $4.5 million more now than was contemplated when he took the reins of the Debtors on the eve of the Chapter 11 filing less than two years ago, presumably negotiating that prior agreement with these bankruptcy cases in mind.[8]  Moreover, in considering the facts of this case, there have been significant sacrifices by the Debtors' employees, most notably by its union members, that allowed the Plan to move forward. These sacrifices should be considered in evaluating the reasonableness of this proposed payment, notwithstanding the very favorable recoveries provided by the Plan to creditors and equity holders.

Turning to the other factors relevant to 1129(a)(4), the court in *Journal Register* noted that the payments were going to several employees and were being paid by a secured creditor that was purchasing the debtor.  By contrast, the payment here would be to one executive for services rendered during the bankruptcy and would be coming from estate assets, or, at the very least, a new entity comprised of 72% of the Debtors' assets.

---

[8]     The Court notes that it specifically asked the Debtors for briefing on the issue of Mr. Horton's pre-petition severance agreement after the Trustee raised this issue at the Disclosure Statement hearing.  The Debtors, however, provided very limited information on the subject.  In the end, while the Debtors noted that the pre-petition severance agreement has now expired, they did not dispute its essential terms.

15

**CONCLUSION**

For the reasons explained above, the Court approves the payment of professional fees for Committee members set forth in Article 6.23 of the Plan but does not approve the Horton Severance Payment contemplated by Article 6.24 of the Plan and the Chairman Letter Agreement. For the reasons stated on the record at the Confirmation Hearing, therefore, the Plan is confirmed except to the extent provided herein. The Debtors shall settle an order consistent with this Opinion on five days' notice.

Dated: New York, New York
September 13, 2013

*/s/ Sean H. Lane*
UNITED STATES BANKRUPTCY JUDGE