UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                       :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **AMR CORPORATION,** *et al.*, | : | **11-15463 (SHL)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------x

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER PURSUANT TO SECTIONS 1129(a) AND (b) OF THE BANKRUPTCY CODE AND RULE 3020 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE CONFIRMING DEBTORS' FOURTH AMENDED JOINT CHAPTER 11 PLAN

WHEREAS AMR Corporation and its related debtors (collectively, the

"**Debtors**"), as "proponents of the plan" within the meaning of section 1129 of title 11, United

States Code (the "**Bankruptcy Code**"), filed the Debtors' Second Amended Joint Chapter 11

Plan, dated June 5, 2013 (ECF No. 8590) (such plan, as transmitted to parties in interest being

the "**Second Amended Plan**," and as subsequently modified, the "**Plan**")[1] and the Disclosure

Statement for Debtors' Second Amended Joint Chapter 11 Plan, dated June 5, 2013 (ECF No.

8591) (as transmitted to parties in interest, the "**Disclosure Statement**"); and

WHEREAS on June 7, 2013, the Court entered an order (the "**Solicitation**

**Order**") (ECF No. 8614), which, among other things, (i) approved the Disclosure Statement

under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (ii) established August

15, 2013 as the date for the commencement of the hearing to consider confirmation of the Plan

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as **Exhibit "A."** Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

(the "**Confirmation Hearing**"), (iii) approved the form and method of notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**"), and (iv) established certain procedures for soliciting and tabulating votes with respect to the Second Amended Plan; and

WHEREAS the Confirmation Hearing Notice and (i) as to holders of Claims or Equity Interests, as applicable, in AMR Class 3 (AMR General Unsecured Guaranteed Claims), AMR Class 4 (AMR Other General Unsecured Claims), AMR Class 5 (AMR Equity Interests), American Class 4 (American General Unsecured Guaranteed Claims), American Class 5 (American Other General Unsecured Claims), American Class 6 (American Union Claims), American Class 7 (American Convenience Class Claims), Eagle Class 3 (Eagle General Unsecured Claims), and Eagle Class 4 (Eagle Convenience Class Claims) entitled to vote, the Disclosure Statement (with the Second Amended Plan annexed thereto), the Solicitation Order (without exhibits), the letter recommending acceptance of the Second Amended Plan from the Creditors' Committee, and an appropriate form of ballot and return envelope (such ballot and return envelope being referred to as a "**Ballot**"), (ii) as to holders of Claims or Equity Interests, as applicable, in AMR Class 1 (AMR Secured Claims), AMR Class 2 (AMR Priority Non-Tax Claims), AMR Class 6 (AMR Other Equity Interests), American Class 1 (American Secured Aircraft Claims), American Class 2 (American Other Secured Claims), American Class 3 (American Priority Non-Tax Claims), American Class 8 (American Equity Interests), Eagle Class 1 (Eagle Secured Claims), Eagle Class 2 (Eagle Priority Non-Tax Claims), and Eagle Class 5 (Eagle Equity Interests), a Notice of Non-Voting Status – Unimpaired Classes, and (iii) as to the Master Service List (as defined in the Amended Order Pursuant to 11 U.S.C. §§ 105(a) and (d) and Bankruptcy Rules 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures, dated August 8, 2012 (ECF No. 3952) (the "**Case Management**

Order")), the Disclosure Statement (with the Second Amended Plan annexed thereto), were transmitted as set forth in the Affidavit of Craig Johnson, sworn to on July 2, 2013 (the "**GCG Affidavit**") (ECF No. 9013), evidencing the timely service of the Disclosure Statement (with the Second Amended Plan annexed thereto), related solicitation materials, and Notices of Non-Voting Status, and such service is adequate as provided by Bankruptcy Rule 3017(d); and

WHEREAS the Certificate of Publication of Debra Wolther, sworn to on July 12, 2013 (the "**Certificate of Publication**") (ECF No. 9110) was filed evidencing publication of the Confirmation Hearing Notice on July 1, 2013 in *The Wall Street Journal*, Global and *USA Today,* National in accordance with the Solicitation Order; and

WHEREAS on July 19, 2013, the Debtors filed the Plan Supplement with respect to the Plan (ECF No. 9231), as modified by the First Addendum to the Plan Supplement (ECF No. 9671), as further modified by the Second Addendum to the Plan Supplement (ECF No. 9675), and as further modified by the Third Addendum to the Plan Supplement (ECF No. 9699) (as the documents contained therein may have been or may be further amended or supplemented, the "**Plan Supplement**"); and

WHEREAS certain objections to confirmation of the Plan (collectively, the "**Objections**") were filed; and

WHEREAS on August 8, 2013, the Debtors filed (i) a memorandum of law in support of confirmation and an omnibus response to the Objections (the "**Confirmation Brief and Response**") (ECF No. 9516), (ii) the Declaration of Armando M. Codina in Support of Confirmation of Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9518) (the "**Codina Declaration**"), (iii) the Declaration of Douglas J. Friske in Support of Confirmation of Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9519) (the "**Friske Declaration**"), (iv)

Declaration of Beverly K. Goulet in Support of Confirmation of Debtors' Second Amended Joint

Chapter 11 Plan (ECF No. 9520) (the "**Goulet Declaration**"), (v) the Declaration of Homer

Parkhill in Support of Confirmation of Debtors' Second Amended Joint Chapter 11 Plan (ECF

No. 9521) (the "**Parkhill Declaration**"), and (vi) the Declaration of Kevin Carmody in Support

of Confirmation of Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9522) (the

"**Carmody Declaration**," and together with the Codina Declaration, the Friske Declaration, the

Goulet Declaration, and the Parkhill Declaration, the "**Declarations**"); and

WHEREAS on August 8, 2013, the Creditors' Committee filed (i) a statement in

support of the Plan and in response to Objections (ECF No. 9508) (the "**Creditors' Committee**

**Statement**") and (ii) the Declaration of Irv Becker in support of the Creditors' Committee

Statement (ECF No. 9513) and certain Declarations in support of reimbursement of fees and

expenses (ECF Nos. 9506, 9509, 9510, 9511, and 9512) (collectively, the "**Creditors'**

**Committee Declarations**"); and

WHEREAS on August 8, 2013, the Ad Hoc Committee of AMR Corporation

Creditors filed a statement in support of confirmation of the Plan and joinder to the Debtors'

Confirmation Brief and Response and the Creditors' Committee Statement (ECF No. 9253) (the

"**Ad Hoc Committee Statement**"); and

WHEREAS on August 8, 2013, (i) Hewlett-Packard Enterprise Services, LLC

filed a response to the U.S. Trustee's Objection (ECF No. 9505), (ii) the Bank of New York

Mellon filed a limited response and joinder to the Debtors' Confirmation Brief and Response and

the Creditors' Committee Statement (ECF No. 9526), (iii) Boeing Capital Corporation filed a

statement and joinder in response to Objections (ECF No. 9527), (iv) Manufacturers and Traders

Trust Company, as Indenture Trustee, filed a joinder to the Creditors' Committee Statement

(ECF No. 9530), (v) Wilmington Trust Company, as Indenture Trustee, filed a limited joinder to the Debtors' Confirmation Brief and Response and the Creditors' Committee Statement (ECF No. 9531), and (vi) The Bank of New York Mellon Trust Company, N.A., The Bank of New York Mellon, and Law Debenture Trust Company of New York, as Indenture Trustee filed a response to the U.S. Trustee's Objection (ECF No. 9539)  (collectively, the "**Additional Responses**"); and

WHEREAS the Declaration of Craig E. Johnson of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and Results of Voting with Respect to the Debtors' Second Amended Joint Chapter 11 Plan, sworn to on August 8, 2013 (ECF No. 9504) (the "**Voting Report**"), was filed attesting and certifying the method and results of the tabulation for the Classes of Claims or Equity Interests, as applicable (AMR Class 3 (AMR General Unsecured Guaranteed Claims), AMR Class 4 (AMR Other General Unsecured Claims), AMR Class 5 (AMR Equity Interests), American Class 4 (American General Unsecured Guaranteed Claims), American Class 5 (American Other General Unsecured Claims), American Class 6 (American Union Claims), American Class 7 (American Convenience Class Claims), Eagle Class 3 (Eagle General Unsecured Claims), and Eagle Class 4 (Eagle Convenience Class Claims)), entitled to vote to accept or reject the Plan; and

WHEREAS on August 14, 2013, the Debtors filed the Technical Amendments to the Plan (ECF No. 9749) (the "**Technical Amendments**"); and

WHEREAS the Confirmation Hearing was held on August 15, 2013, and the record was closed except solely with respect to the supplemental submissions requested by the Bankruptcy Court with respect to the DOJ Action (as hereinafter defined); and

WHEREAS on September 12, 2013, the Court rendered a Bench Decision regarding confirmation of the Plan (the "**Bench Decision**"); and

WHEREAS on September 13, 2013, the Court rendered a memorandum decision on the Objection of the U.S. Trustee to the Plan (ECF No. 10108), reported at 2013 WL 5193099 (Bankr. S.D.N.Y. Sept. 13, 2013) (the "**Memorandum Decision**," and together with the Bench Decision, the "**Decision**").

NOW, THEREFORE, based on the Voting Report, the Declarations, the Creditors' Committee's Declarations, the Debtors' Confirmation Brief and Response, the GCG Affidavit, the Certificate of Publication, the Creditors' Committee Statement, the Ad Hoc Committee Statement, and the Additional Responses; and upon (i) the record of the Confirmation Hearing, including all the evidence proffered or adduced at, the Objections filed in connection with, and the arguments of counsel made at the Confirmation Hearing and (ii) the entire record of the Chapter 11 Cases, including the Decision; and after due deliberation thereon and sufficient cause appearing therefor:

FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      Findings of Fact and Conclusions of Law.  The findings and conclusions set forth herein and in the Decision constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

C.      Judicial Notice.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and the evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, including, but not limited to, the hearing to consider the adequacy of the Disclosure Statement and the hearing to consider approval of, among other things, the Merger Agreement and the Order entered in connection therewith.

D.      Burden of Proof.  The Debtors have the burden of proving the elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

E.      Transmittal and Mailing of Materials; Notice.  The Disclosure Statement, the Second Amended Plan, the Ballots, the Solicitation Order, and the Confirmation Hearing Notice, which were transmitted and served as set forth in the Affidavit of Service, have been transmitted and served in compliance with the Solicitation Order, the Bankruptcy Rules, and the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required.  The Debtors' publication of the Confirmation Hearing Notice as set forth in the Certificate of Publication complied with the Solicitation Order.

F.      <u>Voting</u>.  Votes to accept or reject the Plan have been solicited and

tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the

Bankruptcy Rules, the Solicitation Order, and industry practice.

G.      <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The

Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section

1129(a)(1) of the Bankruptcy Code.

1.      <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to

Administrative Expenses and Priority Tax Claims, which need not be designated, the Plan

designates nineteen Classes of Claims and Equity Interests.  Each AMR Secured Claim,

American Secured Aircraft Claim, American Other Secured Claim, and Eagle Secured Claim

shall be deemed to be separately classified in a subclass of AMR Class 1, American Class 1,

American Class 2, and Eagle Class 1, respectively, and shall have all rights associated with

separate classification under the Bankruptcy Code.  The Claims or Equity Interests placed in

each Class are substantially similar to other Claims or Equity Interests, as the case may be, in

each such Class.  Valid business, factual, and legal reasons exist for separately classifying the

various Classes of Claims or Equity Interests created under the Plan, and such Classes do not

unfairly discriminate between holders of Claims and Equity Interests.  The Plan satisfies sections

1122 and 1123(a)(1) of the Bankruptcy Code.

2.      <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Article III of the

Plan specifies that AMR Class 1 (AMR Secured Claims), AMR Class 2 (AMR Priority Non-Tax

Claims), AMR Class 6 (AMR Other Equity Interests), American Class 1 (American Secured

Aircraft Claims), American Class 2 (American Other Secured Claims), American Class 3

(American Priority Non-Tax Claims), American Class 8 (American Equity Interests), Eagle

8

Class 1 (Eagle Secured Claims), Eagle Class 2 (Eagle Priority Non-Tax Claims), and Eagle Class

5 (Eagle Equity Interests) are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of

the Bankruptcy Code.

3.    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Article

III of the Plan designates AMR Class 3 (AMR General Unsecured Guaranteed Claims), AMR

Class 4 (AMR Other General Unsecured Claims), AMR Class 5 (AMR Equity Interests),

American Class 4 (American General Unsecured Guaranteed Claims), American Class 5

(American Other General Unsecured Claims), American Class 6 (American Union Claims),

American Class 7 (American Convenience Class Claims), Eagle Class 3 (Eagle General

Unsecured Claims), and Eagle Class 4 (Eagle Convenience Class Claims) as impaired, and

Article IV of the Plan specifies the treatment of Claims and Equity Interests in such Classes,

thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

4.    No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the

same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless

the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of

such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

5.    Implementation of Plan (11 U.S.C. § 1123(a)(5)).  The Plan and the

various documents and agreements set forth in the Plan Supplement as well as the Exhibits and

the Schedules to the Plan provide adequate and proper means for the Plan's implementation,

including (i) the Merger in accordance with the Merger Agreement, (ii) the 9019 Settlement, and

(iii) the deemed consolidation of the AMR Debtors, the deemed consolidation of the American

Debtors, and the deemed consolidation of the Eagle Debtors, thereby satisfying section

1123(a)(5) of the Bankruptcy Code.

6.      Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).  The New AAG

Certificate of Incorporation shall prohibit the issuance of nonvoting equity securities prohibited

by section 1123(a)(6), subject to further amendment of such New AAG Certificate of

Incorporation as permitted by applicable law, thereby satisfying section 1123(a)(6) of the

Bankruptcy Code.  The Amended Certificates of Incorporation for each of the Reorganized

Debtors (other than New AAG) that are corporations shall similarly prohibit the issuance of

nonvoting equity securities prohibited by section 1123(a)(6), subject to further amendment of

such Amended Certificates of Incorporation as permitted by applicable law.  With respect to any

Debtor that is a limited liability company or partnership, the respective limited liability company

agreement or partnership agreement by which such Debtor is governed shall be similarly

amended to prohibit the issuance of nonvoting equity securities prohibited by section 1123(a)(6).

7.      Selection of Officers, Directors, or Trustees (11 U.S.C. § 1123(a)(7)).  The

initial Board of Directors of New AAG shall consist of twelve (12) members and shall be

composed of (i) five (5) directors designated by the Search Committee, (A) each of whom shall

be an independent director and (B) one of whom shall serve as the initial Lead Independent

Director of New AAG in accordance with the New AAG Bylaws and shall be designated to serve

in such role by the Search Committee, (ii) two (2) directors designated by AMR, each of whom

shall be independent directors reasonably acceptable to the Search Committee, (iii) three (3)

directors designated by US Airways, each of whom shall be independent directors, (iv) one (1)

director who shall be Mr. Thomas W. Horton, the current Chairman of the Board, President, and

Chief Executive Officer of AMR, who shall serve as the initial Chairman of the Board of

Directors of New AAG in accordance with the New AAG Bylaws, and (v) one (1) director who

shall be Mr. W. Douglas Parker, the current Chairman of the Board and Chief Executive Officer

10

of US Airways, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.  The identity of

the persons proposed to serve as members of the initial Board of Directors of New AAG and of

the members of the initial Boards of Directors of the other Reorganized Debtors were disclosed

in the Plan Supplement or at the Confirmation Hearing.  After selection of the initial Board of

Directors of New AAG, the holders of the New Mandatorily Convertible Preferred Stock and the

New Common Stock shall elect members of the Board of Directors of New AAG in accordance

with the New AAG Certificate of Incorporation, the New AAG Bylaws, the Certificate

Designations, and applicable nonbankruptcy law, thereby satisfying section 1123(a)(7) of the

Bankruptcy Code.

8.      Additional Plan Provisions (11 U.S.C. § 1123(b)).  The provisions of the

Plan are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a

provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the

effectiveness of this Confirmation Order.

9.      Bankruptcy Rule 3016(a).  The Plan is dated and identifies the entities

submitting the Plan as proponents, thereby satisfying Bankruptcy Rule 3016(a).

H.      Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby

satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

(i)      The Debtors are proper debtors under section 109 of the Bankruptcy Code.

(ii)      The Debtors have complied with applicable provisions of the Bankruptcy
Code, except as otherwise provided or permitted by orders of the Court.

(iii)      The Debtors have complied with the applicable provisions of the
Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the
Disclosure Statement, the Second Amended Plan, the Ballots, and related documents and notices
and in soliciting and tabulating votes on the Second Amended Plan.

11

I.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful reorganization of the Debtors.

J.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

K.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of the persons proposed to serve as members of the initial Board of Directors of New AAG and as members of the initial Boards of Directors of the other Reorganized Debtors were disclosed in the Plan Supplement, and the appointment to, or continuance in, such positions of such persons is consistent with the interests of holders of Claims against, and Equity Interests in, the Debtors and with public policy.  The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have also been fully disclosed.  The nature of the compensation payable to Thomas W. Horton, who shall serve as the initial Chairman of the Board of Directors of New AAG, was disclosed in connection with the

12

Debtors' motion to approve the Merger Agreement, which was filed with the Court on February 22, 2013 (ECF No. 6800), and in the Disclosure Statement.

L. No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for any changes in any regulated rates, and therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

M. Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Disclosure Statement, the Plan Supplement, the Carmody Declaration, and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

N. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). AMR Class 1 (AMR Secured Claims), AMR Class 2 (AMR Priority Non-Tax Claims), AMR Class 6 (AMR Other Equity Interests), American Class 1 (American Secured Aircraft Claims), American Class 2 (American Other Secured Claims), American Class 3 (American Priority Non-Tax Claims), American Class 8 (American Equity Interests), Eagle Class 1 (Eagle Secured Claims), Eagle Class 2 (Eagle Priority Non-Tax Claims), and Eagle Class 5 (Eagle Equity Interests) are unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. AMR Class 3 (AMR General Unsecured Guaranteed Claims), AMR Class 4 (AMR Other General Unsecured Claims), AMR Class 5 (AMR Equity Interests), American Class 4 (American General Unsecured Guaranteed Claims), American Class 5

(American Other General Unsecured Claims), American Class 6 (American Union Claims), American Class 7 (American Convenience Class Claims), Eagle Class 3 (Eagle General Unsecured Claims), and Eagle Class 4 (Eagle Convenience Class Claims) have voted to accept the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code.

O.      Treatment of Administrative Expenses, Priority Non-Tax Claims, and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Expenses and Priority Non-Tax Claims pursuant to Sections 2.1, 4.2, 4.9, and 4.16 of the Plan, respectively, satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  The Debtors have sufficient Cash to pay Allowed Administrative Expenses, Allowed Priority Non-Tax Claims, and Allowed Priority Tax Claims.

P.      Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  At least one Class of Claims against the Debtors that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

Q.      Feasibility (11 U.S.C. § 1129(a)(11)).  The evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan, subject to the occurrence of the Effective Date and consummation of the Merger, is feasible and that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or the Reorganized Debtors, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

R.      Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees payable under section 1930 of title 28, United States Code, as determined by the Court, have been paid or will be paid pursuant to Section 12.7 of the Plan. Pursuant to Section 12.7 of the Plan, on the Effective Date, and thereafter as may be required, such fees, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code, shall be paid by each of the Debtors. Thus, Section 12.7 of the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

S.      Benefit Plans (11 U.S.C. § 1129(a)(13)). The Plan complies with section 1129(a)(13) of the Bankruptcy Code by reason of the provisions of Section 8.4 of the Plan:

T.      Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay any domestic support obligations, and therefore, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

U.      The Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)). The Debtors are not individuals, and therefore, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

V.      No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). Each of the Debtors is a moneyed, business, or commercial corporation or trust, and therefore, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

W.      Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in these Chapter 11 Cases, and therefore, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

X.      Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal

purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5

of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

Y.      Modifications to the Plan.  The Technical Amendments constitute

technical changes and do not materially adversely affect or change the treatment of any Claims

or Equity Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, the Technical Amendments

do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation

of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims

or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections

of the Plan, thereby satisfying section 1127 of the Bankruptcy Code.

Z.      Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before

the Court in these Chapter 11 Cases, the Debtors and their directors, officers, employees,

members, agents, advisors, and professionals have acted in "good faith" within the meaning of

section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the

Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating

to the solicitation of acceptance or rejection of the Plan and their participation in the activities

described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by

section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.7

of the Plan.

AA.    Assumption and Rejection.  Article VIII of the Plan governing the

assumption and rejection of executory contracts and unexpired leases satisfies the requirements

of section 365(b) of the Bankruptcy Code.

BB.     Substantive Consolidation.  No creditor of any of the Debtors will be prejudiced by the substantive consolidation of the AMR Debtors, the substantive consolidation of the American Debtors, and the substantive consolidation of the Eagle Debtors, which will benefit all creditors of the Debtors.  No objections have been filed raising any objection to substantive consolidation as provided in the Plan.

CC.     9019 Settlement.  The 9019 Settlement was negotiated in good faith and at arm's length and is an essential element of the Plan.  It is fair, equitable, and in the best interests of the Debtors, the Debtors' estates, the Debtors' creditors, and all parties in interest, and satisfies the standards for approval under Bankruptcy Rule 9019.

DD.     Merger Agreement Order.  By order dated May 10, 2013 (ECF No. 8096) (the "**Merger Order**"), the Court, among other things, approved (i) the Merger Agreement and (ii) the Employee Arrangements (as defined in the Merger Order), including all matters set forth in Section 4.10 of the Merger Agreement and Section 4.1(o) of the American Disclosure Letter (excluding Paragraph 1 of such Section 4.1(o)).

EE.     Disputed Claims Reserve.  By order dated August 9, 2013 (ECF No. 9560), the Court found that the aggregate amount of estimated Allowed Single-Dip General Unsecured Claims plus the amount of Disputed Single-Dip General Unsecured Claims utilized for determining the Disputed Claims Reserve to be established pursuant to Section 7.3 of the Plan does not exceed $3.2 billion, thereby satisfying the condition set forth in Section 9.2(h) of the Plan.

FF.     Satisfaction of Confirmation Requirements.  The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

GG.    Objections.  All parties have had a full and fair opportunity to litigate all issues raised in the Objections, or which might have been raised, and the Objections have been fully considered by the Court.

HH.    Retention of Jurisdiction.  The Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

DECREES

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    Confirmation.  The Plan is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan, all Exhibits thereto, and the Plan Supplement are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

2.    Modifications to the Plan.  The Technical Amendments, which are incorporated in the Plan, meet the requirements of sections 1127(a) and (c) of the Bankruptcy Code and do not adversely change the treatment of the Claim of any creditor or the Equity Interest of any equity security holder within the meaning of Bankruptcy Rule 3019, and therefore, no further solicitation or voting is required.

3.    Objections.  All Objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan, are overruled on the merits for the reasons stated on the record of the Confirmation Hearing.

4.    Plan Classification Controlling.  The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors and equity security holders in connection with voting on the Plan (a) were set forth on the Ballots for purposes of voting to accept or reject the Plan, (b) do not necessarily

18

represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes, and (c) shall not be binding on the Debtors.

5.      Binding Effect.  The Plan and its provisions shall be binding on the Debtors, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Equity Interest in the Debtors, including all governmental entities, whether or not the Claim or Equity Interest of such holder (a) is impaired under the Plan or (b) has accepted the Plan.

6.      Vesting of Assets.  Pursuant to Section 10.1 of the Plan, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges, and other interests, except as otherwise provided in the Plan.  The Reorganized Debtors may operate their businesses and use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provisions of the Bankruptcy Code, except as otherwise provided in the Plan or this Confirmation Order.

7.      Continued Corporate Existence.  Pursuant to Section 6.1 of the Plan, subject to the Merger and the terms of the Merger Agreement, each Debtor shall, as a Reorganized Debtor, continue to exist after the Effective Date as a separate corporate Entity, with all the powers of a corporation, partnership, or limited liability company, as applicable, under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.  Immediately following the Merger

Effective Time, the New AAG Certificate of Incorporation shall be amended to change the name

of AMR to American Airlines Group Inc.

8.      Merger.  Pursuant to Section 6.2(a) of the Plan, subject to and in

connection with the occurrence of the Effective Date, AMR and US Airways shall take all such

actions as may be necessary or appropriate to effect the Merger on the terms and subject to the

conditions set forth in the Merger Agreement, ***including but not limited to the actions set forth***

***below in this paragraph.***  ~~Without limiting the generality of the immediately preceding sentence,~~

Upon the satisfaction or waiver of each of the conditions set forth in Section 9.2 of the Plan and

the applicable conditions of the Merger Agreement, on the Effective Date AMR and US Airways

shall cause the Certificate of Merger to be filed with the Secretary of State of the State of

Delaware in accordance with the Delaware General Corporation Law and take or cause to be

taken all other actions, including making appropriate filings or recordings, that may be required

by the Delaware General Corporation Law or other applicable law in connection with the

Merger.  Pursuant to Section 6.2(b) of the Plan, New AAG shall issue the shares of New

Common Stock in accordance with the Merger Agreement to be distributed under the Plan and

the other transactions contemplated by the Merger Agreement shall occur.  Upon and after the

occurrence of the Effective Date, New AAG shall perform all of its obligations under the Merger

Agreement.  Pursuant to Section 6.2(c) of the Plan, in the event of any conflict whatsoever

between the terms of the Plan and the Merger Agreement, the terms of the Merger Agreement

shall control, and the Plan shall be deemed to incorporate in their entirety the terms, provisions,

and conditions of the Merger Agreement.

9.      Approval of 9019 Settlement.  The 9019 Settlement is authorized and

approved as fair and reasonable and shall become effective on the Effective Date, and the

Debtors' obligations thereunder are legal, valid, binding, and enforceable.  Pursuant to Section

6.3(b) of the Plan, if the Effective Date does not occur, the 9019 Settlement shall be deemed to

have been withdrawn without prejudice to the respective positions of the parties.

10.    Assumption or Rejection of Executory Contracts and Unexpired Leases

(11 U.S.C. § 1123(b)(2)).  Pursuant to Section 8.1 of the Plan, all executory contracts and

unexpired leases to which any of the Debtors are parties automatically shall be deemed rejected

as of the Effective Date, except for executory contracts or unexpired leases (a) that have been

assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (b) that

are the subject of a separate motion to assume or reject pending on the Confirmation Date, (c)

that are assumed, rejected, or otherwise treated pursuant to Sections 8.3, 8.4, or 8.5 of the Plan,

(d) that are listed on Schedule 8.1 of the Plan Supplement, or (e) as to which a Treatment

Objection has been filed and served by the Treatment Objection Deadline.  If an executory

contract or unexpired lease (i) has been assumed or rejected pursuant to an order of the Court

entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject

pending on the Confirmation Date, then the listing of any such executory contract or unexpired

lease on Schedule 8.1 of the Plan Supplement shall be of no effect.

11.    Schedules of Executory Contracts and Unexpired Leases.  Pursuant to

Section 8.2(b) of the Plan and sections 365 and 1123 of the Bankruptcy Code, and except with

respect to executory contracts and unexpired leases as to which a Treatment Objection is filed

and served by the Treatment Objection Deadline, (a) each executory contract and unexpired lease

listed on Schedule 8.1 of the Plan Supplement as an executory contract or unexpired lease to be

assumed (and assigned, if applicable) shall be deemed assumed (and assigned, if applicable)

effective as of the Assumption Effective Date specified thereon, the Proposed Cure specified in

the Notice of Intent to Assume mailed to each Assumption Counterparty shall be the Cure Amount and shall be deemed to satisfy fully any obligations the Debtors might have with respect to such executory contract or unexpired lease under section 365(b) of the Bankruptcy Code, and all proofs of Claim on account of or in respect of any such assumed executory contract and unexpired lease shall be deemed withdrawn on the Effective Date without any further notice to or action by any party or order of the Court; (b) each executory contract and unexpired lease listed on Schedule 8.1 of the Plan Supplement as an executory contract or unexpired lease to be rejected shall be deemed rejected effective as of the Rejection Effective Date specified thereon; and (c) the Reorganized Debtors may assume, assume and assign, or reject any executory contract or unexpired lease relating to Aircraft Equipment that is listed on Schedule 8.1(c)(3) of the Plan Supplement by filing with the Court and serving upon the applicable Deferred Counterparty a Notice of Intent to Assume or a Notice of Intent to Reject at any time before the Deferred Agreement Deadline; *provided, however*, that if the Reorganized Debtors do not file a Notice of Intent to Assume or a Notice of Intent to Reject by the Deferred Agreement Deadline with respect to any executory contract or unexpired lease relating to Aircraft Equipment listed on Schedule 8.1(c)(3) of the Plan Supplement, such executory contract or unexpired lease shall be deemed rejected effective as of the one hundred eighty-first (181st) calendar day after the Effective Date; *provided, further*, that each agreement listed on Schedule 8.1(c)(1) of the Plan Supplement shall be deemed, as appropriate, reinstated or assumed as of the Effective Date.

12.     Pursuant to Section 8.2(d) of the Plan, the listing of any contract or lease on Schedule 8.1 of the Plan Supplement is not an admission that such contract or lease is an executory contract or unexpired lease.  The Debtors and the Assumption Counterparties, the Rejection Counterparties, or the Deferred Counterparties, as applicable (together with the

Debtors, the "**Recharacterization Parties**") reserve the right to assert that any contract or lease

listed on Schedule 8.1 of the Plan Supplement is not an executory contract or unexpired lease;

*provided, however,* that except with respect to any contract or lease for which a

Recharacterization Party (a) expressly reserves such right in a notice filed with the Court and

served on any parties listed thereon no later than ten (10) calendar days prior to the Voting

Deadline and (b) files an action based on such right prior to the date that is sixty (60) calendar

days after the Effective Date (unless required under the Plan to file such action at an earlier date),

each Recharacterization Party shall be deemed to have waived, as of the Effective Date, any

rights it may have to seek to recharacterize any contract or lease as a financing agreement.

13.     Categories of Executory Contracts and Unexpired Leases to Be Assumed.

Pursuant to Section 8.3 of the Plan and sections 365 and 1123 of the Bankruptcy Code, each

executory contract and unexpired lease in the following categories shall be deemed assumed as

of the Effective Date (and the Proposed Cure with respect to each shall be zero dollars ($0)),

except for any executory contract or unexpired lease (a) that has been assumed or rejected

pursuant to an order of the Court entered prior to the Effective Date, (b) that is the subject of a

separate motion to assume or reject pending on the Confirmation Date, (c) that is listed on

Schedule 8.1 of the Plan Supplement, (d) that is otherwise expressly assumed or rejected under

the Plan, or (e) as to which a Treatment Objection has been filed and served by the Treatment

Objection Deadline:

(a)     Cash Management Agreements, Confidentiality and Non-Disclosure

Agreements, Customer Programs, Debtor Ownership Agreements, Foreign Agreements, Fuel

Consortia Agreements, Insurance Plans, Intercompany Contracts, Interline Agreements, Letters

of Credit, Revenue Generating Agreements, Surety Bonds, and Workers' Compensation Plans.

Subject to the terms of the first paragraph of Section 8.3 of the Plan, each Cash Management Agreement, Confidentiality and Non-Disclosure Agreement, Customer Program, Debtor Ownership Agreement, Foreign Agreement, Fuel Consortia Agreement, Insurance Plan, Intercompany Contract, Interline Agreement, Letter of Credit, Revenue Generating Agreement, Surety Bond, and Workers' Compensation Plan shall be deemed assumed as of the Effective Date.  Nothing in Section 8.3 of the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any Entity, including, without limitation, the insurer under any of the Debtors' Insurance Plans.  Except as otherwise provided in the immediately preceding sentence, all proofs of Claim on account of or in respect of any Cash Management Agreement, Confidentiality and Non-Disclosure Agreement, Customer Program, Debtor Ownership Agreement, Foreign Agreement, Fuel Consortia Agreement, Insurance Plan, Intercompany Contract, Interline Agreement, Letter of Credit, Revenue Generating Agreement, Surety Bond, or Workers' Compensation Plan automatically shall be deemed withdrawn on the Effective Date without any further notice to or action by any party or order of the Court.  Unless otherwise agreed to by the applicable Debtor or Reorganized Debtor and the applicable Assumption Counterparty, an Assumption Counterparty to an executory contract or unexpired lease assumed pursuant to Section 8.3(a) of the Plan shall, on or before ten (10) Business Days after the Effective Date, return to the applicable Reorganized Debtor any deposit of Cash or other credit enhancement made by a Debtor to such Assumption Counterparty on or after the Commencement Date, including, without limitation, that certain Cash deposit held by Airlines Reporting Corporation pursuant to the Addendum to Carrier Services Agreement between Airlines Reporting Corporation and American, dated November 29, 2011, and that certain Cash deposit held by the International Air Transport Association pursuant to the Agreement in

Connection with Proposed Assumption of Executory Contracts Regarding the International Air Transport Association, including the IATA Clearinghouse, and Related Agreements between the International Air Transport Association and American, dated as of November 29, 2011.  Each Insurance Plan issued by the insurance or insurance service company affiliates of American International Group, Inc. ("**AIG**") to the Debtors shall be deemed to be an executory contract assumed by the Debtors pursuant to Section 8.3 of the Plan or in accordance with the Order Pursuant to 11 U.S.C. §§ 105(a) and 365(a) Approving Assumption of Chartis Insurance Program Agreements, dated March 5, 2012 (ECF No. 1595) and as provided in the Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 364(c) Authorizing, But Not Directing, and (Where Applicable) Ratifying (i) Renewal of Insurance Program with Chartis and (ii) Grant of Security Interest in Connection Therewith, dated September 21, 2012 (ECF No. 4655), and AIG shall not be required to return to the applicable Reorganized Debtor any deposit of Cash or other credit enhancement made by a Debtor to AIG on or after the Commencement Date in connection with an Insurance Plan and any insurance policies and related agreements, documents, or instruments entered into between one or more of the Debtors and AIG on or after the Commencement Date. Nothing in the Plan shall prejudice AIG's rights to setoff, recoupment, and subrogation with respect to an Insurance Plan between one or more of the Debtors and AIG and any insurance policies and related agreements, documents, or instruments entered into between one or more of the Debtors and AIG after the Commencement Date.  Each and every insurance policy issued by ACE American Insurance Company or any of its affiliates to the Debtors or any of their affiliates or predecessors and each and every agreement (including, but not limited to, claims servicing agreements), document, and instrument related thereto shall be deemed assumed by the Debtors pursuant to Section 8.3 of the Plan as more particularly set forth in the Stipulation and Agreed

Order Between the Debtors, AMR Corporation, and ACE American Insurance Company

Providing the Terms of Assumption of Certain Insurance Policies and Agreements Pursuant to a

Plan of Reorganization, entered on August 9, 2013 (ECF No. 9562).

        (b)        <u>Certain Indemnification Obligations</u>.  Each Indemnification Obligation

shall be deemed assumed by New AAG as of the Merger Effective Time in accordance with the

Merger Agreement.  Each Indemnification Obligation that is deemed assumed under the Plan

shall continue in full force and effect in accordance with its terms.  From and after the Merger

Effective Time, New AAG shall honor and perform the Indemnification Obligations, including

under all indemnification Contracts (as defined in the Merger Agreement) and organizational

documents of the Debtors.  New AAG shall not, directly or indirectly, amend, modify, limit, or

terminate, in any manner adverse to the Debtors' current or former directors or officers, with

respect to the Indemnification Obligations for acts or omissions occurring prior to the Merger

Effective Time, any indemnification Contracts with the Debtors or any provisions regarding the

Indemnification Obligations contained in any organizational documents of the Debtors.  Each

Indemnification Obligation that is deemed assumed under the Plan shall be deemed and treated

as an executory contract pursuant to sections 365 and 1123 of the Bankruptcy Code regardless of

whether or not a proof of Claim has been filed with respect to such Indemnification Obligation.

With respect to current or former employees of any of the Debtors not covered by Section

8.3(b)(i) of the Plan and who were employed by any of the Debtors prior to, on, or after the

Commencement Date, each obligation of any Debtor to indemnify such employees with respect

to or based upon any act or omission taken or omitted in any such capacity, or for or on behalf of

any Debtor, whether pursuant to agreement, the Debtors' respective articles or certificates of

incorporation, corporate charters, bylaws, operating agreements or similar corporate documents,

or applicable law in effect as of the Effective Date, shall be deemed assumed by New AAG as of the Effective Date. Each such indemnification obligation that is deemed assumed hereunder and/or under the Plan shall continue in full force and effect in accordance with its terms. From and after the Merger Effective Time, New AAG shall honor and perform all such indemnification obligations. New AAG shall not, directly or indirectly, amend, modify, limit, or terminate, in any manner adverse to such employees, with respect to such indemnification obligations for acts or omissions occurring prior to the Merger Effective Time, any indemnification contracts with the Debtors or any provisions regarding the indemnification obligations contained in any organizational documents of the Debtors. Each such indemnification obligation that is deemed assumed hereunder and/or under the Plan shall be deemed and treated as an executory contract pursuant to sections 365 and 1123 of the Bankruptcy Code regardless of whether or not a proof of Claim has been filed with respect to such indemnification obligation. Additionally, New AAG shall honor all of its indemnification obligations pursuant to Section 4.12 of the Merger Agreement.

(c)     Collective Bargaining Agreements. Each of the Collective Bargaining Agreements with the respective Unions shall remain in full force and effect on and after the Effective Date, subject to the respective terms thereof. The consideration provided for in each of the Section 1113 Agreements shall be in complete settlement and satisfaction of all Claims as provided therein, and each Union shall promptly take all action necessary to withdraw all proofs of Claim with respect to the Claims resolved pursuant to the respective Section 1113 Agreements. Notwithstanding the foregoing, New AAG and the Reorganized Debtors reserve the right to seek adjudication of any Collective Bargaining Agreement-related disputes between

the Debtors and any Union that concerns distributions, claims, restructuring transactions, or other aspects of the Plan in the Court.

(d)    Covered Special Facility Revenue Bonds.  Unless otherwise provided in the Plan, in a Special Facility Revenue Bond Agreement, or in an order of the Court, the Special Facility Revenue Bond Agreements, the respective Special Facility Revenue Bond Indentures, and the respective Special Facility Revenue Bond Documents, in each case relating solely to Covered Special Facility Revenue Bonds, shall remain in full force and effect in accordance with their original terms and conditions (or as amended by an order of the Court) and shall not otherwise be altered, amended, modified, surrendered, or cancelled under the Plan, and holders of such Covered Special Facility Revenue Bonds shall continue to receive payments in accordance with the terms and conditions of the Special Facility Revenue Bond Documents relating to the respective Covered Special Facility Revenue Bonds (as such Special Facility Revenue Bond Documents may have been amended by an order of the Court).  As a result of the assumption of executory contracts and/or leases relating to the Covered Special Facility Revenue Bonds and the prior payment of the related cure amounts by the Debtors, all proofs of Claim on account of or in respect of any Covered Special Facility Revenue Bonds shall be deemed Disallowed and expunged without any further notice to or action by any party or order of the Court.  To the extent any of the foregoing conflicts with the terms of a separate order of the Court relating to a Covered Special Facility Revenue Bond, the *separate* order of the Court shall govern.

14.    Other Categories of Agreements and Policies

(a)    Employee Benefits.  Pursuant to Section 8.4(a) of the Plan, as of the Effective Date, unless specifically rejected by order of the Court or otherwise specifically

provided for in the Plan, each American Compensation and Benefit Plan (as defined in the Merger Agreement) (including all matters set forth in Section 4.10 of the Merger Agreement and Section 4.1(o) of the American Disclosure Letter, but excluding (i) the matter set forth as item 1 in Section 4.1(o) of the American Disclosure Letter and (ii) any prepetition equity or equity-equivalent plan or agreement of the Debtors) shall be deemed assumed and shall be fully effective, and New AAG and the Reorganized Debtors shall maintain and perform under such plans and agreements. To the extent that the American Compensation and Benefit Plans are executory contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, they shall be deemed assumed; *provided, however*, that the foregoing shall not constitute the assumption of any benefits that are the subject of the Retiree Adversary Proceeding. To the extent the Retiree Adversary Proceeding has not been finally resolved by the Effective Date, New AAG shall continue to prosecute the Retiree Adversary Proceeding subsequent to the Effective Date. To the extent that the Debtors or New AAG, as applicable, are unsuccessful in whole or in part in obtaining the relief requested in the Retiree Adversary Proceeding, any remaining vested benefits shall be treated in accordance with the provisions of section 1129(a)(13) of the Bankruptcy Code.

(b)     Employee Protection Arrangements.  Pursuant to Section 8.4(b) of the Plan, as of the Effective Date, the Employee Protection Arrangements (as defined in and set forth in Section 4.1(o) of the American Disclosure Letter) shall be fully effective.

(c)     Postpetition Aircraft Agreements.  Pursuant to Section 8.4(c) of the Plan, subject to the Debtors' right to terminate or reject any Postpetition Aircraft Agreement prior to the Effective Date pursuant to the terms of such Postpetition Aircraft Agreement, (i) each Postpetition Aircraft Agreement shall remain in place after the Effective Date, (ii) the

Reorganized Debtors shall continue to honor each Postpetition Aircraft Agreement according to its terms, and (iii) to the extent any Postpetition Aircraft Agreement requires the assumption by the Debtors of such Postpetition Aircraft Agreement and the Postpetition Aircraft Obligations arising thereunder, such Postpetition Aircraft Agreement and Postpetition Aircraft Obligations shall be deemed assumed as of the Effective Date; *provided, however*, that this clause (iii) shall not be deemed or otherwise interpreted as an assumption by the Debtors of any agreement or obligation that is not a Postpetition Aircraft Agreement or Postpetition Aircraft Obligation; and *provided further,* that nothing in the Plan shall limit the Debtors' right to terminate such Postpetition Aircraft Agreement or Postpetition Aircraft Obligations in accordance with the terms thereof.  To the extent that, subsequent to the date of the Second Amended Plan and on or prior to the Effective Date, the Debtors, with the approval of the Court, enter into new Postpetition Aircraft Agreements for Aircraft Equipment not currently subject to a Postpetition Aircraft Agreement, any Claims or obligations arising thereunder shall be treated as Postpetition Aircraft Obligations under the Plan and such Postpetition Aircraft Agreements shall be deemed assumed as of the Effective Date.

15.     Retiree Claims.  Notwithstanding anything in this Confirmation Order to the contrary, if the Court determines that all or any portion of any benefit claimed in the proofs of claim filed by the Retiree Committee against AMR (Proof of Claim No. 12239) and against American (Proof of Claim No. 12893) (together, the "**Retiree Claims**"), if modified, would give rise to an Allowed Claim (the "**Allowed Retiree Claim**"), then the Debtors shall continue such retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code) under the Plan for the group of affected retired employees covered by the Allowed Retiree Claim in accordance with the provisions of section 1129(a)(13) of the Bankruptcy Code except as may be otherwise

agreed to in writing by the Debtors, the Creditors' Committee, and the Retiree Committee; *provided, however*, that the foregoing shall not give rise to any implication that any Retiree Claim is allowable, and all of the rights of the Debtors, the Reorganized Debtors, and the Creditors' Committee to object to or otherwise oppose the Retiree Claims and the Retiree Committee's rights to oppose any such objection or opposition or to assert such Retiree Claims are reserved, including all appeals. Additionally, no reserve shall be required to be maintained in the Disputed Claims Reserve or otherwise with respect to the Retiree Claims.

16. Pension Plans

(a) Pension Plan Required Contributions. Pursuant to Section 8.5(a) of the Plan, on the Effective Date, the Reorganized Debtors shall assume and continue the Pension Plans and shall pay in Cash any aggregate unpaid (i) minimum required funding contributions under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082 and 1083 and (ii) all delinquent PBGC premiums under 29 U.S.C. §§ 1306 and 1307, in each case with interest, for the Pension Plans under ERISA or the Internal Revenue Code. Upon such payment, the lien notices perfecting all liens and security interests held by, or in favor of, the PBGC on any assets of the Debtors or their affiliates shall be, and shall be deemed to be, withdrawn.

(b) Pension Plan Continuation. Pursuant to Section 8.5(b) of the Plan, after the Effective Date, the Reorganized Debtors shall (i) satisfy the minimum funding requirements under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082 and 1083, (ii) pay all required PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307, and (iii) administer the Pension Plans in accordance with the applicable provisions of ERISA and the Internal Revenue Code.

(c) Liabilities Preserved. Pursuant to Section 8.5(c) of the Plan, no provision of the Plan, this Confirmation Order, or section 1141 of the Bankruptcy Code shall be construed

to discharge, release, or relieve the Debtors, or their successors, including the Reorganized

Debtors, or any other party, in any capacity, from liabilities or requirements imposed under any

law or regulatory provision with respect to the Pension Plans or the PBGC.  The PBGC and the

Pension Plans shall not be enjoined or precluded from enforcing such liability as a result of any

provision of the Plan, this Confirmation Order, or section 1141 of the Bankruptcy Code.

17.     Assumption and Rejection Procedures and Resolution of Treatment

Objections.

(a)     Proposed Assumptions.  Pursuant to Section 8.6(a) of the Plan, with

respect to any executory contract or unexpired lease to be assumed under the Plan or pursuant to

a Notice of Intent to Assume, unless an Assumption Counterparty files and properly serves a

Treatment Objection by the Treatment Objection Deadline, such executory contract or unexpired

lease shall be deemed assumed and, if applicable, assigned as of the Assumption Effective Date

proposed by the Debtors or the Reorganized Debtors, as applicable, without any further notice to

or action by any party or order of the Court, and any obligation the Debtors or the Reorganized

Debtors, as applicable, may have to such Assumption Counterparty with respect to such

executory contract or unexpired lease under section 365(b) of the Bankruptcy Code shall be

deemed to be fully satisfied by the Proposed Cure, if any, which shall be the Cure Amount.  Any

Treatment Objection that is not timely filed and properly served shall be denied automatically

and with prejudice (without the need for any objection by the Debtors or the Reorganized

Debtors, as applicable, and without any further notice to, or action by, any party or order of the

Court).  Any Claim relating to such assumption or assignment shall be forever barred from

assertion and shall not be enforceable against any Debtor or Reorganized Debtor or their

respective estates or property, without the need for any objection by the Debtors or the

Reorganized Debtors, as applicable, and without any further notice to or action by any party or order of the Court, and any obligation the Debtors or the Reorganized Debtors may have under section 365(b) of the Bankruptcy Code (over and above any Proposed Cure) shall be deemed fully satisfied, released, and discharged, notwithstanding any amount or information included in the Schedules or any proof of Claim.

(b)     Proposed Rejections.  Pursuant to Section 8.6(b) of the Plan, with respect to any executory contract or unexpired lease to be rejected under the Plan or pursuant to a Notice of Intent to Reject, unless a Rejection Counterparty files and serves a Treatment Objection by the Treatment Objection Deadline, such executory contract or unexpired lease shall be deemed rejected as of the Rejection Effective Date proposed by the Debtors or the Reorganized Debtors, as applicable, without any further notice to or action by any party or order of the Court.  Any objection to the rejection of an executory contract or unexpired lease that is not timely filed and served shall be deemed denied automatically and with prejudice (without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, and without any further notice to or action by any party or order of the Court).

(c)     Resolution of Treatment Objections.  Pursuant to Section 8.6(c) of the Plan, on and after the Effective Date, the Reorganized Debtors may, in their sole discretion, settle Treatment Objections without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Amount).  With respect to each executory contract or unexpired lease as to which a Treatment Objection is timely filed and served and is not otherwise resolved by the parties after a reasonable period of time, the Debtors or the Reorganized Debtors, as applicable, shall schedule a hearing with the Court with respect to such Treatment Objection and provide at least fourteen (14) calendar days' notice of such hearing to

the Assumption Counterparty, the Rejection Counterparty, or the Deferred Counterparty, as

applicable; *provided, however*, that if such Treatment Objection is not resolved by the parties

after a reasonable period of time, the respective Assumption Counterparty, Rejection

Counterparty, or Deferred Counterparty may, with prior notice to the Debtors, request that the

Court schedule such a hearing.  Unless otherwise ordered by the Court or agreed to by the

parties, any assumption or rejection approved by the Court notwithstanding a Treatment

Objection shall be effective as of the Assumption Effective Date or Rejection Effective Date, as

applicable, that was originally proposed by the Debtors or specified in the Plan.  Any Cure

Amount shall be paid as soon as reasonably practicable following entry of a Final Order

resolving an assumption dispute and/or approving an assumption (and assignment, if applicable),

unless the Debtors or the Reorganized Debtors, as applicable, seek to reject such executory

contract or unexpired lease and file a Notice of Intent to Reject under Section 8.2(b) of the Plan

(which, with respect to a Special Facility Revenue Bond Agreement, must be served upon the

Indenture Trustee of the applicable Special Facility Revenue Bond Indenture).  No Cure Amount

shall be allowed for a penalty rate or default rate of interest to the extent not proper under the

Bankruptcy Code or applicable law.

(d)     Reservation of Rights.  Pursuant to Section 8.6(d) of the Plan, if a

Treatment Objection is filed with respect to any executory contract or unexpired lease sought to

be assumed or rejected by any of the Debtors or the Reorganized Debtors, the Debtors and the

Reorganized Debtors reserve the right (i) to seek to assume or reject such executory contract or

unexpired lease at any time before the assumption, rejection, assignment, or Cure Amount with

respect to such executory contract or unexpired lease is determined by a Final Order and (ii) to

the extent a Final Order is entered resolving a Treatment Objection as to a Cure Amount in an

amount different from the Proposed Cure, to seek to reject such executory contract or unexpired lease within fourteen (14) calendar days after the date of entry of such Final Order by filing with the Court and serving upon the Assumption Counterparty or Rejection Counterparty, as applicable, a Notice of Intent to Assume or a Notice of Intent to Reject, as applicable (which, with respect to a Special Facility Revenue Bond Agreement, must be served upon the Indenture Trustee of the applicable Special Facility Revenue Bond Indenture).

18.     Rejection Claims.  Pursuant to Section 8.7 of the Plan, any Rejection Claim must be filed with the Court by the Rejection Bar Date, i.e., thirty (30) calendar days after entry of an order of the Court approving the rejection of an executory contract or unexpired lease.  Any Rejection Claim for which a proof of Claim is not properly filed and served by the Rejection Bar Date shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, or their respective estates or property.  The Debtors or the Reorganized Debtors, as applicable, may contest Rejection Claims in accordance with Section 7.1 of the Plan.

19.     Assignment.  Pursuant to Section 8.8 of the Plan, to the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned under the Plan shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify,

recapture, impose any penalty, condition renewal or extension, or modify any term or condition

upon any such transfer and assignment, constitutes an unenforceable antiassignment provision

and is void and of no force or effect. The rights of the Alliance Parties (as defined in the Limited

Objection and/or Reservation of Rights of City of Fort Worth and AllianceAirport Authority,

Inc. to Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9353) (the "**Alliance Parties**

**Objection**") to object to and/or contest any (i) assumption and/or assignment of one or both of

the Leases (as defined in the Alliance Parties Objection) or any related agreements; (ii) purchase

of related equipment by the Debtors; or (iii) any other term of any proposed assumption,

including proposed cure amounts, shall be reserved pursuant to any applicable provisions of the

Bankruptcy Code, including section 365 of the Bankruptcy Code. Furthermore, the Debtors'

obligations, if any, under the Consent Order (as defined in the Alliance Parties' Objection) shall

constitute an Allowed Administrative Expense pursuant to Section 2.1 of the Plan and shall not

be discharged by the Plan or this Confirmation Order.

20. Approval of Assumption, Rejection, Retention, or Assignment of

Executory Contracts and Unexpired Leases. Pursuant to Section 8.9 of the Plan, subject to the

occurrence of the Effective Date, entry of this Confirmation Order shall constitute approval of

the rejections, retentions, assumptions, and/or assignments contemplated under the Plan pursuant

to sections 365 and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease

that is assumed under the Plan shall vest in and be fully enforceable by the applicable

Reorganized Debtor in accordance with its terms as of the applicable Assumption Effective Date,

except as modified by the provisions of the Plan or any order of the Court authorizing or

providing for its assumption. The provisions of each executory contract or unexpired lease

assumed and/or assigned under the Plan that are or may be in default shall be deemed satisfied in

36

full by the Cure Amount or by an agreed-upon waiver of the Cure Amount.  Upon payment in

full of the Cure Amount, any and all proofs of Claim based upon an executory contract or

unexpired lease that has been assumed in the Chapter 11 Cases or under the Plan shall be deemed

Disallowed and expunged without any further notice to or action by any party or order of the

Court.

21.    Modifications, Amendments, Supplements, Restatements, or Other

Agreements.  Pursuant to Section 8.10 of the Plan, unless otherwise provided in the Plan or by

separate order of the Court, each executory contract and unexpired lease that is assumed, whether

or not such executory contract or unexpired lease relates to the use, acquisition, or occupancy of

real property, shall include (i) all modifications, amendments, supplements, restatements, or

other agreements made directly or indirectly by any agreement, instrument, or other document

that in any manner affects such executory contract or unexpired lease and (ii) all executory

contracts or unexpired leases appurtenant to the premises, if any, including all easements,

licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses,

reciprocal easement agreements, and any other interests in real estate or rights in remedy related

to such premises, unless any of the foregoing agreements are rejected under the Plan or pursuant

to an order of the Court.

22.    General Authorizations.  Each of the officers of each of the Debtors is

(and each of the officers of each of the Reorganized Debtors shall be) authorized and directed to

execute, deliver, file, or record such contracts, instruments, releases, indentures, and other

agreements or documents and take such actions as may be necessary or appropriate to effectuate

and further evidence the terms and provisions of the Plan and the Merger Agreement.  The

Debtors and their directors, officers, members, agents, and attorneys are authorized and

37

empowered to issue, execute, deliver, file, or record any agreement, document, or security, including, without limitation, the documents contained in the Plan Supplement and the Exhibits and Schedules to the Plan, as modified, amended, and supplemented, in substantially the form included therein, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan and the Merger Agreement in accordance with their terms, or take any or all corporate actions authorized to be taken pursuant to the Plan and the Merger Agreement, including merger of any of the Debtors and the dissolution of each of the Debtors, and any release, amendment, or restatement of any bylaws, certificates of incorporation, or other organizational documents of the Debtors, whether or not specifically referred to in the Plan, the Merger Agreement, or the Plan Supplement, without further order of the Court, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

23.     New AAG 2013 Incentive Award Plan.  Pursuant to Section 6.20 of the Plan, the New AAG 2013 Incentive Award Plan, the Alignment Awards, and the LTIP 2013 Awards shall become effective immediately upon the occurrence of the Merger Effective Time without any further corporate or other action.

24.     Issuance of Plan Shares.  Pursuant to Section 6.8 of the Plan, New AAG shall issue the Plan Shares, or have sufficient authorized shares available for issuance, as applicable, in accordance with the Plan and with the Merger Agreement.

25.     Issuance of Securities; Execution of Related Documents.  Pursuant to Section 6.10 of the Plan, on the Effective Date, or as soon thereafter as reasonably practicable, except as otherwise provided in the Plan or in the Merger Agreement, the Reorganized Debtors

shall issue all securities, instruments, certificates, and other documents that they are required to issue under the Plan or under any Postpetition Aircraft Agreement, which shall be distributed as provided in the Plan and therein; *provided, however*, that New AAG shall be authorized to issue the New Mandatorily Convertible Preferred Stock and the New Common Stock in accordance with Sections 6.8 and 6.19 of the Plan, the Merger Agreement, and any such Postpetition Aircraft Agreement, as applicable, without the need for any further corporate action by any Debtor or Reorganized Debtor or their stockholders.  New AAG and the Reorganized Debtors, as applicable, shall execute and deliver such other agreements, documents, and instruments in accordance with the Plan, the Merger Agreement, and any such Postpetition Aircraft Agreement, as applicable.

26.     Corporate Action.

(a)     New AAG.  Pursuant to Section 6.19(a) of the Plan, the New AAG Certificate of Incorporation and the New AAG Bylaws shall be consistent with the terms and provisions of the Merger Agreement.  New AAG shall file the New AAG Certificate of Incorporation and the Certificate of Designations with the Secretary of State of the State of Delaware on the Effective Date immediately prior to the Merger Effective Time.  The New AAG Certificate of Incorporation shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such New AAG Certificate of Incorporation as permitted by applicable law.  The New AAG Bylaws shall be deemed adopted by the New AAG Board as of the Effective Date.

(b)     The Reorganized Debtors.  Pursuant to Section 6.19(b) of the Plan, the Reorganized Debtors (other than New AAG) shall file the Amended Certificates of Incorporation with the Secretary of State of the State of the applicable state of formation on the Effective Date. The Amended Certificates of Incorporation for each of the Reorganized Debtors (other than New AAG) that are corporations shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such Amended Certificates of Incorporation as permitted by applicable law.  With respect to any Debtor that is a limited liability company or partnership, the respective limited liability company agreement or partnership agreement by which such Debtor is governed shall be similarly amended to prohibit the issuance of nonvoting equity securities.

Pursuant to Section 6.19(c) of the Plan, on the Effective Date, the adoption, filing, approval, and ratification, as necessary, of all corporate or related actions contemplated in the Plan and the Merger Agreement with respect to each of the Reorganized Debtors shall be

deemed authorized and approved by each of the Reorganized Debtors, its board of directors, managers, stockholders, members, or partners, as applicable, in all respects, in each case to the extent required by applicable nonbankruptcy law.  Without limiting the foregoing, such actions include (i) the adoption and filing of the New AAG Certificate of Incorporation, the Certificate of Designations, and the Amended Certificates of Incorporation for each of the other Reorganized Debtors, (ii) the approval of the New AAG Bylaws and the Amended Bylaws for each of the other Reorganized Debtors, (iii) the election or appointment, as applicable, of directors and officers for the Reorganized Debtors, (iv) the issuance of the Plan Shares, (v) the Merger to be effectuated pursuant to the Plan, (vi) the adoption and implementation of the employee matters set forth in Section 4.10 of the Merger Agreement and Section 4.1(o) of the American Disclosure Letter, including, but not limited to, the New AAG 2013 Incentive Award Plan, the Alignment Awards, and the LTIP 2013 Awards, (vii) the qualification of any of the Reorganized Debtors as foreign corporations, partnerships, or limited liability companies wherever the conduct of business by such Entities requires such qualification, and (viii) the execution, delivery, and performance of each Postpetition Aircraft Agreement and any agreement or instrument provided for in a Postpetition Aircraft Agreement and the issuance of any security to be issued by a Reorganized Debtor pursuant to or in connection with a Postpetition Aircraft Agreement.  Pursuant to Section 6.19(d) of the Plan, all matters provided for in the Plan involving the corporate structure of any Debtor or Reorganized Debtor, or any corporate or related action required by any Debtor or Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders or directors of such Debtor or Reorganized Debtor or by any other stakeholder, and with like effect as though such action had been taken unanimously by the

security holders and directors, managers, members, or partners, as applicable, of the applicable

Debtor or Reorganized Debtor.

27.     Anti-Dilution Adjustments.  Pursuant to Section 6.21 of the Plan, in the

event that that any transaction or event of the type contemplated by Sections 6.1, 6.2, or 6.3 of

the Certificate of Designations occurs with respect to the New Common Stock, in addition to the

actions required under the Certificate of Designations, the Board of Directors of New AAG shall

take appropriate action as may be necessary or appropriate, as determined in its reasonable good

faith judgment, to protect the rights of holders of New Common Stock consistent with the Plan.

28.     Securities Laws Exemption.  The offer, issuance, and distribution of all of

the shares of New Mandatorily Convertible Preferred Stock and New Common Stock under the

Plan to holders of Allowed Claims against and Allowed AMR Equity Interests in the Debtors, as

applicable, and the issuance of all shares of New Common Stock issued pursuant to the

conversion of the New Mandatorily Convertible Preferred Stock, and any securities issued or to

be issued pursuant to or in connection with a Postpetition Aircraft Agreement, shall be exempt,

pursuant to section 1145 of the Bankruptcy Code, from registration under (i) the Securities Act

of 1933, as amended, and all rules and regulations promulgated thereunder and (ii) any state or

local law requiring registration for the offer, issuance, or distribution of securities.

29.     Listing.  Pursuant to Section 6.12 of the Plan, in accordance with the

Merger Agreement, the shares of New Common Stock shall be authorized for listing on the New

York Stock Exchange or the NASDAQ Stock Market, upon official notice of issuance, on or

prior to the Closing Date.

30.     Cancellation of AMR Common Stock.  Pursuant to Section 6.13 of the

Plan, at the Merger Effective Time, all outstanding shares of AMR Common Stock or preferred

42

stock of AMR, all options to purchase shares of AMR Common Stock or preferred stock of AMR, and all awards of any kind consisting of shares of AMR Common Stock or preferred stock of AMR, that have been or may be granted, held, awarded, outstanding, payable, or reserved for issuance, and all other AMR Equity Interests, including all securities or obligations convertible or exchangeable into or exercisable for shares of AMR Common Stock, preferred stock of AMR, or other AMR Equity Interests, and each other right of any kind, contingent or accrued, to acquire or receive shares of AMR Common Stock, preferred stock of AMR, or other AMR Equity Interests, whether upon exercise, conversion, or otherwise, whether vested or unvested, shall, without any action on the part of the holder thereof, be cancelled and retired and shall cease to exist.  Such cancellation and retirement shall not affect the right to receive any distributions provided for under the Plan.  In addition, Section 6.13 of the Plan does not apply with respect to any New Common Stock, New Mandatorily Convertible Preferred Stock, or any other equity securities or rights to acquire or receive equity securities or any other awards of any kind relating to New AAG that are issued in accordance with or pursuant to the Plan or the Merger Agreement.

31.     Cancellation of Existing Notes and Aircraft Securities.  Pursuant to Section 6.14 of the Plan, except as otherwise provided in the Plan, on the Effective Date, all notes, instruments, certificates, and other documents evidencing the Notes, the Special Facility Revenue Bonds (excluding the Covered Special Facility Revenue Bonds), and the Aircraft Securities shall be cancelled, and the obligations of the Debtors thereunder and in any way related thereto shall be deemed fully satisfied, released, and discharged; *provided, however*, that (i) with respect to Special Facility Revenue Bonds (excluding the Covered Special Facility Revenue Bonds), the obligations of the Debtors thereunder and in any way related thereto shall

43

be fully terminated, satisfied, released, and discharged in exchange for the treatment provided in the Plan for Allowed Claims and any other treatment provided for by Final Order, if any, (ii) the cancellations set forth in Section 6.14 of the Plan and the termination, satisfaction, release, and discharge of the Debtors' obligations with respect to the Special Facility Revenue Bonds (excluding the Covered Special Facility Revenue Bonds) and the Aircraft Securities shall not alter the obligations or rights of any non-Debtor third parties applicable after the Effective Date vis-à-vis one another with respect to such notes, instruments, certificates, or other documents, (iii) the cancellations set forth in Section 6.14 of the Plan and the termination, satisfaction, release, and discharge of the Debtors' obligations with respect to the Special Facility Revenue Bonds (excluding the Covered Special Facility Revenue Bonds) shall not be deemed to cause a default, termination, waiver, or other forfeiture of the Debtors in any document, instrument, lease, or other agreement (including, but not limited to, that certain Amended and Restated Airport Use Agreement – Terminal Facilities Lease, dated as of January 1, 1985, by and between the City of Chicago and American, as amended from time to time (the "**Chicago Lease**")) pursuant to which the Debtors lease or use land, facilities, improvements, or equipment financed, in whole or in part, with the proceeds of any Special Facility Revenue Bonds that have been deemed to be satisfied or cancelled under the Plan or otherwise, and (iv) any provision in any document, instrument, lease, or other agreement (including, but not limited to, the Chicago Lease) that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors or their interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in Section 6.14 of the Plan shall be deemed null and void and shall be of no force and effect, and the Debtors shall be entitled to continue to use (in accordance with the remaining provisions of such document, instrument,

lease, or other agreement) any land, facilities, improvements, or equipment financed with the proceeds of Special Facility Revenue Bonds (including, but not limited to, the premises leased pursuant to the Chicago Lease), notwithstanding such cancellations, terminations, satisfactions, releases, or discharges provided in Section 6.14 of the Plan.  Except as otherwise provided in the Plan, on the Effective Date, any indentures or similar agreements relating to any of the foregoing, including, without limitation, the Indentures, the Special Facility Revenue Bond Indentures, and any related notes, guarantees, or similar instruments of the Debtors or otherwise (excluding the Special Facility Revenue Bond Indentures, and any related notes, guarantees, or similar instruments of the Debtors or otherwise, associated with the Covered Special Facility Revenue Bonds) shall be deemed cancelled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and discharged (a) with respect to all rights of and obligations owed by any Debtor under any such indentures or similar agreements and (b) except as provided below, with respect to the rights and obligations of the Indenture Trustees under any such indentures or similar agreements against (or to) the holders of Note Claims, the holders of Special Facility Revenue Bond Claims, or any other Person.  Solely for the purpose of clause (b) in the immediately preceding sentence, only the following rights of each such Indenture Trustee shall remain in effect after the Effective Date:  (1) rights as trustee, co-trustee, agent, paying agent, distribution agent, authentication agent, guarantee trustee, remarketing agent, bond registrar, and registrar, including, but not limited to, any rights to payment of fees, expenses, and indemnification obligations, including, but not limited to, from property distributed under the Plan to such Indenture Trustee (but excluding any other property of the Debtors, the Reorganized Debtors, or their respective estates), whether pursuant to the exercise of a charging lien or otherwise, (2) rights relating to distributions to be made to holders of Allowed Note Claims or

Allowed Special Facility Revenue Bond Claims by such Indenture Trustee from any source, including, but not limited to, distributions under the Plan (but excluding any other property of the Debtors, the Reorganized Debtors, or their respective estates), (3) rights relating to representation of the interests of the holders of Note Claims or Special Facility Revenue Bond Claims by such Indenture Trustee in the Chapter 11 Cases to the extent not discharged or released under the Plan or under any order of the Court, and (4) rights relating to participation by such Indenture Trustee in any proceedings or appeals related to the Plan.  Notwithstanding the continued effectiveness of such rights after the Effective Date, such Indenture Trustees shall have no obligation to object to Claims against the Debtors or to locate certificated holders of Notes, Special Facility Revenue Bonds, or Aircraft Securities who fail to surrender their respective Notes, Special Facility Revenue Bonds, or Aircraft Securities in accordance with Section 5.13 of the Plan.  Nothing contained in the Plan shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any executory contract or lease (including, but not limited to, executory contracts or leases pursuant to which a Debtor leases any land, facilities, improvements, and/or equipment financed, in whole or in part, with proceeds of Special Facility Revenue Bonds) to the extent such executory contract or lease has been assumed by the Debtors pursuant to a Final Order of the Court or under the Plan.  Notwithstanding any other provisions set forth in Section 6.14 of the Plan, with respect to any aircraft identified in the Plan Supplement, and any Aircraft Securities issued in respect of such aircraft, until (I) the execution of Postpetition Aircraft Agreements with respect to such aircraft, (II) the payment in full of distributions as provided in the Plan in respect of the Claims addressed by such Postpetition Aircraft Agreements with respect to such aircraft, (III) any monies, other consideration, or other value to be passed through such Aircraft Securities at

any time pursuant to the Postpetition Agreements in respect of such aircraft or otherwise arising from the sale, lease, or other disposition of such aircraft have been finally and indefeasibly paid and/or conveyed to the holders of such Aircraft Securities (including, without limitation, any equipment trust certificates), and (IV) in the case of any pass-through trust certificates, all of the matters described in the foregoing clauses (I) through (III) shall be completed with respect to each related aircraft and equipment trust certificate, any such Aircraft Securities shall not be cancelled; *provided, however*, on the Effective Date or the applicable Rejection Effective Date (as set forth in the Plan Supplement), as applicable, all obligations of the Debtors (to the extent the Debtors had any obligations) with respect to the Aircraft Securities (but, for the avoidance of doubt, not the obligations of the Debtors with respect to Postpetition Aircraft Agreements) shall be deemed satisfied, released, and discharged. For the avoidance of doubt, the release, satisfaction, or discharge of any of the Debtors' obligations under the Aircraft Securities shall not affect the rights and obligations of any non-Debtor third parties after the Effective Date or the applicable Rejection Effective Date, as applicable, vis-à-vis one another with respect to such Aircraft Securities.

32. <u>Equity Interests in Subsidiaries Held by the Debtors</u>. Pursuant to Section 6.17 of the Plan, subject to the terms and conditions set forth in the Merger Agreement, on the Effective Date, each respective Equity Interest in a direct or indirect subsidiary of AMR that is not a Debtor shall be unaffected by the Plan, and the Reorganized Debtor holding such Equity Interest shall continue to hold such Equity Interest; *provided, however*, that on or after the Effective Date, New AAG may cause US Airways to merge with and into New AAG or a business entity disregarded as an entity separate from New AAG for U.S. federal income tax purposes.

33.    Substantive Consolidation.

(a)    AMR Plan Consolidation. Subject to the occurrence of the Effective Date, pursuant to Section 6.5(b) of the Plan, solely for voting, confirmation, and distribution purposes under the Plan, and subject to the following sentence, (i) all assets and all liabilities of the AMR Debtors shall be treated as though they were merged, (ii) all guarantees of any AMR Debtor of the payment, performance, or collection of obligations of another AMR Debtor shall be eliminated and cancelled, (iii) any obligation of any AMR Debtor and all guarantees thereof executed by one or more of the other AMR Debtors shall be treated as a single obligation, and such guarantees shall be deemed a single Claim against the consolidated AMR Debtors, (iv) all joint obligations of two or more AMR Debtors and all multiple Claims against such Entities on account of such joint obligations shall be treated and allowed as a single Claim against the consolidated AMR Debtors, (v) all Claims between the AMR Debtors shall be deemed cancelled, and (vi) each Claim filed in the Chapter 11 Case of any AMR Debtor shall be deemed filed against the consolidated AMR Debtors and a single obligation of the consolidated AMR Debtors. The substantive consolidation and deemed merger effected pursuant to Section 6.5(b) of the Plan shall not affect (other than for purposes related to funding distributions under the Plan and as set forth in Section 6.5(b) of the Plan) (A) the legal and organizational structure of the AMR Debtors, except as provided in the Merger Agreement, (B) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, and (C) distributions out of any insurance policies or proceeds of such policies. Notwithstanding the foregoing, prepetition intercompany Claims between and among the AMR Debtors, the American Debtors, and the Eagle Debtors shall be dealt with in accordance with Section 6.15 of the Plan.

48

(b)      <u>American Plan Consolidation</u>.  Subject to the occurrence of the Effective Date, pursuant to Section 6.5(c) of the Plan, solely for voting, confirmation, and distribution purposes under the Plan, and subject to the following sentence, (i) all assets and all liabilities of the American Debtors shall be treated as though they were merged, (ii) all guarantees of any American Debtor of the payment, performance, or collection of obligations of another American Debtor shall be eliminated and cancelled, (iii) any obligation of any American Debtor and all guarantees thereof executed by one or more of the other American Debtors shall be treated as a single obligation, and such guarantees shall be deemed a single Claim against the consolidated American Debtors, (iv) all joint obligations of two or more American Debtors and all multiple Claims against such Entities on account of such joint obligations shall be treated and allowed as a single Claim against the consolidated American Debtors, (v) all Claims between the American Debtors shall be deemed cancelled, and (vi) each Claim filed in the Chapter 11 Case of any American Debtor shall be deemed filed against the consolidated American Debtors and a single obligation of the consolidated American Debtors.  The substantive consolidation and deemed merger effected pursuant to Section 6.5(c) of the Plan shall not affect (other than for purposes related to funding distributions under the Plan and as set forth in Section 6.5(c) of the Plan) (A) the legal and organizational structure of the American Debtors, except as provided in the Merger Agreement, (B) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, and (C) distributions out of any insurance policies or proceeds of such policies.  Notwithstanding the foregoing, prepetition intercompany Claims between and among the AMR Debtors, the American Debtors, and the Eagle Debtors shall be dealt with in accordance with Section 6.15 of the Plan.

(c)      Eagle Plan Consolidation.  Subject to the occurrence of the Effective Date, pursuant to Section 6.5(d) of the Plan, solely for voting, confirmation, and distribution purposes under the Plan, and subject to the following sentence, (i) all assets and all liabilities of the Eagle Debtors shall be treated as though they were merged, (ii) all guarantees of any Eagle Debtor of the payment, performance, or collection of obligations of another Eagle Debtor shall be eliminated and cancelled, (iii) any obligation of any Eagle Debtor and all guarantees thereof executed by one or more of the other Eagle Debtors shall be treated as a single obligation, and such guarantees shall be deemed a single Claim against the consolidated Eagle Debtors, (iv) all joint obligations of two or more Eagle Debtors and all multiple Claims against such Entities on account of such joint obligations shall be treated and allowed as a single Claim against the consolidated Eagle Debtors, (v) all Claims between the Eagle Debtors shall be deemed cancelled, and (vi) each Claim filed in the Chapter 11 Case of any Eagle Debtor shall be deemed filed against the consolidated Eagle Debtors and a single obligation of the consolidated Eagle Debtors. The substantive consolidation and deemed merger effected pursuant to Section 6.5(d) of the Plan shall not affect (other than for purposes related to funding distributions under the Plan and as set forth in Section 6.5(d) of the Plan) (A) the legal and organizational structure of the Eagle Debtors, except as provided in the Merger Agreement, (B) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, and (C) distributions out of any insurance policies or proceeds of such policies.  Notwithstanding the foregoing, prepetition intercompany Claims between and among the AMR Debtors, the American Debtors, and the Eagle Debtors shall be dealt with in accordance with Section 6.15 of the Plan.

34.     Plan Supplement and Exhibits and Schedules to the Plan.  The documents substantially in the form contained in the Plan Supplement, the Exhibits and Schedules to the Plan, and any amendments, modifications, and supplements thereto, and the execution, delivery, and performance thereof by the Debtors or the Reorganized Debtors, as applicable, are authorized and approved.

35.     *Approvals or Consents* ~~Governmental Approvals Not Required~~.  Except as otherwise expressly provided in the Merger Agreement or this Confirmation Order, *to the extent authorized by section 1123(a) of the Bankruptcy Code,* this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority (*subject to applicable police powers and applicable laws, rules, or regulations relating to public health and safety)* with respect to the implementation or consummation of the Plan and the Merger Agreement and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.  *This Court retains jurisdiction to interpret the scope of this Paragraph.*

36.     The Court takes judicial notice of the civil action filed by the United States and several plaintiff states to enjoin the Merger under federal antitrust law on August 13, 2013 in the United States District Court for the District of Columbia as Case No. 13-cv-01236 (the "**DOJ Action**").  Nothing in this Confirmation Order shall be construed as an adjudication of any causes of action asserted in the DOJ Action or as otherwise expressing the Court's position with respect to the DOJ Action.  In the event that the Debtors and US Airways reach a settlement of the DOJ Action, the Debtors shall file a motion with the Court seeking approval of

the Debtors' execution of and entry into such settlement.  In addition to determining whether to approve any such settlement under Bankruptcy Rule 9019(a), the Court shall determine whether the settlement would materially and adversely affect the treatment of holders of Claims and AMR Equity Interests under the Plan such that the Court should require the re-solicitation of such holders' previous acceptances or rejections of the Plan.

37.    Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, Transfer, or exchange of notes or equity securities under the Plan or in connection with the transactions contemplated by the Plan, the creation, filing, or recording of any mortgage, deed of trust, or other security interest, the making, assignment, filing, or recording of any lease or sublease, the transfer of title to or ownership of any of the Debtors' interests in any Aircraft Equipment, or the making or delivery of any deed, bill of sale, or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the New Mandatorily Convertible Preferred Stock, the New Common Stock, any Postpetition Aircraft Agreement, any distribution from the Disputed Claims Reserve, or any agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated in the Plan or in any Postpetition Aircraft Agreement, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, Cape Town filing or recording fee, FAA filing or recording fee, or other similar tax or governmental assessment in the United States.  To the maximum extent provided by section 1146(a) of the Bankruptcy Code and applicable nonbankruptcy law, the transactions pursuant to the Merger Agreement shall not be taxed under any law imposing a stamp tax or similar tax.  Each federal, state, commonwealth, local, foreign, or other

governmental agency is directed and authorized to accept the validity of any and all documents,

trust agreements, mortgages, and instruments that are necessary or appropriate to effectuate,

implement, or consummate the transactions contemplated by the Plan, the Merger Agreement,

this Confirmation Order, and any agreements created or contemplated by the Plan, without

payment of any *tax covered by section 1146(a).* ~~recording tax, stamp tax, transfer tax, or similar~~ ~~tax imposed by state or local law.~~

38. Expedited Tax Determination. Pursuant to Section 12.5 of the Plan, New

AAG or the Reorganized Debtors may request an expedited determination of taxes under section

505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Debtors or the

Reorganized Debtors for all taxable periods through the Effective Date.

39. Disbursing Agent. Pursuant to Section 5.2(a) of the Plan, the Disbursing

Agent shall make all distributions required under the Plan, except with respect to a holder of a

Claim whose distribution is governed by an agreement and is administered by an Indenture

Trustee or Servicer, which distribution shall be deposited by the Disbursing Agent with the

appropriate Indenture Trustee or Servicer for distribution to holders of Claims in accordance

with the provisions of the Plan and the terms of the governing agreement (except with respect to

distributions on Claims where the Indenture Trustee or Servicer, the Debtors, and the holder of a

Claim may have agreed otherwise). Distributions on account of such Claims shall be deemed

complete upon delivery to the appropriate Indenture Trustee or Servicer; *provided, however*, that

if any such Indenture Trustee or Servicer is unable to make such distributions, the Disbursing

Agent, with the cooperation of such Indenture Trustee or Servicer, shall make such distributions

to the extent reasonably practicable. With respect to holders of American Union Claims in

American Class 6, the Disbursing Agent shall make the distributions required under the Plan to

the APA, the APFA, and the TWU, as applicable, and distributions on account of such American

Union Claims shall be deemed complete upon delivery to the APA, the APFA, and the TWU, as

applicable.

40.     Distributions of New Mandatorily Convertible Preferred Stock.  Except

with respect to owners of securities that are held directly or indirectly through The Depository

Trust Company ("**DTC**") or its nominee, distributions of New Mandatorily Convertible Preferred

Stock shall be made as follows: The Debtors or the Disbursing Agent shall arrange for the

establishment of accounts at a broker (the "**Holding Broker**") that, directly or indirectly, may

temporarily hold securities as or through an entity that is a bank, broker or other nominee that

holds securities through DTC in "street name" on behalf of underlying beneficial owners of the

securities (a "**DTC Participant**").  Such accounts shall be established for the benefit of each

creditor entitled to receive such a distribution of New Mandatorily Convertible Preferred Stock

and shall be established in the name of and for the benefit of the creditor as reflected on the

claims register maintained in the Chapter 11 Cases, but creditors shall not be permitted to access

their New Mandatorily Convertible Preferred Stock until they retain a broker of their own choice

(the "**Creditor's Broker**") and initiate a transfer of the New Mandatorily Convertible Preferred

Stock from the Holding Broker's account to the Creditor's Broker account.  The Holding Broker

is authorized to make a "free delivery" of shares from such accounts in accordance with delivery

instructions received from the creditor.  The Debtors, the Disbursing Agent, and the Holding

Broker are authorized to establish such accounts for the benefit of such creditors and to take such

other acts that are necessary or appropriate in connection with such distributions,

notwithstanding the absence of an agreement by the creditor.  The Disbursing Agent is

authorized to establish one or more accounts (including securities accounts or brokerage accounts) with respect to the Disputed Claims Reserve.

41.     Pursuant to Section 5.2(b) of the Plan, the Debtors shall be authorized, without further Court approval, to reimburse any Servicer for its reasonable and customary servicing fees and expenses incurred in providing postpetition services directly related to distributions under the Plan.  Such reimbursement shall be made on terms agreed to with the Debtors and shall not be deducted from distributions to be made under the Plan to holders of Allowed Claims receiving distributions from such Servicer.

42.     Timing of Distributions.  Pursuant to Section 5.3 of the Plan, subject to any reserves or holdbacks established under the Plan, on the appropriate Distribution Date, or as soon thereafter as is practicable, holders of Allowed Claims and Allowed AMR Equity Interests shall receive the distributions provided for in the Plan.  Distributions on account of General Unsecured Claims that are Allowed as of the Effective Date, including delivery to The Depository Trust Company of the global certificate(s) representing the shares of Mandatorily Convertible Preferred Stock to be issued under the Plan, shall be made on the Initial Distribution Date or, other than with respect to distribution of Plan Shares, as soon thereafter as reasonably practicable (and shall receive the additional true-up distributions provided for in Section 7.4 of the Plan at the times provided for therein).  Distributions on account of any Disputed Claim as of the Effective Date that subsequently becomes Allowed shall be made on the next Distribution Date that is at least twenty (20) calendar days after the date such Claim becomes Allowed, or as soon thereafter as reasonably practicable; *provided, however*, that distributions on account of Administrative Expenses and Priority Tax Claims shall be made as set forth in Article II of the Plan.  Upon making distributions under the Plan, in no event shall any of the Debtors, the

Reorganized Debtors, or the Disbursing Agent be liable for the subsequent acts of third parties regarding such distributions.

43.     Transferees of Claims.  Except as otherwise provided in a Final Order of the Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date (provided that an evidence of such transfer has been filed with the Court on or prior to the Distribution Record Date) shall be treated as the respective holders of such Claims for all Plan purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

44.     Setoff and Recoupment.  Pursuant to Section 5.11 of the Plan, the Debtors and the Reorganized Debtors, as applicable, may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature that the Debtors may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable nonbankruptcy law; *provided, however*, that neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver, abandonment, or release by the Debtors or the Reorganized Debtors, as applicable, of any such claims, rights, and Causes of Action that the Debtors or the Reorganized Debtors, as applicable, may have against the holder of such Claim.

45.     No Reserve for Disallowed or Expunged Claims.  No reserves shall be required to be established for Claims (or any portion thereof) that have been disallowed or expunged by order of the Court notwithstanding any appeal, motion for reconsideration, or similar motion or request for relief that may be filed, absent an order of the Court expressly directing the establishment of such a reserve.

46.     <u>Final Fee Applications</u>.  Pursuant to Section 2.2 of the Plan, all Entities seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is sixty (60) days after the Effective Date and (ii) be paid in full in such amounts as are allowed by the Court (A) on the date on which the order of the Court relating to any such Administrative Expense is entered, or as soon thereafter as reasonably practicable, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense and the Debtors, or, if on or after the Effective Date, New AAG.  The Debtors and the Reorganized Debtors, as applicable, are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Court approval.

47.     The Debtors are authorized to pay, in the ordinary course of business and without the need for Court approval, the reasonable fees and expenses, incurred after the Confirmation Date, of the professional persons employed by the Debtors, the Creditors' Committee, and the Retiree Committee in connection with the implementation and consummation of the Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged.

48.     <u>Creditors' Committee Member Fees</u>.  Pursuant to Section 6.23 of the Plan, subject to the occurrence of the Effective Date and notwithstanding Section 2.2 of the Plan, the reasonable fees and out-of-pocket expenses (including professionals fees in an amount to be agreed upon by the Debtors and the Creditors' Committee) of the individual members of the

Creditors' Committee, in each case, incurred in their capacities as members of the Creditors'

Committee, shall, to the extent incurred and unpaid by the Debtors prior to the Effective Date, be

Allowed as Administrative Expenses and paid by the Reorganized Debtors without further Court

approval upon the submission of invoices to the Reorganized Debtors.  The foregoing shall not

include any such fees and out-of-pocket expenses paid pursuant to Section 2.4 of the Plan.

49.    Dissolution of Committees.  Pursuant to Section 12.1 of the Plan,

following the Effective Date, the Retiree Committee shall continue to have standing and a right

to be heard solely with respect to (i) applications for compensation by professionals and requests

for allowance of Administrative Expenses for substantial contribution pursuant to section

503(b)(3)(D) of the Bankruptcy Code, (ii) any adversary proceedings and any appeals (including

appeals of this Confirmation Order, if any, that remain pending as of the Effective Date) to

which the Retiree Committee is a party, (iii) any proofs of Claim filed by the Retiree Committee

until such time as the allowance or disallowance of such proofs of Claim have been finally

determined, including any appeals from an order allowing or disallowing such proofs of Claim,

and (iv) any other matter related to the foregoing or involving the Retiree Committee's rights or

duties under section 1114 of the Bankruptcy Code.  The Retiree Committee shall remain in

existence after the Effective Date and shall not dissolve until the completion of the foregoing

post-Effective Date activities.  The Reorganized Debtors shall continue to compensate the

Retiree Committee's professional advisors for reasonable services and expenses provided in

connection with any of the foregoing post-Effective Date activities and reimburse the Retiree

Committee members for their reasonable expenses incurred in connection therewith.  On the date

that is one hundred eighty (180) days following the Effective Date, the Creditors' Committee

shall dissolve (unless such date is extended with the written consent of the Reorganized Debtors

or by the Court for good cause shown); *provided, however*, that, following the Effective Date, the Creditors' Committee's standing and right to be heard shall be limited to (a) applications for compensation by professionals and requests for allowance of Administrative Expenses for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code, (b) participating in court hearings with respect to motions, adversary proceedings, or other actions (I) seeking enforcement or implementation of the provisions of the Plan or of this Confirmation Order, (II) relating to objections to Claims as set forth in Section 7.1 of the Plan, and (III) as otherwise consented to by the Reorganized Debtors or so ordered by the Court for good cause shown; and (c) any litigation or contested matter to which the Creditors' Committee is a party as of the Effective Date. Notwithstanding the foregoing, following the Effective Date, the Creditors' Committee's membership shall consist of the Allied Pilots Association, the Association of Professional Flight Attendants, Hewlett-Packard Enterprise Services, LLC, Manufacturers and Traders Trust Company, and the Transportation Workers Union of America, and its duties shall be limited to (u) participating in court hearings as provided in Section 12.1 of the Plan; (v) consulting with the Reorganized Debtors with respect to the General Unsecured Claims reconciliation and settlement process conducted by or on behalf of the Reorganized Debtors; (w) consulting with the Reorganized Debtors with respect to appropriate procedures for the settlement of Claims; (x) consulting with the Reorganized Debtors with respect to the maintenance of the Disputed Claims Reserve; (y) monitoring the distributions to the holders of Allowed Claims by the Disbursing Agent under the Plan; and (z) the matters set forth in Section 7.1 of the Plan. For so long as the General Unsecured Claims reconciliation process shall continue and the Creditors' Committee has not been dissolved, the Reorganized Debtors shall make regular reports to the Creditors' Committee as and when the Reorganized Debtors and the

Creditors' Committee may reasonably agree upon. Following the Effective Date, the Creditors'

Committee may retain professionals to assist it in carrying out its duties as limited above on

terms that are reasonably acceptable to the Reorganized Debtors or authorized to be retained by

further order of the Court; *provided further*, that the Creditors' Committee's professional

advisors and experts that have been retained by an order of the Court prior to the Effective Date

shall be deemed reasonably acceptable to the Reorganized Debtors. The Reorganized Debtors

shall continue to compensate the Creditors' Committee's professional advisors for reasonable

services provided in connection with any of the foregoing post-Effective Date activities. In

addition, with respect to each member of the Post-Effective Date Creditors' Committee, the

Reorganized Debtors shall (a) reimburse one (1) representative of each such member for its

respective reasonable out-of-pocket expenses in connection with attending meetings of the Post-

Effective Date Creditors' Committee and (b) compensate its respective professional advisors for

fees not to exceed $100,000 for reasonable services provided in connection with any of the

foregoing post-Effective Date activities that were incurred during the six (6) month period after

the Effective Date, which shall be the sole source of payment from the Debtors or the

Reorganized Debtors for such fees. On the Effective Date, the current and former members of

the Creditors' Committee and the Retiree Committee, and their respective officers, employees,

counsel, advisors, and agents, shall be released and discharged of and from all further authority,

duties, responsibilities, and obligations related to and arising from and in connection with the

Chapter 11 Cases, and the retention or employment of the Creditors' Committee's and the

Retiree Committee's respective attorneys, accountants, and other agents shall terminate, except

to the extent provided above in Section 12.1 of the Plan.

50. <u>Fees and Expenses of Indenture Trustees</u>. The reasonable fees and expenses of the Indenture Trustees shall be paid in accordance with the procedures established in Section 2.4 of the Plan, which, pursuant to the arguments and statements made by the parties and the Court at the Confirmation Hearing and the subsequent agreement of the parties, is hereby amended to provide: "Except as may be otherwise provided in a Final Order of the Court previously entered in the Chapter 11 Cases or as set forth in Schedule "2" hereto, the reasonable prepetition and postpetition fees and expenses of each of the Indenture Trustees, to the extent payable by any of the Debtors pursuant to the terms of the applicable Bond Documents (which includes the reasonable fees and expenses of any counsel and/or other professionals retained by the Indenture Trustees in connection with such duties) shall be paid in Cash on the Effective Date, or as soon thereafter as reasonably practicable, upon submission of documented invoices (in customary form) to the Debtors, the Creditors' Committee, and the U.S. Trustee, subject to a review for reasonableness by the Debtors, the Creditors' Committee, and the U.S. Trustee, without the necessity of making application to the Court. The Indenture Trustees shall provide the Debtors and the Creditors' Committee with an estimate of such fees and expenses no later than thirty (30) days prior to the Confirmation Hearing. Notwithstanding the foregoing, under no circumstances shall any such fees and expenses (including counsel and/or other professionals) include fees and expenses associated with Avoidance Actions. Subject to Section 6.14 hereof, each Indenture Trustee's charging lien, if any, shall be discharged solely upon payment in full of the respective fees and expenses of the Indenture Trustees and termination of the respective Indenture Trustee's duties. Nothing herein shall be deemed to impair, waive, or discharge the Indenture Trustees' respective charging liens, if any, for any fees and expenses not paid by the Debtors or the Reorganized Debtors, as applicable. In addition, upon submission of documented

61

invoices (in customary form) to New AAG and without the necessity of making application to

the Court, New AAG shall pay the reasonable fees and expenses of the Indenture Trustees in

connection with making distributions hereunder.  Any fees and expenses owing under the

Support and Settlement Agreement shall be deemed Allowed Administrative Expenses and shall

be paid in Cash on the Effective Date or as otherwise provided in the Support and Settlement

Agreement to the extent provided in any order of the Bankruptcy Court."

        51.     Special Provision for Governmental Units.  Pursuant to Section 10.11 of

the Plan, solely with respect to "governmental units" (as defined in the Bankruptcy Code),

nothing in the Plan or in this Confirmation Order shall limit or expand the scope of discharge,

release, or injunction to which the Debtors or the Reorganized Debtors are entitled under the

Bankruptcy Code.  Further, nothing in the Plan or in this Confirmation Order, including Sections

10.7 and 10.8 of the Plan, shall discharge, release, enjoin, or otherwise bar (i) any liability of the

Debtors or the Reorganized Debtors to a "governmental unit" arising on or after the

Confirmation Date with respect to events occurring on or after the Confirmation Date, (ii) any

liability to a "governmental unit" that is not a Claim, (iii) any valid right of setoff or recoupment

of a "governmental unit," (iv) any police or regulatory action by a "governmental unit," (v) any

environmental liability to a "governmental unit" that the Debtors, the Reorganized Debtors, any

successors thereto, or any other Person or Entity may have as an owner or operator of real

property after the Effective Date, and (vi) any liability to a "governmental unit" on the part of

any Persons or Entities other than the Debtors or the Reorganized Debtors; *provided, however*,

that nothing in Section 10.11 of the Plan shall affect the Debtors' releases in Section 10.8 of the

Plan, nor shall anything in the Plan or in this Confirmation Order enjoin or otherwise bar any

"governmental unit" from asserting or enforcing, outside the Court, any of the matters described

in clauses (i) through (vi) in this Paragraph. *Neither Agencia Especial de Financiamento Industrial – FINAME, nor Banco Nacional de Desenvolvimento Economico e Social shall be considered 'governmental units' for purposes of this paragraph or Section 10.11 of the Plan.*

52.     Releases, Exculpations, and Injunctions.  The release, exculpation, and injunction provisions contained in the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their chapter 11 estates, and such provisions shall be effective and binding on all persons and entities.

53.     Releases.  As of the Effective Date and subject to the occurrence of the Merger Effective Time, the Debtors release (a) all present and former directors and officers of the Debtors and any other Persons who serve or served as members of management of the Debtors, (b) all post-Commencement Date advisors, consultants, agents, counsel, or other professionals of or to the Debtors, US Airways, the Creditors' Committee, the Retiree Committee, the Indenture Trustees, the Unions, the Search Committee, and the Ad Hoc Committee, and (c) US Airways, the Indenture Trustees, the Unions, all current and former members (in their capacity as members of such committees) of the Creditors' Committee, the Retiree Committee, the Ad Hoc Committee, the Search Committee, Nuveen Asset Management, LLC (and each of its managed funds and accounts on behalf of which it executed the Support and Settlement Agreement) (in its capacity in negotiating the Support and Settlement Agreement and the Plan), and OppenheimerFunds, Inc. (and each of its managed funds and accounts that executed the Support and Settlement Agreement) (in its capacity in negotiating the Support and Settlement Agreement and the Plan), and their respective officers, directors, agents, and employees (including attorneys and other professionals retained by individual members of such committees) (collectively, the "**Released Parties**"), from any and all Causes of Action held by,

assertable on behalf of, or derivative from the Debtors, in any way relating to the Debtors, the

Chapter 11 Cases, the Plan, negotiations regarding or concerning the Plan, the purchase, sale, or

rescission of the purchase or sale of any security of the Debtors, and the ownership,

management, and operation of the Debtors, except for actions found by Final Order to be willful

misconduct (including, but not limited to, conduct that results in a personal profit at the expense

of the Debtors' estates), gross negligence, fraud, malpractice, criminal conduct, unauthorized use

of confidential information that causes damages, breach of fiduciary duty (to the extent

applicable), and *ultra vires* acts, which Causes of Action are based on any act, event, or omission

taking place before the Effective Date; *provided, however,* that the foregoing (i) shall not operate

as a waiver of or release from any Causes of Action arising out of any express contractual

obligation owing by any former director, officer, or employee of the Debtors or any

reimbursement obligation of any former director, officer, or employee with respect to a loan or

advance made by the Debtors to such former director, officer, or employee, and (ii) shall not

limit the liability of any counsel to their respective clients contrary to Rule 1.8(h)(1) of the New

York Rules of Professional Conduct.  The Reorganized Debtors and any newly-formed Entities

that will be continuing the Debtors' business after the Effective Date shall be bound by all the

releases set forth above to the same extent that the Debtors are bound.

54.     Exculpation.  Notwithstanding anything in the Plan to the contrary, and to

the maximum extent permitted by applicable law, neither the Debtors, US Airways, the

Creditors' Committee, the Retiree Committee, the Indenture Trustees, Servicers, the Unions, the

Search Committee, the Ad Hoc Committee, The Garden City Group, Inc. (including as claims

and noticing agent, administrative agent, and as a Disbursing Agent), Nuveen Asset

Management, LLC (and each of its managed funds and accounts on behalf of which it executed

64

the Support and Settlement Agreement), and OppenheimerFunds, Inc. (and each of its managed funds and accounts that executed the Support and Settlement Agreement), nor any of their respective members (current and former, including counsel and other professionals employed by such members in connection with the Chapter 11 Cases), officers, directors, employees, counsel, advisors, professionals, or agents (collectively, the "**Exculpated Parties**"), shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of the Chapter 11 Cases; negotiations regarding or concerning the Plan, the Merger Agreement, the Merger, and any settlement or agreement in the Chapter 11 Cases; the pursuit of confirmation of the Plan and consummation of the Merger; the consummation of the Plan and of the Merger; the offer, issuance, and distribution of any securities issued or to be issued pursuant to the Plan (including pursuant to or in connection with any Postpetition Aircraft Agreement), whether or not such distribution occurs following the Effective Date; or the administration of the Plan or property to be distributed under the Plan, except for actions found by Final Order to be willful misconduct, gross negligence, fraud, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, breach of fiduciary duty (to the extent applicable), and *ultra vires* acts, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Following entry of this Confirmation Order, the Bankruptcy Court shall retain exclusive jurisdiction to consider any and all claims against any of the Exculpated Parties involving or relating to the administration of the Chapter 11 Cases, any rulings, orders, or decisions in the Chapter 11 Cases or any aspects of the Debtors' Chapter 11 Cases, including the decision to commence the Chapter 11 Cases, the development and implementation of the Plan and the Merger Agreement, the decisions and actions taken during

65

the Chapter 11 Cases, and any asserted claims based upon or related to prepetition obligations or equity interests administered in the Chapter 11 Cases, for the purpose of determining whether such claims belong to the Debtors' estates or third parties. In the event it is determined that any such claims belong to third parties, then, subject to any applicable subject matter jurisdiction limitations, the Court shall have exclusive jurisdiction with respect to any such litigation, subject to any determination by the Court to abstain and consider whether such litigation should more appropriately proceed in another forum.

55. <u>Term of Injunctions or Stays</u>. Pursuant to Section 10.4 of the Plan, unless otherwise expressly provided in the Plan or in a Final Order of the Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay. For the avoidance of doubt, the Revised Final Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Establishing Notification Procedures for Substantial Claimholders and Equity Security Holders and Approving Restrictions on Certain Transfers of Interests in the Debtors' Estates, entered by the Court on April 11, 2013 (ECF No. 7591), shall remain in full force and effect beyond the Effective Date.

56. <u>Injunctions</u>.

(a) Pursuant to Section 10.6 of the Plan, except as otherwise expressly provided in the Plan, all Persons or Entities who have held, hold, or may hold Claims or Equity Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other

proceeding of any kind with respect to any such Claim or Equity Interest against the Debtors or the Reorganized Debtors other than actions to enforce the Plan or with respect to the allowance of Claims and Equity Interests, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or the Reorganized Debtors or property of any of the Debtors or the Reorganized Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or the Reorganized Debtors or against property or interests in property of the Debtors or the Reorganized Debtors, or (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors or the Reorganized Debtors or against property or interests in property of the Debtors or the Reorganized Debtors, with respect to any such Claim or Equity Interest.  Such injunction shall extend to any successors of the Debtors and the Reorganized Debtors and their respective property and interests in property.

(b)    Pursuant to Section 10.5 of the Plan, upon entry of this Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

57.    Clayton Plaintiffs.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, (a) Sections 10.2 and 10.3 of the Plan shall not apply to the claims asserted by the plaintiffs (the "**Clayton Plaintiffs**") in the Complaint (without any amendments or modifications thereto) (Adv. Pro. No. 13-01392(SHL), Adv. Pro. ECF No. 1) (the "**Complaint**") in the adversary proceeding in the Court styled *Carolyn Fjord et al. v. AMR Corporation et al.*, Adv. Pro. No. 13-01392(SHL) (the "**Clayton Adversary Proceeding**"), it

67

being understood that Sections 10.2 and 10.3 of the Plan shall apply to any other claims asserted by the Clayton Plaintiffs, and (b) Sections 10.5 and 10.6 of the Plan shall not apply to the Clayton Plaintiffs solely with respect to their pursuit of the Complaint ~~in the Bankruptcy Court~~, and any appeal from any order of the Court entered in the Clayton Adversary Proceeding, but shall apply *to any other action.* ~~in any other court or forum~~.  The Debtors, the Creditors' Committee, the other defendants in the Clayton Adversary Proceeding, and all other parties in interest reserve all of their rights to oppose the Clayton Adversary Proceeding, including all of the claims asserted and relief sought therein.  ***The exemption and immunity in favor of the Clayton Plaintiffs from the discharge, injunction, and release provisions (carve-out) as cited in this paragraph pertains to all proceedings in the Clayton Adversary Proceeding, wherever they might occur, including, but not limited to, any proceeding in the district court by virtue of a motion filed in that court that relates to the Clayton Adversary Proceeding, including any appeals therefrom.  This Court retains jurisdiction to interpret the scope of this paragraph.***

58.    Automatic Stay Stipulations Still in Effect.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, (a)(i) the Stipulation and Agreed Order Resolving Motion of Cantor Fitzgerald & Co., *et al*., for Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1), entered on January 30, 2012 (ECF No. 920) (the "**Cantor Fitzgerald Stipulation and Order**"), (ii) the Agreement Between the Debtors and Cedar & Washington Associates, LLC to Modify the Automatic Stay for a Limited Purpose, entered into February 1, 2012 (ECF No. 990) (the "**Cedar & Washington Agreement**"), and (iii) the Agreement between the Debtors and WTCP Plaintiffs to Modify the Automatic Stay for a Limited Purpose, entered into February 2, 2012 (ECF No. 991) (the "**WTCP Plaintiffs Agreement**"), shall remain in full force and effect notwithstanding confirmation of the Plan

and/or the occurrence of the Effective Date, and the rights and remedies of all parties to the Cantor Fitzgerald Stipulation and Order, the Cedar & Washington Agreement, and the WTCP Plaintiffs Agreement are preserved and retained and shall be unaffected by confirmation of the Plan and/or occurrence of the Effective Date and (b) the Stipulation Resolving Motion of Aeritas, LLC for Entry of Order Pursuant to 11 U.S.C. § 362(d) to Modify the Automatic Stay, entered on July 22, 2013 (ECF No. 9252) (the "**Aeritas Stipulation**") shall remain in full force and effect notwithstanding confirmation of the Plan and/or the occurrence of the Effective Date, and the rights and remedies of all parties to the Aeritas Stipulation are preserved and retained and shall be unaffected by confirmation of the Plan and/or occurrence of the Effective Date.

59.    Hargrove Claim.  Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the tolling provisions set forth in section 108(c) of the Bankruptcy Code shall continue to apply to Hargrove Electrical Company, Inc. ("**Hargrove**") with respect to its lien claim (Proof of Claim No. 9814, the "**Hargrove Claim**") until the later of thirty (30) days after (i) notice of the Effective Date of the Plan and (ii) entry of a Final Order granting or denying the relief sought in its Motion for Relief from Stay (ECF No. 9452). Nothing in this Confirmation Order shall operate to impair the Debtors' right to review and challenge the Hargrove Claim.

60.    Los Angeles County Treasurer and Tax Collector.  Notwithstanding Section 7.7 of the Plan, any Allowed Administrative Expense or Allowed Secured Claim of the Los Angeles County Treasurer and Tax Collector in respect of unpaid taxes shall, if not timely paid, bear interest accrued and at the rate as determined under applicable nonbankruptcy law.

61.    Discharge of Claims and Termination of Equity Interests.  Except as otherwise provided in the Plan or this Confirmation Order, the rights afforded in the Plan and the

payments and distributions to be made under the Plan shall discharge all existing debts and Claims and terminate all Equity Interests of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or property to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as otherwise provided in the Plan *or this confirmation order*, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests (and all representatives, trustees, or agents on behalf of each holder) shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or property, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

62.     Release and Discharge of Debtors.  Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.

63.     Avoidance Actions.  From and after the Effective Date, the Reorganized Debtors waive the right to prosecute any avoidance, equitable subordination, or recovery actions under sections 105, 502(d), 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors.

64.     Retention of Causes of Action/Reservation of Rights.  Except as otherwise provided in Section 10.8 of the Plan, nothing in the Plan or in this Confirmation Order shall be deemed to be a waiver of the relinquishment of any rights or Causes of Action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (a) any and all Claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, the Reorganized Debtors, or their officers, directors, or representatives and (b) for the turnover of any property of the Debtors' estates.  Nothing in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left unimpaired by the Plan.  The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that they had immediately prior to the Commencement Date fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights with respect to any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

65.     <u>Removal of Actions</u>.  The time provided by Bankruptcy Rule 9027 within which the Debtors may file notices of removal of civil actions and proceedings in state and federal courts to which the Debtors are parties is extended until the date that is one (1) year after the date of entry of this Confirmation Order, subject to the rights of the Debtors to seek further extensions of such period.

66.     <u>USAPA Clarification</u>.  Notwithstanding anything in the Plan or this Confirmation Order to the contrary, nothing in the Plan or this Confirmation Order shall release, enjoin, discharge, or waive any rights or obligations of any party (i) under the Memorandum of Understanding Regarding Contingent Collective Bargaining Agreement Among American, US Airways, Inc., APA, and the US Airline Pilots Association ("**USAPA**") (a copy of which is annexed as **Exhibit "A"** to Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 363(b) Approving (I) Memorandum of Understanding Regarding Contingent Collective Bargaining Agreement Among American, US Airways, APA, and USAPA, and (II) Memorandum of Understanding Among American, US Airways, and TWU (ECF No. 8095), which was approved by Order of the Court, dated May 31, 2013 (ECF No. 8509)), or (ii) in connection with any unresolved grievance against US Airways arising under USAPA's collective bargaining agreements.

67.     <u>2009-1, 2009-2, and 2011-2 EETC Transactions</u>.  If U.S. Bank, as Trustee and Security Agent under the Indenture and Aircraft Security Agreement for the American Airlines, Inc. 2009-2 Secured Notes Due 2016, and U.S. Bank, as Trustee with respect to the 2009-1 EETC and 2011-2 EETC Transactions (together, "**U.S. Bank**"), prevails on its appeals (the "**Appeals**") from the order entered on February 1, 2013 by the Court (ECF No. 6521) (the "**Repayment Order**") and the related judgments entered in Adversary Proceeding No. 12-01932

72

(Adv. Pro. ECF No. 19) and Adversary Proceeding No. 12-01946 (Adv. Pro. ECF No. 16), and if, thereafter, the Court (or a court of higher jurisdiction) enters a Final Order determining that the Make-Whole Amount (as defined in the Repayment Order) is owed in connection with the repayment of the 2009-1 EETC Transaction, the 2009-2 Secured Notes Due 2016, and the 2011-2 EETC Transaction, then either the Debtors (if such Final Order becomes a Final Order prior to the Effective Date), or New AAG (if such Final Order becomes a Final Order subsequent to the Effective Date), shall be liable for, and obligated to pay, the Make-Whole Amount in Cash to U.S. Bank.

68.     Nonoccurrence of Effective Date.  In the event the Debtors determine that any of the conditions to the Effective Date set forth in Section 9.2 of the Plan cannot be satisfied or duly waived, then effective immediately upon the Debtors' filing of a notice of failure of the Effective Date in accordance with Section 9.3 of the Plan, (a) the Confirmation Order shall be vacated by the Court, (b) the Plan shall be null and void in all respects, and (c) the administration of the Chapter 11 Cases shall continue.  In the event that the Effective Date does not occur, nothing contained in this Confirmation Order, any order in aid of consummation of the Plan, or the Plan, and no acts taken in preparation for consummation of the Plan shall be (i) deemed to constitute a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or entities, to prejudice in any manner the rights of the Debtors or any person or entity in any further proceedings involving the Debtors or otherwise, or to constitute an admission of any sort by the Debtors or any other persons or entities as to any issue, or (ii) construed as a finding of fact or conclusion of law in respect thereof.

69.     Notice of Entry of Confirmation Order.  On or before the thirtieth (30th) Business Day following the date of entry of this Confirmation Order, the Debtors shall serve

notice of entry of this Confirmation Order (which, in the Debtors' discretion, may be combined with the Notice of the Effective Date) pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and equity interest holders, the United States Trustee, and other parties in interest, by causing notice of entry of the Confirmation Order (the "**Notice of Confirmation**"), to be delivered to such parties by first-class mail, postage prepaid; *provided, however*, that the Rule 2002 Parties (as defined in the Case Management Order) may be served with the Notice of Confirmation by e-mail.  The notice described herein is adequate under the particular circumstances, and no other or further notice is necessary.  The Debtors also shall cause the Notice of Confirmation to be published as promptly as practicable after the entry of this Confirmation Order once in each of *The Wall Street Journal* (Global Edition – North America, Europe, and Asia) and *USA Today* (Monday through Thursday National).

70.     Notice of Effective Date.  Within five (5) Business Days following the occurrence of the Effective Date, the Reorganized Debtors shall file the notice of the occurrence of the Effective Date and shall serve a copy of same on parties in interest in accordance with the Amended Order Pursuant to 11 U.S.C. §§ 105(a) and (d) and Bankruptcy Rules 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures, dated August 8, 2012 (ECF No. 3952).

71.     Binding Effect.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and the Plan Supplement shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

72.     Immediate Effectiveness.  Notwithstanding the possible applicability of Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, and 9014, the terms and provisions of this Confirmation Order shall be immediately effective and enforceable upon its entry.

73.     Jurisdiction.  The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Confirmation Order; *provided, however*, that with respect to matters arising out of or relating to Insurance Plans and any insurance policies and related agreements, documents, or instruments entered into between one or more of the Debtors and AIG on or after the Commencement Date, the Court shall have the maximum legally permitted jurisdiction, but not the exclusive jurisdiction, over such matters.

74.     Severability.  Each term and provision of the Plan, as it may have been altered or interpreted by the Bankruptcy Code in accordance with Section 12.11 of the Plan, is valid and enforceable pursuant to its terms.

75.     Reference.  The failure specifically to include or reference any particular provision of the Plan, the Merger Agreement, or any related agreement in this Confirmation Order shall not diminish or impair the efficacy of such provision or related agreement, it being the intent of the Court that the Plan is confirmed in its entirety, the Plan and such related agreements are approved in their entirety, and the Plan Supplement is incorporated herein by reference.

76.     Retention of Jurisdiction.  The Court may properly, and upon the Effective Date shall, to the extent authorized by law, retain jurisdiction over the matters arising in and under, and related to, the Chapter 11 Cases, as set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

77. <u>Conflicts Between Order and Plan</u>. To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and provisions contained in this Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of the Court.

Dated: New York, New York
October 21, 2013

*/s/ Sean H. Lane*
UNITED STATES BANKRUPTCY JUDGE