Stephen Karotkin
Alfredo R. Pérez
Stephen A. Youngman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                        :

**In re**                              :          **Chapter 11 Case No.**
                                          :

**AMR CORPORATION,** *et al.*,      :          **11-15463 (SHL)**
                                          :

                    **Debtors.**       :          **(Jointly Administered)**
                                          :
-------------------------------------------------------------x

### DEBTORS' OBJECTION TO SUBSTANTIAL CONTRIBUTION APPLICATION OF SIMON MARK TABASHNICK

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

          AMR Corporation and its related debtors, as debtors and reorganized debtors

(collectively, the "**Debtors**" or "**American**"), submit this objection (the "**Objection**") to the

substantial contribution application (ECF No. 11702) (the "**Application**") filed by Simon Mark

Tabashnick ("**Mr. Tabashnick**"), and respectfully represent:

### Preliminary Statement

          1.      By his Application, Mr. Tabashnick requests, pursuant to 11 U.S.C. §

503(b)(3)(D), compensation for services rendered in connection with providing an alleged

substantial contribution in these cases.  These services consist of conducting background

research on the Debtors, petitioning the Office of the United States Trustee for the Southern

District of New York (the "**U.S. Trustee**") for the appointment of a statutory committee of equity security holders, filing a notice of appearance and request for service in these cases, calling and writing letters to, among others, counsel for the Debtors, counsel for the Official Committee of Unsecured Creditors, AMR Investor Relations, and AMR shareholders, and attending omnibus hearings before the Court.

2.     Substantial contribution claims are reserved for extraordinary actions where an applicant provided "an actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders." *See, e.g., In re Granite Partners, L.P.*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997); *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989).  The Court should deny the Application because it is void of any evidence showing that Mr. Tabashnick made a substantial contribution.  Attending omnibus hearings, reviewing documents, writing letters, and requesting appointment of a statutory committee (which was denied) are not substantial contributions.  Furthermore, aside from requesting appointment of a statutory committee, Mr. Tabashnick's purported substantial contribution reflects services duplicative of those undertaken by the Debtors' board, management, and retained professionals.  Finally, Mr. Tabashnick's participation in these cases is presumed to have been performed for his self-interest, and not for the benefit of the Debtors' estates, creditors, and stakeholders.  Accordingly, the Court has more than a sufficient basis to deny the Application.  A proposed order denying the Application is annexed hereto as **Exhibit "A**.**"**

US_ACTIVE\44499745\3\14013.0139

## **Background**

3.      On November 29, 2011 (the "**Commencement Date**"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

4.      On or about December 9, 2011, Mr. Tabashnick mailed a letter to the U.S. Trustee requesting appointment of a statutory committee of equity security holders (the "**Tabashnick 2011 Letter**") (ECF No. 293).[1]

5.      On or about December 20, 2011, counsel for the Debtors sent the U.S. Trustee a letter opposing Mr. Tabashnick's request for an official equity committee (the "**AMR 2011 Letter**").   The AMR 2011 Letter explained that an official equity committee was unnecessary because (i) equity holders were already adequately represented by the Debtors' directors and management; (ii) AMR Corp. had institutional shareholders with sufficient resources and ability to protect their own interests; and (iii) the Bankruptcy Code afforded shareholders (like Mr. Tabashnick) standing to be heard in these cases and, to the extent any efforts "should result in a substantial contribution," shareholders had a right to request compensation under section 503(b)(3)(D) of the Bankruptcy Code.  (AMR 2011 Letter at 1-3.)

6.      On or about January 5, 2012, Mr. Tabashnick sent the U.S. Trustee a response to the AMR 2011 Letter reiterating his desire for an official equity committee (the "**Tabashnick 2012 Letter**").

7.      On or about January 10, 2012, counsel for the Debtors sent the U.S. Trustee a second letter (the "**AMR 2012 Letter**") highlighting that nothing in the Tabashnick

---

[1] A copy of the Tabashnick 2011 Letter, the AMR 2011 Letter, the Tabashnick 2012 Letter, the AMR 2012 Letter, the UST 2012 Letter, and the AMR 2013 Letter (each as defined herein) are collectively annexed hereto as **Exhibit "B."**

2012 Letter changed the conclusion that there was no basis to appoint an official equity committee.

8.      On or about January 17, 2012, the U.S. Trustee sent Mr. Tabashnick a letter declining his request for an official equity committee (the "**UST 2012 Letter**").

9.      On or about January 3, 2013, counsel for the Debtors sent the U.S. Trustee a third letter (the "**AMR 2013 Letter**").  The AMR 2013 Letter stated that the Debtors had made remarkable progress in stabilizing their business.  (AMR 2013 Letter at 1.)  In the interest of full transparency, the Debtors also informed the U.S. Trustee of a change in circumstances concerning the potential economic interest of AMR equity holders due to the Debtors' exploration of strategic alternatives to effectuate a chapter 11 plan.  (*Id.*)

10.      On October 21, 2013, the Court entered the Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Fourth Amended Joint Chapter 11 Plan (the "**Plan**") (ECF Nos. 10361, 10367).  The "Effective Date" of the Plan occurred on December 9, 2013.

11.      On or about February 6, 2014, Mr. Tabashnick submitted the Application to the Court.  On February 10, 2014, the Court filed the Application on the official docket in these cases.  Mr. Tabashnick requests, pursuant to section 503(b)(3)(D) of the Bankruptcy Code, $10,800 for "expenses" listed on Exhibit C to the Application (the "**Tabashnick Exhibit**").  The "expenses" are consulting fees for services rendered by Mark Communications, Network, Ltd. ("**MCN**") in connection with Mr. Tabashnick's alleged substantial contribution to these cases.[2]

---

[2] On information and belief, Mr. Tabashnick's d/b/a is MCN.  It appears that Mr. Tabashnick performed the services listed on the Tabashnick Exhibit.

US_ACTIVE:\44499745\3\14013.0139

## **Objection**

12.　　Section 503(b) provides, in relevant part:

> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> . . .
>
> (3) the *actual, necessary expenses*, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> . . .
>
> (D) a creditor . . . an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; [and]
>
> . . .
>
> (4) reasonable compensation for professional services rendered by an *attorney or an accountant* of an entity whose expense is allowable under subparagraph (A), (B), (C), (D) or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such *attorney or accountant* . . . .

11 U.S.C. § 503(b) (emphasis added)

13.　　Based on the plain language of section 503(b)(3) of the Bankruptcy Code, payment of *actual, necessary expenses*, other than compensation for attorneys and accountants — which is addressed in section 503(b)(4) — requires that an applicant (i) be an entity described in section 503(b)(3)(D) and (ii) have made a "substantial contribution" to a case.  *See* 11 U.S.C. § 503(b)(3)(D); *U.S. Lines, Inc.*, 103 B.R. at 429 (holding section 503(b)(3)(D) permits *actual and necessary expenses* incurred by a party in making a substantial contribution) (emphasis added).  Mr. Tabashnick must prove by a preponderance of the evidence that he made a

US_ACTIVE:\44499745\3\14013.0139

substantial contribution. *In re Bayou Grp., LLC,* 431 B.R. 549, 560 (Bankr. S.D.N.Y. 2010); *Granite Partners,* 213 B.R. at 447.

14. The term "substantial contribution" is not defined in the Bankruptcy Code. Courts in this District hold that an applicant provided a substantial contribution when efforts led to an "actual and demonstrable benefit to the debtor's estate, its creditors, and to the extent relevant, the debtor's shareholders." *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008) (quoting *U.S. Lines, Inc.*, 103 B.R. at 429). Substantial contribution claims are preserved for those "rare occasions" when a party's "involvement truly fosters and enhances the administration of the estate." *In re Alert Holdings Inc.*, 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993); *see also In re Villa Luisa, L.L.C.*, 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006) (holding that "[c]laims for substantial contribution are … narrowly construed and are subject to strict scrutiny.").

15. Courts consider various factors when analyzing a substantial contribution claim, including: (i) whether services benefited a creditor, the estate itself, or all parties in interest; (ii) whether services resulted in a significant and demonstrably positive benefit to the estate; and (iii) whether services were duplicated the efforts by others. *See Trade Creditor Grp. v. L. J. Hooker Corp., Inc. (In re Hooker Invs., Inc.),* 188 B.R. 117, 120 (S.D.N.Y. 1995), *aff'd,* 104 F.3d 349 (2d Cir. 1996); *In re Best Prods. Co., Inc.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994) (same); *In re S&Y Enters., LLC*, 480 B.R. 452, 462 (Bankr. E.D.N.Y. 2012) (same).

16. A substantial contribution claim is not established by extensive participation in a case or based on services duplicated by the debtor's management or professionals already compensated by the estate. *See Bayou Grp., LLC,* 431 B.R. at 561; *Granite Partners*, 213 B.R. at 446; *Dana Corp.,* 390 B.R. at 108. Rather, in the majority of cases allowing substantial contribution claims, Courts found an applicant playing a leadership role that

6

normally would be expected of an estate-compensated professional, but was not performed. *See*, *e.g.*, *Granite Partners*, 213 B.R. at 446–47.

### **Mr. Tabashnick Did Not Make a Substantial Contribution**

17.     Mr. Tabashnick is not entitled to any compensation under section 503(b) of the Bankruptcy Code because he did not make a substantial contribution in these cases.   The Tabashnick Exhibit reveals that Mr. Tabashnick seeks compensation for: (i) conducting background research on the Debtors; (ii) writing letters to AMR Investor Relations, shareholders, the U.S. Trustee (including his request for an official equity committee), the "Creditors Ad hoc Committee Attorney," the "Director of PBGC," the Official Committee of Unsecured Creditors, and "Bankruptcy Attorney;" (iii) filing a notice of appearance and request for service in these cases; (iv) telephone calls with "Shareholder;" and (v) attending omnibus hearings before the Court.[3]  (Tabashnick Exhibit).  Courts deny request for compensation under section 503(b) for these types of services because they are common in chapter 11 cases and presumed to have been performed for self-interest, and not for the benefit of all parties in interest.  *See Bayou Grp., LLC,* 431 B.R. at 561 (holding an applicant cannot recover for services devoted to case administration, monitoring and education); *Granite Partners*, 213 B.R. at 446 (same); *Dana Corp.,* 390 B.R. at 108 (same).

18.     Another reason to deny the Application is that Mr. Tabashnick's efforts provided no actual, necessary or demonstrable benefit to the Debtors' estates, creditors, or shareholders.  For example, Mr. Tabashnick's request for an official equity committee was rejected by the U.S. Trustee less than 2 months after the Commencement Date.  Thus, any letters,

---

[3] In the Application, Mr. Tabashnick also references filing an original complaint with the Securities and Exchange Commission.  (Application at 2.)  The Debtors are unaware of any such complaint or its connection with these cases. Regardless, Mr. Tabashnick does not appear to seek compensation related to this complaint on the Tabashnick Exhibit.

US_ACTIVE:\44499745\3\14013.0139

conferences etc. related to this effort obviously did not benefit the Debtors' estates.   Mr. Tabashnick also did not preserve or create meaningful value for the Debtors' estates or stakeholders.   For example, Mr. Tabashnick was not involved with (i) negotiation and formulation of the Plan and the global settlement of claims embodied in the Plan; (ii) any negotiations or settlements with the Debtors' labor unions; (iii) the Agreement and Plan of Merger among AMR Corp., AMR Merger Sub, Inc., and US Airways Group. Inc., dated February 13, 2013; (iv) the Support and Settlement Agreement, executed on February 13, 2013, as amended on March 8, 2013, among the Debtors and various consenting creditors (collectively, the "**Consenting Creditors**); or (v) any work performed by the Debtors' management to stabilize their business and reorganize.   Thus, Mr. Tabashnick's contention that he somehow increased value for shareholders by writing letters and attending omnibus hearings is, at a minimum duplicative of and, contradicted by the efforts undertaken by the Debtors' board, management, and employees, retained professionals, the Official Committee of Unsecured Creditors, the Consenting Creditors, and US Airways.   In addition, Mr. Tabashnick's suggestion in the Application that the AMR 2011 Letter or the AMR 2013 Letter support his substantial contribution claim is also meritless.   These letters strongly opposed Mr. Tabashnick's request for an official equity committee and simply noted that shareholders had standing in these cases and *could potentially* have a substantial contribution claim in the future (if justified under the Bankruptcy Code).   Accordingly, there is no basis to allow Mr. Tabashnick's requested compensation under section 503(b)(3)(D).

19.     Finally, it is important to note that Mr. Tabashnick's requested compensation is also not allowable under any other sub-part of section 503(b).   Indeed, the only other potential sub-part permitting Mr. Tabashnick to seek compensation is section 503(b)(4). The plain language of this section, however, limits compensation to services rendered by

attorneys and accountants, and not consultants like MCN.[4]  *See* 11 U.S.C. § 503(b)(4)

(reasonable compensation for professional services rendered by an *attorney or an accountant*);

*Granite Partners*, 213 B.R. at 454 (denying compensation to creditor for professional services

rendered by creditor's financial advisor based upon plain language of section 503(b)(4)); *In re*

*Baldwin-United Corp.*, 79 B.R. 321, 341 (Bankr. S.D. Ohio 1987) (holding that language of

section 503(b)(4) limits compensation to attorneys and accountants and denying request for

financial advisor fees).  Based on the foregoing, it is evident that Mr. Tabashnick has failed to

satisfy his burden under section 503(b).  Accordingly, the Court should deny the Application.

### Reservation of Rights

20.     The Debtors reserve the right to assert additional objections to the

Application and the Tabashnick Exhibit at the hearing to consider the Application, including the

reasonableness of any potentially compensable services rendered by Mr. Tabashnick/MCN.

### Notice

21.     Notice of this Objection has been provided to Mr. Tabashnick and parties

in interest in accordance with the Claims Procedures Order and the Amended Order Pursuant to

11 U.S.C. §§ 105(a) and (d) and Bankruptcy Rules 1015(c), 2002(m), and 9007 Implementing

Certain Notice and Case Management Procedures, dated August 8, 2012 (ECF No. 3952).  In

view of the facts and circumstances, such notice is sufficient and no other or further notice need

be provided.

---

[4] MCN is not a law firm and there are no accounting services listed on the Tabashnick Exhibit.

US_ACTIVE\44499745\3\14013.0139

WHEREFORE the Debtors respectfully request that the Court deny the

Application and grant the Debtors such other and further relief as is just.

Dated: New York, New York
June 24, 2014

/s/ Stephen A. Youngman
Stephen Karotkin
Alfredo R. Pérez
Stephen A. Youngman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Reorganized Debtors

US_ACTIVE:\44499745\3\14013.0139

**Exhibit "A"**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                             :

In re                             :                  **Chapter 11 Case No.**
                             :

**AMR CORPORATION, *et al.*,**         :                  **11-15463 (SHL)**
                             :

                    **Debtors.**     :                  **(Jointly Administered)**
                             :
-------------------------------------------------------------x

## ORDER DENYING SUBSTANTIAL CONTRIBUTION
## APPLICATION OF SIMON MARK TABASHNICK

          Upon the application for substantial contribution filed by Simon Mark Tabashnick

(ECF No. 11702) (the "**Application**"), and the Debtors' objection to the Application dated June

24, 2014 (the "**Objection**"); and the Court having jurisdiction to consider the Application and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and notice of the Application and the Objection having been provided, and it appearing

that no other or further notice need be provided; and a hearing having been held to consider the

relief requested in the Application (the "**Hearing**"); and upon the record of the Hearing and all of

the proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefor, it is

          ORDERED that the Application is denied; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York

_____, 2014

_____
United States Bankruptcy Judge

# Exhibit "B"

*SUBMISSION OF*
*CHAMBERS COURT RM 0 Pg 1608*
*HONORABLE JUDGE SEAN H. LANE*

December 9, 2011

To: United States Trustee
33 Whitehall Street 21st Fl.
New York, N.Y. 10004

c/o Elisabetta Gasparini
Brian Masumoto

From: Simon. Mark Tabashnick
10 Leonard St.
New York, N.Y. 10013

Email mcnltd@aol.com
Tel: 646-225 1780

Mark Communications Network, Ltd.
CCR CONF CPCMQT
D.O.D. CAGE CODE 1ZFT7
TPIN # MPIN# updated 09/14/2011

"IN PROPRIA PERSONNA, UNDER THE COMMON LAW OF THE PEOPLE" and the
AMENDED CONTSTITUTION OF THE UNITED STATES TO PETITION THE
GOVERNMENT"

Resident; STATE OF NEW YORK
Citizen:: UNITED STATES OF AMERICA

RE: FORMAL REQUEST TO ESTABLISH A SHAREHOLDER COMMITTEE IN REGARDS TO
AMR CORPORATION
Case No. 11- 15463 (SHL) United States Bankruptcy Court
Southern District of New York

Exhibit A: Evidence of Ownership in AMR common stock from Fidelity Investments

Exhibit B: Letter from Mr. Smarason , former CEO of the FL Group to the AMR Board of Directors

To Whom It May Concern:

I am a professional investor and trader with additional government credentials as a U.S.
Government Central Contractor Registered Partner. Currently, I am a client with a margin account at
Fidelity Brokerage Services, and have specialized,amongst other issues, in the trading and investment
in commercial airline companies. This letter is to inform you of my request for assistance in
establishing a shareholder's committee in conjunction with your recent establishment of an AMR
creditor's committee.

As I witness and notice, the U.S. Trustee, in its capacity, will oversee the proceedings that was
formed in conjunction with the Bankruptcy Court in order to facilitate the filing of the voluntary

Chapter 11 bankruptcy by AMR management and the debtor's legal counsel, I am seeking alternative representation as a shareholder to represent the interests of myself and/or other common shareholders who currently may hold over 300,000,000 (three hundred million) shares of equity.

## I. Guidance and Facts:

Common shareholders and other equity class stakeholders are still considered the legal owners of the AMR Corporation. Nevertheless, under most bankruptcy proceedings, shareholders are considered the last parties to be considered in any payout, settlement or distribution. Therefore, it is important to recognize the common owners, since many are just individuals and families with lifetime investments. They are mostly not corporations or investment banks with outstanding bonds or leases, but may be part holders of mutual funds, pensions, or other investment accounts. Although, the Law may not recognize the owners as creditors, it is important that the Justice Department's U.S. Trustee allow an additional class of unsecured holders to be represented in a motion to conduct a fair inquiry. Owners did not just risk their investments in a frivolous attempt to gain profits at the expense of others, and they deserve to heard and to be understood as to why or how the AMR Corporation should be allowed to restructure in a consistently un -arbitrary manner with the oversight of the Bankruptcy Court of the Southern District of New York.

## II  Historical Evidence as to why shareholder participation is of paramount importance"

The U.S. Trustee or the Court should sanction intervention and participation on behalf of the shareholders and guide this group to join in and respond to the Court's docket and proceedings. This will signal to the world's financial community and exchanges that bankruptcy laws are not just on the legal books to protect one class or a few classes of creditors or bondholders, but that authorities will also consider the equity and assets that are legally owned by common shareholders. Before handing out restructured corporate bylaws and judgments these unsecured creditors should be heard, individually or collectively as a class, to protect their rights and to secure the confidence of the financial markets they participated in as investors.

Exhibit ( B ) is a photo copy of the letter from the former Chief Executive Officer, (CEO) of the FL Group, Mr Hannes Smarason. It was written on September 25, 2007 when the average share price of one common stock of AMR on the New York Stock Exchange was trading at approximately $23.00 per share. Mr Smarason, who represented one of the largest groups of shareholders at that time, (8.25%) makes a strong case for value creation and strategic alternatives in handling ancillary business operations, i.e. the AAdvantage frequent flyer and travel program. He also makes note of what he considered to be a "lack of detailed financial information by the company on its various business units", and how they should be analyzed to increase hidden shareholder value. Please note too, for the record, his insightful comments on shareholder value as it also relates to "fuel prices and intense competition". Needless to say, his warnings were ignored as the AMR Corporation Board of Directors and managers continued to operate various subsidiary businesses, and could not reach firm agreements with certain employee unions concerning outsourcing and pensions, while unwilling to unbundle, and how they configured their subsidiary airline businesses: American Eagle Express Airlines, frequent flyer travel programs, maintenance facilities, flight training centers, 460 new aircraft orders and leases, and real estate or operationally related units at airports. If on November 29, 2011, after announcing its bankruptcy, when one share of stock reached the nominal value of .20 cents per share on the NYSE, how can the Trustee or the Court justify this business as usual.?

As a society and as a Nation of Laws, I am asking the U.S. Trustee to sanction my petition and

plea and to join me, in good faith, as a needed step in the right direction. I am seeking through my representation that a fair, a transparent, and an honorable solution in the final analysis be agreed upon, and that a more equitable agreement be found for today's shareholders. Justice will not be served by summarily allowing a potential  investment bank to print up and issue an initial public offering of  a restructured company called " new AMR stock" by the same debtor company whose policies and management sullied shareholder value.  In turn, the Bankruptcy Court should  not allow a whole class of current investors to be efficiently pushed aside, wiped out, canceled out, or have their hard earned savings and money denigrated even more and lessened further by legal devaluation.

Although, each bankruptcy proceeding is different, today's case involves a debtor with over four billion dollars($4,000,000,000 +) in cash reserves and over 80,000 employees, and these victims too have families who should be protected from gross displacement. It is my sentiment and view that the commercial airline industry is more than just a transportation and travel business. It is a special business with national security implications. After the 9-11-2011 terrorist attacks, our government valued our aviation sector with even more security resources, including establishing elevated screenings and air marshals by the Transportation Security Administration. So too, we can model the next decade of commercial aviation by securing more value for these companies and their employees than what we have witnessed thus far by this carrier's management and board of directors.

If allowed to participate in these proceedings, I will try to negotiate and justify a mature predisposition about operational security and value to all parties, and to their responsibilities inherent in a "for profit restructured organization", so that new evolving standards make better sense and can serve the flying public under the "will of the people". For it is the people, who vote and ultimately underwrite our laws and give value to commercial institutions within our culture as a free society. I stand ready to serve the people and seek your confirmation.

Sincerely,

Mark Tabashnick

| | Search | | Quotes | Customer Service | Open an Account   Log Out |
|---|---|---|---|---|---|
| Accounts & Trade | News & Insights | Research | | Guidance & Retirement | Investment Products |

**Friday, December 9, 2011**

Accounts & Trade   Portfolio   Positions       Help/Glossary

**Active Electronic Trading (X07942715)**

**View**
- Balances
- Positions
- Option Summary
- Performance
- Orders
- History
- Tax Info (Year-to-Date)
- Statements/Records

**Act**
- Trade Stocks/ETFs
- Trade International Stocks
- Trade Mutual Funds
- Trade Options
- Trade Multi-Leg Options
- Trade Fixed Income
- Trade Conditional
- Trade/View Baskets
- Trade Extended Hours
- Currency Exchange
- Transfer Money/Shares
- Withdraw Money
- Update Accounts/Features
- Pay Bills

**Analyze**
- Portfolio Analysis
- Bond & CD Analysis NEW
- Hypothetical Trade

# View Lots

Account: Active Electronic Trading *Simon MARK Tabashnick*

Exchange Rates ⌐ | As of 12/09/2011, 3:12 AM ET   | A A A

| Symbol | Description | Quantity | Closing Mkt Value | Total Cost Basis | Unrealized Gain/Loss | Unrealized Gain/Loss % | Type | |
|---|---|---|---|---|---|---|---|---|
| AMR | AMR CORP DEL | 1,800.0000 | 1,388.00 | 13,371.90 | -12,003.90 | -89.77% | Margin | Trade News Research |

**Open Lots**    **Closed Lots**

**Short-Term**    Avg cost basis/share: $7.43

The information below is a summary of your open tax lots as of the prior business day's close.

| Date Acquired | Quantity | Cost Basis per Share | Closing Mkt Value | Cost Basis | Unrealized Gain/Loss | Unrealized Gain/Loss % | Holding Period |
|---|---|---|---|---|---|---|---|
| 02/22/2011 | 900.0000 | 6.99 | 684.00 | 6,289.95 | -5,605.95 | -89.13% | Short |
| 01/19/2011 | 900.0000 | 7.87 | 684.00 | 7,081.95 | -6,397.95 | -90.34% | Short |

** In the case of a short sale, total cost ordinarily equals the cost of the asset (including commissions, if any) when purchased for delivery when the sale is closed or covered. However, as cost basis is unknown until the date the short sale is closed or covered, the value Fidelity reports in the Cost Basis column is equal to the price at which the short sale was transacted (total sales proceeds). When calculating the unrealized gain/loss, Fidelity adds the negative value reported in the Closing Mkt Value Column to the positive value reported in the Cost Basis column

• NFS will report certain cost basis and holding period information to you and to the IRS on your annual Form 1099-B as required or allowed by law, but such information may not reflect adjustments required for your tax reporting purposes. Taxpayers should verify such information when calculating reportable gain or loss. Fidelity and NFS specifically disclaim any liability arising out of a customer's use of, or any tax position taken in reliance upon such information. Unless otherwise specified, NFS determines cost basis at the time of sale based on the average cost-single category (ACSC) method for open-end mutual funds and based on the first-in, first-out (FIFO) method for all other securities. Consult your tax advisor for further information.

If securities held in your account are restricted for sale under your company's stock plan rules, Fidelity will use the FIFO method for lots available for sale

For holdings purchased in a currency other than USD, the cost basis provided in USD was determined by converting the foreign currency cost into USD based on exchange rates on the trade date of purchase. For tax reporting purposes, you may be required to determine your actual USD cost basis based on exchange rates on the settlement date of purchase. Consult a tax advisor for further information.

Fidelity's cost basis information system has a cumulative lifetime limit on how much activity it can track for each individual security position in an account. For this purpose, each buy, sell, dividend, wash sale, disallowed loss, stock split, stock merger, etc. is an event. For some customers, this limit can be reached with approximately 1500 events. Cost basis information for events beyond that limit will usually show as "not available" or "unknown". In addition, any cost basis information shown may be outdated due to events occurring after the limit is exceeded. Once the limit is reached, all cost basis information for the affected position will need to be tracked and updated by the investor. Of course, investors will continue to receive confirms and account statements reflecting current transactions in their accounts. If you are uncertain if you have reached, or are near the lifetime limit on a particular security position in your account, contact your Fidelity representative for more details

For certain foreign security holdings, Unrealized USD Gain/Loss is broken down into market gain/loss and currency fluctuation components for informational purposes only. The market gain/loss and currency fluctuation components should not be used for tax reporting purposes. For details regarding how market gain/loss and currency fluctuation were calculated, please refer to Help/Glossary


**Fidelity** INVESTMENTS

© 1998 - 2011 FMR LLC
All rights reserved
Terms of Use | Privacy | Security | Site Map

FL Group
Kristjan Kristjansson
Director Corp. Communications
Tel: +354 591 4400 / 354 899 9352

New York
Michael Buckley / Stan Neve
Tel: +1 212 333-3810

London
Anita Scott / Elena Shalneva
Tel: +44 20 7404 5959
FULL TEXT OF SEPTEMBER LETTER FROM FL GROUP TO BOARD OF DIRECTORS OF
AMR/AMERICAN AIRLINES
The Board of Directors
AMR Corporation
4333 Amon Carter Boulevard
Fort Worth, TX 76155

Attention:  Gerald J. Arpey
Chairman, President and CEO AMR Corporation/American Airlines

VIA EMAIL AND OVERNIGHT DELIVERY
Reykjavik, September 25, 2007

Ladies and Gentlemen,
    As you are undoubtedly aware, FL Group is one of the largest
shareholders of AMR Corporation, currently holding 8.25% of the company's
outstanding common shares. FL Group is also a highly experienced player in
the airline industry, with a strong track record of value creation in the
sector through its investments in easyJet, Sterling Airlines, Icelandair
and Finnair. We generally hesitate from approaching the board of directors
regarding value creation strategies, preferring to speak directly with
management. However, subsequent to our conversations with members of the
AMR management team, we are not aware of any specific plans that management
may have to enhance shareholder value. This, when taken with the company's
recent disappointing and surprising earnings guidance, has meant that we
now feel compelled to write to you directly.
    A Time to Act
    AMR's share price has dropped some 50% since January 19th 2007. Given
the close to $5 billion this has cost AMR shareholders, we believe serious
consideration of strategic alternatives is long overdue. Instead of blaming
the company's poor share price performance on external factors such as
"fuel prices" and "intense competition," we believe that it is now time for
AMR to act. We therefore urge AMR's management and Board of Directors to
consider all options to enhance shareholder value and outline a clear path
forward for value creation.
    The Problem
    AMR's structure as a fully integrated legacy carrier means that the
profitability of its individual business units is not easily understood by
investors and analysts. AMR holds different businesses that are less
cyclical and have more favorable growth prospects than a pure aviation
play, but its share price remains saddled with a blended valuation multiple
that fails to capture those growth prospects. The fact that AMR does not
disclose detailed financial information on its various business units
results in difficulty capturing individual unit value and likely
exacerbates the pure play valuation discount.
    AMR is an industry leader in terms of size and scale, but given the
factors outlined above, and the difficult industry environment, we believe
the company will find it very challenging to outperform its competitors

over the long term. We strongly urge AMR's management to aggressively evaluate strategic alternatives to generate shareholder value.

The Opportunity

Significant opportunities for value creation at AMR exist that are both practical and actionable. In short, FL Group believes significant value potential can be unlocked by unbundling AMR's ancillary business units, whose revenues are currently being valued at mainline airline multiples instead of multiples that correspond with their particular business lines. In our view, the separation of AMR's business units, such as the AAdvantage Frequent Flyer program, is potentially more than just a zero-sum game. Unbundling can eliminate a valuation discount, especially in complex corporate structures such as legacy carriers, and can also lead to greater management focus and improved operational performance. In this specific case, we believe the AAdvantage Frequent Flyer program is the AMR business unit with the most value upside, although other AMR units could also unlock value.

The frequent flyer/loyalty industry is attractive due to strong profitability, stable cash flow and growth rate potential. AAdvantage's size and market position provides an excellent platform for future growth and industry leadership. Our analysis suggests a value upside of over $4 billion from unbundling AAdvantage. Given the limited financial information available to us on AAdvantage, the valuation is based on conservative assumptions taking into account available performance metrics from other frequent flyer programs. In addition, the concept of unbundling has already been proven to generate value. One need only examine Aeroplan, the loyalty program spun off by Air Canada's parent ACE, to find a successful example. Since 2004, Aeroplan has grown rapidly and analysts expect the company to grow revenue by almost 100% from 2004 to 2008. We recognize there are differences between the U.S. and Canadian airline sectors; nevertheless, we believe the case for enhanced value is clear and has already been proven. Since its IPO in June 2005, Aeroplan's stock performance has significantly outperformed the North American airline sector.

While we urge AMR to commit to a strategic review to monetize AAdvantage's value for shareholders, we happen to believe that AMR should keep effective control of AAdvantage in the short-to-medium term and that an outright sale is less advantageous at the present time. AAdvantage could instead be separately listed with a limited free float to be distributed to a mix of original and new shareholders. This type of multi-step spin-off would provide operational benefits to AMR and allow the company to fine-tune the intra-company relationship. Such a gradual process would also have the benefit of allowing AMR to capture the full value of AAdvantage as investors become more familiar with a pure "frequent flyer/loyalty" play.

Regardless of any difference of opinion over these mechanics, we should be able to agree that AMR's stock is undervalued and poorly reflects the success and growth potential of AAdvantage; and that the Board, management and shareholders should look for ways to capture that hidden value.

A Call to Action

Any realistic assessment of a spin-off, as described above, must acknowledge that there are risks involved. But leadership is about evaluating those risks and making prudent choices. A separated AAdvantage will impact AMR's performance; however, we believe that the ongoing partnership could be properly managed and that the net effect would substantially increase shareholder value. As stated above our conservative analysis indicates that the unbundling of AAdvantage could lead to value creation of more than $4 billion.

We strongly encourage you to look at the opportunity to unlock shareholder value by spinning-off AAdvantage as outlined above. At an absolute minimum, better disclosure of AAdvantage's financial results and a robust review of strategic alternatives will help convince shareholders that you view value creation as the key objective. We are more than

prepared to assist AMR in any way to achieve that end.
　　We look forward to your prompt response demonstrating a serious evaluation
of these matters.

　　Yours sincerely,

　　Hannes Smarason
　　CEO
　　FL Group

**SOURCE FL Group /PR Newswire United Business Media**

MARK TABASHNICK
0 LEONARD ST.
New York, N.Y. 10013

RECEIVED

DEC 1 2 2011

U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
ONE BOWLING GREEN
NEW YORK, N.Y. 10004-1408

40 CHAMBERS / COURTROOM 701
HONORABLE JUDGE SEAN H. LANE

Purple
Heart
USA
44

37 USA

VIA ELECTRONIC MAIL

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Harvey R. Miller**
+1 212 310-8500
harvey.miller@weil.com

December 20, 2011

Tracy Hope Davis, Esq.
United States Trustee
Office of the United States Trustee
Southern District of New York
33 Whitehall Street
New York, New York 10004

Re: *In re AMR Corp., et al.*, ("**Debtors**") Chapter 11 Case No. 11-15463 (SHL)
    (Request for Appointment of Equity Committee)

Dear Ms. Davis:

Reference is made to the letter dated December 9, 2011 addressed to your Office from Mark Tabashnick (the "**Tabashnick Letter**"), an asserted professional investor and trader in commercial airline companies who claims to own 1,800 shares of AMR Corp.'s common stock. The Tabashnick Letter requests that you appoint a statutory committee of equity security holders and include Tabashnick as a member to that committee. After consideration of the contents of the Tabashnick Letter, the Debtors submit that the request should be denied.

The Tabashnick Letter fails to establish that appointment of a statutory committee of equity security holders is either necessary or appropriate in the Debtors' chapter 11 cases. The Tabashnick Letter fails in all respects to establish that there is a reasonable likelihood that shareholders have any significant economic interest in the Debtors. Moreover, Tabashnick, as do all shareholders, has standing to be heard in these chapter 11 cases pursuant to section 1109(b) of title 11 of the United States Code (the "**Bankruptcy Code**") to the extent he desires to do so. To the extent his efforts should result in a substantial contribution to the administration and consummation of the chapter 11 cases, they may be reimbursed pursuant to section 503(b)(3(D) of the Bankruptcy Code.

The appointment of committees of equity security holders in chapter 11 cases is the "rare exception," rather than the rule. *In re Williams Commc'ns Group, Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002). The moving party bears the burden of establishing that

> (i) there is a substantial likelihood that [equity holders] will receive a meaningful distribution in the case under a strict application of the

absolute priority rule, and (ii) [equity holders] are unable to represent their
interests in the bankruptcy case without an official committee.

*Id.* Tabashnick has not established either of these requirements but instead seeks the formation of a
committee "to represent myself and/or other common shareholders" without more. Tabashnick Letter at
2.

The facts establish that AMR Corp.'s reported liabilities exceed its reported assets, an accepted standard
of insolvency. AMR Corp., the only Debtor entity whose shares of common stock are publicly traded,
had consolidated reported assets and liabilities of approximately $24,719,000,000 and $29,552,000,000,
respectively, as of September 30, 2011. *See* Affidavit of Isabella D. Goren Pursuant to Local
Bankruptcy Rule 1007-2 at 13 (ECF No. 4). AMR Corp. has a negative stockholder equity of $4.8
billion. Further, the chapter 11 cases were filed less than one month ago, and it remains far too early to
determine whether the equity holders will receive any meaningful distribution. The Debtors have not
yet proposed a plan of reorganization or even filed schedules of their assets and liabilities. A deadline to
file proofs of claim has not yet been established, and it remains unclear what demands will be made on
the Debtors. Though much of this information is forthcoming, the degree of uncertainty remains too
high to justifiably conclude that the equity holders will receive a meaningful distribution in the chapter
11 cases. Indeed, the likelihood is to the contrary.

Tabashnick has also failed to show that equity holders are inadequately represented. Although AMR
Corp. has a large number of public shareholders, not every case with public shareholders warrants an
equity committee. *See Williams Commcn's*, 281 B.R. at 223 (explaining that "while there is a large
number of shareholders, not every case with such a large number will require an official equity
committee"). The interests of equity security holders are adequately represented by the directors and
management of the Debtors. They have a fiduciary responsibility to each Debtor entity that
encompasses the interests of equity holders. Further, AMR Corp.'s equity interest holders include
numerous institutional investors who possess the resources and ability to protect their interests without
the formation of a committee. The activities of an equity committee would not result in appreciably
more representation for equity holders and the cost thereof would have to be imposed on the Debtors'
creditors, to their prejudice.

As demonstrated in other cases, the existence of additional statutory committees inevitably leads to
major conflicts and a litigious environment that is counterproductive to an orderly and efficient
administration of the Debtors' cases. The costs and expenses that would be associated with the
appointment of a statutory committee of equity interest holders at this time are unnecessary and
unwarranted.

As stated, based upon all of the pertinent facts and circumstances, Tabashnick's request should be denied.

Respectfully,

Harvey R. Miller

cc:    Mark Tabashnick (via E-Mail)
       Brian S. Masumoto, Esq. (via E-Mail)
       Gary F. Kennedy, Esq. (via E-Mail)
       Kathryn Koorenny, Esq. (via E-Mail)
       John Wm. Butler, Jr., Esq. (via E-Mail)
       Jay M. Goffman, Esq. (via E-Mail)
       Stephen Karotkin, Esq. (via E-Mail)



**U.S. Department of Justice**

Office of the United States Trustee
*Southern District of New York*

*33 Whitehall Street*　　　　　　*(212) 510-0500*
*21ʰ Floor*　　　　　　　　　*Fax: (212) 668-2255*
*New York, New York 10004*

January 5, 2012

**BY EMAIL**

Harvey R. Miller　　　　　　John Wm. Butler, Jr., Esq.
Stephen Karotkin, Esq.　　　　Skadden Arps Slate Meagher & Flom LLP
Weil, Gotshal & Manges LLP　　155 North Wacker Drive
767 Fifth Avenue　　　　　　Suite 2700
New York, New York 10153　　Chicago, IL 60606-1720

　　　　Re:　　<u>In re AMR Corporation. et al.</u>
　　　　　　　Case No. 11-15463 (SHL)

Dear Messrs:

　　　Attached is a letter dated January 5, 2012 from Mr. Simon Mark Tabashnick responding to the opposition to the appointment of an official committee of equity security holders (the "Response") submitted by Debtors' Counsel and by the Official Committee of Unsecured Creditors' Counsel. We ask for your client's view on the Response.

　　　We would appreciate your comments on or before the close of business on Thursday, January 12, 2012. Please feel free to email or telecopy your response.

　　　Thank you for your attention to this matter.

　　　　　　　　　Very truly yours,
　　　　　　　　　TRACY HOPE DAVIS
　　　　　　　　　UNITED STATES TRUSTEE

　　　　　　By:　　<u>/s/ Brian S. Masumoto</u>
　　　　　　　　　Brian S. Masumoto
　　　　　　　　　Trial Attorney

January 5, 2012

RECEIVED
US TRUSTEE NEW YORK

2012 JAN -5 PM 1: 23

To:   Tracy Hope Davis
      United States Trustee
      33 Whitehall Street   21st Fl.
      New York, N.Y. 10004

      c/o  Elisabetta G.Gasparini
           Brian S. Masumoto

From:  Simon. Mark Tabashnick
       10 Leonard St.  #3 SW
       New York, N.Y. 10013
       Email mcnltd@aol.com
       Tel: 646-225 1780

       Mark Communications Network, Ltd.
       CONF  CPCMQT
       D.O.D.  CAGE CODE 1ZFT7
       TPIN #  MPIN#  updated 09/14/2011

RE:  FORMAL REQUEST TO ESTABLISH A STATUTORY SHAREHOLDER
COMMITTEE IN REGARDS TO AMR CORPORATION
Case No. 11- 15463 (SHL) United States Bankruptcy Court, Region 2/
Southern District of New York

"IN PROPRIA PERSONNA"


      Dear Ms. Davis:


      According to the U.S. Department of Justice and the current bankruptcy program,
you have various and specific duties as the Trustee. Within that protocol, the U.S.
Trustee, in one of its capacities, set forth in 28 U.S.C. *586  will oversee the selection of
various statutory committees, formed in conjunction with Bankruptcy Court and hearings,
pursuant to 11 U.S.C. *1102. In order to facilitate the filing of the voluntary Chapter 11
Bankruptcy by the AMR Company, a State of Delaware Corporation, the case has
commenced at the U.S. Bankruptcy Court For The Southern District of New York. The
Honorable Sean H. Lane is the presiding Judge. In the original submission and filing of
December 20, 2011, I requested alternative representation as a current shareholder to
represent the interests of myself and/or perhaps other common shareholders who
currently may hold over 300,000,000  (three hundred million) shares of equity.

Reference is made now to the Letter and Documents submitted on December 9, 2011 to your Office, herein known as the *"Tabashnick Letter"* referenced by Harvey R. Miller, Counsel for the Debtors and the Debtors in Possession on December 20, 2011 submitted to your office via electronic email. As a shareholder, I welcome the acknowledgment that *"Tabashnick as do all shareholders, has standing to be heard in these chapter 11 cases pursuant to section 1109(b) of title 11 of the United States Code to the extent that he desires to do so."*

In order for my contribution for the administration of this chapter 11 case to be of a substantial nature, pursuant to section 503(b)(3(D of the Bankruptcy Code, rather than frivolous or inconsequential, I mean to establish that there is a reasonable likelihood that shareholders have a significant interest in the Debtors.

Reference was cited to " In re Williams Commc"ns Group, Inc., 281 B.R. 216,223 (Bankr. SD.N.Y..2002) in that: "there is a substantial likelihood that [equity holders] will receive a meaningful distribution in the case under strict application of the absolute priority rule, and (ii) [equity holders] are unable to represent their interests in the bankruptcy case without an official committee.

It is my belief that equity holders are not materially or adequately represented by the directors and management of the Debtors. And while it may be the "rare exception", in the cited prior bankruptcy case not to sanction an official statutory committee, this citation was based on a less complex filing. Here, the directors and management made a hasty and perhaps unwarranted decision on November 29, 2011 to seek the Court's protection. They defaulted in their fiduciary responsibilities by these reasons:

!) Filing this large complex bankruptcy litigation without any discussion, debate, or vote by and for the shareholders is unprecedented. While shareholders have limited rights under their powers to communicate in formulating policy decisions, these rights must be respected at the least; especially the decision to default on debts and obligations.

2) On or about July 20, 2011, directors and management entered into legal contracts to purchase or lease approximately 460 aircraft, including specific engine and design component packages from both the Boeing Company and the European Airbus Consortium. This large purchase was perhaps part of the consolidated liabilities of $29,552,000,000 as of September 30, 2011, as attributed in the affidavit by financial officer, I.D. Goren, (ECF N0.4). With due respect, a large purchase order signals financial stability to the markets. Shareholders expect transparency which builds trust, and even with restructuring shareholders expect candor.

3) Historically, commercial airline companies have reorganized and restructured in a variety of ways. Often, before making a Federal Case of their business affairs and thereby choosing to involve our Federal Government in litigious bankruptcy proceedings, an attempt is made to cure problems and seek practical remedies. This includes serious documented attempts to seek merger partners with complimentary strategic assets in

order to protect both parties from further liabilities. ( recent examples: *United Airlines and Continental, Delta Airlines and Northwest, Spirit Airlines and Air Tran, U.S. Airways and America West Airlines)*. Secondly, all corporations look at their revenue streams to determine those areas of profitability versus the areas of stress and underperformance.

One of the first attempts to recognize this underperformanc was by the FL Group, a former institutional shareholder with 8.25% of common shares as on September 25, 2007. In a letter to the AMR Board of Directors , ( Exhibit B, Letter of Hannes Smarason,),here a major investor highlighted how profitable units of airline companies can be "unbundled", and that their ancillary business units once separated, can increase operational performance, eliminate a valuation discount and cause greater management focus. This causes stock values to increase and shareholders benefit from enlightened operational efficiency. There are perhaps hundreds of individual entities ranging from flight and maintenance programs to real estate worldwide that could have been unbundled.  The Debtors in Possession often bring up the issue that labor, pension ,and fuel costs that have risen over time, but the issue is not why costs rise, its about how to manage the problems and the immediate remedies at hand.. This is the reality of the disconnect between shareholders who purchase share ownership in airlines and expect efficient operations.


4) One of the overriding issues here is that counsel for the Debtors is basing their denial of my motion primarily on the likelihood that any distribution based upon the absolute priority rule will be *un meaningful* to shareholders. So, even if the Debtors in Possession present a plan of reorganization with both asset and liability schedules, a high degree of uncertainty exists as to any distribution whatsoever. This is precisely why shareholders, both individual or institutional, need some degree of protection that the Court can mandate with the addition of a <u>Statutory Committee of Shareholders</u>. Counsel has only shown thus far in Court, that their goal is primarily about an "orderly and efficient administration" Current shareholders are not given representation in Court documents, because the *absolute priority rule* prevents any discussion of meaningful distribution until hundreds, perhaps thousands of creditors through their individual counsellors are  heard.

5) The U S Trustee has already sanctioned the formation of the <u>Official Statutory Committee of Unsecured Creditors.</u> Counsel for this group, has also given their opinion, and this too for them is primarily about distribution or the lack of any meaningful distribution under the *absolute priority rule*.(Exb:The Skadden Letter) There are many diverse interests in this group already, and thus it surprised me that counsel did not seek opinions from each individual organization's lawyer within this Committee, Both Counsels seek to deny the shareholder/owners of statutory committee representation based on administrative issues.

6) On January 5, 2011, the New York Stock Exchange has signaled that it will delist or suspend trading in AMR, and that its shares will be listed under another symbol and traded on the OTC BB   (over the counter bulletin board).The NYSE has concluded that

technical issues like shares trading under $1.00 (one dollar) make it unsuitable for the continued listing. No action to cure, thus far by the Debtors, has now caused the common stock to sink below $0.30 ( thirty cents a share) on trading at the New York Stock Exchange.

7. The Debtors in Possession have concluded a recent agreement with their past financial advisors since 2006, The Rothschild Company. The new agreement seeks court approval with payouts of approx $400,000 as a down payment, $200,000 per month, and an additional 15,000,000 (fifteen million dollars), plus additional fees ( see court docket #473). Before filing for Chapter 11, there was no attempt by this group to structure a reverse split of shares, or other technical re-capitulation of precious capital to increase current shareholder value.

8. All things considered, the Debtor's financial arrangements would be better off served on preserving capital and funding a committee of shareholders. If the new plan as stated is to raise capital again, current shareholders should have a say in value creation. When a final hearing on this financial arrangement is made before the Bankruptcy Court on January 27, 2012, lawyers should be available to represent shareholders who may object to this motion. A new committee is the right vehicle to move forward !

9. The purpose of an *Official Committee of Shareholders* is not necessarily to wait in line for distribution, but it is to be recognized for the historical and original idea of share ownership in making contributions. As a society, we have lost the true meaning, definition, and understanding of ownership when it comes to investing. Today, most large institutions buy share ownership with the sole purpose of increasing the value of their holdings, but only if the price rises. If the price sours and falls, they are likely to just sell out and start over. ( Exb 3 : major/ Nasdaq Shareholders of AMR)
All owners need an organized active committee to represent their interests and to make a contribution based upon merit.

10. The changing nature of air travel since the deregulation of airline companies has spawned the need to think more deliberatively about competition. One of the models that is currently in use makes a strong case for what I refer to as the *"Travel Agency Model."* Here, companies brand their routes with international alliances ( One World Alliance, Star Alliance, Sky Team Alliance ) and devise new internet protocols with www. and url codes, customer relationship programming, additional domains, links, and reward programs tied to credit card companies, hotels, rental cars, restaurants, retail outlets and frequent flyer mileage programs. As mentioned, these ancillary aspects are not the core business of maintaining aircraft, employing professional pilots and stewards, mechanics, and airport counter personnel. Indeed, AMR has been in and out of Court, (AMR vs Orbitz,) prosecuting; in an attempt to preserve the "marketing agency" status quo system with other discount online distributors as well. Shareholders can bring common sense to this situation by

sorting out the differences between core aviation business and travel agency functions.

11. After the events of September 11, 2011, the Federal Government in conjunction with the Department of Homeland Security and the Transportation Safety Administration set up new protocols at airports and on aircraft. Indeed, this is a realization that air travel is a national security issue. Therefore, we cannot continue to have airlines filing for Federal Bankruptcy protection because the costs of aviation fuel is too high, competition too stiff, travel demand for business and leisure too slow, or if and when new carriers want routes and hubs in the original cornerstone legacy network. If the administration of bankruptcy proceedings is to develop meaningful insights from this particular case, then you should not deny shareholders the due process of statutory standing before Court.

Ms. Davis, the courage to recognize merit and place responsibilities is at a crossroads here, and for shareholders the stakes are very meaningful. An *Official Statutory Committee of Shareholders* will be a voice at the restructuring table, organized for action in preserving free market trading for this security. Your affirmative vote will signal confidence on "Wall Street" and bring in the dawn of value preservation. If I have made any immediate contribution to this case, it will be to set the bar one level up and make way for a professional law firm to represent the shareholders. I realize my limitations in initiating this motion and in filing Pro Se, and I ask your empathy and understanding. I am humbled by your duty to the U.S. Trustee Program, and ask that you sense my humility as we both seek justice under the law for all the people.

With due respect,

Simon Mark Tabashnick
Shareholder of Record AMR Corporation

EXHIBIT 3

US TRUSTEES NEW YORK
RECEIVED
2012 JAN -5 PM 1: 23



**Top 10 Stocks for 2012**

These 10 stocks are set to crush the market in 2012. In fact, Warren Buffett just bought 9.3 million shares of one of these stocks. Click here for more on these stocks.

Home | My NASDAQ | Tools | Mobile | Company List | ETFs | Real-Time Quotes

Register | Log In    Site Search

| Quotes & Research | Market Activity | News & Commentary | Investing Insight | My NASDAQ |

Jan 4, 2012 | 2:30PM    US Market Open    NASDAQ 2647.77 -8.95 -0.04% | DJIA 12411.5 -14.12 -0.11% | S&P 1276.8 -0.25 -0.02%

Home > Quotes > AMR > Ownership & Insider Trades

## AMR Corporation (AMR) Institutional Ownership

Share

**Symbol List Views**
- FlashQuotes
- InfoQuotes

    AMR

**Stock Details**
- Real-Time Quotes
- Summary Quotes
- After Hours Quotes
- Pre-market Quotes
- Historical Quotes
- Options Chain

**CHARTS**
- Basic Charts
- Interactive Charts

**COMPANY NEWS**
- Company Headlines
- Press Releases
- Sentiment

**STOCK ANALYSIS**
- Analyst Research
- Guru Analysis
- Stock Report
- Competitors
- Stock Consultant
- Stock Comparison

**FUNDAMENTALS**
- Call Transcripts
- Annual Report
- Financials
- Revenue/EPS
- SEC Filings
- Short Interest
- Dividend History

**HOLDINGS**
- Ownership Summary
- Institutional Holdings
- Insiders (SEC Form 4)

### Company Details

| Type | Value |
|---|---|
| Total Shares Out Standing (millions): | 335 |
| Market Capitalization ($ millions): | 359 |
| Institutional Ownership | 62.02% |
| Price (as of 09/30/2011) | .29 |

**Institutional Ownership**

### Ownership Summary

| Ownership Analysis | # of Holders | Shares |
|---|---|---|
| Total Shares Held | 209 | 207,905,077 |
| New Positions: | 27 | 2,331,389 |
| Increased Positions: | 78 | 12,993,315 |
| Decreased Positions: | 97 | 29,015,391 |
| Holders With Activity: | 175 | 47,008,706 |
| Sold Out Positions: | 37 | 6,536,261 |

Institutional Holdings information for AMR is filed by major institutions on form 13-F with the Securities and Exchange Commission. Learn more about the information on this page in the help area for Institutional Holdings.

**Total Shares** | New | Increased | Decreased | Activity | Sold Out

**209 Institutional Holders**
**207,905,077 Total Shares Held**

Click on the column header links to resort ascending (^) or descending (v).

| Owner Name | Date | Shares Held | Change (Shares) | Change (%) | Value (in 1,000s) v |
|---|---|---|---|---|---|
| PRIMECAP MANAGEMENT CO/CA/ | 09/30/2011 | 41,222,953 | (352,400) | (0.85) | 11,790 |
| ICC CAPITAL MANAGEMENT INC/ | 09/30/2011 | 25,102,124 | 3,851,510 | 18.12 | 7,179 |
| CAPITAL WORLD INVESTORS | 09/30/2011 | 24,800,000 | (600,000) | (2.36) | 7,093 |
| VANGUARD GROUP INC | 09/30/2011 | 15,621,074 | 216,147 | 1.40 | 4,468 |
| MARATHON ASSET MANAGEMENT LLP | 09/30/2011 | 11,997,780 | (12,347) | (0.1) | 3,431 |
| BARCLAYS GLOBAL INVESTORS UK HOLDINGS LTD | 09/30/2011 | 7,283,792 | (133,957) | (1.81) | 2,063 |
| STATE STREET CORP | 09/30/2011 | 4,414,118 | (215,663) | (4.66) | 1,262 |
| APPALOOSA MANAGEMENT LP | 09/30/2011 | 4,281,293 | (1,343,811) | (23.89) | 1,224 |
| MORGAN STANLEY | 09/30/2011 | 4,218,410 | 1,095,693 | 35.13 | 1,206 |
| PAR CAPITAL MANAGEMENT INC | 09/30/2011 | 4,203,673 | (11,110,018) | (72.55) | 1,202 |
| BARCLAYS PLC | 09/30/2011 | 3,855,273 | 2,397,340 | 164.43 | 1,103 |
| LANE DOUGLAS C & ASSOCIATES INC | 09/30/2011 | 3,686,435 | 514,575 | 16.22 | 1,054 |
| CAPITAL RESEARCH GLOBAL INVESTORS | 09/30/2011 | 3,200,000 | 0 | 0.00 | 915 |
| BLACKROCK FUND ADVISORS | 09/30/2011 | 2,587,352 | (324,765) | (11.15) | 740 |
| CREDIT SUISSE AG/ | 09/30/2011 | 2,243,912 | 1,194,479 | 113.82 | 642 |
| WS MANAGEMENT LLLP | 09/30/2011 | 2,216,879 | 0 | 0.00 | 634 |



E*TRADE
GET STARTED

TRADE FREE FOR 60 DAYS PLUS GET UP TO $500

GET STARTED
E*TRADE
E*TRADE Securities LLC



| BANK OF NEW YORK MELLON CORP | 09/30/2011 | 2,185,817 | (76,231) | (3.46) | 625 |
|---|---|---|---|---|---|
| FMR LLC | 09/30/2011 | 2,086,600 | 500 | .02 | 597 |
| SUSQUEHANNA INTERNATIONAL GROUP, LLP | 09/30/2011 | 2,014,062 | 1,246,450 | 162.36 | 576 |
| UBS AG | 09/30/2011 | 2,012,460 | (171,782) | (7.87) | 576 |
| STRS OHIO | 09/30/2011 | 1,798,300 | 0 | 0.00 | 514 |
| CITIGROUP INC | 09/30/2011 | 1,717,040 | (885,348) | (34.02) | 491 |
| CITADEL ADVISORS LLC | 09/30/2011 | 1,623,088 | 476,742 | 41.56 | 464 |
| HBK INVESTMENTS L P | 09/30/2011 | 1,585,200 | (261,600) | (14.16) | 453 |
| ROYAL BANK OF CANADA | 09/30/2011 | 1,419,292 | (8,832) | (0.62) | 406 |

<< first   < previous   1  2  3  4  5  6  7  8  9   next >   last >>



Dividend Paying ETF Access America's Largest Dividend Paying Stocks in 1 ETF-Learn More. www.NasdaqTree.com/Dividend-Paying

Todays Top 3 Penny Stocks What are today's top 3 hot stocks? Top 3 penny stocks gaining fast theStockMarketWatch.com/pennystocks

Best 2012 Dividend Stocks "Urgent Buy" on these six stocks. Get their names in our free report. wallstreetdaily.com/free-report

AdChoices ▷

**NASDAQ OMX**

About NASDAQ OMX

NASDAQ OMX Technology

Nasdaq OMX Listing Center

Investor Relations

Public Policy Advocacy

**NASDAQ.com**

Join Our Community

Sitemap

Advertise With Us

Link to Us

•| Feedback

**Stay Connected**



❅ The latest from @NASDAQ:

Unusual volume: $AVEO up 3.68% from previous close bit.ly/beltnrD #nasdaq
32 minutes ago · reply · retweet · favorite

Browse The Financial Glossary:   123   A  B  C  D  E  F  G  H  I  J  K  L  M  N  O  P  Q  R  S  T  U  V  W  X  Y  Z

Search the site:   NASDAQ.com only ⊞   enter keywords   🔍

Company List | Copyright | Disclaimer | Trademarks | Privacy Statements | Contact

Annual Reports | Careers | Custom Logo Ticker | NASDAQ Toolbar

⊞ Qfolio for the iPhone | Qfolio HD for the iPad | Qfolio for the Blackberry Playbook Tablet

EXHIBIT 3


**EVERY CHART TELLS A STORY.**
**GOOD TRADERS KNOW WHEN TO LISTEN.**
Learn how to spot trends in our technical analysis seminars.

charles SCHWAB

Home | My NASDAQ | Tools | Mobile | Company List | ETFs | Real-Time Quotes     Register |   Log in   📘 📧 🔗 Site Search

| Quotes & Research | Market Activity | News & Commentary | Investing Insight | My NASDAQ |

Jan 4, 2012 | 2:31PM    US Market Open    NASDAQ 2648.04 -0.68 ▼ -0.03%   DJIA 12412.75  15.37 ▲ 0.12%  | S&P 1276.93  -0.13 ▼ -0.01%

Home > Quotes > AMR > Ownership & Insider Trades

## AMR Corporation (AMR) Institutional Ownership ®

Share |

AMR

### Stock Details

| Real-Time Quotes |
| Summary Quotes |
| After Hours Quotes |
| Pre-market Quotes |
| Historical Quotes |
| Options Chain |

**CHARTS**

Basic Charts

Interactive Charts

**COMPANY NEWS**

Company Headlines

Press Releases

Sentiment

**STOCK ANALYSIS**

Analyst Research

Guru Analysis

Stock Report

Competitors

Stock Consultant

Stock Comparison

**FUNDAMENTALS**

Call Transcripts

Annual Report

Financials

Revenue/EPS

SEC Filings

Short Interest

Dividend History

**HOLDINGS**

Ownership Summary

Institutional Holdings

Insiders
(SEC Form 4)

### Company Details

**Institutional Ownership**

| Type | Value |
| --- | --- |
| Total Shares Out Standing (millions): | 335 |
| Market Capitalization ($ millions): | $59 |
| Institutional Ownership: | 62.02% |
| Price (as of 09/30/2011) | .28 |

### Ownership Summary

| Ownership Analysis | # of Holders | Shares |
| --- | --- | --- |
| Total Shares Held: | 209 | 207,906,077 |
| New Positions: | 27 | 2,331,363 |
| Increased Positions: | 78 | 17,993,315 |
| Decreased Positions: | 97 | 29,015,391 |
| Holders With Activity: | 175 | 47,008,706 |
| Sold Out Positions: | 37 | 6,536,281 |

Institutional Holdings information for AMR is filed by major institutions on form 13-F with the Securities and Exchange Commission. Learn more about the information on this page in the help area for Institutional Holdings.

| Total Shares | New | Increased | Decreased | Activity | Sold Out |

**209 Institutional Holders**
**207,906,077 Total Shares Held**

Click on the column header links to resort ascending (^) or descending (v).

| Owner Name | Date | Shared Held | Change (Shares) | Change (%) | Value(in 1,000's) |
| --- | --- | --- | --- | --- | --- |
| CHESAPEAKE ASSET MANAGEMENT LLC | 09/30/2011 | 1,371,900 | 362,175 | 35.87 | 392 |
| TIAA CREF INVESTMENT MANAGEMENT LLC | 09/30/2011 | 1,338,723 | (98,865) | (6.88) | 383 |
| DEKABANK DEUTSCHE GIROZENTRALE | 09/30/2011 | 1,305,856 | 1,302,080 | 33,765.55 | 373 |
| HODGES CAPITAL MANAGEMENT INC | 09/30/2011 | 1,270,460 | 3,450 | .27 | 363 |
| CALIFORNIA PUBLIC EMPLOYEES RETIREMENT SYSTEM | 09/30/2011 | 1,240,210 | 103,293 | 9.09 | 355 |
| DEUTSCHE BANK AG\ | 09/30/2011 | 1,237,664 | 204,568 | 19.80 | 354 |
| BNP PARIBAS ARBITRAGE, SA | 09/30/2011 | 1,228,214 | 411,675 | 50.42 | 351 |
| NORTHERN TRUST CORP | 09/30/2011 | 1,186,350 | 46,511 | 4.08 | 339 |
| DONALD SMITH & CO., INC. | 09/30/2011 | 1,043,970 | 1,043,970 | New | 298 |
| GEODE CAPITAL MANAGEMENT LLC | 09/30/2011 | 1,018,078 | 12,472 | 1.24 | 291 |
| HIGHBRIDGE CAPITAL MANAGEMENT LLC | 09/30/2011 | 1,000,000 | 689,191 | 221.74 | 286 |
| GABELLI FUNDS LLC | 09/30/2011 | 849,000 | (8,000) | (0.93) | 243 |
| DIAMOND CAPITAL MANAGEMENT INC (DE) | 09/30/2011 | 694,200 | 0 | 0.00 | 199 |
| GOLDMAN SACHS GROUP INC | 09/30/2011 | 681,983 | 80,379 | 13.36 | 195 |
| STATE BOARD OF ADMINISTRATION OF FLORIDA RETIREMENT SYSTEM | 09/30/2011 | 639,045 | (28,101) | (4.21) | 183 |


E*TRADE
GET STARTED
TRADE FREE FOR 60 DAYS
PLUS GET UP TO $500
GET STARTED
E*TRADE
E*TRADE Securities LLC

EXHIBIT 3

| LORD, ABBETT & CO, LLC | 09/30/2011 | 593,357 | (330,720) | (35.79) | 170 |
| CALIFORNIA STATE TEACHERS RETIREMENT SYSTEM | 09/30/2011 | 573,414 | 5,150 | 91 | 164 |
| BLACKROCK INVESTMENT MANAGEMENT LLC | 09/30/2011 | 572,511 | (7,297) | (1.26) | 164 |
| JEFFERIES GROUP INC /DE/ | 09/30/2011 | 510,454 | 506,800 | 13,869.73 | 146 |
| PARAMETRIC PORTFOLIO ASSOCIATES | 09/30/2011 | 504,235 | 20,204 | 4.17 | 144 |
| ALETHEIA RESEARCH & MANAGEMENT, INC. | 09/30/2011 | 496,878 | (97,461) | (16.4) | 142 |
| KNIGHTSBRIDGE ASSET MANAGEMENT, LLC | 09/30/2011 | 492,000 | 0 | 0.00 | 141 |
| SCHWAB CHARLES INVESTMENT MANAGEMENT INC | 09/30/2011 | 484,753 | (22,419) | (4.42) | 139 |
| BANK OF AMERICA CORP /DE/ | 09/30/2011 | 480,218 | (668,678) | (58.2) | 137 |
| STATE OF WISCONSIN INVESTMENT BOARD | 09/30/2011 | 384,051 | (6,440) | (1.65) | 110 |

<< first   < previous   2   3   4   5   6   7   8   9   next >   last >>

[ × ]

Dividend Paying ETF Dividend ETFs w/o Financial Stocks. Read The Case for Ex Financials Now www.WisdomTree.com/Dividend-ETF

Hedge Fund Directory Stay Ahead Of The Market With Barclay's Hedge Fund Database. www.BarclayHedge.com

Best 2012 Dividend Stocks "Urgent Buy" on these six stocks. Get their names in our free report. wallstreetdaily.com/free-report

AdChoices ▷

NASDAQ OMX

About NASDAQ OMX

NASDAQ OMX Technology

Nasdaq OMX Listing Center

Investor Relations

Public Policy Advocacy

NASDAQ.com

Join Our Community

Sitemap

Advertise With Us

Link to Us

Feedback

Stay Connected

   

The latest from @NASDAQ:

Unusual volume: $AVEO up 3.68% from previous close http://t.co/6u5ZLie #nasdaq
34 minutes ago · reply · retweet · favorite

Browse The Financial Glossary:   123   A   B   C   D   E   F   G   H   I   J   K   L   M   N   O   P   Q   R   S   T   U   V   W   X   Y   Z

Search the site:   NASDAQ.com only    enter keywords    🔍

Company List | Copyright | Disclaimer | Trademarks | Privacy Statements | Contact

Annual Reports | Careers | Custom Logo Ticker | NASDAQ Toolbar

Qfolio for the iPhone | Qfolio HD for the iPad | Qfolio for the Blackberry Playbook Tablet



# #1 Buffett Stock
# to Buy Now

This is one of the only stocks we know of that you can buy today and hold for the rest of your life. Warren Buffett recently bought 9.3 million shares of this stock. You should follow his lead.
Click here for the details. → → → → →

Home | My NASDAQ | Tools | Mobile | Company List | ETFs | Real-Time Quotes          Register |   Log in   Site Search

| Quotes & Research | Market Activity | News & Commentary | Investing Insight | My NASDAQ |

Jan 4, 2012     US Market Closed  NASDAQ 2646.34 -0.38 ▼ -0.01%  DJIA 12419.16  21.8 ▲ 0.18%  S&P 1277.3  0.24 ▲ 0.02%

Home > Quotes > AMR > Ownership & Insider Trades

## AMR Corporation (AMR) Institutional Ownership ⓘ
Share |

Symbol List Views

FlashQuotes

InfoQuotes

AMR

**Stock Details**

Real-Time Quotes

Summary Quotes

After Hours Quotes

Pre-market Quotes

Historical Quotes

Options Chain

**CHARTS**

Basic Charts

Interactive Charts

**COMPANY NEWS**

Company Headlines

Press Releases

Sentiment

**STOCK ANALYSIS**

Analyst Research

Guru Analysis

Stock Report

Competitors

Stock Consultant

Stock Comparison

**FUNDAMENTALS**

Call Transcripts

Annual Report

Financials

Revenue/EPS

SEC Filings

Short Interest

Dividend History

**HOLDINGS**

Ownership Summary

Institutional Holdings

Insiders
(SEC Form 4)

### Company Details

| Type | Value |
|---|---|
| Total Shares Out Standing (millions): | 335 |
| Market Capitalization ($ millions): | $59 |
| Institutional Ownership | 62.02% |
| Price (as of 09/30/2011) | .29 |

*Institutional Ownership* (pie chart)

### Ownership Summary

| Ownership Analysis | # of Holders | Shares |
|---|---|---|
| Total Shares Held: | 209 | 207,905,077 |
| New Positions: | 27 | 2,331,383 |
| Increased Positions: | 78 | 17,993,315 |
| Decreased Positions: | 97 | 29,015,391 |
| Holders With Activity: | 175 | 47,008,706 |
| Sold Out Positions: | 37 | 6,536,261 |

Institutional Holdings information for AMR is filed by major institutions on form 13-F with the Securities and Exchange Commission. Learn more about the information on this page in the help area for Institutional Holdings.

| **Total Shares** | New | Increased | Decreased | Activity | Sold Out |

**209 Institutional Holders**
**207,905,674 Total Shares Held**

Click on the column header links to resort ascending (^) or descending (v).

| Owner Name | Date | Shared Held | Change (Shares) | Change (%) | Value(in 1,000s)▼ |
|---|---|---|---|---|---|
| EVERCORE TRUST COMPANY, N.A. | 09/30/2011 | 382,788 | (28,000) | (6.82) | 109 |
| MACQUARIE GROUP LTD | 09/30/2011 | 353,684 | 194,016 | 121.51 | 101 |
| PEAK6 INVESTMENTS, L.P. | 09/30/2011 | 346,693 | 106,155 | 44.24 | 99 |
| TIMBER HILL LLC | 09/30/2011 | 338,207 | 96,134 | 39.71 | 97 |
| RHUMBLINE ADVISERS | 09/30/2011 | 329,748 | 1,405 | 43 | 94 |
| GUGGENHEIM CAPITAL LLC | 09/30/2011 | 309,250 | (56,514) | (15.45) | 88 |
| COMMONWEALTH BANK OF AUSTRALIA | 09/30/2011 | 308,877 | 0 | 0.00 | 88 |
| FOREST INVESTMENT MANAGEMENT LLC | 06/30/2011 | 304,100 | 304,100 | New | 87 |
| ARISTEIA CAPITAL LLC | 09/30/2011 | 273,920 | (1,412,845) | (83.76) | 78 |
| PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF COLORADO | 09/30/2011 | 260,500 | 0 | 0.00 | 75 |
| HSBC HOLDINGS PLC | 09/30/2011 | 247,446 | 51,408 | 26.22 | 71 |
| MONETTA FINANCIAL SERVICES INC | 09/30/2011 | 245,000 | (80,000) | (24.62) | 70 |
| PRICE T ROWE ASSOCIATES INC /MD/ | 09/30/2011 | 226,200 | 25,100 | 12.48 | 65 |
| GATEWAY INVESTMENT ADVISERS LLC | 09/30/2011 | 224,332 | (981) | (0.44) | 64 |
| COMMERZBANK AKTIENGESELLSCHAFT /FI | 09/30/2011 | 193,700 | (36,440) | (15.83) | 55 |
| ALLIANCEBERNSTEIN L.P. | 09/30/2011 | 193,527 | (113,300) | (36.93) | 55 |
| INVESCO LTD | 09/30/2011 | 191,000 | (5,361) | (2.73) | 55 |



E*TRADE

TRADE FREE FOR 60 DAYS PLUS GET UP TO $500

E*TRADE
E*TRADE Securities LLC



| | | | | | |
|---|---|---|---|---|---|
| PARAMETRICA MANAGEMENT LTD | 09/30/2011 | 189,749 | 189,749 | New | 54 |
| BLACKROCK GROUP LTD | 09/30/2011 | 184,324 | 79,740 | 76.25 | 53 |
| IBM RETIREMENT FUND | 09/30/2011 | 171,696 | 251 | .15 | 49 |
| PRUDENTIAL PLC | 09/30/2011 | 171,201 | 0 | 0.00 | 49 |
| AQR CAPITAL MANAGEMENT LLC | 09/30/2011 | 158,600 | (437,470) | (73.39) | 45 |
| MILLENNIUM MANAGEMENT LLC | 09/30/2011 | 156,207 | 83,405 | 111.50 | 45 |
| ING INVESTMENT MANAGEMENT CO | 09/30/2011 | 156,160 | 4,900 | 3.24 | 45 |
| PUBLIC EMPLOYEES RETIREMENT SYSTEM OF OHIO | 09/30/2011 | 148,751 | (87,292) | (36.96) | <3 |

<< first | < previous | 3 | 4 | 5 | 6 | 7 | 8 | 9 | next > | last >>

[ × ]

Hedge Fund Directory Stay Ahead Of The Market With Barclay's Hedge Fund Database www.BarclayHedge.com

LaeRec Income Fund Losses Contingent fee attorneys for LaeRec income fund investors 800-382-7969 www.SecuritiesArbitration.com

10 Stocks to Hold Forever Buy them, forget about them, and never sell them. www.StreetAuthority.com

AdChoices ▷

## NASDAQ OMX

About NASDAQ OMX

NASDAQ OMX Technology

Nasdaq OMX Listing Center

Investor Relations

Public Policy Advocacy

## NASDAQ.com

Join Our Community

Sitemap

Advertise With Us

Link to Us

•] Feedback

## Stay Connected

   

The latest from @NASDAQ:

Unusual volume: $AVEO up 3.68% from previous close http://t.co/6U52I.fe #nasdaq
2 hours ago · reply · retweet · favorite

Browse The Financial Glossary: 123 A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

Search the site: NASDAQ.com only   [ enter keywords      🔍 ]

Company List | Copyright | Disclaimer | Trademarks | Privacy Statements | Contact

Annual Reports | Careers | Custom Logo Ticker | NASDAQ Toolbar

Qfolio for the iPhone | Qfolio HD for the iPad | Qfolio for the Blackberry Playbook Tablet

http://www.nasdaq.com/symbol/amr/institutional-holdings?page=3

1/4/2012

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Harvey R. Miller**
+1 212 310-8500
Harvey.miller@weil.com

VIA ELECTRONIC MAIL

January 10, 2012

Brian Masumoto, Esq.
Trial Attorney
Office of the United States Trustee
Southern District of New York
33 Whitehall Street
New York, New York 10004

Re: *In re AMR Corp., et al.,* Case No. 11-15463 (SHL)

Dear Mr. Masumoto:

On behalf of AMR Corporation, et al. (the "**Debtors**"), we respond to the letter dated January 5, 2012 from Mr. Simon Mark Tabashnick addressed to Tracy Hope Davis (the "**Tabashnick Letter II**") referred to in your letter of January 5, 2012. The Tabashnick Letter II purports to respond to our letter of December 20, 2011 that was addressed to Tracy Hope Davis, Esq., as United States Trustee, urging that the request for the appointment of an equity committee made by Mr. Tabashnick in connection with the Debtors' cases be denied. Our letter of December 20, 2011 set forth cogent and valid reasons why the appointment of an equity committee would be inappropriate and not warranted in the Debtors' cases. Each of those reasons are incorporated herein, as if fully set forth.

The Tabashnick Letter II does not add any facts that would in any way change the conclusion that there is no basis or warrant for the appointment of an equity committee in the Debtors' cases. Mr. Tabashnick does not establish any basis upon which it could be concluded that there would be a substantial likelihood that equity holders will receive a meaningful distribution in the Debtors' cases. The Tabashnick Letter II sets out 11 numbered paragraphs which purport to set forth reasons why an equity committee should be appointed in these cases. The primary reason urged by Mr. Tabashnick is that the commencement of the chapter 11 cases "without any discussion, debate or vote by and for the shareholders is unprecedented." The contention of Mr. Tabashnick is wholly erroneous.

The Supreme Court has held that "local law" determines who has authority to act for a corporation in connection with the commencement of a bankruptcy case. Price v. Gurney, 324 US 100 (1945). The Debtors are Delaware corporations and pursuant to Del, Gen. Cor. Law §141(a), the affairs of the debtors are to be managed by or under the direction of their respective boards of directors. Consequently, the decision to commence a chapter 11 case is vested in the board of directors and it is the board of directors of each of the Debtors' that authorized the commencement of the chapter 11 cases.

The other reasons set forth in the Tabashnick Letter II relating to the appointment of the Statutory Committee of General Unsecured Creditors, the Airbus/Boeing transaction and the nature of the airline industry all, as stated, are not relevant or pertinent to the establishment of a basis for the appointment of an equity committee in these cases. Accordingly, on behalf of the Debtors, it is respectfully urged that the request of Mr. Tabashnick for the appointment of an equity committee be denied.

Respectfully,

Harvey R. Miller

cc: Tracy Hope Davis, Esq. (via email)
Mark Tabashnick (via email)
Gary F. Kennedy, Esq. (via email)
Kathryn Koorenny, Esq. (via email)
John Wm. Butler, Jr., Esq. (via email)
Jay M. Goffman, Esq. (via email)
Stephen Karotkin, Esq. (via email)
Alfredo Perez, Esq. (via email)
Michele Meises, Esq. (via email)

HRM/jp



**U.S. Department of Justice**

Office of the United States Trustee
*Southern District of New York*

*33 Whitehall Street*
*21ⁿ Floor*               *(212) 510-0500*
*New York, New York 10004*    *Fax: (212) 668-2255*

January 17, 2012

**BY REGULAR MAIL AND EMAIL**

Simon. Mark Tabashnick
10 Leonard Street
#3 SW
New York, New York 10013

    Re:     <u>In re AMR Corporation. et al.</u>
                Case No. 11-15463 (SHL)

Dear Mr. Tabashnick:

       The United States Trustee received your letter dated December 12, 2011 (the "December 12 Letter") requesting the appointment of an official committee of equity security holders (the "Official Equity Committee") in this case. As you know, the United States Trustee has received correspondence from counsel to the debtors (the "Debtors") and counsel to the Official Committee of Unsecured Creditors (the "Committee") regarding your request for the appointment of an Official Equity Committee (the "Initial Responses"). The United States Trustee also received your letter dated January 5, 2012 (the "January 5 Response") in reply to the Initial Responses and in furtherance of your request. Finally the United States Trustee has received the Debtors' and the Committee's further reply to the January 5 Response (the "Supplemental Responses").

       After careful consideration of the facts of these cases, the December 12 Letter, the Initial Responses, the January 5 Response and the Supplemental Responses, the United States Trustee declines to form an Official Equity Committee at this time.

                     Very truly yours,

                     TRACY HOPE DAVIS
                     UNITED STATES TRUSTEE

        By:    *Brian S Masumoto*
                     Brian S. Masumoto
                     Trial Attorney

cc:    Harvey R. Miller, Esq. (By email)
        John Wm. Butler, Jr., Esq. (By email)

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

Harvey R. Miller
+1 (212) 310-8500
harvey.miller@weil.com

VIA ELECTRONIC MAIL

January 3, 2013

Brian S. Masumoto, Esq.
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
Southern District of New York
33 Whitehall Street
New York, New York 10004

Re: In re AMR Corporation, et al. - Case No. 11-15463 (SHL)

Dear Mr. Masumoto:

Reference is made to our letters dated December 20, 2011 and January 10, 2012, respectively. Those letters were responsive to inquiries made by your office as to the request made by a shareholder of record of AMR Corporation (Mr. Simon Mark Tabashnick) for the appointment of an equity committee in the pending chapter 11 cases. Reference also is made to related correspondence concerning the shareholder request from Skadden Arps Slate Meagher & Flom LLP, as attorneys for the Official Committee of Unsecured Creditors of AMR, et al. (UCC). On behalf of the Debtors, our letters opposed the appointment of an equity committee on the primary ground that there did not appear to be a substantial likelihood that [equity holders of AMR] would receive any meaningful distribution in the chapter 11 cases under a strict application of the absolute priority rule. In addition, we noted that equity holders appeared able to adequately represent their interests in the chapter 11 cases without an official statutory committee.

Since January of 2012, the Debtors have made remarkable progress in stabilizing their businesses and improving their prospects. As you know from media reports, the Debtors, the UCC and others are currently in the process of exploring strategic alternatives to effectuate the reorganization of the Debtors, as contemplated by the provisions of chapter 11 of the Bankruptcy Code. In that connection, it appears that the value of the Debtors has significantly appreciated. Depending upon the ultimate strategic alternative adopted and pursued, there exists a reasonable possibility that there may be value for AMR equity holders consistent with the absolute priority rule.

Accordingly, and in the interests of full transparency, we have concluded that it is appropriate to advise you of the change in circumstances concerning the potential economic interests of AMR equity holders.

US_ACTIVE:\44160007\1\14013.0139

**Weil, Gotshal & Manges LLP**

Should you have any questions concerning the above, please do not hesitate to contact us.

Respectfully,

Harvey R. Miller

HRM/jp

cc: *Via Electronic Mail*
    John W. Butler, Esq.
    Tracy Hope Davis, Esq.
    Jay M. Goffman, Esq.
    Stephen Karotkin, Esq.
    Gary F. Kennedy, Esq.
    Kathryn L. Koorenny, Esq.
    Alfredo Perez, Esq.
    Mr. Simon Mark Tabashnick