1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    CASE NO. 11-15463-shl

4    - - - - - - - - - - - - - - x

5    In re:                              Chapter 11

6                                        Case No. 11-15463

7    AMR CORPORATION, ET AL,

8

9           Debtors.

10   - - - - - - - - - - - - - - x

11

12                        United States Bankruptcy Court

13                        One Bowling Green

14                        New York, New York

15

16   B E F O R E:

17   HON. SEAN H. LANE

18   U.S. BANKRUPTCY JUDGE

19

20   Re Doc. #11941 (Modified Bench Ruling) Motion to Allow Late

21   Filed Claim to be entered as timely Filed by Gary Bryant

22

23   Re Doc. #11840 (Modified Bench Ruling) Objection of Debtors

24   Pursuant to 11 U.S.C. Section 502(b) and Fed. R. Bankr. P. 3007

25   to Proof of Claim Nos. 13478, 13788 and 13865 filed by Lawrence

```
 1   M. Meadows

 2

 3   A P P E A R A N C E S :

 4

 5   WEIL, GOTHAL & MANGES LLP

 6        Attorneys for AMR Corporation, et al, Reorganized Debtor

 7        200 Crescent Court

 8        Suite 300

 9        Dallas, TX  75201

10   BY:  STEPHEN A. YOUNGMAN, ESQ.

11        767 Fifth Avenue

12        New York, NY  10153

13   BY:  KEVIN H. BOSTEL, ESQ.

14

15   GARY BRYANT, PRO SE

16

17   VANDERBERG & FELIU

18        Attorneys for Lawrence M. Meadows

19        60 East 42nd Street, 51st floor

20        New York, NY 10165

21   BY:   VINCENT J. ROLDAN, VANDERBERG & FELIU

22

23

24   MODIFIED BENCH RULING AS TO BOTH (I) GARY BRYANT AND

25   (II) LAWRENCE M. MEADOWS
```

1   (I)  GARY BRYANT

2          Before the Court is the motion of Gary Bryant for an

3   order deeming his proof of claim timely filed pursuant to Rule

4   9006(b)(1) of the Federal Rules of Bankruptcy Procedure and

5   Section 105(a) of the Bankruptcy Code.  His motion is at ECF

6   No. 11941.  He asserts that he did not receive adequate notice

7   of the bar date setting the deadline for filing claims in the

8   above Chapter 11 cases, and therefore, the Court should deem

9   his proof of claim timely filed.

10         In the alternative, he maintains that he meets the

11  excusable neglect standard to permit a late filed claim.  For

12  the reasons that follow, the motion will be denied.

13         The background of this case is fairly simple.

14  Debtors filed the voluntary petition seeking relief under

15  Chapter 11 of the Bankruptcy Code on November 29, 2011.  On

16  March 30, 2012, the debtors filed the motion seeking to

17  establish a deadline for filing proofs of claim.  ECF No. 2086.

18         On May 4, 2012, the Court entered the bar date order,

19  which established July 16, 2012, as the bar date in the

20  debtors' cases.  ECF No. 2609.

21         On May 18, 2012, the debtors' claims and noticing

22  agent served, by first class mail, the notice of deadlines for

23  filing proofs of claim, with an attached proof of claim dated

24  May 23, 2012.  ECF 2888.

25         On May 18, 2012, the bar date notice was mailed to

1    Mr. Bryant at 17484 Southwest 34th Court, Miramar, Florida

2    33029-5588, and it was not returned as undeliverable.  ECF No.

3    3215.

4         On May 31, 2012, the debtors also had the bar date

5    notice published in ten publications, including the Wall Street

6    Journal, the New York Times, USA Today, and the Miami Herald.

7    ECF No. 3215.

8         On October 21, 2013, the bankruptcy court entered the

9    confirmation order in these bankruptcy cases.  The effective

10   date of the plan was December 9, 2013.  See ECF 11402.

11        Almost ten months after the bar date on May 8, 2013,

12   Mr. Bryant filed suit against AMR in the Southern District of

13   Florida, alleging that he was forced to resign from his

14   employment with AMR on September 18, 2011, due to race

15   discrimination and based on retaliation in violation of Title

16   VII.  Bryant v. American Airlines, 2013-cv-21667, Dkt. 30.

17   After being served with Mr. Bryant's complaint, AMR filed a

18   notice of suggestion of bankruptcy with the Florida court.  Id.

19   Pursuant to 11 U.S.C. Section 362(a), the Florida court stayed

20   those proceedings.

21        Mr. Bryant moved to reopen the case in early January

22   2014.  2013-cv-2166, Dkt. 13.  In March of 2014, the Florida

23   court entered AMR's motion to dismiss, agreeing with AMR that

24   Mr. Bryant's claims were discharged and enjoined by the plan

25   and confirmation order, pursuant to Section 1141(d) of the

1   Bankruptcy Code.  Id. at Dkt. 30.  On April 8, 2014, the

2   Florida court denied Mr. Bryant's motion to reopen the case and

3   set aside the dismissal.  Id. at Dkt. 32.

4       Mr. Bryant maintains again that he did not receive

5   adequate notice because he was not listed as an unsecured

6   creditor.  He also relies on the fact that he was engaged in

7   mediation with AMR as an excuse for filing a late claim.

8       The standard of review has been well plowed by the

9   courts.  A bar date order is an integral part in the

10  reorganization process.  See In re Best Products Corp., 140

11  B.R. 353, 353-57 (Bankr. S.D.N.Y. 1992).  It enables the

12  parties in interest to ascertain with reasonable promptness the

13  identity of those making claims against the estate, and the

14  general amount of the claims, which is a necessary step toward

15  achieving the goal of a successful reorganization.  See id.

16      If individual creditors were permitted to postpone

17  indefinitely the effect of the bar date order, the

18  institutional means for ensuring the sound administration of

19  the bankruptcy estate would be undermined.  See First Fidelity

20  Bank, N.A., v. Hooker Inv., Inc., 937 F.2d 833, 840 (2d Cir.

21  1991).

22      So the Court turns first to the issue of whether Mr.

23  Bryant was provided with adequate notice.  The constitutional

24  standard for due process requires that known creditors in a

25  bankruptcy case receive actual notice of the bar date.  See New

1    York v. N.Y., N.H. & H.R. CO., 344 U.S. 293, 296-97 (1953)

2    (finding that known creditors must be afforded notice

3    reasonably calculated under all the circumstances to apprise

4    them of the pendency of the bar date.).  In re R.H. Macy & Co.,

5    161 B.R. 355, 359 (Bankr. S.D.N.Y.) (citing Mullane v. Cent.

6    Hanover Bank & Trust Co., 339 U.S. 306 (1950)).

7              Unless a creditor is given reasonable notice of the

8    bankruptcy proceeding and relevant bar dates, its claim cannot

9    be constitutional discharged.  See Grant v. U.S. Home Corp.,

10   223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998).

11             In Chapter 11, therefore, a known creditor must

12   receive adequate notice before its claim is barred forever.

13   See In re Best Products Corp., 140 B.R. at 357.  A bar date is

14   strictly enforced except when a known creditor is not listed on

15   the schedules and fails to receive actual notice of the bar

16   date.  Id. at 358.

17             It is also well settled law that proof that a letter

18   was properly addressed and placed in the mail system creates a

19   presumption that the letter was received in the usual time by

20   the addressee.  See Hagner v. U.S., 285 U.S. 427, 430 (1932)

21   (demonstrating how old this so-called "mail box rule" is).

22   Thus, upon proof of mailing of a properly addressed letter, a

23   rebuttable presumption of receipt arises.  See In re R.H. Macy

24   & Co., 161 B.R. at 359.

25             Federal courts in New York have held "quite

1   uniformly" that an affidavit of non-receipt is insufficient to

2   rebut the presumption of receipt created by proof of mailing.

3   See Cablevision Systems Corp. v. Malandra (In re Malandra), 206

4   B.R. 667, 673 (Bankr. E.D.N.Y 1997); In re R.H. Macy & Co., 161

5   B.R. at 360 (opining that movant's respective self-serving

6   submissions asserting non-receipt are insufficient to rebut the

7   presumption of receipt); see also In re Horton, 149 B.R. 49, 58

8   (Bankr. S.D.N.Y. 1992), (noting that affidavits of creditor's

9   employees are merely general denials that a creditor received

10   the notice, and therefore insufficient to rebut the

11   presumption).

12        It is possible under certain circumstances to rebut

13   the presumption of mailing.  It does require, however, that

14   testimony denying receipt be accompanied by detailed evidence

15   to rebut the presumption, and that evidence includes things

16   like tracking procedures to catalog the receipt of mail.  See

17   Hogarth v. N.Y. City Health & Hospice Corp., No. 97-CV-0625,

18   2000 WL 375242 (S.D.N.Y. Apr. 12, 2000).  In Hogarth, the

19   defense successfully rebutted the presumption that the letter

20   was delivered by clearly establishing the use of detailed logs

21   of incoming and outgoing mail that contained no record of the

22   letter in question.  See also In re Robinson, 228 B.R. 75, 82

23   (Bankr. E.D.N.Y. 1998), (ruling that "although the mere denial

24   of receipt does not rebut the presumption, testimony denying

25   receipt in combination with evidence of a standardized

1    procedure for processing mail can be sufficient to rebut the

2    presumption.").

3            Courts in the Second Circuit do not take this issue

4    lightly, given the important functions served by the bar date

5    in bankruptcy cases.  This heightened burden recognizes that if

6    a party was permitted to defeat the presumption of receipt of

7    notice resulting from the certificate of mailing simply by

8    giving an affidavit to the contrary, the scheme of deadlines

9    and bar dates under the Bankruptcy Code would come unraveled.

10   See In re R.H. Macy & Co., 161 B.R. at 360 (quoting In re Trump

11   Taj Mahal Assoc., 156 B.R. 928, 939 (Bankr. D.N.J. 1993)).

12           Applying these principles here, the debtors have

13   submitted evidence that establishes actual notice was provided

14   to Mr. Bryant.  More specifically, the debtors provided

15   evidence that the bar notice was mailed to Mr. Bryant and was

16   not returned as undeliverable.  Moreover, the address where Mr.

17   Bryant was served is the same address that Mr. Bryant provided

18   in his motion.

19           Mr. Bryant has not provided sufficient evidence to

20   overcome the mailbox presumption here, including any evidence

21   regarding the tracking of his mail.  Therefore, the Court deems

22   that the debtors have met their burden of providing Mr. Bryant

23   with actual notice of the bar date.

24           It is not entirely clear why the debtors considered

25   Mr. Bryant to be a known creditor that should receive actual

1    notice of the bar date.  I suspect it is likely because the

2    events that formed the basis of a Florida lawsuit in the

3    proposed claim here, took place before the bankruptcy filing,

4    and were likely the subject of some administrative proceeding.

5    But in the unlikely event that one considered Mr. Bryant an

6    unknown creditor, the notice standard would be even lower, and

7    would be satisfied here as well.

8         More specifically, the debtors would have provided

9    Mr. Bryant with adequate notice as an unknown creditor by

10   publishing the bar date, as they did, in ten local and national

11   publications.  See In re BIG, Inc., 476 B.R. 812, 824 (Bankr.

12   S.D.N.Y. 2012) (holding that publication in the New York Times

13   provided adequate notice to unknown creditors).

14        Moving on to the excusable neglect issue, the Court

15   notes that even assuming that actual notice of the bar date had

16   been provided, a late filed claim is permissible if the

17   creditor can establish excusable neglect.  The standard for

18   excusable neglect is found in Bankruptcy Rule 9006(b)(1), which

19   provides that the Court may, for cause shown at any time in its

20   discretion, on motion made after the expiration of a specific

21   period, permit the late act to be done where the failure to act

22   was the result of excusable neglect.  F.R.B.P. 9006(b)(1).

23   Under the standard, the Court cannot find, however, that the

24   movant's late filed claim is permissible.

25        The Supreme Court has observed that the term

1    excusable neglect, in its ordinary sense, means to give little

2    attention to or respect to a matter, or to leave undone or

3    unattended to, especially through carelessness.  Pioneer Inv.

4    Servs. v. Brunswick Assocs., 507 U.S. 380, 388 (1993).  Pioneer

5    is the case that is cited as the alpha and the omega on the

6    excusable neglect standard.  Neglect encompasses both simple

7    faultless omissions to act, and more commonly, omissions caused

8    by carelessness.  Id. at 388.  Whether claimant's neglect of a

9    deadline is excusable, however, is an equitable determination.

10   Id. at 395.

11        The Court should consider all the relevant

12   circumstances, including the dangers of prejudice to the

13   debtor, the length of the delay, and the delay's potential

14   impact on the judicial proceedings.  Id. at 395.  In addition,

15   the Court should consider the reason for the delay, including

16   whether it was in the reasonable control of the movant, and

17   whether the movant acted in good faith.  Id. at 395.

18        The Second Circuit has adopted a strict standard on

19   excusable neglect.  See Asbestos Personal Injury Pl.'s v.

20   Travelers Indemnity (In re John Manville Corp.), at 476 F.3d

21   118, 120-24 (2d Cir. 2007); Midland Cogeneration Venture LP v.

22   Enron Corp. (In re Enron Corp.), 419 F.3d 115, 122 (2d Cir.

23   2005) (stating that the Second Circuit has taken "a hard line"

24   in applying the Pioneer test).

25        As the Court in Enron noted, the equities rarely, if

1   ever, favor a party who fails to file within the clear dictates

2   of a court rule, and where the rule is entirely clear, we

3   continue to expect that a party claiming excusable neglect

4   will, in the ordinary sense, lose under the Pioneer test.  See

5   in re Enron, 419 F.3d at 123.

6        Although courts consider all of the Pioneer factors,

7   the hard-line approach focuses mainly on the reason for the

8   delay and whether it was within the reasonable control of the

9   claimant.  Id. at 122.  This is usually because the other

10  Pioneer factors ordinarily weigh in favor of the parties

11  seeking an extension.  Id.

12       Focusing on the central Pioneer factor here, Mr.

13  Bryant contends that he did not receive adequate notice because

14  he was not listed in the Chapter 11 schedule of liabilities and

15  was not personally notified of the bar date order.  As

16  discussed above, however, the Court has concluded that he did

17  receive adequate notice of the bar date, based on the evidence

18  I have before me and the mailbox presumption.

19       Moreover, he offers no other explanation for the

20  delay other than the mediation in which he was involved.  But

21  as to the mediation, he points to no facts about that mediation

22  that would excuse his failure to file a claim.  And given all

23  these facts, the reasons for delay weigh against the movant.

24       The Court next considers the length of the delay and

25  its potential impact on the judicial proceedings.  There is no

1  bright line governing when the lateness of a claim is

2  substantial.  Id. at 128.  Instead courts consider the degree

3  to which the delay might disrupt the judicial administration of

4  a particular case.  Id.      Thus, the length of the delay,

5  the complexity of the case, and the progress made in a case are

6  all relevant considerations, but none are dispositive on their

7  own.  Id. at 128-29.

8        Here, the length of the delay is significant.  This

9  motion was filed more than a year-and-a-half after the Court

10  entered the bar date order.  Courts have recognized such delays

11  as substantial.  See In Re AMR Corp., 429 B.R. 660, 667 (Bankr.

12  S.D.N.Y. 2013) (finding a three-month delay to be substantial).

13        Furthermore, the claim here would be disruptive to

14  the administration of the case because the debtors are well

15  advanced in these Chapter 11 cases, having confirmed the plan

16  and already begun to make distributions to holders of allowed

17  claims and equity interests.

18        Lastly, the Court considers the danger of prejudice

19  to the debtors if the Court allows the late filed claim.

20  Courts have often recognized the danger of opening the

21  floodgates to potential claimants, particularly in large cases

22  such as these.  See, e.g., In re Enron Corp., 419 F.3d at 132,

23  n.2 (noting that courts in this and other circuits regularly

24  cite the potential flood of similar claims as the basis for

25  rejecting late filed claims); see also In re Dana Corp., 2007

1    Bankr. LEXIS 1934, at *19 (Bankr. S.D.N.Y. May 30, 2007).

2         Permitting this late filed claim here could help to

3    open the floodgates to other creditors who failed to timely

4    file their claims.  That would result in disruption of the

5    administration of these Chapter 11 cases, particularly given

6    that the debtors have begun to make distributions.

7         Finally, while not raised by Mr. Bryant, the Court

8    considers if any documents that he filed might be considered an

9    informal proof of claim.  An informal proof of claim is an

10   equitable remedy available where a creditor fails to comply

11   with the technical procedures for filing a proof of claim, but

12   still took some action to preserve its interest, and put the

13   debtors on notice of a claim.  See In re M.J. Waterman &

14   Assocs., 227 F.3d 604, 608-09 (6th Cir. 2000); see also In re

15   Residential Capital LLC, 12-12020, 2014 WL 3057111 (Bankr.

16   S.D.N.Y. July 7, 2014) (finding a creditor's initiation of an

17   adversary proceeding before the bar date sufficient to qualify

18   as an informal proof of claim); see also In re Dana Corp., 06-

19   10354, 2008 WL 2885901, at *3 (Bankr. S.D.N.Y. July 23, 2008)

20   (applying an informal proof of claim concept in a Chapter 11

21   case).

22        An informal proof of claim must meet certain

23   requirements.  First, it must have been timely filed with the

24   bankruptcy court and become part of the judicial record;

25   second, it must state the existence and nature of the debt;

1    third, it must state the amount of the claim against the

2    estate; and fourth, it must evidence the creditor's intent to

3    hold the debtors liable for the debt.  See In re Enron

4    Creditors Recovery Corp., 370 B.R. 90, 99 (Bankr. S.D.N.Y.

5    2007).

6         Courts may grant relief to a creditor that provides

7    the requisite claim information in a non-standard form, but

8    that relief is limited to documents filed before the expiration

9    of the applicable bar date.  See In re Lehman Bros. Holding,

10   433 B.R. 113, 121-22 (Bankr. S.D.N.Y. 2010), aff'd 445 B.R. 130

11   (Bankr. S.D.N.Y. 2011).

12         Applying these standards here, there is nothing

13   Mr. Bryant has done that would qualify as an informal proof of

14   claim.  While he states in his motion that he was engaged in

15   mediation with the debtors, nothing related to that process

16   resulted in a bankruptcy filing that would have given the

17   debtors notice of the claim.  Therefore, the Court finds that

18   the movant has not filed an informal proof of claim.

19         For all these reasons, the Court finds that

20   Mr. Bryant received adequate notice of the bar date and has

21   failed to demonstrate that his late filed claim was a product

22   of excusable neglect.  Accordingly, the Court denies the

23   motion.  The Court sympathizes with Mr. Bryant's circumstances

24   and appreciates his efforts at representing himself, and I will

25   note again that I thought he did a fine job of representing

1    himself.  But as a Judge, I am required to apply the law even

2    if it means that I must often be the bearer of bad news.  I

3    will enter an order that is consistent with this bench ruling.

4    (II) LAWRENCE M. MEADOWS

5         Moving on to the other matter, before the Court is the

6    objection of the debtors to proofs of claim numbered 13478,

7    13788 and 13865, which were filed by Lawrence M. Meadows, as

8    well as the response of Mr. Meadows to that objection.  See ECF

9    Nos. 11840 and 11919.

10         The debtors' objection has essentially two parts.

11   The debtors first object to Mr. Meadows's original proof of

12   claim for long-term disability benefits, arguing that they have

13   prevailed on these issues in federal court proceedings in

14   Florida, and the United States Court of Appeals for the

15   Eleventh Circuit.

16         Second, the debtors object to Mr. Meadows's amended

17   proofs of claim.  Debtors argue that these amended proofs of

18   claim are untimely because they were filed months after the bar

19   date order in these bankruptcy cases, and that the additional

20   relief sought in these amended proofs of claim does not relate

21   back to the one timely filed claim or to anything else.

22         For the reasons that I will explain, the debtors'

23   objection is granted.

24         The background to this present dispute is

25   complicated.  Mr. Meadows is a former American Airlines pilot

1    and received long-term disability benefits from 2004 through

2    December of 2007 when those benefits were terminated.  See

3    Objection, ¶ 11; Meadows's Response, ¶ 1.  That termination was

4    upheld in an administrative appeals process with American's

5    Pension Benefits Administrative Committee on June 10, 2008.

6    See Objection ¶ 12.  Later, Mr. Meadows was placed on unpaid

7    sick leave status, and was ultimately terminated from his

8    employment at AMR on October 24th, 2011.  See Meadows' Response

9    ¶ 3; Objection ¶ 15.

10         Mr. Meadows commenced various proceedings and

11   lawsuits in connection with both the termination of his long-

12   term disability benefits and the termination of his employment

13   with American Airlines.  A brief description of some of these

14   cases is necessary to understand the objection now before the

15   Court.

16         The first and most relevant of these proceedings

17   relates to the termination of Mr. Meadows's long-term

18   disability benefits.  In 2008, Mr. Meadows sought a review of

19   the termination of his disability benefits via the

20   administrative appeals process with the Pension Benefit

21   Administration Committee (the "PBAC").  The PBAC issued a final

22   denial of disability benefits in June of 2008.  See Objection

23   ¶ 12.

24         In July of 2010, Mr. Meadows filed a lawsuit against

25   the debtors, the PBAC, and American's Pilot Retirement Benefit

1    Program.   That lawsuit was filed in the United States District

2    Court for the District of Florida, seeking recovery of long-

3    term disability benefits.   That case was Case No. 1:10-cv-22175

4    and I will refer to that generally as the "ERISA action" as it

5    was a complaint for disability benefits.

6         In 2011, the Florida court granted summary judgment

7    in favor of American concluding that "based on the facts, the

8    language of the plan, and the relevant medical records, the

9    Court finds that even if Mr. Meadows's termination of benefits

10   could be regarded as a de novo wrong, the decision was not

11   arbitrary and capricious and thus, must be affirmed."   See

12   Meadows v. American Airlines, 2011 U.S. Dist. LEXIS 30839 at

13   *67 (S.D. Fla., Mar. 24, 2011).

14        Mr. Meadows appealed that ruling to the Eleventh

15   Circuit, which affirmed the Florida court's ruling.   See

16   Meadows v. American Airlines, Inc., 520 F. App'x 787 (11th Cir.

17   2013).

18        In March of 2014, Mr. Meadows filed a motion with the

19   Florida District Court to reconsider its March 2011 decision

20   under Rule 60(b) of the Federal Rules of Civil Procedure.   See

21   10-CV-22175, Dkt. 89.   That motion was denied by the Florida

22   District Court on May 14, 2014.   See id. at Dkt. 94.

23        That information described Mr. Meadows's first

24   relevant proceeding.   The second relevant proceeding of

25   Mr. Meadows is the so-called SOX action, with the term SOX

1    referring to the Sarbanes-Oxley Act.  That action began

2    September 12, 2011, when Mr. Meadows filed a complaint with the

3    Occupational Safety and Health Administration of the United

4    States Department of Labor ("OSHA").  That complaint alleged

5    that the debtors retaliated against him for reporting corporate

6    fraud by threatening to terminate his employment.

7         As the Department of Labor's investigation of such

8    matters is not covered by the automatic stay, the matter moved

9    forward.  See 11 U.S.C. § 362(b)(4).

10        In December of 2012, the Secretary of the Department

11   of Labor found that there was no reasonable cause to believe

12   that the debtors violated the statute.  See Debtor's Reply,

13   ¶ 7.  Then in February of 2013, Mr. Meadows administratively

14   appealed the Department of Labor's decision and the matter was

15   then assigned to an administrative law judge.  That matter is

16   currently pending.

17        Mr. Meadows's third relevant proceeding is so-called

18   Grievance 12-011.  In that grievance, Mr. Meadows sought to

19   grieve the "improper assertions and actions" with respect to

20   his employment status, seniority and discharge.  Obj. Ex. B,

21   Grievance 12-011.  Mr. Meadows' request for grievance was made

22   pursuant to Section 21 of the relevant collective bargaining

23   agreement that he was employed under between the pilots and the

24   debtors.

25        The crux of Mr. Meadows's complaint appears to be

1    that he was never contacted by nor received a formal notice

2    from any supervisor with respect to his employment status,

3    seniority, or discharge.  In addition, the grievance referenced

4    the Americans with Disabilities Act, as well as his status as a

5    federal whistleblower under the Sarbanes-Oxley regulations.

6            On July 13, 2012, the Allied Pilots Association (the

7    "APA"), which is the collective bargaining representative of

8    Mr. Meadows, filed its own proof of claim, and that proof of

9    claim is number 8331.  That proof of claim included Mr.

10   Meadows's Grievance 12-011, as well as many other grievances by

11   many other employees.

12           The APA subsequently entered into a settlement

13   agreement with the debtors that extinguished all claims,

14   including APA Claim 8331, with the exception of very specific

15   grievances.  See Obj. ¶ 26, citing ECF No. 5800.

16           Mr. Meadows's Grievance 12-011 was one such grievance

17   that was excluded from the APA settlement.  See ECF No. 5626 at

18   516.  In March of 2014, the APA filed an amended claim that

19   excluded Grievance 12-011 from the list of grievances that were

20   carved out of the settlement.  See Obj. ¶ 27; Claim 13866.  In

21   sum, the APA amended claim operated to extinguish Grievance 12-

22   011 by including it in the settlement, or at least that is how

23   it appears.

24           At the hearing on this matter, counsel for the APA

25   summed up the matter as follows: "The APA included Grievance

1   12-011 among the list of 37 that were excepted from the overall

2   settlement on the equity side.  The grievance then moved

3   through the process up to the pre-arbitration conference, in

4   which the parties made one final attempt to resolve grievances

5   and decide which go to arbitration and which don't.

6   Unfortunately, no resolution was possible at which point the

7   APA decided, and in August of 2013, when it was decided, it

8   informed Mr. Meadows that it would not be taking this grievance

9   to arbitration because it did not allege a violation that the

10  arbitrator would have any jurisdiction over.  At that point,

11  the process ended."  Hr'g. Trans. 70:16-71:2.

12         The debtors characterize Mr. Meadows's Grievance 12-

13  011 as addressing whether the company acted properly in

14  terminating Mr. Meadows's employment under the terms of the

15  collective bargaining agreement.  Hr'g. Trans., Apr. 17, 34:20-

16  24.  The debtors note that Mr. Meadows now has a pending

17  lawsuit to compel arbitration of that same grievance.  Id. at

18  36:17-18.

19         Counsel for AMR confirmed that the process of fully

20  litigating Grievance 12-011, including this mediation

21  arbitration, is unaffected by the debtors' objection.  In other

22  words, Grievance 12-011 is on a "separate track, and the

23  debtors are not asking for any relief as to Mr. Meadows's

24  ability to continue with that grievance, including dealing with

25  the union regarding the grievance."  Hr'g. Trans. 37:3-12.

1    Instead, the Grievance will run its process under the union and

2    the CBA process outside this Court.  Id. at 37:13-19.

3         Before moving on to the events of the bankruptcy

4    case, I just wanted to note that Mr. Meadows has also filed

5    other actions that were not included in the original or amended

6    claims.  Those include an SEC whistleblower complaint, alleging

7    security fraud, and a third grievance based on a right of

8    special assignment to a non-flying position.  Those proceedings

9    are not relevant for purposes of this ruling, but the Court

10   mentions them only to flush out the extensive litigation that

11   has occurred and is still occurring involving these parties.

12        Turning to the relevant events in these bankruptcy

13   cases, the debtors filed for relief under the Bankruptcy Code

14   in November of 2011.  As I explained in the other bench ruling

15   this morning, the Court entered a bar date order establishing

16   July 16, 2012, as the bar date in these bankruptcy cases.  See

17   ECF 2609.  The bar date order clearly states that failure to

18   file a timely proof of claim will forever bar a party from

19   asserting such a claim against the debtors and their Chapter 11

20   estates.  See ECF No. 2609, Annex I.

21        On March 20, 2012, Mr. Meadows filed his original

22   proof of claim for $470,340, with $338,000 listed as priority

23   and the balance as an unsecured claim.  See Claim No. 1916.

24   This original claim was for "pilot long-term disability

25   payments."  No supporting documentation was submitted.  See

1    Obj. Ex. A at 1.

2           This was the only claim filed by Mr. Meadows before

3    the bar date.  After the bar date, Mr. Meadows filed three

4    additional proofs of claim (collectively, the "Amended

5    Claims").  The first Amended Claim was filed approximately

6    eight months after the bar date in March of 2013.  See Claim

7    13478.  Claim 13478 sought "at least $500,000" for long-term

8    pilot disability, and "EECO charges including, but not limited

9    to wrongful termination and discrimination, SOX claim, et

10   cetera."  Id.  Attached to the claim was a list of the

11   proceedings and various lawsuits of Mr. Meadows, including

12   various EEOC charges, the SOX action, the appeal of the

13   determination by the PBAC and Grievance 12-011.  See Meadows's

14   Resp. ¶ 11.  Of the $5 million sought, $338,900 requested

15   priority treatment, leaving the balance of $161,100 as an

16   unsecured claim.

17          On January 24, 2014, approximately eighteen months

18   after the bar date, Mr. Meadows filed the second Amended Claim,

19   number 13788, which was identical to Claim 13478, except for

20   adding one additional proceeding, Grievance 13-064, which is

21   based on Mr. Meadows's removal from American's seniority list.

22   That grievance was filed in October of 2013, heard in February

23   of 2014, and denied on March 26, 2014.  See Meadows's Resp. ¶¶

24   45-48.  Mr. Meadows has indicated that the APA refuses to

25   appeal Grievance 13-064.  He will seek to compel arbitration.

1          Two months later, Mr. Meadows filed the third Amended

2     Claim, number 13865, which corrected the amount of the claim

3     seeking priority status.  The idea was that Claim Number 13788

4     was filed as a wholly unsecured claim.

5          Subsequent to these events, on October 21, 2013, the

6     Court entered an order confirming the Debtors' Fourth Amended

7     Joint Chapter 11 plan.  ECF 10367.  The plan went effective

8     December 9, 2013, with the legal effect of discharging any and

9     all prepetition claims that arose against the Debtors, except

10    for those preserved by a properly filed proof of claim.  See

11    id.

12         The legal standard here is straightforward.  A

13    correctly filed proof of claim constitutes prima facie evidence

14    of its validity and the amount of the claim.  To overcome this

15    presumption, the objecting party must provide evidence which it

16    believes would refute at least one of the allegations essential

17    to the claim.  See In re Riley, 245 B.R. 768, 773 (2d Cir. BAP

18    2000).  Upon such objection, the burden then shifts back to the

19    claimant to produce additional evidence to prove the validity

20    of the claim by a preponderance of the evidence.  See In re

21    Rescap, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014) (collecting

22    cases).

23         Bankruptcy Code Section 502(b)(1) provides that

24    claims may not be allowed to the extent that such claims are

25    unenforceable against the debtor and the property of the debtor

1    under any agreement or applicable law.  See id.

2          The Debtors argue that the long-term disability claim

3    asserted has been fully adjudicated and that it has been

4    determined that the debtors have no liability with respect to

5    those claims.  See Obj. ¶ 30.

6          In his papers and at the hearing on the objection,

7    Mr. Meadows argued that the Eleventh Circuit's affirmation of

8    the summary judgment ruling in favor of American Airlines was

9    "not finally adjudicated" within the meaning of the Bankruptcy

10   Code, given his then pending motion for reconsideration under

11   Rule 60(b) of the Federal Rules of Civil Procedure.  The Rule

12   60(b) motion for reconsideration was then pending in front of

13   the Florida District Court.  The parties at the hearing agreed

14   to wait for the final decision on the Rule 60(b) motion before

15   having the court rule on the long term disability component of

16   Mr. Meadows's claim.

17         On May 14, 2014, the Florida Court entered its ruling

18   denying the motion for reconsideration.  ECF No. 12017, Ex. A.

19   Given this latest ruling and other prior rulings of the Florida

20   District Court and the Eleventh Circuit, it is clear that the

21   issue of the termination of long-term disability insurance has

22   been fully litigated and resolved by the Florida District Court

23   and the United States Court of Appeals for the Eleventh

24   Circuit.  In those proceedings, the Florida District Court and

25   the Eleventh Circuit ruled in favor of the Debtors on that

1    issue.  Given that undisputed fact, the Court agrees with the

2    debtors' objection and finds it should be granted with respect

3    to the long-term disability issue, which is the subject of the

4    original proof of claim, but which is also mentioned in the

5    Amended Claims.

6            The Court turns now to the second issue: whether

7    additional matters in the Amended Claims filed in March of

8    2013, and January and March of 2014, should be barred as

9    untimely.  These Amended Claims were filed eight, eighteen and

10   twenty months after the bar date respectively.

11           Courts in the Second Circuit apply a two-prong test

12   to determine whether to permit a post-bar-date amendment to a

13   timely filed proof of claim.  See In re Barquet Group, Inc.,

14   477 B.R. 454, 464 (Bankr. S.D.N.Y. 2012).

15           The first prong, known as the relation-back

16   requirement, asks whether there was an assertion of a similar

17   claim or demand evidencing an intention to hold the estate

18   liable.  Id. (quoting In re Enron Corp., 419 F.3d at 133).

19   This prong will be satisfied if the amendment: 1) corrects a

20   defect of form in the original claim; 2) describes the original

21   claim with greater particularity; or 3) pleads a new theory of

22   recovery based on the facts set forth in the original claim.

23   See In re Univo, 2012 Bankr. LEXIS 1089, at *7 (Bankr. S.D.N.Y.

24   Mar. 14, 2012) (citing In re Enron Corp., 419 F.3d at 133).

25           Keeping in mind the standards applicable under Rule

1   15 of the Federal Rules of Civil Procedure for amendment, "the

2   central inquiry is whether adequate notice of the matters

3   raised in the amended pleading has been given to the opposing

4   party within the statute of limitations by the general fact

5   situation alleged in the original pleading."  See Slayton v.

6   Am. Express Corp., 460 F.3d 215, 228 (2d Cir. 2006).  In

7   Slayton, the Second Circuit applied that principle and

8   considered whether the amendments were a "natural off shoot" of

9   the original pleadings.  Id. at 228-29.

10          "Courts must subject post-bar-date amendments to

11   careful scrutiny to assure that there [is] no attempt to file a

12   new claim under the guise of an amendment."  Midland Cogen.'l

13   Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419

14   F.3d 115, 124 (2d Cir. 2005) (quoting Integrated Res., Inc.,

15   157 B.R. 66, 70 (S.D.N.Y. 1993) (internal citations omitted).

16          Only if the amendment relates back, meaning the first

17   prong is satisfied, will the Court then apply the second prong,

18   which is to examine whether permitting the amendment would be

19   equitable.  See In re Enron, 419 F.3d at 133.  Under the

20   equitable prong, three factors must be considered.  First,

21   whether the debtor or its creditors would be unduly prejudiced

22   by the amendment; second, whether the creditors would receive a

23   windfall from the disallowance; and third, whether the claimant

24   acted in good faith and can justify the delay.  Id.

25          Turning to the relation-back to the original claim,

1  the debtors argue that the Amended Claims do not satisfy the

2  requirements for relation-back.  They also claim that

3  permitting the amendments would not be equitable.  The debtors

4  note that the original claim does not arise from the same set

5  of facts as the Amended Claims.  Specifically, the debtors

6  point out that the allegations pertinent to the SOX and the

7  EEOC actions occurred subsequent to the facts that give rise to

8  the ERISA claim, and therefore, cannot relate back.

9        As counsel for AMR correctly observed at the hearing,

10  "The original claim was based on a denial of long-term

11  disability claims that happened in 2007.  The new claims and

12  late-filed amendments relate to actions that occurred in 2011

13  and forward."  Hr'g. Trans. 32:12-15.  Moreover, the new claims

14  seek an amount that is more than ten times what was asserted in

15  the original claim: $500,000 versus $5 million.  And, the

16  original claim failed to include any details of supporting

17  documentation that would put the debtors on notice that claims

18  beyond the simple long-term disability benefits were being

19  asserted.  More specifically, the original claims specify the

20  basis for the $470,000 claim only as "long-term disability

21  benefits."  The parties agree that the reference to long-term

22  disability benefits in that claim refers to the ERISA action

23  that was pending in the Florida District Court, and eventually

24  in front of the Eleventh Circuit.

25        Mr. Meadows disagrees with this conclusion,

1    contending that the original claim and new claims were all

2    based on the same set of facts: the denial of disability

3    benefits, the subsequent termination and the removal from the

4    pilot seniority lists.

5         But the mere framing of the issue that way explains

6    why the Court disagrees.  Namely, the original claim dealt only

7    with the denial of the disability of benefits, and nowhere

8    mentioned termination or removal from the pilot seniority list.

9    Mr. Meadows's assertions are also undercut by his concession

10   that the original claim did not preserve his EEOC or his SOX

11   claim.  Hr'g. Trans. 59-60; Obj. ¶ 39. (noting Mr. Meadows's

12   concession in a letter that "his SOX and EEOC claims were not

13   preserved in his original proof of claim.").  In fact, in a

14   letter to the APA, Mr. Meadows stated, "My federal SOX and EEOC

15   claims are not preserved by original proof of claim."  He went

16   on to say that his "SOX and EEOC claims were only preserved

17   with the bankruptcy court, as part of my preserved APA

18   Grievance 12-011."  Hr'g. Trans. 59-60.

19        At the hearing on this objection, the Court asked

20   counsel for Mr. Meadows to confirm that the admission was a

21   limited admission and preserved Mr. Meadows's right that the

22   APA grievance relates back.  But, it does seem to concede that

23   it was not pled or covered by the first claim.  Counsel for Mr.

24   Meadows responded "that's correct."  Id.

25        Now, the Court turns to Mr. Meadows's reliance upon

1    the rights preserved under Grievance 12-011 as a basis for

2    permitting his Amended Claims to go forward.  The debtors do

3    not challenge the ability of Mr. Meadows to continue pursuing

4    his potential remedies under Grievance 12-011, and the debtors

5    include a provision to that effect in their proposed order on

6    this objection.  See ECF No. 11840, Ex. F. ("Notwithstanding

7    the foregoing, Mr. Meadows shall be permitted to arbitrate

8    Grievance 12-011 before the System Board to the extent that

9    such arbitration is limited in scope to claims involving

10   interpretation of the [collective bargaining agreement] and

11   provides remedies, if any, and if appropriate that are

12   customary in the grievance procedures created by the Railway

13   Labor Act."); see also Obj. ¶ 40 ("Furthermore, the AP claim

14   only preserves one of Mr. Meadows's claims, i.e., Grievance 12-

15   011.").

16          However, the debtors argue that the limited scope of

17   the grievance under the relevant collective bargaining

18   agreement does not provide a springboard for Mr. Meadows to sue

19   in this Court with respect to claims that were not presented in

20   his original proofs of claim.  See Hr'g. Trans. 37:21-25.

21          The Court agrees with the debtors on this issue for

22   at least two independent reasons.  First, the grievance process

23   covers only matters that are so-called "minor disputes"

24   regarding interpretation of the operative collective bargaining

25   agreement.  This fact was confirmed by Mr. Meadows's union

1    representative, the APA at the hearing on this objection, and

2    by case law under the Railway Labor Act, which governs the

3    collective bargaining agreement involving Mr. Meadows, and

4    therefore, this grievance process.  See Hr'g. Trans. 70:8-9

5    (APA's counsel stated, "The purpose of a grievance is to

6    challenge an alleged violation of the contract."); see also

7    Allied Pilots Ass'n v. AMR Corp., (In re AMR Corp.), 471 B.R.

8    51, 58 (Bankr. S.D.N.Y. 2012) (discussing the Railway Labor

9    Act, as well as the concept of "minor disputes.").

10        Given the limited scope of the grievance to the

11   collective bargaining agreement matter, it follows that

12   Grievance 12-011 cannot somehow preserve Mr. Meadows's right to

13   pursue the far more wide-ranging statutory claims set forth in

14   the Amended Claims.  See generally Hawaiian Airlines v. Norris,

15   512 U.S. 246, 256 to 58, 1991 and Whitaker versus American

16   Airlines, Inc., at 285 F.3d 9940 at 946, an Eleventh Circuit

17   case from 2012 (both discussing "minor disputes" and what can

18   be grieved under the Railway Labor Act, along with the relevant

19   processes for such grievances).

20        As I said, there is also a second independent reason

21   to agree with the debtors.  The decision-maker for Grievance

22   12-011 will ultimately decide what is appropriately within the

23   scope of that grievance.  Whatever the decision-maker in that

24   grievance permits to go forward in the grievance process thus

25   is properly part of the grievance.  What the decision-maker

1    decides should not be part of the grievance is not.  This, of

2    course, is all subject to whatever appellate rights the parties

3    have arising out of the grievance process.  But the Court is

4    well aware that the decision-maker in this grievance process is

5    in a far better position than this Court to determine the

6    permissible scope of the grievance procedures.

7            At the end of the day, therefore, Mr. Meadows will

8    end up with whatever rights in the grievance process he should

9    have by virtue of Grievance 12-011, which is all that was

10   preserved by virtue of the APA settlement and reservation of

11   rights.

12           Finally, the Court rejects Mr. Meadows' argument that

13   these Amended Claims should be permitted as late filed, based

14   on the concept of excusable neglect, which is encompassed in

15   Federal Bankruptcy Rule 9006(b)(1), which empowers a Court to

16   permit a late filing based on excusable neglect.  See

17   generally, Pioneer Inv. Servs. v. Brunswick Assocs., 507 U.S.

18   380, 382 (1993).  The claimant bears the burden of proving

19   excusable neglect.  See In re Enron Corp., 419 F.3d at 121.

20           Again, although excusable neglect is not defined in

21   the Bankruptcy Code, the Supreme Court in the Pioneer case

22   recognized that the analysis parallels the equitable test for

23   amendments.  See In re Calpine Corp., 2007 U.S. Dist. LEXIS

24   86514, at *14 (S.D.N.Y. 2007).  As set forth in more detail in

25   today's prior ruling regarding Mr. Bryant, a bankruptcy court

1    should consider the danger of prejudice to the debtor, the

2    length of delay, the potential impact on judicial proceedings,

3    the reason for the delay, including whether it was in the

4    reasonable control of the movant, and whether the movant acted

5    in good faith.  See Pioneer, 507 U.S. at 395-96.

6            The justification for delay is weighted most heavily.

7    See In re Enron Corp., 419 F.3d at 122-23.  As noted earlier,

8    the Second Circuit takes a "hardline in applying the Pioneer

9    test."  See In re Enron Corp., 419 F.3d at 122.

10           Mr. Meadows points to his prior counsel to justify

11   the delay in filing the new claims.  While the Court

12   sympathizes with Mr. Meadows's frustration with his former

13   counsel, the Court rejects Mr. Meadows's argument.

14           As Mr. Meadows's papers concede, the case law is

15   clear that an attorney's mistake does not ordinarily or even

16   necessarily constitute excusable neglect.  See Pioneer, 507

17   U.S. at 396-97 (noting that claimants are responsible for the

18   acts and omissions of their counsel, and that inadvertence,

19   ignorance of the rules, and mistakes concerning the rules do

20   not usually constitute excusable neglect.  See also In re North

21   New England Tel. Op's. LLC, 540 B.R. 372, 381-82 (Bankr.

22   S.D.N.Y. 2014) aff'd sub nom In re N. New England Tel. Op's.

23   LLC, 09-16365, 2014 WL 3952925.

24           Where, as here, the filing deadline is entirely

25   clear, a party claiming excusable neglect will, in the ordinary

1    course, lose under the Pioneer test.   See CVI GVF (LUX) MASTER

2    S.A.R.L. v. Lehman Bros. Holdings Inc., 445 B.R. 137, 141

3    (S.D.N.Y. 2011).   Mr. Meadows has presented nothing to justify

4    a departure from this ordinary rule.   Indeed the additional

5    Pioneer factors in this case only further support this result.

6    There has been a significant delay in filing the Amended

7    Claims.   That delay was eight months, eighteen months, and

8    twenty months respectively, after the bar date.   See In re AMR

9    Corp., 492 B.R. 660, 667 (Bankr. S.D.N.Y. 2013) (finding three

10   months to be a substantial delay).

11          In evaluating delay under Pioneer and its progeny,

12   courts also consider whether the plan of reorganization has

13   been filed or confirmed, and consider the delay in the context

14   of the proceeding as a whole.   See In re Global Aviation

15   Holdings, Inc., 495 B.R. 60, 66 (Bankr. E.D.N.Y. 2013).

16          Here, we are approaching the one-year anniversary of

17   the confirmation of the plan.   The case law recognizes that

18   there is a danger in opening the floodgates to potential

19   claimants at such a late juncture.   See In re Enron Corp., 419

20   F.3d at 132, n.2 (2d Cir. 2005).

21          Moreover, the debtors set forth an additional basis

22   for prejudice here; namely, the settlement between the debtors

23   and the APA concerning a variety of matters, including

24   grievances such as Mr. Meadows's.   The debtors note that the

25   settlement at issue in this case would be partially undone by

1    permitting the late-filed claims here.  That is an additional

2    basis for prejudice, but is an independent basis, and my ruling

3    would be the same without it.

4           By considering all the Pioneer factors, the Court

5    concludes that there is not a sufficient basis to allow the

6    Amended Claims under the excusable neglect standard.  For all

7    those reasons, the Court will grant the objection of the

8    debtors to proofs of claims 13478, 13788 and 13865, as set

9    forth in the debtors' objection.

10          I will sign the order consistent with this bench ruling.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25