| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------------x<br>In re:<br><br>AMR CORPORATION, *et al.*,<br><br>                Reorganized Debtors.<br>-----------------------------------------------------------------x | <u>NOT FOR PUBLICATION</u><br><br>Chapter 11<br><br>Case No. 11-15463 (SHL)<br><br>(Confirmed) |

<h2 style="text-align:center"><u>MEMORANDUM DECISION AND ORDER</u></h2>

**A P P E A R A N C E S :**

**WEIL, GOTSHAL & MANGES LLP**
*Attorneys for Reorganized Debtors*
767 Fifth Avenue
New York, NY 10153
By:    Stephen Karotkin, Esq.
           Alfredo R. Pérez, Esq.
           Stephen A. Youngman, Esq.


**STEPHEN C. DAVIDSON**
*Pro Se*
P.O. Box 190148
Miami, FL 33119

**SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is the objection of the above-captioned reorganized debtors (collectively, the "Debtors" or "American") to the proof of claim filed by Stephen C. Davidson in the Debtors' Chapter 11 cases. The Debtors argue that Mr. Davidson's proof of claim is barred by *res judicata*. For the reasons set forth below, the Debtors' objection is granted and Mr. Davidson's claims are disallowed and expunged.

<h2 style="text-align:center"><u>BACKGROUND</u></h2>

       Mr. Davidson is a former employee of American who filed a claim for $16,466,000 in damages arising out of his employment. *See* Ex. A to Debtors' Supplement to Objection to Proof

of Claim No. 7670 Filed by Stephen Davidson (the "Debtors' Supplement") [ECF No. 12302]. Three incidents are central to his proof of claim. (Hr'g Tr. 36:18-43:10, Dec. 4, 2014) [ECF No. 12371]. First, he allegedly suffered work-related injuries on July 8, 1999, after being "subjected to an act of assault and battery by his training instructor," Tom Streff, during a captain simulator training (the "First Incident").[1] Mr. Davidson complains of a second incident on September 19, 2002, where the same training instructor aggressively shook his hand during arbitration proceedings on Mr. Davidson's termination [2] in late 1999 (the "Second Incident").[3] As a result of those arbitration proceedings, Mr. Davidson was reinstated at American in September of 2004. (Hr'g Tr. 41:8-9).[4] Finally, Mr. Davidson was allegedly assaulted and battered again, on

---

[1] At the hearing before the Court on December 4, 2014, Mr. Davidson described the First Incident as follows:

> The first incident occurred [] July 8, 1999, when I was under the supervision of Captain Tom Streff, American Airlines supervisory manager . . . . During our training in Simulator Number 2 at the American Airlines Flight Academy he said he didn't like the way I spoke to my first officer while I was doing my mandatory captain's upgrade training. And he took it upon himself to raise his foot off the ground and [] kick me forcefully in close proximity to my head and face. That caused me quite a bit of pain. It shocked me. I was humiliated.

(Hr'g Tr. 38:13-23).

[2] *See* Ex. A to Debtors' Supplement, *Am. Airlines, Inc. and Allied Pilots Assoc.*, Grievance No. P-04-00 (Davidson) Arbitration Opinion and Award, 2 (July 7, 2003) (the "P-04 Arbitration").

[3] At the hearing before the Court on December 4, 2014, Mr. Davidson described the Second Incident as follows:

> The next [second] incident was on September 19, 2002. It was at . . . the arbitration . . . . The arbitrator . . . insist[ed] that Tom Streff . . . come over to the Allied Pilots Association headquarters and testify as to what happened on his side of the story. I ran into him by accident in the lobby . . . and he [Streff] insisted that I shake his hand, and when I shook his hand he squeezed my hand with such a force as to break bones. I'm 145 pounds. I'm five-foot-five. This man is six-foot-eight, 250 pounds . . . .

(Hr'g Tr. 40:6-18).

[4] *See* Ex. A to Debtors' Supplement, P-04 Arbitration, at 43.

2

October 19, 2004, by the same training instructor, in the lobby of American's flight academy (the "Third Incident").[5]

   A. **Pre-Petition Actions**

In January of 2002, after the First Incident, Mr. Davidson filed a civil complaint against American through his legal counsel. *Davidson v. Am. Airlines, Inc.*, Fla. Miami-Dade County Ct., Case No. 02-01208-CA-20 (the "Original Florida Complaint").[6] On October 31, 2005, after the Second and Third Incidents, he filed an amended complaint in the same case through legal counsel (the "Amended Florida Complaint").[7] The Amended Florida Complaint asserted four causes of action. The first two causes of action were for race discrimination and retaliation under the Florida Civil Rights Act. The second two causes of action were for negligent hiring and supervision, and vicarious liability for intentional acts by an employee, Mr. Streff, during Mr. Davidson's training and employment with American. Amended Florida Complaint, ¶¶ 35-63.

American moved for summary judgment on all counts asserted in the Amended Florida Complaint. On November 20, 2006, the state court granted American's motion for summary judgment as to Counts I, III, and IV.[8] The court denied American's motion for summary judgment as to Count II. On April 2, 2007, the jury in the Florida state court action found that

---

[5]    At the hearing before the Court on December 4, 2014, Mr. Davidson described the Third Incident as follows:

> The third incident occurred on October 19, 2004, I was down in the lobby . . . on a break from my simulator training. Tom Streff came over to me in an aggressive manner and said, "I heard you were back." [H]e stuck his hand out and insisted that I shake it, and when I refused he started to tap me on my right shoulder. I found that quite offensive. In fact, I considered it a third assault.

(Hr'g Tr. 41:2-42:3).

[6]    A copy of the Original Florida Complaint is attached as Ex. C to the Debtors' Supplement.

[7]    A copy of the Amended Florida Complaint is attached as Ex. D to the Debtors' Supplement.

[8]    A copy of the Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment from *Davidson v. Am. Airlines, Inc.* is attached as Ex. E to the Debtors' Supplement.

3

American had not unlawfully discharged Mr. Davidson in violation of the FCRA.[9] Thus, Mr. Davidson did not prevail on any of his asserted claims. On appeal, the Third District Court of Appeal for the State of Florida unanimously affirmed the lower court's decisions. *Davidson v. Am. Airlines, Inc.*, Nos. 3d07-2063, 3D07-1901, 3D08-234 (Fla. 3d Dist. Ct. App. April 29, 2009).[10] Mr. Davidson did not seek any further appeal or review. Debtors' Supplement, ¶ 11.

Mr. Davidson also filed multiple grievances with American and the Allied Pilots Association. In 2009, Mr. Davidson filed a grievance to obtain additional employee benefits that he thought would have been awarded in his earlier termination arbitration had American provided all the information that he alleges should have been provided. (*See* Hr'g Tr. 47:13-20).[11] Ultimately, the grievance initiated in 2009 was submitted to a Pre-Arbitration Conference in 2010.[12]

### B. Bankruptcy Proceedings

In November of 2011, the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. [ECF No. 1]. On July 12, 2012, Mr. Davidson filed a proof of claim against the Debtors in the amount of $16,466,000, listed on the Debtors' claims register as Claim No. 7670 (the "Proof of Claim"). The Proof of Claim seeks six categories of damages that Mr. Davidson describes as follows:

---

[9]    A copy of the Verdict Form from *Davidson v. Am. Airlines, Inc.* is attached as Ex. F to the Debtors' Supplement.

[10]   A copy of the Third District Court of Appeal's Opinion and subsequent Mandate of June 16, 2009, from *Davidson v. Am. Airlines, Inc.*, are attached as Exs. G and H to the Debtors' Supplement.

[11]   A copy of Mr. Davidson's grievance letter, initiating Grievance No. 10-029, is attached as Ex. I to the Debtors' Supplement.

[12]   *See* Ex. K to Debtors' Supplement, Letter from Captain David J. Bates to Ms. Amanda Rodriguez, July 29, 2010.

| | |
|---|---|
| 1. Loss Salary (22 years of captains pay. Refer to Exhibit #: 34. These are similarly situated AA pilot and the document was generated and provided AA – conservative estimate at $175,000 per year). | $3,850,000 |
| 2. Loss Retirement (based on what recent AA pilot retirees have received who had a 32 year pilot career at AA. If my career was uninterrupted, I would have received the same). | $2,500,000 |
| 3. Past and Future Medical Care / Treatment (lifetime estimate) physical, mental and emotional injuries directly relating to my employment at American Airlines Incorporated. | $2,000,000 |
| 4. Loss of Excellent Health. | $2,000,000 |
| 5. AA Long Term Disability Benefits (LTD) still due. 22 yrs. From October 4th 1999 (date AA Corporate Medical Director Thomas Bettes MD determined I was disabled – see exhibit 4, 17 and 27) to the mandatory retirement age of 65 on September 24th, 2021, minus the 6.5 yrs. of AA LTD received. | $1,116,000 |
| 6. Loss of Happiness / Enjoyment of Life Or whatever amount the judge determines to be fair. | $5,000,000 |
| | TOTAL OWED CREDITOR: $16,466,000 |

*See* Ex. A to Debtors' Supplement, Letter from Stephen C. Davidson, dated July 11, 2012.

In December of 2012, the Court entered an order authorizing the Allied Pilots Association and American to enter into a new collective bargaining agreement. Order Approving the New Allied Pilots Association Collective Bargaining Agreement, December 19, 2012. [ECF No. 5800]. That order also approved related settlement agreements between the Allied Pilots Association and American regarding the grievance of union member pilots. All grievances that were not specifically listed in a certain settlement letter were purported to be "completely extinguish[ed]" as part of the settlement. *See* Ex. L to Debtors' Supplement, ¶ 1. Mr. Davidson's grievance was not specifically listed. *See id*.

On May 22, 2014, the Debtors filed the 154th Omnibus Objection to Claims, seeking to expunge the Proof of Claim. [ECF No. 12048]. Mr. Davidson filed a response on June 16, 2014 [ECF No. 12090], seeking additional documents and information, and referencing his "2-page

5

letter explaining [his] claim along with a document package of 97 pages and 36 exhibit groups." [ECF No. 12090]. On June 26, 2014, the Debtors filed the Omnibus Reply to Responses to Debtors' 154th Omnibus Objection to Claims [ECF No. 12136] (the "Debtors' Reply"). On October 21, 2014, the Debtors filed the Debtors' Supplement, with extensive documentary evidence regarding Mr. Davidson's prior litigation in Florida state court.

On November 19, 2014, Mr. Davidson filed a request for the production of documents and information. [ECF No. 12337].[13] The Court issued a memorandum endorsed order, notifying the parties that they could address Mr. Davidson's request at the upcoming hearing. [ECF No. 12338]. Around November 21, 2014, the Court received a voluminous box of documents and medical records from Mr. Davidson. On December 4, 2014, the Court held a hearing on the Debtors' objection. Mr. Davidson appeared and argued on a *pro se* basis.

## DISCUSSION

The doctrine of *res judicata* is meant to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). "It is [well] settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *In re AMR Corp.*, 491 B.R. 372, 376 (Bankr. S.D.N.Y. 2013) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Under Florida law, the general "foundation of *res judicata* is that a final judgment in a court of competent jurisdiction is absolute and settles all issues actually litigated in a proceeding as well as those issues that could have been litigated."

---

[13]  Mr. Davidson requested documents relating to the First Incident, such as "an unedited copy of the July 8[], 1999 VHS Video Taped Recording . . . as proof that there was 'Brutal and Uninvited Physical Contact' made accompanied with and followed by additional 'Verbal Threats.'" [ECF No. 12337, ¶ 1]. He also requested his personnel records from American, along with many American policy guides on various topics and deposition transcripts from his prior proceedings.

6

*Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419, 425 (Fla. 2013) (internal citations omitted).

Specifically:

> A judgment on the merits rendered in a former suit between the same parties . . . upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.

*Id*. (internal citations omitted). Under Florida law, summary judgments may be given *res judicata* effect. *See Brescher v. Pirez*, 696 So. 2d 370, 375 (1997) ("[S]ummary final judgment was *res judicata* as to any claim against Brescher in his official capacity."); *see also Bazile v. Lucent Techs.* 403 F. Supp. 2d 1174, 1180 (S.D. Fla. 2005) ("The Plaintiff's original lawsuit in which he asserted claims including . . . Disparate Treatment Violation of the Florida Civil Rights Act of 1992 . . . was decided on summary judgment [and affirmed] . . . . A judgment rendered upon a motion for summary judgment is a final judgment on the merits and is entitled to the full preclusive effect of any final judgment.") (citing *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 110 (5th Cir. 1975)).[14]

Accordingly, *res judicata* will apply where there is an earlier decision that is (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties, and (4) upon the same cause of action. *See Philip Morris USA, Inc.*, 110 So. 3d at 425.

As to the first and second requirements, the Court finds that Mr. Davidson's Florida state court case constituted a final judgment on the merits by a court of competent jurisdiction. Mr. Davidson does not dispute that his claims from the Amended Florida Complaint were fully

---

[14] The Supreme Court of Florida has "recognized that a 'purely technical,' non-merits judgment 'may not be used as a basis for the operation of the doctrine of res judicata.'" *Philip Morris USA, Inc. v. Douglas*, 110 So.3d at 433 (quoting *Kent v. Sutker*, 40 So.2d 145, 147 (Fla. 1949)). Here, the Debtors argue, and Mr. Davidson has not disputed, that Mr. Davidson "thoroughly prosecuted" the litigation in Florida's state courts, and that the "Florida State Court properly considered and decided Mr. Davidson's claims . . . ." Debtors' Supplement, ¶¶ 25-26.

adjudicated through partial summary judgment and jury verdict, and then affirmed on appeal by Florida's Third District Court of Appeal. *See id.* The third requirement of *res judicata* is also satisfied because the Proof of Claim raises issues involving the same parties—Mr. Davidson and American—as Mr. Davidson's prior litigation.

As to the fourth and final requirement, the Court finds that the Proof of Claim involves the same causes of action as Mr. Davidson's Florida state court case. The Proof of Claim is not clear regarding the basis for the amounts sought. But as best the Court can discern, the First, Second, and Third Incidents provide the basis for Mr. Davidson's Proof of Claim. (Hr'g Tr. 36:18-44:6). [15] Those three incidents clearly were part of the Florida state court litigation. The First and Third Incidents were specifically identified and included in Counts III and IV, respectively, of the Amended Florida Complaint. *See* Ex. D to the Debtors' Supplement, ¶¶ 46, 56 ("On or about July 8, 1999, Davidson was physically assaulted by his training instructor . . . . On or about October 19, 2004, Davidson was again physically assaulted by the same training instructor."). In addition, the Second Incident was addressed, albeit in a more general way. More specifically, the Amended Florida Complaint alleged "Davidson . . . has been verbally

---

[15]    The following exchange at the hearing shed light on the bases for Mr. Davidson's Proof of Claim:

> THE COURT: Am I right in understanding that the complaints that you have date back to the incidents that we've been talking about, which is I guess two incidents?
> MR. DAVIDSON: There's actually three, sir.
> THE COURT: Why don't you tell me what they are.
> MR. DAVIDSON: The first incident occurred [o]n July 8, 1999 when I was under the supervision of Captain Tom Streff. . . .  He took it upon himself to . . . kick me forcefully . . . . The [second] incident was on September 19, 2002. On the third day of . . . arbitration . . . Tom Streff . . . squeezed my hand . . . .
> THE COURT: All right. And what's the third incident which is . . . the basis for your claim?
> MR. DAVIDSON: The third incident . . . occurred on October 19, 2004. . . . I was . . . in the lobby . . . on a break from my simulator training. . . . Tom Streff came over . . . and he stuck his hand out and insisted that I shake it, and when I refused he started to tap me on my right shoulder. . . .  I considered it a third assault.

(Hr'g Tr. 36:18-42:4); *id.* at 36:18-44:16 (describing the three incidents in detail).

8

harassed and physically intimidated by his flight instructors at American [] on a regular basis" both "[t]hroughout his pilot training and other aspects of his employment with American." *See id.* at ¶ 57. Thus, the Second Incident is clearly within the issues framed by the pleadings, or incident to or essentially connected with the subject matter of the Florida state court litigation. *See AMEC Civil, LLC v. State, Dep't of Transp.*, 41 So. 3d 235, 239 (Fla. Dist. Ct. App. 2010) (citations omitted) ("Courts properly look not only to the claims actually litigated in the first suit, but also to 'every other matter which the parties might have litigated and had determined, within the issues as [framed] by the pleadings or as incident to or essentially connected with the subject matter' of the first litigation. . . . [T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."). Therefore, the claims in the Proof of Claim are the same as those previously adjudicated in the Florida state court litigation.[16]

At the hearing, Mr. Davidson asserted three reasons why *res judicata* should not bar his Proof of Claim. First, he argued that American hid information in numerous proceedings. (Hr'g Tr., 56:12-25). Second, he alleged that American's managers and supervisors perjured

---

[16] Mr. Davidson's Proof of Claim attached two documents that were not from his Florida state court case: an award opinion from the P-04 Arbitration and a transcript from a grievance appeal hearing, dated May 27, 2010. But these documents do not support his Proof of Claim because they do not explain why or how the Debtors owe the amounts claimed. *See In re Residential Capital, LLC*, 2013 WL 5524728, at *4 (Bankr. S.D.N.Y. Oct. 4, 2013); *cf. id.* (claimants are required to conform to claim rules regardless of *pro se* status) (citing *Powers v. Runyon*, 974 F. Supp. 693, 696 (S.D. Ind. 1997)). In any event, these employee grievances were resolved as part of a global settlement agreement between American and Mr. Davidson's union, the Allied Pilots Association, that was approved by Court Order. [ECF No. 5800]; s*ee* Hr'g Tr. 21:21-32:27. While the Allied Pilots Association would have had no authority to settle Mr. Davidson's claims under state or federal law, the union is the authorized representative for its pilot members for matters under the collective bargaining agreement. *See Allied Pilots Assoc. v. AMR*, 471 B.R. 51, 58 (Bankr. S.D.N.Y. 2012) (noting that minor disputes under the Railway Labor Act for union employees at airlines include enforcement of existing contractual rights and are resolved by binding arbitration procedures); *see also Crayton v. Long Island R.R.*, 2006 WL 3833114, at *3 (E.D.N.Y. Dec. 29, 2006) ("All minor disputes must be adjudicated under RLA mechanisms, which include an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer.") (citing *Hawaiian Airlines v. Norris*, 512 U.S. 246, 253 (1994)); *see generally Lindsay v. Assoc. of Prof'l Flight Attendants*, 581 F.3d 47, 51 (2d Cir. 2009) (differentiating major disputes, which seek to create contract rights, from minor disputes, which seek to enforce contract rights).

themselves under oath.  (Hr'g Tr. 57:1-57:25).  For both of these arguments, Mr. Davidson contends that American knew that he sustained injuries as a result of the First Incident, but American either hid that information or lied about it.  (Hr'g Tr. 57:1-25).  But Mr. Davidson provided no evidence that American hid or lied about such matters.

In any event, Mr. Davidson's remedy for such alleged problems with his Florida state court case rested with the Florida state courts.  Under Florida law, Mr. Davidson could have sought relief from a judgment or order in his Pre-Petition Actions pursuant to Florida Rule of Civil Procedure 1.540 based on "newly discovered evidence . . . or fraud (whether . . . intrinsic or extrinsic) . . . ."  Fla. R. Civ. P. 1.540(b).  However, Rule 1.540 requires that such a motion for relief from judgment or order be filed "not more than 1 year after the judgment" or order.  *Id*.  Mr. Davidson has not made such a motion and it has been more than five years since the judgment and mandate of the Florida appeals court was entered in the relevant case.  *See* Exs. G & H to the Debtors' Supplement.  Having failed to raise any such issues before the Florida courts, he cannot now collaterally attack those proceedings.  *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1259 (2006) ("The doctrine of *res judicata* serves an important purpose in the judicial system of [Florida].  The foundation of *res judicata* is that a final judgment in a court of competent jurisdiction is absolute and settles all issues actually litigated in a proceeding as well as those issues that could have been litigated.").

Third, Mr. Davidson argues that *res judicata* should not apply because, he alleges, there were "three criminal acts committed on [American's] property and . . . three corporate cover-ups [of those criminal acts]," which "do not have an expiration date."  (Hr'g Tr., 58:14-59:12). Mr. Davidson does not provide evidence of criminal acts or corporate cover-ups.  Much like his allegations regarding lies and perjury, these allegations should have been timely raised with the

10

Florida courts if relevant to the Florida state court lawsuit. Moreover, Mr. Davidson cannot prosecute criminal actions. As to criminal prosecutions under federal law, the "Attorney General and United States Attorneys . . . retain 'broad discretion' to enforce the Nation's criminal laws.'" *See, e.g., United States v. Armstrong*, 517 U.S. 456, 464 (1996). "The decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Id*. For criminal prosecutions under Florida state law, the decision whether to prosecute or to dismiss charges is a determination generally made by the State of Florida. *See, e.g., Barnett v. Antonacci*, 122 So. 3d 400, 405 (Fla. Dist. Ct. App. 2014).[17]

## CONCLUSION

For all the reasons stated above, the Court finds that the Debtors have established that Mr. Davidson's Proof of Claim is barred by the doctrine of *res judicata*. The Debtors' objection is therefore granted, and the Proof of Claim is disallowed and expunged.

IT IS SO ORDERED.

Dated: New York, New York
January 28, 2015

*/s/ Sean H. Lane*
UNITED STATES BANKRUPTCY JUDGE

---

[17] At the hearing, Mr. Davidson appeared to identify another basis why he must be entitled to proceed with his claim. Mr. Davidson stated that American had accepted compensability of his cervical injury in 2007 as a result of the First Incident, which he believed triggered "benefits for long-term disability, as well as paid sick time, as well as full [] salary for a period of time," pursuant to American's employee handbook and collective bargaining agreement. (Hr'g Tr. 46:14-47:5). However, Mr. Davidson failed to produce any evidence that the acceptance of compensability for his cervical injury, particularly in light of the full adjudication of his Florida state court case, triggered anything beyond the benefits he currently receives.