**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

In re:                                                                                          Chapter 11

AMR CORPORATION, *et al.*,                                              Case No. 11-15463 (SHL)

           Reorganized Debtors.                                         (Confirmed)

-----------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S :**

**WEIL, GOTSHAL & MANGES LLP**
*Attorneys for Reorganized Debtors*
767 Fifth Avenue
New York, New York 10153
By:   Stephen Karotkin, Esq.
        Alfredo R. Pérez, Esq.
        Stephen A. Youngman, Esq.

**GLAD R. HAYES**
*Pro Se*
295 Harbour Way
Lakehills, Texas 78063

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is the Motion by *pro se* claimant Glad Hayes ("Ms. Hayes") for an Extension to File Proof of Claim Pursuant to Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Motion") (ECF No. 12606) and the Objection of Debtors Pursuant to 11 U.S.C. § 502(b) and Federal Rule of Bankruptcy 3007 to Glad Hayes' Request for Extension to File Proof of Claim (the "Objection") (ECF No. 12638).[1]

---

[1]    At a status conference held on September 23, 2015, Ms. Hayes and the Debtors agreed that this matter would be decided without a hearing unless one was requested by the parties. *See* Transcript of Hearing Held on

Ms. Hayes asserts that she did not receive actual notice of the deadline for filing claims in the above-captioned Chapter 11 case, and therefore, the Court should consider her proof of claim filed after the bar date as if it was timely. In the alternative, Ms. Hayes argues that she meets the excusable neglect standard to permit a late filed claim. Conversely, the Debtors seek an order granting the Debtors' objection to her claim as untimely. For the reasons stated below, Ms. Hayes' Motion is denied and the Debtors' Objection is granted.

## BACKGROUND

On November 29, 2011, American Airlines, AMR Corporation, American Group, Inc. and American, Inc. (collectively, the "Debtors") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. As of the petition date, all judicial proceedings against the Debtors were stayed pursuant to section 362(a) of the Bankruptcy Code. When the Debtors filed their Schedules of Assets and Liabilities (the "Schedules"), Ms. Hayes was listed as a holder of a contingent, unliquidated, and disputed claim in an undetermined amount. *See* Schedule F-2 (ECF No. 1430-1).

In May 2012, this Court entered an order (the "Bar Date Order") setting a bar date of July 16, 2012 (the "Bar Date"). *See* ECF No. 2609. Pursuant to the Bar Date Order, holders of scheduled claims listed as either "disputed," "contingent," or "unliquidated" were required to file a proof of claim by the Bar Date. Likewise, the Bar Date Order provided that a proof of claim "shall be deemed timely filed only if it is **actually received** by the Debtors' Court-approved claims agent, GCG, Inc. ("**GCG**") or by the Court, on or before the applicable Bar Date." Bar Date Order at 3.

---

September 23, 2015 at 12:7–13:21 (ECF No. 12636). Neither party requested a hearing. In fact, Ms. Hayes contacted chambers to express her preference that this Court make its decision solely based on the submitted documents.

GCG served by first class mail a copy of, among other things, actual notice of the Bar Date (the "Bar Date Notice") on thousands of parties including Ms. Hayes. Ms. Hayes was served at 295 Harbour Way, Lakehills, Texas 78063. Debtors also served her last known legal representative, Tom Hayes, at 560 Mountain Drive Lot 20, Lakehills, Texas 78063. *See* Affidavit of Service of Isabel Baumgarten, dated May 23, 2012, at 1665 (ECF No. 2888). In addition to the personalized first class mail delivery, GCG published the Bar Date Notice in ten publications, including, *The Wall Street Journal*, *The New York Times*, *USA Today*, *Dallas Morning News*, and *Forth Worth Star-Telegram*. *See* Notice of Certification of Publication of Katina Brountzas – Notice of Deadline for Filling Proofs of Claim, dated June 13, 2012 (ECF No. 3215).

Ms. Hayes' claim arises out of her pending legal dispute against American Airlines in an action styled as *Glad Rustyn Hayes v. American Airlines, Inc.*, Case No. 2011-CI-10057 (the "Texas Action"), before the District Court of Bexar County, Texas, 225th Judicial District. The Texas Action alleges wrongful termination of employment by American Airlines in June 2009, along with other allegedly improper workplace actions. *See* Ex. C, attached to Objection. Although Ms. Hayes is appearing *pro se* before this Court, attorney Tom Hayes is listed as her counsel in the Texas Action. *Id*. at 38.

On July 19, 2012, three days after the Bar Date, GCG received Ms. Hayes' proof of claim (the "Proof of Claim"). According to Ms. Hayes, on July 13, 2012, she had "discovered a version of the notice" on the internet and mailed her proof of claim to GCG on the same day. *See* Response To Objection Of Debtors To Glad Hayes' Request For Extension To File Proof Of Claim ("Hayes' Response") at ¶ 11 (ECF No. 12649). Ms. Hayes argues she was under the

impression that her filing would be timely "using the <u>international</u> legal rule of thumb that documents must be post marked by that day." Motion at 2.

In her pleadings before this Court, Ms. Hayes maintains that she never received the Bar Date Notice because of "unreliable" mail service and possibly even mail theft in her "rural county." Motion at 1; Hayes' Response at ¶¶ 10, 16. In support of her assertion, Ms. Hayes provided the following: (1) a copy of a November 12, 2015 police report filed with the Bandera County Sherriff's Department (the "Police Report") (ECF No. 12650); (2) her affidavit, dated July 29, 2015 (the "Hayes Aff."), attached to the Motion at 3; and (3) a June 11, 2015 *Bandera Bulletin* online article that discusses mail theft in Bandera County between May 26, 2015 and June 6, 2015 (the "Bulletin Article") (ECF No. 12649). Ms. Hayes also asserts that she never saw the Bar Date Notice in any of the ten publications as none of them targeted former employees of the Debtors. *See* Hayes' Response at ¶¶ 9, 10.

## DISCUSSION

"A bar date order is 'an integral step in the reorganization process.'" *In re AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) (quoting *In re Best Prods. Co.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992)). It enables "the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." *Id*. "If individual creditors were permitted to postpone indefinitely the effect of a bar order . . . the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined." *Fidelity Bank, N.A. v. Hooker Invs., Inc.* (*In re Hooker Invs., Inc.*), 937 F.2d 833, 840 (2d Cir. 1991).

4

### A. Alleged Lack of Notice of the Bar Date

The constitutional standard for due process requires that known creditors in a bankruptcy case, such as Ms. Hayes, receive actual notice of the bar date. *City of New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296–97 (1953). "Known creditors . . . must be afforded notice 'reasonably calculated, under all the circumstances, to apprise' them of the pendency of the bar date." *In re R.H. Macy & Co.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "[I]f a creditor is not given reasonable notice of the bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally discharged." *In re U.S.H. Corp.*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998). In Chapter 11, therefore, a known creditor must receive proper, adequate notice before its claim is barred forever. *See In re Best Prods. Co.*, 140 B.R. at 357. Furthermore, the bar date is strictly enforced except when a known creditor is not listed on the schedules and fails to receive notice of the bar date. *Id*. at 358.

It is well-settled that proof that a letter was properly addressed and placed in the mail system "creates a presumption that the letter was received in the usual time by the addressee." *In re AMR Corp.*, 492 B.R. at 663 (citing *Hagner v. United States*, 285 U.S. 427, 430 (1932). Thus, upon proof of mailing a properly addressed letter, a rebuttable presumption of receipt arises. *See R.H. Macy*, 161 B.R. at 359–60; *In re Worldcom, Inc*., 2005 WL 3875192, at *3 (Bankr. S.D.N.Y. Oct. 27, 2005) (noting that a "rebuttable presumption that an addressee received a mailed notice arises when the mailing party submits sufficient evidence to demonstrate the notice was properly addressed and mailed."). Nevertheless, if the mail comes back undeliverable then the sender will not be entitled to the presumption. *See In re Residential Capital, LLC*, 2015 WL

5

2256683, at *8 (Bankr. S.D.N.Y. May 11, 2015) (holding that the Court cannot presume that notice was received when the notice documents were returned as undeliverable).

Federal courts in New York have held "quite uniformly" that an affidavit of non-receipt is insufficient to rebut the presumption of receipt created by proof of mailing. *See In re Malandra*, 206 B.R. 667, 673 (Bankr. E.D.N.Y. 1997); *R.H. Macy*, 161 B.R. at 360 ("Movants' respective self-serving submissions asserting non-receipt . . . [are] insufficient to rebut the . . . presumption of receipt."); *In re Horton*, 149 B.R. 49, 58 (Bankr. S.D.N.Y. 1992) (noting that "affidavits of [creditor's] employees stand merely as general denials that [creditor] received the [n]otice and are therefore insufficient to rebut the presumption of receipt.").

However, testimony denying receipt that is accompanied by objective evidence such as tracking procedures can rebut the presumption of mailing. *See Hogarth v. N.Y.C. Health & Hosps. Corp.*, 2000 WL 375242, at *4–5 (S.D.N.Y. Apr. 12, 2000) (holding that the claimant successfully rebutted the mailbox presumption by presenting into evidence detailed logs of incoming and outgoing mail that contained no record of the letter in question); *see also In re Robinson*, 228 B.R. 75, 82 (Bankr. E.D.N.Y. 1998) (ruling that "[a]lthough the mere denial of receipt does not rebut the presumption, testimony denying receipt in combination with evidence of a standardized procedure for processing mail can be sufficient to rebut the presumption."). Likewise, the presumption may be rebutted by denial of receipt supported by evidence "that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable." *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985).

Because the bar date is such a significant tool of order and efficiency for all parties involved in a reorganization, "[c]ourts in the Second Circuit do not take this issue lightly." *In re*

*AMR Corp.*, 2014 Bankr. LEXIS 4314, at *6 (Bankr. S.D.N.Y. Oct. 9, 2014).  Accordingly, the heightened burden in this Circuit "recognizes that if a party was permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing simply by giving an affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled." *Id*.  "'Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary.'"  *In re Greenberg*, 526 B.R. 101, 105 (Bankr. E.D.N.Y. 2015) (quoting *In re Barquet Grp., Inc.*, 477 B.R. 454, 462 n.7 (S.D.N.Y. 2012)).

Applying these principles here, the Debtors have submitted evidence establishing that actual notice was provided to Ms. Hayes.  The Debtors presented two documents.  The first is the declaration of Karina Brountza, the Assistant Director of GCG, dated September 21, 2015 (the "Brountza Declaration"), attached as Exh. D to the Objection.  The second is Isabel I. Baumgarten's affidavit of service, dated May 23, 2012 (the "Baumgarten Aff."), attached as Ex. B to Ex. D of the Objection.  Ms. Baumgarten is the Senior Director of GCG and supervised the mailing of the Bar Date Notice to Ms. Hayes and other creditors listed on the Debtors' petition.  Both sworn statements allege that the Bar Date Notice was mailed via first class mail to Ms. Hayes and others on May 18, 2012 and none of the mailings were ever returned as undeliverable.  *See* Brountza Declaration ¶ 3; Baumgarten Aff. ¶¶ 2–4.  This is sufficient evidence to trigger the presumption that Ms. Hayes received the Bar Date Notice.  *See, e.g., In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 104–05 (Bankr. S.D.N.Y. 1997) (finding that an affidavit submitted by the president of the company stating that he oversaw the mailing of claims packages was sufficient to trigger the presumption that the claimants received the packages).

Ms. Hayes has not provided sufficient evidence to overcome the presumption.  In her Motion, Ms. Hayes claims that she did not receive the Bar Date Notice.  But such an assertion of

7

non-receipt is not sufficient to rebut the presumption. *See In re Ms. Interpret*, 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998) (noting that "a party must do more than merely assert that it did not receive the mailing; its testimony or affidavit of non-receipt is insufficient, standing alone, to rebut the presumption."); *In re Barquet Grp.*, 477 B.R. at 462 n.7 (noting that the mailbox presumption must be rebutted by objective evidence and not by invoking another presumption and not by a mere affidavit to the contrary); *see also In re O.W. Hubbell & Sons, Inc.*, 180 B.R. 31, 35 (N.D.N.Y. 1995) (finding that the bankruptcy court "gave the proper weight, i.e. none" to affidavit denying receipt of notice).

Subsequent to her original Motion, Ms. Hayes submitted additional evidence, including a news article and a police report. Both are intended to demonstrate a mail theft problem in the county where she lives in Texas. But neither is enough to overcome the presumption. Both exhibits relate to mail issues in May, June, or November of 2015, approximately three years after the Bar Date Notice was mailed to Ms. Hayes's address. Putting aside whether the news article is proper evidence, the article provides no evidence that a mail theft issue existed at the time the Bar Date Notice in this case was mailed in 2012. *See*, *e.g.*, Bulletin Article (noting that area mailboxes were "hit between May 26 and June 6" of 2015) (ECF No 12649). Similarly, the Police Report consists of Ms. Hayes' own complaint to the police in 2015 about mail service and does not relate to 2012. *See* Police Report at 3 ("Glad stated that after learning of reports of mail theft occurring in the area of her residence of 295 Harbour Way, she believes her mail has been stolen. She stated that this missing mail if [sic] from approximately 1 year ago.") (ECF No. 12650). As the Police Report merely recounts what Ms. Hayes told officers, it is essentially the same as her Motion's assertion of non-receipt, rather than the kind of objective contemporaneous evidence required to rebut the presumption. *In re Greenberg*, 526 B.R. at 106 (finding that

8

creditors who "failed to provide any evidence of non-receipt other than conclusory, unsupported denials . . . have failed to overcome the presumption of receipt.").

### B. Excusable Neglect

As an alternative argument, Ms. Hayes contends that her failure to timely file was due to excusable neglect under Bankruptcy Rule 9006(b)(1). Bankruptcy Rule 9006(b)(1) provides that "the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

The Supreme Court has held that the term "neglect" in its ordinary sense means "to give little attention or respect to a matter, or . . . to leave undone or unattended to esp[ecially] through carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 388 (1993) (citation and internal quotations omitted). Neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id*. Whether a claimant's neglect of a deadline is excusable, however, is an equitable determination. *Id*. at 395. A court should consider all relevant circumstances surrounding the claimant's omission, including "the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it is within the reasonable control of the movant, and whether the movant acted in good faith." *Id*. However, the *Pioneer* factors are "not given equal weight." *In re Lyondell Chem. Co.*, 543 B.R. 400, 409 (Bankr. S.D.N.Y. 2016).

The Second Circuit has adopted a strict standard on excusable neglect. *See In re Johns–Manville Corp.*, 476 F.3d 118, 124 (2d Cir. 2007); *In re Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005) ("[This Circuit has] 'taken a hard line' in applying the *Pioneer* test."). "[T]he equities will

9

rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule, and . . . where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Enron Corp.*, 419 F.3d at 123 (internal quotations omitted). The hard line approach concentrates predominantly on the reason for the claimant's delay, including whether it was within the reasonable control of the claimant because the other three *Pioneer* factors usually weigh in favor of the party seeking the extension. *Id.* at 122.

Therefore, under the *Pioneer* analysis, the Court must consider Ms. Hayes' reason for delay in filing her proof of claim and whether that reason was reasonably within her control. Here, Ms. Hayes' excuse for delay is that she did not receive notice due to alleged mail theft and or unreliable mail service in her rural county in Texas. *See* Motion at 2. As discussed above, however, Ms. Hayes has failed to rebut the presumption in favor of receipt.

Next, the Court considers the length of Ms. Hayes' delay and its potential impact on the judicial proceedings. There is no specific threshold governing when the lateness of a claim is "substantial." *Enron*, 419 F.3d at 128. Instead, courts consider the degree to which the delay might disrupt the judicial administration of that particular case. *Id*. Thus, the length of the delay, the complexity of the case, and the progress made in a case are all relevant considerations, but none is dispositive on its own. *Id*. at 128–29 (citing *Linder v. Trump's Castle Assocs.*, 155 B.R. 102, 108 n.10 (D.N.J. 1993)).

Ms. Hayes missed the Bar Date by only a few days, but she did not take prompt action to address the lateness of her claim. Ms. Hayes asserts the she was unaware of any issues with her Proof of Claim until July 2014 when the opposing attorney in the Texas Action informed her that he was considering moving for summary judgment due to the fact that she missed the Bar Date.

Hayes Response at ¶ 28. But Ms. Hayes then waited more than a year to file her motion in this Court seeking to allow her late filed claim. *See In re AMR Corp.*, 492 B.R at 667 (noting that a "Motion [filed] more than five months after the Court entered the Bar Date Order and more than three months after the Bar Date had passed" was a significant delay); *cf. In re Dana Corp.*, 2007 WL 1577763, at *5–6 (Bankr. S.D.N.Y. May 30, 2007) (finding that a "six-month delay is not excusable" especially when creditor was well aware of its claim and followed the bankruptcy case).

When considering the last factor of prejudice to the debtor, courts are concerned about opening the floodgates to potential claimants. *In re Dana Corp.*, 2007 WL 1577763, at *6; *see also In re Enron*, 419 F.3d at 132 n.2 ("[C]ourts in this and other Circuits regularly cite the potential 'flood' of similar claims as a basis for rejecting late-filed claims."). Ms. Hayes argues that the "opening the floodgates" consideration has "no bearing" on her individual case. Hayes' Response at ¶ 30. The Court disagrees. Concern over permitting late filed claims is particularly strong in a very large bankruptcy case such as this one. *See In re AMR*, 492 B.R. at 667 (noting that the floodgate concern is "not merely hypothetical in large [bankruptcy] cases"); *see also In re Glob. Aviation Holdings Inc.,* 495 B.R. 60, 67 (Bankr. E.D.N.Y. 2013) (noting that to permit potential creditor to "file a late claim based upon inadvertence, lack of familiarity with the bankruptcy process, or a mistaken assumption that the Debtor would voluntarily pay the claim" would encourage similarly situated creditors to do the same). This concern is heightened where, as here, the request for relief from a bar date is made when a case is well advanced. In these bankruptcy cases, there have been already been multiple and significant distributions to creditors. Thus, there would be real prejudice to the estate if this claim—and others like it—were allowed at this late date.

In sum, Ms. Hayes has not satisfied the high hurdle for excusable neglect set forth in *Pioneer*.

## **CONCLUSION**

Based on the foregoing, the Court finds that Ms. Hayes has received actual notice of the Bar Date, and denies her Motion seeking to allow her late filed claim. The Court rejects all other arguments raised by Ms. Hayes.[2] For these same reasons, the Court grants the Debtors' Objection to her claim. The Debtors are directed to submit an order on five days' notice.

Date: March 17, 2016
         New York, New York

                                                                */s/ Sean H. Lane*
                                                                UNITED STATES BANKRUPTCY JUDGE

---

[2] Ms. Hayes questioned this Court's ability to hear her motion due to jurisdictional concerns. *See* Hayes' Response at ¶ 4. This argument is rejected as this Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (I), and 28 U.S.C. § 1334.