| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------x<br>In re:<br><br>AMR CORPORATION, *et al.*,<br><br><br>                    Reorganized Debtors.<br>-----------------------------------------------------------x | <u>FOR PUBLICATION</u><br><br><br><br>Chapter 11<br><br>Case No. 11-15463 (SHL)<br><br><br>Confirmed |

<b><u>MEMORANDUM OF DECISION</u></b>

**A P P E A R A N C E S :**

**WEIL, GOTSHAL & MANGES LLP**
*Attorneys for Reorganized Debtors*
767 Fifth Avenue
New York, New York 10153
By:    Stephen Karotkin, Esq.
          Alfredo R. Perez, Esq.
          Stephen A. Youngman, Esq.

**LAWRENCE M. MEADOWS**
*Pro Se*
P.O. Box 4344
Park City, Utah 84060

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is the motion of the above-captioned reorganized debtors (collectively, the "Debtors" or "American") pursuant to Sections 524 and 1141 of the Bankruptcy Code to enforce the plan and the confirmation order against Lawrence M. Meadows (the "Motion"). [ECF No. 12587]. The Debtors filed the Motion against Mr. Meadows seeking to prevent him from continuing or commencing any action or proceeding against the Debtors for any conduct or claims that occurred or arose before the commencement of the Debtors' Chapter 11 cases on November 29, 2011. The Debtors seek this relief because they contend that Mr. Meadows has violated the injunction provisions of the Fourth Amended Joint Chapter 11 Plan, dated

September 23, 2013 (the "Plan") [ECF No. 10367-1] and the order confirming the Debtors' Plan (the "Confirmation Order") [ECF No. 10367] by continuing to pursue old litigation and commencing new actions (the "Legal Actions") against the Debtors for claims that were discharged under the Plan and Confirmation Order. The Debtors seek entry of an order: (i) finding that Mr. Meadows violated the Plan and the Confirmation Order by commencing and continuing the Legal Actions; (ii) enjoining Mr. Meadows from seeking any other relief against the Debtors based on any alleged conduct or claims that occurred or arose pre-petition; (iii) directing Mr. Meadows to dismiss the Legal Actions; and (iv) directing Mr. Meadows to communicate all matters concerning his litigation exclusively with American's outside legal counsel. *See* Motion ¶ 19.

For the reasons set forth below, the Court grants the Debtors' motion to enforce the discharge injunctions contained within the Plan and Confirmation Order against Mr. Meadows.

**BACKGROUND**

The Debtors filed for Chapter 11 bankruptcy on November 29, 2011. On October 21, 2013, this Court approved the Confirmation Order, which discharged all pre-petition claims against the Debtors except for those preserved by a properly filed proof of claim. The Plan went into effect on December 9, 2013 (the "Effective Date"). The Debtors served notice of the Confirmation Order and the Effective Date on all known creditors and parties in interest, including Mr. Meadows, on December 16, 2013. *See* Aff. of Service of Ira Nikelsberg at ¶ 2 & Exh. A at 1482–83 [ECF No. 11472].

Section 10.2 of the Plan contains a broad discharge provision, which provides in pertinent part:

> [U]*pon the Effective Date, all existing Claims against the Debtors . . . shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims . . . shall be*

2

> *precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or property, any other or further Claim . . . based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim . . . and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.*

Plan § 10.2 (emphasis added). The Plan also includes injunction provisions at Sections 10.5 and 10.6 (the "Plan Injunction"). Section 10.6 provides, in relevant part:

> [A]ll Persons or Entities who have held, hold, or may hold Claims . . . and all other parties in interest . . . *shall be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim . . . against the Debtors or the Reorganized Debtors or property of any of the Debtors or the Reorganized Debtors* other than actions to enforce the Plan or with respect to the allowance of Claims and Equity Interests . . . .

Plan § 10.6 (emphasis added). The Confirmation Order likewise enjoins parties from bringing any actions based on claims that have been discharged. *See* Confirmation Order ¶¶ 56, 61. The Plan and Confirmation Order also each include broad release provisions, which provide that on the Effective Date a claim holder "shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date." Plan § 10.3; Confirmation Order ¶ 62.

Mr. Meadows was employed as a pilot for American beginning in the early 1990s. He received long-term disability benefits from American from 2004 to December 26, 2007, at which time those benefits were terminated by American and he was placed on unpaid sick leave.[1] *See* Modified Bench Ruling as to Both (I) Gary Bryant and (II) Lawrence M. Meadows, entered

---

[1] American subsequently awarded Mr. Meadows disability benefits for a new condition and benefits retroactive to December 27, 2007. *See* Letter to Mr. Meadows re: Pilot Long Term Disability, dated July 31, 2013, at 1, 23, attached as Exh. 28 to Declaration of Stephen A. Youngman in Support of the Motion (the "Youngman Decl.") [ECF No. 12588-4].

3

October 9, 2014 ("Modified Bench Ruling") at 15–16 [ECF No. 12288]. Mr. Meadows was ultimately terminated from his employment with American in October 2011. *See id.* at 16.

Mr. Meadows filed a timely proof of claim for "Pilot Long Term Disability Payments" seeking $470,340, which consisted of a priority claim for $338,000 and an unsecured claim of $132,340. *See id.* 21. He subsequently filed three additional or amended proofs of claim. *Id.* at 22. The first amended claim sought "at least $500,000" for long-term pilot disability and Equal Employment Opportunity Commission ("EEOC") charges including wrongful termination and discrimination. *Id.* Attached to the first amended claim was a list of proceedings and lawsuits brought by Mr. Meadows against American,[2] including EEOC charges, a complaint alleging violations of the Sarbanes-Oxley Act of 2002 (the "SOX Action"), a Pension Benefits Committee Administration appeal, Grievance No. 12-011, and an appeal pending in the Eleventh Circuit. *See id.*; Claim No. 13478, attached as Exh. 7 to Youngman Decl. [ECF No. 12588-2]. The second amended claim was identical to the first amended claim except for including a second grievance proceeding. *See* Modified Bench Ruling at 22. The third amended claim simply corrected the amount of the second amended claim seeking priority status. *See id.* at 23.

Following a hearing on the Debtors' objection to Mr. Meadows' claims, this Court issued a bench ruling disallowing Mr. Meadows' amended proofs of claim as untimely because they did not relate back to his original claim. *See id.* at 28, 34. The Court also found that his original claim had already been fully resolved against him in one of the lawsuits identified in his claims. *Id.* 24–25. On appeal by Mr. Meadows, the District Court for the Southern District of New York

---

[2]    A detailed description of Mr. Meadows' legal proceedings is set forth in prior decisions, familiarity with which is presumed. *See* Modified Bench Ruling at 16–21; *see also Meadows v. AMR Corp.*, 539 B.R. 246 (S.D.N.Y. 2015), *appeal filed, In re AMR Corp.*, No. 15-3655 (2d Cir. 2015). This decision provides only a summary of the proceedings to the extent necessary to understand the present Motion.

affirmed. *See Meadows v. AMR Corp.*, 539 B.R. 246, 248 (S.D.N.Y. 2015), *appeal filed*, *In re AMR Corp.*, No. 15-3655 (2d Cir. 2015).

After the Plan was confirmed, Mr. Meadows nonetheless continued his campaign of litigation against American. Mr. Meadows filed a lawsuit in the United States District Court for the District of Utah (the "Utah Action") seeking to compel arbitration of the two grievances referred to in his amended claims. *See* Compl., *Meadows v. Allied Pilots Ass'n & Am. Airlines, Inc.*, Case: 14-cv-00115 (D. Utah 2014), attached as Exh. 19 to Youngman Decl. [ECF No. 12588-3]. The district court dismissed Mr. Meadows' claims. *See* Order at 1, attached as Exh. 37 to Supplemental Declaration of Stephen A. Youngman in Support of the Motion ("Suppl. Decl.") [ECF No. 12620-1]. Mr. Meadows then filed a request to reconsider, which the court denied. *See id.* at 4–5. But Mr. Meadows has since appealed that determination. *See* Transcript of Hearing Held on September 23, 2015 ("September 23, 2015 Hr'g Tr.") at 48:2–4 [ECF No. 12636]. Mr. Meadows also continued the litigation of one of the EEOC charges referenced in his amended claims. *See* EEOC Charge No. 540-2012-03194, attached as Exh. 15 to Youngman Decl. [ECF No. 12588-3]. The EEOC eventually issued a no-cause finding on this charge.[3] *See* Dismissal and Notice of Rights, attached as Exh. 16 to Youngman Decl. [ECF No. 12588-3]. As to the SOX Action, in November 2014, the administrative law judge had continued without date the matter pending Mr. Meadows' appeal of this Court's ruling on his amended proofs of claim. *See* Order Continuing Formal Hearing Sine Die, *Meadows*, Case No. 2013-SOX-16 (U.S. Dep't Labor Nov. 14, 2014), attached as Exh. 12 to Youngman Decl. [ECF No. 12588-2]. In June 2015, the administrative law judge denied Mr. Meadows' request to reschedule a formal hearing

---

[3] Mr. Meadows also filed an EEOC charge in June 2013, which was after the bankruptcy was filed but before confirmation. *See* EEOC Charge No. 540-2013-01436, attached as Exh. 17 to Youngman Decl. [ECF No. 12588-3]. In August 2013, the EEOC issued a no-cause finding on this charge. *See* Dismissal and Notice of Rights, attached as Exh. 18 to Youngman Decl. [ECF No. 12588-3].

on the matter. *See* Order Denying Motion to Request Rescheduling Formal Hearing and Revised Pre-Hearing Order at 4, *Meadows*, Case No. 2013-SOX-16 (U.S. Dep't Labor June 12, 2015), attached as Exh. 13 to Youngman Decl. [ECF No. 12588-2]. Mr. Meadows filed a motion for reconsideration of that decision. *See* Motion to Reconsider Order Denying Motion to Request Rescheduling Formal Hearing and Revised Pre-Hearing Order, attached as Exh. 14 to Youngman Decl.

In addition to the continued pursuit of his old litigation filed before confirmation, Mr. Meadows has filed a blizzard of new cases after confirmation based on American's alleged improper treatment of him. In April 2015, for example, Mr. Meadows filed an action in the United States District Court for the Northern District of Illinois (the "Illinois Action") alleging American violated the Americans with Disabilities Act ("ADA") by unlawfully terminating him and refusing to reassign him to a non-flying position or providing him with additional medical leave. *See* Compl. ¶¶ 5–6, *Meadows v. Am. Airlines, Inc.*, No. 15-cv-03899 (N.D. Ill. 2015), attached as Exh. 2 to Youngman Decl. [ECF No. 12588-1]. In addition, Mr. Meadows filed an "AIR21 whistleblower" complaint in May 2015, reporting American's alleged "deficient policies and practices relating to the treatment of its pilots with disqualifying medical conditions." *See* AIR21 Whistleblower Compl., attached as Exh. 4 to Youngman Decl., at Attachment 2 [ECF No. 12588-1]. The FAA has already determined that Mr. Meadows' AIR21 whistleblower complaint did not meet the necessary FAA criteria and dismissed the claim. *See* Letter to Mr. Meadows, attached as Exh. 33 to Creditor Lawrence M. Meadows Verified Objection and Response to Debtor's Motion ("Meadows' Objection") [ECF No. 12615-32]. Mr. Meadows then filed a second AIR21 whistleblower complaint on June 22, 2015, and a SOX whistleblower complaint on June 25, 2015 (the "Whistleblower Action"), both of which were subsequently dismissed.

*See* Secretary's Findings, 6-2450-15-093 (AIR21) & 6-1730-15-113 (SOX), attached as Exh. 34 to Suppl. Decl. [ECF No. 12620-1]. However, Mr. Meadows has objected to these dismissals and requested separate hearings on the second AIR21 complaint and the Whistleblower Action. *See* Exh. 36 to Suppl. Decl. [ECF No. 12620-1]. In July 2015, Mr. Meadows filed yet another EEOC charge alleging discrimination and retaliation against American, which was subsequently terminated by the EEOC. *See* Notice of Right to Sue, attached as Exh. 32 to Suppl. Decl. [ECF No. 12620-1]. Mr. Meadows also filed an additional grievance in April 2014, Grievance No. 14-026. *See* September 23, 2015 Hr'g Tr. at 67:21–68:11; 71:22–23; Letter to Judge Lane at 1 [ECF No. 12656]. In this new grievance, Mr. Meadows seeks reinstatement and reassignment, alleging American discriminated against him by violating the ADA and refusing to apply a contractual practice of reassigning sick or disabled pilots to other positions within the bargaining unit. *See* Meadows Grievance 14-XXX, attached to Letter to Judge Lane.

It is difficult to determine the current status of all of Mr. Meadows' litigation. But based on the pleadings and the representations made at the hearing on this Motion, it appears that at least the SOX Action, Illinois Action, Utah Action, Whistleblower Action, and the second AIR21 complaint remain pending, in some form or another. *See* September 23, 2015 Hr'g Tr. at 31:1–32:3; 34:2–35:7, 48:2–4; *see also* Complainant's Objection and Request for Hearing, dated September 3, 2015, attached as Exh. 36 to Suppl. Decl. [ECF No. 12620-1].

The Debtors argue that the Legal Actions arise from events that occurred pre-petition and therefore, are barred by the injunction and discharge provisions of the Plan and Confirmation Order. The Debtors further contend that Mr. Meadows has engaged in repeated communications with a number of American employees and executives about his pending litigation, which violates the injunction as an improper effort to collect on a discharged claim. The Debtors

7

further contend that these communications have become threatening. The Debtors state that they have previously asked Mr. Meadows to communicate only with its outside legal counsel regarding his pending litigation but he has refused to do so.

In his opposition, Mr. Meadows argues that he has never received any confirmation on his employment status with American, and thus, that he was never terminated from American. Mr. Meadows argues that the allegations raised in the actions he filed after confirmation are based on on-going, post-petition and post-confirmation conduct. Mr. Meadows thus contends his claims are permitted by virtue of the "continuous violation" doctrine.

## DISCUSSION

### A. Enforcing the Plan and Confirmation Order

"All courts retain the jurisdiction to interpret and enforce their own orders." *In re Residential Capital, LLC*, 508 B.R. 838, 849 (Bankr. S.D.N.Y. 2014) (citation omitted); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[A]s the Second Circuit recognized . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."). A bankruptcy court "retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." *Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 96 (2d Cir. 2005) (citation omitted). Furthermore, the "retention of jurisdiction by the bankruptcy court after confirmation is particularly appropriate where . . . the bankruptcy court expressly retains jurisdiction under the plan." *LTV Corp. v. Back* (*In re Chateaugay Corp.*), 201 B.R. 48, 66 (Bankr. S.D.N.Y. 1996); *see also In re Residential Capital, LLC*, 512 B.R. 179, 189 (Bankr. S.D.N.Y. 2014).

8

Section 524(a)(2) provides that a discharge under the Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524(a)(2). Upon confirmation of a plan, the debtor, subject to exceptions that are not applicable here, is discharged from debts that arose prior to the date of confirmation. *See* 11 U.S.C. § 1141(d)(1). Thus, once a plan is confirmed, parties are barred from pursuing claims that arose prior to confirmation. *See In re Residential Capital*, 508 B.R. at 846–47 (holding individual could not pursue state court claim against debtor post-confirmation, stating "[a]ny unasserted claims [he] had against the Debtors' estate were discharged pursuant to the Plan."). The reason for such a rule is obvious: it gives a debtor a fresh start from all claims covered by the bankruptcy. *See In re Chateaugay Corp.*, 201 B.R. at 60 (expressing concern over debtors' exposure to litigation with respect to claims discharged in the bankruptcy). Consistent with the fresh start policy, Section 101(5)(A) of the Bankruptcy Code broadly defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A). This broad definition permits "all legal obligations of the debtor, *no matter how remote or contingent*, [to] be dealt with in the bankruptcy case." *Wongco v. Federated Dep't Stores, Inc.* (*In re R.H. Macy & Co.*), 283 B.R. 140, 145 (S.D.N.Y. 2002) (citation omitted).

For purposes of a discharge in bankruptcy, a claim arises "at the time of the events giving rise to the claim . . . ." *Cost v. Super Media*, 482 B.R. 857, 862 (S.D.N.Y. 2012). In determining when a claim arises, courts are directed to "look to the relevant non-bankruptcy law that serves as the basis for the claim[.]" *Id.* (citing *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d

9

176, 196 (E.D.N.Y. 2010)); *see also Goldman, Sachs & Co. v. Esso Virgin Islands, Inc.* (*In re Duplan Corp.*), 212 F.3d 144, 151 (2d Cir. 2000). An employment discrimination claim "is deemed to arise 'on the date the employee learns of the employer's discriminatory conduct.'" *Cost*, 482 B.R. at 862 (quoting *Holmes*, 745 F. Supp. 2d at 196). "Employment discrimination claims that arise before the effective date of the confirmation of a reorganization plan under § 1141 are discharged by the effectuation of the plan." *Id.* at 861.

As a preliminary matter, Mr. Meadows argues that this Court does not have jurisdiction to decide the Motion. *See* Meadows' Objection at 21 [ECF No. 12615]. Mr. Meadows relies on a July 10, 2015 Order entered by this Court that denied his motion challenging a prior order of this Court. *See* July 10, 2015 Order [ECF No. 12586]. However, Mr. Meadows' reliance on the July 10, 2015 Order is misplaced. As stated in that order, the Court lacked jurisdiction to consider Mr. Meadows' request for clarification and explanation of its prior order because Mr. Meadows had already filed a notice of appeal of that prior order with the United States District Court for the Southern District of New York. *See id.* at 2. One of the issues Mr. Meadows presented on appeal was directly related to his request for clarification; thus, this Court did not have the jurisdiction at that time to consider his motion. *See Bialac v. Harsh Inv. Corp.* (*In re Bialac*), 694 F.2d 625, 627 (9th Cir. 1982). Here, there is no such impediment to the Court's jurisdiction over this Motion. In fact, the Court expressly retained jurisdiction under the Plan over such enforcement issues. *See* Plan § 11.1(f), (u). The Confirmation Order similarly provides that this Court "retain[s] jurisdiction over the matters arising in and under, and related to, the Chapter 11 Cases, as set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code." Confirmation Order ¶ 76; *see also id.* ¶ 73 ("The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this

10

Confirmation Order[.]"). As the legal proceedings currently being pursued by Mr. Meadows implicate the injunction provisions of the Plan and Confirmation Order, this Court has jurisdiction to decide the Motion. *See In re Nw. Airlines Corp.*, 2008 WL 630449, at *2–3 (Bankr. S.D.N.Y. Mar. 5, 2008).

Turning to the merits of the requested relief, the Court concludes that Mr. Meadows' Legal Actions are barred. The Plan discharged all claims against the Debtors and further enjoined claim holders from asserting a claim "based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim . . . and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date." Plan § 10.2; *see also id.* §§ 10.4–10.6 (injunction provisions of the Plan). The Confirmation Order contains an almost identical provision. *See* Confirmation Order ¶ 61; *see also id.* ¶ 56. Thus, the Plan and Confirmation Order cover all debts and claims that existed before the Effective Date, regardless of whether a claim was filed in the bankruptcy. *See* Plan § 10.2; Confirmation Order ¶ 61. The only question, therefore, is whether Mr. Meadows' litigations are based on claims that arose prior to the Effective Date. *See Gilbert v. N. Am. Airlines*, 2014 WL 1271057, at *6 (E.D.N.Y. Mar. 26, 2014). The Debtors persuasively demonstrate that the claims brought in the Legal Actions stem from: (1) the denial of Mr. Meadows' long-term disability benefits on December 26, 2007; and (2) Mr. Meadows' removal from the pilot seniority list on October 24, 2011. *See* Motion ¶ 23. Both of these events occurred before the filing of the bankruptcy case. Thus, all of the Legal Actions are barred by the Plan Injunction and Confirmation Order.

Mr. Meadows seeks to avoid the litigation bar of the Plan Injunction and Confirmation Order by arguing that the claims in the Legal Actions arise from American's ongoing post-

11

petition conduct. *See* Meadows' Objection at 22–26, 29–31. To support this argument, Mr. Meadows relies on *O'Loghlin v. County of Orange*, 229 F.3d 871 (9th Cir. 2000), and the "continuing violation" doctrine cited therein. *See* Meadows' Objection at 27–29. Under the continuing violation doctrine, "if a discriminatory act takes place within the limitations period and that act is 'related and similar to' acts that took place outside the limitations period, all the related acts-including the earlier acts-are actionable as part of a continuing violation." *O'Loghlin*, 229 F.3d at 875. But *O'Loghlin* is distinguishable from the present case and actually supports enforcing the Plan against Mr. Meadows. The plaintiff in *O'Loghlin* alleged three separate instances in which her employer violated the ADA, all occurring while she was a current employee. *See id.* at 873. The court held that the plaintiff could not recover for any discrimination that took place before her employer's discharge in bankruptcy. *See id.* at 874–76. Unlike the plaintiff in *O'Loghlin*, however, Mr. Meadows was terminated prior to the Effective Date. As such, all claims arising out of his employment and termination were discharged. *See In re Nw. Airlines*, 2008 WL 630449, at *5–6 (distinguishing *O'Loghlin*); *Kresmery v. Serv. Am. Corp.*, 227 B.R. 10, 15–16 (D. Conn. 1998) (rejecting plaintiff's argument that debtor's discrimination continued beyond the confirmation date and thus, constituted actionable post-confirmation claims).[4]

---

[4]  Mr. Meadows references this Court's decision regarding another individual, Marcelline Mesidor, to support his continuing violation argument. *See* Meadows' Objection at 29–31; September 23, 2015 Hr'g Tr. at 31:12–14; 33:9–13; 38:8–13. However, the facts surrounding Ms. Mesidor's claims are easily distinguishable from the present case. *See* September 23, 2015 Hr'g Tr. at 32:11–20. Unlike Mr. Meadows, Ms. Mesidor had alleged claims of discrimination against American based on conduct that occurred post-petition while she was a current employee. *See* Aff. of Marcelline Mesidor, attached to Request for Payment of Administrative Expenses of Chapter 11 [ECF No. 11800]. This Court held that Ms. Mesidor's claims arising from American's pre-petition conduct were discharged pursuant to the Plan and Confirmation Order and enjoined her from commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims against the Debtors, arising from alleged conduct that occurred pre-petition. *See* Order Denying Marcelline Mesidor's Request for Payment of Administrative Expenses of Chapter 11 at 2 [ECF No. 12069]. Ms. Mesidor was only permitted to pursue discrimination claims for events occurring post-petition but pre-confirmation consistent with her right to commence an action within 90 days of receipt of an EEOC right to sue letter. *See id.*; Transcript of Hearing Held on April 17, 2014 at 15:13–25; 17:15–20:7 [ECF No. 12012]. Such a preservation of rights is not applicable here.

12

Mr. Meadows now argues that he was never terminated and that his final termination has never been confirmed by American. *See* Meadows' Objection at 5–7, 31–32. Yet his position contradicts the facts established in this case and his own prior statements. *See, e.g.,* Letter from Mr. Meadows to Captain Keith Wilson at 4, attached as Exh. 30 to Suppl. Decl. [ECF No. 12620-1] (stating, "the record facts are clear that, I WAS TERMINATED BY AA . . . ."); Compl. ¶¶ 6, 48, *Meadows v. Am. Airlines, Inc.*, No. 15-cv-03899 (N.D. Ill. Apr. 30, 2015), attached as Exh. 2 to Youngman Decl. (stating that on October 24, 2011, "American removed Meadows from the pilot seniority list and terminated his employment . . . ."); Transcript from Hearing Held on April 17, 2014 at 55:23–56:6 [ECF No. 12012] (Mr. Meadows' counsel stating, "termination and removal from the seniority list" constitute American's retaliatory acts). Indeed, three neutral decision makers have determined that Mr. Meadows was terminated pre-petition.[5] *See* Secretary's Findings, 6-2450-15-093 (AIR21) & 6-1730-15-113 (SOX) at 2, attached as Exh. 34 to Suppl. Decl. [ECF No. 12620-1]; Secretary's Findings, 4-1050-11-185 at 2, attached as Exh. 41 to Suppl. Decl. [ECF No. 12620-3]; Decision and Award at 59, *In re Distr. Equity by Allied Pilots Ass'n* (Oct. 15, 2013) (Goldberg, Arb.), attached as Exh. 5 to Meadows' Objection [ECF No. 12615-5]. Mr. Meadows provides no basis to refute the avalanche of evidence and statements attesting to his termination. *See Helmer v. Briody*, 747 F. Supp. 1020, 1027 (S.D.N.Y. 1990) ("[A]n individual's employment status is normally determined by objective evidence, consisting of the employer's records, practices and procedures."). Nor has he justified why he should be allowed to contradict his earlier statements about his termination. *See In re G.S. Distrib., Inc.*, 331 B.R. 552, 564–65 (Bankr. S.D.N.Y.

---

[5] The fact that Mr. Meadows receives long-term disability benefits does not affect his status as an employee. *See E.E.O.C. v. CNA Ins. Cos.*, 96 F.3d 1039, 1044–45 (7th Cir. 1996) (former employee who was receiving long-term disability benefits under employer's benefit program found to no longer have an "employment position" and thus, could not bring a claim under the ADA against her former employer).

13

2005) (stating that courts have "discretion in determining whether a party should be judicially estopped from contradicting a prior position in a later litigation[,]" and discussing judicial estoppel standard).

Mr. Meadows relies on his post-petition claims of retaliation, which are based on American's refusal to reinstate him as an employee. *See* Letter to Marjorie Powell dated May 15, 2015, attached as Exh. 6 to Youngman Decl. [ECF No. 12588-1] (Mr. Meadows stating that if his demands were not met he "will continue to suffer from American's ongoing discrimination and retaliation, including but not limited to blacklisting, *refusal to rehire*, and denial of benefits, in violation of the [CBA, ADA, SOX, and AIR21]") (emphasis added)). But American has not employed Mr. Meadows since before its petition date. American's continued denial to accede to Mr. Meadows' demands to be rehired does not constitute new discriminatory and retaliatory conduct. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (holding ongoing effects of a prior discriminatory act are insufficient to establish continuing violation); c*f. Browning v. MCI, Inc.* (*In re Worldcom, Inc.*), 546 F.3d 211, 219–21 (2d Cir. 2008) (finding no post-petition harm where the debtor only maintained a pre-petition trespass, and no new, additional, and independent harm was alleged). Instead, the Legal Actions are premised only upon the same employment status that underlie Mr. Meadows' proofs of claim, which have already been denied. *See, e.g.,* Compl., *Meadows v. Am. Airlines, Inc.*, No. 15-cv-03899 (N.D. Ill. Apr. 30, 2015), attached as Exh. 2 to Youngman Decl.; Motion to Request Rescheduling Formal Hearing, *Meadows v. Am. Airlines, Inc.*, No. 2013-SOX-16 (May 4, 2015), attached as Exh. 3 to Youngman Decl.; AIR21 Whistleblower Compl., attached as Exh. 4 to Youngman Decl., at Attachment 2; Whistleblower Online Compl., attached as Exh. 5 to Youngman Decl. Indeed, the relief sought in the Legal Actions is the same as that sought pre-petition: reinstatement to the

14

pilot seniority list or reassignment to a non-flying position and reinstatement of non-revenue travel benefits.

Similarly, the Debtors' refusal to grant benefits that Mr. Meadows has been seeking since before plan confirmation is not a new violation and does not constitute a post-petition harm.[6] *See In re Worldcom*, 546 F.3d at 221; *see also Kresmery*, 227 B.R. at 15–16 (rejecting plaintiff's argument that his employer's alleged discriminatory conduct was on-going and occurred post-confirmation because it continued to refuse to re-hire him). Finally, it is worth noting that the continuing violation doctrine in the Second Circuit "is generally viewed with disfavor . . . and should be applied only on a showing of compelling circumstances." *Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 564 (S.D.N.Y. 2012) (quoting *Bissinger v. City of New York*, 2007 WL 2826756, at *5 (S.D.N.Y. Sept. 24, 2007)). There are no compelling circumstances here that justify imposing the doctrine.

As the Legal Actions relate to American's conduct prior to the Effective Date, the Court finds that they are barred and discharged by the injunction provisions in the Plan and Confirmation Order and Sections 524(a)(2) and 1141(d) of the Bankruptcy Code. *See Cost*, 482 B.R. at 861–62 (finding employment discrimination claims brought post-confirmation were barred because they arose prior to the effective date of the plan); *Gilbert v. N. Am. Airlines*, 2014 WL 1271057, at *6–7 (holding chapter 11 plan's discharge clause and the injunction provisions in Sections 1141(d) and 524(a) of the Bankruptcy Code "barred, terminated, discharged and

---

[6] To be clear, the Debtors do not seek now, nor have they ever sought, to enjoin Mr. Meadows from pursuing Grievance No. 12-011. *See* September 23, 2015 Hr'g Tr. at 20:20–23, 25:14–19. Furthermore, American continues to provide Mr. Meadows with his long-term disability benefits. *See id.* at 22:21–23.

Mr. Meadows has alleged that American stopped paying his disability payments without cause or notice, thereby constituting discrimination and/or retaliation. Meadows' Objection at ¶¶ 45, 59. However, it appears that this singular instance was due to an administrative error and the missed payment was subsequently made in full approximately two weeks after it should have originally been made. *See* September 23, 2015 Hr'g Tr. at 22:23–23:16.

15

enjoined plaintiff's claims arising out of the alleged discriminatory conduct of [his employer]" that occurred before the plan's effective date).

### B. Breadth of the Injunction

The Debtors request this Court: (1) enjoin Mr. Meadows from seeking any further relief against the Debtors based on any alleged conduct or claims that occurred or arose pre-petition; (2) direct Mr. Meadows to dismiss the Legal Actions pending against the Debtors; and (3) direct Mr. Meadows to communicate all matters concerning his litigation exclusively with American's outside legal counsel. *See* Motion ¶ 19.

The Second Circuit has also set forth the list of factors to consider when restricting a party's access to courts:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). The Court finds that the Debtors have satisfied the requirements under applicable law as to its first two requested injunctions. More specifically, the Court finds that Mr. Meadows' litigation has entailed duplicative lawsuits, caused needless expense to the Debtors, and imposed an unnecessary burden on courts across the country. The Debtors are not requesting that the Court impose an absolute ban on Mr. Meadows' access to the courts. Rather, the Debtors' request is consistent with the injunction provisions of the Plan and Confirmation Order. *See In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984) (stating "traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant[,]" but rather the

16

court in its discretion need only review the vexatious and harassing nature of the litigant's filing history). Such an injunction is appropriate because Mr. Meadows' continued litigation threatens the Debtors' fresh start. *See In re Chateaugay Corp.*, 201 B.R. at 60; *id.* at 67 (noting that courts may, and frequently do, enjoin parties from commencing actions in violation of orders of a bankruptcy court) (collecting cases); *see also Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992) (noting the discharge injunction of Section 524(a) furthers the fundamental fresh start policy of the Bankruptcy Code).

The Court reaches a similar conclusion as to the Debtors' third request to limit Mr. Meadows' contacts to American's outside counsel rather than directly with the Debtors. Mr. Meadows' repeated communications with the Debtors may properly be characterized as attempts to collect on a pre-petition debt that was discharged. *See, e.g.*, Letter re: Plaintiff's Confidential Settlement Proposal, attached as Exh. 21 to Youngman Decl. [ECF No. 12588-3]; Letter to Marjorie Powell dated May 6, 2015, attached as Exh. 1 to Youngman Decl. [ECF No. 12588-1] (stating "my litigation [against American] will have already spiraled out of control in multiple forums"). Such attempts are impermissible under the Bankruptcy Code and the injunction provisions found in the Plan and Confirmation Order. *See* 11 U.S.C. §§ 524(a), 1141(d); *In re Chateaugay Corp.*, 201 B.R. at 57 (finding party's "threats of still further lawsuits" attacked the sale order, plan, confirmation order, and bankruptcy process as related to the debtor's Chapter 11); *cf. In re Nassoko*, 405 B.R. 515, 519–20 (Bankr. S.D.N.Y. 2009) (noting that Section 105 provides statutory authority to issue orders necessary and appropriate to carry out provisions of the Bankruptcy Code, including a violation of discharge injunction). Such communications are also inappropriate in light of the Debtors' retention of outside legal counsel and their repeated requests that Mr. Meadows direct his communications regarding his litigation to that counsel.

17

*See, e.g.*, Letter to Mr. Meadows dated May 19, 2015, attached as Exh. 25 to Youngman Decl. [ECF No. 12588-4]. Moreover, several of these communications are unprofessional at best and threatening at worst. *See* Transcript of Recorded Voicemail from Lawrence M. Meadows to Marjorie Powell, May 1, 2015, attached as Exh. 22 to Youngman Decl. [ECF No. 12588-3]; Letter to Marjorie Powell dated May 6, 2015, attached as Exh. 1 to Youngman Decl. [ECF No. 12588-1]. Given the entire factual record before the Court, therefore, it is appropriate to enjoin Mr. Meadows from contacting personnel at American as to claims discharged in this bankruptcy, including the Legal Actions. *See In re Andrus*, 189 B.R. 413, 416–17 (N.D. Ill. 1995) (upholding an injunction against a creditor that "was narrowly tailored" to protect a debtor from a creditor attempting to collect on pre-petition debts post-discharge); *cf. In re Beker Indus. Corp.*, 57 B.R. 611, 631 (Bankr. S.D.N.Y. 1986) (noting power of bankruptcy court to enjoin threats to property of the estate, including incurring significant litigation expenses). Importantly, the requested injunction does not prevent Mr. Meadows from contacting American when appropriate. It does not preclude Mr. Meadows from contacting American to the extent he is permitted to do so in connection with his prior employment, nor does it limit Mr. Meadows' conduct in his position as founder of the Disabled Pilots Foundation or in any other similar organization. *See* Meadows' Objection at 35.

       The Court rejects Mr. Meadows' argument that the requested injunction amounts to unlawful interference in a government investigation. *See id.* at 33–34. There is no evidence in the record to support such a claim. Similarly, the Court does not agree that the injunction improperly deprives Mr. Meadows of his: (1) statutory employee rights under the "ADA, SOX, AIR21, and Dodd Frank Acts"; (2) contractual and constitutional first amendment right of free speech; and (3) rights as an AAG shareholder. *See id.* at 32–37. Indeed, the relief sought here is

18

consistent with applicable law. *See* 11 U.S.C. § 524(a)(2) (providing that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt . . . ."); *Nicholas v. Oren* (*In re Nicholas*), 457 B.R. 202, 224–25 (Bankr. E.D.N.Y. 2011) (finding *pro se* party violated the debtor's discharge by continuing to pursue recovery of a pre-petition claim and granting the debtor's motion to hold him in contempt).

Finally, the Court notes that the Debtors have not requested sanctions against Mr. Meadows at this time. However, to the extent Mr. Meadows does not comply with the injunction to be issued consistent with this memorandum of decision, the Court will consider such a request. *See In re Nicholas*, 457 B.R. at 224–25 (finding party knowingly violated debtor's discharge and imposing sanctions for civil contempt).

## **CONCLUSION**

For the reasons set forth above, the Court grants the Debtors' motion to enforce the Plan and Confirmation Order against Mr. Meadows. The Debtors shall serve this Memorandum of Decision on Mr. Meadows and file proof of such service on the Case Management/Electronic Case Filing Docket. The Debtors shall also submit a proposed order on five days' notice. The proposed order must be submitted by filing a notice of the proposed order on the docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon Mr. Meadows.

Date:   New York, New York
        April 14, 2016

                                              */s/ Sean H. Lane*
                                              UNITED STATES BANKRUPTCY JUDGE