Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorney for Debtors
and Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
AMR CORPORATION, et al.,                :        Case No. 11-15463 (SHL)
                                        :
                    Debtors.            :        (Jointly Administered)
                                        :
                                        :        Re: ECF No. 13078
-------------------------------------------------------------x
```

**DEBTORS' OBJECTION TO CREDITOR LAWRENCE M.**
**MEADOWS'S MOTION TO ENFORCE THIS COURT'S AGREED ORDER**

AMR Corporation and its related debtors, as debtors and reorganized debtors (collectively, the "**Debtors**"), submit this Objection to *Creditor Lawrence M. Meadows Motion to Enforce this Court's Agreed Order Signed on 5/16/2018, Approving Settlement Agreement Resolving Certain Pending EEOC Litigation [ECF No. 12898], and to Compel Debtors AMR Corp., American Airlines, Inc., Envoy Air, Inc., and Claims Agent GCG Inc.'s Compliance Thereof* (ECF No. 13078) (the "**Motion**").

1.      Despite no showing of actual harm or prejudice, and a lack of standing, Meadows asks this Court to (i) expunge a $9.8 million proof of claim filed on behalf of the United States Equal Employment Opportunity Commission ("**EEOC**") as part of the settlement approved by consent decree (the "**Consent Decree**") and (ii) reinstate four proofs of claim,

totaling approximately $205,300[1], that were resolved under the Consent Decree. The EEOC and the parties whose claims were settled support the Consent Decree. As stated on the record at the hearing on the Debtors' motion to release funds from the disputed claims reserve, the Debtors will not make a distribution on the EEOC proof of claim until Meadows's appeal is resolved. Further, all of Meadows's proofs of claim have been disallowed and expunged. Therefore, the Motion should be denied.

## Reply

### I.   Meadows Fails to Establish Any Harm to the Debtors, their Estates, or Creditors

2.   Contrary to Meadows's assertion of harm (*see* Motion, ¶¶ 1, 2, 25, 28), the Debtors' administrative act of updating the claims register under the terms of this Court's *Agreed Order Pursuant to Fed. R. Bankr. P. 9019(a) Approving Settlement Agreement Resolving Certain Pending EEOC Litigation* (ECF No. 12898) (the "**Agreed Order**"), attached as **Exhibit B**, neither prejudices the Debtors, their estates, or their creditors nor violates this Court's orders, the orders of the District Court for the District of Arizona, the Consent Decree, or the Debtors' Fourth Amended Joint Chapter 11 Plan.

3.   Before the entry of the Agreed Order, and the subsequent update to the claims register, the EEOC had an unresolved proof of claim for an unliquidated amount. *See* Proof of Claim No. 9676, attached as **Exhibit C**. Following this Court's entry of the Agreed Order, Claim No. 9676 was expunged and the claims register was updated to reflect Claim No. 13919 allowed by settlement at $9.8 million. *See* Proof of Claim No. 13919. If the

---

[1] The Consent Decree resolved the claims of Darla Alvarado (Claim No. 727 for $10,000), Sherrie Redd (Claim No. 7355 for $155,297.04), Micah Peterson (Claim No. 10774 for $40,000), and the EEOC (Claim No. 9676 for an unliquidated amount) (collectively, the "**Claims**"). Contrary to Meadows's assertion, no party ever valued the EEOC's claim at $100 million. *See* Motion, ¶ 1. Rather, the Debtors made a general statement in Court that the original ask of the EEOC during the parties' negotiations was much higher (ten times) than what the parties eventually settled for. *See* Hr'g Tr. 31:11–12, Feb. 1, 2018 (ECF No. 12876), excerpt attached as **Exhibit A**.

settled amount under the Consent Decree is increased on appeal, the claims register will be updated.

4.      Although Meadows fails to specify how he is harmed by the claims register update, it appears he is concerned that sufficient funds be withheld in the disputed claims reserve and that his claims are preserved by the EEOC's original proof of claim.  *See, e.g., Creditor Lawrence M. Meadows Motion for Reconsideration of his Individual Proof of Claims Nos. 13478, 13788, and 13865 with Respect to This Court's Disallowance of His American's with Disabilities Act ("ADA") Claims of Disability Discrimination Pursuant to Fed. R. Bankr. P. Rule 3008* (ECF No. 13077), ¶ 18; *Creditor Lawrence M. Meadows Motion for Reconsideration of Court's Order Authorizing Release of Excess Reserve Funds Held in Disputed Claims Reserve Signed on 12/12/2018 (Doc. 13176), in Accordance with Fed. R. Bankr. P. Rule 9023* (ECF No. 13186) (the "**Motion to Reconsider**"), ¶¶ 18–23.

5.      The Debtors represented to Meadows and this Court that there would be no distribution on the EEOC claim until after Meadows's appeals are resolved.  *See* Hr'g Tr. 12:24–13:2, Dec. 6, 2018, excerpt attached  as **Exhibit D**; *see also Debtors' Omnibus Reply to Objections to Debtors' Renewed Motion for Entry of Order Authorizing Release of Excess Reserve Funds Held in Disputed Claims Reserve* (ECF No. 13157) (the "**DCR Reply**"), ¶ 7, attached as **Exhibit E**.  If Meadows has concerns about distributions from the disputed claims reserve, they will be addressed at a hearing on his Motion to Reconsider.  Thus, no harm will come to Meadows, or "the 246 similarly-situated aggrieved disabled pilot employees," by the Debtors' update to the claims register.

6.      Meadows also has no claim to preserve by the EEOC's proof of claim, to the extent such preservation were possible.[2]  On October 31, 2016, the Second Circuit entered a Summary Order affirming this Court's disallowance and expungement of Meadows's proofs of claim.  *See* Summary Order, attached as **Exhibit F**.  The mandate was issued on December 2, 2016, and not appealed.  Thus, Meadows's claims in this bankruptcy case have been fully and finally adjudicated, leaving nothing for the EEOC's claim to preserve.

## II.    Meadows Lacks Standing to Enforce the Consent Decree

7.      Although Meadows styles his Motion as a request to enforce this Court's Agreed Order, the relief he requests relates instead to various provisions of the Consent Decree.  *See* Motion, ¶¶ 1, 2, 22 (complaining that the claims register may not be updated until following the passage of the Effective Date, as defined in the Consent Decree).

8.      Under the Consent Decree, the "**Effective Date**" does not occur until the later of "(i) the date it is signed by [the District Court for the District of Arizona] or (ii) the date on which an order from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approving the monetary relief provided for in this Decree becomes final and non-appealable."  Consent Decree, ¶ 8, attached as **Exhibit G**.  The Consent Decree further contemplated that the claims register would not be updated to reflect the withdrawal of the Claims or the $9.8 million settlement until after the Effective Date.  While the Agreed Order incorporated the terms of the Consent Decree by reference, it also authorized the claims agent to "update the claims register in accordance with this Order and the Consent Decree."  *See* Agreed Order, p. 2.  Thus, any complained action relates not to the Agreed Order, but rather to the Consent Decree itself.

---

[2] "Piggybacking," a concept in employment law that allows a claimant to waive EEOC filing requirements, does not apply to proofs of claim in bankruptcy.  *See* Fed. R. Bankr. P. 3001(e)(2) (setting forth claim transfer rules); 3003(c)(3) (setting forth timing rules).

9.      Paragraph 39 of the Consent Decree provides:  "There is no private right of action to enforce Defendants' obligations under the Decree and only the [EEOC] may enforce compliance."  *See* Consent Decree, ¶ 39.  The EEOC has not sought to prohibit the Debtors from its administratively updating the claims register, and Meadows has no right to enforce the Consent Decree.  Thus for this reason alone, the Motion should be denied.

## **Conclusion**

10.     The Debtors respectfully request that this Court deny the Motion and grant such other and further relief as is just.

Dated: January 4, 2019
          Houston, Texas

                                        */s/ Alfredo R. Pérez*                                   
                                        Alfredo R. Pérez
                                        WEIL, GOTSHAL & MANGES LLP
                                        700 Louisiana Street, Suite 1700
                                        Houston, Texas 77002
                                        Telephone: (713) 546-5000
                                        Facsimile: (713) 224-9511

                                        Attorney for Debtors
                                        and Reorganized Debtors

**Exhibit A**

**Excerpt from February 1, 2018 Hearing Transcript**

1    with prejudice until such time that the debtors provide

2    proper notice to all 958 of American's disable pilots, and

3    all of Envoy's pilots, and all corporate officers who are

4    potentially aggrieved individuals and would allow such

5    pilots to either file claims outside of the settlement for

6    any discrimination or retaliation they suffered or include

7    them in a settlement or allow them to continue with their

8    ADHR.  Those are lawsuits that are currently pending.

9              Otherwise, the American's disabled pilots will be

10   -- who are aggrieved individuals will be left

11   (indiscernible) without a forum to resolve their remedies.

12   That's all I have, Your Honor.  Thank you.

13             THE COURT:  Thank you very much.  All right.  I'd

14   appreciate it.  I don't know if this is coming from the EEOC

15   or from the debtors to address a few points.  One is the

16   exclusion of the pilots from the class and relatedly to

17   address the language about the grieved employees.  There

18   seems to be a notion that this is somehow affecting the

19   claims other people filed, either for the EEOC or in this

20   bankruptcy, which is not my understanding but I'd appreciate

21   you clarifying that point.

22             And as to aggrieved employees, there's also one

23   other notion about notice.  So I'll leave it to you all

24   to --

25             MR. PEREZ:  Your Honor, let me just -- I'll let

Page 31

1   Mr. Robertson aggress the specifics of the settlement

2   agreement.  With respect to your second point, other than

3   the proofs of claim that are attached thereto, including the

4   EEOC's proofs of claim, we are not affecting anyone's

5   rights.  To the extent someone avails themselves of the

6   settlement agreement and there's a settlement payment, we

7   will receive a release.  But that's only if they avail

8   themselves of the settlement agreement.

9           And, Your Honor, so -- two points.  Number one,

10  this -- the 9019 here is really dealing as between us and

11  the EEOC and the filed proofs of claim.  The original ask

12  was, you know, ten times what we actually settled for.  So

13  we think that in -- for the estate, it is certainly in the

14  best interest of the estate.  So as it relates to the 9019

15  factors with what's before the Court, I think we need it.

16          What we've really focused on is the merits of the

17  consent decree, which another Court has already ruled on.

18  But I'll let Mr. Robertson address the specifics of the

19  consent decree.

20          THE COURT:  All right.  Thank you.

21          MR. ROBERTSON:  Thank you, Your Honor.  I'm Mark

22  Robertson, American Airlines.

23          To the issue of exclusion of pilots, the short

24  answer is they're not excluded.  I think this argument stems

25  from just a misreading of the consent decree.  If you read

**Exhibit B**

**Agreed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11
                                        :
AMR CORPORATION, et al.,                :    Case No. 11-15463 (SHL)
                                        :
Debtors.                                :    (Jointly Administered)
                                        :
-----------------------------------------------------------------x
```

## AGREED ORDER PURSUANT TO
## FED. R. BANKR. P. 9019(a) APPROVING SETTLEMENT
## AGREEMENT RESOLVING CERTAIN PENDING EEOC LITIGATION

Upon the motion, dated December 15, 2017 (the "**Motion**"),[1] of AMR Corporation and its

related debtors, as debtors and reorganized debtors (collectively, the "**Debtors**"), pursuant to

Rule 9019(a) of the Federal Rules of Bankruptcy (the "**Bankruptcy Rules**") for entry of an order

approving the Consent Decree, all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion having been

provided, and it appearing that no other or further notice need be provided; and a hearing having

been held to consider the relief requested in the Motion (the "**Hearing**"); and the Court at the

Hearing having overruled all objections, but having stated that certain language to be used in

notice of the Consent Decree needed to be clarified; and that after the hearing the Debtors having

proposed certain other language to amend the Consent Decree and the Debtors having filed those

amendments in the form of a proposed amended Consent Decree ("**Amended Consent Decree**")

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such
terms in the Motion.

with this Court and with the United States District Court for the District of Arizona ("**District of Arizona**"); and the District of Arizona having issued an order on April 24, 2018 denying approval of the Amended Consent Decree; and the Debtors having explained these events and withdrawn their request for approval of the Amended Consent Decree from this Court by letter dated May 3, 2018 [ECF No. 12895]; and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that consistent with the Court's ruling at the Hearing, the Parties to the Consent Decree shall clarify in the Notice of Settlement and on the website contemplated by section 22(a) of the Consent Decree that the Consent Decree does not exclude pilots from the settlement (by revising the frequently asked questions about the claims process to be distributed and/or posted); and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019(a), the Consent Decree in the form submitted to this Court on December 15, 2017 is approved in its entirety; and it is further

ORDERED that, in accordance with, and pursuant to, the terms of the Consent Decree, Plaintiffs shall hold an Allowed American Class 5- American Other General Unsecured Claim in the amount set forth in the Consent Decree; and it is further

ORDERED that the claims agent is authorized to update the claims register in accordance with this Order and the Consent Decree; and it is further

ORDERED that the Debtors are authorized to take any actions as are necessary or appropriate to implement and effectuate the terms of this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.


Dated:  New York, New York
        May 16, 2018


                                        _/s/ Sean H. Lane_
                                        United States Bankruptcy Judge

**Exhibit C**

**Proof of Claim No. 9676**



GCG Number: 07435252

Modified B 10 (GCG) (12-11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |

**Name of Debtor (Check Only One):** Case No.

| ■ American Airlines, Inc | (11-15464) | □ Eagle Aviation Services, Inc. | (11-15472) |
| □ AMR Corporation | (11-15463) | □ Admirals Club, Inc. | (11-15473) |
| □ AMR Eagle Holding Corporation | (11-15465) | □ Business Express Airlines, Inc. | (11-15474) |
| □ American Airlines Realty (NYC) Holdings, Inc | (11-15462) | □ Reno Air, Inc. | (11-15475) |
| □ Americas Ground Services, Inc. | (11-15466) | □ AA Real Estate Holding GP LLC | (11-15476) |
| □ PMA Investment Subsidiary, Inc | (11-15467) | □ AA Real Estate Holding L.P | (11-15477) |
| □ SC Investment, Inc. | (11-15468) | □ American Airlines Marketing Services LLC | (11-15478) |
| □ American Eagle Airlines, Inc. | (11-15469) | □ American Airlines Vacations LLC | (11-15479) |
| □ Executive Airlines, Inc. | (11-15470) | □ American Aviation Supply LLC | (11-15480) |
| □ Executive Ground Services, Inc. | (11-15471) | □ American Airlines IP Licensing Holding, LLC | (11-15481) |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503 (other than a claim under 11 U.S.C. § 503(b)(9) which is subject to a separate bar date of February 13, 2012).*

| Name of Creditor (the person or other entity to whom the Debtor owes money or property):  US Equal Employment Opportunity Commission | □ Check this box to indicate that this claim amends a previously filed claim. | Your Claim is Scheduled As Follows: |

Name and address where notices should be sent:

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
3300 N. CENTRAL AVE. STE. 690
PHOENIX, AZ 85012

A̶t̶t̶n̶: Nancy Griffiths

Telephone number  6026404632
E-mail: Nancy.Griffiths@eeoc.gov

Court Claim Number: _____

*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Attn: Nancy Griffiths
3300 N. CENTRAL AVE. STE. 690
PHOENIX, AZ 85012

Telephone number  6026404632
E-mail: Nancy.Griffiths@eeoc.gov

□ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

THE GARDEN CITY GROUP, INC.
JUL 14 2012

FILED~.09676
USBC - SDNY
AMR CORPORATION, ET AL.,
11-15463 (SHL)

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.

**1.** Amount of Claim as of Date Case Filed (November 29, 2011): $ unliquidated
(See instruction #1)

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

□ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2.** Basis for Claim:  Charge of Discrimination No. 540-2009-01250 and other aggreived individuals
(See instruction #2)

| **3.** Last four digits of any number by which creditor identifies Debtor: (See instruction #3) | **3a.** Debtor may have scheduled account as: _____ (See instruction #3a) | **3b.** Uniform Claim Identifer (optional): _____ (See instruction #3b) |

**4.** Secured Claim (See instruction #4)

Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

Nature of property or right of setoff:  □ Real Estate  □ Equipment  □ Other    $_____

Describe: _____    Basis for perfection: _____

Value of Property: $_____    Amount of Secured Claim: $_____

Annual Interest Rate _____% □ Fixed  or  □ Variable    Amount Unsecured: $_____
(when case was filed)

**5.** Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.  (See instruction #5)

□ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B)

■ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the Debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

□ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

□ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

□ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

□ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___)

Amount entitled to priority:
$ unliquidated

Control Number: 3946407316

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6.** Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

Modified B 10 (GCG) (12-11)

---

7.  **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted copies of documents** providing evidence of perfection of a security interest are attached. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: _____

---

8.  **Signature:** (See instruction #8)
Check the appropriate box.

☐ I am the creditor.  ■ I am the creditor's authorized agent.  ☐ I am the trustee, or the Debtor, or their  ☐ I am a guarantor, surety, indorser, or other
(Attach copy of power of attorney, if any.)  authorized agent. (See Bankruptcy Rule 3004.)  codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Nancy Griffiths
Title:  Trial Attorney
Company:  US Equal Employment Opportunity Commission

*(Signature)*   July 11, 2012
Address and telephone number (if different from notice address above):    (Signature)    (Date)

Telephone number: 6026404632    e-mail: nancy.griffiths@eeoc.gov

---

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

---

### INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the Debtor, exceptions to these general rules may apply. The attorneys for the Debtors and their Court-appointed claims agent, GCG, Inc. ("GCG"), are not authorized to provide, and are not providing, you with any legal advice.*

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS: **IF BY FIRST CLASS MAIL:** AMR Corporation, *et al.*, c/o GCG, P.O. Box 9852, Dublin, Ohio 43017-5752. **IF BY HAND DELIVERY OR OVERNIGHT MAIL:** AMR Corporation, *et al.*, c/o GCG, 5151 Blazer Parkway, Suite A, Dublin, Ohio 43017. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE ACCEPTED.

**THE GENERAL AND GOVERNMENTAL BAR DATES IS JULY 16, 2012 AT 5:00 P.M. (PREVAILING EASTERN TIME)**

**Items to be completed in Proof of Claim form**

---

**Court, Name of Debtor, and Case Number:**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on November 29, 2011 (the "Commencement Date"). You should select the Debtor against which you are asserting your claim.

**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR.**

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid e-mail address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the Court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing (using the exchange rate, if applicable, as of the Commencement Date.) Follow the instructions concerning whether to complete items 4 and 5 Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the Debtor's account or other number used by the creditor to identify the Debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the Debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a):**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes Courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

Modified B 10 (GCG) (12-11)

| DEFINITIONS | | INFORMATION |
|---|---|---|

**Debtor**
A Debtor is the person, corporation, or other entity that has filed a bankruptcy case

**Creditor**
A creditor is the person, corporation, or other entity to whom the Debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C § 101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the Debtor on the date of the bankruptcy filing. See 11 U.S.C. § 101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the Debtor on the date of the bankruptcy filing. The creditor must file the form with GCG as described in the instructions above and in the Bar Date Notice.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the Debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a Debtor or may be obtained through a Court proceeding. In some states, a Court judgment is a lien. A claim also may be secured if the creditor owes the Debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social security, individual's tax identification, or financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from GCG, please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to GCG.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official Court documentation or communications from the Debtor. These entities do not represent the Bankruptcy Court or the Debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq*.), and any applicable orders of the Bankruptcy Court.

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

In re:                                     )
                                           )
        AMR Corporation, *et. al.*,        )   Chapter 11 Proceedings
                                           )
                                           )   Case No. 11-15463 (SHL)
                                           )
        Debtors.                           )        (Jointly Administered)
_____)

## CLAIM FOR ADMINISTRATIVE EXPENSES

A.   CREDITOR INFORMATION

     EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
     Phoenix District Office
     c/o Nancy E. Griffiths
     3300 North Central Avenue
     Suite 690
     Phoenix, Arizona 85012

B.   CLAIM INFORMATION

     1.    BASIS FOR CLAIM

Lost wages, salaries and/or commissions, and injunctive relief on behalf of individuals, including
but not limited to Darla Alvarado, on whose behalf the EEOC is investigating a Charge of
Discrimination against Debtors alleging violations of The Americans with Disabilities Act.

     2.    DATE DEBT WAS INCURRED:

           January 9, 2009 and forward

     3.    AMOUNT AND CLASSIFICATION OF CLAIM:

           Post-petition Administrative Claims U.S.$ Unliquidated.

     4.    Copy of the charge of employment discrimination in support of this claim is

attached.

     5.     CREDITS AND SETOFFS.  All credits or setoffs have been credited against the debt.

C.     CERTIFICATION

     The undersigned certifies under penalty of perjury that the debtor named above is indebted to the claimant in the amount shown, that there is no security for the debt other than that stated above or in an attachment to this form, that no unmatured interest is included, and that the undersigned is authorized to make this claim.

Date, Sign and Print the Name and Title, if any, of the Creditor or Other Person Authorized to File this Claim

<u>July 11, 2012</u>
Date

Nancy E. Griffiths
Trial Attorney
U.S. EEOC
Phoenix District Office
3300 North Central Avenue
Suite 690
Phoenix, Arizona 85012

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974  See enclosed Privacy Act Statement and other information before completing this form.

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| ☐ FEPA | | |
| ☒ EEOC | | 540-2009-01250 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Darla Y. Alvarado | (623) 581-5974 | 02-12-1964 |

| Street Address | City, State and ZIP Code |
|---|---|
| 16323 N. 168th Ave., Surprise, AZ 85388 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| AMERICAN AIRLINES | 500 or More | (602) 273-4909 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3400 E. Sky Harbor Blvd.,  Phoenix, AZ 85034 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest          Latest      11-06-2008 |
| ☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.) | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have been employed with American Airlines ("AA") since approximately August 22, 1988. My position is Passenger Service Agent.  On or about May 13, 2007 I was injured on the job.  As a result of my injury and the subsequent necessary surgeries, I have been on Injury on Duty Leave.  On October 18, 2008 I was cleared by my physician to return to work.  I was informed that I also had to be cleared by my employer and on November 6, 2008 I was cleared by AA's Staff Physician to return to work with the restrictions noted by my physician.  I subsequently requested a reasonable accommodation of a stool in order to perform my job. I was informed by my supervisor Allen Harris that I could not be provided a stool and that I could not return to work because my injury was permanent.  I have also been informed by HR Representative Tanya Kelley that the Employee Accommodation Request Form only applies to requests for transfer despite the fact the form has a section for requesting an accommodation in my current position.  To date, I have not been allowed to return to work.

I believe that I am being discriminated against in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jan 09, 2009**        _Darla Alvarado_ Date                Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
PHOENIX DISTRICT OFFICE
3300 NORTH CENTRAL AVENUE, SUITE 690
PHOENIX, ARIZONA 85012-2504

OFFICIAL BUSINESS
Penalty for private use, $300

7006 2760 0002 5236 3504

AMR Corporation, *et. al.*
c/o GCG
P.O. Box 9852
Dublin OH 43017-5752

UNITED STATES POSTAGE
$ 06.40°
02 1A
000460144B
JUL11 2012
MAILED FROM ZIP CODE 85012

**Exhibit D**

**Excerpt from December 6, 2018 Hearing Transcript**

Page 12

1    up-to-date version of everything, so it really captures

2    everything and quantifies things consistent with the

3    discussions you've been having and the things that you've

4    put forward that you want the Court to consider.

5            MR. PEREZ:  Right, Your Honor.  And some of the

6    convenience ones have now come in of the six -- of the ones

7    that were convenience that you excluded.  We've gotten

8    stipulations for a couple of those as indicated.

9            THE COURT:  All right.  But I guess am I right in

10   saying for purposes today I don't need to worry about the

11   convenience claims?

12           MR. PEREZ:  You don't have to worry about the

13   convenience claims, Your Honor.  So in essence, Your Honor,

14   basically we're proposing to have a reserve of 90 million.

15   From that we're going to distribute approximately five --

16   less than $5 million, which is the footnote in our reply,

17   Footnote 7 I think in our reply.

18           THE COURT:  Is that eight?  I think it's eight.

19           MR. PEREZ:  Eight. I'm sorry, it's eight.  But --

20           THE COURT:  And it's 15 million.

21           MR. PEREZ:  Well, it's only five because ten of it

22   is the EOC amount.

23           THE COURT:  Oh, all right.

24           MR. PEREZ:  And that can't be distributed until

25   all the appeals.  So it's -- and actually that number will

1    now -- you know, the Footnote 7 will go down by a million

2    six and Footnote 8 will go up by 700,000 as a result of the

3    --

4              THE COURT:  Wait, do I have the right -- so I

5    think Footnote 8 goes down then to 5 million, right?

6    Because it was 15.

7              MR. PEREZ:  Right.

8              THE COURT:  And then what's the other change?

9    Footnote 7 did you say?

10             MR. PEREZ:  Yeah.  So the settlement we had in the

11   19.7, 1.6 million for the $7.5 billion one.  Well, that

12   actually is now an allowed claim of 700,000.  So that would

13   move down.  But the 1.6 in the 19.7 would be reduced.

14             THE COURT:  I gotcha.  All right.  All right.  And

15   so does that change -- do we need to make adjustments to the

16   numbers above for purpose of anything?  I think the amount

17   that you're proposing is still the same.

18             MR. PEREZ:  The amount that we're proposing is

19   still the same.

20             THE COURT:  So the claims reserve of 90 is still

21   the same.

22             MR. PEREZ:  Right.

23             THE COURT:  Well, is that 98 now since you're not

24   going to pay the --

25             MR. PEREZ:  No, Your Honor, no, no.  The 90

**Exhibit E**

**DCR Reply**

Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorney for Debtors
and Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| **AMR CORPORATION**, *et al.*, | : | Case No. 11-15463 (SHL) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : | Re: ECF No. 13119 |

--------------------------------------------------------------x

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO**
**DEBTORS' RENEWED MOTION FOR ENTRY OF ORDER AUTHORIZING**
**RELEASE OF EXCESS RESERVE FUNDS HELD IN DISPUTED CLAIMS RESERVE**

AMR Corporation and its related debtors, as debtors and reorganized debtors

(collectively, the "**Debtors**"), submit this omnibus reply to objections to the Debtors' *Renewed*

*Motion for Entry of Order Authorizing Release of Excess Reserve Funds Held in Disputed*

*Claims Reserve* (ECF No. 13119) (the "**Motion**").[1]

    1.    Based on the Court's November 27, 2018 ruling and stipulations filed on

the Court's docket resolving Disputed Claims, there are currently only $19.7 million in filed

amounts of non-aircraft Disputed Claims subject to the Disputed Claims Reserve. Furthermore,

all outstanding aircraft related Claims are subject to the Aircraft Subreserve.[2]

---

[1] Capitalized terms used but not defined have the meaning ascribed to them in the Motion.

[2] Claim 11041 (ECF No. 13116), Claims 11031 and 12527 (ECF No. 13154), and Claims 11034 and 12572 (ECF No. 13155) were resolved after the Motion was filed. An additional eleven aircraft Claims are subject to a stipulated cap (ECF No. 13120). *See* Stipulations and Agreed Orders attached as **Exhibit 1**.

2.    The Disputed Claims Reserve holds shares sufficient to satisfy $522.1 million of Disputed Claims, plus the corresponding distribution to labor from the Labor Allocation Reserve — twenty-six times greater than the filed amount of Disputed Claims.  The Debtors request authority to distribute a portion of the Excess Reserve Funds from the Disputed Claims Reserve to AMR Equity Interest holders who have not received a distribution in over five years.  Following the proposed distribution, the Disputed Claims Reserve will have a $90 million cushion to satisfy the approximately $19.7 million remaining outstanding Disputed Claims.

3.    The chart below provides a current summary of relief requested in the Motion.

### Summary of Proposed Relief

| Category | Amount (in millions) |
|---|---|
| Current Disputed Claims Reserve Balance (excluding Aircraft Subreserve) | $522.1 (equivalent to approximately 16.1 million shares of New Common Stock) |
| Proposed Release of Excess Reserve Funds to Holders of AMR Equity Interests | $432.1 (equivalent to approximately 13.4 million shares of New Common Stock) |
| Total Remaining Disputed Claims Reserve (excluding Aircraft Subreserve) | $90.0 (equivalent to approximately 2.7 million shares of New Common Stock) |
| Current Labor Allocation Reserve | 5.8 million shares of New Common Stock |
| Proportionate Release from Labor Allocation to Holders of AMR Equity Interests | Approximately 4.1 million shares of New Common Stock |
| Total Remaining Labor Allocation Reserve | Approximately 1.7 million shares of New Common Stock |
| Total Release to Holders of AMR Equity Interests | Approximately 17.4 million shares of New Common Stock (DCR and Labor Allocation)) |

### Summary of Disputed Claims Reserve (Post-Release)

| Category | Number | Amount (in millions) |
|---|---|---|
| Total Filed and Scheduled Claims | 74 | $780.1 |
| Less Pending Distributions for Allowed Claims[3] | (22) | ($655.8) |
| Less Aircraft Subreserve[4] | (11) | ($104.6) |
| Total Remaining Disputed Claims[5] | 41[6] | $19.7[7] |
| Cushion[8] | ___ | $70.3 |
| Total Remaining Disputed Claims Reserve (excluding Aircraft Subreserve) | | $90.0 |

      4.      Below is also an updated chart of the remaining twelve Disputed Claims with an unliquidated component.[9]  This chart shows that only the APA and the TWU, who did not object to the Motion, have unliquidated Claims subject to the Disputed Claims Reserve.  All other Claims are either valued by the claimant (Robert Mawhinney), dismissed by court order (Westways), or are post-petition or convenience class Claims that, to the extent allowed, will be satisfied in cash as permitted under the Plan.

---

[3] Reflects Claims that have been settled and will be distributed at the next interim distribution.  The filed amount of the Claims totaled $655 million and were settled for less than $15 million in the aggregate.

[4] Claims are covered by the Aircraft Subreserve, which is not affected by this Motion.

[5] The remaining Disputed Claims includes eleven aircraft claims, not previously included, that have been capped at $20,000 each by the proposed Stipulation and Agreed Order (ECF No. 13120).  A summary presentation of the remaining Claims is attached as **Exhibit 2**.

[6] Eight Claims are Convenience Class Claims that will be satisfied in cash and not from the Disputed Claims Reserve.

[7] For purposes of this Motion, Proof of Claim No. 7639 is reserved at the full $1.6 million.

[8] Cushion covers remaining Disputed Claims and the $15 million settled Claims pending distribution.

[9] Four TWU unliquidated Disputed Claims were recently settled by stipulation at ECF Nos. 13154 and 13155.  The Debtors are working with the TWU to resolve the remaining Claims, which are based on closed grievances.

| Claim No. | Creditor Name | Filed Amt. | Claim |
|---|---|---|---|
| 13866 | Allied Pilots Association | $2,699,952.00 + unliquidated | Unliquidated component for "Excluded Claims" described in the Claim.<br><br>Claim originally listed 20 open grievances, of which only 6 remain. Although 2/3 of the claim has been resolved, the Debtors have never sought a reduction in the filed amount of the claim. |
| 7319 | Leslie Vetter | Unliquidated | **Post-petition claim (long-term disability benefits) that will not be satisfied from the Disputed Claims Reserve.** Claim is attached as **Exhibit 3**. |
| 3825 | Sigurd Reinton | $1,758.92 + unliquidated | Claim is for lost luggage plus special drawing rights under Montreal Convention. **Convenience class claim that will not be satisfied from the Disputed Claims Reserve.** |
| 6811 | Robert Mawhinney | $10,025,778.33 (unliquidated) | Claim is for an amount ranging from $2,000,000 to $10,025,778.33. The Debtors used the higher amount of claimant's estimate to make sure any unliquidated portion was addressed.<br><br>Mawhinney values his claim at $10,025,778.33 in court pleadings. *See* Mawhinney Objection, p. 1, attached as **Exhibit 4**. |
| 11040 | TWU Local 505 | $2,135.96 + unliquidated | Claim is for grievances, which have been marked as closed on the TWU International Docket. **Convenience class claim that will not be satisfied from Disputed Claims Reserve.** |
| 11039 | TWU Local 510 | $5,498.40 + unliquidated | Claim is for grievances, which have been marked as closed on the TWU International Docket. **Convenience class claim that will not be satisfied from Disputed Claims Reserve.** |
| 11044 | TWU Local 569/510 | Unliquidated | Claim is for one grievance, which has been marked as closed on the TWU International Docket. |
| 11038 | TWU Local 512 | $885,385.03 + unliquidated | Claim is for grievances, which have been marked as closed on the TWU International Docket. |
| 11406 | Troy Ott | $3,200.00 + unliquidated | Claim is based on grievance for license retro pay. **Convenience class claim that will not be satisfied from Disputed Claims Reserve.** |

| 11409 | Westways World Travel, and Sundance Travel Service | $96,789.19 + unliquidated | An uncontested order dismissing this case was entered on November 8, 2018. *See* **Exhibit 5** attached. Following the appeal window, Debtors will file an objection to expunge this claim as fully adjudicated. |
|---|---|---|---|
| 5168 | Southeast Aero S.A. | $200,000.00 | The Debtors have won the case with Southeast Aero S.A. that was pending in the Ecuador Justice Civil Court and are now awaiting a decision in the plaintiff's appeal.<br><br>Claimant did not object to the Motion. |
| 11407 | Christopher Wyre | $2,930.00 | Claimant did not object to the Motion.<br><br>**Convenience class claim that will not be satisfied from the Disputed Claims Reserve.** |

5.      The few objections to the Motion are grouped into three different categories:  (1) the objection of the Allied Pilots Association and the Association of Professional Flight Attendants (ECF No. 13141) (the "**APA/APFA Objection**"); (2) the objection of Lawrence Meadows (ECF No. 13151) and Robert Mawhinney (ECF No. 13148) (collectively, the "**Meadows and Mawhinney Objections**"); and (3) the near identical objections of certain individuals with disallowed claims (collectively, the "**Individual Objections**").[10]

6.      The APA/APFA Objection confirms that these parties will object to any meaningful distribution to AMR Equity Interest holders regardless of the large amount of Excess Reserve Funds.  The Debtors have worked with the APA since August 2018 to address their stated concerns to a distribution of Excess Reserve Funds.  The Debtors responded to all information requests and held numerous calls with counsel to the APA.  The Debtors are also working with the APFA to resolve its Disputed Claim.  The APA/APFA Objection does not dispute that there are Excess Reserve Funds.  Rather, the objection primarily speculates about the

---

[10] Objections were filed by Patricia McCreary (ECF No. 13127), Danyale Thomas (ECF No. 13129), Craig Chisum (ECF No. 13130), Larry Crow (ECF No. 13131), Jason Clyma (ECF No. 13132), Tim Riherd (ECF No. 13133), Curtis Long (ECF No. 13134), Peggy Long (ECF No. 13135), Laraine Broadland (ECF No. 13136), Randal Attebury (ECF No. 13137), Michael Caudle (ECF No. 13142), Richard Irving (ECF No. 13143), Jennifer McCreary (ECF No. 13144), Rita Huffstutler (ECF No. 13145), Larry Blackwell (ECF No. 13146), Kyle Perryman (ECF No. 13147), Eric Keys (ECF No. 13149), Brian Ingram (ECF No. 13150), Russell Hartman (ECF No. 13152), and Jay Jackson (ECF No. 13153).

rights and potential actions of creditors who did not object to the Motion.  Each of the four issues

raised in the APA/APFA Objection — (1) the remaining Disputed Claims, (2) the resolved

claims pending distribution, (3) the pending objection claims, and (4) the aircraft claims —

should be overruled because they do not provide a legal or equitable basis to deny the relief

requested.  A revised proposed order, filed contemporaneously with this Reply and attached as

**Exhibit 6**, also ensures that the Debtors will only make the proposed distribution requested in the

Motion.

       7.     The Meadows and Mawhinney Objections are based on an erroneous

contention that the proposed distribution would "give AMR *carte blanche* authority to distribute

funds to exhaustion, or near exhaustion" and ask the Court to not grant the Motion until all

Claims are finally resolved.  *See* Mawhinney Objection, p. 1; Meadows Objection, p. 3.  These

objections fail to recognize the proposed $90 million cushion for remaining Disputed Claims and

are otherwise addressed in the revised proposed order.  The Meadows Objection also expressed

concern about a distribution on EEOC Proof of Claim No. 13919 settled under the Order at ECF

No. 12898.  The Debtors will not make the pending $9.8 million distribution on the EEOC Claim

until Mr. Meadows' appeal 1:18-cv-06149-RA is adjudicated.  Therefore, his argument is

rendered moot, and, in effect, increases the proposed Disputed Claims Reserve cushion by $9.8

million pending resolution of the Meadows appeal.  Finally, the Individual Objections should be

overruled because they are based on Claims disallowed under the Court's November 27, 2018

ruling.

**<u>Reply</u>**

**I.      The APA/APFA Objection Should Be Overruled**

       8.     Since filing the Motion, that Debtors resolved an additional six Claims —

Claim 11041 (ECF No. 13116), Claims 11031 and 12527 (ECF No. 13154), Claims 11034 and

12572 (ECF No. 13155), and Claim 3279 (confidential settlement) — bringing the total number

6

of remaining Disputed Claims to forty-one.[11]  Of those forty-one Disputed Claims, the APA

takes issue with twelve — ten unliquidated and two liquidated.  *See* APA/APFA Objection,

§ I.C.4.

      9.     The APA/APFA argue that the number of outstanding unliquidated

Disputed Claims may not be covered by the proposed cushion.  But, as reflected in the updated

chart above, the APA and the TWU are the only creditors with an unliquidated Disputed Claim

subject to the Disputed Claims Reserve.  The TWU did not object to the Motion and the Debtors

are working to resolve these Claims, which are all based on closed grievance cases.  The APA's

Claim is for $2.6 million plus an unliquidated component that is more than adequately covered

by the cushion.  Even the APA doesn't argue to the contrary.   The APA's unliquidated Claim is

not a valid basis to deny the Motion.

      10.    The APA/APFA also complain that the Motion does not individually

identify each of the "resolved claims," does not expressly state what portion of the distributions

will be provided to labor, and does not state exactly when distribution for the resolved claims

will take place.  *See* APA/APFA Objection, § I.C.1.  But, as noted in the Motion, the plain

language of the Plan states what portion of the distributions will be provided to labor.  *See*

Motion, ¶ 12; Plan, § 1.21.  And the Motion itself addresses timing, stating that distributions for

allowed claims "will be distributed at the next interim distribution."  *See* Motion, ¶ 5 n.4.

Accordingly, if the Court grants the Motion, the Debtors will distribute the Labor Allocation, as

allowed under the Plan, for Allowed Claims totaling approximately $5 million at the next interim

distribution.  Finally, the Debtors provided the APA with a spreadsheet individually identifying

each of the resolved claims on October 11, 2018, and followed up by providing proofs of claim

and non-confidential settlements, upon the APA's request, on October 13, 2018.  The APFA

---

[11] Since the filing of the Motion, the Debtors have resolved six Claims (36-6=30) and moved eleven Claims from the Aircraft Subreserve bucket to the Disputed Claims bucket to address concerns of the APA (30+11=41).

never requested such information. Any concerns regarding the identity and nature of the resolved claims pending distribution were addressed prior to the filing of the Motion.

11.     Furthermore, as recognized in the APA/APFA Objection, all "pending objection claims" listed in the Motion were disallowed under the Court's November 27, 2018 ruling. *See* APA/APFA Objection, § I.C.2. Once a claim has been disallowed and expunged, the Debtors are not required to reserve for it in the Disputed Claims Reserve. Order Confirming Plan, ¶ 45. Nevertheless, the $90 million cushion remaining in the Disputed Claims Reserve will satisfy all contested pending objection claims. Thus, contrary to their assertion, no ambiguity or unpredictability remains. *See* Motion, ¶ 5 (listing $44 million in pending objections); APA/APFA Objection, § I.C.2.

12.     Finally, the APA/APFA's objections on the basis of aircraft claims are moot. The Debtors have entered into a proposed Stipulation and Agreed Order (ECF No. 13120), capping eleven of the twenty-two aircraft Claims at $220,000, which nullifies any concerns of estimation. *See* APA/APFA Objection, § I.C.3. In addition, the revised proposed order clarifies that the Debtors may only distribute shares of New Common Stock from the Aircraft Subreserve for Claims Allowed under the Plan or by order of the Court. *See* Exhibit 5.

13.     The APA/APFA admit that distribution is proper when there has been resolution of enough Disputed Claims to create an excess in the DCR. *See* APA/APFA Objection, Preliminary Statement. Currently there is an excess in the DCR that is twenty-six times the filed amount of remaining Disputed Claims. Thus, distribution of the Excess Reserve Funds is appropriate.

## II.        The  Meadows and Mawhinney Objections Should Be Overruled

14.        The Meadows and Mawhinney Objections should be overruled because

they argue against relief that the Debtors did not request.  The Mawhinney Objection states:

> RSMawhinney does not have any faith that AMR will protect the
> funds from being exhausted before the resolution of all disputed
> claims.  The proposed Order appears to give AMR *carte blanche*
> authority to disburse funds to exhaustion, or near exhaustion.

*See* Mawhinney Objection, p. 1.    Similarly, the Meadows' Objection complains, "there are

several  contested  appeals,  which  contest  the  EEOC  Consent  Decree,  and  its  proposed

expungement  and  allowance  of  $100M  in  claims,  as  valued  by  the  EEOC  and  admitted  by

Debtors' Counsel."[12]  The revised proposed order includes language that resolves any ambiguity

on this point.  Thus, the concerns raised in the Meadows and Mawhinney Objections are moot.

## III.        The Individual Objections Should be Overruled

15.        The Individual Objections do not object to the relief requested in the

Motion, but rather to the disallowance and expungement of their Claims.  Each of the Individual

Objections were filed by parties whose Claims were disallowed and expunged pursuant to the

Debtors' 189th Omnibus Objection to Claims.  *See, e.g.*, Objection of Patricia McCreary

(ECF No. 13127).  As such, the Individual Objections should be overruled.

---

[12] The EEOC Consent Decree settled an unliquidated claim filed by the EEOC for $9.8 million.  The Debtors are
unsure where the $100 million valuation Meadows attaches to the claim arose.

**<u>Conclusion</u>**

16.     The Debtors respectfully request that this Court overrule the APA/APFA

Objection, the Meadows and Mawhinney Objections, and the Individual Objections, authorize

the Debtors to distribute the Excess Reserve Funds from the Disputed Claims Reserve, and grant

such other and further relief as is just.

Dated: December 3, 2018
        Houston, Texas

                                        /s/ Alfredo R. Pérez
                                        Alfredo R. Pérez
                                        WEIL, GOTSHAL & MANGES LLP
                                        700 Louisiana Street, Suite 1700
                                        Houston, Texas 77002
                                        Telephone: (713) 546-5000
                                        Facsimile: (713) 224-9511

                                        Attorney for Debtors
                                        and Reorganized Debtors

**Exhibit 1**

**Stipulations and Agreed Orders**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
AMR CORPORATION, *et al.*,               :        11-15463 (SHL)
                                        :
                    Debtors.            :        (Jointly Administered)
                                        :
---------------------------------------------------------x

## NOTICE OF WITHDRAWAL OF CLAIM(S)

| Debtor Name and Case Number: | American Airlines, Inc. (11-15464) | | |
|---|---|---|---|
| Claim Number(s): | See Attachment A | Date Claim(s) Filed: | See Attachment A |
| Scheduled ID Number(s) (if any): | | | |
| Creditor Name and Address: | Transport Workers Union of America Local 502 C/O Lowenstein Sandler PC One Lowenstein Drive Roseland, New Jersey 07068 | | |
| Original Amount and Classification: | See Attachment A | | |

Pursuant to Rule 3006 of the Federal Rules of Bankruptcy Procedures, I, the undersigned, am the above-referenced creditor, or an authorized signatory for the above-referenced creditor. I hereby withdraw the claim(s) listed above, along with any underlying scheduled liabilities, with prejudice and authorize the Clerk of the Bankruptcy Court, or its duly appointed claims agent, GCG, Inc., to reflect this withdrawal on the official claims register for the Debtors.

Dated: 09-__-2018

By: _____

Print Name: Andre Sutton

Title: President

Address: Transport Workers Union Local 502

215 Richmond Street

El Segundo Beach, CA 90245

Phone: 310-322-5052

Email: dresutton@gmail.com

# Attachment A
# Claims to Be Withdrawn

In re AMR Corporation, *et al.*
Case No. 11-15463 (SHL), Jointly Administered

| SEQ NO. | NAME | CLAIM NO. | CLAIM AMOUNT | CLAIMED DEBTOR |
|---------|------|-----------|--------------|----------------|
| 1 | TRANSPORT WORKERS UNION OF AMERICA LOCAL 502 C/O LOWENSTEIN SANDLER PC ONE LOWENSTEIN DRIVE ROSELAND, NEW JERSEY 07068 Date Filed: 07/16/12 | 11041 | Priority: $286,974.61 Unliquidated | American Airlines, Inc. |
| 2 | TRANSPORT WORKERS UNION OF AMERICA LOCAL 502 C/O LOWENSTEIN SANDLER PC ONE LOWENSTEIN DRIVE ROSELAND, NEW JERSEY 07068 Date Filed: 07/13/12 | 12576 | Priority: $286,974.61 Unliquidated | American Airlines, Inc. |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                             :

In re                            :       **Chapter 11**
                             :

AMR CORPORATION, *et al.*,     :       **Case No. 11-15463 (SHL)**
                             :

            **Debtors.**       :       **(Jointly Administered)**
                             :
-------------------------------------------------------------x

### STIPULATION AND
### AGREED ORDER SETTLING PROOFS
### OF CLAIMS FILED BY TRANSPORT WORKERS UNION
### OF AMERICA, AFL-CIO LOCAL 567

This stipulation (the "**Stipulation**") is entered into as of November 15, 2018 (the "**Effective Date**") by and among AMR Corporation and its related debtors, as debtors and reorganized debtors (collectively, the "**Debtors**"), and the Transport Workers Union of America, AFL-CIO Local 567 (the "**Claimant**," and with the Debtors, the "**Parties**").

### RECITALS

A.     On November 29, 2011 (the "**Commencement Date**"), each of the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") , Case No. 11-15463 (SHL).

B.     The Claimant has filed proofs of claims numbers 11031 and 12527 (collectively, the "**Claims**") as set forth on **Exhibit A** attached.

C.     On March 28, 2012, the Court entered the Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019(b) of the Federal Rules of Bankruptcy Procedure Establishing Procedures for Settling Certain Claims (ECF No. 2055) (the "**Claims Settlement Order**").

D.     On October 21, 2013, the Bankruptcy Court entered the Findings of Fact,

Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and

Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Fourth Amended

Joint Chapter 11 Plan (ECF Nos. 10361, 10367) (the **"Confirmation Order"**), and the effective

date of the Debtors' Fourth Amended Joint Chapter 11 Plan (the "**Plan**") was December 9, 2013.

E.     Transport Workers Union of American, AFL-CIO Local 567 is authorized to

resolve the Claims on **Exhibit A.**

F.     The Debtors may resolve claims against the Debtors under certain requirements in

the Claims Settlement Order, the Plan, and the Confirmation Order.

G.     After good-faith, arms'-length negotiations, the Parties seek to enter into this

Stipulation to resolve the Claims on **Exhibit A.**

### AGREED ORDER

1.     The Claims on **Exhibit A** will be allowed in the amounts set forth.

2.     Except for the right to receive distributions for allowance of the Claims on

**Exhibit A** under this Stipulation and the Plan, the Claimant fully, finally, and forever releases,

relinquishes, and discharges the Debtors, their principals, officers, directors, agents, assigns,

administrators, and representatives, from all rights, claims, demands, grievances, disputes,

damages of any kind, and causes of action of every nature, whether known or unknown, asserted

or unasserted, in connection with the Claims on **Exhibit A** and all grievances that were identified

by or that could have been a basis for the Claims on **Exhibit A.**

3.     In consideration of the final resolution of the claims listed on **Exhibit A**, the allowed

claim for $100,000.00, will be distributed to a trust account maintained for the Transport Workers Union

of America, AFL-CIO on a date to be determined by the Debtors. At a date thereafter that is reasonably

practicable, distributions will be made from the Transport Workers Union of America, AFL-CIO trust

2

account in accordance with the distribution allocation provided to the Debtors by the Transport Workers Union of America, AFL-CIO, Local 567, to an account maintained by Local 567 and to the individual Compushare accounts of employees as identified in the distribution allocation.

4.      The claims agent in the Debtors' chapter 11 cases may adjust the claims register under this Stipulation.

5.      This Stipulation contains the entire agreement between the Parties as to its subject matter and supersedes all prior agreements and undertakings between the Parties relating thereto.

6.      This Stipulation may not be modified other than by signed writing executed by the Parties.

7.      Each person who executes this Stipulation represents that he or she is duly authorized to do so on behalf of the respective Parties and that each party has full knowledge and has consented to this Stipulation.

8.      This Stipulation may be executed in counterparts, each of which will be deemed an original but which together constitute the same instrument, and it constitutes sufficient proof of this Stipulation to present any copy, copies, or faxes signed by the Parties to be charged.

9.      This Stipulation will be exclusively governed by and construed and enforced under the laws of the state of New York, without regard to its conflicts of law principles, and all claims relating to or arising out of this Stipulation, or the breach thereof, whether sounding in contract, tort, or otherwise, will likewise be governed by the laws of the state of New York, excluding New York's conflicts of law principles.

10.     The Parties agree this Court will retain exclusive jurisdiction over all disputes

relating to this Stipulation.


Dated: November 15, 2018

By: _____          By: _____
Jose Carballo                                              Jonathan Oliff
Vice President                                             Director, Senior Attorney
Transport Workers Union of America,                        American Airlines, Inc.
AFL-CIO Local 567                                          4333 Amon Carter Blvd.
2050 Golden Triangle Blvd.                                 Fort Worth, TX 75022
Ft. Worth, TX 76177                                        Telephone: (817) 967-9452
                                                           Fax: (817) 967-2937

                                                           Attorney for Debtors
                                                           and Debtors in Possession


**APPROVED AND SO ORDERED**
this _29th_ day of November, 2018

**BY THE COURT:**

_/s/ Sean H. Lane_
Honorable Sean H. Lane
UNITED STATES BANKRUPTCY JUDGE

4

# Exhibit A

**In re AMR Corporation, et al.**
**Case No. 11-1543 (SHL), Jointly Administered**

| CLAIM(S) TO BE SETTLED | | | | | |
|---|---|---|---|---|---|
| CREDITOR NAME/ADDRESS | CLAIM NO./ SCHEDULE ID | CLAIMED AMOUNT & CLASSIFICATION | MODIFIED ALLOWED AMOUNT & CLASSIFICATION | CLAIMED DEBTOR | MODIFIED DEBTOR |
| TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO LOCAL 567 C/O LOWENSTEIN SANDLER PC ATTN SHARON L LEVINE ESQ. 65 LIVINGSTON AVE ROSELAND NJ 07068 <br><br> Date Filed: 07/16/2012 | 11031 | $243,642.05 Priority | $100,000.00 Unsecured | American Airlines, Inc. | American Airlines, Inc. |
| TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO LOCAL 567 C/O LOWENSTEIN SANDLER PC ATTN SHARON L LEVINE ESQ. 65 LIVINGSTON AVE ROSELAND NJ 07068 <br><br> Date Filed: 07/13/2012 | 12527 | $243,642.05 Priority | $0.00 | American Airlines, Inc. | American Airlines, Inc. |

5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                            :

In re                             :        **Chapter 11**
                            :

AMR CORPORATION, *et al.*,     :        **Case No. 11-15463 (SHL)**
                            :

             **Debtors.**     :        **(Jointly Administered)**
                            :

------------------------------------------------------------x

## STIPULATION AND
### AGREED ORDER SETTLING PROOFS
### OF CLAIMS FILED BY TRANSPORT WORKERS UNION
### OF AMERICA, AFL-CIO LOCAL 513

This stipulation (the "**Stipulation**") is entered into as of November 20, 2018 (the "**Effective Date**"), by and among AMR Corporation and its related debtors, as debtors and reorganized debtors (collectively, the "**Debtors**"), and the Transport Workers Union of America, AFL-CIO Local 513 (the "**Claimant**," or "TWU Local 513" and with the Debtors, the "**Parties**").

## RECITALS

    A.     On November 29, 2011, each of the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), Case No. 11-15463 (SHL).

    B.     The Claimant has filed proofs of claims numbers 11034 and 12572 (collectively, the "**Claims**") as set forth on **Exhibit A** attached.

    C.     On March 28, 2012, the Court entered the Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019(b) of the Federal Rules of Bankruptcy Procedure Establishing Procedures for Settling Certain Claims (ECF No. 2055) (the "**Claims Settlement Order**").

D.  On October 21, 2013, the Bankruptcy Court entered the Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Fourth Amended Joint Chapter 11 Plan (ECF Nos. 10361, 10367) (the **"Confirmation Order"**), and the effective date of the Debtors' Fourth Amended Joint Chapter 11 Plan (the **"Plan"**) was December 9, 2013.

E.  Claimant Transport Workers Union of American, AFL-CIO Local 513 is authorized to resolve the Claims on **Exhibit A**, which involve pre-petition grievances filed by Claimant and the employees it represents arising under the collective bargaining agreement covering employees represented by Claimant.

F.  The Debtors may resolve claims against the Debtors under certain requirements in the Claims Settlement Order, the Plan, and the Confirmation Order.

G.  After good-faith, arms'-length negotiations, the Parties seek to enter into this Stipulation to resolve the Claims on **Exhibit A**.

### AGREED ORDER

1.  The Claims on **Exhibit A** will be allowed in the amounts set forth.

2.  Except for the right to receive distributions for allowance of the Claims on **Exhibit A** under this Stipulation and the Plan, the Claimant fully, finally, and forever releases, relinquishes, and discharges the Debtors, their principals, officers, directors, agents, assigns, administrators, and representatives, from all rights, claims, demands, grievances, disputes, damages of any kind, and causes of action of every nature, whether known or unknown, asserted or unasserted, in connection with the Claims on **Exhibit A** and all grievances that were identified by or that could have been a basis for the Claims on **Exhibit A**.

3.  The allowed claim on **Exhibit A** for $32,000.00 will be distributed to a trust account maintained for the Transport Workers Union of America, AFL-CIO on a date to be

2

determined by the Debtors. At a date thereafter that is reasonably practicable, distributions will
be made from the Transport Workers Union of America, AFL-CIO trust account in accordance
with the distribution allocation provided to the Debtors by the Claimant Transport Workers
Union of America, AFL-CIO, Local 513, to the individual Compushare accounts of employees
identified in the distribution allocation.

    4.      The claims agent in the Debtors' chapter 11 cases may adjust the claims register
under this Stipulation.

    5.      This Stipulation contains the entire agreement between the Parties as to its subject
matter and supersedes all prior agreements and undertakings between the Parties relating thereto.

    6.      This Stipulation may not be modified other than by signed writing executed by
the Parties.

    7.      Each person who executes this Stipulation represents that he or she is duly
authorized to do so on behalf of the respective Parties and that each party has full knowledge and
has consented to this Stipulation.

    8.      This Stipulation may be executed in counterparts, each of which will be deemed
an original but which together constitute the same instrument, and it constitutes sufficient proof
of this Stipulation to present any copy, copies, or faxes signed by the Parties to be charged.

    9.      This Stipulation will be exclusively governed by and construed and enforced
under the laws of the state of New York, without regard to its conflicts of law principles, and all
claims relating to or arising out of this Stipulation, or the breach thereof, whether sounding in
contract, tort, or otherwise, will likewise be governed by the laws of the state of New York,
excluding New York's conflicts of law principles.

3

10.    The Parties agree this Court will retain exclusive jurisdiction over all disputes

relating to this Stipulation.

Dated: November 20, 2018

By: _____                    By: _____
    Brian Oyer                                         Jonathan Oliff
    Vice President                                     Director, Senior Attorney
    Transport Workers Union of America,                American Airlines, Inc.
    AFL-CIO Local 513                                  4333 Amon Carter Blvd.
    759 N. Kimball                                     Fort Worth, TX 75022
    P.O. Box 92939                                     Telephone: (817) 967-9452
    Southlake, TX 76092                                Fax: (817) 967-2937

                                                       Attorney for Debtors
                                                       and Debtors in Possession


**APPROVED AND SO ORDERED**
this 29th day of November, 2018

**BY THE COURT:**

/s/ Sean H. Lane
Honorable Sean H. Lane
UNITED STATES BANKRUPTCY JUDGE

4

# Exhibit A

**In re AMR Corporation, et al.**
**Case No. 11-15463 (SHL), Jointly Administered**

| CLAIM(S) TO BE SETTLED | | CLAIMED AMOUNT & CLASSIFICATION | MODIFIED ALLOWED AMOUNT & CLASSIFICATION | CLAIMED DEBTOR | MODIFIED DEBTOR |
|---|---|---|---|---|---|
| CREDITOR NAME/ADDRESS | CLAIM NO./ SCHEDULE ID | | | | |
| TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO LOCAL 513 C/O LOWENSTEIN SANDLER PC ATTN SHARON L LEVINE ESQ. 65 LIVINGSTON AVE ROSELAND NJ 07068  Date Filed: 07/16/2012 | 11034 | $109,199.43 Priority | $32,000.00 Unsecured | American Airlines, Inc. | American Airlines, Inc. |
| TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO LOCAL 513 C/O LOWENSTEIN SANDLER PC ATTN SHARON L LEVINE ESQ. 65 LIVINGSTON AVE ROSELAND NJ 07068  Date Filed: 07/13/2012 | 12572 | $109,199.43 Priority | $0.00 | American Airlines, Inc. | American Airlines, Inc. |

5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                            :        Chapter 11 Case No.
                                                 :
AMR CORPORATION, *et al.*,                       :        11-15463 (SHL)
                                                 :
                              Debtors.           :        (Jointly Administered)
                                                 :

------------------------------------------------------------x

### STIPULATION AND AGREED ODER
### WITH RESPECT TO PROOFS OF CLAIM NOS.
### 6740, 6741, 6742, 6743, 6744, 6746, 6747, 6748, 6749, 6750 AND 12529

This Stipulation and Agreed Order (this "**Stipulation**") is made and entered into

by and among AMR Corporation and its related debtors, as debtors and reorganized

debtors (collectively, the "**Debtors**"), U.S. Bank National Association, as owner trustee

("**USB**"), Wilmington Trust Company, as owner trustee ("**WTC**" and together with USB,

the "**Owner Trustees**"), AT&T Credit Holdings Inc. ("**AT&T**") and UnionBanCal

Leasing Corporation ("**UBC**" and, together with AT&T, the "**Owner Participants**", and

together with the Owner Trustees and the Debtors, the "**Parties**").

### RECITALS

A.      On November 29, 2011, each of the Debtors commenced voluntary cases

under chapter 11 of title 11 of the United States Code before the United States

Bankruptcy Court for the Southern District of New York, Case No. 11-15463 (SHL) (the

"**Bankruptcy Court**").

B.      On July 10, 2012, USB filed the following proofs of claim related to the

aircraft with FAA registration numbers ("**Tail Nos.**") set forth below:

(i)    Proof of Claim No. 6740 in the amount of $14,433,343 against

American Airlines, Inc. ("**American**") related to Tail No.

N630AA;

(ii)    Proof of Claim No. 6741 in the amount of $15,692,689 against

American related to Tail No. N629AA;

(iii)    Proof of Claim No. 6742 in an unliquidated amount against

American related to Tail No. N620AA;

(iv)    Proof of Claim No. 6743 in the amount of $13,130,052 against

American related to Tail No. N619AA; and

(v)    Proof of Claim No. 6744 in the amount of $12,805,255 against

American related to Tail No. N618AA (together, the "**USB**

**POCs**").

C.    On July 10, 2012, WTB filed the following proofs of claim related to the

following Tail Nos. set forth below:

(i)    Proof of Claim No. 6746 in the amount of $21,738,607 against

American related to Tail No. N7375A;

(ii)    Proof of Claim No. 6747 in the amount of $22,331,502 against

American related to Tail No. N376AN;

(iii)    Proof of Claim No. 6748 in the amount of $19,406,303 against

American related to Tail No. N374AA;

(iv)    Proof of Claim No. 6749 in the amount of $12,151,900 against

American related to Tail No. N647AM; and

2

     (v)     Proof of Claim No. 6750 in the amount of $14,135,579 against

American related to Tail No. N648AA (together, the "**WTB ATT**

**POCs**").

D.     On July 13, 2012, WTB filed Proof of Claim No. 12529 in an unliquidated

amount against American related to Tail Nos. N627AA and N7525A (the "**WTB UBC**

**POC**" and, together with the WTB ATT POCs and the USB POCs, the "**Proofs of**

**Claim**").

E.     On October 21, 2013, the Bankruptcy Court entered an order confirming

the Debtors' *Fourth Amended Joint Chapter 11 Plan* (the "**Plan**") (Docket Nos. 10361,

10367).

F.     On November 12, 2013, the Debtors filed the following objections

(together, the "**Objections**"):

     (i)     *Debtors' 117th Omnibus Objection to Claims (Aircraft Owner*

*Trustee Claims, Amounts Not Due)* (Docket No. 10596), covering

Proofs of Claim Nos. 6746, 6747 and 6748 (among other claims

that have since been settled);

     (ii)     *Debtors 119th Omnibus Objection to Claim Nos. 6880, 6881, 6882,*

*6749 and 6750* (Docket No. 10599), covering Proofs of Claim

Nos. 6749 and 6750 (among other claims that have since been

settled);

     (iii)     *Debtors' Objection to Claim No. 12529* (Docket No. 10600); and

     (iv)     *Debtors' 122nd Omnibus Objection to Claim Nos. 6740, 6741,*

*6742, 6743 and 6744* (Docket No. 10605).

3

G.      On December 5, 2013, the Debtors filed the *Notice of Status Conference and of Adjournment of Hearing to Consider Debtors' Objections and Omnibus Objections to Certain Aircraft TIA and Related Claims* (Docket No. 11360), pursuant to which both the deadline to reply and the hearing on the Objections were extended to dates and times to be determined.

H.      The Effective Date (as defined in the Plan) of the Plan occurred on December 9, 2013.

I.      The Parties hereby enter into this Stipulation as set forth below.


## STIPULATION AND AGREED ODER


1.      This Stipulation shall become effective on the date that is **"*So Ordered*"** by the Bankruptcy Court and shall inure to the benefit of the Parties and their respective successors.

2.      The Proofs of Claim set forth in the below table shall each be reduced to a maximum cap for any future allowance of such claim, if any, as set forth below:

| Proof of Claim No. | Maximum Cap Against American Airlines, Inc. |
|--------------------|---------------------------------------------|
| 6740               | $20,000                                     |
| 6741               | $20,000                                     |
| 6742               | $20,000                                     |
| 6743               | $20,000                                     |
| 6744               | $20,000                                     |
| 6746               | $20,000                                     |
| 6747               | $20,000                                     |
| 6748               | $20,000                                     |
| 6749               | $20,000                                     |
| 6750               | $20,000                                     |
| 12529              | $20,000                                     |

4

3.      For the avoidance of doubt, nothing in this Stipulation shall affect (a) the

AT&T Subreserve and Proofs of Claim 6730, 6731, 6732, 6733, 6734, 6735, 6736, 6737,

6738, and 6739, and (b) the UnionBanCal Subreserve and Proof of Claim 6617, each of

(a) and (b) as set forth in the *Order Establishing Maximum Amount of Disputed Claims to*

*be Utilized for Determining Disputed Claims Reserve Under Debtors' Second Amended*

*Joint Chapter 11 Plan and Approving Certain Procedures in Connection with Disputed*

*Claims Reserve* (Docket No. 9560).

4.      Nothing in this Stipulation shall be construed as an admission of liability

or constitute, imply, or evidence the validity of any claim, allegation, objection, defense,

asserted right or remedy at law or equity, raised, or that could be raised, by any Party

with respect to the Proofs of Claim.  The Parties' rights, claims, and defenses to the

Proofs of Claim are expressly preserved.

5.      This Stipulation may not be modified, amended, or vacated other than by a

signed writing executed by the Parties.  This Stipulation contains all of the terms agreed

upon by the Parties regarding the subject of this Stipulation.  Any prior agreements,

promises, negotiations, or representations, either oral or written, that relate to the subject

of this Stipulation and that are not set forth or referred to in this Stipulation are of no

force or effect.

6.      This Stipulation may be executed in multiple counterparts, each of which

shall be deemed an original but all of which together shall constitute one and the same

instrument.  Evidence of execution of this Stipulation may be exchanged by electronic

transmission of a scanned copy of the signature pages or by exchange of an originally

signed document, each of which shall be fully binding on each Party as a signed original.

7.      By its signature hereto, each Owner Participant hereby instructs the applicable Owner Trustee to execute and enter into this Stipulation and each Owner Participant hereby indemnifies and holds harmless the applicable Owner Trustee (both in its capacity as trustee as in its individual capacity) from and against any and all liability, loss, cost, damage or expense (including, without limitation, legal and other professional fees and expenses) incurred by the applicable Owner Trustee in connection with or arising out of the taking of the foregoing requested action, and each Owner Participant shall bear all costs and expenses incurred by the applicable Owner Trustee in the enforcement of its respective rights under this undertaking, including, without limitation, all court costs and legal fees and expenses.  This undertaking is in addition to, and is not intended to modify, impair or affect in any way, any and all other rights, liens, preferences, protections and indemnities the applicable Owner Trustee may have under the applicable Trust Agreement or any related documents, by law or otherwise.

8.      The claims agent in the Debtors' chapter 11 cases is authorized to adjust the claims register in accordance with this Stipulation.

9.      The Bankruptcy Court shall retain jurisdiction to interpret, implement, and enforce the provisions of this Stipulation.

*[Remainder of Page Intentionally Blank]*

Dated: November 19, 2018

By: _____
Jasmine Ball, Esq.
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone:  (212) 909-6845
email:  jball@debevoise.com

*Special Aircraft Counsel for Debtors and Reorganized Debtors*

**AT&T CREDIT HOLDINGS INC.**

By:_____
Name:_____
Title:_____

*Counsel for UnionBanCal Leasing Corporation*

**UNIONBANCAL LEASING CORPORATION**

By:_____
Name:_____
Title:_____

**U.S. BANK NATIONAL ASSOCIATION,**
solely in its capacity as Owner Trustee under the Trust Agreements related to N618AA, N619AA, N620AA, N629AA and N630AA

By:_____
Name:_____
Title:_____

**WILMINGTON TRUST COMPANY,**
solely in its capacity as Owner Trustee under the Trust Agreements related to N376AN, N648AA, N7375A, N374AA, N647AM, N627AA and N7525A

By:_____
Name:_____
Title:_____

**APPROVED AND SO ORDERED**
this ___ day of November, 2018

**BY THE COURT:**

_____
Honorable Sean H. Lane

Dated: November 19, 2018

By:_____
Jasmine Ball, Esq.
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6845
email: jball@debevoise.com

*Special Aircraft Counsel for Debtors and
Reorganized Debtors*

**AT&T CREDIT HOLDINGS INC.**

By: _____
Name: _____
Title: _____President_____

**UNIONBANCAL LEASING
CORPORATION**

By:_____
Name:_____
Title:_____

**U.S. BANK NATIONAL
ASSOCIATION,**
solely in its capacity as Owner Trustee
under the Trust Agreements related to
N618AA, N619AA, N620AA, N629AA
and N630AA

By:_____
Name:_____
Title:_____

**WILMINGTON TRUST COMPANY,**
solely in its capacity as Owner Trustee
under the Trust Agreements related to
N376AN, N648AA, N7375A, N374AA,
N647AM, N627AA and N7525A

By:_____
Name:_____
Title:_____

**APPROVED AND SO ORDERED**
this ___ day of November, 2018

**BY THE COURT:**

_____
Honorable Sean H. Lane

**Dated:** November 19, 2018

By:_____
Jasmine Ball, Esq.
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6845
email: jball@debevoise.com

*Special Aircraft Counsel for Debtors and
Reorganized Debtors*

**AT&T CREDIT HOLDINGS INC.**

By:_____
Name:_____
Title:_____

**U.S. BANK NATIONAL
ASSOCIATION,**
solely in its capacity as Owner Trustee
under the Trust Agreements related to
N618AA, N619AA, N620AA, N629AA
and N630AA

By:_____
Name: Benjamin J. Krueger
Title: Assistant Vice President

**UNIONBANCAL LEASING
CORPORATION**

By:_____
Name:_____
Title:_____

**WILMINGTON TRUST COMPANY,**
solely in its capacity as Owner Trustee
under the Trust Agreements related to
N376AN, N648AA, N7375A, N374AA,
N647AM, N627AA and N7525A

By:_____
Name:_____
Title:_____

**APPROVED AND SO ORDERED**
this ___ day of November, 2018

**BY THE COURT:**

_____
Honorable Sean H. Lane

Dated: November 1 8, 2018

By: _____
Jasmine Ball, Esq.
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone:  (212) 909-6845
email:  jball@debevoise.com

*Special Aircraft Counsel for Debtors and
Reorganized Debtors*

**AT&T CREDIT HOLDINGS INC.**

By: _____
Name: _____
Title: _____

*Counsel for UnionBanCal Leasing
Corporation*

**UNIONBANCAL LEASING
CORPORATION**

By: _____
Name: SALVADOR LOPEZ
Title: VICE PRESIDENT

**U.S. BANK NATIONAL
ASSOCIATION,**
solely in its capacity as Owner Trustee
under the Trust Agreements related to
N618AA, N619AA, N620AA, N629AA
and N630AA

By: _____
Name: _____
Title: _____

**WILMINGTON TRUST COMPANY,**
solely in its capacity as Owner Trustee
under the Trust Agreements related to
N376AN, N648AA, N7375A, N374AA,
N647AM, N627AA and N7525A

By: _____
Name: _____
Title: _____

**APPROVED AND SO ORDERED**
this ___ day of November, 2018

**BY THE COURT:**

_____
Honorable Sean H. Lane

**Dated:** November 19, 2018

By:_____
Jasmine Ball, Esq.
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6845
email: jball@debevoise.com

*Special Aircraft Counsel for Debtors and
Reorganized Debtors*

**AT&T CREDIT HOLDINGS INC.**

By:_____
Name:_____
Title:_____

**U.S. BANK NATIONAL
ASSOCIATION,**
solely in its capacity as Owner Trustee
under the Trust Agreements related to
N618AA, N619AA, N620AA, N629AA
and N630AA

By:_____
Name:_____
Title:_____

**UNIONBANCAL LEASING
CORPORATION**

By:_____
Name:_____
Title:_____

**WILMINGTON TRUST COMPANY,**
solely in its capacity as Owner Trustee
under the Trust Agreements related to
N376AN, N648AA, N7375A, N374AA,
N647AM, N627AA and N7525A

By:_____
Name:____Adam R. Vogelsong____
Title:____Vice President____

**APPROVED AND SO ORDERED**
this ___ day of November, 2018

**BY THE COURT:**

_____
Honorable Sean H. Lane

**Exhibit 2**

**Claims Walk (12.3.2018)**

# In re AMR Corporation

## December 6, 2018 Hearing



## Status Update – December 6, 2018

# November 27, 2018, Hearing Recap

▪ The Court issued a judicial ruling, granting the 189th Omnibus Objection to Claims, the 194th Omnibus Objection to Claims, and the Debtors' Objection to Proof of Claim No. 7639, disallowing and expunging a total of 197 claims.

▪ The Court granted the uncontested omnibus objections to 35 aircraft claims.

  ▪ Granted the 105th Omnibus (General Indemnity)

  ▪ Granted the 106th Omnibus (Aircraft TIA)

  ▪ Granted the 118th Omnibus (Aircraft Owner Trustee)

  ▪ Granted the 120th Omnibus (Aircraft Owner Trustee)

  ▪ Granted Objection to Claim Nos. 12143 and 11173

**Weil**

## Status Update – December 6, 2018

## Since the Renewed DCR Motion Filing

- TWU Claim No. 11041 withdrawn (ECF No. 13116).

- TWU Claim Nos. 11031, 11034, 12527 and 12572 settled (ECF Nos. 13154 and 13155).

- Claim 3279 resolved by confidential settlement.

- The Debtors and U.S. Bank National Association, Wilmington Trust Company, AT&T Credit Holdings Inc., and UnionBanCal Leasing Corporation filed a proposed Stipulation and Agreed Order capping Claim Nos. 6740, 6741, 6742, 6743, 6744, 6746, 6747, 6748, 6749, 6750, and 12529 at $20,000 each (ECF No. 13120).

- Westways World Travel, and Sundance Travel case dismissed on uncontested basis.

- Prefunding and stock option portions of Proof of Claim No. 7639 disallowed and expunged.

- Ninth Circuit Court of Appeals affirms District Court for the Southern District of California ruling in favor of Debtors in Robert Mawhinney's appeal. Motion for stay of mandate pending the filing of petition for certiorari denied on November 16, 2018.

**Weil**

## Status Update – December 6, 2018

| | | |
|---|---|---|
| ■ **Number of Active Claims on Register as of Nov. 15** | 290 | $7,813,331,894[1] |
| ■ **Aircraft Related Claims** | (11) | ($104,617,047) |
| | 279 | $7,708,714,847 |
| ■ **Claims Capped or Disallowed Per Court Order** | | |
| ■ 189th Omnibus (Retiree Benefits) (ECF No. 12910) | (189) | ($26,394,657) |
| ■ TWU Objection (Local 514) (Claim 7639) | - | ($7,498,400,000)[2] |
| ■ 194th Omnibus (Employee Stock & Benefits) (ECF No. 13087) | (8) | ($2,204,841)[3] |
| ■ 105th Omnibus (General Indemnity) (ECF No. 13101) | (17) | ($47,573) |
| ■ 106th Omnibus (Aircraft TIA) (ECF No. 13102) | (2) | - |
| ■ 118th Omnibus (Aircraft Owner Trustee) (ECF No. 13104) | (12) | ($13,881,616) |
| ■ 120th Omnibus (Aircraft Owner Trustee) (ECF No. 13106) | (2) | - |
| ■ Claim Nos. 12143 / 11173 (ECF Nos. 13103 and 13105) | (2) | ($1,232,192) |
| ■ Aircraft Claims (ECF No. 13120) | - | ($145,605,230)[4] |
| | 47 | $20,948,738 |

[1] Filed amounts only; does not include any unliquidated component.

[2] Claim No. 7639 filed at $7.5 billion and reduced by Stipulation and Agreed Order to a maximum of $1.6 million.

[3] Eight claims disallowed and expunged and Claim No. 11351, which was filed at $52,662, reduced by Court order to a maximum of $13,165.50.  Two claims subject to potential additional award.

[4] Eleven aircraft proofs of claim were filed at $145,825,230.  Proposed Stipulation and Agreed Order reduces claims to a maximum of $20,000 per claim or $220,000 total.  ($145,825,230 - $220,000 = $145,605,230 reduction).

**Weil**

## Status Update – December 6, 2018

| | | |
|---|---|---|
| ▪ **Total Claims (from prior slide)** | **47** | **$20,948,738** |
| | | |
| ▪ **Claims Settled** | | |
| ▪ Claim Nos. 11031 and 12527 – TWU Local 567 (ECF No. 13154) | (2) | ($487,284) |
| ▪ Claim Nos. 11034 and 12572 – TWU Local 513 (ECF No. 13155) | (2) | ($218,398) |
| ▪ Claim No. 11041 – TWU Local 502 (ECF No. 13116) | (1) | ($286,975) |
| ▪ Claim No. 3279 – Marcus Jackson | (1) | ($300,000) |
| | 41 | $19,656,081 |
| | | |
| ▪ **Remaining Claims** | | |
| ▪ Union Claims | (8)[1] | ($7,192,971) |
| ▪ Employee General | (11)[2] | ( $1,102,004) |
| ▪ Prepetition Litigation | (5) | ($11,122,023) |
| ▪ Miscellaneous Prepetition Claims | (6) | ($19,083) |
| ▪ Aircraft Claims | (11) | ($220,000) |
| | 0 | $0 |

[1] Additional 2 claims are TWU Local 514 (Claim No. 11037), which is subject to settlement discussions and TWU Local 514 (Claim No. 7639), which is valued at $1.6 million for the purpose of the Motion.

[2] Additional claims is Timothy Hall (Claim No. 11351), which was reduced to $13,165.50 by Court order (ECF No. 13087).

**Weil**

**Exhibit 3**

**Vetter Proof of Claim**

Modified B 10 (GCG) (12-11)

## UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### PROOF OF CLAIM

**Your Claim is Scheduled As Follows:**

THE GARDEN CITY GROUP INC.

JUL 12 2012

| Name of Debtor (Check Only One): | Case No. | | | |
|---|---|---|---|---|
| ☑ American Airlines, Inc. | (11-15464) | ☐ Eagle Aviation Services, Inc. | (11-15472) | |
| ☐ AMR Corporation | (11-15463) | ☐ Admirals Club, Inc. | (11-15473) | |
| ☐ AMR Eagle Holding Corporation | (11-15465) | ☐ Business Express Airlines, Inc. | (11-15474) | |
| ☐ American Airlines Realty (NYC) Holdings, Inc. | (11-15462) | ☐ Reno Air, Inc. | (11-15475) | |
| ☐ Americas Ground Services, Inc. | (11-15466) | ☐ AA Real Estate Holding GP LLC | (11-15476) | |
| ☐ PMA Investment Subsidiary, Inc. | (11-15467) | ☐ AA Real Estate Holding L.P. | (11-15477) | |
| ☐ SC Investment, Inc. | (11-15468) | ☐ American Airlines Marketing Services LLC | (11-15478) | |
| ☐ American Eagle Airlines, Inc. | (11-15469) | ☐ American Airlines Vacations LLC | (11-15479) | |
| ☐ Executive Airlines, Inc. | (11-15470) | ☐ American Aviation Supply LLC | (11-15480) | |
| ☐ Executive Ground Services, Inc. | (11-15471) | ☐ American Airlines IP Licensing Holding, LLC | (11-15481) | |

**NOTE:** *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503 (other than a claim under 11 U.S.C. § 503(b)(9) which is subject to a separate bar date of February 13, 2012.)*

| Name of Creditor (the person or other entity to whom the Debtor owes money or property): LESLIE R. VETTER | ☐ Check this box to indicate that this claim amends a previously filed claim. | If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again. |
|---|---|---|
| Name and address where notices should be sent: LESLIE R. VETTER 422 PHELPS STREET GAITHERSBURG, MD 20878 Telephone number: 301-537-4575 E-mail: YNGVAY2@AOL.COM | Court Claim Number: _____ *(if known)* Filed on: _____ | |
| Name and address where payment should be sent (if different from above): SAME AS ABOVE FILED - 07319 USBC - SDNY AMR CORPORATION, ET AL. 11-15463 (SHL) Telephone number: E-mail: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. | |

| 1. Amount of Claim as of Date Case Filed (November 29, 2011): $ 4500.00/MONTH BEGINNING ON MAY 01, 2012. (See instruction #1) |
|---|
| If all or part of the claim is secured, complete item 4. |
| If all or part of the claim is entitled to priority, complete item 5. |
| ☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges. |

| 2. Basis for Claim: LONG-TERM DISABILITY (See instruction #2) |
|---|

| 3. Last four digits of any number by which creditor identifies Debtor: (See instruction #3) 0 5 9 3 | 3a. Debtor may have scheduled account as: _____ (See instruction #3a) | 3b. Uniform Claim Identifier (optional): _____ (See instruction #3b) |
|---|---|---|

| 4. Secured Claim (See instruction #4) Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information. | Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: |
|---|---|
| Nature of property or right of setoff: ☐ Real Estate ☐ Equipment ☐ Other | $ _____ |
| Describe: _____ | Basis for perfection: _____ |
| Value of Property: $ _____ | Amount of Secured Claim: $ _____ |
| Annual Interest Rate _____% ☐ Fixed or ☐ Variable (when case was filed) | Amount Unsecured: $ _____ |

| 5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount. (See instruction #5). | | |
|---|---|---|
| ☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the Debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4). | ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5). |
| ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__). |
| | | Amount entitled to priority: $ _____ |

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| 6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6) |
|---|

Modified B 10 (GCG) (12-11)

7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: _____

8. **Signature:** (See instruction #8)
Check the appropriate box.

☑ I am the creditor   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the Debtor, or their   ☐ I am a guarantor, surety, indorser, or other
   (Attach copy of power of attorney, if any.)   authorized agent. (See Bankruptcy Rule 3004.)   codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: LESLIE R. YETTER
Title: PILOT
Company: AMERICAN AIRLINES
Address and telephone number (if different from notice address above): SAME

*Leslie R Vetter* (Signature)   07/10/12 (Date)

Telephone number:                    e-mail:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the Debtor, exceptions to these general rules may apply. The attorneys for the Debtors and their Court-appointed claims agent, GCG, Inc. ("GCG"), are not authorized to provide, and are not providing, you with any legal advice.*

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS: IF BY FIRST CLASS MAIL: AMR Corporation, *et al.*, c/o GCG, P.O. Box 9852, Dublin, Ohio 43017-5752. IF BY HAND DELIVERY OR OVERNIGHT MAIL: AMR Corporation, *et al.*, c/o GCG, 5151 Blazer Parkway, Suite A, Dublin, Ohio 43017. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE ACCEPTED.

THE GENERAL AND GOVERNMENTAL BAR DATE IS JULY 16, 2012 AT 5:00 P.M. (PREVAILING EASTERN TIME)

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on November 29, 2011 (the "Commencement Date"). You should select the Debtor against which you are asserting your claim.

A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid e-mail address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the Court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing (using the exchange rate, if applicable, as of the Commencement Date.) Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the Debtor's account or other number used by the creditor to identify the Debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the Debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a):**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes Courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

Modified B 10 (GCG) (12-11)

| DEFINITIONS | | INFORMATION |
|---|---|---|

**Debtor**
A Debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity to whom the Debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. § 101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the Debtor on the date of the bankruptcy filing. See 11 U.S.C. § 101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the Debtor on the date of the bankruptcy filing. The creditor must file the form with GCG as described in the instructions above and in the Bar Date Notice.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the Debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a Debtor or may be obtained through a Court proceeding. In some states, a Court judgment is a lien. A claim also may be secured if the creditor owes the Debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been *redacted* when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social security, individual's tax identification, or financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from GCG, please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to GCG.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official Court documentation or communications from the Debtor. These entities do not represent the Bankruptcy Court or the Debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the Bankruptcy Court.

# AmericanAirlines®

May 2, 2012

LESLIE R. VETTER, #390593
422 PHELPS ST
GAITHERSBURG, MD 20878-2193

Re:  Your Notice of Intent to File a Claim for Flight Disability

Dear Pilot Vetter,

I recently received your Notice of Intent to File a Claim for Flight Disability form which starts the process for you to submit a claim for benefits under the Pilot Long Term Disability Plan (the "Plan"). In order for your claim to be completed and deemed filed so I can forward it for a determination by the Corporate Medical Director. I am requesting that you ask your treating physician(s) to provide me with the following information in a brief summary narrative letter:

1.  Diagnosis
2.  Dates of office visits in the past 12 months; dates of any future visits already scheduled
3.  Treatment(s) administered, including all medications prescribed
4.  Your response to treatment, including any adverse side effects to the medications prescribed
5.  Brief summary of your current status
6.  Short and long-term prognosis, including present and future treatment plan
7.  Estimated date of when you may be capable of returning to work as a pilot
8.  Any evaluation or test related to your disability

In addition to the above letter, a copy of any: (1) office progress notes from your outpatient visits with your treating physician(s) related to your condition, (2) surgery/operative reports, (3) reports of imaging studies, (4) reports from any other diagnostic or therapeutic procedures, and (5) evaluations of you and your condition, are required to complete your application or claim for disability benefits and to confirm ongoing treatment.

If you have been hospitalized related to your disability, a complete copy of your hospitalization records must be provided. If you have received treatment from any other health care provider (for example, physical therapy, outpatient clinic or other specialist or clinic) relating to the condition for which you have applied for disability benefits, your medical records from such treatment must also be provided. Please ask the hospital, clinic, or other health care provider to fax or mail your medical records related to your condition to the fax number or address below.

Please ask your physician(s) to either fax to (817) 963-6378 or mail the information to the attention of:

> American Airlines Medical Department
> c/o Nancy Sullivan
> P.O. Box 619616
> MD 4100, HDQ2
> DFW Airport, TX 75261-9616

4255 Amon Carter Blvd, MD 4100, Fort Worth, TX 76155

*Revised 11/08*



Once I have received the requested information and determined that it is sufficient, I can complete my review and forward it for further processing.

If you have already disclosed this condition to the FAA and have received a response from them, please provide a copy of their response letter.

I recommend that you maintain copies of all pertinent medical documentation concerning your current medical condition(s).  You are responsible for providing AA Medical with updates on your status and treatment for your condition every 90 days.  When you are nearing the time when you may be cleared by your treating physician to return to work as a pilot, this information /documentation must ultimately be disclosed to the FAA.  The FAA will make a determination as to your eligibility to hold a medical certificate.   I will be able to assist you with the process at that time.  Either way, I will require copies of a least two documents to order to clear you to return to work as a pilot for American Airlines:

1.   A copy of the FAA's letter of determination, authorizing you to hold a medical certificate
2.   A copy of a current and valid FAA Class 1 or Class 2 Medical Certificate, as applicable

All medical information received will be retained in corporate medical files separate and distinct from personnel records and treated as confidential.  You are responsible for the full cost of providing all of your medical records related to the condition for which you seek disability benefits to the Corporate Medical Director.

You are responsible for raising all of the reasons you believe you should receive benefits under the Pilot Long Term Disability Plan to AA Medical as part of the claim and appeal process.  You are responsible for providing ongoing medical records that demonstrate your continued disability and compliance with qualified medical care consistent with the nature of your disabling illness or injury.

Please provide the above requested information and documentation within thirty (30) days of the date of this letter.    Thank you for your prompt attention to this matter.

Sincerely,

Andrew Prychodko, M. D.
Area Medical Director
P.O. Box 619616, MD 4100 HDQ
DFW Airport, TX  75261
Fax# 817-963-6378

cc:     J. Spoon, RN
        N. Sullivan
        Medical File

To comply with federal law, we are asking that you not provide any genetic information when responding to this request for medical information. This includes the results of an individual's or family member's genetic tests, the fact that an individual or family member sought/received genetic services, an individual's family medical history, and genetic information regarding a fetus and/or embryo.

Revised 11/08

# AmericanAirlines®

June 22, 2012

FO Leslie Vetter, #390593
422 Phelps St
Gaithersburg, MD 20878-2193

Re:     Request for Additional Information for Disability Benefits Application

Dear FO Vetter,

We have received and reviewed the information you have recently forwarded to support your Notice of Intent to File a Claim for Flight Disability under the Pilot Long Term Disability Plan (the "Plan").

Your application for disability benefits under the Plan is incomplete due to insufficient evidence that you have a medical condition that would be eligible for the disability benefits under the Plan.  The Plan requirements for which we did not receive supporting information are the following: complete treatment records from Dr. Marina Johnson documenting the illness or injury that gives rise to your Disability.

In order to be disabled under the American Airlines, Inc. Pilot Long Term Disability Plan you must suffer "an illness or injury, verified through a qualified medical authority in accordance with Section V of the Plan, which prevent you from continuing to act as an Active Pilot Employee in the Service of the Employer," (per Section V of the Plan):

> *A Pilot Employee's Disability will be considered to have existed (and to continue to exist) only if the Pilot Employee has received and continues to receive qualified medical care consistent with the nature of the illness or injury that gives rise to such Disability;*

> *A Pilot Employee's Disability will be considered to cease to exist if (1) health is restored so as not to prevent the Pilot Employee from acting as an Active Pilot Employee in the service of the Company, (2) verification of such Disability can no longer be established or (3) appropriate medical care is wantonly disregarded by such Pilot Employee.*

In addition such illness or injury must not be excluded as:

(1)     Fear of flying syndrome, unless there is a preeminent psychiatric diagnosis; or
(2)     chemical dependency showing no progress toward recovery after two (2) years; or
(3)     any illness or injury which was intentionally self-inflicted or an attempted suicide; or
(4)     any illness or injury which was contracted, suffered or incurred while the Pilot Employee was engaged in a criminal activity; or
(5)     any illness or injury which was the result of war or any act of war, whether war is declared or not; or
(6)     any illness or injury which arose during the period of an unpaid leave of absence (other than an Association Leave) or Furlough while you were absent from employment with American Airlines, Inc; provided, however, that if a Pilot Employee had a Disability prior to beginning a Furlough and such Pilot Employee would have been recalled absent an illness or injury that would be considered a Disability, the Pilot Employee is deemed to have a Disability (if the illness or injury would otherwise qualify as such) from the date the Pilot Employee would have been recalled.

Such Disability must end by the earliest to occur of the following:

(1)     the date the Disability ceases, or
(2)     the payment of the maximum number of payments as stated in Section V, or

4255 Amon Carter Blvd, MD 4100, Fort Worth, TX 76155



(3)     the commencement of a "Retirement Benefit" under the American Airlines, Inc. Pilot Retirement Benefit Program, or

(4)     your Normal Retirement Date as specified in the American Airlines, Inc. Pilot Retirement Benefit Program, or

(5)     your death, or

(6)     the date your health is restored, or

(7)     the date you cease to receive qualified medical care consistent with the nature of your illness or injury that gives rise to your Disability, or

(8)     the date your Disability cannot be verified, or

(9)     the date you wantonly disregard appropriate medical care, or

(10)    the date you exceed the lifetime maximum benefit limitation for a chemical dependency disability and your current disability claim is based upon chemical dependency.

Your Notice of Intent to File a Claim for Flight Disability does not satisfy the requirements to be a complete claim because it does not include all of the necessary medical information. In order to file a complete claim you or your doctor must provide us: complete treatment records from any and all treating physicians related to your conditions of hypothyroidism, perimenopause, chronic insomnia, and irritable bowel syndrome, including treatment plans and prognosis for each condition, results of current diagnostic testing, and summaries of responses to therapeutic treatment(s) to-date.

You or your doctor should provide copies of his/her notes on your office visits and copies of all diagnostic tests, scans ore evaluations of you.

You may submit additional information to Jeanne Spoon, RN in AA Medical within forty-five (45) days of the date of this letter, who will forward the claim to the Corporate Medical Director for review.

Mailing address:  American Airlines Medical Department
                  c/o Jeanne Spoon, RN Pilot Disability Management
                  P.O. Box 619616
                  MD 4100, HDQ2
                  DFW Airport, TX  75261-9616

The Corporate Medical Director will make a determination within forty-five (45) days of the date the medical records are received, if you provide sufficient medical information, subject to certain permissible extensions, if you qualify for disability benefits under the Plan. If you do not provide sufficient medical information within forty-five (45) days of the date of this letter, your claim will be closed.

Sincerely,

Andrew Prychodko, MD
Area Medical Director
AA Occupational Health Services

cc:      J. Spoon, RN
         Medical File

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------x
                                                 :
In re                                            :        Chapter 11 Case No.
                                                 :
**AMR CORPORATION, et al.,**                      :        11-15463 (SHL)
                                                 :
                                  **Debtors.**    :        (Jointly Administered)
                                                 :
------------------------------------------------x

### NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM

**TO ALL PERSONS AND ENTITIES WITH CLAIMS AGAINST ANY OF THE DEBTORS**
**SET FORTH BELOW:**

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtor in the Past 8 Years |
|---|---|---|---|
| American Airlines, Inc. | 11-15464 | 13-1502798 | American Airlines |
| AMR Corporation | 11-15463 | 75-1825172 | AMR |
| AMR Eagle Holding Corporation | 11-15465 | 75-2196520 | American Eagle Airlines |
| American Airlines Realty (NYC) Holdings, Inc. | 11-15462 | 47-0899347 | N/A |
| Americas Ground Services, Inc. | 11-15466 | 75-2491387 | N/A |
| PMA Investment Subsidiary, Inc. | 11-15467 | 75-2828617 | N/A |
| SC Investment, Inc. | 11-15468 | 75-2742622 | N/A |
| American Eagle Airlines, Inc. | 11-15469 | 38-2036404 | American Eagle |
| Executive Airlines, Inc. | 11-15470 | 66-0433166 | Executive Airlines and American Eagle |
| Executive Ground Services, Inc. | 11-15471 | 27-4061679 | N/A |
| Eagle Aviation Services, Inc. | 11-15472 | 75-2533043 | N/A |
| Admirals Club, Inc. | 11-15473 | 75-1698690 | Admirals Club |
| Business Express Airlines, Inc. | 11-15474 | N/A | N/A |
| Reno Air, Inc. | 11-15475 | N/A | N/A |
| AA Real Estate Holding GP LLC | 11-15476 | 20-1168033 | N/A |
| AA Real Estate Holding L.P. | 11-15477 | 76-0735325 | N/A |
| American Airlines Marketing Services LLC | 11-15478 | 76-0800265 | N/A |
| American Airlines Vacations LLC | 11-15479 | 75-2968253 | AAV Tours LLC and American Airlines Vacations |
| American Aviation Supply LLC | 11-15480 | 20-1648730 | N/A |
| American Airlines IP Licensing Holding, LLC | 11-15481 | N/A | N/A |

On May 4, 2012, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of AMR Corporation, American Airlines, Inc., AMR Eagle Holding Corporation, and the other debtors set forth above (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **July 16, 2012, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts, but not including governmental units (as defined in section 101(27) of the Bankruptcy Code) ("**Governmental Units**")) to file a proof of claim ("**Proof of Claim**") based on prepetition claims against any of the Debtors listed above (the "**General Bar Date**"); and (ii) **July 16, 2012, at 5:00 p.m. (Eastern Time)** as the last date and time for each Governmental Unit to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**," and together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates, and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **November 29, 2011**, the date on which the Debtors commenced their cases under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact GCG, Inc. at (888) 285-9438 (toll free) or (440) 389-7498 (international toll) or by e-mail at amrcaseinfo@gcginc.com.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

1.     **WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan or plans filed by the Debtors or to share in any distributions from the Debtors' estates if you have a claim that arose prior to **November 29, 2011** and it is not one of the types of claims described in Section 2 below. Claims based on acts or omissions of the Debtors that occurred before **November 29, 2011** must be filed on or prior to the applicable Bar Date, even if such claims are not now fixed, liquidated, or certain or did not mature or become fixed, liquidated, or certain before November 29, 2011.

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "**claim**" means:  (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  Further, claims include unsecured claims, secured claims, and priority claims.

2

## 2.   WHO NEED **NOT** FILE A PROOF OF CLAIM

You need not file a Proof of Claim if:

(a)   Your claim is listed on the Schedules (as defined below) and (i) is **not** listed on the Schedules as "disputed," "contingent," or "unliquidated," (ii) you do **not** dispute the amount, nature, and priority of the claim as set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed in the Schedules;

(b)   Your claim has been paid in full;

(c)   You hold an equity security interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants, options, or rights to purchase, sell, or subscribe to such a security or interest; *provided, however,* that if you assert a claim (as opposed to an ownership interest) against any of the Debtors (including a claim relating to an equity interest or the purchase or sale of such equity interest), a Proof of Claim must be filed on or before the applicable Bar Date as set forth in this Notice;

(d)   You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative expense (**other than** a holder of a section 503(b)(9) claim which is subject to a separate deadline of February 13, 2012 to file a Proof of Claim);[1]

(e)   You hold a claim that heretofore has been allowed by Order of the Court entered on or before the applicable Bar Date;

(f)   You hold a claim against any of the Debtors for which a separate deadline has been fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);

(g)   You are a Debtor having a claim against another Debtor in these chapter 11 cases;

(h)   You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor;

(i)   You hold a claim for which you have already filed a Proof of Claim against any of the Debtors with the Clerk of the Court or GCG, Inc., the

---

[1] On December 14, 2011, the Court entered the Order Pursuant to 11 U.S.C. §§ 105(a) and 546(c) Establishing and Implementing Exclusive and Global Procedures for Treatment of Reclamation Claims (ECF No. 283) and the Order Establishing Procedures for the Assertion, Resolution, and Satisfaction of Claims Asserted Pursuant to 11 U.S.C. § 503(b)(9) (ECF No. 284). Pursuant to such Orders, the Court established December 19, 2011 as the deadline to submit reclamation demands for reclamation claims and February 13, 2012 as the deadline to file Proofs of Claim for claims under section 503(b)(9) of the Bankruptcy Code. The Bar Date Order does not supersede such Orders or extend any deadlines provided in such Orders.

Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10;

(j)     You hold a claim that is limited exclusively to the repayment of principal, interest, and other fees and expenses under any agreements (a "**Debt Claim**") governing any notes, bonds, debentures, pass-through certificates, enhanced pass-through trust certificates, equipment trust certificates, enhanced equipment trust certificates, or other debt securities, in each case, issued by or on behalf of any of the Debtors pursuant to an indenture or fiscal paying agency agreement (collectively, the "**Debt Instruments**"); *provided, however*, that (i) the foregoing exclusion shall not apply to the indenture trustee, owner trustee, pass-through trustee, subordination agent, registrar, paying agent, loan or collateral agent, or any other entity serving in a similar capacity however designated (collectively, an "**Indenture Trustee**") under the applicable Debt Instrument, (ii) each such Indenture Trustee shall be required to file a Proof of Claim against the applicable Debtor, on or before the applicable Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instrument, and (iii) any holder of a Debt Claim that has a claim arising out of or relating to a Debt Instrument other than a Debt Claim must file a Proof of Claim with respect to such claim on or before the applicable Bar Date, unless another exception identified herein applies; or

(k)     You are a present or former employee of the Debtors (an "**Employee**"), including, without limitation, Employees whose employment is subject to the terms of a collective bargaining agreement or a labor union representing such Employees (collectively, the "**CBA Parties**") (and, with respect to Employee benefit claims, any spouse or beneficiary of an Employee), solely with respect to any prepetition claim based on the payment of wages, salaries, employee medical benefits, and other benefits authorized to be paid pursuant to the Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing (I) Payment of Prepetition Wages, Salaries, and Other Compensation and Benefits, (II) Maintenance of Employee Benefits Programs and Payment of Related Administrative Obligations, and (III) Applicable Banks and Other Financial Institutions to Receive, Process, Honor, and Pay all Checks Presented for Payment and to Honor all Fund Transfer Requests (ECF No. 52); *provided, however,* that if the Debtors have provided notice to such Employees and CBA Parties that the Debtors do not intend to pay such a claim, Employees and CBA Parties must file a Proof of Claim by the later of (i) the General Bar Date and (ii) **thirty (30) days** following the date of such notice, or be forever barred from doing so, and such deadline shall be contained in any notice provided to the Employees and the CBA Parties.

Notwithstanding the foregoing, Employees or their labor unions must submit Proofs of Claim relating to grievances prior to the General Bar Date to the extent the grounds for such grievances arose or occurred prior to November 29, 2011, *provided, however,* that labor unions may submit

4

a Proof of Claim itemizing such grievances on behalf of their respective members to the extent authorized to do so under applicable law.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**THE FACT THAT YOU HAVE RECEIVED THIS NOTICE DOES NOT MEAN THAT YOU HAVE A CLAIM OR THAT THE DEBTORS OR THE COURT BELIEVE THAT YOU HAVE A CLAIM.**

3.     **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) such date as the Court may fix or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim with respect to unpaid amounts accrued and outstanding as of November 29, 2011 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

4.     **WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:      If by first-class mail, to:

**AMR Corporation,** *et al.*          **AMR Corporation,** *et al.*
c/o GCG                    c/o GCG
5151 Blazer Parkway, Suite A          P.O. Box 9852
Dublin, Ohio 43017              Dublin, Ohio 43017-5752

or if by hand delivery, to:

United States Bankruptcy Court, SDNY
One Bowling Green
Room 534
New York, New York 10004-1408

Proofs of Claim will be deemed timely filed only if **actually received** by GCG, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic transmission.

5.     **WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States as of November 29, 2011

5

(using the exchange rate, if applicable, as of November 29, 2011); (iii) conform substantially to the form provided with this Notice (the "**Proof of Claim Form**") or Official Form 10; (iv) specify by name and case number the Debtor against which the Proof of Claim is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation for the claim or an explanation as to why such documentation is not available; and (vii) be *signed* by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms or www.amrcaseinfo.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY DOCUMENTS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

6.    **CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

**ANY HOLDER OF A CLAIM THAT IS NOT EXCEPTED FROM THE REQUIREMENTS OF THE BAR DATE ORDER, AS SET FORTH IN SECTION 2 ABOVE, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM WILL BE FOREVER BARRED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR CHAPTER 11 ESTATES, FROM VOTING ON ANY PLAN OR PLANS OF REORGANIZATION FILED IN THESE CHAPTER 11 CASES, AND FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM.**

7.    **THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). To determine if and how you are listed in the Schedules, please refer to the descriptions set forth on the enclosed Proof of Claim Form regarding the nature, amount, and status of your claim(s). If you received postpetition payments from the Debtors (as authorized by the Court) on account of your claim, the enclosed Proof of Claim Form will reflect the net amount of your claims. If the Debtors believe that you hold claims against more than one Debtor, you will receive multiple Proof of Claim Forms, each of which will reflect the nature and amount of your claim against each Debtor, as listed in the Schedules.

As set forth above, if you agree with the nature, amount, and status of your claim as listed

6

in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified
Debtor, and if your claim is not listed in the Schedules as "disputed," "contingent," or
"unliquidated," you need not file a Proof of Claim.  Otherwise, or if you decide to file a Proof of
Claim, you must do so before the Bar Date in accordance with the procedures set forth in this
Notice.

       *Copies of the Schedules may be examined by interested parties on the Court's electronic
docket for the Debtors' chapter 11 cases, which is posted (i) on the website established for the
Debtors' cases at* www.amrcaseinfo.com *and (ii) on the Court's website at*
www.nysb.uscourts.gov. *(A login and password to the Court's Public Access to Electronic Court
Records ("PACER") are required to access the information on the Court's website and can be
obtained through the PACER Service Center at* www.pacer.gov.*).  Copies of the Schedules also
may be examined between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) Monday through
Friday at the Office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the
Southern District of New York, One Bowling Green, Room 511, New York, New York 10004-
1408.  Copies of the Debtors' Schedules also may be obtained by written request to GCG Inc., the
Debtors' claims agent, at the address and telephone number set forth below:*

**AMR Corporation,** *et al.*
c/o GCG
P.O. Box 9852
Dublin, Ohio 43017-5752
Toll Free: (888) 285-9438
International Toll: (440) 389-7498

       In the event that the Debtors amend or supplement their Schedules subsequent to May 4,
2012, the Debtors shall give notice of any amendment or supplement to the holders of claims
affected by such amendment or supplement, and such holders must file a Proof of Claim by the
later of (i) the applicable Bar Date and (ii) **thirty (30) days** following the date of such notice, or
be forever barred from doing so, and such deadline shall be contained in any notice provided to
the holders of claims affected thereby.

**A holder of a possible claim against the Debtors should consult an attorney if such holder
has any questions regarding this Notice, including whether the holder should file a Proof of
Claim.**

Dated:  New York, New York                        **BY ORDER OF THE COURT**
        May 4, 2012

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION



AmR. Corporation, et al,
c/o GCG
P.O. Box 9852
Dublin, OHIO 43017-5752



U.S. POSTAGE
PAID
GAITHERSBURG, MD
20878
JUN 13 '2
AMOUNT
$1.50
00033056-04

**Exhibit 4**

**Mawhinney Objection**

UNITED STATE BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: AMR CORPORATION, et al., | ) | Chapter 11 |
| Debtors | ) | Case No. 11-15463 (SHL) |
| | | (Jointly Administered) |

### OBJECTION TO THE "NOTICE OF HEARING ON DEBTORS' RENEWED MOTION FOR ENTRY OF ORDER AUTHORIZING RELEASE OF EXCESS RESERVE FUNDS HELD IN DISPUTED CLAIMS RESERVE"

I, Robert Steven Mawhinney ("RSMawhinney"), object to the motion of AMR Corporation ("AMR"), (dated November 15, 2018) "Notice of Hearing on Debtors' renewed Motion for entry of Order authorizing release of excess Reserve Funds held in Disputed Claim Reserve."

RSMawhinney disagrees with AMR's determination that "... it is reasonable and appropriate to make a distribution from the Disputed Claims Reserve"; because of AMR's determination that "... given the significant cushion in the Disputed Claims Reserve." The additional reasoning that AMR proclaims is biased, un-reasonable, and detrimental to the Remaining Disputed Claims: "Requiring the Debtors to continue to postpone the release of the excess shares of New Common Stock in the Disputed Claims Reserve would be detrimental to holders of AMR Equity Interests, who have been deprived of their pro rata share of the Excess Reserve Funds."

RSMawhinney does not have any faith that AMR will protect the funds from being exhausted before the resolution of all disputed claims. The proposed Order appears to give AMR *carte blanche* authority to disburse funds to exhaustion, or near exhaustion.

RSMawhinney prays that the Court protects the interests of the Remaining Disputed Claims, and does not approve AMR's motion at this time. The Court should stress upon AMR to resolve all Claims before distributions are allowed; to eliminate undue influence and prejudice against the remaining claims.

DATED:     November 24, 2018          SIGNATURE:
CLAIM NO. 6811                               CREDITOR: Robert Mawhinney
CLAIM AMOUNT: $10,025,778.33      ADDRESS: 8070 La Jolla Shores Dr., # 524
EMAIL: Rmawhinney@ymail.com                    La Jolla, CA  92037

## CERTIFICATE OF SERVICE

Case Name:   **In re AMR Corporation, et al., Debtors**

U.S. Bankruptcy Court, S.D.N.Y., Case No. **11-15463**

I certify that a copy of:

> OBJECTION TO THE "NOTICE OF HEARING ON DEBTORS' RENEWED
> MOTION FOR ENTRY OF ORDER AUTHORIZING RELEASE OF EXCESS
> RESERVE FUNDS HELD IN DISPUTED CLAIMS RESERVE"

was served by the U.S. Postal Service to the following:

**Weil, Gotshal, & Manges LLP**         **Debtors, c/o AMR Corp.**
   **Attn: Alfredo R. Perez**              **Attn: D. Douglas Cotton**

**700 Louisiana Street, S-1700**       **4333 Amon Carter Blvd.**
   **Houston, TX 77002**                   **Fort Worth, TX 76155**

The mode of service was BY MAIL through the U.S. Postal
Service by placing the document(s) listed above in a sealed
envelope with postage thereon to cover full charges and
deposited in a U.S. Postal Service depository in San Diego,
CA.

I declare under penalty of perjury under the laws of
the United States of America and the State of California
that the foregoing to be true and correct.

**DATED: November 24, 2018**

   **Robert Steven Mawhinney,**
   **Creditor, in Pro Se**

**Exhibit 5**

**Westways Order**

1   ROBERT P. BERRY, SBN 220271
        rberry@berrysilberberg.com
2   BERRY SILBERBERG STOKES PC
    16150 Main Circle Drive
3   Suite 120
    St. Louis, MO 63017
4   Telephone: (314) 480-5882
    Facsimile: (314) 480-5884
5
6   CAROL M. SILBERBERG, SBN 217658
        csilberberg@berrysilberberg.com
7   BERRY SILBERBERG STOKES PC
    155 N. Lake Ave., Suite 800
8   Pasadena, CA 91101
    Telephone: (213) 986-2688
9   Facsimile: (213) 986-2677
10
11  Attorneys for Defendant
    AMERICAN AIRLINES, INC.,
12
13
14              UNITED STATES DISTRICT COURT
15              CENTRAL DISTRICT OF CALIFORNIA
16
17  WESTWAYS WORLD TRAVEL, and         CASE NO. 99-cv-RT 386
    SUNDANCE TRAVEL SERVICE,
18  individually and on behalf of all others    [PROPOSED] ORDER GRANTING
    similar situated,                            REQUEST TO REOPEN "CLOSED"
19                                               CASE TO DISMISS PURSUANT TO
                    Plaintiff,                   RULE 41(b)
20
        v.                                       Judge: Currently Unassigned
21
    AMR CORPORATION, AMERICAN
22  AIRLINES, INC. AMERICAN EAGLE
    HOLDING CORPORATION,                         Date:   December 11, 2018
23  AIRLINES REPORTING                           Time:   9:30 a.m.
    CORPORATION and SABRE INC.,
24
                    Defendants.
25
26
27
28

        [PROPOSED] ORDER GRANTING REQUEST TO REOPEN CASE

FILED
CLERK, U.S. DISTRICT COURT

NOV - 8 2018

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

[PROPOSED] ORDER

Upon consideration of the briefing relating to this matter and the Court's file in this action, the Request by the American Airlines, Inc. to reopen this matter is GRANTED.

The Court hereby DISMISSES this action with prejudice as to all Defendants pursuant to Federal Rule of Civil Procedure Rule 41(b).

[Or in the alternative]

The Court hereby Orders Plaintiffs to Show Cause as to why this case should not be dismissed pursuant to Federal Rule of Civil Procedure Rule 41(b). Plaintiffs' response to the Court's Order to Show Cause shall be filed on or before _____. Plaintiffs' failure to file a response will result in this action being dismissed with prejudice as to all Defendants. Defendants may file a reply to Plaintiffs' response to the Order to Show Cause within fourteen (14) days after any such response is filed and served.

IT IS SO ORDERED.

Dated: _Nov. 8 2018_

_Virginia A. Phillips_
_____
UNITED STATES DISTRICT COURT JUDGE

1

**[PROPOSED] ORDER GRANTING REQUEST TO REOPEN CASE**

**Exhibit 6**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
:
In re                                                        :        Chapter 11 Case No.
:
AMR CORPORATION, *et al.*,                                   :        11-15463 (SHL)
:
                                   Debtors.                  :        (Jointly Administered)
:
-------------------------------------------------------------x

## ORDER AUTHORIZING RELEASE OF EXCESS RESERVE
## FUNDS HELD IN DISPUTED CLAIMS RESERVE

Upon the motion, dated November 15, 2018,[1] of AMR Corporation and its related

debtors, as debtors and reorganized debtors (collectively, the "**Debtors**"), under section 105(a) of

the Bankruptcy Code and Bankruptcy Rule 3021, for entry of an order authorizing the release of

certain excess reserves held in the Disputed Claims Reserve; and a hearing having been held to

consider the relief requested; and upon the record of the hearing and all of the proceedings before

the Court; and the Court having found and determined that the relief sought in the Motion is in

the best interests of the Debtors, creditors, and all parties in interest, and that the legal and factual

bases in the Motion establish just cause for the relief granted; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized to distribute (i) up to 13.4 million

shares of New Common Stock from the Disputed Claims Reserve without prejudice to seek

future distributions by further order of the Court and (ii) a proportionate distribution of up to 4.1

---

[1] Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Motion or the
Debtors' Fourth Amended Joint Chapter 11 Plan (the "**Plan**"), as applicable.

million shares of New Common Stock from the Labor Allocation Reserve to holders of Allowed

AMR Equity Interests as soon as reasonably practicable after entry of this Order (subject to

reduction for expenses of the Disputed Claims Reserve); and it is further

ORDERED that the Debtors are authorized to distribute shares of New Common

Stock from the Aircraft Subreserve if all Disputed Claims subject to the Aircraft Subreserve are

either settled, disallowed, or allowed prior to the date of the distribution described in the

paragraph above; ***provided that, the Debtors shall only make distributions on Claims Allowed

in accordance with the Plan or by further order of this Court***; and it is further

ORDERED that the Debtors and the Disbursing Agent, as applicable, are

authorized to take any and all actions that are necessary or appropriate to effectuate distributions

of excess reserves from the Disputed Claims Reserve and the Labor Allocation Reserve to

holders of Allowed AMR Equity Interests, including without limitation selling shares of New

Common Stock held in the Disputed Claims Reserve to pay expenses of the Disputed Claims

Reserve; and it is further

ORDERED that any taxes incurred by the Disputed Claims Reserve distributing

shares of New Common Stock from the Disputed Claims Reserve are properly deducted from the

distribution; and it is further

ORDERED that this Order shall not affect the allowance or disallowance of any

of the Disputed Claims, and all rights to dispute the validity, nature, amount, or priority of any

Disputed Claims are reserved and preserved; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated:  New York, New York
            _____, 2018


                                    _____

                                    United States Bankruptcy Judge

WEIL:\96825094\1\14013.0139

**Exhibit F**

**Summary Order**

15-3655-bk
In re: AMR Corporation

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of October, two thousand sixteen.

PRESENT: PIERRE N. LEVAL,
ROBERT D. SACK,
REENA RAGGI,
*Circuit Judges.*

-------------------------------------------------------------------

IN THE MATTER OF: AMR CORPORATION,
*Debtor.*

-------------------------------------------------------------------

LAWRENCE M. MEADOWS,
*Appellant,*

v.                                                No. 15-3655-bk

AMR CORPORATION,
*Debtor-Appellee.*

-------------------------------------------------------------------

FOR APPELLANT:            Lawrence M. Meadows, *pro se*, Park City, Utah.

FOR APPELLEE:             Stephen A. Youngman, Weil, Gotshal & Manges, LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*; Sean H. Lane, *Bankruptcy Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Creditor Lawrence M. Meadows, proceeding <u>pro se</u>, appeals from the affirmance of an order of the Bankruptcy Court for the Southern District of New York that disallowed and expunged three of Meadows's amended proofs of claim as untimely. On plenary review of a decision of a district court functioning as an intermediate appellate court in a bankruptcy case, we assess the bankruptcy court's legal conclusions <u>de novo</u> and its factual findings for clear error. <u>See</u> <u>In re Lehman Bros. Holdings Inc.</u>, 761 F.3d 303, 308 (2d Cir. 2014). "Additionally, we may affirm on any ground that finds support in the record." <u>Id.</u> In applying these principles here, we assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.

1. <u>Denial of Amendment</u>

A timely original claim can be amended to add otherwise untimely claims if the latter relate back to the former and if amendment would be equitable. <u>See</u> <u>In re Enron Corp.</u>, 419 F.3d 115, 133 (2d Cir. 2005). Alternatively, such amendment may be allowed if the delay in pursuing the untimely claims results from excusable neglect. <u>See</u> <u>id.</u> at 121; Fed. R. Bankr. P. 9006(b)(1). We review a bankruptcy court's denial of

late-filed amended proofs of claim for abuse of discretion, see In re Enron Corp., 419
F.3d at 124, which we will identify only where that decision rests on legal or factual error
or cannot be located within the range of permissible decisions, see In re Smith, 507 F.3d
64, 73 (2d Cir. 2007).

Meadows's argument that his untimely claims for discrimination and
whistleblowing relate back to his timely claim for long-term disability benefits fails for
the reasons stated by the district court, which we incorporate here.   See Meadows v.
AMR Corp., 539 B.R. 246, 251–52 (S.D.N.Y. 2015).   His effort to demonstrate relation
back by reference to the timely filed omnibus claim of the Allied Pilots Association
("APA")—which includes a pending grievance pertaining to Meadows—raises more
challenging issues.   We need not pursue them here, however, because even if we were to
resolve them all in Meadows's favor so as to establish relation back, we would still not
identify abuse of discretion in the district court's denial of amendment.   That is because
the same bankruptcy court findings that belie excusable neglect also demonstrate that
amendment would not be equitable in this case.   Specifically, the bankruptcy court
found that (1) Meadows's delay in pursuing his untimely statutory claims was unjustified
and (2) allowing amendment to add such claims would prejudice the debtor by
threatening to disrupt its omnibus settlement with the APA and "opening the floodgates
to potential claimants."   S.A. 2222–23.   Considerations of unjustified delay and
prejudice are relevant not only to assessing excusable neglect, see In re Enron Corp, 419

3

F.3d at 122, but also to equitable analysis, where prejudice is the "critical consideration,"

see id. at 133 (internal quotation marks omitted).    Thus, the bankruptcy court's findings

effectively preclude either issue from being resolved in Meadows's favor.

In urging otherwise, Meadows argues, as he did in the bankruptcy court, that his

delayed filings are attributable to prior counsel.    But as the bankruptcy court correctly

observed, mistakes of counsel do not ordinarily excuse failures of timely filing.    See

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396–97 (1993);

accord In re Enron Corp., 419 F.3d at 122–23.    We identify no error in the court's

application of that principle to this case.

In sum, Meadows fails to show that the bankruptcy court abused its discretion in

dismissing and expunging his untimely claim amendments.

2.    Procedural Challenges

Meadows maintains that certain actions by the bankruptcy court denied him due

process.    Specifically, he complains of the bankruptcy court's purported refusal to allow

him to refute unanticipated testimony from an APA representative as well as the court's

written modification to its pronounced oral order permitting him to pursue his grievance

in other venues.    These complaints are without merit.

In response to the testimony of the APA witness, the bankruptcy court did not

permit Meadows to testify to his interactions with APA attorneys, but it did allow him to

submit an affidavit to establish any prior contrary "official action" or "official position"

taken by the union.    S.A. 2031–32.    This decision fell well within the bankruptcy

court's discretion to order the presentation of evidence so that it would not "confuse the issue" or "wast[e] time."   Fed. R. Evid. 403; <u>see</u> S.A. 2031 (expressing concern as to probative value and admissibility of evidence and tendency to turn proceedings into "circus"); <u>see also</u> <u>In re Busy Beaver Bldg. Ctrs., Inc.</u>, 19 F.3d 833, 846 n.16 (3d Cir. 1994) (recognizing that sound discretion of bankruptcy judge in ordering hearing "would not necessarily require the presentation of oral testimony").   Meadows in fact submitted an affidavit, attaching (1) an email to him from an APA attorney purporting to show support for his whistleblower claims, and (2) a copy of the legal brief on his whistleblower claim that Meadows claimed to have forwarded to the APA for its submission.   He fails to demonstrate how the testimonial presentation of such evidence would have been any more likely to persuade the bankruptcy court that the union had previously taken contrary actions or positions.

Nor can Meadows show prejudice from language in the bankruptcy court's written order allowing Meadows to pursue his grievance "to the extent permitted by applicable law."   S.A. 2117.   Indeed, Meadows points to no authority that would have allowed him to pursue of the grievance on any other terms.

3.    <u>Conclusion</u>

We have considered Meadows's remaining arguments and find them to be without

merit.    Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

**Exhibit G**

**Consent Decree**

Mary Jo O'Neill, AZ Bar #005924
Michael Baskind, AZ Bar #030810
James Driscoll-MacEachron, AZ Bar # 027828
**Equal Employment Opportunity
Commission, Phoenix District Office**
3300 N. Central Ave., Suite 690
Telephone: (602) 640-5003
Fax: (602) 640-5009
Email: mary.oneill@eeoc.gov
        michael.baskind@eeoc.gov
        james.driscollmaceachron@eeoc.gov
Attorneys for Plaintiff

Mark W. Robertson (N.Y. S.B. # 4508248)
Kelly Wood (C.A. S.B. # 267518)
**O'Melveny & Myers LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 430-6000
Fax: (213) 430-6407
Email: mrobertson@omm.com
        kwood@omm.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | Civil Action No.: 2:17-cv-04059-SPL |
| Plaintiff, | **CONSENT DECREE** |
| v. | |
| American Airlines, Inc. and Envoy Air Inc., | |
| Defendants. | |

- 1 -

# I. RECITALS

1.    In this matter, Plaintiff Equal Employment Opportunity Commission ("Plaintiff" or "EEOC"), an agency of the United States government, alleges that Defendants American Airlines, Inc. ("American") and Envoy Air Inc. ("Envoy") (collectively, "Defendants") violated the Americans with Disabilities Act ("ADA"). The EEOC and Defendants are collectively referred to as the "Parties." Provisions of this Consent Decree ("Decree") applicable to "Defendants" shall apply separately to American and Envoy as individual and separate carriers. Accordingly, American is responsible only for fulfilling obligations involving American employees, and likewise, Envoy is responsible only for obligations involving Envoy employees.

2.    The Parties desire to settle this matter (the "Lawsuit") by an appropriate Decree, and agree to the jurisdiction of this Court over the Parties and the subject matter of this Lawsuit and to the power of this Court to enter a Decree enforceable against the Parties.

3.    Defendants deny all allegations set forth in this Lawsuit, as well as those set forth in the Charges and the Determination Letters (as defined below). By entering into this Decree, Defendants deny and do not admit, either expressly or implicitly, that they violated any federal, state, or local law, or that they have any liability related to this Lawsuit or the Charges or Determination Letters. Defendants maintain that they provide equal employment opportunities for all employees and have entered into this Decree to avoid the disruption, costs, delay, and expense of continued litigation. This Decree shall not be construed as an admission by Defendants of any discriminatory or unlawful conduct.

4.    As to the issues resolved, this Decree is final and binding upon the Parties and their successors and assigns.

5.    For the purpose of amicably resolving this Lawsuit, the Parties jointly request this Court to adjudge as follows:

**IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

## II.  JURISDICTION

6.      The Parties stipulate to the jurisdiction of the Court over the Parties and subject matter of this Lawsuit and have waived the entry of findings of fact and conclusions of law.

7.      The Parties agree that this Decree is fair, reasonable, and equitable and does not violate the law or public policy.

## III.  TERM AND SCOPE

8.      This Decree shall be effective on the later of (i) the date it is signed by this Court or (ii) the date on which an order from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approving the monetary relief provided for in this Decree becomes final and non-appealable (the "Effective Date").

9.      The duration of the Decree shall be two (2) years from the Effective Date.

10.      This Decree covers all of Defendants' operations within the United States and its territories.

## IV.  GENERAL PROVISIONS

11.      In the event that the EEOC believes that American or Envoy did not comply with any provision of the Decree, the EEOC may bring an action before this Court to enforce the Decree.  Prior to initiating such action, the EEOC shall notify American and/or Envoy and their respective legal counsel of record, in writing, of the nature of the dispute.  The notice shall specify the particular provision(s) of the Decree that the EEOC believes were breached.  American and/or Envoy shall have sixty (60) days from the date of receipt of the notice (the "Notice Period") to attempt to resolve or cure the breach; however, the Parties may agree to extend the Notice Period upon mutual consent.  After the Notice Period has passed without resolution or agreement to extend the Notice Period further, the EEOC may petition this Court for resolution of the dispute.

12.      This Decree may be executed in any number of counterparts, each of which will be considered an original and all of which together will constitute the Decree.

13.      This Decree constitutes a complete resolution of the claims in this Lawsuit,

1    and all issues of law and fact that were raised by the EEOC in this Lawsuit. This Decree

2    also constitutes a complete resolution of any and all claims that the EEOC could have

3    brought against Defendants, as well as Defendants' parent and subsidiary corporations,

4    past, present and future, and all of their directors, officers, and employees, seeking relief

5    for any current or former employee of Defendants with respect to: (a) the findings

6    contained in the Determination Letters; and (b) any act or omission of Defendants

7    occurring prior to the Effective Date arising from the alleged improper policies or

8    practices identified by the EEOC in the Determination Letters. The EEOC will not bring

9    or litigate the issues identified in the EEOC's Determination Letters nationwide, or on a

10   classwide or individual basis. Nothing in this paragraph affects the EEOC's ability,

11   responsibility and authority to receive and investigate any subsequently filed charges of

12   discrimination or to bring a subsequent lawsuit against Defendants regarding matters not

13   covered in this Lawsuit or the Letters of Determination giving rise to this Lawsuit.

14        14.    It is also the intent of the Parties that American and Envoy's compliance

15   with this Decree will fully and completely resolve: (a) Darla Alvarado v. American

16   Airlines (540-2009-01250); Janet Reyes v. American Airlines (540-2013-02951); Sherrie

17   Edwards-Redd v. American Airlines (564-2013-01151); Vicki Groves v. American

18   Airlines (540-2013-03526); Wanda Villanueva v. American Airlines (524-2014-00072);

19   Chrissie L. Ball v. American Airlines (540-2015-02142); Jodi Isenberg v. American

20   Airlines (540-2015-01742); Lisa Walker v. American Airlines (511-2015-01560); Danny

21   Hill v. American Eagle Airlines (493-2014-01307); Brenda Gallardo v. American Eagle

22   Airlines (510-2013-02881) and (510-2013-05173); Tanya Howard v. American

23   Airlines (540-2015-02025); Tanya Merriweather v. American Airlines (846-2013-

24   51903); and Micah Peterson v. American Airlines (540-2011-0004) (collectively

25   "Charging Parties") charges of discrimination (collectively, the "Charges"); (b) all issues

26   of law and fact which were raised by the EEOC in this Lawsuit; and (c) the EEOC's

27   claims of disability discrimination, which the EEOC could have brought based on the

28   Determination Letters that were issued for the Charges. "Determination Letters" as used

in this Decree means the Determination Letters issued by the EEOC in response to the Charges listed above on July 29, 2015, July 30, 2015, August 17, 2015, August 21, 2015, and December 16, 2015.

15.    Defendants and their respective officers will not interfere with the relief ordered in this Decree and shall cooperate in the implementation of this Decree.

16.    The Parties to this Decree shall bear their own expenses and costs, including their own attorneys' fees, associated with the Lawsuit and this Decree.

### V.  MONETARY RELIEF

17.    Within ten (10) days after the Effective Date, the EEOC shall be deemed to hold an Allowed American General Unsecured Claim (as defined in the Debtors' Fourth Amended Joint Chapter 11 Plan (the "Plan")) in the amount of $9,800,000.00 (the "EEOC Allowed Claim").  The distribution mechanics shall be governed by the Plan. Because distributions on an Allowed American General Unsecured Claim (as defined in the Plan) are made in common stock of American Airlines Group Inc. ("AAL"), the Parties acknowledge that the ultimate dollar value of the settlement will depend upon the trading price of AAL, and that this Decree is fully enforceable no matter the trading price of AAL.  Within ten (10) days after the Effective Date, Defendants will cause the claims agent to adjust the claims register in accordance with this Decree.  Thereafter, in accordance with the Plan and this Decree, the Disputed Claims Reserve (as defined in the Plan) will make a distribution of AAL stock on the first Distribution Date (as defined in the Plan) following the Effective Date to the Settlement Administrator.  Defendants shall notify the EEOC of the distribution within three (3) days of the distribution of AAL stock to the Settlement Administrator.  The Settlement Administrator will be responsible for converting the stock into cash and depositing the cash in an interest bearing fund used exclusively for the purposes of implementing this Decree.

18.    The EEOC Allowed Claim constitutes all of the monetary relief to which the EEOC is entitled under this Decree to distribute to Charging Parties and claimants eligible to receive a settlement ("Eligible Claimants"), which includes all applicable

1  federal (including, but not limited to, Federal Insurance Contribution Act and Federal

2  Unemployment Tax Act taxes), state and local taxes typically paid by employers in

3  regards to employee compensation.  The EEOC agrees that the EEOC Allowed Claim

4  will be used solely for the benefit of the Charging Parties and Eligible Claimants, except

5  to the extent it is distributed to a charity or non-profit pursuant to this Decree.

6       19.    No distribution shall be made by the Settlement Administrator to any

7  Charging Party without the execution of the release agreement attached as Exhibit A, an

8  executed copy of which must be provided to the appropriate Defendant for each Charging

9  Party prior to any monetary distribution by the Settlement Administrator to such

10  individual.

11       20.    No distribution shall be made by the Settlement Administrator to any

12  Eligible Claimant without the execution of the release agreement attached as Exhibit A,

13  an executed copy of which must be provided to the appropriate Defendant for each

14  Eligible Claimant prior to any monetary distribution by the EEOC or the Settlement

15  Administrator to such individual.

16       21.    **Withdrawal of Proofs of Claim**: Upon the date that the Disputed Claims

17  Reserve distributes AAL stock consistent with the terms of this Decree to the Settlement

18  Fund created by the Settlement Administrator, the proofs of claim filed in Defendants'

19  chapter 11 bankruptcy cases listed on Exhibit B shall be deemed satisfied with prejudice

20  and the Defendants' claims agent, GCG, Inc., shall be authorized to adjust the claims

21  register in accordance with the terms of this Decree.  "Settlement Fund" means any and

22  all consideration distributed pursuant to this Decree to the Settlement Administrator,

23  including any proceeds realized from the disposition thereof and any earnings thereon

24  (inclusive of any reinvestment of proceeds and any interest that accrues in any account

25  created by the Settlement Administrator in furtherance of his duties hereunder), which

26  amounts shall be held in a separate account by the Settlement Administrator in

27  accordance with the terms of this Decree.

28       22.    **Settlement Administrator:** Within ten (10) calendar days after the

1    Effective Date, Defendants and EEOC will appoint a Settlement Administrator mutually

2    acceptable to the Parties to handle the claim process for distribution of the Settlement

3    Fund.  The Settlement Administrator shall be unrelated to, and independent of, the

4    Defendants within the meaning of Treasury Regulation §§ 1.468B-1(d) and 1.468B-

5    3(c)(2)(A).  The Parties each agree that they will not have any financial interest in the

6    Settlement Administrator or otherwise have a relationship with the Settlement

7    Administrator that could create a conflict of interest.  Disputes relating to the Settlement

8    Administrator's performance of its duties may be referred to this Court, if necessary,

9    which will have continuing non-exclusive jurisdiction over the terms and conditions of

10   this Decree until all payments and obligations contemplated by this Decree have been

11   fully carried out.  All administration costs, including fees paid to the Settlement

12   Administrator up to a maximum of $150,000, shall be paid by Defendants.  Any fees

13   exceeding $150,000 to the Settlement Administrator shall be paid out of the Settlement

14   Fund.  The Settlement Administrator will be responsible for (a) accepting the distribution

15   of AAL stock from the Disputed Claims Reserve pursuant to Paragraph 17 above and

16   converting that stock into cash at the earliest possible date, but no later than ten (10)

17   business days after receiving the distribution of stock from the Disputed Claims Reserve;

18   (b) opening, maintaining and securing an interest bearing fund for the sole purpose of

19   housing the cash resulting from the stock-to-cash conversion detailed in part (a) of this

20   Paragraph; (c) depositing the funds into the interest bearing account within two (2)

21   business days of the stock-to-cash conversion detailed in Paragraph 22(a) being

22   effectuated; (d) establishing an informational website accessible to EEOC, and

23   potentially aggrieved individuals ("PAIs"); (e) establishing a toll-free telephone number

24   accessible to PAIs; (f) responding to information requests from PAIs; (g) sending the

25   Notice (attached as Exhibit C) and Claim Form (which shall be mutually agreed to by

26   Defendants and EEOC), to PAIs; (h) obtaining updated addresses for PAIs and re-

27   mailing returned notices; (i) receiving and processing claims; (j) evaluating claims based

28   on criteria provided by EEOC; (k) communicating a recommended distribution list to the

1    EEOC; (l) sending notices of claim share, and notices of appeal rights to PAIs

2    determined by EEOC to be eligible; (m) sending notices of ineligibility and notices of

3    appeal rights to PAIs determined by EEOC to be ineligible; (n) processing appeals and

4    forwarding them to EEOC for determination, together with the Settlement

5    Administrator's recommendation; (o) issuing payments in accordance with a final

6    distribution list provided by EEOC; (p) issuing and filing tax reporting forms,

7    withholding applicable taxes and paying all taxes typically paid by employers (e.g.,

8    FICA) related to each Charging Party and Eligible Claimant who receives a distribution

9    from the EEOC Allowed Claim; (q) communicating as necessary with EEOC and

10    Defendants; (r) tracking all necessary data regarding contact with the Charging Parties

11    and PAIs; (s) confirming each Charging Party and Eligible Claimant has executed the

12    appropriate release agreement prior to issuing a payment; and (t) distribution of the

13    Settlement Fund.

14        a.    **Website and Toll-Free Telephone Number.** Within twenty (20) calendar

15                days after being retained, the Settlement Administrator will establish a

16                website and toll-free telephone number that will be accessible to PAIs.

17                Information posted on the website and available on a recorded message on

18                the toll-free telephone number will be limited to the general information

19                included in notices sent to PAIs or update information as to status of the

20                claim process (*i.e.*, claim-filing deadline; appeal deadline; projected

21                distribution date when known).

22        b.    **Employee List.** Within twenty (20) calendar days after the Effective Date,

23                and based on a reasonable and diligent search of their respective records,

24                American and Envoy will each provide the Settlement Administrator with a

25                list of individuals each carrier employed, respectively, anywhere in the

26                United States and its territories who, during the period from January 1,

27                2009 until August 3, 2015:

28                i.    Submitted a completed Request for Accommodation form to

American or Envoy; or

       ii.     Were reviewed by the Medical Review Board; or

      iii.    Were reviewed by the Accommodation Review Board.

c.     The Employee Lists shall exclude pilots of American and Envoy, corporate officers of American and Envoy, as well as employees who were subject exclusively to US Airways, Inc. ADA policies from January 1, 2009 through August 3, 2015 (i.e., legacy US Airways employees).

d.     For each individual on the Employee Lists, and on the same day the Employee Lists are provided to the Settlement Administrator pursuant to Paragraph 22.b. of this Decree, Defendants will provide the following information, if reasonably available to Defendants:  (a) full name, including all known prior names or aliases; (b) last known address; (c) last known telephone number; (d) dates of birth; and (e) last known personal e-mail address.

e.     **Mailing Notice and Claim Form.** Upon receipt of the Employee Lists, the Settlement Administrator will utilize available resources to update addresses provided by Defendants, and will mail the Notice, Claim Form, appropriate release agreement, and return envelope addressed to the Settlement Administrator, to each individual on the Employee Lists at the best address the Settlement Administrator has found.  The Notice and Claim Form will be mailed at the earliest possible date, but not later than ninety (90) calendar days after the Effective Date.

f.     **Return Mail Handling.** For each piece of mail returned as undeliverable, the Settlement Administrator will make reasonable efforts, using services such as Accurint and CLEAR, to obtain an updated address and will re-mail based on the updated address.

g.     **Claim-Filing Deadline.** The final claim-filing deadline will be sufficient to allow at least thirty (30) calendar days for response to re-mailed Notices.

- 9 -

h.   **Claim Evaluation.** The Settlement Administrator will evaluate claims of the PAIs based on objective criteria provided by the EEOC, and will provide its recommendations to the EEOC and Defendants within sixty (60) calendar days after the final claim-filing deadline.  Defendants may provide in writing any input they have on the Settlement Administrator's recommendations to the EEOC within thirty (30) calendar days of Defendants' receipt of the recommendations.  If Defendants challenge a particular claim, they will provide the EEOC with an explanation of the factual bases for any such challenge, together with any supporting evidence.  However, the EEOC reserves the right to reject the Settlement Administrator's recommendations and/or Defendants' input.

i.   **Notices to Claimants.** As soon as possible, and no later than one-hundred and eighty(180) calendar days after receiving the Settlement Administrator's recommendations, the EEOC will provide the Settlement Administrator with the following: (a) a final approved eligibility and claim-share list; (b) a Notice of Eligibility and Claim Share Amount; (c) a Notice of Ineligibility; and (d) a Notice of Appeal Rights.  Upon receiving these materials from the EEOC, the Settlement Administrator will mail to each Eligible Claimant a Notice of Eligibility and Claim Share Amount, a Notice of Appeal Rights, the appropriate release agreement and a return envelope addressed to the Settlement Administrator.  For each PAI determined to be ineligible, the Settlement Administrator will mail a Notice of Ineligibility, a Notice of Appeal Rights, and a return envelope addressed to the Settlement Administrator.

j.   **Processing Appeals.** The Settlement Administrator will receive and forward any appeals to the EEOC, together with the Settlement Administrator's recommendation.  The EEOC will make a final determination on each appeal.  If any adjustment is made as a result of an

appeal, the Settlement Administrator will send a revised Notice of Eligibility and Claim Share to the Claimant, along with the appropriate release agreement to the extent not already executed.

k.   **Final Distribution List.** Upon final determination of all appeals, the EEOC will provide the Settlement Administrator and Defendants a Final Distribution List.

l.   **Final Distribution.** Within ten (10) calendar days from the later of (a) receipt of the Final Distribution List from the EEOC and confirmation that each individual has executed the appropriate release agreement, or (b) the Settlement Administrator converts the AAL stock into cash and deposits the cash into an interest bearing account pursuant to Paragraph 22 above, the Settlement Administrator will issue and mail checks to Eligible Claimants in accordance with the Final Distribution List.

m.   **Distribution to Charging Parties:** As soon as possible, and no later than sixty (60) calendar days after the Settlement Administrator converts the AAL stock into cash and deposits the cash into an interest bearing account pursuant to Paragraph 22 above, the EEOC will provide the Settlement Administrator and the Defendants with the list of Charging Parties and corresponding monetary amounts to be paid to each Charging Party, including the percentage of that payment allocated to back pay and compensatory damages.

n.   Within ten (10) calendar days from the later of (a) receipt of the list provided for in Paragraph 22.m above, or (b) the Settlement Administrator converting the AAL stock into cash and depositing the cash into an interest bearing account pursuant to Paragraph 22 above, the Settlement Administrator will issue and mail checks to the Charging Parties.

o.   **Qualified Settlement Fund Status and Tax Reporting**: The Parties agree that the Settlement Fund, which is the repository of the Plan distributions

- 11 -

1   with respect to the EEOC Allowed Claim, is intended to be treated as a

2   "qualified settlement fund" within the meaning of Treasury Regulation §

3   1.468B-1 and analogous state, local and/or foreign statute, law, rule, or

4   regulation.  The Parties also acknowledge with respect thereto that, in

5   accordance with the Plan, the "transferor" to the Settlement Fund under

6   Treasury Regulation § 1.468B-1(d)(1) is the Disputed Claims Reserve (as

7   defined in the Plan), and agree that the Settlement Administrator shall be

8   the administrator of the Settlement Fund as defined by § 1.468B-2(k)(3)

9   and any state, local and/or foreign statute, law, rule, or regulation.  The

10  Parties also agree that the Settlement Fund shall be available for the

11  payment of any taxes on earnings from or otherwise imposed in respect of

12  the Settlement Fund and its assets, including, without limitation, any taxes

13  in respect of any gain from the sale of the stock received.  The Settlement

14  Administrator shall timely prepare and file any and all tax returns,

15  statements, information returns, and other tax filings required to be filed

16  with respect to the Settlement Fund, consistent with the intended treatment

17  of the fund for federal income tax purposes and for state, local and/or

18  foreign tax purposes and shall timely pay all taxes due with respect thereto.

19  In furtherance thereof, and in furtherance of subsection p. of this paragraph,

20  without limiting the foregoing, the Settlement Administrator shall be

21  responsible for all information reporting (e.g., IRS Form 1099s) with

22  respect to payments from the Settlement Fund and all applicable federal,

23  state, and local tax withholding and reporting with respect to payments to

24  Charging Parties.  The Settlement Administrator shall provide the

25  Defendants and the Disputed Claims Reserve (as defined in the Plan) with a

26  copy of all tax returns on or before the day on which such tax return is

27  filed.

28  p.    Payments to Charging Parties will be divided pursuant to Paragraph 22.m.

1    between back pay, reported on W-2 forms, and compensatory damages,

2    reported on 1099 forms.  The Settlement Administrator will issue all

3    required tax reporting forms to each Charging Party and Eligible Claimant

4    who receives a distribution from the EEOC Allowed Claim, and file such

5    forms with the Internal Revenue Service.  The Settlement Administrator

6    will withhold all required income and Federal Insurance Contribution Act

7    (FICA) taxes.  All employer contributions for FICA and Federal

8    Unemployment Tax Act taxes will be paid from the EEOC Allowed Claim

9    by the Settlement Administrator.  The Charging Parties and Eligible

10   Claimants who receive a payment from the EEOC Allowed Claim shall be

11   exclusively liable for the payment of all federal and state taxes due as the

12   result of the money they receive and shall pay such taxes at the time and in

13   the amount required of them.

14   q.    **Returned and/or Uncashed Checks.** If any checks are returned as

15   undeliverable, the Settlement Administrator will attempt to find an updated

16   address and will provide the EEOC with the name, last known address, date

17   of birth, and social security number of the Eligible Claimant.  If an updated

18   address can be found, the check will be re-mailed.  If an Eligible Claimant

19   fails to present his/her check after ninety (90) calendar days of it being

20   issued, the Settlement Administrator will provide the EEOC with the name,

21   last known address, date of birth, and social security number of the Eligible

22   Claimant.  If there are any undistributed monetary amounts from the EEOC

23   Allowed Claim after exhausting these efforts to locate the Eligible

24   Claimants, the remaining amounts shall be paid to one or more charities

25   and/or non-profit organizations mutually agreed to by the Parties.

26   **VI.  EQUITABLE RELIEF**

27   23.    Defendants, their supervisors, managers, officers, and corporate

28   successors, shall not engage in any employment practice that discriminates on the basis

of disability, including but not limited to failing to provide reasonable accommodations to employees with disabilities in accordance with the ADA.

24.    Defendants, their supervisors, managers, officers, and corporate successors, shall not engage in retaliation of any kind against any person because of such person's opposition to any practice made unlawful under the ADA.  Defendants shall not retaliate against a person because such person brings an internal complaint of discrimination covered by the ADA with the Defendants, because such person files or causes to be filed a charge of discrimination with the Commission or any other agency charged with the investigation of employment discrimination complaints covered by the ADA, or whose statements serve as the basis of a charge, or because such person testifies or participates in the investigation or prosecution of an alleged violation of the ADA, including this investigation, conciliation and litigation.

25.    In accordance with the ADA, Defendants shall engage in the interactive process with employees who request a reasonable accommodation.

26.    American and Envoy, as applicable, shall provide each Charging Party and Eligible Claimant with a neutral reference through the Worknumber.  The reference will include the dates of service and position held.  In order to receive the reference, the Charging Parties and Eligible Claimants must direct prospective employers and others to contact the Worknumber at 1-800-367-2884.

27.    As soon as practical, but no later than one hundred and eighty (180) days after the Effective Date, Defendants shall remove from all of the Charging Parties', who execute the release, personnel files (a) any and all references to the allegations of discrimination filed against Defendants that formed the basis of this action; and (b) any and all references to each Charging Party's participation in this action.  Within one hundred and eighty (180) days of the EEOC's disclosure of eligible claimants to Defendants, Defendants shall remove from all of the Eligible Claimants' (who executed the release) personnel files (a) any and all references to the allegations of discrimination filed against Defendants that formed the basis of this action; and (b) any and all

- 14 -

references to each Eligible Claimant's participation in this action.

28.    Notice Posting:  Within sixty (60) days of the Effective Date, American and Envoy shall each post a notice in each of their respective stations in the form attached as Exhibits D and E, respectively.  American and Envoy shall also make the notice available to employees on their respective intranets and, for the two-year period following the Effective Date of this Decree, shall provide a copy of the applicable notice to all employees at the time of hire.  American and Envoy shall certify to the EEOC that the respective notices have been posted nationwide within sixty (60) days of the Effective Date.

29.    Training:  Within one hundred and eighty (180) days of the Effective Date, American and Envoy shall each:

a.    Make at least a one (1) hour long computer-based training on the ADA available to their respective employees;

b.    Provide four (4) hours of live nationwide training to all of their respective ADA Coordinators and Human Resources employees who assist their employees with the accommodation process regarding the following topics:

i.    EEOC's Guidelines on the ADA;

ii.    Defendants' policies prohibiting disability-based harassment and retaliation;

iii.    The provisions of this Decree; and

iv.    Defendants' policies and procedures for providing reasonable accommodation for disabilities, including leave and reassignment. This training shall include, at minimum, (a) discussion of Defendants' policy regarding disability discrimination; (b) description of the types of conduct or policies that constitute discrimination under the ADA; (c) explanation that employees may report suspicions of disability discrimination to their manager or supervisor, or Human Resources, and that a prompt investigation

will follow; (d) explanation of who is a qualified individual with a disability; (e) explanation of the interactive process; (f) explanation of what reasonable accommodations are, including leave and reassignment; (g) explanation of the process for employees to request reasonable accommodation; (h) explanation that reassignment and transfers may constitute reasonable accommodations and the process for seeking such accommodations; (i) explanation that a reasonable accommodation request can be made to Human Resources, or the employee's supervisor or manager(s) orally or in writing and can be made without using any buzzwords, including the words "reasonable accommodation"; and (j) emphasis that Defendants will work in good faith to arrive at an effective reasonable accommodation for an employee who has a disability.

c.    Defendants shall bear the cost of the training detailed in this Paragraph of the Decree.

d.    Defendant will provide the training in Paragraph 29.b. annually for the duration of the Decree.

## VII.  ADA COORDINATOR

30.    Within sixty (60) days of the Effective Date, and for the duration of this Decree, American and Envoy shall each identify an employee whose responsibilities shall include that of ADA Coordinator as described below.  Such person shall have expertise in the ADA, EEO compliance, human resources, and personnel matters.

31.    American and Envoy will ensure that their respective ADA Coordinator has adequate staff to accomplish all of his or her responsibilities.

32.    The ADA Coordinator at American and Envoy, or his/her designee, shall be responsible for the following with respect to the ADA at each respective carrier:

a.  Assisting human resource, supervisory, and managerial employees with their

- 16 -

ADA responsibilities;

b. Assisting human resource, supervisory, and managerial employees with remaining in full compliance with this Decree;

c. Assisting with creating, revising, and/or implementing ADA-compliant procedures;

d. Assisting with reviewing, revising, and republishing job descriptions to ensure that marginal job duties are not listed as essential job functions in job descriptions;

e. Assisting with creating and implementing the ADA training required under Paragraph 29 of this Decree;

f. Assisting in ensuring that any medical inquiries and requirements for any medical exams are in accordance with the ADA;

g. Providing advice about ways to better achieve full compliance with the ADA;

h. Evaluating whether any changes to Defendants' policies and procedures adequately protect employees with a disability from disability discrimination, harassment, or retaliation; and

i. Reviewing all cases in which an American or Envoy employee requests and is denied a reasonable accommodation in his/her current position, or is on a leave of absence as a reasonable accommodation, and that leave of absence extends beyond 100 days.  If the ADA Coordinator determines a reasonable accommodation is available to the employee in his/her current position, then the ADA Coordinator will instruct the appropriate American or Envoy personnel to provide the reasonable accommodation as soon as practical after making the determination.

j. In situations where the employee cannot be accommodated in the employee's current position, reviewing all cases in which an American or Envoy employee makes a written request for reassignment to a vacant position before commencing a paid/unpaid sick leave of absence, and the request is denied.  If

1    the ADA Coordinator determines that the employee should have been

2    reassigned to the vacant position, then the ADA Coordinator will instruct the

3    appropriate American or Envoy personnel to provide the reassignment as soon

4    as practical after making the determination.

5    ## VIII.  EMPLOYMENT POLICIES AND PRACTICES

6    33.    Unless required by law or regulation, Defendants agree not to adopt or

7    enforce a policy and/or practice that:

8    a.  Prohibits employees from continuing to work, or returning to work, solely

9    because the employee has medical restrictions;

10   b.  Places restrictions on employees more restrictive than those proposed by the

11   employee's personal physician, unless the employee has had more restrictive

12   restrictions assigned to him or her by an Independent Medical Examiner, or

13   Defendants reasonably believe the employee poses a direct threat and has done

14   a direct threat assessment;

15   c.  Discriminates against individuals who are disabled under the ADA with

16   respect to the hiring, transfer, promotion, or any other terms and conditions of

17   employment;

18   d.  Restricts employees with medical restrictions and/or out on leave for medical

19   reasons from transferring to another position within the employing entity

20   solely based on the employee's medical restrictions and/or leave status,

21   provided the employee can perform the essential functions of the position, with

22   or without a reasonable accommodation, subject to any seniority provisions in

23   applicable collective bargaining agreements;

24   e.  Restricts employees with medical restrictions and/or who are out on a medical

25   leave from applying for a promotion or obtaining a promotion solely because

26   such employee has medical restrictions or is out on a medical leave;

27   f.  Makes inquiries relating to employees' medical history and/or medical

28   conditions unless such inquiries are permissible under the ADA;

- 18 -

g.   Retaliates against employees who engage in protected activities under the ADA;

h.   Classifies, segregates, limits, or otherwise hinders any employee's and/or applicant's ability to fully exercise his or her rights under the ADA;

i.   Limits, restricts, or interferes with the ability of any employee with a disability to be reassigned to a suitable, equivalent position for which the employee is qualified based solely on an employee's disability;

j.   Requires disabled employees to compete with non-disabled employees for equivalent or lower positions when reassignment to an equivalent or lower position would serve as an accommodation of last resort under the ADA;

k.   Requires disabled employees to list any specific individual as their supervisor when exploring reassignment as a possible reasonable accommodation, but instead, allows disabled employees to list their actual supervisor; or

l.   Interferes with the ADA rights of its employees, including but not limited to an employee's right to a reasonable accommodation and to be free of retaliation.

34.    Within one hundred and twenty (120) days of the Effective Date, and to the extent not already accomplished, Defendants agree to adopt a policy and/or practice to:

a.   Assist disabled employees with the reassignment process when disabled employees are exploring reassignment as a possible reasonable accommodation; and

b.   Differentiate between essential and marginal job functions when determining whether a reasonable accommodation can be made for an individual with a disability.

35.    **Job Descriptions:** Within one-hundred and twenty (120) days of the Effective Date, Defendants shall revise their respective job descriptions to include a statement indicating that reasonable accommodations may be made for qualifying individuals with disabilities.  As soon as practical but no later than twenty (20) months from the Effective Date, Defendants shall also analyze their respective job descriptions,

and, if necessary, revise any job descriptions accurately to reflect essential job functions. Defendants shall identify which job functions listed on the job descriptions are essential, rather than marginal functions, and shall ensure that all listed qualifications are, in fact, job related, and consistent with business necessity.  Upon completion, Defendants will provide the EEOC copies of all of its revised job descriptions.

36.    **Reasonable Accommodation Procedures**:  Within one-hundred and twenty (120) days of the Effective Date, American and Envoy shall assign responsibility for the reasonable accommodation process to employees in their respective Human Resources Departments, who shall work with the respective ADA Coordinators to ensure that disabled employees are provided with reasonable accommodations in accordance with the provisions of the ADA.

37.    **Collective Bargaining Agreements**:  Nothing in this Decree shall be construed to impose obligations on American or Envoy that are inconsistent with the Supreme Court's ruling in *US Airways, Inc. v. Barnett*, 535 U.S. 391, 404 (2002) regarding Collective Bargaining Agreements.

## IX.  REPORTING

38.    Throughout the duration of the injunctive relief provisions applicable to Defendants in this Decree, Defendants shall keep, maintain, and safeguard the following: (a) their employees' personnel files; (b) all records of employee complaints of disability discrimination and/or retaliation; (c) all records pertaining to investigations of alleged disability discrimination and/or retaliation, including but not limited to witness statements, documents compiled, conclusions and findings, and any corrective or remedial actions taken; and (d) records evidencing employee requests for reasonable accommodations ("Request Records") and the results of those requests ("Results Records"), including such records created or held by Defendants respective ADA Coordinators.

a.    Within seventy-five (75) days of the Effective Date, Defendants shall certify to the EEOC that they have complied with Paragraph 27's removal requirements;

- 20 -

b. Within sixty (60) days of the Effective Date, Defendants shall certify to the EEOC that the notice posting requirement of Paragraph 28 has been met;

c. Defendants shall certify to the EEOC within thirty (30) calendar days of the completion of the live training for the ADA Coordinator and Human Resources employees, indicating the training was conducted, location of the training, and a list of all attendees by name and job title;

d. Defendant shall certify to the EEOC within two-hundred and seventy (270) days of the Effective Date that it has made the one (1) hour of computer based training available to its employees.

e. Within seventy-five (75) days of the Effective Date, Defendants shall provide the EEOC with the name, job title, and list of job duties of the person appointed to the ADA Coordinator positions under Paragraph 30 of the Decree;

f. Upon completion, Defendants shall provide the EEOC copies of all job descriptions revised pursuant to Paragraph 35 of the Decree.

g. Beginning one-hundred and eighty (180) days after the Effective Date, and continuing every six (6) months for the duration of the injunctive relief provisions applicable to Defendants in this Decree, American and Envoy shall provide the EEOC their respective Request Records and Results Records.

h. Within thirty (30) days of the Effective Date, Defendants shall provide the EEOC copies of all ADA policies that conform to the requirements of Paragraphs 33 and 34. If Defendants make any revisions to their ADA policies during the term of this Decree, Defendants shall provide the EEOC copies of all such revised ADA policies within thirty (30) days of the revisions.

## X.  ENFORCEMENT, EXPIRATION, AND COSTS/FEES ASSOCIATED WITH THE DECREE

39.    There is no private right of action to enforce Defendants' obligations under the Decree and only the Commission may enforce compliance.

40.    Absent extension, this Decree shall expire by its own terms at the end of two (2) years from the Effective Date without further action by the Parties.

## XI.  NOTICE AND SIGNATURES

41.    **Notice**: Defendants shall direct any and all correspondence, notice, or reporting it is required to provide the EEOC pursuant to this Decree to the Phoenix District Office of the Equal Employment Opportunity Commission, Attention: Regional Attorney, 3300 N. Central Avenue Suite 690, Phoenix, AZ 85012.  The EEOC shall direct all notices relating to this Decree regarding American to Karen Gillen, Associate General Counsel, American Airlines, Inc. at karen.gillen@aa.com and 4333 Amon Carter Boulevard, Fort Worth, TX.  The EEOC shall direct all notices relating to this Decree regarding Envoy to Chris Pappaioanou, Vice President – Legal, Labor, and Employment, Envoy Air Inc. at chris.pappaioanou@aa.com and 4301 Regent Blvd., Irving, Texas 75063.

42.    The Parties agree to the entry of this Decree subject to final approval by this Court and the Bankruptcy Court.

**SO ORDERED this** _____ **day of** _____, 2017.

BY THE COURT:

_____

United States District Judge


**BY CONSENT:**

EQUAL EMPLOYMENT                                  AMERICAN AIRLINES, INC.
OPPORTUNITY COMMISSION

                                                              By: _____
By: _____                           Karen Gillen
        Mary Jo O'Neill                                      Associate General Counsel
        Regional Attorney                                   American Airlines, Inc.

Date: _____

                                                              Date: _____

- 22 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ENVOY AIR INC.

By: _____
    Chris Pappaioanou
    Vice President - Legal, Labor, and
    Employment, Envoy Air Inc.

Date: _____

APPROVED AS TO FORM:

_____
Michael Baskind
Trial Attorney
EEOC Phoenix District Office
3300 N. Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 640-5003

Attorney for Plaintiff EEOC

_____
O'Melveny & Myers LLP
Mark W. Robertson
Kelly Wood
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 430-6000

Attorneys for Defendants
American Airlines, Inc. and Envoy Air Inc.

40.    Absent extension, this Decree shall expire by its own terms at the end of two (2) years from the Effective Date without further action by the Parties.

## XI.  NOTICE AND SIGNATURES

41.    **Notice**:  Defendants shall direct any and all correspondence, notice, or reporting it is required to provide the EEOC pursuant to this Decree to the Phoenix District Office of the Equal Employment Opportunity Commission, Attention: Regional Attorney, 3300 N. Central Avenue Suite 690, Phoenix, AZ 85012.  The EEOC shall direct all notices relating to this Decree regarding American to Karen Gillen, Associate General Counsel, American Airlines, Inc. at karen.gillen@aa.com and 4333 Amon Carter Boulevard, Fort Worth, TX.  The EEOC shall direct all notices relating to this Decree regarding Envoy to Chris Pappaioanou, Vice President – Legal, Labor, and Employment, Envoy Air Inc. at chris.pappaioanou@aa.com and 4301 Regent Blvd., Irving, Texas 75063.

42.    The Parties agree to the entry of this Decree subject to final approval by this Court and the Bankruptcy Court.

**SO ORDERED this _____ day of _____, 2017.**

BY THE COURT:

_____

United States District Judge


**BY CONSENT:**

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

By: _____
        Mary Jo O'Neill
        Regional Attorney

Date: _____

AMERICAN AIRLINES, INC.

By: _____
        Karen Gillen
        Associate General Counsel
        American Airlines, Inc.

Date: __11-1-2017__

- 22 -

ENVOY AIR INC.

By: _____

    Chris Pappaioanou
    Vice President - Legal, Labor, and
    Employment, Envoy Air Inc.

Date: _____

APPROVED AS TO FORM:

_____

Michael Baskind
Trial Attorney
EEOC Phoenix District Office
3300 N. Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 640-5003

Attorney for Plaintiff EEOC

_____

O'Melveny & Myers LLP
Mark W. Robertson
Kelly Wood
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 430-6000

Attorneys for Defendants
American Airlines, Inc. and Envoy Air Inc.

- 23 -

1

2

3

4

5

6

7    APPROVED AS TO FORM:

8    *Michael Baskind*

9    Michael Baskind

10   Trial Attorney
     EEOC Phoenix District Office

11   3300 N. Central Ave., Suite 690
     Phoenix, Arizona 85012

12   Telephone: (602) 640-5003

13   Attorney for Plaintiff EEOC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ENVOY AIR INC.

By: _____
    Chris Pappaioanou
    Vice President - Legal, Labor, and
    Employment, Envoy Air Inc.

Date: __11/2/17__


_____
O'Melveny & Myers LLP
Mark W. Robertson
Kelly Wood
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 430-6000

Attorneys for Defendants
American Airlines, Inc. and Envoy Air Inc.

**EXHIBIT A**

RELEASE AGREEMENT

In consideration for the $[_____] paid to me in connection with the resolution

of EEOC v. American Airlines, Inc. and Envoy Air Inc., Case Number [____] (the

"Lawsuit"), I hereby release and discharge [American Airlines, Inc. or Envoy Air Inc.],

and its officers, managers, directors, employees, and agents as well as its parent

corporations and subsidiaries from any and all claims of disability discrimination,

retaliation, or failure to accommodate that were asserted or could have been asserted

against [American Airlines, Inc. or Envoy Air Inc.] as of the date of this Release

Agreement arising under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*,

including those claims that were asserted in the Lawsuit, and any potential claim based

on the EEOC's determination letters, as defined in Paragraph 14 of the Consent Decree

entered in the Lawsuit (the "Determination Letters"), or claims under the Americans with

Disabilities Act based on any act or omission of [American Airlines, Inc. or Envoy Air

Inc.] occurring prior to the date of this Release Agreement arising from the alleged

improper policies or practices identified in the EEOC's Determination Letters and

Complaint in this case.

I warrant that this Release Agreement is freely executed in return for the

consideration set forth above, and that I am legally competent to execute this Release

Agreement and accept full responsibility for it. I understand that this Release Agreement

is given in compromise of a disputed claim, and is therefore not to be construed as an

admission of liability on the part of [American Airlines, Inc. or Envoy Air Inc.]


Date: _____        Signature: _____

# Exhibit "B"

**In re AMR Corporation, *et al.***
**Case No. 11-15463 (SHL), Jointly Administered**

Note: Claimants are listed alphabetically.

| SEQ NO. | CLAIM(S) TO BE SETTLED | | |
|---|---|---|---|
| | NAME | CLAIM NO. | CLAIM AMOUNT |
| 1 | ALVARADO, DARLA<br>16323 N 168TH AVE<br>SURPRISE, AZ 85388<br><br>Date Filed: 02/11/12<br>Debtor: American Airlines, Inc. | 727 | Priority:  $10,000.00 |
| 2 | PETERSON, MICAH<br>ATTN APRIL L HOLLINGSWORTH<br>1115 S 900 E<br>SALT LAKE CITY, UT 84105<br><br>Date Filed: 07/16/12<br>Debtor: American Airlines, Inc. | 10774 | Priority:  $12,428.50<br>Unsecured:  $27,571.50 |
| 3 | REDD, SHERRIE<br>561 E 42ND PL N<br>TULSA, OK 74106<br><br>Date Filed: 07/12/12<br>Debtor: American Airlines, Inc. | 7355 | 503(b)(9): $0.00<br>Admin: $0.00<br>Secured: $0.00<br>Priority: $0.00<br>Unsecured: $0.00 |
| 4 | US EQUAL EMPLOYMENT OPPORTUNITY COMMMISSION<br>ATTN NANCY GRIFFITHS<br>3300 N CENTRAL AVE STE 690<br>PHOENIX, AZ 85012<br><br>Date Filed: 07/14/12<br>Debtor: American Airlines, Inc. | 9676 | Priority: Unliquidated |

# EXHIBIT C

EEOC V. AMERICAN AIRLINES, INC. AND ENVOY AIR INC. SETTLEMENT ADMINISTRATOR
C/O [NAME OF SETTLEMENT COMPANY]
ADDRESS
CITY/STATE//ZIP

PAI NAME
ADDRESS
CITY STATE ZIP

Claimant ID Number:  **<<Claimant ID>>**

**<<Date Mailed>>**

**NOTICE OF SETTLEMENT**

**Re: EEOC v. American Airlines, Inc. and Envoy Air Inc.**

Dear <<Claimant Name>>:

On [Input Date], the United States District Court for District of Arizona approved a Consent Decree between the Equal Employment Opportunity Commission ("EEOC") and American Airlines, Inc. and Envoy Air Inc.  The Consent Decree resolves a lawsuit filed by EEOC which alleged that American and Envoy violated the Americans with Disabilities Act ("ADA"). The Consent Decree provides for monetary and non-monetary relief.

You have been identified by American and/or Envoy as an individual who went through the Medical Review Board and/or Accommodation Review Board and/or requested a reasonable accommodation during the period of January 1, 2009, through August 3, 2015.  Accordingly, if you believe that American or Envoy violated your ADA rights in a manner covered by the EEOC's lawsuit, you may participate in the EEOC's claims process and may be entitled to receive monetary compensation.

If you wish to participate in the claims process, you must complete and submit a claim form by no later than [Input Date]. You are encouraged to submit your claim online at www.EEOCAmericanSettlement.com. To do so, you will need to enter your claimant ID number listed above and the last four digits of your Social Security number. Please print a copy of the claim form you submit for your own records.  If you prefer, you may mail your claim form in the enclosed return envelope.  We urge you, however, to use a delivery method which verifies date of delivery (e.g. Registered or Certified mail). EEOC, American, Envoy, and the Settlement Administrator are not responsible for lost or delayed mail. If you talked to an EEOC Representative and/or submitted documentation during EEOC's investigation sometime in 2013 to 2015, you must still complete this claim form in order to be considered for monetary relief.  If you fail to respond to any question in the claim form, your request to participate may be denied. If you fail to timely submit a claim form, you will not be eligible to participate in this claims process.

Any questions concerning this claims process should be directed to 1-XXX-XXX-XXXX.  You may also visit www.EEOCAmericanSettlement.com for additional information.

1

Sincerely,

EEOC v. American Airlines, Inc. and Envoy Air Inc. Settlement Administrator

## FREQUENTLY ASKED QUESTIONS CONCERNING EEOC'S CLAIMS PROCESS

**Who may participate in the claims process?**
The claims process is limited solely to former/current American and Envoy employees who believe they were discriminated and/or retaliated against in violation of the Americans with Disabilities by American or Envoy during the period January 1, 2009, through August 3, 2015.

**I am a current American or Envoy employee.  May I participate in the claims process?**
Yes.  Current American or Envoy employees can participate in the claims process.

**I am a former management employee.  May I participate in the claims process?**
Yes.  Former management employees of American or Envoy can participate in the claims process.

**I received a Charging Party Notice of Monetary Award.  May I participate in the claims process as well?**
No.  Charging Parties who are afforded monetary relief already under the Consent Decree may not also participate in the claims process because EEOC has already determined their monetary relief.

**I previously was interviewed by an EEOC representative regarding this issue sometime between 2013 - 2015.  Do I still have to submit a new claim form?**
Yes.  If you talked to an EEOC representative and/or submitted any documentation during EEOC's investigation between 2013 – 2015, you must still complete a claim form in order to be considered for monetary relief.

**How do I submit a claim?**
You are encouraged to submit your claim online at www.EEOCAmericanSettlement.com.  To do so, you will need to enter your claimant ID number and the last four digits of your Social Security number [Or Date of Birth].  Please keep a printed copy of the claim form you submit.  If you prefer, you may submit your claim form by mail to the EEOC v. American Airlines, Inc. and Envoy Air Inc. Settlement Administrator, [Input Mailing Address].  We urge you, however, to use a delivery method which verifies date of delivery (e.g. Registered or Certified mail).  EEOC, American, Envoy, and the Settlement Administrator are not responsible for lost or delayed mail.

**Must I have supporting documentation to submit a claim?**
While supporting documentation may be helpful to substantiate your claim, it is not required.

**When must I submit my claim?**
You must submit your claim by no later than [Input Date].

**Who will determine whether I am eligible to participate in the claims process and, if so, what monetary amount I will be awarded?**
EEOC has the sole authority to determine whether you are entitled to relief and the monetary amount to be awarded.

**Can I appeal EEOC's determination?**
Yes. You can appeal the EEOC's determination to the Regional Attorney, Mary O'Neill, EEOC, 3300 N. Central Ave., Suite 690, Phoenix, AZ 85012

When will I know if my claim has been accepted and how much money I might receive?
You should anticipate receiving a Claimant Notice of Determination from the Settlement Administrator by [Input Date].

**What if my address or phone number changes after I submit my claim?**
You should inform the Settlement Administrator at 1-XXX-XXX-XXXX of any changes in address or telephone numbers.

**If I have additional questions, who should I contact?**
You may call the Settlement Administrator at 1-xxx-xxx-xxxx.  You may also visit www.EEOCAmericanSettlement.com for additional information.  You should not contact the EEOC or American directly concerning the claims process or the status of your claim.

# Exhibit D

## NOTICE

American respects the right of its team members and applicants for employment to work in an environment free from disability discrimination and retaliation. Accordingly, American reaffirms its commitment to complying with the Americans with Disabilities Act ("ADA"), in that it is our policy to prohibit all disability discrimination and/or retaliation and to provide reasonable accommodations in accordance with the ADA.

Pursuant to the ADA, it is unlawful for an employer to discriminate based upon the disability of an applicant or employee. It is also unlawful for an employer to refuse to provide reasonable accommodations to employees unless there would be an undue hardship. Further, it is unlawful for any employer to retaliate against an employee because he or she has requested a reasonable accommodation for a disability, opposed discriminatory employment practices, or because he or she has filed a charge of discrimination with any municipal, state or federal equal employment opportunity agency, or because he or she has participated in an investigation of a charge of discrimination.

American is committed to engaging in the interactive process with team members in order to provide reasonable accommodations in accordance with the ADA. If you have questions about reasonable accommodations, you can contact your Human Resources Business Partner.

It is also important that our team members know that if they believe they have been discriminated against on the basis of disability or retaliated against, they have the right to contact the EEOC directly at 1-800-669-4000. In compliance with federal law, no official at American will retaliate against a team member who makes an internal complaint of discrimination or who contacts the EEOC or its state counterpart. To make an internal complaint of discrimination, the team member should contact his or her HRBP or the EthicsPoint Helpline at 1-877-422-3844.

American Airlines, Inc.

By:_____    _____
                                                                    Date

-1-

# Exhibit E

# NOTICE

Envoy respects the right of its team members and applicants for employment to work in an environment free from disability discrimination and retaliation. Accordingly, Envoy reaffirms its commitment to complying with the Americans with Disabilities Act ("ADA"), in that it is our policy to prohibit all disability discrimination and/or retaliation and to provide reasonable accommodations in accordance with the ADA.

Pursuant to the ADA, it is unlawful for an employer to discriminate based upon the disability of an applicant or employee. It is also unlawful for an employer to refuse to provide reasonable accommodations to employees unless there would be an undue hardship. Further, it is unlawful for any employer to retaliate against an employee because he or she has requested a reasonable accommodation for a disability, opposed discriminatory employment practices, or because he or she has filed a charge of discrimination with any municipal, state or federal equal employment opportunity agency, or because he or she has participated in an investigation of a charge of discrimination.

Envoy is committed to engaging in the interactive process with team members in order to provide reasonable accommodations in accordance with the ADA. If you have questions about reasonable accommodations, you can contact your Human Resources Business Partner.

It is also important that our team members know that if they believe they have been discriminated against on the basis of disability or retaliated against, they have the right to contact the EEOC directly at 1-800-669-4000. In compliance with federal law, no official at Envoy will retaliate against a team member who makes an internal complaint of discrimination or who contacts the EEOC or its state counterpart. To make an internal complaint of discrimination, the team member should contact his or her HRBP or the EthicsPoint Helpline at 1-877-422-3844.

Envoy Air Inc.

By:_____    _____
                                                          Date

-1-