UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHN KRAKOWSKI, KEVIN HORNER,
and M. ALICIA SIKES,

                Plaintiffs-Appellants,

    -against-

AMERICAN AIRLINES, INC. and ALLIED
PILOTS ASSOCIATION,

                Defendants-Appellees.
----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/17/19

17-CV-03237 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

    John Krakowski, Kevin Horner, and M. Alicia Sikes (together, the "Appellants") are pilots, currently employed by American Airlines, Inc. ("American") and represented by the Allied Pilots Association ("APA"). They were employed by Trans World America ("TWA") until it merged with American. In the adversary bankruptcy proceeding below, they bring several claims arising from American's and APA's treatment of former TWA pilots during and after the American-TWA merger.

    In a pair of decisions, the Bankruptcy Court, Hon. Sean H. Lane, dismissed all of Appellants' claims, as follows: (1) a breach of contract claim against American, for failure to state a claim; (2) a breach of duty of fair representation claim against APA, as procedurally barred, under the law of the case doctrine, by the Bankruptcy Court's prior dismissal of an identical claim in a separate adversary proceeding between the same parties; and (3) a claim that American colluded in APA's breach of the duty of fair representation, because plaintiffs did not have a viable duty of fair representation claim, and, in any event, failed to adequately allege collusion.

    Appellants now appeal from the Bankruptcy Court's orders dismissing their claims. For

the following reasons, the decisions of the Bankruptcy Court are AFFIRMED.

## BACKGROUND

### I. Relevant Facts

Appellants are former TWA pilots who currently fly for American. (Second Amended Complaint ("SAC") ¶ 8.) In April 2001, American acquired TWA's assets. (*Id.* ¶ 16.) In November 2001, American and APA executed a document called "Supplement CC", which merged the former TWA pilots into American's pilot seniority list. (*Id.* ¶ 17.) Under Supplement CC, former TWA pilots were integrated into American's seniority list with none or a fraction of the seniority they had earned at TWA. (*Id.* ¶¶ 18–19.) To compensate the former TWA pilots for their loss of seniority, Supplement CC established what the parties call a "protective fence" in TWA's former hub of St. Louis, Missouri. The "fence" guaranteed a certain number of captain and first officer positions for St. Louis-based former TWA pilots, and thus permitted former TWA pilots to fly St. Louis-based routes that would otherwise be unavailable due to their reduced seniority. (*Id.* ¶¶ 19–20.)

Supplement CC was a supplement to American's then-existing collective bargaining agreement with APA (the "Old CBA"). When American and APA agreed to Supplement CC, the former TWA pilots were not represented by APA. They were represented by a different union. (*Id.* ¶ 27.) After the acquisition, however, the former TWA pilots became part of the bargaining unit of American pilots represented by APA. (*Id.* ¶ 29.)

Roughly a decade later, in November 2011, American filed for bankruptcy. (*Id.* ¶ 34.) As part of the bankruptcy proceedings, the Bankruptcy Court granted American's request to abrogate the Old CBA. (*Id.* ¶ 36.) The Old CBA and its supplements, including Supplement CC, became null and void as of September 5, 2012. (*Id.* ¶ 37.)

In the course of negotiating a replacement collective bargaining agreement, American and

APA signed a letter of agreement called "LOA 12-05".¹ It had two main provisions. First, the seniority list established by Supplement CC would remain in place, notwithstanding the termination of Supplement CC. (LOA 12-05 at 1, Appendix to Appellants' Opening Brief ("App'x") at 134). Second, the protective "fence," which gave preferential flying rights to former TWA pilots on St. Louis-based routes, would not remain in place. (SAC ¶ 39.) APA and American agreed to appoint an arbitrator to decide how to compensate the former TWA pilots for the loss of the "fence." The parties agreed that the arbitrator would not be permitted to revise the seniority list established by Supplement CC but could award other types of compensation. (LOA 12-05 at 1.)

## II. Procedural History

Appellants have brought many cases against American and APA, several of which are now adversary proceedings in American's bankruptcy case. The parties refer to these adversary proceedings, chronologically by date of filing, as *Krakowski I* and *Krakowski II*. The earlier case is *Krakowski I*. *See Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, Case No. 11-15463, Adv. Proc. No. 13-01238 (Bankr. S.D.N.Y.) [hereinafter *Krakowski I*]. The instant matter is known as *Krakowski II*. *See Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, Case No. 11-15463, Adv. Proc. No. 14-01920 (Bankr. S.D.N.Y.) [hereinafter *Krakowski II*].² A brief description of the proceedings in *Krakowski I* and *Krakowski II* follows.³

---

¹ Although Appellants did not include the New CBA in their appendix on appeal, they appended it to the First Amended Complaint. The Bankruptcy Court properly considered the New CBA and its supplements, including LOA 12-05, in deciding APA's motion to dismiss. *See In re AMR Corp.*, 538 B.R. 213, 217 (Bankr. S.D.N.Y. 2015) (citing *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

² There is a third case, which the parties call *Krakowski III*, but it is not relevant to the present appeal. *See Krakowski v. Am. Airlines (In re AMR Corp.)*, Case No. 11-15463, Adv. Proc. No. 16-01138 (Bankr. S.D.N.Y.).

³ For clarity, all filings in these cases, regardless of the court in which they were filed, are cited as "*Krakowski I*" or "*Krakowski II*."

a. Proceedings in *Krakowski I*

*Krakowski I* was initially filed in the Eastern District of Missouri in 2012. *See Krakowski I*, 927 F. Supp. 2d 769, 771 (E.D. Mo. 2013). It was transferred to the Bankruptcy Court for the Southern District of New York on March 4, 2013. *Id.* at 776.

In *Krakowski I*, Appellants claimed APA breached its duty of fair representation to former TWA pilots by agreeing, in the New CBA, to compensate former TWA pilots for the loss of the protective "fence" via an arbitration procedure that could not modify the unfair seniority list established by Supplement CC. Appellants also claimed American colluded in this breach. *See Krakowski I*, 199 L.R.R.M. (BNA) 3584, 2014 WL 2508729, at *4–6 (Bankr. S.D.N.Y. June 3, 2014).

On June 3, 2014, the Bankruptcy Court dismissed the complaint for failure to state a claim, reasoning that APA's agreement not to modify the seniority list when negotiating the New CBA did not breach APA's duty of fair representation. *See id.* On October 2, 2019, the District Court, Hon. Lewis Kaplan, affirmed the Bankruptcy Court's dismissal of the complaint.[4] *See Krakowski I*, 2019 WL 4857640, at *7 (S.D.N.Y. Oct. 2, 2019) (Kaplan, J.).

b. Proceedings in Krakowski II

The instant case, *Krakowski II*, was initially filed in the Eastern District of Missouri on May 1, 2013. (App'x at 9–19). Appellants filed their First Amended Complaint six days later, on May 7, 2013. (First Amended Complaint ("FAC"), App'x at 20–31.). Thereafter, the case was transferred to the Southern District of New York on motion of the defendants, where it was referred to the Bankruptcy Court. (App'x at 8.)

---

[4] Judge Kaplan also affirmed several other decisions of the Bankruptcy Court that are not directly relevant to the appeal now before the Court. *See Krakowski I*, 2019 WL 4857640, at *6–13.

The First Amended Complaint in *Krakowski II* made three claims. In Count One, Appellants alleged that American breached the New CBA by placing former TWA pilots on American's seniority list according to Supplement CC, rather than crediting them for seniority they earned at TWA. (FAC ¶¶ 36–45.) In Count Two, Appellants alleged that APA breached its duty of fair representation by agreeing to continue to use the seniority list established by Supplement CC, which violated the New CBA; was unfair to former TWA pilots; and treated former TWA pilots worse than the pilots of other airlines acquired by American. (*Id.* ¶¶ 43–50.) In Count Three, Appellants alleged that American colluded with APA in APA's breach of the duty of fair representation. (FAC ¶ 52–54.)

On September 22, 2015, the Bankruptcy Court partially granted Appellees' motions to dismiss the First Amended Complaint. *Krakowski II*, 538 B.R. 213, 215 (Bankr. S.D.N.Y. 2015). The Bankruptcy Court dismissed Count One, the breach of contract claim against American, for failure to state a claim, reasoning that Appellants' argument was incompatible with the plain language of the New CBA. *Id.* at 218–22. The Bankruptcy Court permitted Appellants to proceed with Count Two, the duty of fair representation claim against APA, but only to the extent the claim was based on the alleged unfairness of the seniority list established by Supplement CC, and only as it pertained to the narrow time period after the Old CBA was abrogated but before the New CBA was executed.[5] *Id.* at 223–24. The Bankruptcy Court warned Appellants that they would be duplicating their claims in *Krakowski I* if they argued that APA breached its duty of fair representation by agreeing to continue Supplement CC's allegedly unfair seniority list in the New CBA. *Id.* The Bankruptcy Court granted plaintiffs leave to

---

[5] In a subsequent conference, the Bankruptcy Court confirmed that Count Two survived only in relation to this discrete time period, when "the old CBA was abrogated . . . and before there was a new CBA." *Krakowski II*, 567 B.R. 247, 253 (Bankr. S.D.N.Y. 2017).

amend Count Two, the duty of fair representation claim, and Count Three, the accompanying claim that American colluded in APA's breach of its duty of fair representation. *Id.* at 223–24.

On October 22, 2015, Appellants filed their Second Amended Complaint. (App'x at 219–28). The Bankruptcy Court dismissed the Second Amended Complaint on April 14, 2017. *See Krakowski II*, 567 B.R. 247, 250 (Bankr. S.D.N.Y. 2017). The Bankruptcy Court found that Appellants' amended duty of fair representation clam pertained only to APA's agreement to the New CBA, rather than to the narrow time period between the Old CBA and the New CBA. *Id.* at 254–58. The claim, as pled, was essentially identical to the parallel claim in *Krakowski I*, which the Bankruptcy Court had already dismissed. Appellants' duty of fair representation claim in *Krakowski II* was accordingly dismissed under the law of the case doctrine. *Id.* at 258. Appellants' accompanying claim that American colluded in APA's breach of its duty of fair representation was also dismissed. *Id.* The court also noted that Appellants failed to allege any acts by American that would be legally sufficient to prove that it colluded with APA in a breach of the duty of fair representation. *Id.* at 258–60.

Appellants appealed the Bankruptcy Court's dismissals of the First Amended Complaint and Second Amended Complaint to this Court on April 28, 2017. (App'x at 414–16.)

### LEGAL STANDARD

When hearing an appeal from an order of the Bankruptcy Court, this Court reviews the Bankruptcy Court's findings of law *de novo* and its findings of fact for clear error. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000). The Bankruptcy Court's decisions regarding the management of its docket are reviewed for abuse of discretion. *See In re Fletcher Intern. Ltd.*, 536 B.R. 551, 557 (S.D.N.Y. 2015) (Sullivan, J.). This Court may affirm on any ground supported by the record, not just the ones relied upon by the Bankruptcy Court. *See Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010) (Koeltl, J.).

A complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Bankr. P. 7012(b). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).[6]

Where a complaint alleges that a union has violated its duty of fair representation, the District Court has a special duty to "construe complaints so as to avoid dismissals and . . . give plaintiffs the opportunity to file supplemental pleadings unless it appears beyond doubt that a good cause of action cannot be stated." *Eatz v. DME Unit of Local Union Number 3 of Int'l. Bhd. of Elec. Workers*, 794 F.2d 29, 34 (2d Cir. 1986).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

### DISCUSSION

The Bankruptcy Court properly dismissed all of Appellants' claims because none states a claim upon which relief could be granted. Appellants' claims are reviewed in the order in which they were initially pled.

**I.  The Bankruptcy Court Did Not Err in Dismissing Appellants' Breach of**

---

[6] Appellants' assertion that this case is governed by the "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), is without merit. The *Conley* standard was overruled by *Iqbal* and *Twombly* and has no continuing vitality. *See Iqbal*, 556 U.S. at 670.

**Contract Claim Against American.**

In Count One of the First Amended Complaint, Appellants claim American breached the New CBA by placing former TWA pilots on the seniority list established by Supplement CC. According to Appellants, in order to comply with the New CBA, American should have placed the former TWA pilots on its seniority list according to the time they started working at TWA. (FAC ¶¶ 36–39.) The Bankruptcy Court dismissed this claim, holding that it "is inconsistent with the plain language of the New CBA." *Krakowski II*, 538 B.R. at 218. Appellants now argue the Bankruptcy Court erroneously failed to consider American's general practices when interpreting the New CBA. (Appellants' Opening Brief ("Op. Br.") at 22–24, ECF No. 6.) Their position is unpersuasive.

"When courts interpret CBAs, traditional rules of contract interpretation apply as long as they are consistent with federal labor policies. When provisions in the agreement are unambiguous, they must be given effect as written. Only when provisions are ambiguous may courts look to extrinsic factors—such as bargaining history, past practices, and other provisions in the CBA—to interpret the language in question." *Aeronautical Indus. Lodge 91 of Int'l. Ass'n of Machinists and Aerospace Workers v. United Techs. Corp.*, 230 F.3d 569, 576 (2d Cir. 2000) (citations omitted).

Appellants argue the New CBA required American to place the former TWA pilots on its seniority list according to their "Occupational Date," a date that Appellants claim is tied to the time the former TWA pilots started working at TWA. Appellants allege that Section 2(AA) of the New CBA requires a pilot's placement on American's seniority date be determined by his or her "Occupational Date." (FAC ¶ 23.) They allege that, under American's "general practice," a pilot's "Occupational Date" is simply his or her date of hire, plus a period of about seven weeks. (*Id.* ¶ 22.) They further claim "American has consistently acknowledged each former

8

TWA pilot's 'Date of Hire' as the date they were hired by TWA." (*Id.* ¶ 20.) Thus, Appellants conclude that that American breached the New CBA when it failed to base the former TWA pilots' seniority on the dates they started working at TWA, and instead placed them on its seniority list according to Supplement CC. (*Id.* ¶ 25.)

As the Bankruptcy Court correctly determined, however, this was the very outcome that the New CBA required. Section 13 of the New CBA sets out the New CBA's general seniority rules, but also provides that "certain other rules in this Agreement stipulating specific methods and procedures of applying system seniority shall govern such application of system seniority." (Appendix to APA's Brief ("APA App'x") at 4.) Thus, the parties agreed that, whatever the New CBA's general seniority rules were, they would be trumped by any other, more specific seniority provisions in the New CBA. One such rule was outlined in LOA 12-05, which was incorporated into the New CBA. (Appendix to American's Brief ("American App'x") at SA000008, 10.) LOA 12-05 provides that the "TWA Pilots' existing seniority placements on the Pilots' System Seniority List are final and shall continue pursuant to Section 13 of the CBA, notwithstanding the termination of Supplement CC and any preferential flying rights associated with those seniority placements." (LOA 12-05 at 1.) In other words, the parties agreed that LOA 12-05, rather than the general seniority provisions of the CBA, would govern seniority for former TWA pilots.

Thus, rather than breaching the New CBA, American followed the New CBA's express provisions when it continued to use the seniority list placements established by Supplement CC, rather than ranking the former TWA pilots according to their Occupational Dates or Dates of Hire. Even though the Bankruptcy Court made this precise point when dismissing Count One of the First Amended Complaint, Appellants' Opening Brief makes no mention whatsoever of LOA 12-05. Thus, Appellants fail to identify any error in the Bankruptcy Court's dismissal of

their breach of contract claim.

Even if LOA 12-05 did not trump the general seniority provisions of the New CBA, Appellants' claims, based on those general provisions, would still fail. According to Appellants, American has "consistently acknowledged" that former TWA pilots' "Date of Hire" is the date the pilot was hired by TWA, and American's "general practice" was that a pilot's Occupational Date is a date some 45 to 49 days after the Date of Hire. (FAC §§ 20, 22.) The New CBA, however, states that a pilot's Occupational Date is "the date a pilot is first scheduled to complete initial new hire training with the Company." (APA App'x at 3.) The New CBA defines "Company" as "American Airlines, Inc." (*Id.* at 2.) Moreover, the New CBA defines "date of hire" as "[t]he first day as an AA pilot." (American App'x at SA000027.)

These provisions unambiguously tie seniority to a pilot's start at American, not at any other airline. The Court cannot look to extrinsic evidence, such as American's past or general practices, to interpret their meaning. *See Aeronautical Indus. Dist. Lodge 91*, 230 F.3d at 576. Thus, even if LOA 12-05 did not govern the seniority of former TWA pilots (which it does), American would not have breached the New CBA by failing to place pilots on its seniority list according to their start dates at TWA.

Appellants argue that the New CBA's seniority rules are ambiguous as applied to them, such that extrinsic evidence may be used to discern their meaning. First, they argue the New CBA's general seniority rules must have been ambiguous because American did not follow them; that is, former TWA pilots were not placed on the seniority list according to their start date at American. (Op. Br. at 24.) But the manner in which American implemented the New CBA is simply more extrinsic evidence, rather than evidence of ambiguity in the language of the New CBA. Even if this extrinsic evidence could be considered, it would not be persuasive. American's reason for failing to follow the general seniority rules of the New CBA was not that

those rules were ambiguous; rather, it was simply that, per LOA 12-05, American agreed not to apply those rules to former TWA pilots.

Appellants also argue that the CBA's requirement that Occupational Date is tied to a pilot's "new hire training" is ambiguous as applied to former TWA pilots because, as experienced pilots, they never underwent "new hire training." (Appellants' Reply Brief at 16, ECF No. 16). But this fact was not pled, and Appellants do not contest the Bankruptcy Court's refusal to take judicial notice of it. Nor was the Bankruptcy Court's decision in this regard erroneous, since Appellants failed to explain why the type of training former TWA pilots received at American is a "fact . . . not subject to reasonable dispute," and thus suitable for judicial notice. Fed. R. Evid. 201(b); 201(c)(2)(court must grant party's request for judicial notice if it is "supplied with the necessary information").

Accordingly, even if the New CBA's general seniority provisions are applicable to former TWA pilots—and they are not—Appellants fail to state a claim for breach of contract by arguing that American failed to place them on its seniority list in accordance with an Occupational Date based on their first day at TWA.[7]

---

[7] American argues that, even if Appellants state a claim for breach of contract, they may not pursue it in federal court because they have not exhausted their contractual and administrative remedies. (American's Brief at 23–26, ECF No. 12.) Like the Bankruptcy Court, this Court declines to reach the issue. *See Krakowski II*, 538 B.R. at 221 n.10. Under the Railway Labor Act ("RLA"), "minor disputes," such as those involving the interpretation of collective bargaining agreements, must be arbitrated before the boards of adjustment. *See* 45 U.S.C. §§ 153, 184. This remedy must be exhausted before an employee can pursue a breach of contract claim based on a collective bargaining agreement in federal court. *See Drywall Tapers and Pointers of Greater N.Y., Local 1974 v. Local 530 of Operative Plasterers and Cement Masons Int'l. Ass'n*, 954 F.2d 69, 77 (2d Cir. 1992). An employee need not pursue these remedies, however, if doing so "would be wholly futile." *Id.* (citing *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 330 (1969). Here, Appellants concede their breach of contract claim is a "minor dispute." (FAC ¶ 45.) They claim they need not pursue arbitration, however, since most of the members of the arbitration panel would be chosen by American or APA, rendering the process "futile." (*Id.*) Because Appellants fail to state a claim for breach of contract, the Court need not address whether Appellants should be excused from pursuing administrative remedies. *See Peltzman v. Cent. Gulf Lines, Inc.*, 497 F.2d 332, 335 n.5 (2d Cir. 1974) (district court should address whether plaintiff employee should be excused from exhausting RLA's administrative remedies only if it first determines that plaintiff's breach of contract claim is viable).

## II. The Bankruptcy Court Did Not Err in Dismissing Appellants' Breach of Duty of Fair Representation Claim.

In the Second Amended Complaint, Plaintiffs allege that APA breached its duty of fair representation to the former TWA pilots, and that American was complicit in that breach. (SAC ¶¶ 42, 44.) The Bankruptcy Court's dismissal of these claims was sound.

### a. Appellants Fail to State a Claim that APA Breached its Duty of Fair Representation.

Appellants claim APA violated its duty of fair representation to the former TWA pilots by agreeing, in the New CBA, to continue to use the seniority list established by Supplement CC but without the protective "fence" in St. Louis. (Op. Br. 16–19.) This claim is barred by both the rule against duplicative litigation and the law of the case doctrine.

As the Bankruptcy Court explained in its September 22, 2015 Order, Appellants' duty of fair representation claims survived dismissal only to the extent they addressed a narrow subject: whether APA breached its duty of fair representation by continuing to use the allegedly unfair seniority list established by Supplement CC in the time period between the abrogation of the Old CBA and the implementation of the New CBA. *See Krakowski II*, 538 B.R. at 223–24. To the extent the claim addressed APA's agreement to the New CBA, it would be duplicative of *Krakowski I*. *See id.* Despite this guidance, Plaintiffs' Second Amended Complaint includes no allegations whatsoever that APA breached its duty of fair representation in the time period between the two CBAs. Instead, the Second Amended Complaint merely repeats earlier allegations that APA breached its duty by agreeing to the terms of the New CBA. (SAC ¶ 42.)

This claim, as pled, is barred by the rule against duplicative litigation, which permits a federal court to "stay or dismiss a suit that is duplicative of another federal court suit." *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 505 (2d Cir. 2019) (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)). This is because "plaintiffs may not file

duplicative complaints in order to expand their legal rights." *Curtis*, 226 F.3d at 140.[8] The rule applies where a suit features the same parties or interests, rights asserted, relief prayed for, factual basis, and "essential" legal basis, as a suit already pending in federal court. *Sacerdote*, 939 F.3d at 506 (citing *The Haytian Republic*, 154 U.S. 118, 124 (1894)). Such is the case here. In *Krakowski I*, Appellants "allege[d] that the APA breached its duty of fair representation by agreeing to terminate Supplement CC and to limit any potential relief from altering the seniority of legacy TWA pilots." *Krakowski I*, 2014 WL 2508729, at * 4. This is essentially the same claim Appellants make in the instant matter: in both suits, Appellants allege the APA breached its duty of fair representation by agreeing to use the seniority list established by Supplement CC, without the possibility of revising it, and without the benefit of the "fence." Thus, Appellants have duplicated their claims in *Krakowski I*. The Bankruptcy Court did not err in ordering Appellants to narrow their claims to avoid duplication, or by dismissing their claims when they failed to follow its clear guidance.

In addition to being barred by the rule against duplicative litigation, Appellants' claims alternatively fail under the law of the case doctrine. This is because the *Krakowski I* court considered and dismissed the claim that Appellants duplicate in the instant proceedings. The law of the case doctrine provides that "[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). In *Krakowski I*, the Bankruptcy Court dismissed Appellants' duty of fair representation claim against APA, reasoning that APA had no obligation to prioritize the former TWA pilots over other American pilots in the "zero sum game" of

---

[8] *Sacerdote* and *Curtis* refer to the authority of a federal District Court to manage lawsuits that are duplicative of suits already pending in other District Courts. The Court is of the opinion that Bankruptcy Courts have the same authority.

seniority when it negotiated the New CBA. *See Krakowski I*, 2014 WL 2508729, at * 4; *see also Krakowski I*, 536 B.R. at 371–72 (confirming dismissal of Appellants' duty of fair representation claim). Although *Krakowski I* is, of course, a different adversary proceeding than the one now before the court, "[c]ourts have held that the law-of-the-case doctrine applies to different adversary proceedings filed within the same main bankruptcy case." *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (Furman, J.) (quotation marks omitted); *see also In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991) (noting that law of the case doctrine "has application to different lawsuits between the same parties"). Thus, the Bankruptcy Court's earlier ruling on APA's duty of fair representation to the former TWA pilots during the negotiation of the New CBA is the law of the case, and it governs the instant, nearly-identical claims.

      **b.    Appellants Fail to State a Claim that American Colluded in APA's Breach of its Duty of Fair Representation.**

Because Appellants fail to state a claim that APA breached its duty of fair representation, they necessarily fail to state a claim that American colluded in any such breach. *See Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 475 (2d Cir. 2016).[9]

---

[9] The Bankruptcy Court concluded that, even assuming APA breached its duty of fair representation, Appellants' claims would still fail because Appellants failed to plead facts that would prove American's collusion in the breach. The Court declines to reach this alternative ground for dismissal. It is well-established that a plaintiff employee is excused from exhausting the Railway Labor Act's administrative remedies in pursuing a breach of contract claim against his employer if he also claims the union breached its duty of fair representation against him. *See, e.g., O'Mara v. Erie Lackawanna R.R. Co.*, 407 F.2d 674, 679 (2d Cir. 1969). Whether this combination of claims can render the employer liable for the union's breach of duty is less clear. The Second Circuit has suggested that "collusion" between a union and an employer in a union's breach of the duty of fair representation may give rise to liability on the employer's part for that breach, but it has never identified what conduct would amount to "collusion," or held an employer liable on this basis. *See Flight Attendants in Reunion*, 813 F.3d at 475 (citing *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1283 (7th Cir. 1985)); *but see Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 603–610 (9th Cir. 2019) (holding that "collusion" cannot be the basis for an employer's liability in the union's breach of its duty of fair representation). In the absence of a viable duty of fair representation claim against APA, the Court declines to broach the subject.

## CONCLUSION

The Bankruptcy Court's partial dismissal of the First Amended Complaint and dismissal of the Second Amended Complaint are AFFIRMED.

SO ORDERED.

Dated: New York, New York
December 17, 2019

                                                  /s/ Kimba M. Wood
                                                  KIMBA M. WOOD
                                                  United States District Judge