Federal Bankruptcy Court of Southern District of New York (Manhattan)

Honorable Judge Sean Jane

Case Number 11-15463 shl

Preamble to this Case

The purpose of for filing this  CLAIM , is to get a Ruling  and  Ordered by the Court  to the  company "American Airlines",  to seize  any/all enforcement of Executory Employment Contract(s) that are known as the" Kasher Awards or D.R.C.'S" that are being subjugated against the Former TWA PEOPLE employees of the TWU union.  The Company shall completely abide with/to terms of the NEW EMPLOYMENT CONTRACT knowns as the "New AA/TWU CBA" employment contract, that took effect as of Sept 12,2012, as an order by this Bankruptcy Court on 8/22/12 - Doc 4131 18:28:09. The act of the Company excluding these Executory Employment Contracts from the court, is a violation of the Federal Bankruptcy Court's Codes, Rules and Procedures and has intentional to adverse impacted FORMER TWA PEOPLE rights to/from the NEW AA/TWU CBA employment agreement since Sept 12,2012 when it took effect.

Kasher Awards and D.C.R.'s became an unenforceable Executory Employment Contract(s) as of action by the Court per Doc 4131. The" NEW AA/TWU CBA" employment contract implementation on Sept 12,2012, with the replacing of the "OLD AA/TWU CBA" employment contract, this nullified/voided/expunged "Kasher Awards" thereby violating Federal Bankruptcy Codes, Rules and Procedures commence against the FORMER TWA PEOPLE.  Kasher Awards to be explained within document and is also attached for review

American Airlines should/shall use "each employee record" for the determination of seniority without alteration or influence of/by the "Kasher Awards or D.R. C.'s." The Company shall use the "Former TWA PEOPLE Seniorities date's" as is each of their record(s) for this purpose during creation of the NEW MASTER SENIORITY LIST, as stated by/to those terms defined within NEW AA/TWU CBA employment contract dated Sept 12,2012.

The Following document(s) shall support my/our position to the Court, for an issuance of Ruling/Order by the court, in favor to our claim, that is based on the Federal Bankruptcy Court law(s).

I apologize for not being forth coming as to who I am, but there will retribution by the company and unions, I have already tested problem this with a related issue and by their response and behavior to that event, made me realized by their negative reply by them. I as an employee or a union member should have to get a lawyer to force people to follow the law, it's each obligation, especially that of the lawyers with bar association and to the courts.

In a governing system that is based on the rules of law, everybody has to be held equally accountable under and by those same laws.

Thank You
Former TWA PEOPLE (Approx. 750)

**John Doe 055**

Your Honor,

I have included the three contracts, as evidence to support, prove and convince the court, that within those contracts there is no language, instruction's or supporting terms regarding the Kasher Awards that had/has to be applied during the course of abiding to the Sept 2012 contract by the Company, that Kasher issue is based on March 2001 AMR/TWU Contract, that employs limitations and/or restriction for exercising their TWA/IAM seniority The Kasher Awards are to only be place upon them and only them the Former TWA People Seniorities, that's about 750 people verse the 23000 fellow union brothers/sister! Equality is the reason for a contract and the rights to those terms that each employee has, when the old contract was replaced with a new contract, the old contract does not dictate or rule the new contract.

There will be those who will say, Kasher Awards are symbiotically embedded within the March 2001 AMR/TWU Contract language of seniority, it would there that the Kasher Awards reside, yet when you, your Honor or any employee was to read this contract (2001,2003 or 2012), for that specific language, you will never see Kashers Awards or even as how to execute the terms of the contract, in concert with Kasher Awards. As you can see with the absent of Kasher Awards from the Contracts; there is no other supporting language as how-to interphase Kasher Awards restriction as well his interpretation's.

There is no explanation for the implementation Kasher's Awards (penalties of Seniority) within the March 1,2001 AMR/TWU Contract or March1,2003 AMR/TWU Contract and also the "NEW" AMR/TWU CONTRACT OF SEPT 2012 issue/ordered by your court! So, then how does the company avoid Bankruptcy Court Code's, Rule's and Procedure's from not filing the Kasher Awards as an Executory Agreement/Contract/Employment under schedule "G"; in your court????

If they (Company and Unions TWU) are too considered Kasher Awards as separate contract, then it had to be filed under Schedule "G" or "H"( non-core or core) and if its part of the original contract from **March 1 2001** (this the book Kasher used), then it belongs with the **OLD AMR/TWU CBA book**, that was replaced by your court ruling/ordered and so **ended the Kasher Award.**

Under the Railway Act, union contracts are amended and when it was replaced by court action, voided the rights that employee/members have. The right to vote and as well the right for SELF-HELP, the court rulings supersedes the R.L.A. and so the protections of the old contract, under rule/order of 1113 or that other rules, during this bankruptcy Kasher Awards are no longer valid. Automatic STAY has to place on all agreements by filing with bankruptcy court. Replacing the Old AMR/TWU CBA with a NEW AMR/TWU CBA per this court actions, has nullified the Kasher Awards against the former TWA People Seniority. People rights to seniority under this new contract 2012 has to be based on each employee's record, that is only source for determine seniority, no you can't use the old Seniority list that is based on the OLD AMR TWU CBA, so court actions has nullified or expunges the Kasher Awards.

To the attention of Honorable Judge Sean Lane,

BANKRUPTCY CASE NUMBER :11-15463

## Table of Contents

PAGE 3     Claim for review --- Claim Request, Remedy, Prerequisite to Court and Summation

PAGE 5     Grounds and Justification

PAGE 5     Explanation of KASHER AWARDS

PAGE 6      Condense List of KASHER AWARDS as an Executory  Contract  issues      1 - 18

PAGE 11    American Airlines contracts  issues

PAGE 13    SENIOIRITY LIST Relevance to claim

PAGE 14    References Material and Resources:

Pg14    Exhibit Source 1:        This the OLD AA/TWU CBA employment contract

Pg14    Exhibit Source 2:        KASHER AGREEMENT TO ARBITRATED

Pg14    Exhibit Source 3:        ONE CONTRACT RULE

Pg16    Exhibit Source 4:        SOURCE OF SENIORITY from the CBA -                    Justice Frankfurter

Pg17    Exhibit Source 5:        EXECUTORY CONTRACTS                    Chief Justice Rehnquist

Pg17    Exhibit Source 6:        CONTRACT - AWARD'S DRAW ITS ESSENCE –                    SUPREME COURT

Pg18    Exhibit Source 7:        EXECUTORY CONTRACT and Employment Contract

Pg20    Exhibit Source 8:        Arbitration Awards must be filed in  Bankruptcy Court

Pg21    Exhibit Source 9:        Collective bargaining agreement is longer enforceable    Chief Justices Rehnquist

Pg22    Exhibit Source 10:       Draw ESSENCE from the Contract                    by Douglas E Ray

Pg22    Exhibit Source 11:       Seniority is established by and depends on the terms of CBA

Pg22    Exhibit Source 12:       ONCE CONTRACT EXPIRES – NO Rights continue to accrue      MR Justice Douglas

Pg23    Exhibit Source 13:       Any EXECUTORY CONTRACTS becomes Unenforceable    Chief Justice Rehnquist

Pg24    Exhibit Source 14:       READER OF THE CONTRACTY                    by Theodore J. St. Antoine*

PAGE 26    R.L.A.  Railway Labor Act :

Pg. 26  RLA 152

Pg. 26   RLA 155

Pg. 27  RLA 156

Pg. 28  RLA 157

Pg. 29  RLA 158

Pg. 30  RLA 159

PAGE 31    Bankruptcy Documents :

Pg31    DOCUMENT NUMBER 1430 -3 Page 509 Schedule "H"  shows Five AA/ TWU CBA Listed

Pg31    DOCUMENT NUMBER 2726 -  Page-10 is a "statement of the fact" by TWU ATTORNEY's Sharon Levin
        - "The terms and condition of employment for each employee craft"

Pg32    DOCUMENT NUMBER 4131 –    the Removal of Station and System Protection page 34

Pg32    DOCUMENT NUMBER 4413 –   order new TWU CBA's settlement Letter and Letter Memorandum

Pg32    DOCUMENT NUMBER 12203 -   The TWU LAWYER admits New CBA agreements 8 of 14

Pg33    DOCUMENT NUMBER 12825-    I give reference to Judge Lane LANGUAGE OF LAW PG 10,11,12

Pg33    DOCUMENT NUMBER 12975    OLD CBA REPLACED BY NEW CBA Item8 PAGE 8 ITEM 17

Pg34    DOCUMENT NUMBER 13163     NY LAW WRITTEN AGREEMENT reach consensual agreement

PAGE  37    KASHER " Agreement to Arbitrate"

PAGE 41     SCHEDULE – G Introduction cover sheet

PAGE 42    SCHEDULE H WITH THE FIVE TWU CBA

PAGE 43        SCHEDULE Signature with  A STATEMENT OF PERJURY

PAGE 44        AA/TWU CBA'S from  March 1,2001  April 15,2003 and Sept 12,2012 — Find Kasher Awards

**CLAIM REQUEST:**

I am forwarding you  this  Claim, for judicial review by the court, where upon for an issuance of a Ruling and/or  Ordered  by the Court to the Company, to seized the application of EXECUTORY CONTRACTS (known as the KASHER AWARDS) that is/was expunge/unenforceable/invalid  against the FORMER TWA EMPLOYEES Seniority, that having been working since the **new employment contract**  known as the " **NEW AA/TWU CBA**" employment contract, that was implement on/as of  the  **Sept 12,2012**. That this action was attributed by the exercise of the court with/by replacement of the "OLD AA/TWU CBA" with new terms of employment under the "NEW AA/TWU CBA", that went to effect on date of **Sept 12,2012**.

**REMEDY TO CLAIM:**

The FORMER TWA PEOPLE shall have their former IAM Seniority(as recorded within each of  employee file's)  be recognized to their original state, without alterations or modifications in anyway  and shall be based only those file for the creation of the NEW Master Seniority List, an as per those  terms  of the new employment agreement (NEW AA/TWU CBA ), this will be and shall applied to all unionized employee's.   The FORMER TWA PEOPLE shall be immediately and properly notified by the company contacted  FORMER TWA PEOPLE(in person by management) of such changes with necessary documentation to show as such of acknowledgment to these correction/changes, a letter of settlement should also given and the immediate satisfaction to/for and/or any adjustment that are deem as necessary. Complete removal to all defined and/or reference to "TWA" OR "TWA PEOPLE" in their bulletins and bulletins boards.

If for any reasons that the court deems to interjection other supplemental measurement, additional or complimentary remedies of satisfaction, that were not address and/or consider by me/us, I do support the court's complementary position on this matter.

**PREREQUISITE TO CLAIM NOTE:**

To the court, if these EXECUTORY CONTRACTS knowns as the " KASHER AWARDS", were so listed under Schedule "H" -11-15463 - DOCUMENT Number  1430-3 and/or  **did undergo the proper**  Federal Bankruptcy  review process and for consideration, I would then would  have to reconsider my position and **retrack my CLAIM**, but **if they weren't**, then I do expect for the court to completely and fully review this CLAIM with a ruling/order to company and all parties!

**SUMMATION OF CLAIM:**

The foundation to my claim, is that the Company/DIP/Estate has been executing an employment contract that has ended, with/when the OLD AA/TWU /CBA (March 2001) employment agreement that was replaced  on Sept 12,2012 and on that same day, a  new employment contract took immediately effect with/by the NEW AA/TWU CBA employment agreement for all TWU employees. These Kasher Awards were not declared as an inclusive instrument of employment within the NEW AA/TWU CBA *nor was the origination of Kasher Awards were based on that "NEW AA/TWU CBA" employment contract*. The actions of Federal Bankruptcy court Codes, Rules and procedures that were applied to the Company CONTRACTS , resulted by a Court's Ruling and Order to replace the OLD AA/TWU CBA employment contract  with the NEW AA/TWU CBA employment contract, this action has now enacted purging and the discontinuation of  all of "Kasher Awards" employment agreement against the FORMER TWA PEOPLE.

The OLD AA/TWU CBA (March 2001) employment agreement is/was the bases that Arbitrator Kasher Awards had to use in order for the settlement of the seniority question that was given to him.  Feb 27,2002, Kasher had to integrated group of FORMER TWA/IAM PEOPLE with that of the AA/TWU PEOPLE by the provision under that employment contract (OLD AA/TWU CBA March 2001). The award had to assure that the TWU PEOPLE will not be

3

adversely harm by the FORMER TWA/IAM PEOPLE when they were to exercise seniority in competing for working opportunities under the "OLD AA/TWU CBA", in that AA/ TWU PEOPLE will not be impacted.

That moment, the company filed for Federal Bankruptcy Protection, an **_automatic stay_** had to be placed **_on all executory contracts_** and at that same moment of action, had to include and applied to those KASHER AWARDS (because they are executory contracts). Those KASHER AWARDS would also have to be inclusively listed on the **Schedule – "H"** upon that filing as per the Federal Bankruptcy Court Codes, Rule and Procedures.

During my search, **I could not find** the Kasher Awards "executory contract's", but I did find the Five each— "OLD AA/TWU CBA" on Schedule – "H" Case 11-15463 Document 1430-3-page 509. These following documents were **"NOT"** found:

1. **"Kasher Arbitration Opinion and Recommendations Award"** Dated April 27,2002.
2. **"Kasher's D.R.C.'s decisions 1 thru 33 "**        Dated May of 2002 thru June of 2006.

These Kasher Awards are executory contracts, they are exclusively applied to only approx. 800 FORMER TWA/IAM PEOPLE, who are being treated as a group of sequester employees, from the whole and also are being denied the full benefits and recognition of the "NEW AA/TWU CBA" terms of employment of Sept 12,2012. This is an action that will/has produce a significant harm to the FORMER TWA PEOPLE directly by company's and/or other parties, who are supporting this action. This continuation of the enforcement  of a separated employment contract known as  "Kasher Awards" (defuncted by act of the court exercise } that's are not valid and to maintain its enforcement concurrently with NEW Employment Contract (NEW AA/TWU CBA EMPLOYMENT CONTRACT), is only exasperate the purpose and intentions of and for the unification of the work force and so that have all union worker's to be  under one common employment contract   NEW AA/TWU CBA Sept 12,2012.  NEW AA/TWU CBA employment contract and the company and its continuation to enforce the KASHER AWARDS actions against the FORMER TWA PEOPLE is abuse of the law and this **intent** is not the law!

So, for if the Court does acknowledge that the Kasher Awards are expunge contract(s) in it's entirely, then what would be the mechanics going forward under the NEW AA/TWU CBA employment contract would be? To use the contract's  frame- work of terms and to abide by that governing language from "NEW AA/TWU CBA" to/for creation of the NEW Master Seniority list, this has to/will be based on "each employee record of employment", for the formation of a NEW Seniority List.   When the company has completely determined "each individual seniority", that date will then be then his/her NEW seniority date, then to be recompiled by that seniority date onto "NEW MASTER SENIORITY LIST", as of SEPT 12,2012.

As the **TWU Attorney Sharon Levin** stated" each employee is governed by the terms of a **_contract_**".  (Here the NEW AA/TWU CBAs are terms of employment).    Case 11-15463 Document- 2726 Page- 10 First paragraph.

This **_"CLAIM"_** is about contracts, as when one contract end's and then so begins the new contract, now as to what happens to all previous agreements/contracts/supplemental agreements within course of the Federal Bankruptcy Court, has exposes all contracts to same detrimental consequences. When and where there's finality to this event to occur, the end result to all these contracts, always have to meet to the same degree of satisfaction by the Court and its solution(s) reflected to all parties, that does include all Employees. The loss of the OLD AA/TWU CBA employment contracts also extend the loss to all associated contractual obligations, that's does include all the "KASHER AWARDS".

4

Whether the Kasher Awards are to be view as "One Contract Rule" or that it's a contract "Embodied" into old contract (but from externally) or when this "Contract Fail the Legal Rules of Laws" by not properly compiling with federal rules of law or those "Kasher Awards" are render as an unenforceable contract or they have been subjected of an unrealized action of " DE NOVA " or to be viewed that the company failed to filed these contract's under Schedule "H" and/or that TWU union could have themselves put forward these "KASHER AWARDS" before the court, or that they were a consequence of expungement, it is an obligation by the company, to treat the Former TWA PEOPLE in the same light as the rest of ITS TWU unionized employees. COMPANY and PARTIES are to be held to committed terms under one single NEW EMPLOYMENT CONTRACT (AA/TWU CBA Sept,12,2012) without any misconduct of interpretation to that's contractual language for all unionized employees.

There will be those parties, who will claim that this KASHER AWARDS are FINAL and BINDING onto the FORMER TWA PEOPLE(forever) to be enforced by the company, *IF the OLD AA/TWU CBA* employment contract (March 2001) *remains in total in effect*, ONLY-THEN, that will be true, but this is not the case, for when the OLD CONTRACT (March 2001) was replaced by a NEW EMPLOYMENT CONTRACT (AA/TWU CBA Sept 12,2012), so does ends the KASHER AWARDS, keep in mind that they are not in that employment contract!

## GROUNDS and Justification:

To provide the Court with the necessary justification that supports this "**CLAIM**" with the used of correlated documents and references. KASHER Awards are employment contract(s) that has an adverse impact, rendering tortious harm with malice only to FORMER TWA PEOPLE SENIOIRTY being conducted concurrently working under this new employment contract Sept 12,2012. FORMER TWA PEOPLE are not having their seniority being properly recognized per their employment record in its true value under the New AA/TWU CBA terms, this is wrongful actions by American Airlines and Parties, that needs to be corrected by a court decision.

Sources are legal cases, legal passages of reference's, law journals, law Professor's, Court decisions and quoted decisions from Legal Justices like-- Justice Rehnquist, Justice Frankfurter, Justice Douglas, Supreme Court and Second Court of Appeals.

American Airlines Company (AA) has committed Violations of Bankruptcy Court Code's, Rule's and Procedure's by the continuation of exercising's of these Executory Contract's- KASHER AWARDS, against the FORMER TWA PEOPLE, as of Sept 12,2012, under a new employment contract **by not** complying to those **new terms of employment**. The NEW AA/TWU CBA employment contract has to applied equally to all employees. IN short, they were determining seniority by the new contract terms of seniority with the use of each employee record, and not the seniority list from the old contract!

## EPLANATION OF KASHER AWARDS

The KASHER AWARDS are executory contracts that had to be reviewed by Federal Bankruptcy Courts Codes, Rules, procedures. These EXECUTORY CONTRACT(s) became invalid, expunged, unenforceable contract(s) as of and with the exercise of the Federal Bankruptcy Codes, Rules and procedures of law, with the replacement of OLD AA/TWU CBA employment agreement with the NEW AA/TWU CBA employment agreement. The KASHER AWARDS are linked to the Old AA/TWU CBA (March 2001) as the terms of employment-agreement.

Kasher "**Arbitration Agreement**" was defined by Parties (TWU, IAM, A/A), that demanded him to use the AA/TWU CBA Dated March 2001(also known as the OLD AA/TWU CBA employment contract). This arbitration occurred under the federal law knowns as Railway Labor Act ( section 158 and 159) on Feb 27,2002 ( note that Kasher did not filed his awards to Philadelphia U.S. Court Clerk office as per the RLA 159 section(this is a violation of Federal Law – now, by not complying with the FEDERAL LAW as written, HE has place's them in a state non-compliance with the law or in this case unenforceable award, ( this is in my view of as I read RLA 159 ).

KASHER retired from the position of D.R.C. (Dispute Resolution Committee chair person) as of year of 2009, he surrenders his authority as the D.R.C. seat to the TWU System Board of Adjustment. "TWU System

Board OF Adjustments" only deal with matters of "Minor Dispute's", that only deal's with violations that is strictly based on "OLD AA/TWU CBA" employment contract, they don't have any power per the R.L.A. major dispute and the KASHER Awards are not in the March 2001 AA/TWU CBA. Arbitrator(s) who don't want to continue serve in this position as an arbitrator, to this case, he has to return it back Nation Mediation Board as per the R.L.A Section 158, **IT'S THE LAW**.

THE FOLLOWING is a condense list of the perspective points about KASHER AWARDS to this claim, when examine collectively with COLLECTIVE BARGAINING AGREEMENTS (employment agreement) and with other documents it shall show as factual conformation to my position.    ITEMS 1 THRU 18

1.  "Kasher Opinion and Award" & "D.R.C." (Dispute Resolution Committee)

These are Arbitration Awards that were for purpose of the merging and combing of the AA/TWU employees with the FORMER TWA/IAM employee's, this arbitration was totally based only on "OLD AA/TWU CBA" (March 2001) employment contract terms, that was conducted by **Arbitrator RICHARD KASHER**. This arbitration had to be per the Federal Railway Labor Act (LAW), that resulted with an arbitration award on Feb 27,2002, known as the "Kasher Opinion and Award". Richard Kasher was only presiding arbitrator to this case, who made an additional 33 supplement clarification awards, that was essentially to help those employees and those parties to get a deeper explanation and meaning to terms his original award. The authority and power were based strictly and solely on/by the "OLD AA/TWU CBA" (March 2001). Richard Kasher is the reader of the contract from OLD AA/TWU CBA employment contract, thus his awards had to related to that contract and none other.

Merged of two unionized work force into one, the OLD American Airline/TWU CBA is governing language per Railway Labor Act and is the driving document for seniority integration, based on that, has generated the "Agreement to Arbitrate" (R.L.A. 158) drafted by Richard Kasher (Arbitrator) with the party's authorization to this matter. The seniority integration is to have Mr. Kasher answer single question to be based on and to utilizing that "OLD AA/TWU CBA" of March 2001 employment contract.

Richard Kasher retire from this case in the year of 2009, transferring the position/seat of authority to the TWU UNION System Board, this is not what the Federal R.L.A. states, it had to be pass back the N.M.B per section 157.

| Page 22 | Exhibit 10 | Draw Essence-Justice Rehnquist, |
|---------|-----------|-------------------------------|
| Page 17 | Exhibit 6 | Draw Essence- Supreme Court, |
| Page 14 | Exhibit 3 | One Contract Rule |
| Page 25 | Exhibit 14 | Reader |
| Page 28 | RLA 157 | Arbitration |

2.  Kasher Award(s) was initiated and by the need for This is all base on the RLA.

| Page 37 | RLA 158 | Agreement to Arbitrate |
|---------|---------|------------------------|
| Page 28 | RLA 157 | Arbitration |
| Page 30 | RLA 159 | Awards |

3.  Kasher Arbitration Awards are employment contract(s) –

| Page 31 | Court Document 2726---- see TWU Lawyer -SHARON LEVIN |
|---------|------------------------------------------------------|
| Page 18 | Exhibit 7 -US CODE 59 |
| Page 17 | Exhibit 5 Arbitration Awards are Executory Contracts Justice Rehnquist |

4.  Kasher Arbitration Awards are EXECUTORY contract(s) as followed

          Page 17       Exhibit 5 Arbitration Awards are Executory Contracts Justice Rehnquist

5.  R.L.A. -Railway Labor Act (federal Law)  This arbitration comprised of the following participants,  American Airlines, TWU and IAM(TWA)  that occurred sometime in February 2002 as per R.L.A. SECTION 157 "ARBITRATION" and per R.L.A. SECTION  158 "AGREEMENT TO ARBITRATE" , in all cases R.L.A. 159 – the Filing of the "Award's" is the terms and language of these sections, it's not an option –"IT SHALL" be filed. Don't forget this is a federal law with Codes, Rules and Procedures. **It's the LAW**!

          Page 28       RLA 157
          Page 29       RLA 158
          Page 30       RLA 159

6.  During this bankruptcy filing by American Airlines, for need of bankruptcy protection by Company/Dip/Estate had to filed ALL of their Executory contracts as per the Codes, Rules and Procedures.  In Document Number1430-3 – is Schedule "H" listing of EXECUTORY COTRACTS (core and non-core), on page 509 of that schedule "H", you'll see listing of the Five (5) OLD TWU CBA listed. I had tried to locate the Kasher Opinion and Award as well Mr. Kasher DRC's within Bankruptcy Court Documents in the Case 11-15463 (Judge Sean Lane), with no results of finding them. So, with my search for these Awards concluded there is that the COMPANY did not filed them as require by the Bankruptcy Court Codes, Rules and Procedures.

      NOW, I ask if the court take review of Schedule "G" and "H" to locate/find them due to numerous documents were redacted and many classified as confidential. I am very certain that Mr. Kasher Awards were never presented to your Court, for proper reviewed or  consideration to the application of *automatic STAY* as well, for *rejection or assumption* as part of due process Bankruptcy court.

      Note: I believe that Federal Courts only *recognized legally recorded document* as per the LAW and reason the company or the TWU Union could not brought forward any claim on "Kasher Awards" to your court. Their ignorance to the law and its obligation were abandoned. Mr. Kasher did not file his Award's with US clerk office. I did contact the U.S. Court clerk office of Philadelphia where the case was heard and informed that there were no records of Kasher Awards on filed, this needs to be verified by the Court as fact giving more validity of my prove.

          Note: Federal Court information system is definitely difficult source for average citizen to obtain complete access, the court has the authority for such access that is by far superior then what a citizen can get.

          Page 17       Exhibit Source 5: EXECUTORY CONTRACTS
          Page 18       Exhibit Source 7: EXECUTORY CONTRACT and Employment Contract
          Page 20       Exhibit Source 8: Arbitration Awards to be filed in BANKRUPTCY COURT
          Page 21       Exhibit Source 9: Collective bargaining agreement is longer enforceable
          Pageg23     Exhibit Source 13: Any EXECUTORY CONTRACTS become Unenforceable

7.  CONTRACT INCONSISTENCIES of employment , **with two contracts one by "Richard  Kasher Awards" and the** other "New AA/TWU CBA" employment contract, **does have**  a collision of contradictions to/with each other employment contract's terms, this does further produce administration frustration's and does  impact the rights  of each employee, more than that, it will produce effects  that will be amplified in  harm and more  to those FORMER TWA PEOPLE biasly.

| Page 31 | Document 2726 | "Terms of employment", |
| Page 16 | Exhibit 4 | "Source of Seniority", Justice Rehnquist |
| Page 32 | Document 12203 | TWU Attorney admit new contract replaced |

8.  So, where are the Kasher Award's, are they with the OLD TWU CBA CONTRACT March2001 or are they embodied into the OLD AA/TWU CBA March 2001 as a hidden interpretation or are they outside of the OLD AA/TWU CBA March 2001 employment agreement or they just a totally an independent employment contract that is to  function as a bilateral agreement or as a secret employment contract!

   A. As an independent employment contract, it then needs to be filed under SCHEDULE "H" next, Pages 22,18,19,41,42,43

   B. Embodied as part of the TWU CONTRACT – if this is a fact then**, go** to the contract and find them, **Mr. Kasher Awards cannot be found in the OLD AA/TWU CBA March 2001 employment contract, so how are they part of the OLD AA/TWU CBA** next, Page 15

   C. Are they "Letter of Agreement" outside of the AA/TWU CBA, under Articulate 47  of the AA/TWU CBA  that specifies Kasher (Award's) agreement(s) were a part of the Master letters of Agreement List, that has performance and financial cost attached, sounds like an executory contract that had to filed with the court ,but the COMPANY  can't do this, if they are not legal, so how  then how can the courts  recognized this any employment contract not in compliance with all Federal Laws! Pages 18,22,23,37

9.  Did the Bankruptcy Court address these letters of agreement from the Master OLD AA/TWU CBA letters of agreement List. The replacement of the OLD AA/TWU CBA employment contract with a NEW AA/TWU CBA employment contract, as per the court procedures, had conclusively terminated the OLD employment contract and all Letters of Agreement unenforceable.

   This is not a question for the deliberation over the nature of the Kasher Awards, but the compliance of termination of an executory type contracts per the Federal Bankruptcy Court Codes, rule and Procedure's.
                        Page 42 SCHEDULE "G&H", Page 32- 4431, Page 14-ONE-CONTRACT RULE

10. Kasher Agreement to Arbitrate- I gave the most important parts that has greatest impact of authority from that agreement:

   A. Paragraph No 6     Applicably provision of the AA/TWU CBA (this the old from 2001)
   B. Paragraph No 7     The arbitrator **_does not_** have authority to change the AA/TWU CBA(OLD).
   C. Paragraph No 12    Had to FILE his awards expeditiously, shall file them as per the law
   D. Paragraph No 16    Pursuantly to terms of the AA/TWU CBA(OLD) is final and
                         binding upon the parties conclusively with that CONTRACT.
                      Page 38 "The Agreement to Arbitrate"

13. Richard Kasher is the **reader of the contract** and it would be that contract (OLD)AA/TWU CBA March 2001 is the foundation for his award. Richard Kasher had to be in compliance with the RLA 158 & 159. Yet you can't find anything about the Kasher Awards within the OLD AA/TWU CBA employment contract nor any documents that directly relates to his awards within that OLD AA/TWU CBA EMPLOYMENT CONTRACT ,so then with the terms of the OLD AA/TWU CBA contract is to define employment, then how dose any employee(TWU or Former TWA)knows to or of the existence of Kasher Awards and how does these Awards pertain to be the OLD AA/TWU CBA employment contract or even to that the NEW AA/TWU CBA employment contract! Those DEMANDS by the Company and TWU Union gave explicit instructions that had to be included in" Kasher Agreement to Arbitrated", where they didn't allow him to make any CHANGE or MODIFICATION to any parts of the OLD AA/TWU CBA employment contract. "Kasher Awards" are they a bilateral or independent employment contract, where is the legal standing of these KASHER AWARDS in scheme of Federal Bankruptcy Court Codes, Rules and Procedures that had to be taken by the company and/or union in terms of a NEW EMPLOYMENT CONTRACT for all each employee! Terms of NEW AA/TWU CBA SEPT 12,2012!

   The company and TWU union are tortious harming the former TWA PEOPLE during course of this bankruptcy and they are being treated with a high degree of bias by Company and TWU Union. In any employment contract the effects of that contract must be share by all the employees, in this event outcomes have to be justly the same and to be equally applied without bias or discrimination for due consequences of this court actions. Company efforts to hide or unintentionally to file these contract(s) of employment from the court, is to revealed to the court the company's ignorance of the court's authority and/ or to deceive the court by attempting to bypassing the FEDERAL BANKRUPTCY LAWS.

   | Pg37 | Exhibit Source 2: | KASHER AGREEMENT TO ARBITRATED |
   |------|-------------------|--------------------------------|
   | Pg14 | Exhibit Source 3: | ONE CONTRACT RULE |
   | Pg16 | Exhibit Source 4: | SOURCE OF SENIORITY from the CBA - |
   | Pg17 | Exhibit Source 5: | EXECUTORY CONTRACTS |
   | Pg17 | Exhibit Source 6: | CONTRACT - AWARD'S DRAW ITS ESSENCE – |
   | Pg18 | Exhibit Source 7: | EXECUTORY CONTRACT and Employment Contract |
   | Pg20 | Exhibit Source 8: | ARBITRATION AWARDS MUST BE FILED IN BANKRUPTCY COURT |
   | Pg21 | Exhibit Source 9: | Collective bargaining agreement is longer enforceable |
   | Pg22 | Exhibit Source 10: | Draw ESSENCE from the Contract |
   | Pg22 | Exhibit Source 12: | ONCE CONTRACT EXPIRES – NO Rights continue to accrue |
   | Pg23 | Exhibit Source 13: | Any EXECUTORY CONTRACTS becomes Unenforceable |
   | Pg24 | Exhibit Source 14: | READER OF THE CONTRACTY |

14. So, why didn't I bring this to TWU or the TWU ATTORNEY, for them to represent this CLAIM in your court? Putting this matter into the HANDS of TWU Union organization for fair representation, would be as though you gave it to someone who rather be wanting to harming you, then to seeking helping you! This merger will result in harm to everyone during compilation of these two seniority groups and will end up with serious adverse and consequential effects to all.

   To have the TWU fight for Former TWA PEOPLE SENIOIRTY vigorously on our behave,

would not be the case here (they don't have our best interest). This issue will never see the light day in your court, if it were to be placed into hands of TWU. The TWU efforts would be only just how to contain the FORMER TWA PEOPLE and preserve their form of protection, for their TWU members and it's also rumored that this protection is being offer to the other Company U.S. Airline IAM members.  Those U.S. Airline IAM MEMBERS were not even PRESENT nor were they part of that Arbitration and to effectively be made inclusive in any manner, who were never involve during that original KASHER "Agreement to Arbitrate", is only to show to the court the highest level of bias by the unions and the company.

This TWU UNION does not have our best interest or the well-being or to apply themselves with an earnest integrity or to apply a serious effort for our concerns on this issue. We FORMER TWA PEOPLE should have the same of rights and the same terms of employment contracts as with all the same opportunities that TWU Employees want are to enjoy. Application of any kind of restriction to the FORMER TWA SENIOIRTY under the new employment contract as per the terms of the NEW AA/TWU CBA, *is not the law*. These KASHER AWARDS are protection that the TWU MEMBERSHIPS who wants to maintain this against the FORMER TWA PEOPLE under this new contract. There is approximately 800 TWA People left verse 23,200 TWU union members that is against us, Former TWA PEOPLE are to selectively the only ones that are not to have the same rights of employment as everyone else, by the tortious actions of the company and unions. KASHER AWARDS are design only to restrict our unfeather rights under the NEW AA/TWU CBA employment contract, *once again this is not the law*.

One contention, if the FORMER TWA PEOPLE were get their full seniority rights, that there will be a major disruption to Master Seniority list, if the FORMER TWA PEOPLE  were able get to use their full seniority, this would upset ranking and opportunities to the majority of memberships by such an act,  this does not a justifiable rational to this logic  nor does it have any validity in this case because whence the moment that one U.S. Airline I.A.M. worker was to be placed in front of a TWU worker on the New Master Seniority List, it would  be at that moment when that occurred, has "now " disrupted every TWU worker from the FORMER TWU SENIOIRTY list, because it is  that moment everyone has been  displace from their former original ranking position that they once enjoyed prior to merger, this will also holds true for if one TWU worker were to be placed in front  of that of an U.S. Airline I.A.M. worker, then everyone on the FORMER U.S. Airline I.A.M. LIST has now been disrupted from their original ranking position that they  once enjoyed prior to merger.

In any merger of two unionized group of workers, on to a single list, there will always be winner's and loser's, but in this case it would be an outright act of discrimination, that will occurred with a non-compliance *with the law*, by the parties affording to the maintaining the enforcement of the KASHER AWARD'S under a NEW EMPLOYMENT CONTRACT . Due process of the Bankruptcy Court has caused that all prior agreements are not  legally enforceable or be binding to the Company and ALL Employee's that includes FORMER TWA PEOPLE, yet action by the parties(Company and Unions) are intentionally to  exasperating to deprive our rights-FORMER TWA PEOPLE from the terms of NEW AA/TWU CBA Sept 12,2012.

15. Kasher Arbitration Awards are not listed in the OLD AA/TWU CBA DATE MARCH 2001, nor are they shown anywhere in the contract, so then how can any employee be able to review them and/or where are they HIDDING THEM.  The fact is, where are these letters of agreement, see the OLD AA/TWU CBA Article 47 ALL "Letters of  Agreement" had to be presented to the Federal Bankruptcy Court, in case number 115163 Document Number 6. Page506. Five Old TWU CBA'S MARCH 2001

16. Kasher Awards is not an inheritance, to can be carry forward into a NEW EMPLOYMENT CONTRACT known as the "NEW AA/TWU CBA EMPLOYMENT AGREEMENT" and the language for seniority, **shall not** be express to the same degree of recognition for the FORMER TWA EMPLOYEES as the rest of former AA/TWU and US/IAM employees will have.

17. Master Seniority List is not an inheritance, it is the product of the contract terms that's in affect at the that time , creation for such a list(s) and it had to be done by the employer(American Airlines),by abiding to those terms and to utilizing employment contract in the course of execution and base only on that contract( Sept 12,2012). NEW AA/TWU CBA

> See Article 10 &13 for seniority list construction of each contract and you **not find** anything about KASHER AWARD or DRC AWARDS.

18.  Kasher awards only survive as long as the "OLD AA/TWU CBA" of March 2001 remain in effect in its entirely without any Changes or Modifications and will be the represented contract for all employees included the FORMER U.S. AIRLINE IAM Employees, as it was at that time of March 2001. It is this contract that Kasher used to developed his awards, with that language and those terms per that contract to its awards that gave it's the expressive distinctiveness of force, that will have to conclusively imposed to all employees. This is not the case with the replacement of the OLD Contract to the New Contract has terminated that prior agreement of employment obstruction.

## CONTRACTS

American Airlines Contract with the TWU – Known as the AA/TWU CBA dated MARCH 2001

### SEE AMERICAN AIRLINE/ TWU CBA BOOK of March 2001

| | |
|---|---|
| Article 10 – Seniority | page 41 |
| Article 13 – Seniority List | page 98 |
| Article 45- Effects on Prior Agreements | page 192 |
| Article Disposition of Letters of Memorandum | page 216 |

Where Are the KASHER AWARDS?

This contract are terms of employment with American Airlines

----------- See: TWU Attorney Sharon Levin in document 11-151463

American Airlines contract with the TWU – Known as the AA/TWU CBA dated Sept 12,2012

### SEE AMERICAN AIRLINE /TWU CBA BOOK of Sept 12,2012

| | |
|---|---|
| Article 10 – Seniority | page 54 |

Article 13 – Seniority List                                    page 116
Article 46 -Effects on Prior Agreements               page 227
Article Disposition of Letters of Memorandum      page 254
Where are the KASHER AWARDS?

Elements that were changes into the NEW CBA of greatest significance are:
        Loss of System Protection
        Loss of Station Protection
        Loss of major structure rights and language changes as seen in:
        Document 11-15463-shl   Doc 2726-4   Filed 05/11/12


## KASHER AWARD and OPINIION

Are awards for purpose to merge the American Airline TWU unionized
employees with the FORMER Trans World Airline IAM unionized employees
base on the AA/TWU CBA OF MARCH 2001, whereby no one on the master list
will be adversely impacted in working condition
Page 29   Federal Railway Labor Act section 158 – "Arbitration"
Page 30    Federal Railway labor Act section 159 – "Agreement to Arbitration"
Page 19   Draw Essence Supreme Court
PAGE 24   Draw Essence
Page 25   One Contract Rule, Kasher awards draws on from the essence of the
        OLD AA/TWU Employment Contract of March2001.

### Kasher Arbitration Agreement

*The Arbitrator shall have authority only to integrate the
respective system seniority lists into single system seniority
lists, and shall not have authority to amend the AATWU
collective bargaining agreements.*
Page 30 - RLA SECTION 159

**Kasher Awards** are **employment contracts**, that his awards **shall be filed** with the U.S. courts
and to had complied with all bankruptcy court codes, rules and procedures as a
required by all the parties in order to meet the requirement's law.

Pages 18, 22 Arbitration awards are Executory Contracts and
must be filed with the bankruptcy Court - Chief Justice Rehnquist

### KASHER D.R.C. Awards –

(**D**ispute **R**esolution **C**ommittee who is Mr. Kasher himself as the committee)

These are supplement awards that provided further clarification of his original
award and also hold the same authority that of his original award.

Kasher D.R.C. awards are by product of his original awards and is also subject to
        the same expulsion as the OLD AA/TWU CBA.

SEE DOCUMENT – Page 24,25,27,18, 33-2726

5.    **Exhibit Subject:**    **EXECUTORY CONTRACTS   Chief Justice Judge Rehnquist**

**WEB SOURCE:**    **Enforcing the Duty to Arbitrate Claims Arising Under a Collective
Bargaining Agreement Rejected in Bankruptcy:**
Preserving the Parties' Bargain and National Labor Policy        Glen M. Bendixen

In the Bildisco case the U.S. Supreme Court held that a
Chief Justice JUDGE RHEINQUEST declares that all arbitration awards are EXECUTORY CONTRACTS, REFERENCE

Kasher Awards are employment contracts and, in this case, then his awards had to be filed with the
courts and be subjected to bankruptcy court codes, rules and procedures that's per LAW!

The second general limitation is that a **court will not enforce an arbitral award that conflicts** with substantive
law or public policy. The last two qualifications refer to such conflicts. acy.63
An arbitral award is also subject to judicial vacation for want of authority if it reaches beyond the boundaries of the
"submission," the statement of the issue as agreed upon by the parties. For example, an arbitrator who is empowered to
decide whether an employer has unreasonably increased assembly-line quotas is not authorized to order the parties to
negotiate for engineering studies to guide future quota disputes.

B. Arbitral "Modifications" or "Gross Error" Collective bargaining agreements often provide that an
arbitrator may not "add to, modify, or otherwise alter the terms of this contract." Such language paves the way for what
is probably the most troublesome of all assaults on arbitral finality. Torrington v. Metal Products Workers Local 164568
is the classic case. Prior to the negotiation of a new contract, an employer unilaterally announced the discontinuance of
a long-standing practice to pay employees for one hour away from work on Election Day. An arbitrator sustained the
union's grievance, finding that the past practice could be terminated only by mutual agreement. The Second Circuit
refused enforcement, declaring that "the mandate that the **arbitrator stay within the confines of the collective
bargaining agreement . . .** requires a reviewing court to pass upon whether the agreement authorizes the arbitrator to
expand its express terms on the basis of the parties' prior practice."69 A dissenting judge argued that the court was
improperly reviewing the merits and that the arbitrator was entitled to look to "prior practice, the conduct of the
negotiation for the new contract and the agreement reached at the bargaining table to reach his con

6.    **Exhibit Subject:**    **CONTRACT - AWARD'S DRAW ITS ESSENCE – SUPREME COURT**

**WEB SOURCE:**   1987 Court Review of Labor Arbitration Awards under the Federal Court Review of Labor Arbitration
Awards under the Federal Arbitration Act Arbitration Act        by Douglas E. Ray
Follow this and additional works at: https://digitalcommons.law.villanova.edu/vlr Part of the Labor
and Employment Law Commons

Recommended Citation Recommended Citation Douglas E. Ray, Court Review of Labor Arbitration Awards under the
Federal Arbitration Act, 32 Villa. L. Rev. 57 (1987). Available at:
https://digitalcommons.law.villanova.edu/vlr/vol32/iss1/2 This

In the last Trilogy case, Enterprise Wheel, the Supreme Court defined the scope of review of an
arbitration award. Recognizing that the award must relate to the collective bargaining
agreement, the Court noted that the arbitrator's award is "legitimate only so long as it draws its
essence from the collective bargaining agreement."

Additionally, the Court noted that as long as the arbitrator's decision draws its essence from the collective bargaining agreement, "a court is bound to enforce an award and is not entitled to review the merits of the contract dispute." Id. For the facts and further discussion of W.R. Grace, see supra note 2.

## 7. Exhibit Subject:   59 EXECUTORY CONTRACT and Employment Contract

**WEB SITE -SOURCE**   https://www.justice.gov/jm/civil-resource-manual-59-executory-contracts-bankruptcy
59. Executory Contracts in Bankruptcy -- Introduction, Threshold Issues

I. INTRODUCTION

The Bankruptcy Code, 11 U.S.C. § 365, provides that, subject to court approval and certain limitations discussed below, debtors can assume or reject any executory contract or unexpired lease. It is an area of the law described as a "thicket . . . where . . . lurks a hopelessly convoluted and contradictory jurisprudence." In re Drexel Burnham Lambert Group, Inc., 138 B.R. 687, 690 (Bankr. S.D.N.Y. 1992) (quoting Andrew, Executory Contracts Revisited: A Reply to Professor Westbrook, 62 U. Colo. L. Rev. 1 (1991)). "[I]n no area of bankruptcy has the law become more psychedelic than in the one titled 'executory contracts.'" Drexel Burnham, 138 B.R. at 690 (quoting Westbrook, A Functional Analysis of Executory Contracts, 74 Minn. L. Rev. 227, 228 (1989)).

II. THRESHOLD ISSUES

A. What is an executory contract? The Code does not define "executory contract", but most courts have adopted this definition: "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. R. 439, 460 (1973); In re Murexco Petroleum, Inc., 15 F.3d 60 (5th Cir. 1994); In re Texscan Corp., 976 F.2d 1269 (9th Cir. 1992); United States v. Floyd, 882 F.2d 233, 235 (7th Cir. 1989); Sharon Steel Corp. v. National Fuel Gas Distrib. Corp., 872 F.2d 36, 39 (3d Cir. 1989); In re Speck, 798 F.2d 279, 279-80 (8th Cir. 1986); Gloria Mfg. Corp. v. International Ladies Garment Workers' Union, 734 F.2d 1020, 1021 (4th Cir. 1984); In re Chateaugay Corp., 130 B.R. 162, 164 (S.D.N.Y 1991); see generally Andrew, Executory Contracts in Bankruptcy: Understanding Rejection, 59 U. Colo. L. Rev. 845 (1988) (executory contract means "simply a contract under which (a) debtor and non-debtor each have unperformed obligations and (b) the debtor, if it ceases further performance, would have no right to the other party's continued performance"); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 347 (1977)("[t]hough there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides."). However, some courts have begun to move away from Countryman's approach and have adopted a "functional approach" which works "backward from an examination of the purposes to be accomplished by rejection, and if they have already been accomplished then the contract cannot be executory." See, e.g., In re Magness, 972 F.2d 689, 693 (6th Cir. 1992); In re Cardinal Indus., Inc., 146 B.R. 720 (Bankr. S.D. Ohio 1992) (discusses how 6th Circuit has adopted both Countryman definition and functional approach); In re General Dev. Corp., 177 B.R. 1000, 1013 (S.D. Fla. 1995); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 703, 708 n.24 (Bankr. S.D.N.Y. 1992).

B. Is the contract "executory"?

1. Contracts where performance remains due on both sides are executory. See, e.g., In re Columbia Gas Sys., Inc., 50 F.3d 233 (3d Cir. 1995) (settlement agreement may be an executory contract); Matter of C & S Grain Co., 47 F.3d 233, 237 (7th Cir. 1995) ("For the purposes of the Bankruptcy Code, an executory contract is one in which the obligations of each party remain substantially unperformed. Consequently, when the debtor ... has breached the contract pre-petition with the result that the other party has no further duty to perform, ... the contract is no longer executory for purposes of section 365."); In re Spectrum Information Technologies, Inc., 190 B.R. 741, 747 (Bankr. E.D.N.Y. 1996) ("contracts where one party has completed performance are excluded from the ambit of section 365"); In re Hooker Investments, 145 B.R. 138, 144 (Bankr. S.D.N.Y. 1992) (employment contracts are executory contracts); Compare Texaco Inc. v. Louisiana Land and Exploration Co., 136 B.R. 658 (M.D. La. 1992) (state mineral lease is executory contract) with In re Philbeck, 145 B.R. 870 (Bankr. E.D. Ky. 1992) (coal lease not executory contract).

18

2. Contracts in which one party has no post-petition obligation or no obligation other than the payment of money are not executory. See In re Munple, Ltd., 868 F.2d 1129 (9th Cir. 1989) (real estate brokerage commission agreement not executory even though payment of fee was conditioned upon closing of sale); In re Newcomb, 744 F.2d 621, 624 (8th Cir. 1984); Chesapeake Fiber Pkg. v. Sebro Packaging Corp., 143 B.R. 360 (D. Md. 1992) (agreements conveying patent rights are not executory contracts); In re Spectrum Information Technologies, Inc., 190 B.R. 741, 748 (Bankr. E.D.N.Y. 1996) ("where the only performance that remains is the payment of money, the contract will not be found to be executory"); In re F.B.F. Indus., Inc., 165 B.R. 544, 549 (Bankr. E.D. Pa. 1994) (promissory notes are not executory contracts); In re U.S. Metalsource Corp., 163 B.R. 260, 269 (Bankr. W.D. Pa. 1993) (terminable-at-will employment contracts are not executory contracts because debtor's only legal obligation is to pay severance pay); In re Chateaugay Corp., 102 B.R. 335, 348 (Bankr. S.D.N.Y. 1989) (safe harbor leasing and tax benefit transfer agreements not executory contracts or unexpired leases); In re Structurlite Plastics Corp., 86 B.R. 922 (Bankr. S.D. Ohio 1988); In re Wisconsin Barge Line, 76 B.R. 695 (Bankr. E.D. Mo. 1987) (contracts under which debtors' only duty was to pay retrospective premiums were not "executory").

3. A contract substantially performed is not executory. In re Pacific Exp. Inc., 780 F.2d 1482, 1487 (9th Cir. 1986); In re Sundial Asphalt Co., 147 B.R. 72, 80 (E.D.N.Y. 1992) (contract for sale of land ceases to be executory when court issues decree of specific performance); In re Norwood Chevrolet Co., 143 B.R. 804 (Bankr. D.R.I. 1992) (substantial performance by both parties precludes rejection of contract); Compare In re Columbia Gas Sys., 146 B.R. 106 (D. Del. 1992) (court approved settlement which required only "perfunctory acts utilizing preapproved terms and conditions" is not executory contract) and Heartline Farms v. Daly, 128 B.R. 246, 250 (D. Neb. 1990) ("mere formality" remaining for performance "does not represent the kind of significant legal obligation that would render a contract executory") with Cameron v. Pfaff Plumbing and Heating, 966 F.2d 414 (8th Cir. 1992) (crediting the debtor's account for amount of money received significant enough obligation to render contract executory) and In re Walnut Assocs., 145 B.R. 489, 496 (settlement agreement which requires only payment by one party and signing of documents by other party is executory contract).

4. A contract or lease no longer in existence is not executory and cannot be assumed. See In re Stewart Foods, Inc., 64 F.3d 141 (4th Cir. 1995) ("a debtor-in-possession does not have the option of rejecting or assuming non-executory contracts and remains bound by the debtor's obligations under those contracts after the bankruptcy filing."); In re Thompson, 186 B.R. 301, 307 (Bankr. N.D. Ga. 1995) (contract terminated prepetition "cannot be revived solely by virtue of a bankruptcy petition. Filing for bankruptcy relief does not confer new rights on a debtor in regard to [] terminated agreements and a debtor is not permitted to cure his defaults and/or assume such agreements."); In re Coast Cities Truck Sales, Inc., 147 B.R. 674, 677 (D.N.J. 1992); In re Interco Inc., 135 B.R. 634 (Bankr. E.D. Mo. 1992) (abandoned contract not executory); In re B & K Hydraulic Co., 106 B.R. 131 (E.D. Mich. 1989) (life insurance policy which lapsed under its own terms postpetition was not assumable by trustee). However, the termination process must be complete and not subject to reversal. See Moody v. Amoco Oil Co., 734 F.2d 1200 (7th Cir.), cert. denied, 469 U.S. 982 (1984); In re Triangle Lab., 663 F.2d 463 (3d Cir. 1981); In re Iriss, 630 F.2d 1370 (10th Cir. 1980) (contract terminated before filing cannot be assumed or rejected); Ross v. Metro. Dade County, 142 B.R. 193 (S.D. Fla. 1992) (discussing test for whether contract is terminated for § 365 purposes); In re Masterworks, Inc., 100 B.R. 149 (Bankr. D. Conn. 1989) (terminated franchise agreement was executory where time for cure had not expired when bankruptcy was filed). Compare In re Huffman, 171 B.R. 649, 653 (Bankr. W.D. Mo. 1994) (lease terminated prepetition cannot be assumed) with In re Morgan, 181 B.R. 579, 584 (Bankr. N.D. Ala. 1994) (a terminated lease is not the same as an expired lease and may be assumed). A contract is not terminated merely because the debtor defaults or breaches the contract prepetition. In re Nemko, Inc., 163 B.R. 927, 939 (Bankr. E.D.N.Y. 1994).

5. What is the correct time to determine whether a contract is executory is subject to controversy. Compare In re Columbia Gas Sys., Inc., 50 F.3d 233, 240 (3rd Cir. 1995) and in re Kong, 162 B.R. 86, 91 (Bankr. E.D.N.Y. 1993) (both look to when petition is filed) with In re Nemko, Inc., 163 B.R. 927, 935 (Bankr. E.D.N.Y. 1994); In re Broaddus Hosp. Ass'n, 159 B.R. 763, 771 (Bankr. N.D.W.V. 1993) and In re Wang Labs., Inc., 154 B.R. 389 (Bankr. D. Mass. 1993) (determination of whether contract is executory is made by looking at the contract at the time the issue is before the court).

**19**

Put most simply, the arbitrator is the parties officially designated "reader" of the contract. He (or she) is their joint alter ego for the purpose of striking whatever supplementary bargain is necessary to handle the anticipated unanticipated omissions of the initial agreement. Thus, a "misinterpretation" or "gross mistake" by the arbitrator becomes a contradiction in terms. In the absence of fraud or an overreaching of authority on the part of the arbitrator, he is speaking for the parties, and his award is their contract. That is what the "final and binding" language of the arbitration clause says. In sum, the arbitrator's award should be treated as though it were a written stipulation by the parties setting forth their **own definitive construction** of the labor contract."

This thesis that the arbitrator is a contract "reader" helps clarify the proper scope of judicial review of an arbitrator's decision. The explanation of the courts' deference to arbitral awards is not to be found in some unique element of the collective bargaining process. The real explanation is simpler, more profound, and more conventional.

Page - 1141

Courts will ordinarily enforce an arbitral award because it is part of the parties' contract, and, with certain well-recognized limitations, courts are in the business of enforcing contracts. The doctrine that the arbitrator's decision is "final and binding" is qualified in several respects, as I shall discuss later. But, as the parties have given the arbitrator the task of reading the contract, the court need have no qualms about enforcing an award that appears to the court to be at odds with the parties' agreement

conditions applicable in dealing with such craft or class. When any new contract is executed or change is made in an existing contract with any class or craft of its employees covering rates of pay, rules, or working conditions, or in those rates of pay, rules, and working conditions of employees not covered by contract, the carrier shall file the same with the Mediation Board within thirty days after such new contract or change in existing contract has been executed or rates of pay, rules, and working conditions have been made effective. (f) The Mediation Board shall be the custodian of all papers and documents heretofore filed with or transferred to the Board of Mediation bearing upon the settlement, adjustment, or determination of disputes between carriers and their employees or upon mediation or arbitration proceedings held under or pursuant to the provisions of any Act of Congress in respect thereto; and the President is authorized to designate a custodian of the records and property of the Board of Mediation until the transfer and delivery of such records to the Mediation Board and to require the transfer and delivery to the Mediation Board of any and all such papers and documents filed with it or in its possession. ø45 U.S.C. 155¿ SEC. 6. Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes

VerDate Mar 15 2010 10:44 Oct 01, 2019 Jkt 000000 PO 00000 Frm 00017 Fmt 9001 Sfmt 9001
G:\COMP\RAILRETI\RLA.BEL HOLC
      October 1, 2019
      G:\COMP\RAILRETI\RAILWAY LABOR ACT.XML

As Amended Through P.L. 112-95, Enacted February 14, 2012

---

SOURCE: https://www.law.cornell.edu/uscode/text/45/156

45 U.S. Code § 156.Procedure in changing rates of pay, rules, and working conditions
      Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.
(May 20, 1926, ch. 347, § 6, 44 Stat. 582; June 21, 1934, ch. 691, § 6, 48 Stat. 1197.)

---

## BANKRUPTCY COURT DOCUMENTS from CASE NUMBER :11-15463

**Table of contents** for documents that references the court decision and actions.

| | |
|---|---|
| **DOCUMENT NUMBER 1430 -3** | Schedule H Executory Contracts shows Five AA/ TWU CBA Listed Pg.509 SEE Pages 41,42 and 43 |
| **DOCUMENT NUMBER 2726** | This document - PAGE 10 is a "statement of the fact" by the TWU Union ATTORNEY's Sharon Levin-Objections and Statement of Facts that made admission and statement to the "The terms and condition of employment for each employee craft or class are governed by separate collective bargaining agreements between American Airlines and the TWU.          See AA Exhibits 1103-1111. |
| **DOCUMENT NUMBER 4131** | OBJECTIONS by the TWU – the Removal of Station and System Protection page 34. |
| **DOCUMENT NUMBER  4413 –** | ORDER NEW TWU CBA's SETTLEMENT LETTER AND LETTER MEMORANDUM |
| **DOCUMENT NUMBER 12203** | The TWU LAWYER admits New CBA agreements 8 of 14 |
| **DOCUMENT NUMBER  12825** | I give reference to Judge Lane about the LANGUAGE OF LAW PG 10,11,12 |
| **DOCUMENT NUMBER  12975** | OLD CBA REPLACED BY NEW CBA Item8 PAGE 8 ITEM 17 Consistent with the order approving the NEW CBA'S the debtors plan provided TWU receive percentage of STOCK in reorganized DEBTORSI |
| **DOCUMENT NUMBER  13163** | NY LAW WRITTEN AGREEMENT reach consensual agreement - So, goodbye to the OLD Contract and Kasher Awards and its restriction to the TWA PEOPLE seniority under the NEW AA/TWU CBA employment contract. |

**END OF TABLE**

1) **DOCUMENT NUMBER  1430-3  EXECUTORY CONTRACTS PAGE Schedule "H" page 509 OF 566**
   List of the FIVE (5) TWU CBA OF March 2001
   There is no listing of the KASHER AWARDS, I didn't find them!
   SEE PAGES 41,42 and 43
2) **DOCUMENT NUMBER: 2726**      Filed 05/11/12   p 10 of 67 TWU Attorney – SHARON LEVIN

**STATEMENT OF THE FACTS**
Hearing Date:  May 14, 2012 @ 10:00 a.m. (Prevailing Eastern Time)
21721/2 05/11/2012 20503327.2
LOWENSTEIN SANDLER PC Sharon L. Levine S. Jason Teele Paul Kizel Tania Ingman 1251 Avenue of the Americas New York, New York 10020
-- and --
65 Livingston Avenue Roseland, New Jersey 07068 Telephone: 973.597.2500 Facsimile: 973.597.2400
Counsel for Transport Workers Union of America, AFL-CIO
In re: AMR CORPORATION, et al.,
Debtors.
Chapter 11
Case No. 11-15463 (SHL)
(Jointly Administered)

Third and finally, Local 514's position is flawed based on the evidence. Considering the evidence under the shifting burden of proof for claims objections, the contemporaneous evidence indicates that the stock option program expired on April 17, 2013 in accordance with its terms and was not impacted by the CBA process. The Court asked both sides for copies of **any relevant documents or sections of the CBAs** that **indicate a relationship between** the stock option program and the CBAs. None of the relevant documents provided to the Court show a connection

Based upon the evidence that was submitted by the parties, the Court concludes that the
Stock Option Program expired in accordance with its terms on April 17, 2013, that it was not
connected to the CBAs, and that the treatment of the CBAs during the bankruptcy process had no impact upon the program.

3 A separate issue was raised as to whether employees were prevented from exercising their stock options subsequent to the petition date. This issue was raised by Frank Cannizzaro

   3 The parties raised the significance, if any, to language contained in an agreement between the Debtors and the TWU relating to the treatment of certain claims, which provided that certain proofs of claim filed by TWU represented employees would be preserved notwithstanding the parties having entered into new CBAs and releasing certain claims. That language stated:

any and all claims, interests, causes or demands (including all pending grievances) (collectively, the "TWU Claims"), TWU has or might arguably have, on behalf of itself or the Company's employees represented by the TWU pursuant to the Railway Labor Act ("RLA") and the terms of the existing collective bargaining agreements (the [Old CBAs]) . . . against the Debtors arising prior to the [e]ffective [d]ate . . . of this [l]etter [a]greement shall be automatically fully, finally, and completely released, expunged and extinguished. Notwithstanding the foregoing, (except for the claims listed on Exhibit A) the TWU Claims shall not include claims asserted in any proofs of claim actually filed in the Bankruptcy Cases by or on behalf of TWU represented employees (the "Excluded Claims"). The Excluded Claims shall be administered and resolved pursuant to the claims resolution process in the Bankruptcy Cases and the parties reserve all of their rights with respect to the Excluded Claims.

Letter re: Settlement Consideration and Bankruptcy Protections, dated August 22, 2012 (attached as Exhibit D to the Debtors' Objection to Proofs of Claim. Nos. 7639, 11037, and 12520). The Court finds that this language does not impact the validity of the claims in question. It does not provide that the preserved claims were otherwise valid or invalid. All the language means is that the preserved claims would now be subject to the claims process in these bankruptcy proceedings. See September 25 Hr'g Tr. 49:18-56:25.

11-15463-shl   Doc 13163   Filed 12/10/18   Entered 12/10/18 11:14:54   Main Document

Pg 7 of 21

        Based upon the evidence that was submitted by the parties, the Court concludes that the
        Stock Option Program expired in accordance with its terms on April 17, 2013, *that it was not
        connected to the CBAs,* and that the treatment of the CBAs during the bankruptcy process had
        no impact upon the program.3

        SO, if the contract does not show that its part of it, then it is a separate agreement/ contract of
        employment, that must undergo the Federal Bankruptcy Codes, Rules and Procedures- because
        *it's the LAW*!

PG 15 OF 21

pay for the retiree medical if they would be on the hook for that. Nor were the employees who approved the renegotiated CBAs told that. Certainly, there was no criterion in the renegotiated CBAs as to what kind of resolution would result in non-payment by the company; this is because any resolution would result in the agreed-to payout. Statement of Sam Cirri, dated September 11, 2018 [ECF No. 13049-1]. But the Court need not rely upon this parole evidence regarding

the negotiation process because the language of the final agreement between the parties is clear.  See WWW.Assocs. v. Giancontieri, 77 N.Y.2d 157, 162-63 (1990) ("It is well settled that extrinsic and parole evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.").  That document stated that distribution of the matching funds to employees was "contingent on the successful resolution of the Section 1114 process" and both the Debtors and the TWU agreed to arbitrate the issue of whether voluntary dismissal constituted "successful resolution," an issue that the TWU lost before the arbitrator.  See Appendices A, B, and C to the 12/27 Arbitration Opinion (attached as Exhibit 2 to Declaration of Douglas Cotton); see also September 25th Hr'g Tr. 88:11-91:24.

Local 514 argued that the December 27th arbitration opinion reserved a ruling on the successful resolution of the Section 1114 process to a later date, and that this Court's agreed order expunging the Retiree Committee proofs of claim was somehow a "resolution of the Section 1114 process."  Supplemental Response of Local 514 to Objection to Proof of Claim Number 7639 at 10 or that it somehow triggered a new Section 1114 process.  See September 25th Hr'g Tr. 91:7-13.

The Court finds that there never has been a true Section 1114 process before this Court, and that the one proceeding implicating Section 1114 rights—the adversary proceeding—was voluntarily dismissed, a result that the arbitrator already determined did not trigger the release of

**PAGE 19**

The evidence establishes that the Debtors did not abrogate the TWU and APFA CBAs under Section 1113 of the Bankruptcy Code.  Instead, the TWU, the APFA and the Debtors reached a consensual agreement on a new CBA.  See In re AMR Corp., 477 B.R. 384, 393, 405 n.12 (Bankr. S.D.N.Y. 2012); In re AMR Corp., 478 B.R. 599, 602 (Bankr. S.D.N.Y. 2012).  As such, any rights under the old CBA —as compared to the new CBA—were the subject of a bargaining process and not a unilateral decision to abrogate or reject the CBA by the Debtors.

Thus, there was no unilateral termination of rights by the Debtors that would serve as a basis for the claim being asserted. Even if this were not the case, termination of a CBA in the context of Section 1113 does not give rise for a claim to damages, as noted previously.  See Northwest Airlines Corp. v. Ass'n of Flight Attendants-CWA (In re Northwest Airlines Corp.), 483 F.3d 160, 172 (2d Cir. 2007); In re Northwest Airlines Corp., 366 B.R. 270, 275-76 (Bankr. S.D.N.Y. 2007).  And, as previously discussed, this retiree adversary proceeding was voluntarily dismissed by the Debtors with prejudice.  See Adv. Proc. No. 12-01744, ECF No. 78.  The plain language of the Plan and the Confirmation Order provide that upon termination of the Section 1114 retiree adversary proceed, any remaining vested retiree benefits would be treated in accordance with Section 1129(a)(13) of the Bankruptcy Code.  The Debtors reiterated that they will comply with Section 1129(a)(13), that expungement of these claims will not affect the rights of any affected individual retiree.

**Page 21 of 21**

Last but not least, the Court would like to thank the individual employees and retirees who participated in the various hearings on these claim objections. They spent a considerable amount of time and effort on it and represented themselves well.  The Court regrets not having better news in connection with these claim objections.  Regrettably, a reorganization under Chapter 11 often leads to difficult results for employees of a company even where, as here, the company exits the bankruptcy process successfully.  Moreover, it can be difficult and confusing to follow the changes for employees during a case, particularly one as complicated as this where there were ongoing negotiations for years while new CBAs were being negotiated and before the Plan of Reorganization—and related merger—were approved.

The Debtors should serve a copy of this Modified Bench Ruling upon all the parties who submitted any filings in connection with any of these objections or who appeared at any of the hearings relating to these objections, either in person or telephonically.

The Court will enter a separate order consistent with this decision.

Dated: New York, New York December 10, 2018      /s/ Sean H. Lane      UNITED STATES BANKRUPTCY JU

**END OF BANKRUPTCY DOCUMENTS**

NOW, THEREFORE, AA, TWU, and IAM agree as follows:

1.       The Arbitration provided for herein shall be conducted pursuant to provisions of Article I(h) of the MR CBA, Article 1 (e) of the FS CBA, Article I(f) of the SC CBA, and Article I(e) of the FST CBA, all dated March 1, 2001 (copies of which are appended hereto).

2.       The Parties to the arbitration shall be AA, TWU, and IAM.

3.       IAM will participate in the arbitration pursuant to Article I (h) of the MR CBA, I(e) of the FS CBA, Article I(f) of the SC CBA, and Article I(e) of the FST CBA, and based upon the IAM's current status as the representative of the Mechanics and Related

Employees of TWA-LLC, including Fleet Service, Stock Clerk, and Flight Simulator

Technicians personnel on TWA-LLC. Neither this agreement nor participation in the arbitration by the IAM shall constitute recognition of the IAM as the representative of any group of AA employees. Nor shall participation in the arbitration by the TWU constitute representation by the TWU of TWA-LLC employees prior to the date of a determination by the National Mediation Board that AA and TWA-LLC are a single carrier for representation purposes. In the event that prior to the conclusion of this arbitration the National Mediation Board determines AA and TWA-LLC to be a single carrier for purposes of representation, then the participation of the IAM as the representative of the respective groups of former TWA-LLC employees shall continue for the sole purpose of representing these groups in this seniority integration arbitration, and post award, in any subsequent proceedings before the Arbitrator under Paragraph 17.

4.       The Parties have selected Richard Kasher of Bryn Mawr, Pennsylvania as the Arbitrator, who shall preside and act individually without panel members.

5.       The Arbitration shall be organized and conducted pursuant to Article I(h) of the MR CBA, Article 1 (e) of the FS CBA, Article I(f) of the SC CBA, and Article I(e) of the FST CBA, and the standards and procedures respectively of Sections 3 and 13 of Allegheny. -

Mohawk, 59 CAB 22 (1972). Specifically, Article I(h) of the MR CBA, Article I(e) of the FS CBA, Article I(f) of the SC CBA, and Article 1 (e) of the FST CBA provide:

"(1) The integration of seniority lists of the respective employee groups will be governed by the provisions of Sections 3 & 13 of Allegheny —Mohawk, 59 CAB 22 (1972), provided that no employee on the master seniority list will be adversely impacted in rates of pay, hours, or working conditions by the integration.

(2) The rates of pay, rules, and working conditions contained in the Basic Agreement, as amended, will not be open for collective bargaining in the event of a merger nor will the TWU or the Company have any obligation to bargain upon changes thereto, except as provided in Article 47 — Duration of the Basic Agreement."

6. In his Award, the Arbitrator shall confine himself strictly to a decision on the question:

How the system seniority lists of each of the respective employee groups shall be integrated for purposes of occupational seniority in light of the applicable provisions of    the AA-TWU collective bargaining agreements? -3M

The question submitted to the Arbitrator for decision may be modified or withdrawn from arbitration at any time prior to the Arbitrator's making of his Award on notice to that effect signed by the duly accredited representatives of all of the parties hereto and served on the

Arbitrator.

 The Arbitrator shall have authority only to integrate the respective system seniority lists into single system seniority lists, and shall not have authority to amend the AATWU collective bargaining agreements.

8.       The Arbitrator shall conduct hearings on February 27-28, 2002 and March 1, 2002 in Philadelphia, Pennsylvania.

9.       As the initial step in the arbitration proceedings, the Arbitrator may hold a pre-hearing conference (or teleconference) to establish the rules of procedure, receive stipulations, set time limits, define issues, set the order of proof on issues, and handle any other pre-hearing matters.

10.      The Arbitrator shall give each party a full and fair hearing during February

27-28 and March 1, 2002, which shall include an opportunity to present testimony and documentary evidence on all of the issues, and an opportunity to present their case in person, by counsel, or by other representatives as they may respectively elect. The order of presentation shall be: TWU, IAM, AA. All Parties understand the need for expedition of these proceedings and all Parties will endeavor to make their presentations as quickly and expeditiously as possible.

11.     All testimony before the Arbitrator shall be given under oath or affirmation, and the Arbitrator shall have the power to administer oaths or affirmations. The Arbitrator shall have the power to require the attendance of witnesses and the production of such books, papers, contracts, agreements, and documents as may be deemed by the Arbitrator material to a just determination of the matters submitted to arbitration.

12.     The Arbitrator shall make and file his Award as expeditiously as possible, but not later than thirty (30) days following the closing of hearings, Provided, however, that pursuant to Allggbgny.:MQha.y.k the Parties hereto may agree, at any time prior to the making of such Award, to extend such period or, and to set conditions for such extension.

13.     Prior to issuing the final Award, the Arbitrator may contact any of the parties for the purpose of clarifying their respective positions or otherwise gathering information he deems pertinent.

14.     The Arbitrator's Award shall become effective on the date or dates fixed by the Arbitrator, and shall remain in effect until such time as **the Parties voluntarily change the terms of this Award**. The merged lists as determined by the Arbitrator shall be implemented by AA on the dates of the respective operational integration of Mechanics and Related, Fleet

Service, Stock Clerk, and Flight Simulator Technician Employees, as designated by AA.

15.     **The integrated lists shall not result in a change in the relative position of AA employees,** or of TWA-LLC employees, on their respective pre-integration lists.

16.     **Pursuant to the terms of the AA-TWU collective bargaining agreements, the Award shall be final, *binding, and conclusive upon the Parties*.**

17.     Any difference arising as to the meaning or the application of the provisions of an Award made by the Arbitrator ***shall* be *referred back for a ruling to the same Arbitrator***, and any such ruling shall be part of and shall have the same force and effect as the original Award. No question other than, or in addition to, the questions relating to the meaning or the application of the Award shall be considered by the Arbitrator.

18.     AA, TWU, and IAM will each faithfully execute the Award.

 19. The Parties hereto shall bear their own costs and expenses as it relates to the presentation of their respective cases including, but not limited to, the costs of presenting testimony, evidence, and any respective counsel fees relating thereto. The costs of the

Arbitrator, including his daily compensation rate and expenses, will be divided equally by the Parties. The Parties will also share in the costs of a court reporter, preparation of a transcript, conference facilities, and other joint miscellaneous expenses that may arise during the conduct of the Arbitration.

20.     This agreement shall not be revoked by any Party, provided, however, that this agreement may be revoked or canceled at any time by the written agreement of AA, TWU, and IAM, that is signed by their respective duly accredited representatives and delivered to the

Arbitrator.

21.     This agreement embodies the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings relevant to the subject matter hereof. No amendments, waivers, or modifications to this agreement are to be effective unless executed by the Parties' duly accredited representatives in a writing referring to this agreement.

_[signature]_

Transport Workers Union ("TWU")

_[signature]_

International Association of Machinists ("IAM")

_[signature]_

Richard Kasher

# AMR CORPORATION, *et al.*
## GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS
### February 27, 2012

On November 29, 2011 (the "**Commencement Date**"), AMR Corporation ("**AMR**") and its subsidiaries American Airlines Realty (NYC) Holdings, Inc.; American Airlines, Inc. ("**American Airlines**"); AMR Eagle Holding Corporation; Americas Ground Services, Inc.; PMA Investment Subsidiary, Inc.; SC Investment, Inc.; American Eagle Airlines, Inc.; Executive Airlines, Inc.; Executive Ground Services, Inc.; Eagle Aviation Services, Inc.; Admirals Club, Inc.; Business Express Airlines, Inc.; Reno Air, Inc.; AA Real Estate Holding GP LLC; AA Real Estate Holding L.P.; American Airlines Marketing Services LLC; American Airlines Vacations LLC; American Aviation Supply LLC; and American Airlines IP Licensing Holding, LLC (collectively, the "**Debtors**") commenced cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only under case number 11-15463 (SHL) pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## OVERVIEW OF GLOBAL NOTES

Each of the Debtors has herewith filed separate Schedules of Assets and Liabilities ("**Schedules**") and Statements of Financial Affairs ("**Statements**"). These Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding Debtors' Schedules and Statements ("**Global Notes**") relate to each of the Debtors' Schedules and Statements and set forth the basis upon which the Schedules and Statements are presented. **These Global Notes comprise an integral part of the Schedules and Statements and should be referred to and considered in connection with any review of the Schedules and Statements.** The Global Notes are in addition to any specific notes contained in any Debtor's Schedules or Statements. Information in these Global Notes is presented on an individual Debtor-by-Debtor basis unless otherwise noted. Disclosure of information in one Schedule, Statement, exhibit, or continuation sheet, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit, or continuation sheet.

**The Schedules, Statements, and Global Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors.**

The Schedules and Statements have been prepared pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 by the Debtors' management with the assistance of their advisors. Financial information is presented on an unaudited basis. While management has made reasonable efforts to ensure that the Schedules and Statements are accurate and complete based on information that was available to them at the time of preparation, subsequent information or discovery may result in material changes to the Schedules and Statements, and inadvertent errors or omissions may exist. Moreover, the Schedules and Statements contain unaudited information, which is subject to further review and potential adjustment. Nothing contained in the Schedules and Statements shall constitute a waiver of any of the Debtors' rights with respect to the chapter 11 cases, including with respect to any issues involving substantive consolidation, recharacterization, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets or avoid transfers.