UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:

AMR CORPORATION, *et al.*,

Reorganized Debtors.

------------------------------------------------------------x

Chapter 11

Case No. 11-15463 (SHL)

Confirmed

## MEMORANDUM OF DECISION

**A P P E A R A N C E S :**

**WEIL, GOTSHAL & MANGES LLP**
*Attorneys for Reorganized Debtors*
700 Louisiana Street, Suite 1700
Houston, Texas 77002
By:   Alfredo R. Perez, Esq.
          Hillarie James, Esq.

**LAWRENCE M. MEADOWS**
*Pro Se*
P.O. Box 4344
Park City, Utah 84060

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of the above-captioned debtors (the "Reorganized Debtors") under Section 502(c) of the Bankruptcy Code to estimate the amount of Claim No. 9676, which was filed by the U.S. Equal Employment Opportunity Commission (the "EEOC") in the Reorganized Debtors' Chapter 11 cases. *See Reorganized Debtors' Motion to Estimate Maximum Amount of Proof of Claim No. 9676 Under Bankruptcy Code Sections 105(a) and 502(c)* [ECF No. 13289][1] (the "Estimation Motion"). The Reorganized Debtors request to

---

[1]   Unless otherwise indicated, references to the Case Management/Electronic Case Filing ("ECF") docket are to Case No. 11-15463.

1

estimate the maximum amount of the claim at $9.95 million, which matches the settlement amount agreed to by the parties in an action brought by the EEOC against American Airlines, Inc and Envoy Air, Inc., one of American's regional carriers. The Estimation Motion is opposed by Lawrence M. Meadows, a former pilot for American Airlines. *See Creditor Lawrence M. Meadows Response and Objection to Reorganized Debtors' Motion to Estimate Maximum Amount of Proof of Claim No. 9676 Under Bankruptcy Code Sections 105(a) & 502(c)* [ECF No. 13297] (the "Meadows Objection").[2] For the reasons set forth below, Mr. Meadows' objection is overruled and the Estimation Motion is granted.

## BACKGROUND

On November 29, 2011 (the "Petition Date"), the Reorganized Debtors filed for relief under Chapter 11 of the Bankruptcy Code. *See Voluntary Petition* [ECF No. 1]. On October 21, 2013, the Court entered an order confirming the Debtors' Amended Joint Chapter 11 Plan (the "Plan"), and the Plan became effective on December 9, 2013 (the "Effective Date"). *See Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Fourth Amended Joint Chapter 11 Plan* [ECF No. 10367]; *Notice of (I) Entry of Order Confirming Debtors' Fourth Amended Joint Chapter 11 Plan and (II) Occurrence of Effective Date* [ECF No. 11402].

In November 2017, the EEOC brought a case against American Airlines and Envoy Air

---

[2] A letter filed by Sherrie Edwards-Redd is styled as an objection to the Estimation Motion. But it is unclear whether Ms. Edwards-Redd's letter actually objects to the relief requested in the Estimation Motion. On the one hand, the letter states that the Reorganized Debtors should "be held ACCOUNTABLE and have to pay in full the money owed to the EEOC SHERRIE EDWARDS-REDD AND OTHERS . . .", but it also requests that the Court "approve the origin [sic] agreement made by the EEOC and AMR CORPORATION, et al., in Case No. 11-15463." *Letter of Sherrie Edwards-Redd*, dated March 18, 2021 [ECF No. 13292] (capitalization in original); *see also Letter of Sherrie Edwards-Redd*, dated May 25, 2021 [ECF No. 13325]. But there is nothing in Ms. Edwards-Redd's letters that provides a basis for denying the Estimation Motion.

2

in the United States District Court for the District of Arizona, titled *Equal Employment Opportunity Commission v. American Airlines, Inc. and Envoy Air Inc.*, No. 2:17-cv-04059-SPL (the "EEOC Lawsuit").  *See* Consent Decree ¶¶ 1-2, attached as Exhibit B to the Estimation Motion [ECF No. 13289] (the "Consent Decree"); *see also Declaration of D. Douglas Cotton Regarding Reorganized Debtors' Motion to Estimate Maximum Amount of Proof of Claim No. 9676 Under Bankruptcy Code Sections 105(a) and 502(c)* ¶ 4, attached as Exhibit D to the Estimation Motion [ECF No. 13289] (the "Cotton Declaration").  The EEOC Lawsuit asserted claims against American and Envoy for alleged violations of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 for a period of time that ran from prior to the Petition Date until after the Effective Date.  *See* Consent Decree ¶ 1; Cotton Decl. ¶ 4.  The EEOC alleged that American and Envoy had nationwide patterns and practices that violated the Americans with Disabilities Act, including a 100% return-to-work policy that required employees to return to work without restrictions.  *See id.*  The EEOC Lawsuit was filed on behalf of 13 current and former employees of American and Envoy that had filed charges of discrimination with the EEOC (the "Charging Parties"), as well as a nationwide group of potential claimants that American and Envoy estimate includes approximately 1,500 individuals.  *See* Consent Decree ¶¶ 13-14, 18; Cotton Decl. ¶ 5.

The EEOC filed Claim No. 9676 (the "EEOC Proof of Claim") in American's bankruptcy case, in an unsecured unliquidated amount.  *See* Estimation Motion, Exhibit A.  Three of the Charging Parties—Darla Alvarado, Sherrie Redd and Micah Peterson—also filed individual claims against American (collectively with the EEOC Proof of Claim, the "Consent Decree Claims").  *See Motion of Debtors for Entry of Order Pursuant to Fed. R. Bankr. P. 9019(a)*

3

*Approving Settlement Agreement Resolving Certain Pending EEOC Litigation* [ECF No. 12861] (the "Settlement Motion"), Exhibits B, C, and E.[3]

On the same day that the EEOC Lawsuit was filed, the parties to that litigation—American, Envoy and the EEOC—moved before the Arizona District Court for approval of the Consent Decree, which comprised the parties' settlement of the EEOC Lawsuit. *See* Consent Decree ¶¶ 1-5; Cotton Decl. ¶¶ 6. The Arizona District Court approved the Consent Decree in November 2017. *See* Cotton Decl. ¶ 7. Mr. Meadows filed an appeal in the EEOC Lawsuit and the Court of Appeals for the Ninth Circuit affirmed the Arizona District Court. *See generally* EEOC Lawsuit Docket; *see also* Hr'g Tr. 30:4-8 (June 7, 2021).

The Consent Decree, among other things, provided the EEOC with an allowed claim of $9.8 million in the Reorganized Debtors' bankruptcy cases, to be distributed among the 13 Charging Parties and approximately 1,500 potential claimants. *See* Consent Decree ¶¶ 17-20. The Consent Decree also provided for $150,000 in fees to be paid to the administrator of the settlement. *See id.* ¶ 22. In exchange for this consideration, each of the Consent Decree Claims would be deemed satisfied and expunged with prejudice. *See id.* ¶ 21. The Consent Decree provided that it would only become effective after entry of a final and non-appealable order entered in the Reorganized Debtors' bankruptcy cases approving the Consent Decree. *See id.* ¶ 8.

After receiving approval of the Consent Decree from the Arizona District Court, the Reorganized Debtors sought approval of the Consent Decree in this Court under Federal Rule of Bankruptcy Procedure 9019(a). *See generally* Settlement Motion [ECF No. 12861]. This Court

---

[3]    Ms. Alvarado filed Proof of Claim No. 727 in the priority amount of $10,000, Ms. Redd filed Proof of Claim No. 7355 in the priority amount of $155,297.04, and Mr. Peterson filed Proof of Claim No. 10774 in the priority amount of $12,428.50, and the unsecured amount of $27,571.50. *See* Settlement Motion, Exhibits B, C, and E.

granted the Settlement Motion and entered an order approving the Consent Decree in May 2018. *See Agreed Order Pursuant to Fed. R. Bankr. P.9019(a) Approving Settlement Agreement Resolving Certain Pending EEOC Litigation* [ECF No. 12898] (the "Settlement Order"). Among other things, the Settlement Order authorized the Reorganized Debtors and their claims agent to update the claims register in accordance with the Consent Decree. *See id.* This resulted in the Consent Decree Claims being expunged and/or deemed satisfied and a new EEOC claim being filed in the agreed amount of $9.8 million (the "New EEOC Claim"), to reflect the settlement set forth in the Consent Decree. *See id.*

Mr. Meadows filed an appeal of the Settlement Order, and that appeal is currently pending in the District Court for the Southern District of New York. *See Notice of Appeal of Creditor Lawrence M. Meadows* [ECF No. 12912]; *Meadows v. AMR Corp. (In re AMR Corp.)*, No. 18-06149 (RA) (S.D.N.Y. July 6, 2018). Mr. Meadows subsequently filed a motion asking this Court to expunge the New EEOC Claim and reinstate the Consent Decree Claims on the grounds that the Consent Decree had not gone effective due to Mr. Meadows' ongoing appeal of the Settlement Order. *See Creditor Lawrence M. Meadows Motion to Enforce this Court's Agreed Order Signed on 5/16/2018, Approving Settlement Agreement Resolving Certain Pending EEOC Litigation [Doc 12898], and to Compel Debtors AMR Corp., American Airlines, Inc., Envoy Air, Inc., and Claims Agent GCG Inc.'s Compliance Thereof* [ECF No. 13078]. As the Consent Decree had not yet been approved in this Court by a final, non-appealable order, the Court granted Mr. Meadows' request, resulting in the reinstatement of the Consent Decree Claims and removal of the New EEOC Claim from the claims register. *See Order Granting Motion to Enforce this Court's Agreed Order Signed on 5/16/2018, Approving Settlement Agreement Resolving Certain Pending EEOC Litigation (Doc 12898), and to Compel Debtors*

5

*AMR Corp., American Airlines, Inc., Envoy Air, Inc. and Claims Agent GCG, Inc.'s Compliance Thereof* [ECF No. 13215].

Because the Settlement Order is still on appeal, the Consent Decree has not yet become effective. As a result, there has been no distribution by the Reorganized Debtors for the benefit of the Charging Parties or any of the potential claimants under the Consent Decree. In addition, the delay in the Consent Decree becoming effective has prevented any further distributions in the Reorganized Debtors' bankruptcy proceeding due to the need to hold monies in reserve with respect to the Consent Decree Claims, since the EEOC Proof of Claim remains pending on the claims register in an unliquidated amount until the Settlement Order becomes final. *See* Hr'g Tr. 30:14-20 (June 7, 2021) (noting that other claimants, primarily old equity, have been waiting for distribution). The Consent Decree Claims account for 4 of the 18 remaining claims that the Reorganized Debtor must resolve before closing out their cases that have been pending for almost a decade. *See Claims Update for June 7, 2021 Hearing*, Exhibit 1 [ECF No. 13328]; *see also* Hr'g Tr. 30:5-8 (June 7, 2021) (noting that resolution of the EEOC Proof of Claim is one of the few things preventing closing of the Reorganized Debtors' cases); Cotton Decl. ¶ 9. The Reorganized Debtors will continue to accrue U.S. Trustee fees during the time period that these bankruptcy cases remain open; these fees are significant and have totaled approximately $8.1 million to date. *See Claims Update for June 7, 2021 Hearing*, Exhibit 1. Approval of the Estimation Motion would put the Reorganized Debtors in a position to make a distribution and close out these bankruptcy cases, which will save a significant amount in future U.S. Trustee fees. *See* Hr'g Tr. 27:14-20 (June 7, 2021).

The Reorganized Debtors now request that the EEOC Proof of Claim be estimated in the amount of $9.95 million, to match the settlement consideration of $9.8 million for claimants and

6

$150,000 in fees in the Consent Decree that has been approved by the Arizona District Court and this Court.  Mr. Meadows objects to this relief, arguing that the Settlement Order is still on appeal and therefore the Consent Decree is not final and effective.  Additionally, Mr. Meadows argues that the Reorganized Debtors' estimation of the claim is flawed and not in accordance with the Bankruptcy Code or practices in this jurisdiction, asserting that there is not sufficient evidence on which to base a reasonable estimate.

## DISCUSSION

### A. Applicable Legal Standard

Section 502(c) of the Bankruptcy Code provides that a court may estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ."  11 U.S.C. § 502(c)(1).  Claims estimation provides "a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine."  *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003); *see also In re Continental Airlines, Inc.*, 981 F.2d 1450, 1461 (5th Cir. 1993) (noting that two purposes of Section 502(c)(1) are to "avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions," and to "promote a fair distribution to creditors through a realistic assessment of uncertain claims").  "Estimation is effective . . for enabling bankruptcy cases, and chapter 11 cases in particular, to move forward and to get recoveries into the pockets of creditors without delaying the whole process as a consequence of a limited number of very complex claims."  *In re Adelphia*, 341 B.R. at 423.

The estimation process under Section 502(c)(1) has been used for numerous purposes, including determining voting rights on a plan of reorganization, evaluating plan feasibility, determining the aggregate amount of a series of claims, setting claims distribution reserves, or allowing claims, including the estimation of post-petition administrative claims.  *See id.* at 422–23 (noting that estimation of administrative claims was "necessary and appropriate, because, in the absence of estimation, 'the fixing or liquidation of' those claims 'would unduly delay the administration of the case.'") (quoting 11 U.S.C. § 502(c)); *see also In re Chemtura Corp.*, 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011); *In re MacDonald*, 128 B.R. 161, 164–65 (Bankr. W.D. Tex. 1991) ("Courts have . . . assumed that the estimation process in Section 502(c) may be equally employed for estimating post-petition claims, when necessary to avoid delaying the administration of the bankruptcy case[.]").

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure provide guidelines for the estimation of claims. *In re Chemtura*, 448 B.R. at 648.  But it is well established that a court has discretion when estimating claims, guided by the legal rules that govern the ultimate value of the claim and the general principles that inform all decisions made under the Bankruptcy Code.  *See id.* at 648-49.  "For both procedure and analytical methodology, bankruptcy courts may use whatever method is best suited to the contingencies of the case." *Id*. at 649.  This is "so long as the procedure is consistent with the fundamental policy of Chapter 11 that a reorganization 'must be accomplished quickly and efficiently.'"  *In re Adelphia Communs. Corp.*, 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007).  Importantly "[t]he court need not don the garb of the clairvoyant; rather, all that is required is a rough estimate." *In re Chemtura*, 448 B.R. at 649.  Indeed, the Second Circuit has stated that courts should make a "speedy and rough estimation of [the] claims for purposes of determining [claimant's] voice in the Chapter 11

8

proceedings ..." *In re Chateaugay Corp.*, 944 F.2d 997, 1006 (2d Cir. 1991). Most importantly, "[a]n estimate necessarily implies no certainty; it is not a finding or a fixing of an exact amount. It is merely the court's best estimate for the purpose of permitting the case to go forward and thus not unduly delaying the matter." *In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994) (quoting *In re Nova Real Estate Inv. Trust*, 23 B.R. 62, 66 (Bankr. E.D. Va. 1982)).

The procedures used for estimating claims vary, and have included a summary trial, a full-blown evidentiary hearing, or the review of pleadings and briefs followed by oral argument of counsel. *See In re Adelphia*, 341 B.R. at 422-23 (internal citations omitted); *see also In re Windsor*, 170 B.R. at 520; *In re Lane*, 68 B.R. 609, 613 (Bankr. D. Haw. 1986) (estimating claims after "review[ing] the numerous pleadings and briefs of the debtor and [the creditors]"). "In so doing, courts specifically have recognized that it is often 'inappropriate to hold time-consuming proceedings which would defeat the very purpose of 11 U.S.C. § 502(c)(1) to avoid undue delay.'" *In re Adelphia*, 341 B.R. at 432. (quoting *In re Windsor*, 170 B.R. at 520); *see also In re Lionel L.L.C.*, 2007 WL 2261539, at *5 (Bankr. S.D.N.Y. Aug. 3, 2007). Thus, a truncated process under Section 502(c) "has been found to be consistent with the dictates of due process of law." *In re Lionel*, 2007 WL 2261539, at *5 (citing *In re FRG, Inc.,* 121 B.R. 451, 456 (Bankr. D. Pa. 1990); *In re Apex Oil Co.,* 92 B.R. 843, 845–47 (Bankr. E.D. Mo.); *In re Baldwin–United Corp.,* 55 B.R. 885, 899–902 (Bankr. S.D. Ohio 1985)).

As for the substantive process of estimating claims, estimation requires "sufficient evidence on which to base a reasonable estimate of the claim[.]" *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982). In the Southern District of New York, courts will "estimate the expected value of a claim based on the probability of the success of various

9

potential outcomes if decided on the merits." *In re Chemtura*, 448 B.R. at 650 (citations omitted); *see also In re Thomson McKinnon Secs., Inc.*, 191 B.R. 976, 989–90 (Bankr. S.D.N.Y. 1996). With respect to disputed facts in a claims estimation analysis,

> An estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact. The estimated value of a claim is then the amount of the claim diminished by probability that it may be sustainable only in part or not at all . . . Recognizing that the magnitude of recovery is to a large extent dependent upon the individual backgrounds of the triers of the facts, what we are given to deal with is a range of possible awards which we must first turn into a range of probable awards running from zero to the full amount of the claim. An *expected value* can then be found by multiplying a number of possible recovery values by the probability of their occurrence and taking the sum of these products.

*In re Chemtura*, 448 B.R. at 650 (quoting *In re Windsor*, 170 B.R. at 521) (emphasis in original).

As for disputed legal issues in an estimation analysis,

> the parties' legal arguments must be evaluated not for the probability that they have merit, but rather for their correctness as a matter of governing law. *In re Thomas McKinnon Securities*, 191 B.R. at 979 (in estimating a claim, court is "bound by the legal rules which may govern the ultimate value of the claim").

*In re Chemtura*, 448 B.R. at 651 (quoting *In re Ralph Lauren Womenswear*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996)). In some circumstances, courts will also factor in the possibility of an appellate reversal. *See In re Chemtura*, 448 B.R. at 651.

### B. Estimation of EEOC Proof of Claim

#### 1. Rationale for Estimation

The Court finds that estimating the EEOC Proof of Claim in the amount of $9.95 million is consistent with the purposes of Section 502, which explicitly provides for the estimation of an unliquidated claim, the fixing or liquidation of which would otherwise unduly delay the administration of the case. *See* 11 U.S.C. § 502(c). The estimation of the EEOC Proof of Claim

will put an end to the more than three years of delay since the Consent Decree was approved by the Arizona District Court, thus providing "a means for a bankruptcy court to achieve . . . distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine." *In re Adelphia*, 341 B.R. at 422.  In making this determination, the Court takes into consideration the real world consequence of this delay, including the interruption in distributions by the Reorganized Debtors to both claimants and shareholders.  *See* Hr'g Tr. 30:14-20 (June 7, 2021).  Indeed, numerous parties in the Reorganized Debtors' cases have taken note of this delay and requested that the Court put an end to it.  *See, e.g., Letter of Sherrie Edwards-Redd*, dated May 25, 2021 [ECF No. 13325] (one of the Charging Parties complaining that parties impacted by the settlement have not yet received anything); *Letter of Mark Fu*, dated March 31, 2021 [ECF No. 13301] (stating that he is a shareholder awaiting distribution and writing "to highlight my concerns with the outstanding claims and the appeals after appeals filed by a few employees of the airline, including and most notably Mr Lawrence Meadow . . . . I have lost count of the number of appeals that Mr. Meadow repeatedly filed.  In fact, it has gotten so ludicrous that the airline finally said in it's [sic] court filing . . . that he was the reason the distribution of shares was delayed . . . Mr. Meadow's anger has consumed him entirely and he has been dragging many others along with him for the past few years.").  In granting this relief, the Court notes that these bankruptcy cases were filed almost a decade ago and confirmed almost eight years ago.  Thus, parties like Mr. Fu have been waiting a long time to receive their distribution.[4]  Estimation of the claim will also put the Reorganized Debtors in a

---

[4] The Court notes that the Reorganized Debtors previously came before this Court seeking to establish a disputed claims reserve to allow the Reorganized Debtors to distribute the remaining funds to persons entitled to a distribution under the Plan.  *See Motion for Entry of Order Establishing Maximum Amount of Disputed Claims to Be Utilized for Determining Disputed Claims Reserve Under Debtors' Second Amended Joint Chapter 11 Plan and Approving Certain Procedures in Connection with Disputed Claims Reserve* [ECF No. 8985] (requesting disputed claims reserve be established based upon an aggregate amount of disputed single-dip general unsecured claims in an amount not to exceed $331 million).  Finding that the proposed disputed claims reserve was not sufficient to protect

11

position to close out their cases, thereby saving a significant amount in U.S. Trustee fees. *See* Hr'g Tr. 27:15-28:10 (June 7, 2021).

In making its decision, the Court also considers Mr. Meadows' long and litigious relationship with American, in this Court and numerous other forums. *See, e.g.,* Mem. of Decision, dated April 14, 2016 [ECF. No. 12717]. Over the course of the Reorganized Debtors' bankruptcy cases, Mr. Meadows has filed four claims against the Debtors, the last three of which purported to amend his original claim. The Reorganized Debtors objected to these claims and each of the claims was disallowed by this Court in 2013 and 2014. *See Order Granting Debtors' Fiftieth Omnibus Objection to Claims* [ECF No. 8110]; *Meadows v. AMR Corp.*, 539 B.R. 246, 248 (S.D.N.Y. 2015), *aff'd sub nom.*, 662 F. App'x 77, 78 (2d Cir. 2016). In short, Mr. Meadows has received his day in court as to his own claims. Indeed, this Court notes that it was previously forced to take the extraordinary step of issuing an order against Mr. Meadows—affirmed by both the District Court for the Southern District of New York and the United States Court of Appeals for the Second Circuit—that enforced the discharge injunction under the Debtors' plan and the confirmation order and directed Mr. Meadows to withdraw various pending actions that violated the discharge injunction; that same order enjoined him from filing additional litigation against American related to the termination of his employment with American and his long-term disability benefits. *See In re AMR Corp.,* 2016 WL 1559294 (Bankr. S.D.N.Y. April 14, 2016)*; aff'd sub nom., Meadows v. AMR Corp. (In re AMR Corp.)*,

---

parties with still unresolved claims, the Court approved a disputed claims reserve that was higher than proposed by the Reorganized Debtors. *See Order Establishing Maximum Amount of Disputed Claims to Be Utilized for Determining Disputed Claims Reserve Under Debtors' Second Amended Joint Chapter 11 Plan and Approving Certain Procedures in Connection with Disputed Claims Reserve* [ECF No. 9560] (ordering that disputed claims reserve be established based on an aggregate amount of disputed single-dip general unsecured claims in the amount of $700 million). That ruling was eight years ago. Given the resolution of all but a handful of claims in the ensuing years, the Court has no concern that the relief proposed today will imperil the rights of any parties that still have unpaid claims. This does not include Mr. Meadows, whose claims were expunged by the Court years ago.

12

764 F. App'x 88, 89 (2nd Cir. 2019).[5] Without the requested relief, the Court expects that distributions will be delayed for a significant amount of time into the future. *See* Meadows Objection at 3 (noting that Settlement Order is on appeal and "currently pending resolution in the U.S. Court for Southern District of New York, *as well as a potential subsequent second appeal to the U.S. Court of Appeals for the Second Circuit*.") (emphasis added). Indeed, it appears that Mr. Meadows' opposition to the Estimation Motion is driven by his own parochial concerns.[6] But as the Court explained to Mr. Meadows at the hearing on the Estimation Motion, the matter currently before the Court is not a decision on Mr. Meadows' individual circumstances or relitigation of his claims against American Airlines, which this Court has already spent many hours addressing during the course of the Reorganized Debtors' bankruptcy cases. *See, e.g., Meadows v. AMR Corp.*, 539 B.R. at 248, *aff'd sub nom.*, 662 F. App'x 77, 78 (2d Cir. 2016).

    2.    <u>Substantive Review of Reorganized Debtors' Request</u>

        *i. Posture of the Case*

A substantive review of the Reorganized Debtors' request also supports approval of the Estimation Motion. To begin with, the main focus of Mr. Meadows' arguments against approval

---

[5]     *See Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 F. Appx. 46, 48 (2d Cir. 2005) (stating that courts are empowered to take judicial notice of public filings, including a court's docket).

[6]     Mr. Meadows stated during the hearing on the Estimation Motion that

> I would pull my appeals if they'd just simply honor those agreements and reinstate me like they've done for all the other pilots similarly situated, except for the ones like me, who filed lawsuits against the company. So if you would resolve this matter, I gave you a very simple solution. I understand under Section 105A, the equitable backstop, you have wide latitude to correct flexible remedies. And then in my declaration, in Paragraph 59, I proposed such a remedy. I ask you, since you approved the consent decree as a Bankruptcy Court, to simply compel the Debtors to comply those [sic] obligations, reinstate pilots like myself who are now medically qualified and meet all the essential job functions, *I will pull those appeals. The consent decree could become effective immediately tomorrow. All the charging companies can be made whole. All the money could be paid out.*

Hr'g Tr. 46:17-47:9 (June 7, 2021) (emphasis added).

13

of the Estimation Motion relate to the merits of the Consent Decree. Specifically, he asserts that the compensation in the Consent Decree is inadequate and that it improperly excludes pilots, issues that go to the merits of the Consent Decree itself.[7] *See generally Notice of: Declaration of Lawrence M. Meadows* at 4, 6-7, 11 [ECF No. 13331] (the "Meadows Declaration"); Meadows Objection at 14-15; *see also* Hr'g Tr. 39:10-20, 47:20-48:11, 57:7-24 (June 7, 2021).[8] Mr. Meadows argues that if he is successful on appeal based on these issues, the Consent Decree may never become effective or may need to be renegotiated or the underlying claims relating to the Consent Decree be litigated. *See* Meadows Objection at 15. But the circumstances of this situation are procedurally distinct from those normally encountered when a court is asked to estimate a claim for which the merits have yet to be litigated. Here, the merits of the Consent

---

[7] As evidence against approval of the Estimation Motion, Mr. Meadows offered his own declaration and three witnesses to discuss the purported harms that he believes that the Consent Decree will cause to pilots on disability. *See* Meadows Decl.; *Notice of Service: Notice to Compel Witness Testimony of Brian Ostrom During U.S. Bankruptcy Court Evidentiary Hearing on June 7th, 2021 at 11:00 a.m.* [ECF No. 13330]; *Notice of Service: Notice to Compel Witness Testimony of Herman J. Straub During U.S. Bankruptcy Court Evidentiary hearing on June 7th, 2021 at 11:00 a.m.* [ECF No. 13330]; *Notice of Service: Notice to Compel Witness Testimony of Edward Sicher During U.S. Bankruptcy Court Evidentiary Hearing on June 7th, 2021 at 11:00 a.m.* [ECF No. 13330]; *Notice of: Notice of Creditor Lawrence M. Meadows Witness List for Evidentiary Hearing on June 7th, 2021 at 11:00 a.m.*. In addition to hearing extensively from Mr. Meadows, the Court accepted a proffer of the testimony of each of the other witnesses and heard from Mr. Straub during the hearing on the Estimation Motion. *See* Hr'g Tr. 63:5-67:8 (June 7, 2021). But the Court noted that the merits of the Consent Decree are not directly at issue in the Estimation Motion; this Court's approval of the Consent Decree is already on appeal, and that record on appeal already includes Mr. Meadows' arguments about the merits of the Consent Decree. *See Statement of Issues on Appeal and Designation of Items to be Included in the Record of Lawrence M. Meadows* [ECF No. 12923]; *Debtors' Statement of Issue Presented on Appeal and Counterdesignation of Additional Items to be Included in Record on Appeal* [ECF No. 12929].

[8] Mr. Meadows also argues that American continues to violate the obligations of the Consent Decree by discriminating against him and similarly situated pilots. *See* Meadows Decl. at 9-11. But as the Court noted at the hearing on the Estimation Motion, the Consent Decree is not final and therefore has not yet been implemented. Upon implementation, enforcement of the Consent Decree is the responsibility of the EEOC and the Arizona District Court and this Court will not wade into the issue. *See* Consent Decree ¶ 11 (noting that if the EEOC believes American or Envoy have not complied with any provision of the Consent Decree, then the EEOC may bring an action before the Arizona District Court to enforce the Consent Decree). Moreover, approval of the Estimation Motion does not deprive any party of any rights that they may have with respect to any alleged ongoing discrimination against them. Indeed, Mr. Meadows appears to have filed a claim with the EEOC against American in January 2020 for alleged continuing discrimination and retaliatory practices against him. *See* Meadows Decl. at 9-11; *see also* Consent Decree ¶ 13 ("Nothing in this paragraph affects the EEOC's ability, responsibility and authority to receive and investigate any subsequently filed charges of discrimination or to bring a subsequent lawsuit against Defendants regarding matters not covered in this Lawsuit or the Letters of Determination giving rise to this Lawsuit.").

Decree have already been passed upon by the Arizona District Court and the Court of Appeals for the Ninth Circuit, as well as by this Court. Thus, there is a very fulsome record upon which this Court can conclude that the proposed estimated amount—the $9.95 million in the Consent Decree—is reasonable. Thus, the Court rejects Mr. Meadows' argument that the Reorganized Debtors have not shown "sufficient evidence on which to base a reasonable estimate of the claim[.]" Meadows Objection at 14 (quoting *Bittner*, 691 F.2d at 135).

       ii. *Probability of Success*

Mr. Meadows also asserts that the Reorganized Debtors have failed to factor into their estimation calculation "the probability of the success of various potential outcomes if decided on the merits . . . " Meadows Objection at 14 (quoting *In re Chemtura*, 448 B.R. at 650). But as noted above, the Consent Decree has been reviewed and approved by the Arizona District Court, where the EEOC Litigation was filed. Mr. Meadows' challenge to the Consent Decree was denied by the Arizona District Court, which was then affirmed on appeal by the Court of Appeals for the Ninth Circuit. The only issue before this Court was approval of the Consent Decree under Rule 9019 of the Federal Rules of Bankruptcy Procedure. This is the issue that has been appealed by Mr. Meadows to the District Court for the Southern District of New York, and it is the risk of reversal of that appeal that this Court must now weigh in determining whether to approve the Estimation Motion.

Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641-642 (Bankr. S.D.N.Y. 2012) (quoting *In re MF Global Inc.*,

15

2012 WL 3242533, at *5 (Bankr. S.D.N.Y Aug. 10, 2012)); *see Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) ("In Chapter 11 bankruptcies, settlements . . . help clear a path for the efficient administration of the bankrupt estate").

When reviewing a settlement under Bankruptcy Rule 9019, the court must determine that the settlement is "fair, equitable, and in the best interests of the estate before approving it." *In re Residential Capital, LLC*, 497 B.R. 720, 749 (Bankr. S.D.N.Y. 2013) (internal citations omitted); *see also In re Chemtura Corp.*, 437 B.R. 561, 593 (Bankr. S.D.N.Y. 2010) ("The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interest of the estate."). "In so doing, the Court need not decide the numerous issues of law and fact raised by a compromise or settlement, 'but must only canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Residential Capital*, 497 B.R. at 749 (quoting *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005)). Instead of "conduct[ing] a 'mini-trial,'" the Court need only "'be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment about the settlement.'" *In re Residential Capital*, 497 B.R. at 749 (quoting *In re Adelphia*, 327 B.R. at 159). "In evaluating the necessary facts, a court may rely on the opinion of the debtor, parties to the settlement, and the professionals." *In re Residential Capital*, 497 B.R. at 749 (citing *In re Chemtura*, 439 B.R. at 594; *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522-23 (Bankr. S.D.N.Y. 1993)).

Importantly, the decision of whether to approve or deny a settlement that involves a bankruptcy estate is within the discretion of the bankruptcy court. *See In re Residential Capital*, 497 B.R. at 749 (citing *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham*

16

*Lambert Grp., Inc.),* 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994)). "A court may exercise its discretion 'in light of the general public policy favoring settlements.'" *In re Residential Capital*, 497 B.R. at 749 (quoting *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998)). "While the bankruptcy court may consider the objections lodged by parties in interest, such objections are not controlling. . . . [T]he bankruptcy court must still make informed and independent judgment." *In re WorldCom, Inc.,* 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006). And while courts have discretion in approving a settlement, "the business judgment of the debtor in recommending the settlement should be factored into the court's analysis." *MF Global Inc.*, 2012 WL 3242533, at \*5 (citing *JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter Commc'ns)*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009)).

In the Second Circuit, the *Iridium* case established the following multi-factor balancing test to determine whether a settlement is fair and equitable:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
>
> (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";
>
> (4) whether other parties in interest support the settlement;
>
> (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;
>
> (6) "the nature and breadth of releases to be obtained by officers and directors"; and

17

> (7) "the extent to which the settlement is the product of arm's length bargaining."

*In re Iridium,* 478 F.3d at 462.

In previously approving the Consent Decree, this Court specifically addressed the *Iridium* factors and concluded that they supported approval of the parties' settlement. *See generally* Hr'g Tr. 41:6-42:2 (Feb. 1, 2018). The Court weighed the probability of success in the litigation, observing that the Consent Decree had already been separately reviewed and approved by the Arizona District Court where the EEOC Litigation was filed. *See id.* at 41:12-15. The Court also found that the settlement satisfied the factors relating to difficulties collecting on any litigated judgment, the complexities and likely duration of any litigation between the Reorganized Debtors and the EEOC, the view of creditors regarding the proposed settlement, the competence and experience of the counsel and other professionals that support the settlement, the releases that were being received by the affected parties, and the extent to which the settlement was derived from arm's length bargaining and was not the product of fraud or collusion. *See id.* at 41:15-25. The Court explicitly noted that it found no evidence of fraud or collusion and that the Reorganized Debtors' informed judgment of the settlement was fair and reasonable. *See id.* at 41:25-42:2. The Court also observed that the settlement did not

> in any way dismiss, waive, or otherwise affect anybody other—anybody else's rights other than those in the settlement. The parties whose rights are affected are the parties who filed proofs of claims and have decided to settle those proofs of claims or the folks who are part of the consent decree who can participate in the settlement, but only if they so choose by filing the procedures set forth in the consent decree. If they choose not to do that then they are not waiving any of their claims . . . . [T]his settlement doesn't affect any claims other than those specifically identified in the settlement.

*Id.* at 42:11-43:3.

Based on a review of the Consent Decree and the representations of the Reorganized Debtors, the Court also noted that while pilots such as Mr. Meadows were not directly included

18

in the notice provisions of the settlement, they were not excluded from the settlement itself and could participate if they choose to do so. *See id.* at 43:14- 21. Indeed, at the hearing on the Settlement Motion, counsel to American stressed the fact that pilots were not excluded from participating in the settlement process laid out by the Consent Decree. *See id.* at 31:23-32:4. Counsel noted that due to the large amount of employees at the newly merged entity, the parties to the settlement had tried to develop a process under the Consent Decree that would capture employees most likely to be aggrieved. *See id.* at 32:5-11. As part of an effort to manage that process, pilots were not included on the list of notice parties under the Consent Decree because they were one of the groups least likely to be impacted with respect to the core allegations made by the EEOC, since pilots' ability to fly is governed by extensive federal regulation. *See id.* at 32:12-25. Counsel noted that while pilots are not included in the list of notice parties, pilots can still come forward and submit a claim form to the EEOC under the procedures of the Consent Decree and the EEOC will then take that claim, investigate and decide whether to make a settlement offer. *See id.* at 33:1-25. After hearing Mr. Meadows' arguments with respect to the Estimation Motion, the Court concluded that the *Iridium* factors were satisfied.

Taking into account the entire record then—including this Court's prior approval of the Consent Decree—the Court concludes that the proposed estimation amount of $9.95 million is appropriate now.[9]

---

[9] Mr. Meadows argues that the Reorganized Debtors are using the Estimation Motion to circumvent his right to assert his appeal and the requirement that the Settlement Order be final for the Consent Decree to become effective. *See* Meadows Objection at 10, 13. But just as Mr. Meadows is free to pursue his appeal of the Settlement Order, so the Reorganized Debtors are free to pursue their rights and remedies under Section 502(c) of the Bankruptcy Code, which specifically provides for estimation of unliquidated claims to prevent undue delay in the administration of bankruptcy cases. *See* 11 U.S.C. § 502(c).

## **CONCLUSION**

For the reasons set forth above, the Court grants the Estimation Motion. The Debtors shall serve a copy of this Memorandum of Decision on Mr. Meadows and Ms. Edwards-Redd and file proof of such service on the Case Management/Electronic Case Filing Docket. The Debtors shall also submit a proposed order on five days' notice. The proposed order must be submitted by filing a notice of the proposed order on the docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon Mr. Meadows and Ms. Edwards-Redd.

Date:   New York, New York
       July 14, 2021

                                           */s/ Sean H. Lane*
                                           UNITED STATES BANKRUPTCY JUDGE