**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re:

AMR CORPORATION, *et al.*,

Reorganized Debtors.

-------------------------------------------------------------x

Chapter 11

Case No. 11-15463 (SHL)

Confirmed

## <u>MEMORANDUM OF DECISION AND ORDER</u>

Before the Court is the *Reorganized Debtors' 199th Omnibus Objection to Claims* (the "199th Omnibus Objection") [ECF No. 13282]. The claims at issue were filed by Vincent Basset (Claim Numbers 8015 and 8016), Gregory Cordes (Claim Numbers 9613 and 9614) and Timothy Hall (Claim Number 11351), each of whom has opposed the 199th Omnibus Objection either through filings or on the record at hearings before this Court. *See* ECF Nos. 13300, 13299, 13323, 13321, 13322, 13332, 13339, 13343, 13344, 13345; *see generally* Hr'g Tr., June 7, 2021 [ECF No. 13335]. The Reorganized Debtors assert that the three claimants failed to timely file grievances with respect to their claims and that their claims should therefore be expunged. On June 7, 2021, this Court held an evidentiary hearing on the 199th Omnibus Objection. *See generally* Hr'g Tr., June 7, 2021.

## <u>DISCUSSION</u>

### A. <u>Legal Standard</u>

Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If the claim is properly filed, it is *prima facie* evidence that the claim is valid. *See* Fed. R. Bankr. P. 3001(f). A party in interest may object to a proof of claim, and once an objection is made, the court must determine

whether the objection is well founded.  *See* 4 Collier on Bankruptcy ¶ 502.02[2] (16th ed. rev.

2013).

"Although Rule 3001(f) establishes the initial evidentiary effect of a filed claim, the

burden of proof rests on different parties at different times.  *In re Allegheny Int'l, Inc.*, 954 F.2d

167, 173 (3d Cir. 1992).  Correctly filed proofs of claim "constitute prima facie evidence of the

validity and amount of the claim . . . .  To overcome this prima facie evidence, an objecting party

must come forth with evidence which, if believed, would refute at least one of the allegations

essential to the claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P.

2000).  By producing "evidence equal in force to the prima facie case," an objector can negate a

claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by

a preponderance of the evidence that under applicable law the claim should be allowed."

*Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, 2013 U.S. Dist.

LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted);  *see In*

*re MF Global Holdings Ltd*., 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012) ("A

proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector

bears the initial burden of persuasion.  The burden then shifts to the claimant if the objector

produces evidence equal in force to the prima facie case . . . which, if believed, would refute at

least one of the allegations that is essential to the claim's legal sufficiency.") (citing *In re Oneida*

*Ltd.*, 500 B.R. 384, 389 (Bankr. S.D.N.Y. 2009)).  If the objector does not "introduce[] evidence

as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no

further proof of the merits of the claim."  4 Collier on Bankruptcy ¶ 502.02 (16th ed. rev. 2013);

*see also In re Residential Capital, LLC*, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014).

When a claimant fails to comply with the Rule 3001 documentation requirements when submitting a proof of claim, the claimant is not entitled to *prima facie* validity of the claim. *See In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010). "However, failure to attach the required documentation does not automatically render the claim invalid." *Id.* "[I]n certain circumstances, claims can be disallowed for failure to support the claim with sufficient evidence . . . because absent documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim." *Id.* at 119.

Section 502(b)(1) of the Bankruptcy Code provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *Residential Capital*, 518 B.R. at 731; *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.") (citations omitted). Accordingly, a claimant must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

B. <u>Claims of Mr. Basset and Mr. Cordes</u>

The issues with respect to Mr. Basset and Mr. Cordes' claims are distinct from those of Mr. Hall, and the Court will first address the claims of Mr. Basset and Mr. Cordes. By way of background, all of the claimants are pilots. American Airlines, American Eagle Airlines, the Allied Pilots Association (the union representing American's pilots), and the Air Line Pilots

3

Association (the union representing American Eagle's pilots), entered into a four-party collective

bargaining agreement that is referred to as the "Flow–Through Agreement" or "Supplement W"

by American Airlines and as "Letter 3" by American Eagle. *See* ECF Nos. 13323-1, 13299. For

the sake of consistency, the Court will refer to it as the Flow-Through Agreement. This

agreement allowed for American Eagle pilots to 'flow-up' to positions at American Airlines

when American Airlines was hiring new pilots. *See MacKenzie v. Air Line Pilots Ass'n Int'l*,

2011 WL 5178270, at *1 (N.D. Tex. Oct. 31, 2011), *aff'd* 598 F. App'x 223 (5th Cir. 2015), *cert.*

*denied*, 576 U.S. 1056 (2015).

Mr. Basset and Mr. Cordes were both American Eagle pilots. *See* ECF No. 13299,

13300. Mr. Cordes claims that he should have flowed up from American Eagle to American

Airlines in January 2008, but was not transferred to American until January 2011. *See* ECF No.

13300. Mr. Basset claims he should have flowed from American Eagle to American Airlines in

June 2007, but was not transferred to American until June 2010. *See* ECF No. 13299. Both

claimants assert that this delay caused them financial damages. *See* ECF No. 13299, 13300.

Two different collective bargaining agreements were in effect during the relevant time

period: (i) the *Agreement between American Airlines, Inc. and the Airline Pilots in the Service of*

*American Airlines, Inc. as Represented by the Allied Pilots Association*, effective May 1, 2003

(the "2003 CBA"), and (ii) the *Agreement Between AMR Eagle Holding Corporation, American*

*Eagle Airlines, Inc., Executive Airlines, Inc., all D/B/A American Eagle and the Air Line Pilots*

*in the Service of American Eagle Airlines, Inc., Executive Airlines, Inc. as Represented by the Air*

*Line Pilots Association, International*, effective September 1, 1997 (the "1997 American Eagle

CBA"). Neither Mr. Cordes nor Mr. Basset assert that they filed a grievance under the collective

bargaining agreements. Instead, both argue that their rights are governed not by the collective

4

bargaining agreements, but rather by the Flow-Through Agreement. *See* ECF Nos. 13299, 13300. But the Flow-Through Agreement trumps these two collective bargaining agreements. The Flow-Through Agreement provides that it

> supplements and makes certain exceptions to the Basic Agreements between the parties. The provisions of the Basic Agreements will continue to apply, except as modified herein and, in the event of a conflict, the provisions herein shall apply.

Letter 3 at I.C [ECF No. 13299]; Supplement W at A(c) [ECF No. 13323-1].

The Flow-Through Agreement provides that the parties to any dispute resolution procedures under the agreement are American, the APA, ALPA and American Eagle and that these parties agreed to arbitrate any grievance alleging a violation of the agreement before a single neutral arbitrator. *See* Letter 3 at VI.A and VI.B [ECF No. 13299], Supplement W at F(a) and F(b) [ECF No. 13323-1]. Several grievances related to the Flow-Through Agreement were filed by ALPA. These became the subject of numerous arbitrations, which resulted in various arbitrator decisions and awards. *See* ECF Nos. 13323-4, 13323-5, 13323-6, 13323-7, 13323-8. One such dispute related to the flow of American Eagle pilots to American versus the placement of former TWA pilots with American Airlines. With respect to this dispute, Arbitrator Nicolau issued a liability decision in October 2009 and a remedy order in April 2010. *See* ECF Nos. 13323-7, 13323-8; *see also MacKenzie*, 2011 WL 5178270, at *1.

During the hearing on the 199th Omnibus Objection, it became clear that Mr. Basset and Mr. Cordes were unhappy with Arbitrator Nicolau's award and believed that they were entitled to compensation under the Flow-Through Agreement. *See* Hr'g Tr. 105:9-106:19, June 7, 2021. Mr. Cordes called a witness, Gavin MacKenzie, to testify at the hearing. Mr. MacKenzie acknowledged that the only way to challenge Arbitrator Nicolau's award was for an aggrieved party to seek to have the award vacated or for a pilot to bring a duty of fair representation claim

against their union.  *See id.* at 112:24–113:16.  Mr. MacKenzie noted that he and other individual American Eagle pilots had already sought to challenge Arbitrator Nicolau's award, but that the Court of Appeals for the Fifth Circuit ultimately held that under the terms of the Flow-Through Agreement, only the union, and not the pilots, could sue American with respect to the award. *See id.* at 113:7-25; *see also MacKenzie v. Air Line Pilots Ass'n Int'l*, 598 F. App'x 223, 226 (5th Cir. 2015).  The pilots' petition for writ of certiorari was then denied by the Supreme Court.  *See MacKenzie v. Air Line Pilots Ass'n, Int'l*, 576 U.S. 1056 (2015).  Given the Fifth Circuit's decision, it does not appear that Mr. Basset and Mr. Cordes have an individual right to sue under the Flow-Through Agreement and, therefore, their claims in this bankruptcy case must be expunged.

Even assuming that they had such a right, their claims here would be time barred.  Under the Railway Labor Act (the "RLA"), disputes regarding the interpretation or application of a collective bargaining agreement are minor disputes and must be resolved through arbitration. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256 (1994) (minor disputes involve "the interpretation or application of existing labor agreements").  Minor disputes "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions."  *Hawaiian Airlines, Inc.*, 512 U.S. at 253; *see also* 45 U.S.C. § 184, *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 943 F.3d 568, 579 (2d Cir. 2019) (minor disputes are "subject to mandatory resolution by the appropriate adjustment boards.").  Under the 2003 CBA, any grievance concerning any action by American Airlines must be filed with 90 days (for individual grievances) or 180 days (for Presidential Domicile Chairman, or Base grievances). *See* ECF No. 13262 at Exhibit D - 2003 CBA § 21.D.2 (Contractual Grievances).  The time periods ran from the earlier of the point of occurrence or the

earlier of the date that the party knew or should have known of the occurrence. *See id*. Under

the 1997 American Eagle CBA, a pilot may file a grievance in writing "concerning any action of

the Company affecting him" within 60 days of when the pilot "became aware or should have

become aware of the event giving rise to the grievance. Failure to file a grievance in writing

within the time limits specified constitutes a waiver of the grievance." *See* ECF No. 13320 at

Exhibit A - 1997 American Eagle CBA § 20(B)(1) & (2) (emphasis added). There is no

evidence that Mr. Cordes or Mr. Basset ever filed an individual grievance on the matters that are

the subject of their proofs of claim. Thus, even if Mr. Cordes and Mr. Basset had the right to file

an individual grievance on their own behalf based on their rights under the Flow-Through

Agreement, they failed to take timely action under the contractually permitted time periods set

out in the collective bargaining agreements.

C. <u>Claims of Mr. Hall</u>

Separately, Mr. Hall—an American Airlines pilot—argues that he is entitled to furlough

pay for the period of time that he was furloughed during a military leave of absence from which

he returned to work at American in 2013. *See* Hr'g Tr. 133:16-134:2, 134:25-135:3, June 7,

2021. Mr. Hall's claim is also a minor dispute under the collective bargaining agreement and

subject to the mandatory timelines and arbitration procedures of the 2003 CBA. *See* Section

21.D.2 of the 2003 CBA (grievances must be filed within 90 days—for individual grievances—

or 180 days—for Presidential Domicile Chairman, or Base grievances).[1]

Mr. Hall states that he could not have filed a grievance after he was furloughed because

he was on military leave until he returned to work in 2013. *See* Hr'g Tr. 133:22–135:11; 136:11-

---

[1]    Even if Hall's claim was not a minor dispute, he did not file a civil action and the applicable statute of limitations has expired.

15, June 7, 2021.  But Mr. Hall has not provided evidence showing that he or his union was

prevented from filing a grievance after he was furloughed.  And even to the extent that Mr. Hall

relies on tolling, he could have filed a grievance after returning from his military leave of

absence in 2013.  The Court has not been provided with any evidence that he filed a grievance

after his return to employment, thus ultimately making his tolling argument unsuccessful.[2]

## CONCLUSION

For all the reasons discussed above, the Court grants the 199th Omnibus Objection with

respect to the claims of Mr. Basset, Mr. Cordes and Mr. Hall.  The Debtors shall serve a copy of

this Memorandum of Decision and Order on Mr. Basset, Mr. Cordes and Mr. Hall by overnight

mail and file proof of such service on the Case Management/Electronic Case Filing Docket.

**IT IS SO ORDERED.**

Date:   New York, New York
        November 29, 2021


*/s/ Sean H. Lane*
UNITED STATES BANKRUPTCY JUDGE


**COPIES TO:**

By U.S. Mail:

Gregory R. Cordes
2516 Nutmeg Avenue
Morro Bay, CA 93442

Vincent Basset
804 Peterstow Drive
Euless, TX 76039

Timothy M. Hall
234 Riverbank

---

[2]      The Court notes that resolution of Mr. Hall's claim requires the interpretation and application of the 2003
CBA, jurisdiction for which resides with the System Board of Adjustment, but the System Board could have
evaluated his tolling argument in the context of a grievance if one had been filed.

Burlington, NJ 08016

By Electronic Mail:

grcordes@mac.com

vbasset@sbcglobal.net

osage.orange@gmail.com